**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO, | |
| Defendant. | |

Plaintiffs, Keith Fischer, Michael O'Sullivan, John Moeser, Louis Pia, Thomas Barden, Constance Mangan, and Charise Jones ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Outten & Golden LLP and Kessler Matura P.C., upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Defendant Government Employees Insurance Company d/b/a GEICO ("Defendant" or "GEICO") is in the business of providing vehicle insurance, property insurance, and business insurance.  GEICO has the second largest market share among automobile insurers in the United States.[1]  GEICO operates in all 50 states, including New York.

---

[1]      Berkshire Hathaway Inc., Annual Report (Form 10-K) (Feb. 27, 2023).

2.      Plaintiffs are current and former non-exempt employees who work or have

worked for GEICO as Special Investigators.[2]  Plaintiffs' job is to investigate claims of suspected

auto and medical insurance fraud.  GEICO assigns cases of suspected insurance fraud to Special

Investigators, who are responsible for determining whether fraud has occurred.  As part of this

process, Special Investigators' job duties included, among other things, reviewing case files;

running background checks; examining provider billing reports; driving out to medical facilities,

accident scenes, or theft sites; gathering evidence; interviewing witnesses and law enforcement;

confirming police reports; canvassing and surveilling scenes; conducting examinations under

oath; and writing and submitting reports.  Due to the nature of the work, the majority of Special

Investigators have prior experience in law enforcement as detectives or police officers.

3.      GEICO had a practice of suffering and permitting Plaintiffs and similarly situated

employees to work without pay, including substantial overtime work.  GEICO assigned Special

Investigators an ever-increasing workload, knowing this work would require substantially more

than 40 hours per week to complete.  Nevertheless, to minimize its labor costs, GEICO

prohibited Special Investigators from working overtime without prior permission and actively

deterred Special Investigators from reporting overtime.

4.      At the same time, GEICO insisted that Special Investigators meet a battery of

performance metrics to remain in good standing – metrics that could only be satisfied by

---

[2]      "Special Investigator" was one of several job titles that GEICO applied to Plaintiffs and
other employees with substantially similar job duties.  Notwithstanding changes in job titles over
time, "Special Investigator" is used herein to refer to all such employees who performed similar
investigative work and were subject to the same practices challenged herein.  These job titles
include, *inter alia*, Special Investigators, Special Investigator Trainers, SIU Investigators,
Security Investigators, Senior Outside Security Investigators, Outside Field Investigators,
Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead
Investigators.

working substantial overtime hours.  Among other factors, Special Investigators were evaluated by how many hours it took them to complete a case task, how often they made an entry in a case report, how many days they took to close a case, and how many cases they completed within a month.  These metrics were tied to completing all such work within 7.75 hours per day (adding up to 38.75 hours per week).  Failure to complete work within these allotted hours negatively impacted performance ratings and were grounds for disciplinary action up to and including termination.  Coupled with a rising caseload, the predictable result was that Special Investigators worked off the clock and did not report those hours in GEICO's timekeeping system.

5.    GEICO should have been aware of the natural consequences of its employment practices, because this is not the first time that similar practices have been the subject of a lawsuit.  In 2021, non-exempt insurance adjusters sued GEICO for unpaid overtime worked off the clock in at least six separate lawsuits across the country.[3]  Like Special Investigators, adjusters alleged that GEICO only permitted them to enter up to 38.75 hours per week for compensation, but that they regularly worked overtime off the clock because of pressure to meet GEICO's quotas and avoid disciplinary action.[4]

---

[3]    *See Rieske v. Gov't Emps. Ins. Co.*, No. 21 Civ. 4122 (E.D.N.Y.); *Pugliese v. Gov't Emps. Ins. Co.*, No. 21 Civ. 11629 (D. Mass.); *Biscardi v. Gov't Emps. Ins. Co.*, No. 21 Civ. 2240 (D. Md.); *Zambito v. Gov't Emps. Ins. Co.*, No. 21 Civ. 2223 (M.D. Fl.); *Erford v. Gov't Emps. Ins. Co.*, No. 21 Civ. 314 (E.D.N.C.); *Hart v. Gov't Emps. Ins. Co.*, No. 21 Civ. 859 (M.D. Pa.).

