**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

KEITH FISCHER, MICHAEL O'SULLIVAN,
JOHN MOESER, LOUIS PIA, THOMAS
BARDEN, CONSTANCE MANGAN, and
CHARISE JONES individually and on
behalf of all others similarly situated,

                    Plaintiffs,            **MEMORANDUM AND ORDER**

    v.                         **23-cv-2848 (SJB) (ST)**

GOVERNMENT EMPLOYEES INSURANCE
COMPANY d/b/a GEICO,

                    Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Keith Fischer, Michael O'Sullivan, John Moeser, Louis Pia, Thomas Barden, Constance

Mangan, and Charise Jones ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and

others similarly situated, allege, among other things, that their current and former employer,

Government Employees Insurance Company ("Defendant" or "GEICO"), violated the Fair Labor

Standards Act ("FLSA") by failing to pay overtime wages. *See* Second Am. Compl., ECF No. 52

("SAC"). Before this Court is Plaintiffs' motion for court-authorized notice (*i.e.* conditional

certification of a proposed FLSA collective) under 29 U.S.C. § 216(b) (the "Motion"), and

Defendant's related motion to strike declaration testimony (the "Motion to Strike") submitted in

support of the Motion. For the reasons discussed below, Plaintiffs' Motion is GRANTED, and

Defendant's Motion to Strike is DENIED.[1] However, Plaintiffs' proposed notification plan is to

---

[1] Also before the Court is Plaintiffs' Motion to file certain documents under seal (ECF No. 63), which, for the reasons set forth in the Court's previous order, is GRANTED. *See* Order, dated December 12, 2023, ECF No. 43.

be MODIFIED as set forth herein.

## BACKGROUND

### I.    FACTUAL BACKGROUND

This Court assumes the Parties' familiarity with the facts alleged.  To summarize, Plaintiffs are current and former non-exempt employees who live in New York and work or have worked as Special Investigators for Defendant, an insurance company.[2]  SAC. ¶ 2.  Generally, the Special Investigator's job is to investigate claims of suspected insurance fraud.  *Id.*  Special Investigators work remotely from their homes and in the field.  *Id.* ¶ 107.

Plaintiffs allege that Defendant failed to pay Special Investigators for time worked beyond 38.75 hours in a week, including overtime compensation for hours worked beyond 40, despite that it was often necessary for Special Investigators to do so.  *Id.* ¶ 115; *see generally id.*  Allegedly, Defendant only permitted Special Investigators to report 7.75 hours of work each day, or 38.75 hours each week, even though Special Investigators regularly had to work additional, off-the-clock hours to meet the job's demands.  *See id.* ¶ 4.  To that end, Defendant allegedly evaluated the Special Investigators' work performance based on certain metrics, including the length of time it took them to complete tasks and close cases, the frequency with which they made entries in case reports, and the number of cases they completed within a month.  *See id.*  Plaintiffs claim that "failure to complete work" within the allotted 7.75 hours per day or 38.75 hours per week would negatively impact their performance ratings and were grounds for disciplinary action, including termination.  *Id.* ¶ 109.

---

[2] Plaintiffs define "Special Investigator" as "an overarching job title that GEICO applied to Plaintiffs and other employees with substantially similar job duties."  SAC ¶ 2 n.2.  Plaintiffs use the term "to refer to all such employees who performed similar investigative work and were subject to the same overtime practices.  These job titles include, *inter alia*, Level 65 Special Investigators, Level 66 Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators."  *Id.*

According to Plaintiffs, Defendant assigned the Special Investigators "an ever-increasing workload," knowing it would require them to work "substantially more than 40 hours a week to complete." *Id.* ¶ 3. Yet, Defendant allegedly prohibited the Special Investigators from working overtime without prior permission, and actively deterred them from reporting their overtime, leading them to ultimately underreport their hours, and thus not get paid for those hours. *Id.*; *see e.g.*, *id.* ¶ 51.

Plaintiffs allege that Defendant knew that Special Investigators were doing unpaid work, "but did nothing to stop it." *Id.* ¶ 6. For example, at a Christmas luncheon in or around 2018, Special Investigators "raised concerns about their escalating workload and the lack of authorized overtime hours" to a supervisor, who allegedly responded that "this was just the way it was going to be." *Id.* ¶ 17. In another instance, a supervisor allegedly told Plaintiff O'Sullivan that Defendant would not authorize overtime pay "just for typing"—*i.e.*, writing case reports—despite that the job required it. *Id.* ¶ 26. In yet another instance, a supervisor allegedly questioned Plaintiff Moeser on why he was submitting overtime hours to do "office work," which included, among other things, summarizing the examinations he had conducted in the field, a required part of his job. *Id.* ¶ 35. Although Plaintiff Moeser's hours were subsequently approved in that case, the supervisor allegedly discouraged Plaintiff Moeser from reporting such time in the future. *Id.* In a meeting with Defendant's upper management in 2018 or 2019, Special Investigators allegedly "voiced concerns regarding their workload and unpaid overtime hours." *Id.* ¶ 58. In response, a manager allegedly said, "I don't give a f***." *Id.* ¶ 58. The SAC contains other comparable examples. *See generally id.*

Plaintiffs allege that they "routinely" worked over 40 hours a week but did not report all those hours pursuant to their supervisors' directives. *Id.* ¶¶ 11, 21, 30, 38, 46, 54, 61. Plaintiffs

3

also allege that their workloads increased and, in some cases, nearly doubled during the COVID-19 pandemic.[3]  *Id.* ¶¶ 14, 33, 41, 48, 64; *see id.* ¶ 22.  Although Plaintiffs were working longer hours during that time—for example, allegedly 60-75 hours per week in Plaintiff Fischer's case—they continued reporting only 38.75 hours because their supervisors told them that they were not allowed to report additional time without prior approval.  *Id.* ¶¶ 14, 15, 22, 34, 42, 49, 65.

Plaintiffs allege that supervisors, on occasion, made exceptions.  *See id.* ¶ 108.  For example, Plaintiff Fischer's supervisors approved overtime for seven days in late 2017 and 2018.  *Id.* ¶ 13.  However, Plaintiffs claim that Defendant made these exceptions "generally as an incentive to take on additional cases or special projects in addition to their existing caseload."  *Id.* ¶ 108.  During the COVID-19 pandemic, for example, Plaintiffs allege that supervisors offered to pay overtime to Special Investigators who took on additional cases, "on top of their already-high workload," for a "brief period" between approximately May and August 2020.  *Id.* ¶¶ 15, 24, 34, 42, 49, 65.  Even still, except for specific instances, Plaintiffs allege that Defendant did not pay them for all hours worked over 38.75 per week, including overtime pay for hours worked over 40 per week.  *See, e.g.*, *id.* ¶ 49.  Moreover, Plaintiffs claim that even supervisor-approved overtime hours ultimately resulted in "reduced performance ratings."  All this conduct, Plaintiffs allege, was "widespread, repeated, and consistent."  *Id.* ¶ 121.

