# EXHIBIT 4

Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 2 of 45 PageID #: 10486

LOUIS PIA  Contains Highly Conf. Testimony                                    August 13, 2024
Keith Fischer, et al. vs GEICO                                                          1

```
1
2         IN THE UNITED STATES DISTRICT COURT

3         FOR THE EASTERN DISTRICT OF NEW YORK

4    -----------------------------------------------X
      KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER,
5    LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN,
      and CHARISE JONES, individually and on behalf
6    of all others similarly situated,

7                            Plaintiffs,

8       -against-                        Case No.
                                    2:23 Civ. 2848 (GRB) (ARL)
9

10   GOVERNMENT EMPLOYEES INSURANCE COMPANY
      d/b/a GEICO,
11

12                            Defendant.

13   -----------------------------------------------X

14                        August 13, 2024

15                        10:00 a.m.

16

17        EXAMINATION BEFORE TRIAL of LOUIS PIA,

18   a Plaintiff, taken by counsel for the

19   Defendants, pursuant to Order, held at Duane

20   Morris, L.L.P., 1540 Broadway, New York, before

21   Tiffanie Jones, a Notary Public for and within

22   the State of New York.

23

24

25
```



Case 2:23-cv-02848-SJB-SIL     Document 97-33     Filed 06/11/25     Page 3 of 45 PageID #: 10487

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            2

```
1

2   A P P E A R A N C E S:

3

4       OUTTEN & GOLDEN, L.L.P.

5         Attorneys for the Plaintiffs

6           685 Third Avenue, 25th Floor

7           New York, New York 10017

8

9       BY:    MICHAEL J. SCIMONE, ESQUIRE

10             mscimone@outtengolden.com

11

12             ZARKA SHABIR DSOUZA, ESQUIRE

13             zdsouza@outtengolden.com

14

15

16

17       DUANE MORRIS, L.L.P.

18         Attorneys for the Defendant

19           1540 Broadway

20           New York, New York 10036

21

22       BY:    GREGORY SLOTNICK, ESQUIRE

23             GSSlotnick@duanemorris.com

24

25
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 4 of 45 PageID #: 10488

LOUIS PIA  Contains Highly Conf. Testimony                         August 13, 2024
Keith Fischer, et al. vs GEICO                                              3

1

2                    S T I P U L A T I O N S

3

4        IT IS HEREBY STIPULATED AND AGREED by and

5   between the attorneys for the respective parties

6   herein, that filing, sealing and certification,

7   and the same are, hereby waived.

8

9        IT IS FURTHER STIPULATED AND AGREED that

10  all objections except as to the form of the

11  question shall be reserved to the time of the

12  trial.

13

14       IT IS FURTHER STIPULATED AND AGREED that

15  the within deposition may be signed and sworn to

16  by an officer authorized to administer an oath,

17  with the same force and effect as if signed and

18  sworn to before the Court.

19

20

21

22

23

24

25



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 5 of 45 PageID #: 10489

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                         4

```
 1                   PROCEEDINGS

 2       THE VIDEOGRAPHER:  Good morning.  We

 3   are on the record, and the time is

 4   approximately 10:00 a.m.  Today's date

 5   is August 13th, 2024.  This is Media 1

 6   of the video deposition of Louis Pia, in

 7   the matter of Keith Fischer, versus

 8   Government Employees Insurance Company.

 9   The Index Number is 2:23 Civ. 2848 (GRB)

10   (ARL).

11       My name is Ben Peretz, legal

12   videographer with Shereck Video, in

13   association with Esquire.  Today, we're

14   at the office of the Duane Morris,

15   L.L.P., located at 1540 Broadway, New

16   York City.

17       Would counsel please voice-identify

18   yourself, and state whom you represent.

19       MR. SLOTNICK:  Good morning.  My

20   name is Greg Slotnick, on behalf of

21   GEICO, from Duane Morris.

22       MR. SCIMONE:  Michael Scimone,

23   Outten & Golden, on behalf of

24   Plaintiffs.

25       MS. DSOUZA:  Zarka Shabir Dsouza,
```



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 6 of 45 PageID #: 10490

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            5

```
 1                      L. PIA

 2          Outten & Golden, also on behalf of

 3          Plaintiffs.

 4              THE VIDEOGRAPHER:  Thank you.

 5              The court reporter is Tiffanie Jones

 6          with Esquire.  And please swear in the

 7          witness.

 8              THE REPORTER:  All right.  Sir,

 9          please raise your right hand.

10              Do you solemnly swear or affirm that

11          the testimony you're about to give shall

12          be the truth, the whole truth, and

13          nothing but the truth?

14              THE WITNESS:  I do.

15                  L O U I S   P I A,

16          having first been duly sworn by a Notary

17          Public for and within the State of New

18          York, upon being examined, testified as

19          follows:

20              THE REPORTER:  Thank you, sir.

21

22   EXAMINATION BY

23   MR. SLOTNICK, ESQUIRE:

24      Q.  Good morning, Mr. Pia.

25      A.  Good morning.
```



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 7 of 45 PageID #: 10491

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                          35

```
 1                      L. PIA

 2   Flanagan?

 3        A.  45 --

 4             MR. SCIMONE:  Objection.

 5             THE WITNESS:  It was --

 6             MR. SCIMONE:  Objection, but go

 7        ahead.

 8             THE WITNESS:  -- $45 an hour.

 9   BY MR. SLOTNICK:

10        Q.  Okay.  So you do not currently work

11   for GEICO; correct?

12        A.  At this time?

13        Q.  Yes.

14        A.  No.

15        Q.  And what titles did you hold while you

16   did work at GEICO?

