# EXHIBIT 12

1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE EASTERN DISTRICT OF NEW YORK

3      KEITH FISCHER, MICHAEL         )
       O'SULLIVAN, JOHN MOESER, LOUIS )
4      PIA, THOMAS BARDEN, CONSTANCE  )
       MANGAN, and CHARISE JONES,     )
5      individually and on behalf of all )
       others similarly situated,     )
6                                      )
                 Plaintiffs,           )
7                                      ) No. 2:23-cv-2848
         -v-                           )
8                                      )
       GOVERNMENT EMPLOYEES INSURANCE  )
9      COMPANY d/b/a GEICO,            )
                                       )
10               Defendant.            )

11

12                 Friday, January 10, 2025

13            Oral videoconference deposition of CRAIG

14   COSTANZO, held pursuant to Notice via Zoom with all

15   parties participating remotely, commencing at

16   10:00 a.m. Central Time, on the above date, before

17   Andrew R. Pitts, Certified Shorthand Reporter.

18

19

20

21

22

23

24   Andrew R. Pitts, CSR, RPR
     License No.:  084-4575
25   Esquire Deposition Solutions



800.211.DEPO (3376)
EsquireSolutions.com

```
 1   REMOTE APPEARANCES:

 2   On behalf of the Plaintiffs:

 3   OUTTEN & GOLDEN, LLP
     685 Third Avenue - 25th Floor
 4   New York, New York  10017
     (347) 390-2121
 5   Email: zdsouza@outtengolden.com
             sjean@outtengolden.com
 6   BY:  ZARKA SHABIR DSOUZA, ESQUIRE
          SABINE JEAN, ESQUIRE
 7

 8   On behalf of the Defendant GEICO:

 9   DUANE MORRIS, LLP
     190 South LaSalle Street - Suite 3700
10   Chicago, Illinois  60603-3433
     (312) 499-6779
11   Email:  gtsonis@duanemorris.com
     BY:  GREGORY TSONIS, ESQUIRE
12

13

14   ALSO PRESENT:

15      MEGAN SCZYGELSKI, Legal Videographer.

16

17

18

19

20

21

22

23

24

25
```



```
 1                    I N D E X

 2   CRAIG COSTANZO                          EXAMINATION

 3        BY MR. TSONIS                           5

 4

 5                  E X H I B I T S

 6   COSTANZO        DESCRIPTION              PAGE

 7   Exhibit 1   Workday profile for Craig
                 Costanzo, G004533-4588       separate
 8               (confidential)              transcript

 9

10   Exhibit 2   Geico HR Associate Handbook, 147
                 Compensation Contents,
11               G000028-43

12   Exhibit 3   2017 Geico Performance Guide & 166
                 Appraisal for Craig Costanzo,
13               G006638-6642

14   Exhibit 4   2019 Geico Performance        183
                 Appraisal for Craig Costanzo,
15               G006591-6603

16   Exhibit 5   2020 Geico Performance        193
                 Appraisal for Craig Costanzo,
17               G006581-6590

18   Exhibit 6   MAP 2 2021 (second half of    206
                 year) Performance Appraisal,
19               Craig Costanzo, G006623-6626

20   Exhibit 7   MAP 2 2022 (second half of    223
                 year) Performance Appraisal,
21               Craig Costanzo, G006621-6622

22   Exhibit 8   Answers to Interrogatories    229

23   Exhibit 9   Geico Human Resources         250
                 Associate Handbook,
24               G000191-235

25
```



 1              (Whereupon, the following proceedings were

 2               taken via videoconference.)

 3              THE VIDEOGRAPHER:  Good morning.  I am now

 4    started the recording, and we are now on the record.

 5    The time is 10:01 a.m. Central on Friday,

 6    January 10th, 2025.  This begins the videoconference

 7    deposition of Craig Costanzo taken in the matter of

 8    Keith Fischer, et al., versus Government Employees

 9    Insurance Company doing business as Geico filed in the

10    United States District Court for the Eastern District

11    of New York, Case No. 23-cv-2848.

12              My name is Megan Sczygelski.  I'm your

13    remote videographer today.  The court reporter is

14    Andrew Pitts.  We are representing Esquire Deposition

15    Solutions.

16              Will everyone present please identify

17    themselves and state who you represent, after which

18    the court reporter will swear in the witness.

