# EXHIBIT 52

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | CASE NO. 2:23-CV-02848 (SJB) (SLT) |

## DECLARATION OF COURTNEY WOLFE

I, Courtney Wolfe, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been an employee of Government Employees Insurance Company ("GEICO" or the "Company") since 2002. I currently work for GEICO in its Special Investigations Unit ("SIU") as an SIU Manager.

2. I have worked for the Company as an SIU Manager in the Major Case division of SIU since 2019, and currently hold the same role. In this role, I mostly work remotely from home. Prior to 2019, I worked for the Company as a Litigation Claims Specialist from 2002 to 2006, a supervisor in a different department from 2006 to 2014, and Manager in the Claims department from 2014 to 2019.

3. Prior to a recent reorganization of SIU in 2023, I was an SIU Manager overseeing employees that worked in two "Regions" under the Company's former organizational structure, Region 2 and Region 8.

4. Region 2 was physically based on of a GEICO office on Long Island, New York, which was previously located in Woodbury, New York but is now located in Melville, New York. Region 2 was responsible for all cases involving claims in New York state.

5. Region 8 was physically located in Buffalo, New York, but was responsible for cases involving claims occurring in the northeastern part of the United States, such as New Jersey, New Hampshire, Massachusetts, Connecticut, Vermont, and Maine.

## JOB RESPONSIBILITIES

6. As an SIU Manager since 2019, I first directly managed three supervisors. In Region 2, I managed one desk supervisor and one field supervisor, and in Region 8 I managed one desk supervisor. I currently manage five supervisors.

7. Some supervisors that reported to me only managed "field" investigators, while some supervisors managed "desk" or "inside" investigators. Those individuals each oversaw anywhere from 5 to 10 major case investigators, with most assigned to the former Region 2.

8. Investigators that worked in various "investigator" positions in both Region 2 and Region 8 ultimately reported up to me through their supervisors, including individuals with the job titles Major Case SIU Investigator, Field Major Case SIU Investigator, Internal Major Case SIU Investigator, and other similar variations of those job titles.

9. As SIU Manager, I oversaw various SIU Supervisors that directly managed various employees in SIU with a job title that includes the term "investigator."

10. Between 2019 and 2023, I managed all of the SIU medical major case supervisors in former Region 2. My supervisors primarily worked 100% remote from their home office starting in March 2020.

11. As SIU Manager for Region 2 and Region 8 from 2019 to 2023, certain "major case" investigators that worked in those regions reported to SIU supervisors who reported to me. Specifically, only major case investigators that worked medical provider investigations, or medical major cases, reported to supervisors who reported to me.

12. Major case investigators investigate entities for fraud and often look for patterns in many individual claims. My team specifically investigated medical providers, such as a doctor's office that filed dozens or possibly hundreds of fraudulent claims with GEICO, which GEICO paid. Investigators that do not work major cases investigate individual claims that are pending.

13. I indirectly oversaw these "investigators" which were assigned to both the former Region 2 and also former Region 8. Major case investigators that worked on other types of cases reported to supervisors who reported to SIU Manager Bill Newport.

14. No SIU supervisors ever reported to both me and to Mr. Hammond at the same time. No SIU investigators indirectly reported up to me and Bill Newport at the same time.

15. With the nationwide reorganization of SIU in 2023, the investigators that worked non-medical major cases and previously reported to Bill Newport began reporting to SIU Manager Jim Hammond. Investigators that work in New York and which investigate major cases that do not include medical providers continue to report to Jim Hammond today.

16. When I started in 2019, major case investigators were assigned four cases per month, and the expectation was that they had make updates to their cases at least once every 30 days or so.

17. Ultimately, in 2020, the case assignment process for major cases changed. We implemented a "one-in, one-out" case assignment process, which means that an investigator is assigned only one active case at a time. The investigator works that case to completion and, upon completion, closes the case and obtains a new case.

18. Investigators that do not work major cases are rated on different metrics than major case investigators. In major case, for example, we do not use the same case life metric that measures how long a case has been open. Such a metric would not make sense to assess the performance of major case investigators, as major case investigations can be complex and, in many cases, last several months.

19. Because of the complexity of the cases, major case investigators historically were not assessed against a productivity metric that measured the number of cases closed per month. Such a metric would not capture the complexity and depth of investigation necessary for major case investigations and the investigators that do them.

20. The primary metric against which major case investigators were and are measured is on file quality, meaning whether they documented their investigation according to SIU standards and whether they took the investigative steps necessary to work their cases toward completion.

21. To accomplish their work, some investigators are able to "flex" their time, meaning work longer on one day in a week and work a shorter shift later in the same week. Flex time depends on the needs of the case, and supervisors have discretion regarding how

investigators use flex time. Some supervisors, for example, approve investigator requests to flex time, while others simply want to know if an investigator is changing their schedule.

22. During my employment working as an SIU Major Medical Case Manager, there has never been any budget prepared, generated or implemented with regarding to overtime hours and allocation for major case investigations.

## WORK HOURS / TIMEKEEPING OF SIU INVESTIGATORS

23. SIU Major Medical Case Investigators' regular work schedule is Monday through Friday, 7.75 hours per day, totaling 38.75 hours per work week.

24. Investigators have always been responsible for ensuring that they properly and accurately enter all of their time worked for GEICO, including all hours beyond 38.75 in a work week and all overtime hours worked over 40 in a work week. All time for investigators must be entered into GEICO's timekeeping system, Workday.

25. Beginning in 2023, investigators that work in the field began clocking in and clocking out for their shifts and meal periods each day. Desk investigators continue to enter in their time daily

26. It remains the responsibility of every investigator to accurately enter their time into the GEICO timekeeping system, Workday.

27. Since becoming an SIU Manager in 2019, I was never made aware by my supervisors or their investigators of any investigators working off-the-clock. No supervisor nor investigator came to me with complaints of working off-the-clock.

28. Given the long duration of major case investigations, there is generally no business need for an investigator to work overtime.

29. I have never told my supervisors, or anyone at GEICO, not to permit investigators from logging their overtime hours.

30. Working off the clock is against GEICO policy.

## PARTICIPATION

31. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

32. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

33. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:

*Courtney Wolfe*
80290D5A7E5F410...

May 12, 2025
Date                                                        Courtney Wolfe