# EXHIBIT 53

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,

Defendant.

Case No. 2:23-CV-02848 (GRB) (ARL)

## DECLARATION OF WILLIAM NEWPORT

I, William Newport, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an employee of Government Employees Insurance Company ("GEICO" or the "Company"). I currently work for GEICO as Special Investigations Unit ("SIU") Analytics and Investigations Division Manager. In this role, I mostly work remote from home.

2. I have worked for the Company as SIU Analytics Manager since approximately July 1, 2023 and Investigations Divisions Manager since approximately March 2024. In my current role, I provide services and oversee SIU analysts nationwide as part of the Company's recently restructured SIU reorganization, and I have a few SIU supervisors who report to me.

3. Prior to taking on my current role, from around 2018 until July 2023, I was one of the SIU Managers for Region 2, which was the former New York Region. In this role, I worked with various supervisors who directly managed employees in various "investigator" positions

with various job duties and roles. (By "investigator" positions, I mean those employees who had "investigator" in their various job titles.)

4. The former national SIU organization structure was in place until SIU's recent reorganization, which began in or around 2023.

5. Region 2 was physically based out of GEICO's office on Long Island, New York and was responsible for all cases involving claims in New York. Although GEICO had another Region that was physically located in Buffalo, New York (Region 8), Region 8 was not responsible for New York cases. Instead, Region 8 was responsible for cases in New Jersey, Massachusetts, Vermont, Maine, New Hampshire, Connecticut, and other states in the Northeastern part of the country.

6. SIU desk or inside investigators in various positions who worked out of Region 8 did not generally perform New York casework, and they reported to a different Regional Manager. Similarly, SIU field and outside investigators in various positions who reported into Region 8 did not generally perform field investigation work for any cases in New York, which would fall under my purview in Region 2.

## PRE-2023 SIU REGIONAL STRUCTURE

7. As an SIU Manager for Region 2 in New York from 2018 until July 2023, I directly managed a varying number of supervisors. Each of the supervisors I directly managed in turn directly managed various employees who held "investigator" positions, who were generally separated into various different categories of casework (i.e., major cases in some positions; staged cases or theft cases in other positions) during different periods of time.

8. Some supervisors only managed "field" investigators and some supervisors only managed "desk" or "inside" investigators, who themselves were distinct from other supervisors who only managed "major case" investigators, among other variations.

9. Aside from "field"-based, "desk"-based, and "major case" investigators, there were also Lead Security Investigators, which was a different job title within SIU.

10. As SIU Manager, I was indirectly responsible for overseeing many of these employees. Employees within my purview reported to their respective supervisors throughout Region 2, and the supervisors reported to me directly. During this time, there was another SIU Manager (Courtney Wolfe) who oversaw many of the "major case" investigators who handled complex no-fault pattern cases in New York, while I oversaw other employees across other titles and roles in Region 2.

11. Together, Courtney Wolfe and I indirectly oversaw approximately 100 to 110 employees in "investigator" positions throughout New York at any given time. These individuals were organized and reported to approximately 12 to 16 different SIU supervisors at any given time.

12. Prior to the 2023 SIU reorganization, there were distinct and separate SIU Regions throughout most of the United States. Each Region used its own SIU Trainer for employee training purposes in the Region. As such, my knowledge of relevant day-to-day first-hand information and real-world practices is mostly limited to Region 2.

13. In Region 2 in New York and in other Regions, SIU Regional Managers generally reported to either a Regional Vice President or a Senior Vice President within their specific Region.

14. In Region 2, workflow and workload ebbed and flowed depending on a variety of factors, such as job position, supervisor, type of casework handled, complexity of the cases assigned, windshield (a/k/a travel) time (applicable only to those who worked in the field), work environment, geography, and target number of cases to complete. In Region 2, with respect to investigators who went into the field across job titles, I generally tried to funnel cases to SIU investigators in the geographic vicinity of where the cases were located, but, for example, if there was a case in the New York City area and all New York City area SIU investigators were busy with full workloads, sometimes the New York City case would be referred to an upstate New York SIU investigator (e.g., someone from Albany, New York).

