# EXHIBIT 58

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,

Defendant.

Case No. 2:23-CV-02848 (GRB) (ARL)

## DECLARATION OF JESSICA SHEPPARD

I, Jessica Sheppard, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an employee of Government Employees Insurance Company ("GEICO" or the "Company"). I work for GEICO as a Major Case Inside Investigator in GEICO's Special Investigations Unit ("SIU"). In this role, I mostly work remote from my home.

2. I have worked for the Company as an SIU Major Case Inside Investigator since November 2019.

3. I have been employed by GEICO since December 2011, and before moving into my current position, I was a Claims Examiner in another GEICO department outside the SIU.

4. Until the recent SIU reorganization in 2023, I was a part of Region 2 based out of GEICO's former Woodbury, New York on Long Island.

5.      Until the recent reorganization, SIU was separated into 10 different Regions, and I had no interaction with individuals outside my Region. Until the recent reorganization in 2023, I reported directly to SIU Supervisor April Neyland in New York. Before the reorganization, I did not work with any SIU supervisors other than April Neyland.

6.      I do not know any details regarding the day-to-day policies and practices of any other Regions besides Region 2.

7.      Before the COVID-19 pandemic hit around March 2020, I worked in the GEICO office located in Woodbury, New York. Since that time, GEICO has had a different office located in Melville, New York (also on Long Island). I have gone into the Melville, New York office twice. Other than those two occasions, I have not physically seen anyone I work with at GEICO because I've worked from my home since March 2020.

8.      My team does not have an in-office requirement beyond a new one day per month office expectation that started in Summer 2023. The new policy is a hoteling system whereby employees rotate temporary in-office desks. My team does not need to be in the office as often as other teams based on the nature of my work.

9.      As part of the reorganized SIU, my new SIU Manager, Mike Mitchell, is located in Arizona, and my new SIU Supervisor, Jim Hammonds, is located in Georgia. Currently, the team I work with has team members in Buffalo, New York, New Jersey, and other locations in New England as well. As mentioned, this is very different from the prior organization and structure.

**JOB RESPONSIBILITIES**

10.     As an SIU Major Case Inside Investigator, I review claims that have already been investigated by SIU desk/inside investigators or SIU field investigators and evaluate them for

common patterns or connections between parties in other, different claims in an attempt to identify any organized ring. In layman's terms, I put evidence about the bad guys together in order to explain and present potential patterns to the Claims department, which then decides if they want to move forward with a declaratory judgment against involved claimants.

11. In my current role, I am strictly an inside investigator and I have never worked in the field.

12. When I first began working in my current position, it was pretty much a new job and there was no template for my role.

13. Every case I work is different based on the type of pattern I am looking for in the claim files. For example, I might work a broker case where policies are taken out just so people can present claims to make money for accidents. In such a case, I will first get a case assignment. My initial step is to review all of the notes from the previously assigned SIU investigator to look for signs of rings or patterns, such as the same phone numbers or parties present in other claims. I then review the claims and policy information for each party, note all relevant data from the files, check phone numbers, email addresses, mailing addresses, associated policies and claims, and conduct background checks and claims history check searches for GEICO and for other insurance carriers against each of the parties.

14. If things seem fishy to me, such as very similar bad claims with people who supposedly don't know each other, I may ask for an analyst run to see if the policies were taken out by the same physical computer – if so, I will process this information and include it in my file. I then review all associated claims, parties to the claims, and backgrounds on all, including information, policies, claims, social media, etc. Then, once I retrieve all of this information, I set up a case plan to present to the Claims department.

15. After my presentation, the Claims department decides whether to send the case to an attorney from outside of GEICO. I then gather all relevant information regarding how much was paid out per the policies at issue and the amount of currently exposed billing, while also looking for patterns among medical providers.

16. Because New York is a "no-fault" insurance state whereby insureds in New York are generally reimbursed by GEICO for damages regardless of whether they were the individuals at fault for causing an accident, many of my major cases relate to no-fault claims, with limits of $50,000 per person in a vehicle. This is different than policies and cases in other states. In fact, because they work outside of New York, my new SIU Manager and SIU Supervisor were not even familiar with the process of declaratory judgments when I began reporting to them in 2023.

17. As part of the recent SIU reorganization, in 2023 my new team in comprised of very different job roles than I've ever worked. This is because I specialize in a specific area, and no one else on my new team creates and presents major case presentations to attorneys like I do.

