# EXHIBIT 60

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,

Defendant.

Case No. 2:23-CV-02848 (SJB) (SLT)

## DECLARATION OF THERESA BISHOP

I, Theresa Bishop, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been an employee of Government Employees Insurance Company ("GEICO" or the "Company") since 2005. I currently work for GEICO in its Special Investigations Unit ("SIU") as an SIU Major Case Supervisor.

2. I first joined SIU in approximately 2014. I worked for the Company as an SIU medical investigator from 2014 to 2019, until I became an SIU Supervisor in 2019.

### SIU INVESTIGATOR ROLE AND RESPONSIBILITIES

3. From 2014 to 2019, I was an SIU internal investigator for former Region 2, in New York. During this time, I worked completely in-office at the Woodbury, New York location. From 2014 to 2019, April Neyland was my SIU supervisor, and she reported to SIU Manager Bill Newport.

4.      I did not go out into the field in my investigator role. If an investigation needed field work, I would ask for an "assist" from a field investigator, who would conduct the field work for my case.

5.      From 2014 to 2016, I primarily was assigned to internal major medical cases. I did not handle any other types of insurance fraud investigations during this time. During this time, I was assigned to 2-3 cases per week, and would have a few cases open that I would work.

6.      As an SIU Major Medical Case Internal Investigator, I reviewed claims that had already been investigated by SIU desk investigators or field investigators regarding medical claims and evaluated these claims for common patterns or connections to a medical provider or organized ring.

7.      From 2016 to 2019, I transitioned to handing a variety of auto fraud claims, inclusive of single and multiple complex claims, and that involved auto body, staged loss, arson, social media. I no longer handled medical claims. During this time, there were no various case team assignments. I was assigned roughly five cases per week.

8.      As an SIU internal investigator, I was assigned individual claims related to auto such as arson, jump-in, hit-and-run, and auto body claims. I would investigate each claim based upon the facts, identifying the tasks needed to complete my investigation. Such tasks varied by case but included verifying facts of loss, taking statements from the insured, witnesses, police and others involved, surveilling scenes, collecting background checks, gathering police reports, reviewing medical records, conducting examinations under oath ("EUOs"), and rendering determinations with regard to possible indications of fraud with respect to claims. Not all claims required all these steps, and every case was unique and different.

9. When I was an investigator, my regular work schedule was Monday through Friday, 7.75 hours per day, totaling 38.75 hours per work week. I typically worked from 7:00 am to 3:30 pm every day. I did not have a laptop and did not work from home.

10. I was required to clock-in and out, and accurately enter my time into the GEICO timekeeping system.

11. I did not regularly need to work overtime and for that reason, I did not regularly request overtime or work overtime. It was extremely rare to need to work overtime, and I could complete all of my job duties in 38.75 hours.

12. I recall one occasion that I needed to work overtime in order to prepare documents for an FBI investigation. I remember that for that situation, I sought overtime and was approved for overtime without any issue. I entered the overtime into GEICO's timekeeping system and was paid for it.

13. I was never made aware of any investigator working off-the-clock when I was an investigator. I also never observed my colleagues working off-the-clock. I never raised any complaints regarding overtime or off-the-clock work when I was an SIU investigator in either major medical or auto cases.

**SIU SUPERVISOR ROLE AND RESPONSIBILITIES**

14. From 2017 to 2019, I transitioned into the supervisor in-training program, where I had a small team of three internal investigators assigned to me. In addition, I had to take a variety of classes and tests to complete my training program.

15. I also concurrently served as an Intake Supervisor during some of this time. Intake was the group of employees in SIU that assessed cases referred from claims for indicators

of fraud, determined whether a case was likely to need field work, and assigned cases to investigators.

16. After passing my exams, I became an SIU Supervisor in 2019. I supervised 4 to 10 SIU investigators, including both desk and field non-medical major cases and non-major cases. Upon becoming a supervisor, Bill Newport, SIU Manager became my supervisor. Prior to the nationwide restructuring of SIU in 2023, I continued to be assigned to Region 2 within the former SIU organizational structure.

17. In 2023, with the nationwide reorganization of SIU, my supervisor switched to SIU Manager Jim Hammond. Mr. Hammond was my supervisor for about nine (9) months. I was next supervised by Bill Newport for about two (2) months, then Rene Cubas for about three (3) months, and then Courtney Wolfe. Ms. Wolfe has been my SIU Manager since February 2024.

18. All of my investigators generally investigated insurance fraud cases, with my desk-based investigators working from GEICO office desks on Long Island every day prior to COVID-19 (March 2020), or a hybrid schedule of both in-office work and working remotely from their homes (post-COVID). Only my desk-based investigators actually went into the Woodbury or Melville offices; my field-based investigators did not physically report to work in a GEICO office.

19. In my role as SIU Supervisor, my job responsibilities included approving SIU investigators working in different roles' cases worked, coaching and training them, side-by-side shadowing of field-based SIU investigators at least once a month, auditing SIU investigators in different positions' case files, approving their time off requests, and participating in management meetings, among other things.

20.     I generally send my investigators weekly metrics outlining the amount of cases investigated, cases closed and overall guidance on working their cases. My desk investigators, field investigators and major case investigators all had different performance metrics dependent upon the types of cases they handled and their level of responsibility in each investigation. For example, desk investigators did not conduct in-field activities, so desk investigators were not evaluated on in-field activities.

21.     Major case investigators had different metrics than other types of investigators, and their performance metrics were focused on the quality of investigations, not the number of cases closed or how quickly they were closed.

22.     Similar to when I was an SIU investigator, my investigators' regular work schedule was and is Monday through Friday, 7.75 hours per day, totaling 38.75 hours per work week.

23.     All investigators were always responsible for ensuring that they properly and accurately enter all of their time worked for GEICO, including all hours beyond 38.75 in a work week and all overtime hours worked over 40 in a work week. All time for investigators must be entered in Workday daily.

24.     Work hour flexibility was at the discretion of each investigator's supervisor, and I almost always allowed all of the investigators that I supervised to flex their work hours within each work week as they needed, regardless of their work position.

25.     The majority of my desk investigators did not use the flex option since the majority of them worked the 7:00 am to 3:30 pm shift. My field-based investigators regularly flexed their time due to traffic and other issues that arose while working in-field.

26. As long as a field-based investigator's weekly work hours totaled around 38.75, I allowed the field-based investigator to flex his or her daily work hours within a given work week.

27. Since becoming an SIU Supervisor in 2019, I was never made aware by my managers, my supervisor colleagues or my investigators that anyone was working off-the-clock. No manager, supervisor or investigator has complained to me or made me aware of complaints about off the clock work.

28. I have never told my investigators, or anyone at GEICO, that they were prohibited from logging their overtime hours.

29. My SIU Managers have consistently communicated that all hours worked must be entered into Workday.

## COMPENSATION

30. When I was an investigator, I was paid an hourly rate and a premium for any hours worked over 40.

## PARTICIPATION

31. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

32. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

33. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

May 12, 2025
Date

*Theresa Bishop*
Theresa Bishop

7