# EXHIBIT 61

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | Case No. 2:23-CV-02848 (SJB) (SLT) |

## DECLARATION OF JEANNE CARBONARO

I, Jeanne Carbonaro, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an employee of Government Employees Insurance Company ("GEICO" or the "Company"). I currently work for GEICO as an SIU Major Medical Case Investigator in the Special Investigations Unit ("SIU"). In this role, I work almost entirely remotely. I go into the Company's Melville, New York office located on Long Island approximately once a month.

2. I have worked for the Company for over two decades.

3. I started with GEICO in January 1996 in the sales department, where I sold various insurance products, before transitioning to the subrogation claims team for a few years. Eventually, I moved to the personal injury protection ("PIP") litigation department, where I spent the vast majority of my career. Throughout these roles I had a variety of different supervisors,

including Nicole Christian, Greer Carty, Lin Garafola, Jason Snare, Kim Didden, Bob Winthrop, and Suneel Kandahar.

4. In 2019, I transitioned to the SIU and started working as an Internal Major Medical Case Investigator. During my time in the SIU, I was exclusively assigned to the Woodbury Office, which is now closed, as we currently work in the Melville Office, and I never worked with the Buffalo, NY Office.

5. My supervisors included Brian Portnoy, Dara Campbell, and, for the last two years, Theresa Bishop. My current SIU Manager is Courtney Wolfe, and she has been my manager for majority of my tenure as an SIU Internal Major Medical Case Investigator.

6. Prior to the restructuring of SIU in 2023, I was assigned to Region 2 within the former SIU organization structure. Region 2 was one of 10 separate Regions within the former SIU organization structure. I do not have any knowledge of practices in other Regions outside of Region 2.

## JOB RESPONSIBILITIES

7. As an Internal Major Medical Case Investigator, I investigated complex cases involving both rings of medical providers and also investigations of individual healthcare providers. My job responsibilities as a Major Medical Case Investigator also included conducting background checks, analyzing and looking at patterns in bills, pulling checks, conducting interviews and completing other investigative steps. My case load was roughly one case per week, although I would assist with other matters intermittently for colleagues.

8. As an Internal Major Medical Case Investigator, I worked in-person at the Woodbury location up until the end of 2019. My shift time was either from 8:00 a.m. to 4:30 p.m. or from 7:00 a.m. to 3:30 p.m. I did not have to bring a laptop home from work.

9. In March 2020, during the COVID-19 pandemic, I transitioned to working fully remote. My hours did not change, and I maintained a similar case load. Even post-Covid, I never transitioned back into the office full-time.

10. I rarely requested overtime when I was working in the office. I recall on one occasion I attempted to work overtime during a catastrophic event, however the opportunity expired before I was extended the opportunity to work the overtime. I have never worked "off the clock."

11. I use Workday to record my hours worked. Prior to using Workday, I used a timekeeping system called Etos. When I worked in-person, I would "swipe" my employee I.D. to clock in. During the COVID-19 pandemic, I would send messages via WebEx to my supervisor to note when I started and ended my shift, and otherwise, recorded my own time.

12. Starting in 2023, I transitioned to a field-based Major Medical Case Investigator. I do not go into the office at all except for meetings.

13. Although every case is different and every day is different, I usually work on some aspect of at least 2 to 3 cases each day.

14. I also provide an "assist" on some of my colleagues' cases for those who are in-office. SIU Supervisors assign out field cases and it is evenly distributed, so no sharing necessary.

15. I always felt comfortable going to my supervisors with any issues, and supervisors likewise felt comfortable calling and emailing SIU investigators about any issues.

16. I recall having annual, bi-annual, and quarterly performance reviews, both as an Internal and a Field Major Medical Case Investigator. In my annual review we would discuss performance metrics, with the focus being on the quality of investigations, as well as other

performance categories. Although I started in SIU receiving ratings of three in each of these performance categories, eventually I was able to work my way up to ratings of five, the highest level, and have sustained a five rating for years-on-end. I always felt like these performance metrics were achievable and attainable.

17. My goals working in the field were different from working in the office. When I work in the field, I travel and conduct EUOs, go to provider locations, such as pharmacies and surveille scenes, amongst other tasks. When I worked in-person, in internal investigations, I was responsible for dividing cases up in into their component parts including creating leads and developing cases. As an internal investigator, my cases could take up to 6 months to complete.

18. Internal and field major cases are completely different. During my time in internal investigations, I handled cases from start to finish, and I was aware how cases ended. For field tasks, I complete discrete investigative tasks, and I didn't end up finding out how the case ended.

## WORK HOURS / TIMEKEEPING

19. I currently work Monday through Friday from 6:30 a.m. to 3:00 p.m. I work 7.75 hours in a day and total 38.75 hours per work week.

20. My work hours have consistently been the same throughout my time in SIU, and I have not worked beyond these weekly work hours.

21. I have never worked overtime. I also have never asked to work overtime because I do not have issues getting my work done within my regular weekly work hours.

22. In my experience, the case volume changes somewhat, sometimes higher and sometimes lower, and this is true for both internal investigations and field-based investigations.

23. I am responsible for correctly and accurately logging my hours in GEICO's Workday timekeeping system. I am required to submit my hours daily. There have been

4

occasions where I forget to clock my time, however when this happens, I call my supervisor to fix the error. I have never had any issue with my supervisors adjusting my time based on errors.

24. I have never worked any time for which I was not compensated at GEICO. I have been appropriately compensated for all of the time that I have worked.

## COMPENSATION

25. I am paid an hourly rate for the work that I do.

26. I am paid on a bi-weekly basis.

27. I have never complained about unpaid wages while working at GEICO.

## BREAKS

28. I take forty-five-minute lunch breaks each day. I do not perform any work during my lunch break.

29. If I'm in the field, I record my sign-in and sign-out times when I take my lunch through the Workday application.

30. I also have two fifteen-minute breaks each day, usually I take one in the morning or the other in the early afternoon.

## GEICO COMPLAINT PROCEDURES

31. Although I have never had reason to or in fact complained about any timekeeping or pay issues while working at GEICO, I am aware that GEICO provides employees a few different options to voice any complaints or concerns. These include directly messaging GEICO Human Resources, a Berkshire Hathaway compliance hotline, or I can always bring any issues to my supervisor or manager.

## PARTICIPATION

32. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

33. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

34. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

May 12, 2025  
Date

*Jeanne Carbonaro*  
ED1B233758964E4...  
Jeanne Carbonaro

6