# EXHIBIT 64

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN,
JOHN MOESER, LOUIS PIA, THOMAS
BARDEN, CONSTANCE MANGAN, and
CHARISE JONES, individually and on behalf
of all others similarly situated,

               Plaintiffs,

      v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY d/b/a GEICO,

               Defendant.

Case No. 2:23-CV-02848 (GRB) (ARL)

## DECLARATION OF BRIAN PORTNOY

I, Brian Portnoy, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I have been an employee of Government Employees Insurance Company ("GEICO" or the "Company") since 2005. I currently work for GEICO in its Special Investigations Unit ("SIU") as an SIU Medical Major Case Analytics Supervisor.

2.      I first joined SIU in 2015. In the time between 2015 and May 2023, I worked in a number of supervisory roles within SIU, most recently as an SIU supervisor for a group of SIU investigators mostly comprised of field-based investigators, beginning in 2019. I have worked for the Company as an SIU Medical Major Case Analytics Supervisor since May 2023. In this role, I have supervised SIU Analysts only and have not supervised SIU investigators in any job title.

3.      Prior to working in my current role, in my position as an SIU Supervisor, I regularly supervised between 6 and 11 SIU investigators in various roles at a given time.

DocuSign Envelope ID: C79D9D98-7925-4C6A-BB4D-1B8C5955FB1F

4.      I supervised both Field Medical Fraud Investigators and Internal Major Case SIU Investigators.   Only my Field Medical Fraud Investigators actually went into the field to perform their investigation work responsibilities in New York.  The Internal Major Case SIU Investigators primarily physically worked in GEICO's Long Island office, or remote from their respective homes.

5.      Prior to the nationwide restructuring of SIU in 2023, I was assigned to what was known as Region 2 within the former SIU organizational structure.  Region 2 was one of a number of separate Regions in the United States within the former SIU organizational structure, and it was responsible for all SIU cases within New York.  I don't recall getting any requests for case work from GEICO's Buffalo, New York office, which was part of a different Region (Region 8).  I don't have much knowledge of how the SIU operated outside of my own Region (Region 2).

6.      In my current role, I have only reported to William "Bill" Newport, current SIU Analytics Manager and prior SIU Manager for the former Region 2.  While I was an SIU Supervisor responsible for supervising various investigator positions, I reported to Bill Newport, as well as to Courtney Wolfe for a period of time.

7.      Prior to 2019, I used to go into the office almost every day.  From the end of 2019 through present, I have mostly worked remotely from my home.

**JOB RESPONSIBILITIES**

8.      In my prior role as SIU Supervisor, my job responsibilities included evaluating which cases remained open or pending, performing 30-day reviews on all open cases to determine their status, approving cases that the assigned investigator sought to close out, quality control of case investigations through audits, going into the field about one or two times each

month to evaluate fieldwork for each of the different field-based investigators I supervised, and other managerial responsibilities, including attending and participating in management meetings and management presentations.

9.      While in my prior role, the Field Medical Fraud Investigators had more control over their case flow early on in my time within SIU, and their cases were pretty consistent. For a while, the Field Medical Fraud Investigators would get cases from a queue and they would simply take additional cases when they were ready to do so, and I would monitor their number of cases on a regular basis without issue. Later on, the team grew in size, so another SIU Supervisor and I assigned cases to the Field Medical Fraud SIU Investigators directly.

10.     The work assigned to investigators working on Major Cases is more complex than field medical investigations and casework that does not fall under the Major Case umbrella. Major cases include large-scale and highly organized insurance fraud practices and evaluating a number of individual cases and claims in order to conclude whether a broader scheme of potential fraud is likely in play. Moreover, the Field Medical Fraud Investigator and Internal Major Case SIU Investigator positions are pretty different because those working inside were responsible for completing their work from a computer by looking into complex billing patterns, and really digging into the investigations and cases based on documentation available for access through the computer system and online.

11.     Only Field Medical Fraud Investigators would be able to and did perform tasks requiring in-person investigation as part of the cases within my purview. This included physically driving to locations to investigate, face-to-face interviews and examinations under oath ("EUOs"), and going to medical clinics to survey the scene and gather more information. Field Medical Fraud SIU Investigators also assisted Internal Major Case SIU Investigators who

3

DocuSign Envelope ID: C79D9D98-7925-4C6A-BB4D-1B8C5955FB1F

needed specific in-person tasks performed to aid them in their own cases by performing these duties, since Internal Major Case SIU Investigators could not venture into the field in their positions.

12.     The Field Medical Fraud SIU Investigators that I supervised were always entirely remote and did not work based out of the GEICO office on Long Island like the Internal Major Case SIU Investigators did.

