IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Case No. 2:23-CV-02848 (SJB) (SLT) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.     Plaintiffs Have Article III Standing ........................................................................ 1

    II.    Commonality........................................................................................................... 2

          A.     GEICO Misdirects Attention Away from Structural Causes of Unpaid Work ................................................................................. 3

          B.     The Fact and Amount of Off-the-Clock Work Are Common Questions................................................................................................ 4

               1.     Investigator Metrics Were Substantially the Same ..................... 4

               2.     GEICO's Overtime Approval Rules Were Uniformly Restrictive ................................................................................... 5

               3.     GEICO's Data Will Reflect its Escalating Workload Expectations ................................................................................ 5

          C.     GEICO's Knowledge of Off-the-Clock Work Is a Common Issue ..................................................................................................... 6

    III.   Predominance......................................................................................................... 7

          A.     Investigators' Testimony is Overwhelmingly Consistent....................... 8

          B.     Plaintiffs' Data-Driven Model Will Satisfy Predominance ................... 9

    IV.   Typicality ............................................................................................................. 11

CONCLUSION........................................................................................................................ 12

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                            Page(s)

*Adams v. City of N.Y.*,
   2021 WL 1791182 (S.D.N.Y. May 5, 2021) ............................................................................. 7

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ........................................................................................................... 2-3, 10

*Barrows v. Becerra*,
   24 F.4th 116 (2d Cir. 2022) ..................................................................................................... 11

*Campbell v. City of N.Y.*,
   2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) ............................................................................. 12

*Cinar v. R&G Brenner Income Tax, LLC*,
   2024 WL 4485331 (E.D.N.Y June 21, 2024) ........................................................................... 7

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ...................................................................................................... 1

*DeSilva v. N. Shore-Long Island Jewish Health System*,
   27 F.Supp.3d 313 (E.D.N.Y. 2014) .......................................................................................... 9

*Eng-Hatcher v. Sprint Nextel Corp.*,
   2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ......................................................................... 6

*Enriquez v. Cherry Hill Mkt. Corp.*,
   993 F.Supp.2d 229 (E.D.N.Y. 2014) ........................................................................................ 9

*Fernandez v. Wells Fargo Bank, N.A.*,
   2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) .................................................................... 9, 12

*Grande v. 48 Rockefeller Corp.*,
   2023 WL 5162418 (S.D.N.Y Aug. 11, 2023) .......................................................................... 8

*Gregory v. Stewart's Shops Corp.*,
   2016 WL 8290648 (N.D.N.Y. July 8, 2016) ............................................................................ 9

*Hardgers-Powell v. Angels in Your Home LLC*,
   330 F.R.D. 89 (W.D.N.Y. 2019) .............................................................................................. 2

*Hinojos v. Home Depot. Inc.*,
   2006 WL 3712944 (D. Nev. Dec. 1, 2006) .............................................................................. 6

*Hyland v. Navient Corporation*,
  48 F.4th 110 (2d Cir. 2022) ............................................................................................. 1

*Jimenez v. Allstate Insurance Company*,
  765 F.3d 1161 (9th Cir. 2014) ......................................................................................... 3

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) ......................................................................................... 6, 7

*Lanqing Lin v. Everyday Beauty Amore Inc.*,
  2019 WL 3037072 (E.D.N.Y. July 11, 2019) ................................................................ 12

*Lawrence v. NYC Med. Prac., P.C.*,
  2021 WL 2026229 (S.D.N.Y. May 20, 2021) .................................................................. 7

*Li v. Ny Capri Nails & Spa Inc.*,
  2024 WL 708775 (E.D.N.Y. Jan. 17, 2024) ................................................................... 12

*Marin v. Apple-Metro, Inc.*,
  2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017) .................................................................... 2

*Nash v. Horizon Freight Sys., Inc.*,
  2020 WL 7640878 (N.D. Cal. Dec. 23, 2020) ................................................................. 9

*Opperman v. Path, Inc.*,
  2016 WL 3844326 (N.D. Cal Jul. 15, 2016) .................................................................. 11

