# Exhibit 3

**Page 1**

1
2           IN THE UNITED STATES DISTRICT COURT
3           FOR THE EASTERN DISTRICT OF NEW YORK
4    - - - - - - - - - - - - - - - - - - )
5    KEITH FISCHER, MICHAEL O'SULLIVAN,      )
6    JOHN MOESER, LOUIS PIA, THOMAS     ) Case No.:
7    BARDEN, CONSTANCE MANGAN, and     ) 2:23 Civ. 2848
8    CHARISE JONES, individually and   ) (GRB) (ARL)
9    on behalf of all others similarly )
10   situated,                          )
11                  Plaintiffs,         )
12        - v -                         )
13   GOVERNMENT EMPLOYEES INSURANCE     )
14   COMPANY d/b/a GEICO,               )
15                  Defendant.          )
16   - - - - - - - - - - - - - - - - - - )
17
18        VIDEOTAPED DEPOSITION OF CHARISE JONES
19
20
21
22
23   Reported by:
24   Kim M. Brantley
25   Job No: J11541510

**Page 2**

1                    CHARISE JONES
2               Monday, August 12, 2024
3               Time:  9:53 a.m.
4        Videotaped deposition of CHARISE JONES, held
5    at Duane Morris, LLP, 1540 Broadway, 14th Floor,
6    New York, New York, before Kim M. Brantley, Court
7    Reporter and Notary Public of the State of New
8    York.
9
10   APPEARANCES:
11   On behalf of the Plaintiffs:
12        OUTTEN & GOLDEN, LLP
13        1225 New York Avenue NW - Suite 1200B
14        Washington, DC, 20007
15        (202) 847-4400
16        Email: sjean@outtengolden.com
17        BY:  SABINE JEAN, ESQUIRE
18
19
20
21
22
23
24
25

**Page 3**

1                    CHARISE JONES
2    APPEARANCES CONTINUED:
3    On behalf of the Defendant GEICO:
4        DUANE MORRIS, LLP
5        1540 Broadway - 14th Floor
6        New York, New York 10036
7        (312) 499-0198 (Ms. Alberty)
8        Email:  gsslotnick@duanemorris.com
9        BY:  GREGORY SLOTNICK, ESQUIRE
10
11   Also on behalf of the Defendant GEICO:
12        DUANE MORRIS, LLP
13        190 South LaSalle Street - Suite 3700
14        Chicago, Illinois 60603
15        (312) 499-0198
16        Email: tealberty@duanemorris.com
17   BY:  TIFFANY ALBERTY, ESQUIRE
18             (Appearing via Zoom)
19
20   ALSO PRESENT:
21        SILVIO FACCHIN, Legal Video Specialist
22        Esquire Deposition Solutions
23
24
25

**Page 4**

1        CHARISE JONES
2    P R O C E E D I N G S
3        THE LEGAL VIDEO SPECIALIST:  This is
4    the media labeled number one in the video
5    recorded deposition of Charise Jones in the
6    matter of Keith Fischer, et al. versus
7    Government Employee Insurance Company, doing
8    business as GEICO.
9        This deposition is being taken in New
10   York City, New York on August 12, 2024.  My
11   name is Silvio Facchin, I am a certified
12   legal video specialist; the court reporter is
13   Kim Brantley, and we're both representing
14   Esquire Deposition Solutions.
15       We are now going on the record.  The
16   time is 9:53 a.m.
17       Counsel will state their appearances
18   for the record.
19       MR. SLOTNICK:  Good morning.  Greg
20   Slotnick of Dwayne Morris for defendant
21   GEICO.
22       MS. JEAN:  Sabine Jean, Otten & Golden,
23   for plaintiff -- for named plaintiff Charise
24   Jones.
25       THE LEGAL VIDEO SPECIALIST:  Will the



CHARISE JONES
FISCHER V. GEICO

August 12, 2024
145–148

Page 145

CHARISE JONES

1
2        Do you know whether any investigators
3   outside of region two were ever approved to work
4   more than 38.75 hours in a week?
5        A.   I have no knowledge of that.
6        Q.   Do you know if any investigators
7   outside of New York were ever approved to work
8   38.75 hours per week?
9        A.   I don't know that.
10       Q.   So in the second sentence of paragraph
11  nine where it says, "My supervisor frequently
12  reiterated to me and other special investigators
13  there was no approved overtime for completing
14  regular case work, and that if it was offered
15  GEICO would let the special investigators know,"
16  where did that conversation take place?
17       A.   That, again, same means would either be
18  phone or Webex, meeting her.
19       Q.   And when you say "frequently," how
20  frequently are you talking about?
21       A.   I don't know how frequent.  I really
22  don't.
23       Q.   And those conversations would have been
24  by phone or Webex you said?
25       A.   Correct.