[4]    For example, adjusters in New York alleged that they "are required to handle an assigned quota of inspections and claims each day and are allotted 7.75 hours of pay to complete their daily quota" but "routinely cannot meet GEICO's production quotas within the allotted 7.75 hours.  If Adjusters do not complete their quota in the allotted 7.75 hours per day, they suffer in their productivity metrics, which can lead to compensation ramifications or disciplinary action. Rather than face those penalties, Adjusters perform work off-the-clock" and "[i]n order to complete the number of claims timely to meet GEICO's quota and within GEICO's allotted 7.75 hours of pay per day, Adjusters regularly worked outside of their allotted 7.75 hours without pay."  Pls.' Mem. of Law, *Rieske*, No. 21 Civ. 4122 (E.D.N.Y.), ECF No. 45 at 5.

6.      By maintaining these practices throughout the relevant time periods, knowing that the predictable result would be to force Special Investigators to work off the clock on a regular basis, GEICO willfully violated the Fair Labor Standards Act and New York Labor Law. Indeed, as more fully described below, GEICO had actual knowledge that unpaid work was occurring, but did nothing to stop it.

7.      Plaintiffs seek to recover unpaid wages on behalf of non-exempt Special Investigators and other variously titled employees with substantially similar job duties ("Collective Members") who worked in the United States for GEICO pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 §§ 190 *et seq.*, and Art. 19, §§ 650 *et seq.* ("NYLL"), on behalf of all such persons who worked for GEICO in the state of New York ("Class Members").

## THE PARTIES

### *Plaintiff Keith Fischer*

8.      Plaintiff Fischer is a resident of Levittown, New York.  Plaintiff Fischer worked as a Special Investigator for GEICO as part of the Woodbury, New York office from May 1999 to December 2020.

9.      Plaintiff Fischer is a covered employee within the meaning of the FLSA and NYLL.

10.      Throughout his employment with GEICO, Plaintiff Fischer routinely worked over 40 hours a week but, pursuant to directives from his supervisors, did not report more than 7.75 hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  Due to increases in his workload, this unpaid work reached a peak starting from March 2020 until Plaintiff Fischer retired, during which time he routinely worked many hours of overtime per

week.  During the relevant period, GEICO did not pay Plaintiff Fischer for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

11.    Plaintiff Fischer recalls attending a Christmas luncheon in or about 2018 where Special Investigators raised concerns about their escalating workload and the lack of authorized overtime hours to his GEICO supervisor.  The supervisor responded that this was just the way it was going to be and promised that Special Investigators would get better raises.

12.    GEICO was well aware that the work it required Special Investigators to perform would require more than 40 hours per week to complete.  In or about 2008 to 2010, GEICO conducted an internal time study of the work done by Special Investigators through its department, the Competitive Advantage Leadership Group ("CALG").  Employees conducting the study were tasked with shadowing Special Investigators as they performed their work, and making recommendations about work allocation based on their findings.  During this process, one of the employees expressed disbelief to Plaintiff Fischer about the amount of work Special Investigators handled.  Fischer explained that they were only able to complete the work because most investigators continued to work late into the evening after returning home from GEICO's office.  Upon information and belief, CALG recommended a target caseload for Special Investigators that was far below the actual workload handled by Class and Collective Members throughout the relevant periods.

***Plaintiff Michael O'Sullivan***

13.    Plaintiff O'Sullivan is a resident of Merrick, New York.  Plaintiff O'Sullivan worked as a Special Investigator for GEICO as part of the Woodbury, New York office from November 2003 to April 2022.

14.     Plaintiff O'Sullivan is a covered employee within the meaning of the FLSA and NYLL.

15.     Throughout his employment with GEICO, Plaintiff O'Sullivan routinely worked over 40 hours a week but, pursuant to directives from his supervisors, did not report more than 7.75 hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  During the relevant period, GEICO did not pay Plaintiff O'Sullivan for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

16.     A GEICO supervisor told Plaintiff O'Sullivan recalls that that GEICO did not authorize overtime pay "just for typing" – that is, writing case reports as required by Special Investigators' job duties.

***Plaintiff John Moeser***

17.     Plaintiff Moeser is a resident of Ridge, New York.  Plaintiff Moeser worked as a Special Investigator for GEICO as part of the Woodbury, New York office from October 2006 to April 2021.