## II.    PROCEDURAL HISTORY

Plaintiffs sued Defendant on April 17, 2023, alleging FLSA and New York Labor Law (NYLL) violations.  *See* Compl., ECF No. 1.  On October 6, 2023, Plaintiffs filed an amended complaint adding a named plaintiff, Ashley Alvarez, and alleging violations of California law.  *See* Am. Compl., ECF No. 28.  On November 17, 2023, Plaintiffs moved for conditional certification

---

[3] Plaintiff Mangan was an exception, alleging that her hours decreased during the pandemic as she had scheduled time off in June 2020, and planned retirement in July 2020.  SAC ¶ 57.

of the proposed FLSA Collective. *See* Notice of Mot., ECF No. 36. The Court denied the motion with leave to renew following a decision on Defendant's then-anticipated motion to dismiss. *See* Order, dated December 12, 2023, ECF No. 43.

On February 8, 2024, the Parties stipulated and agreed that Plaintiffs would amend the complaint again. *See* Joint Stipulation, ECF No. 49. Per the Joint Stipulation, Plaintiffs agreed to: withdraw Alvarez's claims and remove her as a named plaintiff, as well as all plaintiffs and opt-in plaintiffs who did not reside in New York (*i.e.* named plaintiff Alvarez and opt-in plaintiffs Mark Sowell, Danielle Ennis, and Kathleen Austin); limit the scope of the proposed FLSA Collective to Special Investigators who lived in New York; and re-file the dismissed plaintiffs' claims in another forum. *Id.*

Accordingly, Plaintiffs filed the SAC on February 23, 2024.[4] *See* SAC. In the SAC, Plaintiffs allege, on behalf of themselves and a proposed FLSA Collective, that Defendant's failure to pay overtime wages violated the FLSA.[5] The SAC defines the proposed FLSA Collective as:

> All current and former non-exempt classified employees of GEICO who worked as Special Investigators (including comparable roles with different titles) in New York during the time period from three years prior to the filing of the complaint (ECF No. 1) until resolution of this action[.]

SAC ¶ 78. Since the filing of the original complaint, several Special Investigators have opted-in to the lawsuit.

On April 15, 2024, Plaintiffs again moved to conditionally certify the FLSA Collective, but the Court denied the motion for Plaintiffs' failure to follow the bundling rule. *See* Docket Order, dated April 16, 2024. However, the Court permitted briefing on the motion and the motion's re-filing. *Id.* On June 5, 2024, Plaintiffs filed the fully-briefed instant Motion. *See* Mot.,

---

[4] Defendant filed its Answer to the SAC on March 15, 2024. *See* Answer, ECF No. 53.
[5] In the SAC, Plaintiffs also allege on behalf of themselves and a proposed class that Defendant's conduct violated the NYLL. *See* SAC ¶¶ 85–105; 135–150. The instant Motion, however, does not concern the proposed New York class.

ECF No. 62.  On June 12, 2024, Defendant filed the Motion to Strike.  *See* Mot. Strike, ECF No. 64.

In support of their Motion, Plaintiffs submit declarations from their attorney,[6] the Named Plaintiffs,[7] the current opt-in plaintiffs,[8] and two former opt-in plaintiffs.[9]  Plaintiffs also provide the Proposed Notice, Consent to Join Form, Proposed Email and Text Notices, and Proposed Reminder Email, Text, and Postcard Notices.[10]  If permitted to send court-authorized notice, the Proposed Notice will be sent to those who (Defendant's records show) "lived in New York state and were employed as a Special Investigator in New York state between November 23, 2020, and the present."  *See* Proposed Notice.

In opposing the Motion, Defendant provides declarations from other employees[11] and a summary of those declarations "by topic of testimony."[12]  However, to the extent that Defendant's submissions contradict Plaintiffs', they "serve only to create a question of fact; they do not, as a matter of law, defeat the motion for conditional certification."  *Riske v. GEICO*, 21-cv-4122 (JMA) (AYS), 2022 WL 17127745, at *7 (E.D.N.Y. Nov. 22, 2022); *see Ugwudiobi v. Int'l Trendz, LLC*, 22-cv-4930 (RER) (CLP), 2024 WL 4333840, at *6 (E.D.N.Y. Sept. 27, 2024) ("Even if defendants were able to support their version of events, disputed issues of fact such as these are

---

[6] *See* Scimone Decl., ECF No. 62-2.
[7] *See* Fischer Decl., ECF No. 62-10; O'Sullivan Decl., ECF No. 62-23; Moeser Decl., ECF No. 62-20; Pia Decl., ECF No. 62-24; Barden Decl., ECF No. 62-3; Mangan Decl., ECF No. 62-18; Jones Decl., ECF No. 62-16.
[8] *See* Brady Decl., ECF No. 62-4; Brust Decl., ECF No. 62-5; Caniglia Jr. Decl., ECF No. 62-6; Caniglia Sr. Decl., ECF No. 62-7; Costanzo Decl., ECF No. 62-8; Diniso Decl., ECF No. 62-9; M. Fischer Decl., ECF No. 62-11; Geraci Decl., ECF No. 62-12; Giambalvo Decl., ECF No. 62-13; Gillen Decl., ECF No. 62-14; Grey Decl., ECF No. 62-15; King Decl., ECF No 62-17; McManus Decl., ECF No. 62-19; Munoz Decl., ECF No. 62-21; Neenan Decl., ECF No. 62-22; Reed Decl., ECF No. 62-25; Teatum Decl., ECF No. 62-26; Wendling Decl., ECF No. 62-27.
[9] *See* Ennis Decl., ECF No. 62-28; Sowell Decl., ECF No. 62-29.
[10] Court Authorized Notice of Lawsuit ("Proposed Notice") & Consent to Join Form, ECF No. 62-30; Proposed Email and Text Notices, ECF No. 62-31; Proposed Reminder Email, Text, and Postcard Notices, ECF No. 62-32.
[11] *See* Fogarty Decl., ECF No. 62-37; Newport Decl., ECF No. 62-38; Neyland Decl., ECF No. 62-39; McDermott, ECF No. 62-40; Koenig Decl., ECF No. 62-41; Sheppard Decl., ECF No. 62-42; Butler Decl., ECF No. 62-46; Portnoy Decl., ECF No. 62-47; McMullen Decl., ECF No. 62-51.
[12] ECF No. 62-50.  Additionally, both Parties have filed several other supporting documents under seal.  *See* ECF No. 63.

not appropriately resolved on a motion for conditional certification."). Defendant's declarations, accordingly, have "limited value to the instant motion." *Costello v. Kohl's Illinois, Inc.*, 13-cv-1359 (GHW), 2014 WL 4377931, at 7* n.7 (S.D.N.Y. Sept. 4, 2014) (citing *Stevens v. HMSHost Corp.,* 10-cv-3571(ILG), 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) ("such evidence cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery." (further citations and quotation marks omitted)).