17        A.  Before I retired?

18        Q.  Yeah.  So if you -- strike that --

19             What was your first job with GEICO?

20        A.  As a -- a SIU investigator.

21        Q.  Did that job position change at any

22   point in time during your GEICO employment?

23        A.  Yes.

24        Q.  When did it change?

25        A.  Well, let me -- let me backtrack, and
```



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 8 of 45 PageID #: 10492

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            36

```
 1                    L. PIA
 2   redact my answer.  Yes, my -- my job
 3   description remained the same.  My title
 4   changed.  I went from SIU investigator, and got
 5   promoted to lead investigator.
 6        Q.  When did that occur?
 7        A.  Again, I don't want to guess.  An
 8   estimate would be, like, 2017 maybe.
 9        Q.  Did GEICO have different geographic
10   regions where employees were assigned?
11             MR. SCIMONE:  Objection.
12             THE WITNESS:  Yes.
13   BY MR. SLOTNICK:
14        Q.  And what region did you start in at
15   GEICO?
16        A.  I was only in one region my whole
17   career at GEICO, Region 2.
18        Q.  And what geographic area was Region 2
19   encompassing?
20        A.  The Metro New York City area, the five
21   boroughs.  Nassau and Suffolk County.
22        Q.  And you only worked in Region 2 at
23   GEICO, you said?
24        A.  As opposed to, like, Region 5 in Texas
25   or --
```



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 9 of 45 PageID #: 10493

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            38

L. PIA

2  with respect to investigating fraud?

3      A.  We would do background, database

4  searches on the individuals named in the -- in

5  the claim.  We would retrieve police reports,

6  interview witnesses, respond, canvas, locate

7  the scene locations.  On occasion, inspect

8  medical facilities, conduct Examinations Under

9  Oath, take recorded statements from witnesses,

10 and other things I -- I don't recall right now.

11     Q.  And how did your responsibilities

12 change, if at all, when you became a lead

13 investigator?

14     A.  Well, the responsibilities there --

15 there's a -- there's a long gap in between,

16 from 2003 to 2017.  So in 14 years, my

17 responsibilities changed.  Number one is I got

18 substantial increase in -- in case load in

19 those 14 years.  And as a lead investigator at

20 certain points in time, I was asked to either

21 train, or have new investigators accompany me

22 either on Examination Under Oaths or recorded

23 interviews.

24         That being said, I did not -- or it

25 did not come with any supervisory powers.  I



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 10 of 45 PageID #: 10494

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              39

```
 1                        L. PIA
 2    was -- I was still a lead investigator, just
 3    showing them the work that I did.
 4        Q.   Did the -- strike that.
 5             Was your move from a security
 6    investigator to a lead investigator a promotion
 7    at GEICO?
 8        A.   Yes.
 9        Q.   Did you apply for the lead security
10    role?
11        A.   I would say yes, but I would also add
12    that that option of applying was removed from
13    only my region for several years, and was still
14    available in the other regions nationally in --
15    in the GEICO company.
16        Q.   Do you know why that was?
17        A.   My opinion or fact?
18        Q.   If you know.
19        A.   Well, I mean, I -- I was told that the
20    Regional Vice President, John Pham, had a
21    disliking for us as investigators, and removed
22    that personally from Region 2.
23        Q.   Could you spell that individual's
24    name?
25        A.   John -- J-o-h-n -- Pham -- P-h-a-m.
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 11 of 45 PageID #: 10495

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                          43

```
 1                      L. PIA
 2  Al Brust was one, Steve Stemmler.  I -- I
 3  believe Jeff Lewonka, Anthony DeStefano.  And
 4  there could be others.  I just don't recall.
 5      Q.  In your role as -- just to jump back.
 6          As a -- an investigator, before you
 7  were a lead investigator, were you working
 8  remotely in the field?
 9      A.  Yes.
10      Q.  Did you ever work based out of an
11  office?
12      A.  I had an home office.
13      Q.  Home office.
14          Did you ever work in GEICO's office?
15      A.  On -- on -- not on a steady basis, no.
16      Q.  Was that the case throughout your time
17  as investigator in the SIU?
18      A.  Yes, I was never assigned a desk in
19  the GEICO building.
20      Q.  Did you have a company car?
21      A.  Yes.
22      Q.  Was that the case throughout your
23  GEICO employment?
24      A.  Yes.
25      Q.  Did you ever supervise any other
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 12 of 45 PageID #: 10496

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              48

1                          L. PIA

2        A.  Well, then, I -- you could say that.

3    And not to be argumentative, but I didn't know

4    where you were coming from.  And that the

5    policy of GEICO was 38.75, yes; but the

6    practice that GEICO instilled in us was no way

7    near the 38.75.

8        Q.  Who was your supervisor when you

9    worked in the SIU beginning in approximately

10   the 2016 period?

11       A.  2016, it was Gerry Cassagne.

12       Q.  Did you have any other supervisors

13   between 2016 and 2022?

14       A.  Now, when -- when you say any other

15   supervisors, let me -- let me just backtrack.

16   Gerry -- Gerard Cassagne was my direct

17   supervisor, but the way GEICO was set up is

18   that -- for example, Dara Campbell was a

19   supervisor, Toni Dagata was another supervisor.

20   These supervisors did have occasion to audit my

21   cases, as well as Gerry auditing other

22   investigators' cases within the unit.  So I did

23   have supervision from other supervisors, but my

24   direct supervisor was Cassagne.

25       Q.  From 2016 to 2022?



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 13 of 45 PageID #: 10497

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              49

```
1                          L. PIA

2        A.  I -- yes.

3        Q.  I guess my question is:  Did you ever

4   have any other direct supervisors during that

5   period?

6        A.  Direct supervisors, no.

7        Q.  Do you know how many investigators

8   Gerry Cassagne supervised at a given point in

9   time?