19              MS. DSOUZA:  Hi.  This is Zarka DSouza from

20    the law firm Outten & Golden on behalf of the

21    Plaintiffs.

22              MR. TSONIS:  Gregory Tsonis on behalf of

23    Defendant Geico, from Duane Morris LLP.

24              MS. JEAN:  Sabine Jean from Outten & Golden

25    on behalf of the Plaintiffs.



```
 1                    COURT REPORTER:  Okay.  Mr. Costanzo,
 2     please raise your right hand to be sworn in.
 3                    (Whereupon, the witness was
 4                     administered an oath.)
 5                    COURT REPORTER:  Okay.  Great.  Sworn.  You
 6     may lower your hand.  I will mute myself, and Counsel,
 7     you may proceed.
 8                    MR. TSONIS:  Thank you.
 9                         CRAIG COSTANZO,
10     called as a witness herein, having been first
11     administered an oath, was examined and testified
12     remotely via videoconference as follows:
13                         EXAMINATION
14     BY MR. TSONIS:
15          Q.    Good morning, Mr. Costanzo.  How are you?
16          A.    Good morning.  How are you?
17          Q.    I'm well, thank you.  My name is Greg
18     Tsonis, as you heard, and I'm a lawyer for Geico.
19     I will be the one that is taking your deposition
20     today.
21                    Before we get started, just a couple of
22     foundational things, then I'll go over some basic
23     ground rules, but can you state and spell your name
24     for the record.
25          A.    My name is Craig Costanzo; C-R-A-I-G,
```



 1    C-O-S-T-A-N-Z-O.

 2        Q.    Great.  And what's your current address?

 3        A.    7721 River Road, Baldwinsville, New York,

 4    13027.

 5        Q.    Thank you.  Now, have you ever been deposed

 6    before, Mr. Costanzo?

 7        A.    I have not.

 8        Q.    Okay.  And just to be clear, I mean if you

 9    have ever been deposed either while you've worked for

10    Geico or previous to Geico.  I understand you were a

11    police officer prior to that, correct?

12        A.    Correct.  I don't believe I have ever done

13    a deposition.

14        Q.    Okay.  Have you ever testified in a

15    courtroom?

16        A.    I have.

17        Q.    All right.  About how many times?

18        A.    I'm not really sure.  Several.  Many.

19        Q.    Okay.  Well, before we get started, I'll go

20    over the ground rules.  In some ways today it might be

21    similar to what you've done before, but in some ways

22    it will be different.

23              So today, I'll be asking you a series of

24    questions.  Your job is just to provide truthful

25    answers to my questions.  Both my questions and your



1    Q.    Okay.  Normally on a day-to-day basis,

2    though, you would work either from your home or out in

3    the field or some combination of the two, right?

4    A.    That's correct.

5    Q.    Okay.  As an out- -- when you were an

6    outside investigator during this time period when you

7    started, who was the SIU manager of the Woodbury

8    office?

9    A.    I can't remember his name.

10   Q.    Was it Mike DeGrocco?

11   A.    Yes, it was.

12   Q.    Okay.  And do you recall when Mike DeGrocco

13   stopped being the SIU manager for the Woodbury office?

14   A.    No, I -- I couldn't.  I don't remember the

15   dates.

16   Q.    All right.  That's okay.  Again, we'll be

17   talking about things that happened several years ago,

18   so understandable that you don't recall exact dates,

19   but to the extent you can give me your best

20   recollection, that's all I'm asking for.

21         After Mike DeGrocco, who took over as the

22   SIU manager of the Woodbury office?

23   A.    Bill Newport.

24   Q.    Okay.  How long did Bill Newport serve as

25   SIU manager of the Woodbury office?



1  exhibit here.  I'm going to drop it in the chat for

2  you as well, Court Reporter and Zarka.

3              MS. DSOUZA:  Okay.  Thank you.

4              (Whereupon, proceedings were had which were

5               deemed confidential.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1    time on them.  So, like, they -- it was like they

2    weren't going to count them if you rejected them, but

3    you still spent time on them.

4         Q.    Okay.  So is it accurate to say that

5    this -- this ramp-up that you're talking about started

6    in -- I think you said a little before COVID in 2019?

7         A.    I think it was around there, 2019.

8         Q.    Okay.  With Chet Janik, I think you said,

9    pre-COVID, you know, he would encourage you, it sounds

10   like, to adjust your schedule as needed?