15. In my Region, the geographic scope of given field-based investigators varied dramatically based on factors such as where the individual lived and the type of cases he or she regularly worked.

16. At some point in or around 2019, all SIU major case medical investigator positions, including SIU investigators investigating medical major cases in the job titles of Field Major Case SIU Investigators, and Internal Major Case SIU Investigators, no longer fell under my purview; New York SIU investigators working major medical cases worked under Courtney Wolfe's purview.

17. Many SIU investigators worked in either "field"-based or "desk"-based roles. I also had a number of individuals who worked in "major case" roles.

18. Other individuals held positions such as Internal Major Case Investigators. Their work is significantly unique from any other SIU investigators. Working major cases involved piecing together an overarching scheme involving many individual claims and trying to connect the dots to link cases together like a puzzle.

19. In Region 2, we also employ specialty SIU investigators in various roles who we staff on particular types of cases, some of which tend to be more individualized and complex. The value of having more specialized SIU investigators in the different desk and field-based roles is that it allows those particular SIU investigators to focus on their work in specific types of investigations rather than an array of different types of cases and they in turn become more familiar with a particular type of case.

20. Generally, SIU investigators in upstate New York in varying roles had less specialization than those who worked downstate.

21. I did not supervise inside or desk investigators physically located out of GEICO's Buffalo, New York office because those investigators were part of a separate Region – Region 8. Region 8 included some inside and desk investigators sitting in Buffalo as well as field investigators in a number of states in New England.

22. There was also an SIU Trainer in the former Region 2. The primary function of SIU Trainers' job duties was to conduct new hire and continuing fraud/investigative instruction, including best practices and auditing training completion for SIU employees through developing and implementing training programs and tracking the progress of same. The SIU Trainer role was an exempt position paid a salary and was not compensated in the same manner that non-exempt employees were in the SIU.

**IMPACT OF COVID-19 ON REGION 2**

23. Before the onset of COVID-19 in or around March 2020, a number of desk-based SIU investigators in New York in Region 2 regularly worked from the GEICO office, while a number of field-based SIU investigators worked remotely.

5

24. During the COVID-19 pandemic, Region 2 kept SIU investigators who went into the field out of the field for a longer period of time than other Regions.

25. During this period, Region 2 also had some turnover, and a number of SIU investigators left or retired, so the Region's SIU investigator teams were smaller after COVID-19 than they were prior to COVID-19.

26. Region 2 also had an influx of fraud investigations after the onset of COVID-19 in or around March 2020, and the Region ultimately hired a number of new SIU investigators to work in Region 2 in or around summer 2020 in order to ensure the Region maintained the right number of investigators based on the number of incoming cases and workflow.

## WORK HOURS / TIMEKEEPING

27. In Region 2, individual supervisors had the authority and discretion to determine whether the employees they supervised could "flex" their time. In other words, if an SIU investigator wanted or needed to work more than his or her scheduled hours on a Monday, the supervisor could decide whether the investigator could exercise his or her discretion to work fewer hours than scheduled on Tuesday (or another day during the same workweek). Alternatively, the supervisor also could decide whether the employee should ask permission, coordinate, or notify the supervisor if the investigator wanted to "flex" his or her time, or could adopt an entirely different approach to "flex" time that varied from person to person. In my experience in Region 2, SIU investigators working in the field utilized flex time more than investigators working at their desks.

28. Many SIU investigators in Region 2 had flexibility with respect to their work hours. SIU field-based investigators, for instance, were not subject to strict work times or work schedules; rather, they had the discretion to use their time as they saw fit, as well as their cases

6

and schedules. I also encouraged SIU field investigators to group their activities in similar geographic areas to be more efficient, but ultimately investigators themselves were responsible to use their time as they saw fit.

29. All SIU investigators (and indeed, all other non-exempt SIU employees who reported to me) are required and expected to accurately record their work hours. During my time as SIU Manager for Region 2, I regularly instructed SIU supervisors to remind SIU investigators across job titles and roles to accurately record all of the hours that they work.