18. My major cases are very complex and unlike any other cases in the SIU. For example, right now I am actively working on three major cases. I have been working on one of these cases since March 2023. My cases usually take months of work to complete because I have to analyze how many different people are tied together, make findings regarding faking accidents, background reports, etc. It could take me six months to close a very complex case, and none of my cases close in less than three months.

19. My workload is almost always full. I recall that a slowdown in my workload occurred during the early stages of COVID-19 around March 2020. I was working based out of my home for the first time and I had to get my bearings during that time. This slowdown lasted around two months and then things went back to regular speed.

4

20. There was also a two-month period from approximately March 2022 through May 2022 when I assisted the Claims department with closing out a number of open case files for regular claims cases. In my old position with the Claims department before I joined the SIU, I would settle claims with attorneys in cases of bodily injury. Once those claims were settled, GEICO would pay the settlement and close out the case. For some reason, a number of those cases were not settling during this time in 2022, so I was selected to help settle and close out open claims because I used to work in the Claims department. During this approximate two-month period, I was not working my major cases because it was a conflict for me to work the Claims cases and my SIU major cases at the same time.

21. I am not familiar with the work hours, job duties, or work practices of any other SIU investigators or investigator positions other than my own. I do know that desk investigators just work individual claims, whereas my cases are comprised of about 20 different claims at a time.

22. I do not have any productivity component that takes into account the speed with which I close my individual cases. Based on the complex nature of my major cases and how many different claims are involved in a single case, any component measuring the length of time it takes me to close a case would not be logical.

## WORK HOURS / TIMEKEEPING

23. I work Monday through Friday from 7:30 a.m. to 4:00 p.m. I work 7.75 hours in a day and total no more than 38.75 hours per work week.

24. My work hours have consistently been the same throughout my time in SIU, and I do not work beyond these weekly work hours.

25. I have the ability to "flex" my time; for instance, if I can't work a full day on Tuesday for some reason (e.g., I have a 3-hour doctor's appointment), I am allowed to work 3 additional hours on the Thursday of the same work week in order to ensure I total 38.75 hours that week.

26. I understand that the ability for SIU investigators to flex their time depends on their respective SIU Supervisor, and my supervisors have always allowed me to use flex time as needed. They do not care what actual hours of the day or night that I am working, as long as I am completing my work and working my 38.75 hours per week.

27. I do not flex my time weekly, but I have flexed my time fairly regularly.

28. Whenever I flex my time, I need to get my supervisor's approval in advance. I have never had any request to use flex time denied while working in the SIU.

29. Whether I use flex time or work my regular hours and schedule in a given work week, I still have to accurately track all of the time that I am working.

30. I have to enter and submit my work hours each week through Workday, and my supervisor approves my submitted hours for the week. As part of the process of submitting my hours, I am also required to confirm that the hours I am submitting are the actual hours that I worked before I am able to submit them for my supervisor's review.

31. A rare exception when I worked more than my regular 38.75 weekly hours was during a few instances when there was a catastrophe and GEICO asked if people wanted to volunteer to work overtime hours. I was properly compensated for such time at 1½ times my regular rate of pay.

32. Occasionally, I work longer than I intend to because I am so immersed in my work that I don't realize I am still working, and I "go down the rabbit hole" as I analyze and

attempt to find rings and complex patterns across numerous case investigations. Whenever this occurs, I make sure that I flex my time and work less the next day to stay on track in terms of my weekly work hours. Neither my supervisor, nor anyone else at GEICO, would have any way of knowing when I work longer than I planned unless I inform them of this occurring.

33. I have never been pressured to work off the clock or not to record all of my hours worked; in fact, GEICO has always required that I accurately track all of my hours worked, and I have strived to do so as best as possible throughout my time in SIU.

34. I have never complained about any time for which I worked but was not compensated at GEICO. I believe that I have been appropriately compensated for all of the time that I have worked.

## COMPENSATION

35. I am currently paid at the hourly rate of $44.52. My hourly rate of pay has increased a few times since I began working in SIU, and I have always received merit increases.

36. I am paid on a bi-weekly basis.

37. I have never complained about unpaid wages while working at GEICO.

## BREAKS

38. I take a 45-minute lunch break each day. I do not perform any work during my lunch break.

39. I also regularly take an additional 15-minute break each day.

40. I have to take my breaks according to GEICO policy.

## GEICO COMPLAINT PROCEDURES

41. I have never complained internally or externally about unpaid wages or time that I worked at GEICO.

42. I know there is a complaint procedure in the employee handbook and I believe there is also a Berkshire Hathaway hotline I can call to complain.

## PARTICIPATION

43. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

44. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

45. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

11/03/2023
Date

*Jessica Sheppard*
Jessica Sheppard