### WORK HOURS / TIMEKEEPING OF SIU INVESTIGATORS

13.     The SIU investigators in various roles that I supervised regularly worked a total of approximately 38.75 hours per work week.

14.     Although all of my investigators had a regular schedule, the Internal Major Case SIU Investigators were generally expected to adhere to their specific work hours each work day, with some flexibility, for example, if they needed to come in a few hours early in order to leave early for a number of reasons.  I generally always approved these types of small changes to their regular work schedules.

15.     The Field Medical Fraud Investigators I supervised, however, were always expected to alter their work hours in order to meet the needs of their jobs.  For example, if a Field Medical Fraud Investigator was coming into Manhattan from his or her home on Long Island to take an EUO or two in-person, I expected the individual to adjust his or her work times during that work day based on the timing of the EUOs.  Field Medical Fraud Investigators tended to require much more schedule flexibility than Internal Major Case SIU Investigators based on the needs of the job, which was not always the scheduled work hours based on a number of factors, including the business hours of various medical clinics that opened and closed at different times.

16.     The investigators who reported to me in various roles generally worked a weekly work hour total of 38.75 hours.  However, on occasion when Field Medical Fraud Investigators worked more than 7.75 hours in a work day due to, for example, the timing of an EUO or a medical clinic inspection, they would regularly flex their hours on another day later in the same workweek in order to still hit their 38.75-hour total for the workweek.

17.     My team members and I were in regular communication with each other and regularly talked through any scheduling issues.  I made it clear that if the Field Medical Fraud Investigators were spending any time working a case, I needed to know about it and they needed to put in for that time, regardless of whether it meant they'd be exceeding the 7.75 expected daily work hours, the 38.75 expected weekly work hours, or if it meant they'd exceed 40 hours in a given workweek and work overtime.  I always told them that all work time must be compensated and that they should always put in for all of their time worked.

18.     The investigators who reported to me have always been responsible for ensuring that they properly and accurately enter all of their time worked for GEICO, including all hours beyond 38.75 in a work week and all overtime hours worked over 40 in a work week.  At some point during the last few years, Field Medical Fraud Investigators were asked to enter their hours through an application on their work phones.

19.     I do not believe that SIU investigators in various roles who reported to me needed to work overtime hours to complete their assigned casework.  There was also not a regular need to work overtime because I was in regular communication with my investigators and, if someone went over 40 hours in a workweek or anticipated needing to do so, we'd work through it in order to try to avoid the need moving forward.  Of course, if an investigator did work over 40 hours in a workweek, they'd just put in for those overtime hours and be paid overtime for same.  These

5

were very rare occasions, such as unexpected additional work toward the end of a workweek on Thursday or Friday.

20.     On a number of occasions, such as immediately after "catastrophes," or for certain projects that needed timely completion, former Region 2 would receive approval for special overtime projects during which we offered available overtime hours to some SIU investigators in various roles, depending on the needs of the project.  I do not recall this happening more than a handful of times.

21.     I was always required to, and did, review and approve SIU investigators in various roles' work hours entered so that they could be paid for same.

22.     As a supervisor, I reiterated to my team that they should not work any hours without logging them so they could be paid for them.

23.     I never clocked out any of the SIU investigators in any role that I supervised while they were still working and I never heard of anyone else doing that either.  I never failed or refused to approve hours entered by an SIU investigator that I supervised in any role.

24.     I never told any of the SIU investigators in any role that I supervised that they would not be paid for all of their hours worked.

25.     I never told any of the SIU investigators in any role that I supervised that they should perform work off the clock, and I always told them to put in for all of their time to ensure that they were properly compensated for all of their hours worked.

26.     None of the SIU investigators in any role that I supervised ever complained that they were forced to work off-the clock or not being properly paid for all of the hours they worked or submitted to GEICO as having worked.

6

27.     I have never been told by my supervisor or anyone at GEICO to clock out the SIU investigators in any role that I supervised when they were still working or to shave off or underreport any of their time.

28.     I have never been told by my supervisor or anyone at GEICO to not permit the SIU investigators in any role that I supervised to log all of their overtime hours.

29.     GEICO forbids all SIU employees from working off the clock.

30.     GEICO also maintains complaint procedures for time or pay-related issues, including both reaching out to Human Resources or calling an ethics hotline, as well as the regular chain of command to report any such issues to their supervisor.

31.     GEICO has always maintained an open door policy to allow employees to voice any concerns or raise any issues.

**PARTICIPATION**

32.     I am providing this statement of my own free will.  I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

33.     I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

34.     I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

May 15, 2024

Date

Brian Portnoy

Brian Portnoy