*Perez v. Isabella Geriatric Ctr., Inc.*,
  2016 WL 5719802 (S.D.N.Y. Sept. 30, 2016) .............................................................. 4, 8

*Perry v. City of N.Y.*,
  78 F.4th 502 (2d Cir. 2023) .......................................................................................... 6, 7

*Perry v. City of N.Y.*,
  552 F.Supp.3d 433 (S.D.N.Y. 2021) ................................................................................ 6

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ............................................................................................. 9

*Pino v. Harris Water Main & Sewer Contractors Inc.*,
  2021 WL 3675148 (E.D.N.Y Aug. 19, 2021) ............................................................... 1, 8

*Reich v. S. New England Telecomms. Corp.*,
  121 F.3d 58 (2d Cir. 1997) ............................................................................................. 10

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ......................................................................................... 7, 9

*Ruiz v. Citibank, N.A.*,
   93 F.Supp.3d 279 (S.D.N.Y. 2015) ................................................................................ 3, 4

*Sykes v. Mel S. Harris & Associates LLC*,
   780 F.3d 70 (2d Cir. 2015) ..................................................................................................... 2

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................................... 2

*Tyson Foods v. Bouaphakeo*,
   577 U.S. 442 (2016) ....................................................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................................... 3

## REGULATIONS

29 C.F.R. § 785.11 ........................................................................................................................ 3

## INTRODUCTION

Twenty-five Plaintiffs – approximately 25% of the Class – testify that GEICO subjected Investigators to common workload pressures and evaluation criteria, causing them to work off the clock. GEICO's opposition tries to distract from that showing, taking aim at a theory of rogue supervisors Plaintiffs have not advanced. It does not show that any Rule 23 factor has not been met.

The Court previously granted Plaintiffs' 216(b) motion based on the same evidence. "Where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Pino v. Harris Water Main & Sewer Contractors Inc.*, 2021 WL 3675148, at *3 (E.D.N.Y Aug. 19, 2021). The Court should do so here.

## ARGUMENT

### I. Plaintiffs Have Article III Standing.

"Once it is ascertained that there is a named plaintiff with the requisite standing,[] there is no requirement that the members of the class also proffer such evidence." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). The *dicta* GEICO relies on suggesting a class "must . . . be defined [so] that anyone within it would have standing," *id.* at 264; Opp. 9, was rejected in *Hyland v. Navient Corporation*, 48 F.4th 110, 118 n.1 (2d Cir. 2022).

GEICO's standing argument also contradicts *Tyson Foods v. Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). There, the Court permitted a wage and hour class where the hours worked were subject to proof at trial, and the class contained uninjured plaintiffs. *Id.* at 456. There, as here, representative evidence, bolstered by expert analysis, was used "to fill an evidentiary gap created

by the employer's failure to keep adequate records" and remove uninjured class members before judgment. *Id.*[1]

The class definition in the operative Complaint does not require that class members "were not paid for all overtime hours worked over 40 hours each workweek," which GEICO claims creates a "fail-safe class." DE 52 ¶ 85. That is wrong; a fail-safe class is one where class membership "could only be known after a determination of . . . liability." *See Marin v. Apple-Metro, Inc.*, 2017 WL 4950009, at *37 (E.D.N.Y. Oct. 4, 2017). Even if the Court added a 40-hours limitation to the class definition, GEICO's knowledge of off-the-clock work would still be at issue. Here, Plaintiffs' damages model will screen out Investigators who worked under 40 hours, and that evidence will be presented contemporaneously with evidence about GEICO's knowledge. "[T]he mere fact that the [] definition includes the factual predicates for a successful claim does not, by itself . . . create a "fail-safe" class. *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 102 (W.D.N.Y. 2019).