Page 146

CHARISE JONES

1
2        Q.   Was anyone else in those conversations?
3        A.   Sometimes when we had section meetings
4   it would come up, and it would be everyone in her
5   section.
6        Q.   Who was in her section?
7        A.   Jeff Lewonka, myself, Anthony
8   DeStefano, Jessica Sheppard, Mario Demaeo -- it's
9   D-e-m-a-e-o -- Marie Butler.  And I don't remember
10  the other ones at the time.
11       Q.   And what do you mean by "regular case
12  work"?
13       A.   Meaning if it wasn't something specific
14  that they needed the overtime for, like a special
15  project.
16       Q.   Like what type of job responsibilities
17  would you say constitutes regular case work?
18       A.   The everyday cases that we got that
19  were submitted to us on a daily basis.
20       Q.   So those would be part of your general
21  responsibilities as an investigator?
22       A.   Correct.
23       Q.   So in paragraph ten, on the same page,
24  where it says, "In approximately February or March
25  2022, prior to my promotion to being a trainer, I

Page 147

CHARISE JONES

1
2   attempted to submit time for approximately 1.5
3   hours that I worked above 38.75 hours in the week,
4   even though I'd actually worked more hours.
5        "After my supervisor reviewed the
6   request, she asked me who approved the overtime
7   and then required me to spend a significant amount
8   of time writing a report to justify the additional
9   pay from my regular caseload.
10       "I had to detail at length in this
11  report the cases I worked on during the pay period
12  and what tasks I completed.
13       "Writing this took me at least two
14  hours, and it dissuaded me from submitting further
15  requests to be paid for hours above 38.75 per work
16  week."
17       Do you recall that instance?
18       A.   Yes.
19       Q.   And where did that conversation take
20  place?
21       A.   That was I believe through Webex.
22       Q.   Was it just you and April the call?
23       A.   Yes.
24       Q.   To one else was present?
25       A.   No.

Page 148

CHARISE JONES

1
2        Q.   And when you submit -- strike that.
3        When did you submit the report that
4   you're referring to here?
5        A.   She wanted it submitted the next day
6   for the manager to approve it.
7        Q.   And who was the manager?
8        A.   Bill Newport.
9        Q.   How did you submit it?
10       A.   I sent an email.
11       Q.   Who did you send the email to?
12       A.   Her, April.
13       Q.   Was anyone copied on that email?
14       A.   No.
15       Q.   And were your overtime hours for that
16  week approved?
17       A.   Yes.
18       Q.   So why did you -- why do you believe
19  that that dissuaded you from future requests to be
20  paid above 38.75 hours per work week?
21       A.   Because it -- the way it was -- the way
22  she reprimanded me on putting it in, saying that
23  there was nobody to approve it, and "You can't
24  just work the overtime," and she wanted to know
25  why I didn't ask somebody, and I proceeded to let



CHARISE JONES
FISCHER V. GEICO

August 12, 2024
149–152

Page 149

CHARISE JONES

1  her know that nobody was there.  All the
2  supervisors were out for the day.  The manager was
3  out.  And I said, "I worked it, so I put it in."
4       And then she told me that in order for
5  me to get approved for it, I had to write down
6  every single case that I worked, what I did, the
7  time I did it, and why I needed to work that
8  amount of hours overtime.
9       And I -- it was just time consuming.
10  That took more time out of my day during my work,
11  of which she made it a big deal to do it, and then
12  after it was approved, it was like no big deal.
13  "Okay, it's approved.  No problem."
14       Q.  And you submitted only 1.5 five
15  hours --
16       A.  Mm-hmm.
17       Q.  Is that correct?
18       A.  Correct.  And that's what persuaded me,
19  because at that point I was just like, just forget
20  the time, then.  Don't pay me for that 1.5 if
21  you're going to make me go through hoops for it.
22       Q.  But did you -- strike that.
23       Is it your testimony that you actually
24  worked more than 1.5 hours that week?

Page 150

CHARISE JONES

1       A.  Yes.
2       Q.  So why didn't you include the rest of
3  that time in the request?
4       A.  Because it was persuaded -- it was the
5  way she was making me feel.  I just didn't want to
6  put in any other time.
7       And when I did submit what I did, you
8  can obviously see that it was more than the 1.5.
9  I only put in the 1.5, but she can definitely see
10  by the documentation that I put on there what I
11  did, where I went, and why I needed the time that
12  it was more than that.
13       Q.  But you didn't submit for the time you
14  actually worked, correct?
15       A.  No, because I knew it was going to be a
16  hassle just for -- just the amount that I put in
17  was already a hassle, that I wasn't going to go
18  any -- going to put in anything further.
19       Q.  Did April tell you not to put in for
20  the additional time?
21       A.  She didn't want me to put in for the
22  original time, never mind the additional time,
23  because she said it wasn't approved.
24       Q.  But when you were told to submit this