18.     Plaintiff Moeser is a covered employee within the meaning of the FLSA and NYLL.

19.     Throughout his employment with GEICO, Plaintiff Moeser routinely worked over 40 hours a week, but, pursuant to directives from his supervisors, did not report more than 7.75 hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  With rare exceptions during the relevant period, GEICO did not pay Plaintiff Moeser for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

20.      Plaintiff Moeser once attempted to submit time for hours worked above 38.75 hours in a week.  A GEICO supervisor sent Plaintiff Moeser an email, questioning why he was putting in overtime to do "office work" which included, among other things, summarizing the examinations under oath that Plaintiff Moeser would conduct in the field.  Completing such summaries was a regular and required aspect of Plaintiff Moeser's job duties.  The overtime hours submitted were ultimately not approved by GEICO.

***Plaintiff Louis Pia***

21.      Plaintiff Pia is a resident of Plainview, New York.  Plaintiff Pia worked as a Special Investigator for GEICO as part of the Woodbury, New York office from September 2003 to November 2022.

22.      Plaintiff Pia is a covered employee within the meaning of the FLSA and NYLL.

23.      Throughout his employment with GEICO, Plaintiff Pia routinely worked over 40 hours a week but, pursuant to directives from his supervisors, did not report more than 7.75 hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  Due to increases in his workload, this unpaid work reached a peak between March 2020 through November 2021, during which time Plaintiff Pia routinely worked many hours of overtime per week.  During the relevant period, GEICO did not pay Plaintiff Pia for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

24.      Plaintiff Pia attended team meetings with other Special Investigators and their supervisor.  At these meetings, Special Investigators asked if there would be any overtime pay available to them because of the long hours they were working and unreasonable number of cases they had, but GEICO denied their requests to authorize overtime pay.

*Plaintiff Thomas Barden*

25.    Plaintiff Barden is a resident of Saratoga Springs, New York.  Plaintiff Barden worked as a Special Investigator for GEICO as part of the Woodbury, New York office from September 2019 until December 2022.

26.    Plaintiff Barden is a covered employee within the meaning of the FLSA and NYLL.

27.    Throughout his employment with GEICO, Plaintiff Barden routinely worked over 40 hours a week but, pursuant to directives from his supervisors, did not report more than 7.75 hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  Due to increases in his workload, this unpaid work reached a peak between March 2020 through November 2021, during which time Plaintiff Barden routinely worked many hours of overtime per week.  With rare exceptions during the relevant period, GEICO did not pay Plaintiff Barden for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

28.    Plaintiff Barden discussed the lack of overtime pay and the difficulty of completing his work within 38.75 hours per week in meetings with his direct supervisor, and the GEICO manager who ran his office.  While GEICO management acknowledged the issue, Plaintiff Barden did not see any change in GEICO's compensation practices.

29.    GEICO supervisors informed Plaintiff Barden that GEICO would no longer *authorize* Special Investigators to log in to work before 7:30 a.m.  However, Special Investigators still had the ability to log in and were not locked out of GEICO's case management software.  This only increased the pressure on Plaintiff Barden to underreport his work hours.  After this announcement, he would still log in to GEICO's system (to which his supervisors also had access)

and begin working at approximately 6:00 a.m., but did not report this in GEICO's timekeeping software.  Barden never faced any disciplinary action for logging into work before 7:30 a.m.

**Plaintiff Constance Mangan**

30.     Plaintiff Mangan is a resident of Bethpage, New York.  Plaintiff Mangan worked as a Special Investigator for GEICO as part of the Woodbury, New York office from April 2004 to July 2020.

31.     Plaintiff Mangan is a covered employee within the meaning of the FLSA and NYLL.

32.     Throughout her employment with GEICO, Plaintiff Mangan routinely worked over 40 hours a week but, pursuant to directives from her supervisors, did not report more than 7.75 hours for each of her five scheduled workdays (adding up to 38.75 hours per week).  During the relevant period, GEICO did not pay Plaintiff Mangan for all hours worked in excess of 38.75 hours per workweek, including overtime pay for hours worked in excess of 40 hours per workweek.

33.     In approximately 2018 or 2019, Plaintiff Mangan and other Special Investigators attended a large meeting that was also attended by GEICO upper management.  At that meeting, Special Investigators voiced concerns regarding their workload and unpaid overtime hours.  In response to the complaints at this meeting, the GEICO manager who ran the office simply said, "I don't give a fuck."

**Plaintiff Charise Jones**

34.     Plaintiff Jones is a resident of Bethpage, New York.  Plaintiff Jones has worked as a non-exempt Special Investigator Trainer ("Trainer") for GEICO as part of the Melville, New York office (formerly the Woodbury, New York office) beginning March or April 2022 to the

present.  Before becoming a Trainer, Plaintiff Jones was a Special Investigator from 2016 up

until her promotion in March or April 2022.  Plaintiff Jones has been employed by GEICO since

1987.