Notably, following their withdrawal from this action, the out-of-state plaintiffs and opt-in plaintiffs—*i.e.* Special Investigators outside New York—sued GEICO, alleging practically identical facts, in the United States District Court for the District of Maryland. *See Alvarez et al v. GEICO*, 24-cv-722 (D. Md.); Suppl. Authority at 22 n.25, ECF No. 83-1. In that case, the Honorable George L. Russell granted in-part and denied in-part the plaintiffs' motion for court-authorized notice, holding that the plaintiffs had made the required factual showing for conditional certification, but that the proposed notification method required modification. *See id.* Judge Russell also denied GEICO's motion to strike declaration testimony submitted in support of the plaintiffs' motion for court-authorized notice. *See id.* On November 20, 2024, Plaintiffs submitted Judge Russell's opinion to this Court as supplemental authority. *See* Notice of Suppl. Authority, ECF No. 83. Although not binding, the opinion is nevertheless instructive, given the two actions' similar factual allegations.[13]

## **LEGAL STANDARD**

Under the FLSA, an employee suing his employer for unpaid wages may do so as a

---

[13] Ashley Alvarez, now a named plaintiff in the Maryland case, was formerly a named plaintiff in this case. *See* Joint Stipulation. Mark Sowell and Danielle Ennis, formerly opt-in plaintiffs in this case, have since joined the Maryland case. *See id.*

collective—*i.e.*, on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) ("where the conditions of [the FLSA] are met, employees have a substantive 'right' to proceed as a collective"). Certifying FLSA Collectives based on the "similarly situated" requirement involves two steps. *Scott*, 954 F.3d at 515. This litigation is currently at step one—conditional certification—in which the Court "permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Those potential plaintiffs may then "opt-in" to the case by filing written consent on the docket. *Ugwudiobi*, 2024 WL 4333840, at *4. At step two, "with the benefit of additional factual development," the court decides "whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt*, 811 F.3d at 540. If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

In deciding whether to conditionally certify the collective, and thus authorize notice, the threshold issue before the Court is whether the opt-in plaintiffs are similarly situated to the named Plaintiffs. Plaintiffs are "similarly situated" if they "are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. The relevant inquiry "is not whether plaintiffs in the potential collective are identically situated, or that they possess the same attributes with respect to their job, but rather whether they share common, material questions of fact or law with respect to their claims." *Hernandez v. NHR Human Resources, LLC*, 20-cv-3109 (PGG) (DF), 2021 WL 2535534, at *10 (S.D.N.Y. June 18, 2021). Put differently, "plaintiffs are similarly situated, and

8

may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516.

At the conditional certification stage, the Court's inquiry is limited, as the merits of the plaintiffs' claims are not at issue. *Ugwudiobi*, 2024 WL 4333840, at *4; *Xia v. New Yung Wah Carrier LLC*, 21-cv-475 (HG) (VMS), 2023 WL 130830, at *4 (E.D.N.Y. Jan. 9, 2023) ("whether the plaintiff will eventually succeed on the merits of his FLSA claim is immaterial." (citations omitted)). The Court should conditionally certify the collective so "long as the plaintiffs' allegations 'are sufficient on their face' to support certification—even if such allegations conflict with the account asserted by the defendants." *Valdez v. MichPat & Fam, LLC*, 20-cv-2570 (AMD), 2022 WL 950450, at *3 n.3 (E.D.N.Y. Mar. 30, 2022) (citing *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 264 (D. Conn. 2020)).

As "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," the standard of proof is "low." *Myers*, 624 F.3d at 555 (emphasis in original). Although "'unsupported' assertions cannot suffice, the standard is nonetheless 'fairly lenient.'" *Santiago v. Cuisine By Claudette, LLC*, 23-cv-2675 (OEM), 2023 WL 8003323, at *2 (E.D.N.Y. Nov. 17, 2023) (citing *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017)); *see Xia*, 2023 WL 130830, at *6 ("the factual showing required for conditional certification is a 'lenient one.'"). Plaintiffs can meet this "modest factual showing" through their "own pleadings, affidavits, and declarations, including any hearsay statements contained therein and the Court is required to draw all inferences in his favor without resolving credibility or factual disputes." *Taylor v. R.J.T. Motorist Serv., Inc.*, 19-cv-1155 (PMH), 2020 WL 4937483, at *2 (S.D.N.Y. Aug. 24, 2020) (cleaned up) (citing *Chen v. Kicho Corp.*, 18-cv-7413, 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020)); *see Yi Mei Ke v. JR Sushi 2 Inc.*, 19-cv-7332 (PAE)

(BCM), 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) ("courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice."). "[I]t is well recognized that the burden at the conditional certification stage is so low that even [a] Plaintiff's lone affidavit setting forth a common payment scheme may suffice." *Rieske*, 2022 WL 17127745, at *6.

## DISCUSSION

### I.   MOTION TO STRIKE

Before considering Plaintiffs' Motion, this Court will address Defendant's Motion to Strike, as it concerns threshold evidentiary issues.  Defendant insists that the Court should strike the declaration testimony that is, according to Defendant:

> (i) not from either a Named Plaintiff in this action or an individual included in Plaintiffs' definition of the membership of their proposed collective action; (ii) not based on the personal knowledge of the declarant; (iii) conclusory or speculative; (iv) inadmissible hearsay; (v) a legal conclusion or legal boilerplate language; or (vi) not properly submitted under the signature requirements of the governing rules.

Defs.' Mem. Supp. at 1, ECF 64-1.  As discussed below, this Court rejects Defendant's arguments and denies the Motion to Strike.

The Motion to Strike appears to be, overarchingly, an attempt to further undermine the sufficiency of Plaintiff's submissions to meet the requisite factual showing for conditional certification, rather than a legitimate attempt to strike plainly improper declarations.  The Motion to Strike largely relies on inapplicable out-of-Circuit cases.  The Motion to Strike also seeks to hold the declarations to an inappropriately high evidentiary standard as if they were submitted, for example, in support of a motion for summary judgment.  However, at the conditional certification stage, the Court does "not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *Korenblum v. Citigroup, Inc*., 195 F.Supp.3d 475, 480 (S.D.N.Y.

2016) (citations omitted); *see Ademi*, *v. Central Park Boathouse, LLC*, 22-cv-8535, 2023 WL 6211979, at *6 (S.D.N.Y. Sept. 25, 2023) ("at this initial stage, the Court does resolve any factual disputes."). Accordingly, this Court reviews the declarations merely to determine whether they provide factual support for conditional certification of the proposed FLSA Collective—a low bar at this stage.

Defendant first argues that the Court should strike the declarations of Mark Sowell and Danielle Ennis, as they are no longer opt-in members of the proposed FLSA Collective. *See* Sowell Decl.; Ennis Decl. Indeed, Sowell and Ennis withdrew from this action (upon the Parties' Joint Stipulation to dismiss all plaintiffs who do not reside in New York) and have since joined the *Alvarez* action. *See* Joint Stipulation; Suppl. Authority. However, Defendant cites no authority for the proposition that a court may not consider an otherwise relevant third-party witness declaration in deciding whether to conditionally certify a FLSA collective. Assuming such a rule exists, however, Defendant's argument is effectively moot, as the Court need not rely on those two declarations to reach a conclusion regarding conditional certification. As such, the Court declines to strike the Sowell and Ennis declarations from the record on this basis.