10       A.  Over the course of his career?

11       Q.  Yeah, approximately how many people he

12  was responsible for supervising.

13       A.  In what time period?

14       Q.  At a given point in time between 2016

15  and 2022?

16       A.  Well, I mean, his team I'm sure --

17  you'd have to ask him for a -- for a more exact

18  number, but he had several investigators, other

19  than myself and his team when I was -- when I

20  was under his supervision.

21       Q.  When you say "several", is that a few?

22  Could it be ten?

23       A.  I don't know if it was ten, or -- and

24  maybe it was ten.  I -- I -- I don't know.

25       Q.  Okay.  Do you know the job titles of
```



Case 2:23-cv-02848-SJB-SIL  Document 97-33  Filed 06/11/25  Page 14 of 45 PageID #: 10498

LOUIS PIA  Contains Highly Conf. Testimony                     August 13, 2024
Keith Fischer, et al. vs GEICO                                             50

                              L. PIA

1

2    the other people that he supervised?

3        A.  I think the job titles of everyone

4    that was in his team was the same job title as

5    -- a job title, he had some -- some lead

6    investigators like myself, and he also had some

7    SIU investigators, also.

8        Q.  Did he supervise anyone directly that

9    worked from the office in a desk, or inside

10   role?

11       A.  That, I don't know.

12       Q.  How often did you speak with Gerry

13   from 2016 to 2022?

14       A.  I would say at least conservatively

15   once a week, but there were occasions when it

16   really got out of hand case-wise, that I was --

17   I was chatting with him a little bit more than

18   -- than once a week.

19       Q.  And did you have a manager at GEICO

20   between 2016 and 2022?

21       A.  Yes.

22       Q.  Who was that?

23       A.  Now, I don't know if -- Mike DeGrocco

24   was a manager that I had.  I don't know if Bill

25   Newport, who was my -- my last manager.  I



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 15 of 45 PageID #: 10499

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                          51

                              L. PIA

 1
 2   don't know if he was -- if he was there in
 3   2016.  I know he was employed at GEICO, but I
 4   don't know if he was in the position of SIU
 5   manager.  So I would safely say it was Mike
 6   DeGrocco, and then followed by Bill Newport.
 7        Q.  How often did you have interactions
 8   with Mike DeGrocco?
 9        A.  Directly?
10        Q.  Yeah.
11        A.  Maybe once a month.
12        Q.  And the same question with respect to
13   Bill Newport?
14        A.  Yeah, I would say conservatively once
15   a month.
16        Q.  Did you interact with him directly in
17   a one-on-one capacity?
18        A.  Mainly everything went from him to
19   Gerry, and then from Gerry to -- to myself and
20   other investigators; but I've had dealings with
21   Bill Newport, where I was in the office and
22   spoke to him directly.
23        Q.  Have you heard of the term "flex time"
24   at GEICO?
25        A.  I mean, the term, I'm not familiar



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 16 of 45 PageID #: 10500

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              52

L. PIA

1
2    with.  If you want to define it for me, and
3    I'll -- I'll -- I'll let you know if I'm
4    familiar with it.
5        Q.  Was there ever a policy in place with
6    respect to your employment, where you were able
7    to work less hours on a given day, and make-up
8    those hours later in the day or on another day
9    in the same workweek?
10       A.  I -- I don't recall whether -- that
11   being policy, no.
12       Q.  When you were working, were you free
13   to complete your work at any time that it was
14   convenient for you during the work day, or did
15   you have set hours where you had to complete
16   your work?
17       A.  No, as I -- as I stated before -- and
18   maybe I could be a little bit more clear.  I
19   mean, I -- I was -- I was working -- I was
20   doing my case load at -- some nights, 9:00,
21   10:00, 11:00 o'clock at night.
22       Q.  When you were assigned specific cases,
23   were they all different types of cases, or were
24   their subsets of cases in -- in the SIU?
25       A.  What time period?



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 17 of 45 PageID #: 10501

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              53

L. PIA

2    Q.  2016 to 2022.

3    A.  Now, in 2016, I don't know if they --

4  for lack of a better term -- call, like,

5  segregated teams to specified units.  So if --

6  if they didn't do that in 2016, then I handled

7  an -- an assortment of cases.  I handled the

8  theft cases, I handled no-fault cases, I

9  handled jump-ins, bodily-injury cases,

10  underwriting cases.

11        Now, during that period -- sometime

12  during the period of 2016 to -- what did you

13  say?  2020?

14    Q.  '22.

15    A.  '22?

16    Q.  Yeah.

17    A.  The structure of the unit went to --

18  different teams were involved and -- and I was

19  -- I was involved in the -- in the auto shop,

20  the body-shop team.  So I mainly dealt with the

21  -- either staged accidents or enhanced damage

22  on cars, you know, organized rings that set up

23  accidents.  So -- so from that period on,

24  that's all I dealt with.

25    Q.  Was that by choice, or was that



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 18 of 45 PageID #: 10502

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              54

L. PIA

2   assigned to you?

3       A.  Well, I think the -- I don't know if

4   it was by choice.  The management, I would

5   assume, had to agree and -- and okay the fact

6   that the -- the unit was going to be divided in

7   this way.  And I was -- I -- I don't know if I

8   was specifically asked or -- or said, you know,

9   Lou, you're going to be in the auto shop --

10  body team and...

11      Q.  Were there other investigators on the

12  auto-body team, as well?

13      A.  Yes.

14      Q.  Who were those individuals?

15      A.  I know Lewonka was one, Scott Brady

16  was one.  I know Lewonka, he left and went to

17  the no-fault team a short time thereafter, but

18  maybe Al Brust was on the team.  And I'm sure

19  there were others I -- I don't recall.

20      Q.  Did those cases -- strike that.

21          How were those cases different than

22  some of the other types of cases that you said

23  you previously worked on?

24      A.  Different in what respect?  Like, as

25  far as how I investigate them?



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 19 of 45 PageID #: 10503

LOUIS PIA  Contains Highly Conf. Testimony                          August 13, 2024
Keith Fischer, et al. vs GEICO                                                        57

L. PIA

2  where you just -- I would -- I would contact a

3  -- a claims examiner on a case, and I would

4  have to get the auto-damage adjuster to look at

5  the car because they were the experts to

6  determine whether the damage was suspect.  And

7  I would contact the auto-damage adjuster and he

8  would say, Louie, I'm not going to see that car

9  for two weeks, but I was still under obligation

10  to keep that case updated, and so on and so

11  forth.  And there were other things to do with

12  that case.

13        So -- so if -- if -- if the case load

14  wasn't to that extreme, and the auto-damage

15  adjuster was available in less of a time, the

16  case would have been done a lot sooner.  But

17  because of the volume of cases that everybody

18  was -- was involved in, the case load just got

19  extremely out of hand, and the length of time

20  in the cases were -- was extensive.

21     Q.  Mr. Pia, I was just asking if there

22  was a -- like, a general range of time that it

23  could take to -- to open and close the case.

24     A.  Okay.  Well, in your question, you

25  didn't say range of time.  You asked if all the



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 20 of 45 PageID #: 10504

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                           58