11        A.    Yes.

12        Q.    So if you needed to work early for some

13   reason, he would encourage you to basically, you know,

14   make up that time by shortening your shift on a

15   different day?

16        A.    Yes.

17        Q.    Okay.  Chet Janik never instructed you to

18   work off the clock and not record it?

19        A.    No, he did not.

20        Q.    All right.  And you never told Chet Janik

21   that you were working but not entering hours into

22   Workday?

23        A.    That -- I didn't specifically say it like

24   that, no.  I mean, as time was going on with this, it

25   was, "There's no way we can do this without working



```
 1                   (Whereupon, the following proceedings were
 2                   deemed not confidential.)
 3    BY MR. TSONIS:
 4         Q.    I'm going to show you what's going to be
 5    marked as Exhibit 2.  Let me share my screen again.
 6                   (Whereupon, Costanzo Exhibit 2 was
 7                   presented.)
 8    BY MR. TSONIS:
 9         Q.    You see this document, Mr. Costanzo?
10         A.    Yes.
11         Q.    All right.  What is this document?
12         A.    This is part of the handbook, I believe.
13    Yes.
14         Q.    Yeah, do you see down here, it says --
15         A.    Yeah, Human Resources Associate Handbook.
16         Q.    Yeah.  And this is a portion, not the
17    entire handbook, but the -- do you see on the bottom
18    right, it says Compensation Contents?
19         A.    Yes.
20         Q.    And do you see, again, here -- sorry to
21    jump back and forth -- on the left, there's a date
22    that say 11/17, slash 17?
23         A.    Yes.
24         Q.    Is it your understanding that this reflects
25    the compensation portion of the associate handbook
```



1  off, but I want to focus on this last paragraph here

2  in this section, okay?

3       A.    Yes.

4       Q.    Do you see the first sentence here, it

5  says, "All non-exempt associates are required to

6  accurately record their hours worked and absences

7  taken"?  Do you see that?

8       A.    I do.

9       Q.    You understood that this was Geico's policy

10  at the time --

11       A.    Yes.

12       Q.    -- that applied to all associates,

13  including SIU investigators like yourself?

14       A.    Yes.

15       Q.    All right.  Now, again, ignoring the exempt

16  versus non-exempt, the second sentence here deals with

17  exempt.  I want to focus on the third sentence

18  again -- or also.

19            It says, "A non-exempt associate who feels

20  he/she did not receive pay for all of his or her hours

21  worked and an exempt or salaried non-exempt associate

22  who feels his pay or her pay incorrectly reflects a

23  deduction for an absence should contact his or her

24  supervisor, local human resources manager, or

25  corporate human resources."  So I'll pause there.



1    Q.    Okay.  The second paragraph here under this

2  section says, "An hourly non-exempt associate must

3  receive permission in advance to work more than his or

4  her regular work hours.  The associate's timesheet

5  must show the exact days the hours are worked."

6         Do you see those two sentences?

7    A.    I do.

8    Q.    All right.  Was this your understanding,

9  that as a field investigator at SIU, that you had to

10  receive permission to work more than your regular work

11  hours?

12    A.    I did not remember that section, so I do

13  not recall that, but I see it now.

14    Q.    Okay.  But you don't disagree that this is

15  the Geico policy that's written in the associate

16  handbook that I was --

17    A.    I -- I do not disagree with that.

18    Q.    Okay.  Part of Geico's policies was -- or

19  strike that.

20         As an associate, there were certain

21  trainings or certifications that you were required to

22  do at least on an annual basis?

23    A.    Yes.

24    Q.    All right.  And was one of those an

25  acknowledgement of Geico's policies?



1          A.    Yes, it was.

2          Q.    And those policies are the policies that

3    are contained in the associate handbook?

4          A.    Yes, it is.

5          Q.    All right.  Now, I'm happy to show it to

6    you if you'd like, but would you agree that each year

7    you were required to acknowledge and agree to follow

8    Geico's policies, that you did so?

9          A.    I agree with that, yes.

10         Q.    Okay.  And that includes the overtime

11   eligibility policy that we just reviewed?

12         A.    Yes.

13         Q.    Okay.  Just one moment.  I'll show you

14   Exhibit 1 again, just to look at another page that

15   I think will help guide us in our next discussion

16   here.  This is going back to Exhibit 1.  This is the

17   page that's ending in 4585.