30. Prior to COVID-19, SIU desk and inside investigators in different job titles entered their time in the office.

31. I never told any SIU investigators, or heard any SIU supervisors tell any SIU investigators, to perform any work for GEICO without recording it.

32. Pursuant to GEICO policy, all SIU investigators are expected to raise any errors in the hours reflected on their timekeeping entries and to immediately bring any such issues to the attention of their supervisor, their local Human Resources, or Berkshire Hathaway's corporate Human Resources.

33. During my time with the Company, I have always required SIU investigators to accurately record all of the time that they work, including any overtime hours, whether approved in advance or not approved in advance. I have always informed SIU supervisors and SIU investigators that SIU investigators should put in for all of their time worked so they can be paid for all of their time worked, including all regular work hours and all overtime work hours.

34. No one from the Company has ever told me or instructed me to tell anyone else at the Company not to allow SIU investigators to record all of the hours that they work. In fact, the Company strictly forbids all non-exempt Company employees from working "off the clock"; that

7

is, the Company does not allow non-exempt employees to work any amount of time without accurately recording such time. I have never witnessed anyone from the Company instructing or encouraging anyone else at the Company to work without recording all of their time worked.

35. I am not aware of anyone at the Company ever deterring or discouraging any SIU investigators from accurately recording and reporting all of their time worked, including overtime and non-overtime hours worked.

## COMPENSATION

36. SIU investigators are paid different rates according to set pay grades, which differ by job title, Region and by locations within a given Region.

37. If SIU investigators, or any non-exempt GEICO employees, work more than 40 hours in a week, they receive overtime compensation for all of the time that they work over 40 weekly hours.

38. On a few occasions, I requested permission for, and initiated an "overtime drive" for some employees in Region 2. I recall requesting and receiving permission from my Regional SVP to implement an overtime drive for a few weeks in or around Spring or Summer 2020 when we were in the process of hiring. In other words, due to the increased work as a result of COVID-19 stay at home orders that required New York investigators to refrain from field work, I offered some SIU investigators in Region 2 the opportunity to work overtime. The overtime drive was entirely optional, and I did not require anyone to work overtime. I recall one or two additional overtime drives during my time in Region 2, and also remember that some drives were made available to certain groups of investigators (e.g., field investigators in various roles).

39. Outside of the overtime drives, I always told SIU investigators in various roles to just put in for a full day's work and to make sure that their timecards were entirely accurate.

40. In my experience, if an SIU investigator saw a need to work overtime, he or she would ask the SIU supervisor, and the SIU supervisor would review the request on a case-by-case basis. For instance, if the SIU investigator could not flex his or her schedule during a particular workweek and wanted to work the additional hours, the SIU supervisor would review the request and if approved, the SIU investigator would be required to record and would be compensated for all hours worked.

41. I have personal knowledge of the hours SIU investigators submitted for payroll purposes, but not their specific schedules or work hours. This is because I did not directly supervise any of the SIU investigators in any job titles or roles, and particularly as related to the field-based investigators in different positions, they were generally able to set their own work times and were in the field conducting their own outside investigations.

## POLICIES

42. I know that the Company Handbook contains the Company's policies regarding accurate timekeeping, compensation (including for all overtime and non-overtime hours), as well as the Company's complaint procedures, which explain how employees can raise internal or external concerns or complaints. The Company provides various options for employees to voice concerns or complaints, including discussions with their direct supervisor, local Company Human Resources, or Berkshire Hathaway corporate Human Resources.

43. During my time with GEICO, I have been aware that the Company has in place complaint policies and procedures for SIU Investigators and other GEICO employees to contest any time or pay errors or questions. Very rarely did any SIU investigators in any role in my Region require timesheet corrections, which would generally relate to an SIU investigator

9

forgetting to submit his or her timesheet which we would then correct, as requested by the SIU investigator, to accurately reflect the time worked.

44. I never heard any allegations of SIU investigators in any position having their work hours shaved or being told they would not be paid for all of their time worked, including overtime hours.

## PARTICIPATION

45. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

46. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

47. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

May 15, 2024
_____
Date

DocuSigned by:
William Newport
97D8436AC75042B...
_____
William Newport

10