**II.   Commonality**

At trial, Plaintiffs' evidence will answer three common questions: (i) whether GEICO failed to pay Investigators for all hours worked; (ii) whether GEICO failed to record all hours worked; and (iii) whether GEICO knew, or should have known, that Investigators worked off the clock. Mot. 17. Plaintiffs' common proof will include (i) Investigator testimony and (ii) statistical analysis of GEICO's workload data by Plaintiffs' expert, compared against GEICO's payroll records. The anticipated expert analysis, further described in Section III(B) below, will show the fact and amount of Investigators' unpaid hours each week "as a matter of just and

---

[1] *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), was not a class certification decision and did not expressly address the standing issue GEICO raises. *See* 594 U.S. at 431 n.4. GEICO's citation to *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 81-82 (2d Cir. 2015), discusses predominance, not standing.

reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). In addition, Investigator testimony will describe the warning signs that should have given GEICO knowledge or "reason to believe" Investigators were working unpaid hours. 29 C.F.R. § 785.11.

### A.  GEICO Misdirects Attention Away from Structural Causes of Unpaid Work.

In trying to analogize to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), GEICO misrepresents Plaintiffs' theory of the case. Plaintiffs do not allege that GEICO established "a common mode of exercising discretion" that led supervisors to instruct Investigators to work off the clock. *Id.* at 356. Instead, Plaintiffs allege that GEICO's performance metrics *directly* penalized Investigators who reported higher hours while GEICO simultaneously increased their workload, Mot. 8-10, which is more analogous to a common testing procedure that *directly* impacts a class of plaintiffs. *See Dukes*, 564 U.S. at 353 (discussing two ways to bridge the "conceptual gap" between individual and classwide injury).

These practices were common to the Class. "[E]mployee-plaintiffs can rarely point to an explicit policy of their employer that is violative of their rights . . . proof of de facto policies has therefore become the coin of the realm." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015). And courts have certified off-the-clock classes where the evidence of a *de facto* policy was far *less* concrete than the evidence presented here. In *Jimenez v. Allstate Insurance Company*, 765 F.3d 1161, 1165-66 (9th Cir. 2014), the court approved a class where the "glue" holding the claims together was "Defendant's unofficial policy of discouraging reporting of such overtime, Defendant's failure to reduce class members' workload after [they were reclassified], and Defendant's policy of treating their pay as salaries for which overtime was an 'exception.'" 765 F.3d at 1165-66. All those facts are present here, Mot. 4-5, *in addition to* performance metrics that directly penalized Investigators for reporting overtime. *Id.* 8-10. These facts are relevant both to GEICO's constructive knowledge – it should have known this

system of incentives would pressure Investigators to work off the clock – and to explain what Plaintiffs' expert will show using GEICO's workload data: work increased even while (reported) hours remained flat. *See Perez v. Isabella Geriatric Ctr., Inc.*, 2016 WL 5719802, at *2 (S.D.N.Y. Sept. 30, 2016) (commonality satisfied where "'standard policy' of assigning [plaintiffs] more work than they can complete within their regularly scheduled shifts" caused class to work off the clock).

"[B]oth [the] scale and uniformity" of this evidence are unlike that in *Ruiz*. Not only was there no performance metric in *Ruiz* that directly punished employees who reported overtime, the *Ruiz* plaintiffs only submitted testimony from 31 of 2,346 class members (1.3% of the class). 93 F. Supp. 3d at 291. Here, Plaintiffs proffer testimony from 25 of 100 Class Members[2] – 25% of the Class – who describe common evidence. Mot. 2 n.3 (citing 25 witnesses).

### B. The Fact and Amount of Off-the-Clock Work Are Common Questions.

#### 1. Investigator Metrics Were Substantially the Same.

GEICO's performance metrics (File Quality, Case Life, and Productivity) pushed Investigators to underreport their hours. Mot. 8-10. Despite GEICO's arguments, Investigators – Desk and Field – had the same activity metrics. The PowerPoint GEICO cites to show supposed differences, Opp. 19, shows that Desk and Field Investigators had the same three metrics described in Plaintiffs' brief. Opp., Ex. 46. Keith Fischer and Constance Mangan – two Investigators GEICO names – had the same core metrics in 2019, albeit with different goals.[3]

---

[2] GEICO has not produced complete data, but does not contest the class size estimated in Plaintiffs' brief. Mot. 16.