Page 151

CHARISE JONES

1  report to April, did she tell you not to submit it
2  for all of your time worked?
3       A.  No, because I already submitted my
4  Workday time, so it was only her to approve the
5  amount that I've already submitted.
6       So she said that I had to write up this
7  report to just justify what I already put in.
8       Q.  Okay, and the original amount that you
9  had already put in, that only included the 1.5
10  hours?
11       A.  Correct.
12       Q.  And do you recall if you received pay
13  at time and a half for those hours you submitted?
14       A.  No, it was up -- it was still within
15  the forty hours.  So I was still getting straight
16  time.
17       Q.  And what other times did you ask to
18  work overtime hours?
19       A.  When -- again when my workload was
20  building up and I had a lot of cases, I would say,
21  "Is there any overtime available?"  It was always
22  "No.  If we have any, we'll let everybody know.
23  We'll put an email out."
24       I'm like, well, you know, when I would

Page 152

CHARISE JONES

1  go to Brooklyn, or all the windshield time that
2  took up hours, or there was an accident, or there
3  was traffic, and you're putting in almost your
4  entire day of your 7.75 in the car, and then
5  coming home and having to write up a report, you
6  know, it was just told, "Listen, take it off
7  another day," or "Work around it."
8       Q.  Did you ever make any formal complaints
9  about this unpaid time?
10       MS. JEAN:  Objection.
11       THE WITNESS:  No.
12  BY MR. SLOTNICK:
13       Q.  Why not?
14       A.  I thought, you know, what I was doing,
15  telling my supervisor, and, you know, justifying
16  it where it went to the manager, I thought it
17  would be enough.
18       Q.  If you go back to paragraph eight on
19  page three, do you see that?
20       A.  Yes, eight.
21       Q.  It says, "As a special investigator,
22  starting from 2016 to my promotion to trainer in
23  approximately March 2022 I started work between
24  7:00 a.m. and 7:30 a.m. and ended my day between



CHARISE JONES
FISCHER V. GEICO

August 12, 2024
297–300

---

**Page 297**

CHARISE JONES

1
2                        I N D E X
3    DEPOSITION OF CHARISE JONES
4    EXAMINATION BY:                        PAGE:
5        Mr. Slotnick                      5, 292
6        Ms. Jean                            275
7
8
9            INDEX OF DEPOSITION EXHIBITS:
10   JONES EXHIBITS:                        PAGE:
11   Jones Exhibit 1. Notice of Deposition      11
12   Jones Exhibit 2. Employee handbook        101
13   Jones Exhibit 3. Training history log     109
14   Jones Exhibit 4. Employment Contents
15   From the GEICO Human Resources Associate
16   Handbook                                  115
17   Jones Exhibit 5. Charise Jones Declaration 134
18
19   Jones Exhibit 6. Answers to Interrogatories 176
20
21   Jones Exhibit 7. Second Amended Collective
22
23   and Class Action Complaint                224
24
25       (Exhibits attached to original transcript.

---

**Page 298**

CHARISE JONES

1
2           ERRATA SHEET FOR THE TRANSCRIPT OF:
     Case Name: Keith Fischer, et al. vs. GEICO
3    Dep. Date: August 12, 2024
     Deponent:  Charise Jones
4
               CORRECTIONS:
5    Pg.  Ln.  Now Reads  Should Read  Reason
6    ____ ____ _____ _____ _____
7    ____ ____ _____ _____ _____
8    ____ ____ _____ _____ _____
9    ____ ____ _____ _____ _____
10   ____ ____ _____ _____ _____
11   ____ ____ _____ _____ _____
12   ____ ____ _____ _____ _____
13   ____ ____ _____ _____ _____
14   ____ ____ _____ _____ _____
15   ____ ____ _____ _____ _____
16   ____ ____ _____ _____ _____
17              _____
                     Signature of Deponent
18
19   SUBSCRIBED AND SWORN BEFORE ME
20   THIS____DAY OF_____, 2024
21   _____
22
23      (Notary Public)
24
25   MY COMMISSION EXPIRES: _____

---

**Page 299**

CHARISE JONES

1
2           ACKNOWLEDGEMENT OF WITNESS
3        I, CHARISE JONES, do hereby acknowledge
4    that I have read and examined the foregoing
5    testimony, and the same is a true, correct and
6    complete transcription of the testimony given by
7    me, and any corrections appear on the attached
8    Errata sheet signed by me.
9    _____  _____
10      (DATE)               (SIGNATURE)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

**Page 300**

CHARISE JONES

1
2           C E R T I F I C A T E
3    STATE OF NEW YORK   )
4                        : Ss.
5    COUNTY OF NEW YORK  )
6        I, Kim M. Brantley, Shorthand
7    Reporter, and Notary Public within and for the
8    State of New York, do hereby certify:
9        That CHARISE JONES, the witness whose
10   deposition is hereinbefore set forth, was duly
11   sworn by me and that such deposition is a true
12   record of the testimony given by the witness.
13       I further certify that I am not related
14   Toni of the parties to this action by blood or
15   marriage, and that I am in no way interested in
16   the outcome of this matter.
17       IN WITNESS WHEREOF, I have hereunto set
18   my hand this 13th day of August, 2024.
19
20   *Kim M. Brantley*
21       Kim M. Brantley
22
23
24   My Commission expires May 31, 2026.
25

---