35.     Plaintiff Jones is a covered employee within the meaning of the FLSA and NYLL.

36.     Throughout her employment with GEICO, Plaintiff Jones routinely worked over

40 hours a week but, pursuant to directives from his supervisors, did not report more than 7.75

hours for each of his five scheduled workdays (adding up to 38.75 hours per week).  Due to

increases in her workload, Plaintiff Jones worked substantial overtime starting in March 2020

through her promotion in spring 2022.  With rare exceptions during the relevant period, GEICO

did not pay Plaintiff Jones for all hours worked in excess of 38.75 hours per workweek,

including overtime pay for hours worked in excess of 40 hours per workweek.

37.     In approximately February or March 2022, prior to Plaintiff Jones' promotion to

being a Trainer, she attempted to submit time for hours worked above 38.75 hours in a week.

After a GEICO supervisor reviewed the request, she required Plaintiff Jones to spend a

significant amount of time writing a report to justify the additional pay for her regular caseload.

Plaintiff Jones had to detail at length in this report the cases she worked on during the pay period

and what tasks she completed.  Writing this took Plaintiff Jones at least two hours, effectively

dissuading her from submitting further requests to be paid for hours above 38.75 per workweek.

38.     Plaintiff Jones also recalls the same GEICO supervisor informing Plaintiff Jones

that she could see that Special Investigators she supervised (including Plaintiff Jones) were

working overtime hours, and observed that they were working until 9:00 p.m. at times.  GEICO

supervisors are able to tell when Special Investigators are working because supervisors must

review and approve case reports that Special Investigators submit, which have various time-stamped entries in GEICO's case management software.

***Defendant GEICO***

39.    Defendant GEICO is an indirect wholly owned subsidiary of Berkshire Hathaway, Inc. and its headquarters are located at 5260 Western Avenue, Chevy Chase, Maryland, 20815. Defendant does business throughout the United States, including New York.

40.    At all relevant times, GEICO was and is an "employer" within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs and Special Investigators.

41.    At all times relevant, GEICO maintained control, oversight and direction over Plaintiffs and similarly situated employees.  This consisted of maintaining timekeeping and payroll records and systems; supervising and directing their work; evaluating their work using various time-based performance metrics; and tracking the tasks they performed using GEICO's case management software and other supervisory tools.

42.    GEICO applies the same employment policies, practices, and procedures to all Collective and Class Members.

43.    At all relevant times, GEICO's annual gross volume of sales made or business done was not less than $500,000.

**JURISDICTION AND VENUE**

44.    This Court has subject matter jurisdiction pursuant to 8 U.S.C. § 1331, 1332, and 1367, and by 29 U.S.C. § 201, *et. seq*.

45.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and GEICO is subject to personal jurisdiction in this District.

46.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47.     Plaintiffs bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and Collective Members.

48.     The FLSA Collective is defined as follows:

> All current and former non-exempt classified employees of GEICO who worked as Special Investigators (including comparable roles with different titles) throughout the United States during the time period from three years prior to the filing of the complaint (ECF No. 1) until resolution of this action.

49.     All of the work that Plaintiffs and Collective Members have performed has been assigned by GEICO, or GEICO has been aware of all of the work that Plaintiffs and Collective Members have performed.

50.     As part of its regular business practice, GEICO has intentionally, willfully, and repeatedly engaged in a pattern, practice, or policy of violating the FLSA with respect to Plaintiffs and Collective Members.  This policy and pattern or practice includes, but is not limited to:

a.  willfully failing to pay Plaintiffs and Collective Members overtime wages for all of the hours that they worked for GEICO in excess of 40 hours per workweek; and

b.  willfully failing to record all of the time that its employees, including Plaintiff and putative Collective Members, have worked for Defendant.

51.     GEICO is aware or should have been aware that the FLSA requires them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

52.     GEICO's unlawful conduct has been widespread, repeated, and consistent.

53.    The Collective Members are known to GEICO, are readily identifiable, and can be located through GEICO's records.

54.    Court-authorized notice should issue to the Collective Members to provide them with an opportunity to learn about this lawsuit and submit a consent to join form pursuant to 29 U.S.C. § 216(b) if they wish to join it.