Defendant also argues that the Court should strike the declarations for containing information supposedly not based on the declarants' personal knowledge. Defendant cites the following examples:

> **Declaration of Keith Fischer – Paragraph 20**: "I *and the other Special Investigators* were never shown the study. I believe CALG recommended a target caseload of approximately 16 cases for Special Investigators, which was and is far below my actual workload."
> **Declaration of Keith Fischer – Paragraph 12**: "GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75. *It was well known that supervisors would not approve* overtime for Special Investigators, and that hours above 38.75 to complete regular case work *would not be approved*."
> **Declaration of Evan Teatum – Paragraph 6**: "I was also aware that *other Special Investigators* had been scrutinized in the past when they reported overtime, and this

11

led me to believe that I would get into trouble if I reported all of the time I was working."

**Declaration of Craig Costanzo – Paragraph 12**: "GEICO assigned cases using a point-based system. *GEICO inaccurately assumed* that remote work could be completed in substantially less time than in-person field work, so it assigned remote cases fewer points. Because remote cases were given a lesser point value, GEICO increased my caseload significantly after March 2020."

**Declaration of Anthony Geraci – Paragraph 10**: "GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75. *I was told* that requesting overtime to complete my work would negatively affect my performance metrics and I wanted to remain in good standing. Accordingly, I worked many hours, including overtime hours off the clock, and *GEICO was aware* that I was performing this unpaid work."

**Declaration of Mark Giambalvo – Paragraph 9:** "*GEICO required* Special Investigators to submit information about our cases, what work needed to be performed on the case, and how much time was required to perform this work, and *GEICO supervisors still had the option* to deny overtime."

Def.'s Mem. Supp. at 4–5 (emphasis in original).

To support its argument, Defendant cites one case from this Circuit,[14] *Zamora v. L Plus L Productions LLC*. *See* 19-cv-1506 (GBD) (RWL), 2019 WL 5460559, at *4 (S.D.N.Y. Oct. 15, 2019). In *Zamora*, the court denied conditional certification where plaintiff claimed to have "'personal knowledge' based on conversations with and observations of other employees," but failed to "identify any particular conversation or observation." *Id.* at *4. The plaintiff also asserted "that other employees worked more than 40 hours per week and did not receive overtime pay," but did not "set[] forth the hours worked by anyone else or the amount of pay they received." *Id.* The court held that these "general, uncorroborated assertions with no detail" were insufficient to support conditional certification." *Id.*

The situation here is different from the one in *Zamora*, which, in any event, did not concern a motion to strike. Here, Defendant has cherry-picked a handful of sentences from a handful of declarations to claim that the declarations should be stricken for the declarants' lack of personal

---

[14] Defendant's remaining citations are to out-of-Circuit cases. *See* Def.'s Mem. Supp. at 5–6 (citing cases from the Eastern District of Wisconsin, Western District of Wisconsin, and Middle District of Tennessee).

knowledge.  *See* Def.'s Mem. Supp. at 4–5.  Defendant emphasizes phrases from the declarations written in passive voice (*e.g.*, "It was well known . . ."), and statements regarding GEICO's, rather than the declarant's, assumptions and knowledge (*e.g.*, "GEICO inaccurately assumed . . .").  *See id.*  However, these statements are not "general, uncorroborated" assertions with "no detail" like those before the court in *Zamora*.  Rather, a full read of the declarations reveals that these statements exist in the context of longer, more detailed declarations.  *See* Fischer Decl.; Teatum Decl.; Costanzo Decl.; Geraci Decl.; Giambalvo Decl.

Moreover, contrary to Defendant's arguments, these statements generally appear to be based on the declarants' personal experiences as GEICO employees.  For example, Defendant emphasizes this statement from the Geraci Declaration, "*I was told* that requesting overtime to complete my work would negatively affect my performance metrics and I wanted to remain in good standing."  Def.'s Mem. Supp. at 5 (emphasis in original).  Surely, Opt-in Plaintiff Geraci has personal knowledge of his experience being told information at work and acting in accordance with that information.  Similarly, Defendant emphasizes this statement from the Teatum Declaration, "I was also aware that *other Special Investigators* had been scrutinized in the past when they reported overtime."  *Id.* (emphasis in original).  Yet, Defendant does not explain why this statement could not be based on personal knowledge, especially considering that Opt-in Plaintiff Teatum explicitly stated that he was "aware" of the scrutiny that Special Investigators had faced.  As Judge Russell put it in *Alvarez*, "the Court can reasonably infer that these details are the kinds of information that a GEICO employee would learn during the normal course of employment."  Suppl. Authority at 17.

Regardless, courts routinely certify "conditional collective actions based on the plaintiff's affidavit declaring that 'they have personal knowledge that other coworkers were subjected to

similar employer practices.'" *Park v. Hanpool, Inc.*, 23-cv-11309 (VC), 2024 WL 4299749, at *4 (S.D.N.Y. Sept. 26, 2024) (citing *Qing Wang v. H.B. Rest. Grp., Inc.*, 14-cv-813, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014)); *Ademi*, 2023 WL 6211979, at *6 (collecting cases). "Even if lacking in specificity, 'personal observation and conversations with a small collective of co-workers who share the same duties and responsibilities' can suffice to make" the modest factual showing required for conditional certification. *Xia*, 2023 WL 130830, at *6 (citing *Miranda v. Gen. Auto Body Works, Inc.*, 17-cv-4116 (AMD) (RER), 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017)). The declarations here, at a minimum, provide just that. Accordingly, this Court declines to strike these declarations for lack of personal knowledge.

Similarly, Defendant next argues that much of the declaration testimony is vague and conclusory. Specifically, Defendant argues that "the Declarations should be stricken because they rely upon generalized, vague, and conclusory terms to argue the conclusions that Plaintiffs want this Court to reach." Def.'s Mem. Supp. at 6. Defendant's argument is unavailing.

Defendant argues that the following statements from the declarations are "vague, conclusory, and lacking in specific facts":

> Evan Teatum's declaration states in Paragraph 13 with no factual support that he received "lower scores [on performance evaluations] *due to an increased caseload*." (Declaration of Evan Teatum ¶ 13 (ECF No. 56-24) (emphasis added).) Other declarations suffer from similar defects. *See, e.g.*, Declaration of Mark Sowell ¶ 8 (ECF No. 56-27) ("I did not enter more hours into the timekeeping system as my supervisors said doing so would affect my rating. . . ."); Declaration of Scott Brady ¶ 8 ("My understanding from conversations with my supervisors was that GEICO did not authorize overtime if I needed to work on my regular caseload. GEICO authorized overtime only if it had additional cases to assign me."); *Id.* ¶ 15 ("I recall having phone calls with my supervisor in late 2020 through 2021 and complaining about my caseload. I was never admonished for working too many hours, and was just told that GEICO knew that it was busy for Special Investigators, to hang in there, and that it would change soon."); Declaration of Louis Caniglia, Jr. ¶ 14 (ECF No. 56-4) ("GEICO requires me to seek approval from my supervisor to clock-in for or otherwise submit any hours worked above 38.75 per week. My managers and supervisors have repeatedly told me and other

> Special Investigators that hours above 38.75 to complete regular case work would not be approved. Accordingly, GEICO failed to record all of my hours worked during my tenure, and I was not paid for hours, including overtime hours, that I worked off the clock.").