```
 1                        L. PIA

 2    cases took the same time, or some -- some cases

 3    would -- could be closed in a shorter time than

 4    others.  So that's why I was trying to explain

 5    it to you.

 6         Q.  Okay.

 7         A.  So a range of time, I -- I can't -- I

 8    can't -- I can't -- I mean, it would be silly

 9    for me to say, you know, from -- from 10

10    minutes to 30 hours.  I mean, each -- each case

11    took a long time to conduct.  You know, they

12    weren't open-and-closed cases.

13         Q.  Were -- strike that.

14              Who would assign the cases to you?

15    How did you receive your cases?

16         A.  Again, and -- and going forward, so I

17    don't have to keep asking this.  All the

18    questions that -- that you're asking me, is

19    that for the time period between 2016 and 2022,

20    unless you specifically want a -- another time

21    period?

22         Q.  Correct.

23         A.  Okay.

24         Q.  Thank -- thank you for --

25         A.  Yes.
```



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 21 of 45 PageID #: 10505

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                        61

```
 1                        L. PIA

 2       A.  I'm going to say I conducted an EUO in

 3  every borough, with the exception of Staten

 4  Island.  And I can't be quite sure.  I may have

 5  done one in Staten Island.

 6       Q.  Was there a specific EUO location

 7  within each borough?

 8       A.  Yes.

 9       Q.  Did you decide where to schedule your

10  EUO's?

11       A.  We were basically told to schedule the

12  location based on the closeness to the

13  individual that we're -- that we're going to

14  EUO, their residence.

15       Q.  And throughout this period, were you

16  living on Long Island?

17       A.  Yes.

18       Q.  How long did it take you to drive to

19  each EUO center approximately?

20       A.  Well, EUO's were only conducted on the

21  weekdays.  So therefore, you had the largest

22  volume of traffic on the weekdays.  The Bronx

23  and Brooklyn were, on average, the worst, the

24  longest travel time it took.  I did a lot of my

25  -- well, I would say predominantly, most of my
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 22 of 45 PageID #: 10506