18              Do you see here there's a Performance

19   Review section, and it's still your Workday profile?

20         A.    Yes.

21         Q.    All right.  And, now, this lists

22   essentially each review year starting from the

23   beginning of your employment with Geico to essentially

24   the most recent, not including the 2024 calendar year

25   for which there -- the performance review process



1  BY MR. TSONIS:

2       Q.    Mr. Janik, do you see the document that I'm

3  showing you now?

4            MS. DSOUZA:  Oh, sorry, Counsel, you -- you

5  called the witness Mr. Janik.

6            MR. TSONIS:  Oh, excuse me.  I'm looking at

7  the words.

8  BY MR. TSONIS:

9       Q.    Mr. Costanzo, can you see the document that

10  I'm showing you?

11       A.    Yes.

12       Q.    All right.  And do you see that this is

13  a -- from Workday but showing your Geico 2019 annual

14  performance assessment?

15       A.    Yes.

16       Q.    All right.  And this -- you were evaluated

17  by Mr. Janik, your then supervisor?

18       A.    Yes.

19       Q.    And this is for the review period from

20  January 1st, 2019, through December 31st, 2019?

21       A.    Yes.

22            MR. TSONIS:  All right.  And for the

23  record, this is the document Bates stamped G006591

24  ending in 6603.

25



```
 1   BY MR. TSONIS:
 2        Q.    So after we skip over the -- the
 3   instructions, it shows that this acknowledgement of
 4   your appraisal was, you know, entered by both you and
 5   your supervisor, right?
 6        A.    Yes.
 7        Q.    Was there ever a year where you were not
 8   sort of presented with your performance appraisal?
 9        A.    No.
10        Q.    Okay.  So similarly here, under the --
11   there's a Goals section, and I know this is in a
12   slightly different format, but it shows, you know,
13   average case life non EUO cases again, right?
14        A.    Yes.
15        Q.    All right.  And here, to be a 5 is below
16   seven days.  It could be a -- if you're a -- you're
17   a 1 if you're above 19 days, right?
18        A.    Yes.
19        Q.    All right.  Does this look fairly similar
20   to what it was when we looked at it in 2017?
21        A.    Yes.
22        Q.    All right.  Similarly, there's a manager
23   evaluation that says your average case life was
24   6.9 days from January 1st through August 1st, and then
25   it's a -- as a lead investigator, 10.3; do you see?
```



CRAIG COSTANZO  Non-Confidential                    January 10, 2025
KEITH FISCHER v GEICO                                              250

```
 1   to SICM entries and these generalized complaints, is
 2   there anything else that you contend put Geico on
 3   notice that you were working hours but not recording
 4   them in the timekeeping system?
 5        A.    Not that I can think of, no.
 6        Q.    Okay.  Just one moment.  I'm going to
 7   introduce just one final exhibit.
 8              (Whereupon, Costanzo Exhibit 9 was
 9               presented.)
10   BY MR. TSONIS:
11        Q.    All right.  Do you see this document,
12   Mr. Costanzo?
13        A.    Yes.
14        Q.    All right.  And this is similar to the
15   other document we looked at, right?
16        A.    Yes.
17        Q.    What is this document?
18        A.    It's the HR handbook for associates.
19        Q.    This is the associate handbook, the
20   Employment Contents, right?
21        A.    Yes.
22        Q.    And this is dated July of 2023?
23        A.    Yes.
24        Q.    All right.  Is this a document that you
25   would have received?
```



1      A.    Yes.

2      Q.    All right.  Now, I want to skip to just one

3   portion of this document.  Do you see here on -- so,

4   sorry, I apologize.

5            MR. TSONIS:  For the record, this is the

6   document Bates stamped G000191 to G000235.

7   BY MR. TSONIS:

8      Q.    So if we skip to Hours Worked -- or Hours

9   of Work; do you see that?

10     A.    Yes.

11     Q.    It says in the second paragraph here, "Each

12  associate is required to adhere to their scheduled

13  hours.  Each non-exempt associate is responsible for

14  the accurate and electronic reporting of all hours

15  worked, and each non-exempt and exempt associate is

16  responsible for the accurate and electronic recording

17  of all absences."

18            Do you see that?

19     A.    Yes.

20     Q.    All right.  You were aware that that was

21  the policy at this time?