[3] *Compare* Scimone Reply Decl. Ex. 1 (Mangan 2019 Appraisal) at G006645, *with* Ex. 2 (K. Fischer 2019 Appraisal) at G006349. Plaintiffs' expert model will account for such variations, and for the tasks required for different cases. *See* Section III(B) below. Unless otherwise noted, all exhibits are attached to the Scimone Reply Declaration.

The declarations GEICO harvested from Investigators who were unaware of their metrics, Opp. 20, go to predominance, addressed in Section III(A) below.

### 2. GEICO's Overtime Approval Rules Were Uniformly Restrictive.

GEICO's overtime approval process centered discretion at the Vice President and Manager level, with minimal discretion invested in frontline supervisors. Mot. 5-7. Variation in overtime worked and (occasionally) recorded, Opp. 17, does not negate the common evidence that Investigators were subject to prior-approval rules.[4] Nor do trivial differences in, *e.g.*, the timing of emails to supervisors, Opp. 17-19, who had limited discretion. Mot. 6-7.

### 3. GEICO's Data Will Reflect its Escalating Workload Expectations.

Plaintiffs' testimony describes ever-increasing workloads, which required them to work overtime. In addition, Plaintiffs will rely on GEICO's productivity data, which Plaintiffs' expert will use to project the hours Investigators worked. GEICO misunderstands Plaintiffs' anticipated model. Opp. 23. The model does not use time stamps as a proxy for hours; it relies on the same data GEICO used to evaluate Investigators' productivity to quantify their workload, which Plaintiffs' expert will correlate with testimony about hours. Mot., Ex. 62 (O'Neil Decl.) ¶¶ 5-15. This mode of proof is common to the Class, and will show the fact and amount of unrecorded hours when compared against GEICO's payroll records.

---

[4] Plaintiffs' brief addresses the period in 2020 that GEICO identifies. Opp. 17; Mot. 5-7, 12 (correspondence between Manager and Vice President showing GEICO made an exception and approved limited overtime). As for overtime reported in other years, these were the exception. Ex. 3, (Jones Dep.) 146:23-151:12 (describing 2018 request for 1.5 hours overtime, difficulty getting approval). Plaintiffs' damages model would not impute damages for overtime already paid. *See* Section III(B) below.

-5-

### C.     GEICO's Knowledge of Off-the-Clock Work Is a Common Issue.

GEICO ignores testimony that Investigators directly told supervisors they worked off the clock.[5] It is true that some testify that supervisors *also* had constructive knowledge.[6] And some testimony could support an inference of actual *or* constructive knowledge.[7] But that only *adds* to the body of common evidence. *See Perry v. City of N.Y.*, 78 F.4th 502, 522 (2d Cir. 2023) ("[K]nowledge that some compensable, extra-shift work was not being paid suffices to put the City on notice."). And GEICO created the structures that incentivized off-the-clock work, which it should have known, after a string of lawsuits challenging similar policies, *see* Mot. 4, would have predictable effects. *See Perry v. City of N.Y.*, 552 F. Supp. 3d 433, 444-45 (S.D.N.Y. 2021) ("[C]ourts may . . . permit evidence involving earlier claims against a defendant, which were said to put defendants on notice as to the potentially unlawful nature of its practices." (cleaned up)).[8]

GEICO's supposedly individualized defense that Plaintiffs are to blame for underreporting, Opp. 21-22, is a predominance argument, and misstates the law. It is well established that "an employer's duty . . . to maintain accurate records of its employees' hours is non-delegable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). GEICO's

---

[5]     *See* Mot. 14 n.73.

[6]     Ex. 4 (M. Fischer Dep.) 175:15-176:3, 179:11-19 (Worked long hours because she had too much work to complete within 38.75 hours).