## CLASS ALLEGATIONS

55.    Plaintiffs bring the Second and Third Causes of Action under the NYLL and under Fed R. Civ. P. 23(a) and (b), on behalf of themselves and all similarly situated Special Investigators who worked for GEICO in New York during the period between six years prior to the filing of the original Complaint and the date of final judgment in this matter (the "Class").

56.    Excluded from the Class is GEICO, its legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in GEICO; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

57.    All of the work that Plaintiffs and Class Members have performed has been assigned by GEICO, or GEICO has been aware of all of the work that Plaintiffs and Class Members have performed.

58.    As part of its regular business practice, GEICO has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL with respect to Plaintiffs and Class Members.  This policy and pattern or practice includes, but is not limited to:

      a.  willfully failing to pay Plaintiffs and Class Members overtime wages for all of the hours that they worked for GEICO in excess of 40 hours per workweek;

    b.  willfully failing to pay Plaintiffs and Class Members wages at their agreed rate of pay for all of the hours that they worked for GEICO;

    c.  failing to provide proper wage and statements and notices as required by law; and

    d.  willfully failing to record all of the time that its employees, including Plaintiffs and putative Class Members, have worked for Defendant.

59.    GEICO is aware or should have been aware that the NYLL requires them to pay employees performing non-exempt duties for all hours worked, and to pay overtime premiums for hours in excess of 40 per workweek.

60.    GEICO's unlawful conduct has been widespread, repeated, and consistent.

61.    The members of the Class are readily ascertainable.  The number and identity of Class Members are determinable from GEICO's records.  The positions held and the rates of pay for each Class Member are also determinable from GEICO's records.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from GEICO.  Notice can be provided by means permissible under Rule 23.

*Numerosity*

62.    Upon information and belief, there are more than 40 members in the Class.

63.    The number of putative Class Members are therefore too numerous to be individually joined in this lawsuit.

*Common Questions of Law and Fact*

64.    There are questions of law and fact common to Plaintiffs and Class Members that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact include, without limitation:

    a.  whether GEICO failed to keep true and accurate time records for all hours worked by Plaintiffs and Class Members;

    b.   what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

    c.   whether GEICO failed or refused to pay Plaintiffs and Class Members for all hours worked in violation of the NYLL;

    d.   whether GEICO's violations of the NYLL were willful;

    e.   the nature and extent of the Class-wide injury and the appropriate measure of damages for the Class;

    f.   whether GEICO had a policy of failing to pay workers for time that they work;

    g.   whether GEICO correctly calculated and compensated Plaintiffs and Class Members for hours worked in excess of 40 per workweek.

*Typicality*

65.    Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

66.    All Class Members were subject to the same practices of GEICO, as alleged herein, of failing to pay overtime, failing to pay for off-the-clock work, and failing to provide proper wage statements and notices.

67.    Plaintiffs and Class Members have all sustained similar types of damages as a result of GEICO's failure to comply with the NYLL.

68.    Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to GEICO's common policies, practices, and patterns of conduct.  GEICO's corporate-wide policies and practices affected all Class Members similarly, and GEICO benefited from the same type of unfair and wrongful acts as to each of the Class Members.

69.     Plaintiffs and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

70.     Plaintiffs are able to fairly and adequately represent and protect the interests of the Class that they seek to represent because Plaintiffs' interests do not conflict with the interests of the members of the Class.

71.     Plaintiffs are represented by counsel who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

*Superiority*

72.     A class action is superior to other available means for the fair and efficient adjudication of this controversy – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to Plaintiffs and Class Members predominate over any questions affecting only individual members of the Class.  Individualized litigation increases the delay and expense to all parties and the Court.  By contrast, class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

73.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, and, in turn, would establish incompatible standards of conduct for GEICO.

74.    Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the parties and the judicial system.

75.    Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COMMON FACTUAL ALLEGATIONS

*Overtime Wages Owed to Special Investigators*

76.    GEICO is in the business of providing vehicle insurance, property insurance, and business insurance.  GEICO operates in all 50 states, including New York.

77.    Plaintiffs,Collective Member, and Class Members are current and former Special Investigators in New York.  Special Investigators work remotely from their homes and in the field.  The duties of Special Investigators include but are not limited to investigating claims of suspected auto and medical insurance fraud, which entails reviewing case files, running background checks, examining provider billing reports, driving out to accident or theft sites, gathering evidence, interviewing witnesses and law enforcement, confirming police reports, canvassing and surveilling scenes, conducting examinations under oath, and writing and submitting reports regarding their determinations of the case.