Def.'s Mem. Supp. at 7–8.

As an initial matter, these statements are not "vague, conclusory, or lacking in specific facts," when read in the context of the rest of their respective declarations. *Id.* at 7. While Defendant complains that these statements supposedly fail to "provide any specific facts about the supervisors involved or what statements they made," the declarations do, indeed, refer to supervisors by name. For example, as Defendant flags, Scott Brady attests that he "recall[s] having phone calls with [his] supervisor in late 2020 through 2021 and complaining about [his] case load." *Id.* at 8. According to his declaration, Opt-in Plaintiff Brady, "formerly reported to Gerard Cassagne and Toni D'Agata" and his "current immediate supervisor is Theresa Bishop." Brady Decl. ¶ 2. Once again, Defendant's cherry-picked statements from otherwise lengthier and more detailed declarations do not justify striking the declarations.

To further its argument, Defendant largely relies on *Adair v. Wisconsin Bell, Inc*., in which the Eastern District of Wisconsin concluded that plaintiffs failed to make a sufficient factual showing that they were similarly situated as victims of a common illegal practice. *See generally* 8-cv-280, 2008 WL 4224360 (E.D.Wis. Sept. 11, 2008). In that case—which did not concern a motion to strike—the plaintiffs offered *no* explanation for "why they believed decreased adherence [to a company policy] would result in discipline." *Id.* at *9. The court observed that the plaintiffs did "not indicate whether they feared such discipline because of a state-wide company policy or practice, the comments of a single supervisor, or their own unsupported speculation." *Id.* Here, by contrast, both the SAC and the declarations provide factual support—including multiple alleged

comments from multiple supervisors—for Plaintiffs' assertions.  As such, this Court will not strike the declarations on this basis.

Additionally, Defendant argues that the declarations should be stricken for containing hearsay.  This argument fails, as courts routinely allow declarations based on hearsay at the conditional certification stage.  *See Yi Mei Ke*, 2021 WL 148751, at *7 ("courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice."); *Taylor*, 2020 WL 4937483, at *2 ("Plaintiff may meet this modest factual showing with reference to his own pleadings, affidavits, and declarations, including any hearsay statements contained therein . . ."); *see also Anjum v. J.C. Penney Co., Inc.*, 13-cv-460 (RJD), 2015 WL 3603973, at *6 (E.D.N.Y. June 5, 2015) (noting that hearsay does not dimmish value of employee affidavits at the conditional certification stage).  Even cases that *Defendant* cites support this proposition.  *See, e.g.*, *Zamora*, 2019 WL 5460559, at *4 ("For this initial stage, courts 'regularly rely on . . . hearsay statements in determining the propriety of sending notice.'" (citations omitted)).  As such, this Court will not strike the declarations for hearsay.

Defendant also argues that the Court should strike the declarations for containing supposedly impermissible legal conclusions and boilerplate language.  Defendant takes issue with the following paragraph from the declarations:

> As a result of the competing pressures that GEICO placed on me to do more work meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.  As a result, I was not paid for overtime hours that I worked off the clock.

Def.'s Mem. Supp. at 11.  Defendant also takes issue with "nearly identical statements that the estimated amount of unpaid overtime 'does not include liquidated damages, . . . and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as

provided by law.'"  *Id.*   According to Defendants, these statements "cannot be based on the personal knowledge of non-attorneys and therefore should not be considered by the Court."  *Id.*

As with its other arguments, Defendant fails to cite any relevant authority to support its argument that the Court should strike the declarations on this basis.  Defendant cites *Bamgbose v. Delta-T Group, Inc.*, in which the Eastern District of Pennsylvania summarily struck declarations for containing "legal conclusions such as that they are employees."  *See* 9-cv-667, 2009 U.S. Dist. LEXIS 126880, at *2 (E.D. Pa. Nov. 4, 2009).  Without any analysis, however, it is unclear how the ruling from *Bamgbose*—which is not from this Circuit—bears on the instant situation.

Defendant also cites *Larouch v. Webster* for the proposition that "[w]hen ultimate facts and legal conclusions appear in an affidavit, such extraneous material should . . . be disregarded by the court."  175 F.R.D. 452, 455 (S.D.N.Y. 1996).  However*, Larouch* is inapplicable here, as it concerned an affidavit submitted in connection with a motion for a summary judgment, which involves a different evidentiary standard than the one for a conditional certification.  *See id.* at 454–55 (citing Federal Rule 56(e) of Civil Procedure as the rule applicable to the motion to strike the affidavit submitted in support of the summary judgment motion in that case).

In any case, Defendant is likely right that legalese like "pre-judgment interest" and "liquidated damages" are unfamiliar to a non-attorney.  Defendant is also correct—although it does not explicitly make this argument—that declarants' use of the word "overtime" could be interpreted as reaching a legal conclusion, given the word's legal meaning under the FLSA.  That said, declarants can attest to their factual experience of feeling pressures from their employer, leading them to perform unreported work, and thus not getting paid for that work.  Accordingly, there is a factual, non-legal way to interpret the paragraph from the declarations to which Defendant objects.  Def.'s Mem. Supp. at 11.

Regardless, Defendant's argument is effectively moot, as the declarations contain ample, factual, non-legal, non-conclusory statements to support Plaintiffs' claim that they are similarly situated to the proposed FLSA Collective for purposes of conditional certification. The Court need not consider any conclusory or legal statements in the declarations to reach this conclusion. Accordingly, the Court declines to strike the declarations from the record on this basis.

Finally, Defendant argues that some of the declarations, by using typed, rather than "wet" or DocuSign-ed signatures, violate a "federal statute governing such declarations provid[ing] that signatures on them are mandatory." Def.'s Mem. Supp. at 12. Defendant's cited statute provides the following:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, **in substantially the following form**:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). **(Signature)**".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). **(Signature)**".

28 U.S.C. § 1746 (emphasis added).

The statute, which, in any event, only calls for "substantially" meeting the provided form, states neither that a signature must be "wet" or DocuSign-ed, nor that typed signatures are prohibited. Defendant cites no cases from this Circuit, or any other applicable rule, requiring the signature to be "wet" or DocuSign-ed. *See* Def.'s Mem. Supp. at 12–13 (Defendant urging Court

18

to "follow the lead" of the Sixth Circuit, Eastern District of Michigan, and Western District of Texas, in finding that 28 U.S.C. § 1746 supposedly requires a "wet" signature). Moreover, one of the declarations that *Defendant* submitted—the Sheppard Declaration—appears to contain only a typed / electronically-generated signature. *See* Sheppard Decl. at 8. As such, this Court declines to strike the declarations with typed signatures.