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            62

```
 1                        L. PIA

 2   cases in the Bronx and Brooklyn.  And I would

 3   leave my house at approximately 7:00 o'clock,

 4   and I wouldn't get to the Bronx -- which was

 5   right down the block from Yankee Stadium --

 6   until about 8:20, 8:30.  Now, you throw in a

 7   little rain and snow, and you can add on a half

 8   hour to 45 minutes to that.

 9          Brooklyn, same type -- same type of a

10   -- you know, length of time.  Rain on the BQE

11   just basically, you know, put everything to a

12   standstill.  It took a long time.

13      Q.  And how much time would you say that

14   you spent in the field on a given day?

15      A.  Well, let's take it -- let's take, for

16   example, the -- an EUO day, and -- and when you

17   went out on an EUO -- at least I, and I know a

18   lot of a -- the investigators.  There were

19   multiple EUO's.  You had to schedule more than

20   one EUO on a given day, or you just ran out of

21   time.

22          So if I went out with two or three

23   EUO's scheduled, I would leave my house at --

24   well, I would -- I would review or just peruse

25   the EUO's that I had at about 6:30 in the
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 23 of 45 PageID #: 10507

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              72

                              L. PIA

1

2       A.   The entire region, I don't -- meaning

3   the SI -- the whole entire region to SIU unit?

4       Q.   Yeah.   What was the scope of the

5   invitees to these monthly meetings?

6       A.   What do you mean by "scope"?

7       Q.   So who was generally invited to these

8   meetings, if you know?

9       A.   I don't know who -- who was invited to

10  the meetings because I didn't do the

11  invitations; but unless you had other business,

12  which could be like an EUO scheduled or

13  something like that, the invitation to the

14  meetings -- now this is pre-COVID, okay -- was

15  to everyone, I believe, in the unit.

16      Q.   Everyone in the SIU, are you saying?

17      A.   In the SIU unit, I believe, yes.

18      Q.   Was that only in Region 2, or was that

19  beyond Region 2?

20      A.   I don't know what other regions did,

21  and I would -- I don't -- I could -- I could

22  say I -- I was never in a meeting in SIU unit,

23  other than Region 2.   Like, I never attended a

24  -- a -- a SIU Region 5 meeting.

25           MR. SLOTNICK:   We can go off the



                                L. PIA

 1        A.  Not that I recall, no.

 2        Q.  Were you ever disciplined in any

 3   capacity in any of your positions at GEICO?

 4        A.  No.

 5        Q.  And during your employment with GEICO,

 6   from 2016 forward, did you ever take any FMLA

 7   leave absence?

 8        A.  No.

 9        Q.  Did you ever take any disability

10   leave?

11        A.  Disability, I -- I -- I don't know

12   exactly if it would encompass disability, but I

13   was in a -- a motor vehicle accident in a GEICO

14   car.  I was struck from the rear, and I think I

15   went sick maybe two days or three days.

16        Q.  Did you ever take any other extended

17   leaves of absence at GEICO?

18        A.  No.

19            (Defendant's Exhibit Number 2 was

20         marked for identification.)

21   BY MR. SLOTNICK:

22        Q.  Mr. Pia, I've handed you what's been

23   marked as Exhibit 2.  It is a document that

24   says:  Compensation Contents, the GEICO Human



Case 2:23-cv-02848-SJB-SIL    Document 97-33    Filed 06/11/25    Page 25 of 45 PageID #: 10509

LOUIS PIA  Contains Highly Conf. Testimony                     August 13, 2024
Keith Fischer, et al. vs GEICO                                              79

                          L. PIA
 1
 2   Resources Associate Handbook.
 3          Are you familiar with this document?
 4       A.   I -- I would say at -- at some point
 5   in time in my GEICO career, I may have perused
 6   the contents of -- of this document.
 7       Q.   Do you know if you received this
 8   employee handbook during your employment with
 9   GEICO?
10       A.   Yes.
11       Q.   So you turn to Page G000039 on the
12   bottom-right.  And if you look right about
13   where it says, "Hourly non-exempt associates",
14   there's a paragraph that starts with, "All
15   non-exempt associates".
16          Do you see that paragraph?
17       A.   Yes.
18       Q.   Okay.  It says:  "All non-exempt
19   associates are required to accurately record
20   their hours worked and absences taken.  All
21   exempt associates are required to accurately
22   record their absences taken.  A non-exempt
23   associate who feels he/she did not receive pay
24   for all his/her hours worked.  And an exempt or
25   salaried, non-exempt associate who feels



Case 2:23-cv-02848-SJB-SIL  Document 97-33  Filed 06/11/25  Page 26 of 45 PageID #: 10510

LOUIS PIA  Contains Highly Conf. Testimony
Keith Fischer, et al. vs GEICO

August 13, 2024
81

```
 1                     L. PIA

 2            THE WITNESS:  Yes.

 3            MR. SLOTNICK:  Let me introduce --

 4            MR. SCIMONE:  And just when the

 5        court reporter read backs the question,

 6        that's not the question.  You have to

 7        wait for the attorney to ask the

 8        question.

 9            THE WITNESS:  Sorry.

10            MR. SCIMONE:  Just wait until he

11        asks the question.  Don't answer.

12            THE WITNESS:  Am I done with this

13        one, or we're going to --

14            MR. SLOTNICK:  Yeah, you can set

15        that aside for now.

16            (Defendant's Exhibit Number 3 was

17        marked for identification.)

18    BY MR. SLOTNICK:

19        Q.  Mr. Pia, I've handed you what's been

20    marked as Exhibit 3.  This is a

21    training-history log.

22            Are you familiar with the trainings

23    that you completed as a GEICO employee?

24        A.  Yes.

25        Q.  How often did you take trainings at
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 27 of 45 PageID #: 10511

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                                    82

```
 1                    L. PIA

 2   GEICO?

 3       A.   I would say there were several times a

 4   year that we were notified to go online and

 5   take, you know, a training class.

 6       Q.   And did you always follow those

 7   prompts and take the trainings?

 8       A.   Yes.

 9       Q.   Okay.  Did you always complete the

10   trainings?

11       A.   Yes.

12       Q.   If you turn to -- and apologies, there

13   are no separate page numbers on this document,

14   but if you turn to the page that has the date

15   5/17/16 on the bottom row, in the middle.

16       A.   Got it.

17       Q.   Do you see on the left side, it says:

18   Louis Pia, Policies and Acknowledgements 2016?

19            Do you see that?

20       A.   2016, yes.  Second from the bottom?

21       Q.   Second from the bottom.

22       A.   Yep.

23       Q.   Do you see where it says "Completed"

24   in the middle?

25       A.   Yes.
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 28 of 45 PageID #: 10512

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                                   83

```
 1                      L. PIA

 2     Q.  Do you see where it says "Pass"?

 3     A.  Yes.

 4     Q.  Do you have any reason to doubt that

 5   those -- that you accurately completed and

 6   passed this training?

 7     A.  No.

 8     Q.  If you turn to the next page, where

 9   the entry says 5/2/2017.

10     A.  One, two --

11     Q.  Towards the middle.

12     A.  Yeah.

13     Q.  On the left side, it says:  "2017

14   Policies and Acknowledgements."

15     A.  Yes.

16     Q.  Completed and passed?

17     A.  Yes.

18     Q.  Any reason to doubt that you completed

19   and passed that training?

20     A.  No.

21     Q.  The next one is on the next page,

22   second row down.  4/22/2018, do you see that?