22     A.    Yes.

23            MR. TSONIS:  All right.  Give me just one

24  minute.  I apologize.  Let's go off the record.  I'm

25  almost entirely wrapped up.  Let me just -- oh, strike



1   very least, this date that non-exempt associates and

2   you were never allowed to work off the clock?

3       A.   I see it now.

4       Q.   Okay.  Well, earlier, you reference that at

5   some point, they started ranking you against other --

6   other people, right?

7       A.   Yes.  Yes.

8       Q.   And I think you referenced -- and I don't

9   want to put words in your mouth, but did you stop your

10  off the clock work at that point in time?

11      A.   I did.

12      Q.   Okay.  So since that date, you have not

13  been working any hours that are not recorded in

14  Workday?

15      A.   Correct.

16      Q.   When, approximately, was that date?

17      A.   I don't know.  I don't know what the date

18  was.

19      Q.   Who was your supervisor at the time that

20  you stopped?

21      A.   I'm not sure.

22      Q.   Was it Dara Campbell?

23      A.   I don't know if it was Dara or if it was

24  Andrew.

25      Q.   It was one of those two individuals?



1    A.    I believe so.

2    Q.    But you don't know which one?

3    A.    I don't.

4    Q.    So it would have -- it would have, though,

5  been some point in 2022 or 2023 then?

6    A.    I believe so.

7    Q.    Have you talked to any of the other people

8  that are part of this lawsuit?

9    A.    I have not.

10    Q.    Do you have an understanding as to who the

11  other individuals that have joined this lawsuit or

12  that have filed it are?

13    A.    I saw the -- some names on the one form.

14    Q.    Do you know any of those people, like Keith

15  Fischer?

16    A.    No, I don't know him, and I'm not aware --

17  I believe Mike Reed is, but other than that,

18  I don't --

19    Q.    Okay.

20    A.    Yeah, Maria maybe, I think, I heard was in

21  it.

22    Q.    Maria Munoz?

23    A.    Yes, but I don't --

24    Q.    Earlier --

25    A.    I don't know her very well.



1  And Ms. DSouza, would you like your client to read and

2  sign?

3              MS. DSOUZA:  Yes.

4              THE VIDEOGRAPHER:  Thank you.  This

5  concludes the videoconference deposition of Craig

6  Costanzo on -- sorry, on January 10th, 2025.  We are

7  going off the record at 4:12 p.m.

8              (Whereupon, the proceedings concluded.)

9              FURTHER DEPONENT SAITH NOT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1   STATE OF ILLINOIS      )
                            ) SS:
 2   COUNTY OF C O O K      )

 3

 4        I, ANDREW R. PITTS, C.S.R. within and for the

 5   County of Cook and State of Illinois, do hereby

 6   certify that heretofore, to wit, on Friday the 10th

 7   day of January, 2025, personally appeared before me

 8   via videoconference, CRAIG COSTANZO, in a cause now

 9   pending and undetermined in the United States District

10   Court, For the Eastern District of New York, wherein

11   KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS

12   PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE

13   JONES, individually and on behalf of all others

14   similarly situated are the Plaintiffs, and GOVERNMENT

15   EMPLOYEES INSURANCE COMPANY d/b/a GEICO is the

16   Defendant.

17        I further certify that the said witness was

18   first duly sworn to testify to the truth, the whole

19   truth and nothing but the truth in the cause

20   aforesaid; that the testimony then given by said

21   witness was reported stenographically by me in the

22   presence of the said witness remotely via

23   videoconference, and afterwards reduced to typewriting

24   by Computer-Aided Transcription, and the foregoing,

25   including the confidential excerpt, is a true and
```



1  correct transcript of the remote videoconference

2  testimony so given by said witness as aforesaid.

3       I further certify that the signature to the

4  foregoing deposition was reserved by counsel for the

5  Deponent.  I further certify that the taking of this

6  deposition was pursuant to Notice, and that there were

7  present via videoconference at the deposition the

8  attorneys hereinbefore mentioned.

9       I further certify that I am not counsel for nor

10 in any way related to the parties to this suit, nor am

11 I in any way interested in the outcome thereof.

12      IN TESTIMONY WHEREOF:  I have hereunto set my

13 hand and affixed my seal this 14th day of January,

14 2025.

15

16 *Andrew R. Pitts*
   _____

17 ANDREW R. PITTS, CSR, RPR

18 CSR, COOK COUNTY, ILLINOIS

19

20

21

22

23

24

25