[7]     Ex. 6 (K. Fischer Dep.) 88:14-18 ("Jerry did say to me numerous times you have to do what you have to do . . . and that's the understanding I had with Jerry for over 15 years."); Ex. 5 (King Dep.) 139:19-22 (told supervisor about "having trouble keeping up with my caseload and saying that, you know, there's not enough hours in the day . . . . She basically said . . . we're all in the same boat . . . ."); Ex. 7 (O'Sullivan Dep.) 67:8-25 ("I understood, based on conversations with my supervisor, that GEICO would not authorize overtime pay, 'just for typing.'").

[8]     GEICO's cases denied § 216(b) certification and found references to other litigation insufficient to show employees were similarly situated; other lawsuits were not introduced as common evidence of *knowledge*. *See Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *3 n.4 (S.D.N.Y. Nov. 13, 2009); *Hinojos v. Home Depot. Inc.*, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006).

-6-

blame-the-victim argument "has been repeatedly rejected" after *Kuebel*. *See Adams v. City of N.Y.*, 2021 WL 1791182, at *5 (S.D.N.Y. May 5, 2021). "Once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to record . . . overtime hours." *Kuebel*, 643 F.3d at 363. "[A]llowing, or even requiring, an employee to report overtime work does not absolve employers of the obligation to compensate . . . ." *Perry*, 78 F.4th at 509 (upholding verdict awarding damages to 2,519 plaintiffs alleging off-the-clock work).

During the relevant period, while GEICO was increasing their workload, Plaintiffs reported 38.75 hours per week in 99% of all time entries. Mot. 12. That fact is further evidence that GEICO should have known that not all hours were being recorded.

### III.  Predominance

Predominance is satisfied where "one or more" central issues predominate over individualized issues. *Tyson Foods*, 577 U.S. at 453. The test is no different in an off-the-clock case. GEICO falsely attributes a quote to the Second Circuit in *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015), which never said, "courts are disinclined to find the predominance requirement satisfied" in off-the-clock cases. Opp. 2; 26. Off-the-clock cases – like any case – are susceptible to classwide resolution "where, as here, common issues relating to off-the-clock work predominate over individual questions relating to damages." *Cinar v. R&G Brenner Income Tax, LLC*, 2024 WL 4485331, at *13 (E.D.N.Y June 21, 2024), *R&R adopted* 2024 WL 4224046 (E.D.N.Y. Sept. 18, 2024).

Again, this is not a case about supervisor discretion. It is about how GEICO structured the work process and its knowledge of the consequences. *See* Mot. 14, n. 73; *Lawrence v. NYC Med. Prac., P.C.*, 2021 WL 2026229, at *11 (S.D.N.Y. May 20, 2021) (off-the-clock claim susceptible to "class-wide proof" using "payroll records, financial records, and testimony");

*Grande v. 48 Rockefeller Corp.*, 2023 WL 5162418, at *24 (S.D.N.Y Aug. 11, 2023) (same; policies related to "off-the-clock work, spread of hours pay, and meal breaks" are subject to generalized proof); *Perez*, 2016 WL 5719802, at *3 (same; rejecting argument that individual issues like "whether [plaintiffs'] supervisors required [plaintiffs] to work additional hours" or knew they worked additional hours defeated predominance).

### A. Investigators' Testimony is Overwhelmingly Consistent.

GEICO points away from Plaintiffs' common proof, at the fact that they had "various supervisors, who reported to various managers, and supervisors exercised discretion in highly varied ways," Opp. 26, but it fails to show that these "issues" predominate – or even that they are issues. *See Pino*, 2021 WL 3675148, at *10 ("[S]ome factual variation in the circumstances of the class members does not defeat . . . predominance.") (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)). GEICO never explains why these facts matter, and some reinforce Plaintiffs' theories. Opp. 18 (some supervisors "required that . . . investigators obtain approval").