78.    GEICO generally requires Special Investigators to seek approval from their supervisors to submit any hours above 38.75 hours, and GEICO management makes it known to Special Investigators that reporting hours above 38.75 hours will not be approved.  On a few occasions, GEICO has authorized Special Investigators to work overtime, but generally as an incentive to take on additional cases or special projects in addition to their existing caseloads.

79.    Special Investigators are subject to an array of performance metrics, which include, among other things, how many hours it takes to complete a case task, how often an entry

is made in a case report, how many days it takes to close a case, how many cases are completed within a month, among other metrics. These metrics are tied to completing all such work within 7.75 hours per day or 38.75 hours per week. Failure to complete work within these allotted hours negatively impact performance ratings and are grounds for disciplinary action up to and including termination.

80.    GEICO's performance metrics/ratings and case assignments are structured such that Special Investigators must regularly work off-the-clock, including working overtime, or else risk disciplinary action. GEICO determines Special Investigators' caseloads and regularly assigns more cases each week. Special Investigators' daily work includes time-intensive field work (including driving and canvassing scenes)[5] and interviews (including conducting investigations under oath). Special Investigators must also ensure that they are meeting GEICO's performance metrics and do so by reviewing and accepting a new case assignment within a certain number of hours (typically 24 hours or less); making regular entries into each case file; and closing cases and submitting reports in a timely manner, or else risk getting a negative evaluation and being subject to disciplinary action.

81.    To keep up with GEICO's metrics and avoid disciplinary action, Special Investigators regularly work beyond 40 hours per workweek, despite reporting only 7.75 hours per day (or 38.75 hours per week).

---

[5]    During the height of the COVID-19 pandemic, field operations were halted from March 2020 to approximately November 2021, so all work was done remotely. However, GEICO's point-based work allocation system assigned remote cases a lesser value than in-person field work, under the inaccurate assumption that remote work could be completed in less time. Subsequently, GEICO increased Special Investigators' caseloads and they had to work significant overtime to complete more cases and keep up with performance metrics.

82.     Special Investigators are not compensated for the hours they work off the clock above 38.75 hours per week, including hours worked in excess of 40 per week, except in limited circumstances.

83.     GEICO further disincentivizes Special Investigators from reporting this off-the-clock or unrecorded time through its evaluation system by using metrics that result in lower evaluation scores when Special Investigators report working more time.  If a Special Investigator reports working additional hours, and a supervisor approves the submission of additional hours, this leads to reduced performance ratings.

84.     The time that GEICO requires Special Investigators to work without compensation deprived them of substantial pay to which they are entitled under the FLSA and the NYLL, including overtime pay for hours worked in excess of 40 per week.

85.     GEICO was aware that Special Investigators worked more than 40 hours per workweek, yet GEICO failed to pay them any overtime compensation for any of the hours worked over 40 in a workweek.

86.     However, GEICO was aware that Special Investigators routinely worked more than 40 hours per workweek.  Special Investigators had conversations and meetings with their supervisors and upper management about their caseload and hours worked, including complaints about unpaid overtime.

87.     Plaintiffs are informed, believe, and thereon allege that GEICO's unlawful conduct has been widespread, repeated, and consistent as to the Collective and Class Members and throughout GEICO's operations.  GEICO's unlawful conduct and pay practices stem from a corporate policy to limit labor expenses.

88.     GEICO was or should have been aware that the FLSA and NYLL required it to pay Special Investigators overtime compensation for all hours worked in excess of 40 per week.

89.     GEICO was or should have been aware that the NYLL required it to pay Special Investigators for all hours worked, including non-overtime hours worked.

90.     GEICO's failure to pay Special Investigators overtime wages for all hours in excess of 40 hours per workweek was willful, intentional, and in bad faith.

91.     GEICO's unlawful conduct has been widespread, repeated, and consistent.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Unpaid Overtime Wages**
**(Brought on behalf of Plaintiffs and Collective Members)**

92.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

93.     GEICO has engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

94.     Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

95.     At all relevant times, Plaintiff and Collective Members were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

96.     The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to GEICO.

97.     GEICO is an employer engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

98.     At all relevant times, Plaintiffs and Collective Members are, or were, employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

99.     GEICO failed to pay Plaintiffs and Collective Members the overtime wages to which they were entitled under the FLSA.