Hoping to win on a technicality, Defendant also moves to strike the Neenan Declaration, on the grounds that it states that the declarant, Joseph Neenan, made the declaration from "Lewis, Delaware." *See* Neenan Decl. According to Defendant, "Lewis" is not a real place in Delaware. *See* Def.'s Mem. Supp. at 13. Rather, the town is "Lewes," spelled with an "e." *See id.* Defendant claims that this renders the Neenan Declaration "suspect," *id.*, and creates "sufficient doubt . . . to question the supposed signatures on declarations." Def.'s Reply at 4, ECF No. 64-3. More likely, however, "Lewis" with an "i" is a typo—something Defendant surely would not want the Court to hold against it were the Court to identify any in Defendant's papers. Meanwhile, the declarations that Defendant submitted all fail to identify the location in which they were signed. *See* Fogarty Decl.; Newport Decl.; Neyland Decl.; McDermott Decl.; Keonig Decl.; Sheppard Decl.; Butler Decl.; Portnoy Decl.; McMullen Decl. This Court therefore declines to strike the Neenan Declaration, and notes that petty arguments like this do not further the claims or defenses in this case.

## II.    MOTION FOR COURT AUTHORIZED NOTICE

### A.  Conditional Certification

This Court now turns to Plaintiffs' Motion for conditional certification of the proposed FLSA Collective. Plaintiffs have met their minimal burden of showing that they are "similarly situated" to the proposed FLSA Collective. The proposed FLSA Collective members all reside in

New York, and work or previously worked as Special Investigators for GEICO.  The SAC's allegations, as well as the declaration testimony, provide an adequate factual basis that Plaintiffs and the proposed FLSA Collective members were subject to Defendant's common policy or plan of deterring the reporting of all hours worked, and failing to pay for such hours worked.  As another court in this District has already held in a FLSA case against GEICO, which concerned substantially similar practices to those alleged here,[15] Plaintiffs have "set forth sufficient facts to support the modest factual showing that [the Special Investigators] were all subject to common compensation and timekeeping practices, and routinely worked off-the-clock, in excess of their allotted 7.75 hours per day, without compensation, due to Defendant's common practices."  *Id.* at *7.  Indeed, "[n]othing more is required at this time in order for [P]laintiffs to satisfy their minimal burden."  *Ugwudiobi*, 2024 WL 4333840, at *6.  As such, Plaintiffs may proceed as a conditionally certified FLSA Collective and issue court-authorized notice.

Yet, Defendant opposes conditional certification on several grounds.  First, Defendant argues that the Court should not apply the two-step process for collective certification.  Defendant asserts that "[in] light of the lack of any language in the FLSA requiring such a process, or any opinion from the Second Circuit mandating the same, this Court should join the trend of courts across the country that recently have moved away from the outdated two-step process and opt instead for a more streamlined, evidence-based certification analysis."  Def.'s Mem. Opp'n at 11, ECF No. 62-36.

While true that "[n]either the FLSA nor its implementing regulations define the term 'similarly situated,'" *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997), the Second Circuit has "endorsed a two-step process for certifying FLSA collective actions based on the

---

[15] In that case, the plaintiffs were employed as adjusters at GEICO.

'similarly situated' requirement."  *Scott*, 954 F.3d at 515 (citing *Glatt*, 811 F.3d at 540).  The Second Circuit originally endorsed the two-step method in *Myers*.  *See* 624 F.3d at 554–55 ("the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible.").  The Second Circuit reaffirmed that endorsement in *Glatt*, 811 F.3d at 540, and later in *Scott*.  *See* 954 F.3d at 515.  Therefore, courts in this Circuit consistently employ the two-step process.  *Ugwudiobi*, 2024 WL 4333840, at *4; *see, e.g.*, *Jackson v. Total Relocation Servs., LLC*, 23-cv-4118 (KPF), 2024 WL 4850814, at *5 (S.D.N.Y. Nov. 21, 2024) ("In the Second Circuit, the certification of a FLSA collective action proceeds in two steps."); *Xia*, 2023 WL 130830, at *3 ("the Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA"); *Tueros v. Urban Health Plan, Inc.*, 21-cv-4525 (JMF) (RWL), 2022 WL 2752070, at *6 (S.D.N.Y. July 14, 2022) ("The Second Circuit has endorsed a two-step method used by district courts in determining whether to exercise their discretion to certify a collective action under Section 216(b) and to permit notice to be sent to potential opt-in plaintiffs."); *Foster v. City of New York, New York*, 14-cv-4142 (PGG), 2021 WL 1191810, at *5 (S.D.N.Y. Mar. 30, 2021) ("The Second Circuit uses a two-step approach in determining whether opt-in plaintiffs are similarly situated to a named plaintiff.").

Defendant fails to address *Scott*, *Glatt*, or *Myers* and cites no cases suggesting that the Second Circuit has departed from its prior holdings.  This Court is not at liberty to contravene Second Circuit precedent and, as such, declines Defendant's invitation to abandon the two-step process.

Second, Defendant argues that Plaintiffs "have failed to make any factual showing that GEICO maintained an unlawful common policy."  *See* Def.'s Mem. Opp'n at 13–15.  To make

this argument, Defendant relies on the "undisputed" fact that it "maintained a lawful policy requiring employees to accurately record and submit of their hours worked, including overtime hours." Def.'s Mem. Opp'n at 13. Defendant apparently expects Plaintiffs to point to a *written* policy that is facially unlawful. *See id.* Besides the fact that such a standard is untenable—as Plaintiffs cannot be expected to have evidence of a written policy that is illegal on its face—the court in *Rieske* rejected the same argument. *See* 2022 WL 17127745, at *4, 7 (granting conditional certification despite Defendant's argument that there was "no evidence it had a policy instructing or encouraging Adjusters to work overtime without reporting it."); *see also Ni v. HSBC Bank USA, N.A.*, 23-cv-00309 (AS) (KHP), 2024 WL 323284, at *5 (S.D.N.Y. Jan. 29, 2024) (noting that the plaintiffs "are similarly situated insofar as they might have been subjected to a common policy . . . notwithstanding HSBC's *written policy to the contrary*." (emphasis added)). Defendant's argument thus fails, as the common plan or policy that Plaintiffs identify is that Defendant allegedly deterred Special Investigators from reporting all their time worked, and consequently did not pay Special Investigators for such additional time worked.

Third, and similarly, Defendant argues that Plaintiffs have failed to demonstrate any common unlawful policy or plan to violate GEICO's lawful policies, dismissing the pattern of supervisor responses that Plaintiffs allege as "rogue" and "cookie-cutter." Not so. The SAC and declarations are *replete* with examples showing this precise situation. To cite just a handful, see, e.g., Brust Decl. ¶ 12 ("My supervisor, Mr. Cassagne, frequently reiterated to me and other Special Investigators that hours above 38.75 to complete regular case work would not be approved."), ¶ 14 ("I complained verbally to my supervisor, Mr. Cassagne, during our monthly team meetings. I told him about the volume of work we were being assigned and the number of unpaid hours I, and my colleagues, were working as a result. His response to these complaints was that he was not

permitted to approve this overtime work."); Barden Decl. ¶ 16 ("I recall in summer 2020 meeting regularly with my supervisor Chet Janik and discussing the heavy workload and hours. He agreed with me about the issues but did not have the power to change my assigned workload or the overtime hours."); Brady Decl. ¶ 15 ("I recall having phone calls with my supervisor in late 2020 through 2021 and complaining about my caseload. I was never admonished for working too many hours, and was just told that GEICO knew that it was busy for Special Investigators, to hang in there, and that it would change soon."); Caniglia Decl. ¶ 11 ("after paying some overtime hours in the late winter or early spring of 2020, my supervisor told me that GEICO was no longer going to pay for the overtime hours we were working."); Caniglia Sr. Decl. ¶ 13 ("Between around May 2020 and November 2020, I had several conversations with my supervisor about the increased workload and GEICO's failure to pay us for all our overtime hours. My supervisor told me, in sum and substance, that the company just wasn't going to pay overtime any more."); Diniso Decl. ("GEICO supervisor Dara Campbell frequently reiterated to me and other Special Investigators that hours above 38.75 to complete regular case work would not be approved.").