23     A.  Yes.

24     Q.  On the left side, "2018 Policies and

25   Acknowledgements"?
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 29 of 45 PageID #: 10513

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            84

```
 1                        L. PIA

 2      A.   Yes.

 3      Q.   Completed and pass for that row?

 4      A.   Yes.

 5      Q.   Any reason to doubt that you completed

 6  and passed that training?

 7      A.   No.

 8      Q.   And then, the -- on the same page, it

 9  says 5/1/2019 towards the middle.

10           Do you see that entry?

11      A.   Yes.

12      Q.   The left side, it says:  "2019

13  Policies and Acknowledgements."  Completed and

14  Pass.

15           Do you see that?

16      A.   Yes.

17      Q.   Okay.  Any reason to doubt that you

18  completed and passed that training?

19      A.   No.

20      Q.   On the next page, it says May 1st,

21  2021 --

22      A.   Yeah.

23      Q.   -- towards the top.  Do you see that?

24      A.   Yep.

25      Q.   It's "2021 Policies and
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 30 of 45 PageID #: 10514

LOUIS PIA  Contains Highly Conf. Testimony                        August 13, 2024
Keith Fischer, et al. vs GEICO                                                      85

```
 1                        L. PIA
 2   Acknowledgements?
 3        A.  Yes.
 4        Q.  "Completed", do you see that?
 5        A.  Yes.
 6        Q.  Any reason to doubt that you completed
 7   that training?
 8        A.  No.
 9        Q.  Do you know why there's no entry for a
10   pass of that training?
11        A.  I do not.
12        Q.  And then, on the same page, it says
13   5/30/2022 in the middle.  Do you see that?
14        A.  Yes.
15        Q.  On the left side, Policies and
16   Acknowledgements 2022, and it says completed
17   next to it.
18            Do you see that?
19        A.  Yes.
20        Q.  Any reason to doubt that you completed
21   that training?
22        A.  No.
23        Q.  Did you understand yourself to be a
24   non-exempt associate at GEICO?
25        A.  That always confused me, the
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 31 of 45 PageID #: 10515

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                              93

```
 1                          L. PIA

 2   factors, though, that went into whether you got

 3   a raise or not?

 4        A.  Yes.

 5        Q.  Okay.  And what were those factors?

 6        A.  The way that you handled your

 7   investigations, and kept them up in a timely

 8   manner.

 9        Q.  Anything else?

10        A.  Not that I can recall right now.

11        Q.  Do you know if the raises were based

12   on your tenure with GEICO?

13        A.  I don't think so.

14        Q.  Other than the change from

15   investigator to lead investigator, were you at

16   -- at any point otherwise promoted at GEICO?

17        A.  No.

18        Q.  Did you apply for any other promotions

19   at GEICO?

20        A.  No.

21        Q.  And did you record your time worked at

22   GEICO?

23        A.  On a daily basis, you mean?

24        Q.  Yes, on a daily basis.

25        A.  Yes, I did.
```



```
1                          L. PIA

2       Q.  And how did you do that?

3       A.  I did it on a -- a computer system,

4   and it was -- it was -- you had to input

5   Monday, Tuesday, Wednesday, Thursday, Friday,

6   and you had to input 7.75 under each day that

7   you worked.  And Gerry Cassagne -- as well as

8   other supervisors, I believe -- in order to

9   keep up with their workload, they had -- I know

10  I can state -- state this specifically.  My

11  time -- my time payment on the -- on the

12  computer, I would submit by, like, Wednesday of

13  every week because we knew -- well, I knew that

14  I wasn't going to incur any overtime.  So

15  therefore, the -- the -- the -- the hours

16  weren't going to change.

17           So he would ask if -- if for some

18  reason I got preoccupied.  And Thursday came

19  around, and he would send an e-mail and say,

20  you know, time sheets.  And it was, you know,

21  assumable that you'd put in your time sheets

22  for 7.75 Monday to Friday, get them into Gerry

23  so he can get a heads up, you know, on what his

24  chores were regarding supervisory paperwork.

25  And so they were -- they were -- they were put
```



```
 1                        L. PIA
 2   in before the end of the workweek.
 3        Q.  Just so I understand you fully.
 4            So you're saying that you would submit
 5   time before the end of the week that included
 6   hours for days that you hadn't worked yet --
 7        A.  Correct.
 8        Q.  -- correct?
 9        A.  Yeah.  And if I knew I was going to
10   take off on a Saturday -- I mean, on a Friday
11   or whatever, I would then go there, and then
12   you'd have to -- there'd be a drop-down for,
13   like, vacation day or whatever the case may be.
14        Q.  Okay.  Do you recall what program you
15   used to submit that?
16        A.  No.
17        Q.  Do you know if that program changed at
18   all from 2016 forward?
19        A.  Until I retired?
20        Q.  Yeah.
21        A.  I don't believe it did.
22        Q.  Was the 7.75 per day pre-populated, or
23   did you have to physically enter that number
24   in?
25        A.  I -- I -- I'm pretty sure I -- I -- I
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 34 of 45 PageID #: 10518

LOUIS PIA  Contains Highly Conf. Testimony                          August 13, 2024
Keith Fischer, et al. vs GEICO                                                    98

```
 1                      L. PIA

 2          is referenced and connected to the

 3          responses to the Court's

 4          Interrogatories.

 5    BY MR. SLOTNICK:

 6          Q.  Mr. Pia, were you always paid for all

 7    of the time that you entered into the GEICO

 8    works -- workday system -- time-keeping system?

 9          A.  I believe I was, yes.

10          Q.  If you look -- if you look on

11    Paragraph 8.

12          A.  So we're going backwards; right?

13          Q.  Yep.  This is on Page 3 of the

14    Declaration.

15          A.  Okay.

16              MR. SCIMONE:  Do you understand what

17          he means by Declaration?  You flipped

18          past the page, but you saw that there's

19          a page -- cover page with Declaration

20          there?