Where it takes Plaintiffs' evidence head-on, GEICO reinforces the conclusion that predominance is satisfied. Against 25 Plaintiffs, GEICO proffers 6 declarations, most from "inside" or "internal" investigators. Opp. Exs. 56, ¶¶ 1, 7 (internal; social media cases); 57, ¶¶ 1, 9 (internal; social media and staged cases); 58, ¶¶ 1, 10 (inside; major cases); 59, ¶¶ 1, 9 (internal; major cases); 60, ¶ 6 (internal; major and auto fraud cases); 61, ¶¶ 1 (internal until 2023; major cases). One declarant is a supervisor. Opp. Ex. 60, ¶ 1. Only one (Carbonaro) ever worked in the field, like nearly all the Plaintiffs. Opp. Ex. 61, ¶ 12; *cf.* DE 56-1 to 56-25 (216(b) declarations). Carbonaro started working in the field in 2023, and only on major cases. Opp. Ex.

61, ¶ 12.[9] Due to companies having "significant influence" over workers who sign them, "[m]any courts have expressed skepticism about the use of these 'happy camper' declarations." *Nash v. Horizon Freight Sys., Inc.*, 2020 WL 7640878, at *1-2 (N.D. Cal. Dec. 23, 2020). At most, these declarants suggest that with more discovery, the Court may need to take a closer look at inside investigators, but they reinforce the conclusion that field investigators are similarly situated. *See In re Petrobras Sec.*, 862 F.3d 250, 274 (2d Cir. 2017) (courts should "implement management strategies tailored to the particularities of each case," like certifying subclasses).

GEICO's cases are distinguishable. This case involves 100 Investigators in 1 office, 25% of whom have testified to GEICO's practices – not 4,000 employees spread over 300 stores with "anecdotal" evidence. *See Gregory v. Stewart's Shops Corp.*, 2016 WL 8290648, at *4 (N.D.N.Y. July 8, 2016). It is not a case with 1,196 opt-in plaintiffs in 395 departments, 39 business units, and 59 locations, each with its own timekeeping policies. *See DeSilva v. N. Shore-Long Island Jewish Health System*, 27 F. Supp. 3d 313, 323 (E.D.N.Y. 2014). Nor have Plaintiffs presented evidence that predates the class period, has "significant factual gaps," or merges facts against various defendants. *Fernandez v. Wells Fargo Bank, N.A.*, 2013 WL4540521, at *8 (S.D.N.Y. Aug. 28, 2013). And here, Plaintiffs have articulated several common policies and employer practices which bind the class. *Cf. Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 236 (E.D.N.Y. 2014).

### B. Plaintiffs' Data-Driven Model Will Satisfy Predominance.

At trial, Plaintiffs will proffer a data-driven model to show damages. Although a classwide damages model is not necessary to establish predominance, *see Roach*, 778 F.3d at

---

[9] It is likely that GEICO undertook remedial measures in 2023, when Plaintiffs brought their claims to GEICO's attention. To the extent those measures were effective, Plaintiffs' damages model will presumably show workloads that correlate with the hours GEICO paid for.

405, Plaintiffs have proffered a declaration from an expert in mathematical modeling, Cathy O'Neil, describing the model she could build using data GEICO maintained in the ordinary course of business. Mot., Ex. 62 (O'Neil Decl.), ¶¶ 3-5. Because all Investigators were subject to similar performance metrics, completed similar tasks, and have testified to consistent off-the-clock work, this is a "textbook case" for the methodology she describes. Ex. 8 (O'Neil Reply Decl.), ¶ 11. The model will correlate measures of workload with testimony by a sample of Plaintiffs about their hours and extrapolate to the rest of the Class. Although only 5 witnesses' testimony would be sufficient, Ms. O'Neil can build a more reliable model with the testimony of 25 Investigators. Ex. 9 (O'Neil Dep.) 50:17-25.