100.    GEICO failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and Collective Members.

101.    GEICO's violations of the FLSA, as described herein, have been willful and intentional.  GEICO failed to make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and Collective Members.

102.    Because GEICO's violations of the FLSA have been willful, a three-year statute of limitations applies to this First Cause of Action, pursuant to 29 U.S.C. § 255.

103.    As a result of GEICO's willful violations of the FLSA, Plaintiff and putative Collective Members have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq.*

104.    As a result of the unlawful acts of GEICO, Plaintiffs and Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

### SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime Wages
### (On behalf of Plaintiffs and the Class)

105.    Plaintiffs reallege and incorporate by reference all preceding allegations.

106.    GEICO has engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

107.    At all times relevant, Plaintiffs and Class Members have been employees of GEICO, and GEICO has been the employer of Plaintiffs and Class Members within the meaning

of the NYLL §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

108.    GEICO failed to pay Plaintiffs and the Class Members all overtime wages for all overtime hours worked to which they are entitled under the NYLL.  GEICO failed to pay Plaintiffs and the Class Members for all overtime hours worked at a wage rate of one and one-half times their regular rates of pay.

109.    GEICO failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and Class Members.

110.    GEICO lacked a good faith basis, within the meaning of NYLL § 663, to believe its failure to pay Plaintiff overtime wages complied with the NYLL.

111.    Through their knowing or intentional failure to pay Plaintiffs and Class Members wages for all hours worked at the appropriate rate, GEICO has willfully violated the NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

112.    As a result of the unlawful acts of GEICO, Plaintiffs and Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs and such other relief as provided by law.

**THIRD CAUSE OF ACTION**
**NYLL – Unpaid Non-Overtime Wages**
**(Brought on behalf of Plaintiffs and the Class)**

113.    Plaintiffs reallege and incorporate by reference all preceding allegations.

114.    GEICO has engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

115.    At all times relevant, Plaintiffs and Class Members have been employees of GEICO, and GEICO has been the employer of Plaintiffs and Class Members within the meaning of the NYLL §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

116.    GEICO failed to pay Plaintiffs and the Class Members non-overtime wages to which they are entitled under the NYLL Art. 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, specifically N.Y. Lab. Law § 661(3).

117.    GEICO failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and Class Members.

118.    GEICO lacked a good faith basis, within the meaning of NYLL § 663, to believe its failure to pay Plaintiff overtime wages complied with the NYLL.

119.    Through their knowing or intentional failure to pay Plaintiffs and Class Members wages for all hours worked at the appropriate rate, GEICO has willfully violated the NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

120.    As a result of the unlawful acts of GEICO, Plaintiffs and Collective Members have been deprived of non-overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and such other relief as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated individuals, pray for the following relief:

A.    Designation of this action as a collective action on behalf of Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant

to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in collective, apprising them of the pendency of this action, and permitting them to assert timely claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Certification of this case as a class action pursuant to Rule 23;

C.    Designation of Plaintiffs as the representatives of the Class and their counsel of record as Class Counsel;

D.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, et seq., the NYLL, Article 6, §§ 190, et *seq.*, NYLL, Article 19, § 650, *et seq.*, and/or the supporting New York State Department of Labor Regulations;

E.    Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendant from continuing their unlawful practices;

F.    An award of damages, according to proof, including unpaid overtime wages, and an additional and equal amount as liquidated damages;

G.    An award of damages, according to proof, including unpaid non-overtime pay, and an additional and equal amount as liquidated damages pursuant to the NYLL;

H.    Penalties, as provided by law;

I.    Pre-judgment and post-judgment interest, as provided by law; and

J.    Attorneys' fees and costs of the action incurred herein, including expert fees;

K.     Reasonable service awards for the named Plaintiffs to compensate them for the time they spent attempting to recover wages for the class and collective members and for the risks they took in doing so;

L.     Such other and further relief as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all issues so triable.


Dated: New York, NY
       April 17, 2023

Respectfully submitted,

*/s/Troy L. Kessler*
Troy Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: 631-499-9100
Facsimile: 631-499-9120
tkesler@kesslermatura.com
gkaske@kesslermatura.com

Michael J. Scimone
Theanne Liu Svedman*
Jarron D. McAllister*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
tliu@outtengolden.com
jmcallister@outtengolden.com

* Admission application forthcoming

*Attorneys for Plaintiffs and the Putative Class and Collective*