While Defendant may ultimately have "strong defenses on liability or that the alleged unlawful practices may not have affected members of the putative collective to the extent Plaintiff[s] claim[], at this point, the Court does not consider the merits of the claims on a motion for conditional certification." *Ni*, 2024 WL 323284, at *6. Rather, Plaintiffs have met their "modest burden to demonstrates that [Special Investigators] . . . may not have been paid appropriately . . . and may have worked off-the-clock because they were subjected to a common policy where managers disregard written timekeeping policies." *Id.*

Defendant also argues that Plaintiffs and the proposed FLSA Collective members are not similarly situated due to supposed dissimilarities among them. Defendant emphasizes, for

example, the different job titles, as well as the purported difference between employees who worked "inside" at their "desks" and those who worked in the "field." Def.'s Mem. Opp'n at 4–5; 16. However, "the issue of 'similarly situated' refers not to similarity of job duties, but to similarity in pay structure." *Rieske*, 2022 WL 17127745, at *6. "[C]ourts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function." *Id.* (collecting cases). "The relevant issue here . . . is not whether Plaintiff[s] and potential opt-in plaintiffs are identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay . . . ." *Id.* at *7 (citing *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213 (D. Conn. 2012)); *see D'Angelo v. Hunter Bus. Sch., Inc.*, 21-cv-3334 (JMW), 2023 WL 4838156, at *8 (E.D.N.Y. July 28, 2023) (finding plaintiffs and collective members were similarly situated "namely because they had substantially similar job requirements and pay provisions."). Plaintiffs' allegations and declarations adequately demonstrate the similar pay structure and common policy at issue—*i.e.* denying them pay by overloading them with work yet deterring them from reporting hours worked beyond 38.75 per week. As such, Defendant's arguments concerning such purported dissimilarities do not defeat conditional certification.

Defendant also argues that any potential FLSA Collective members who reported to GEICO's Buffalo office, rather than GEICO's Melville (formerly Woodbury) office, are not similarly situated to Plaintiffs (who all reported to Melville/Woodbury office). *See generally* Def.'s Mem. Opp'n.

Specifically, Defendant argues:

"Desk" or "inside" employees reporting to the GEICO office in Buffalo, New York, worked cases in states neighboring New York, including Connecticut, New Hampshire, Vermont, Massachusetts, and Rhode Island. (Ex. 2, B. Newport Decl. ¶ 21.) By contrast, field investigators in various roles reporting to Long Island, New York primarily investigated cases in or around downstate New York, including in New York City. (*Id.* ¶ 14.) The geographic scope of a given field investigator varied

> dramatically based on factors such as where the individual lived and the type of
> cases he or she regularly worked. (*Id.* ¶ 15.).

Def.'s Mem. Opp'n at 3 (citing declarations).

Even if these assertions are true, they do not suggest that Plaintiffs and members of the proposed FLSA Collective were not subject to Defendant's alleged common policy or plan. Moreover, the Parties already stipulated and agreed that plaintiffs who do not reside in New York would be dismissed without prejudice from this case, and that the scope of the proposed FLSA Collective would be limited to Special Investigators who lived in New York. *See* Joint Stipulation. Yet, Defendant now seeks to exclude Special Investigators who live in New York, but report to the Buffalo office, conveniently after Defendant stipulated and agreed that former opt-in plaintiffs Sowell and Ennis—whose claims regarding the Buffalo office corroborate those of Plaintiffs—would be removed from this case and left to pursue their claims in the *Alvarez* action in the District of Maryland. By design, the Joint Stipulation contemplated the very scenario that Defendant now hopes to change.

The Joint Stipulation aside, Defendant's position, if accepted, would result in a group of Special Investigators not receiving notice of the two pending litigations against GEICO for alleged unpaid wages to Special Investigators. In such a scenario, Special Investigators who live outside of New York, including those who reported to the Buffalo office—like Sowell and Ennis—would get to pursue their claims against GEICO in the *Alvarez* action in the District of Maryland. *See* Suppl. Authority at 5, n.7. Meanwhile, Special Investigators living in New York who reported to the Melville/Woodbury office would get to pursue to their claims against GEICO in *this* action. That would leave Special Investigators living in New York reporting to the Buffalo office having received notice of neither suit. Rather than having the opportunity to opt-in to this action or the *Alvarez* action, those Special Investigators could ultimately have to bring a new lawsuit should

they wish to pursue unpaid wage claims.  Judicial efficiency disfavors such a result.

Ultimately, if, upon further fact development, any future opt-in plaintiffs who live in New York and report to the Buffalo office are not similarly situated to Plaintiffs, the Court can decertify the Collective at the final certification stage.  However, at this stage, Defendant's conveniently timed arguments regarding the Buffalo office will not bar Plaintiffs' request for court-authorized notice to the proposed FLSA Collective.

Finally, Defendant argues that "Plaintiffs have not demonstrated that they are similarly situated such that the Court manageably could resolve their claims."  Def.'s Mem. Opp'n at 18. However, "manageability" is not a consideration to conditionally certify a collective action.  *See Barry v. S.E.B. Serv. of New York, Inc.*, 11–CV–5089 (JMA), 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013) ("Although defendants often argue that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable, the majority of courts in this Circuit decline to consider such arguments at the conditional certification stage, and, instead, put these issues off until the decertification stage, when discovery is complete.").  Perhaps, Defendant is conflating the "manageability" consideration from the Rule 23 class action analysis, with the "similarly situated" requirement for conditional certification of a FLSA collective.  *See* Fed. R. Civ. P. 23(b)(3)(D) (including "the likely difficulties in managing a class action" as a "matter pertinent" to whether a proposed class meets the "superiority" and "predominance" requirements").  However, conditional certification does not require a finding regarding "manageability."  As such, this Court does not consider Defendant's manageability argument.

### B.  The Proposed Notice

The Court now turns to Plaintiffs' Proposed Notice and notification plan.  The "form of notice and its details are left to the broad discretion of this Court."  *Ramos v. Platt*, 13-cv-8957

(HW), 2014 WL 3639194, at *5 (S.D.N.Y. July 23, 2014).  As discussed below, Plaintiffs must slightly modify their proposed notification plan.