21              THE WITNESS:  Yes, there's two

22          documents --

23              MR. SLOTNICK:  Two documents.

24              THE WITNESS:  -- in one exhibit?

25              MR. SCIMONE:  Yep.
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 35 of 45 PageID #: 10519

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                           128

1                        L. PIA

2    beside myself with that number for the monthly

3    average.

4            So, I mean, I -- I did repeatedly

5    during that time voice my dissension to Gerry

6    about, you know, the case load and -- and --

7    and he was well aware that we were working over

8    and above the 38.75.

9        Q.  Did you ever make any written

10   complaints to Gerry about that?

11       A.  That -- that would be career suicide.

12   I -- no, I -- I didn't do that, no.

13       Q.  Did you ever go to HR with complaints

14   about those hours worked?

15       A.  Again, career suicide.

16       Q.  Did you call the ethics hotline about

17   those hours worked?

18       A.  During that time?

19       Q.  Yes.

20       A.  No.

21       Q.  Do you know if the ethics hotline was

22   anonymous?

23       A.  It was anonymous when I called back

24   when -- as I stated earlier in the testimony.

25       Q.  Do you know whether any GEICO



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 36 of 45 PageID #: 10520

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                           129

```
 1                      L. PIA
 2   investigators in the SIU asked for approval to
 3   work more than 38.75 hours per week, 2016
 4   forward?
 5        A.  Again, I'm a little confused at that
 6   question because I determined that question to
 7   be a yes, because of the meetings that we had,
 8   when overtime was brought up -- the issue of
 9   overtime.  And we're working above and beyond
10   the 38.75.
11        Q.  Right, but I'm -- I'm asking about
12   specifically.
13            Like, do you know of anyone who
14   actually asked to work more than 38.75?  Like,
15   any direct requests?
16        A.  I -- I don't.
17        Q.  Okay.  Were you ever approved to work
18   overtime at GEICO?
19        A.  Yes.
20        Q.  When were you approved to work
21   overtime?
22        A.  It was the -- the weirdest thing.  At
23   some point in time -- I don't know the time
24   period -- but they -- they asked if -- if
25   people wanted overtime to handle other people's
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 37 of 45 PageID #: 10521

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            130

```
 1                         L. PIA

 2    cases, when you would take cases that either

 3    other people had, and you were assigned these

 4    cases.  And you would do the investigation, and

 5    then get either two hours or four hours,

 6    whatever, overtime, but never to, you know, try

 7    to get your workload down.

 8        Q.  Do you recall when you were approved

 9    to work overtime?

10        A.  The time period?

11        Q.  Yes.

12        A.  I -- I do not, no.

13        Q.  And you said that you were asked to

14    work on other people's cases?

15        A.  Well, that was the stipulation of --

16    for the -- for the overtime.  Why it was

17    determined or approved, I -- I don't know.