This is the 21st-century version of a method for proving damages that the Supreme Court approved in 1946. When an employer fails in its obligation to record all hours of work, a plaintiff can establish damages as a matter of "just and reasonable inference," shifting the burden to the employer to rebut that inference. *Anderson*, 328 U.S. at 687-88. The Supreme Court affirmed that approach in *Tyson Foods,* 577 U.S. at 456-57, where it held that the reasonableness of the inference to be drawn from an expert's model should be weighed by the jury. An employer can introduce its own expert to contest the inference. Or employers can cross-examine the Plaintiffs who testify at trial to show they worked fewer hours. *See Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (describing use of representative testimony at trial, collecting cases).[10] It is inherent in this framework that some plaintiffs will be over- or undercompensated, but that is GEICO's fault. *See Anderson*, 328 at 688 ("The employer cannot

---

[10] Ms. O'Neil's model can be built so the hours proven at trial can be adjusted, with the projected damages for the Class being adjusted accordingly. Ex. 8 (O'Neil Reply Decl.), ¶ 10.

be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records.").[11]

The Court should reject GEICO's premature *Daubert* argument. Opp. 28. Expert discovery has not commenced, GEICO has not produced data, and Ms. O'Neil has yet to build her model. And Ms. O'Neil will rely on data that GEICO used to evaluate Investigators, which means GEICO thought the data were sufficiently reliable to decide whether to continue employing Investigators in their job. Ex. 8 (O'Neil Reply Decl.), ¶¶ 4-8. Ms. O'Neil may apply a range of measures to ensure her model is based on representative testimony. *Id.* ¶¶ 7, 8, 17.[12] The jury can decide whether she has done so sufficiently, and GEICO can challenge her model once it is built. *See Tyson*, 577 U.S. at 456-57.

## IV. Typicality

Plaintiffs' claims are typical of the Class because they "arise[] from the same course of events, and each class member makes similar legal arguments." *Barrows v. Becerra*, 24 F. 4th 116, 131 (2d Cir. 2022). Like the Class, Plaintiffs were not paid for all hours because of the same evaluation and timekeeping practices. GEICO's claim that Plaintiffs lack personal knowledge of other Investigators is untrue,[13] and does not defeat typicality. None of the cases

---

[11] GEICO's only authority on this point is *Opperman v. Path, Inc.*, 2016 WL 3844326, at *14 (N.D. Cal Jul. 15, 2016), which concerned the "intangible" harm of "inherent privacy interests" arising from unauthorized disclosure of cell phone contacts.

[12] GEICO is wrong to say Ms. O'Neil will "hand tune" damage projections. Opp. 29. What she called "hand tuning" is a measure to refine formulae that apply to the whole Class. *Id.* ¶ 15.

[13] The Court previously rejected this argument. DE 91 at 12-14. Plaintiffs' testimony disproves GEICO's assertion. *E.g.*, Ex. 7 (O'Sullivan Dep.) 177:15-18 ("in conversation, guys would be complaining about working extra hours to get cases done.").

-11-

GEICO cites turn on knowledge; they are instead focused on differences among class members.[14]

As for the supposed "material dissimilarities amongst the named Plaintiffs' claims," Opp. 30, GEICO does not describe any, and the cases it cites do not support its argument. When the same conduct is directed at the named plaintiff and at the class, typicality "is usually met irrespective of minor variations in the fact patterns." *Fernandez*, 2013 WL 4540521, at *13 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

## CONCLUSION

Plaintiffs' motion for class certification should be granted.

Respectfully submitted,

Dated: June 11, 2025

By: <u>Michael J. Scimone</u>
Michael J. Scimone
Sabine Jean
Jarron D. McAllister
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2005
Email: mscimone@outtengolden.com
Email: sjean@outtengolden.com
Email: jmcallister@outtengolden.com

Ryan C. Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: rcowdin@outtengolden.com

---

[14] *See Li v. Ny Capri Nails & Spa Inc.*, 2024 WL 708775, at *9-11 (E.D.N.Y. Jan. 17, 2024) (insufficient evidence that unrelated positions were similar); *Lanqing Lin v. Everyday Beauty Amore Inc.*, 2019 WL 3037072, at *3 (E.D.N.Y. July 11, 2019) (hearsay evidence did not prove commonality); *Campbell v. City of N.Y.*, 2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) (not discussing typicality).

-12-

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
Facsimile: (800) 451-0874
Email: tkessler@kesslermatura.com
Email: gkaske@kesslermatura.com

\* Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Putative Class and Collective*