Plaintiffs seek to send the Proposed Notice to "all nonexempt Special Investigators who worked at GEICO during the Relevant Period in New York state."  Pls.' Mem. Supp at 14, ECF No. 62-1.  The Proposed Notice itself provides that it will be sent to those who (Defendant's records show) "lived in New York state and were employed as a Special Investigator in New York state between November 23, 2020, and the present."  *See* Proposed Notice.  The Proposed Notice gives recipients 90 days from the Proposed Notice's mailing to opt-in.  *See id.*

Plaintiffs seek to send the Proposed Notice by U.S. Mail, email, and text message.  Pls.' Mem. Supp. at 14.  They also seek to send and the Proposed Reminder Email, Text, and Postcard Notices to all recipients who have not yet returned a consent-to-join form halfway through the notice period.  *Id.* at 15.  Plaintiffs further seek to post the Proposed Notice on a standalone website, through which potential opt-ins can electronically submit their Consent to Join Forms.  *Id.*  Finally, Plaintiffs request that the Court order Defendant to produce a list of names, last known mailing addresses, last known telephone numbers, last known personal email addresses, work locations, dates of employment at each location, and the last four digits of Social Security numbers for any Special Investigators whose notices are returned undeliverable.  *Id.*

Defendant objects to the Proposed Notice on the several grounds.  First, Defendant takes issue with the term "Special Investigators" and seeks to limit the scope of the individuals receiving notice to those who: (1) held the job titles of Lead Security Investigator or Senior Field Security Investigator; and (2) reported to Plaintiffs' supervisors on Long Island.  Def.'s Mem. Opp'n at 19–20.

While Defendant argues that Plaintiffs "vaguely define" "Special Investigators," this Court

27

disagrees.  Plaintiffs provide a list of specific job titles that fall within "Special Investigators," including: Level 65 Special Investigators, Level 66 Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.  Should further fact development reveal that individuals with these titles were not subject to Defendant's alleged common policy or practice of deterring the reporting of all hours worked and not paying for all hours worked, the Court can decertify the FLSA Collective.  Moreover, for reasons already discussed, this Court will not exclude Special Investigators who live in New York but do not report to the Long Island office from receiving court-authorized notice.

Second, Defendant argues that the notice and opt-in period should be 45 days at most, rather than 90.  Def.'s Mem. Opp'n at 20.  A 60-day opt-in period is the standard for FLSA actions, although 90-day periods are common where a longer-than-usual opt-in period is necessary.  *See Park*, 2024 WL 4299749, at *6.  For example, in *Chengxue Sun v. New G Nails & Spa Inc.*, this Court allowed a 90-day opt-in window where several of the potential plaintiffs were foreign born and would be potentially delayed by foreign travel.  22-cv-5523, 2023 U.S. Dist. LEXIS 150449, at *22 (E.D.N.Y. Aug. 25, 2023).  Plaintiffs argue here that "a 90-day period will allow putative collective members sufficient time to learn about the case, ask questions, and decide if they would like to join."  Pls.' Reply at 10, ECF No. 62-53.  However, Plaintiffs fail to address why 60 days would be insufficient to achieve the same objective.  They note that a 90-day notice period would limit the possibility of "follow-on suits by plaintiffs who miss the deadline to opt in, but still wish to pursue their claims."  Pls.' Mem. Supp. at 14.  But such is true in every case.  As such, the opt-in period will be 60 days, as is standard for courts in this Circuit.  *See, e.g.*, *Rieske*, 2022 WL

17127745, at *9 (authorizing 60-day opt-in period where the plaintiffs argued it would allow "individuals to research the case, speak with Plaintiff's counsel, consult with their families, and weigh this important decision, and is a common notice period in collective actions.").

Third, Defendant argues that the Court should not allow the Reminder Email, Text, and Postcard Notices.  Def.'s Mem. Opp'n at 20.  However, "courts in this district routinely authorize such reminder notices."  *Id.* (citing *Valdez*, 2022 WL 950450, at *16 ("Reminder notices are appropriate '[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]'"); *Williams v. Movage, Inc.*, 17-cv-2628 (KPF, 2018 WL 1940435, at *10 (S.D.N.Y. Apr. 24, 2018) (collecting numerous cases in this Circuit where courts have consistently authorized these types of reminder notices)).  "This Court sees no reason to deviate from the common practice in this [C]ircuit."  *Id.*  Accordingly, Plaintiffs may issue the reminder notices thirty days before the end of the opt-in period.

Fourth, Defendant argues that the Court should not allow the sending of the Proposed Notice via email, text message, and the creation of a standalone website—arguing that notice by first-class mail is sufficient.  *See* Def.'s Mem. Opp'n at 20.  This Court approves sending the Proposed Notice through email and text message, which have "become standard methods of distribution in this Circuit."  *Park*, 2024 WL 4299749, at *6.  However, this Court does not authorize posting the Proposed Notice on a standalone website.  The potential opt-ins are "likely to be reached and identified by other means, and any plaintiffs who cannot be reached will not have their legal rights altered by their inaction, whereas posting on social media groups and websites has the potential to prejudice Defendant[]."  *Hong v. Haiku @ WP Inc.*, 582 F.Supp.3d 117, 135 (S.D.N.Y. 2022) (citations and quotations marks omitted); *see Riekse*, 2022 WL 17127745, at *9 (denying request for website where one would be unnecessary).

Finally, Defendant argues that if the Court permits notice that "it should direct the parties to confer and propose an agreed-upon form and content of notice to ensure against any improper or one-sided communications." Def.'s Mem. Opp'n at 20–21. Yet, Defendant does not identify any "improper" or "one-sided" provisions in the Proposed Notice or Reminders. However, as this Court has ordered Plaintiffs to modify their proposed notification plan, Plaintiffs must share, upon revising, the final Notice, Consent to Join Form, and Reminders with Defendant. Should Defendant have any objections at that point, the Parties must meet and confer regarding those objections. Thereafter, the Parties shall jointly file all finalized forms with the Court.

Although Defendant does not object to this request, the Court denies Plaintiffs' request for the last four digits of the Social Security numbers for any Special Investigators whose notices are returned undeliverable. *See Santiago*, 2023 WL 8003323, at *6 (denying request for potential opt-ins' Social Security numbers, even if some forms of notice are unsuccessful); *Jibowu v. Target Corp.*, 492 F.Supp.3d 87, 129 (E.D.N.Y. 2020) (same). Plaintiffs provide no specific justification for this request, and this information is "not necessary for notice at this early stage and has been consistently held to be 'unduly invasive' of employee privacy." *Tay v. N.Y. & Presbyterian Hosp.*, 22-cv-8379 (KMK), 2024 WL 4286226, at *16 (S.D.N.Y. Sept. 24, 2024) (collecting cases). However, this Court requires Defendant to produce the other requested information.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion is GRANTED, Defendant's Motion to Strike is DENIED.  Plaintiffs must MODIFY their notification plan as set forth herein.  Within 30 days of this Order, the Parties shall jointly submit the finalized Notice forms to the Court.

**SO ORDERED.**

/s_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       March 31, 2025