18    That would be a management decision, but that

19    -- that was a real -- the -- the specifications

20    was you couldn't -- you know, like, I couldn't

21    ask Gerry -- Gerry, I'm going to, you know,

22    work four hours tonight, and I'm just going to

23    take the four hours extra for my cases.  You

24    had to do other people's cases that were

25    assigned.
```



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 38 of 45 PageID #: 10522

LOUIS PIA  Contains Highly Conf. Testimony                     August 13, 2024
Keith Fischer, et al. vs GEICO                                              131

                              L. PIA

1

2      Q.  Did anyone actually tell you that

3  specifically?

4      A.  When I was asked to do overtime, I

5  think I initially asked Gerry, is that for my

6  case load.

7      Q.  And what did he say?

8      A.  He said, no, we're going to assign you

9  cases to -- to -- to work on, and you'll get --

10  I don't know.  I -- I forget whether if it was

11  two hours or four hours overtime.

12      Q.  Approximately, how many times did that

13  happen?

14      A.  Several.  I -- I mean, I don't know

15  the exact amount.

16      Q.  And was that overtime that you asked

17  to work, or was it overtime that was assigned

18  to you by Gerry?

19      A.  No, they would -- they wouldn't -- he

20  didn't assign it and say, you got to do this.

21  You know, he would ask:  There's overtime

22  available, are you interested?  And if it was

23  -- if it was asked of me, more times than not,

24  I took it.

25      Q.  Did you ever decline to take the



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 39 of 45 PageID #: 10523

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                            138

                            L. PIA

2    SIU platform, in order to receive a case, had

3    to be referred by someone.  As I testified

4    earlier, from either the claims examiners or

5    the inside analyst or whatever.

6           So social media, if I -- for example,

7    I had direct knowledge with a social media

8    case.  I had a case, and it was an individual

9    that had a high-end vehicle, a McLaren, which

10   was valued at like 400,000, $500,000.  And

11   they're normally a race car, so I -- I wanted

12   to see if my policyholder, who is alleging that

13   he -- it incurred damage on a regular roadway,

14   had any, like, Facebook or Instagram photos of

15   him racing like at a racetrack.  Therefore, if

16   I could prove that, he would be acting in a

17   reckless matter and -- and I -- I could get,

18   you know, a -- a savings on the case.  So I

19   inquired with one of the social media

20   investigators to assist me, and he did some

21   work.  So I actually referred that part of the

22   case to him, and then he gave me, you know,

23   some information on that.

24       Q.  Okay.  Thank you for that.  I'm trying

25   to figure out how -- how the different cases



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 40 of 45 PageID #: 10524

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                        139

                              L. PIA

 2   work, the different types of cases, the

 3   referrals --

 4        A.   Yeah.  Yeah.

 5        Q.   -- where they come into play.

 6             You said social media investigator;

 7   right?

 8        A.   There was -- there was one individual,

 9   Paul -- I forget his last name -- who

10   specifically did social media cases.  Now I, as

11   well, got social media cases referred to me,

12   you know, as a -- as a -- a general assignment.

13   If they were overloaded, you know, if -- if

14   they came in and -- and -- and then there ---

15   there were too many cases for the individuals

16   that were normally assigned them, that would --

17   it would overflow to us, and we would get

18   assigned them, also.

19        Q.   Were social media cases their own

20   cases, or was that always a component of a

21   general investigation?

22        A.   That, I couldn't tell you.  I mean,

23   normally social media was utilized in, like,

24   accident cases, where individuals were either

25   no-fault or bodily injury, where they were



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 41 of 45 PageID #: 10525

LOUIS PIA  Contains Highly Conf. Testimony                August 13, 2024
Keith Fischer, et al. vs GEICO                                        170

L. PIA

2      A.  Well, that -- that -- yes, that was a

3   GEICO way to signify, I believe, a pay grade.

4   Like, a -- at -- when I was a 60, I -- I think

5   a lead was a 66, a regular investigator was a

6   65.  I think a supervisor was like a 69 or 70.

7   A manager was probably higher than that.  It

8   all signified pay grade.

9      Q.  And in your position as a lead

10  investigator, that was a Level 66; is that

11  correct?

12     A.  To the best of my recollection, yes.

13     Q.  As a lead investigator, were you able

14  to submit your own cases for closure, or did

15  you still need supervisory approval?

16     A.  No, I -- I had no supervisory powers,

17  so to speak.  I -- I had the same requirements

18  as a regular investigator, as far as case

19  closings and requesting time off, and stuff

20  like that.

21     Q.  So just to confirm.  You still needed

22  to have supervisory approval of your cases in

23  your role as a lead security investigator;

24  correct?

25     A.  Yes.



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 42 of 45 PageID #: 10526

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                           185

L. PIA

1

2     A.  Yeah, prob -- for sure or -- or for

3     certainty, I could say the first three years of

4     my employment.

5     Q.  And what years were those?

6     A.  2000 -- conservatively, 2003 to 2006.

7     Q.  Is it your testimony that you've never

8     worked only 7.75 hours in a day, from 2016

9     through the end of your employment?

10    A.  Not that I can recall.  I -- for

11    certainty, I -- I can't say for sure, but it's

12    -- it's highly questionable that I could -- I

13    could have worked a day, 7.75 during that time

14    period, and not penalize myself in -- in such a

15    way where the following day, I was, you know,

16    overburdened, you know, with work.  It just

17    encompassed overtime every day.

18    Q.  Okay.  And what do you mean by the

19    term "extensive"?

20    A.  Well, ex -- extensive is -- could be

21    -- 38.75 is your normal workday.  So 50 hours

22    could be extensive, if that was all of it, but

23    now after -- or during COVID, it was raised to

24    65 and -- and that was a conservative est --

25    because there's some -- some weeks, I was



Case 2:23-cv-02848-SJB-SIL  Document 97-33  Filed 06/11/25  Page 43 of 45 PageID #: 10527

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                                186

                              L. PIA

1

2    probably working over 70 hours a week, and

3    that's what I would call extensive.  And the

4    case load was extensive, also.

5        Q.  And were you receiving overtime pay

6    for any time period during the COVID era?

7        A.  I don't know if that overtime that we

8    spoke about earlier, where we were given

9    unrelated cases for overtime.  I don't know if

10   that incurred during the COVID time, but other

11   than that, I received no overtime pay for my

12   cases that were directly assigned to me.

13       Q.  And did you keep records of the hours

14   that you worked during that period, but did not

15   record in GEICO's system anywhere else?

16       A.  No.

17       Q.  The second sentence in Paragraph 39,

18   you say:  "In full workweeks, for example,

19   weeks in which Pia worked at least five days

20   without days lost due to holidays or other time

21   off, these assignments required him to work

22   approximately 55 hours per week."

23           So is it your testimony in your claim

24   that you worked approximately 55 hours per week

25   each week during the period from December 2016



Case 2:23-cv-02848-SJB-SIL   Document 97-33   Filed 06/11/25   Page 44 of 45 PageID #: 10528

LOUIS PIA  Contains Highly Conf. Testimony                    August 13, 2024
Keith Fischer, et al. vs GEICO                                          226

```
 1                   L. PIA

 2        MR. SLOTNICK:  Thank you.  All

 3   right.

 4        THE VIDEOGRAPHER:  This -- this

 5   concludes the video deposition of Louis

 6   Pia.  The time is approximately 15:24,

 7   end of Media 7.  We are off the record.

 8   Thank you, everyone.

 9        THE REPORTER:  Mr. Scimone, would

10   you like to purchase a copy of this

11   transcript?

12        MR. SCIMONE:  Yeah.  We're going to

13   do a three-day.  Let's do three days.

14        THE REPORTER:  You want it in three

15   days.  Okay.  Thank you.

16        (Thereupon, the examination was

17   concluded at 3:24 p.m.)

18

19

20

21

22

23

24

25
```



```
 1                        L. PIA

 2              C E R T I F I C A T E

 3

 4   STATE OF NEW YORK    )

 5                              :SS

 6   COUNTY OF NEW YORK   )

 7

 8       I, TIFFANIE JONES, a Notary Public within

 9   and for the State of New York, do hereby

10   certify:

11       That the witness whose examination is

12   hereinbefore set forth was duly sworn and that

13   such an examination is a true record of the

14   testimony given by such a witness.

15       I further certify that I am not related to

16   any of these parties to this action by blood or

17   marriage, and that I am not in any way

18   interested in the outcome of this matter.

19       IN WITNESS WHEREOF, I have hereunto set my

20   hand this 13th day of August, 2024.

21

22

23

24   _____

25               TIFFANIE JONES
```

