# Exhibit 4

Page 1

```
 1   UNITED STATES DISTRICT COURT
 2   EASTERN DISTRICT OF NEW YORK
     ----------------------------------X
 3   KEITH FISCHER, MICHAEL O'SULLIVAN,
     JOHN MOESER, LOUIS PIA, THOMAS
 4   BARDEN, CONSTANCE MANGAN, and
     CHARISE JONES, individually and on behalf
 5   of all others similarly situated,
 6            Plaintiffs,
 7                           Case No.:
                               2:23 Civ. 2848
 8                             (GRB) (ARL)
          -against-
 9
     GOVERNMENT EMPLOYEES INSURANCE
10   COMPANY D/B/A GEICO,
11            Defendants.
     ----------------------------------X
12
13
     DEPOSITION of MARGARET A. FISCHER
14
15
             December 19, 2024
16
17         New York, New York
18
19
20
21
22   Reported By:
23   Marina Dubson
24   Job #: J12144278
25
```

Page 2

```
 1
 2
              DATE: December 19, 2024
 3
              TIME: 10:00 a.m.
 4
 5
 6        DEPOSITION of MARGARET A. FISCHER, an
 7   opt-in Plaintiff herein, taken by the
 8   Defendant, pursuant to Federal Rules of
 9   Civil Procedure, and Notice, held at the
10   Duane Morris LLP, 1540 Broadway, 14th
11   Floor, New York, New York 10036, at the
12   above-mentioned date and time, before
13   MARINA DUBSON, a Notary Public of the State
14   of New York.
```

Page 3

```
 1   APPEARANCES:
 2
 3   OUTTEN & GOLDEN, LLP
     Attorney for Plaintiffs
 4   685 Third Avenue, 25th Floor,
     New York, New York 10017
 5   (212) 245-1000
     BY: SABINE JEAN, ESQ.
 6      Sjean@outtengolden.com
 7      ZARKA DSOUZA, ESQ.
        Zdesouza@outtengolden.com
 8
 9
10   DUANE MORRIS, LLP
     Attorney for Defendant
11   1540 Broadway, 14th Floor,
     New York, New York 10036
12   (212)471-1856
     BY: GREG TSONIS, ESQ.
13   Gtsonis@duanemorris.com
14
15
     Gil Peretz, Shereck Video, videographer,
16
```

Page 4

```
 1        IT IS HEREBY STIPULATED AND AGREED,
 2   by and between the attorneys for the
 3   respective parties, as follows:
 4
 5   THAT all objections, except as to the form
 6   of the questions, shall be reserved to the
 7   time of the trial;
 8
 9   THAT the within examination may be signed
10   and sworn to before any Notary Public with
11   the same force and effect as if signed and
12   sworn to before the Court;
13
14   THAT filing of the original transcript of
15   the examination is waived.
```



Page 173

1      M. A. Fischer
2   Q.   Thank you.
3        It then continues in the third
4   sentence:  A nonexempt associate who feels
5   he/she did not receive pay for all his/her
6   hours worked and an exempt or salaried
7   nonexempt associate who feels his/her pay
8   incorrectly reflects a deduction for an
9   absence should contact his or her
10  supervisor, local human resources manager,
11  or corporate human resources.
12       Did I read that right?
13  A.   Yes.
14  Q.   All right.  Did you understand
15  that, if you had -- if you felt you didn't
16  receive pay for all the hours that you
17  worked, that you could contact your
18  supervisor, local human resources manager,
19  or corporate human resources?
20  A.   Yes.
21  Q.   All right.  Did you also
22  understand as a Geico associate that Geico
23  maintains a Berkshire Hathaway ethics line?
24  A.   Yes.
25  Q.   What's the purpose of the

Page 174

1      M. A. Fischer
2   Berkshire Hathaway ethics line?
3   A.   I believe it was to report any
4   kind of problem that you had.
5   Q.   All right.  Would that include
6   a problem of not being compensated for all
7   time worked?
8   A.   It could be, yeah.
9   Q.   Okay.  Did you ever try to call
10  the Berkshire Hathaway line?
11  A.   No.
12  Q.   You would be able to call the
13  line if you wanted to, though, right?
14  A.   Correct.
15  Q.   Did you ever try to call
16  corporate human resources?
17  A.   No.
18  Q.   And I'll preface this.  I'm
19  talking about being compensated for time
20  that you're alleging that you worked.
21       Okay?
22       Did you ever try to contact
23  Geico corporate human resources?
24  A.   No.
25  Q.   Did you ever try to contact

Page 175

1      M. A. Fischer
2   Geico local human resources manager?
3   A.   No.
4   Q.   You had the ability to contact
5   Geico's corporate human resources, right?
6   A.   Yes.
7   Q.   You had the ability to contact
8   Geico's local human resources manager?
9   A.   Yes.
10  Q.   It also says you could contact
11  your supervisor, correct?
12  A.   Yes.
13  Q.   Did you ever contact your
14  supervisor?
15  A.   We discussed overtime in
16  meetings just in passing, like, everybody
17  knew every -- you know, when we were
18  working.
19  Q.   Okay.  Let's be more specific
20  about that.
21       Which supervisor are you
22  talking about?
23  A.   I don't know.  Maybe Danielle.
24  I don't know.  But in general, when you
25  would have a group meeting, you know, it

Page 176

1      M. A. Fischer
2   would -- you know, people were working
3   more.  There was a lot of work to be done.
4   Q.   Would you participate in
5   meetings only with major case or with other
6   job titles within SIU?
7   A.   Mainly with major case.
8   Q.   How many meetings would you
9   have?
10  A.   Maybe one a month.
11  Q.   Was everybody present in those
12  meetings, meaning field, major case, and
13  inside major case?
14  A.   No, just my unit.
15  Q.   Did everybody in your unit --
16  well, strike that.
17       I think you said earlier, at a
18  certain point they hired 12 new people, and
19  there was a total of about 18?
20  A.   Yes.
21  Q.   Did those 18 people report to
22  the same supervisor?
23  A.   Two supervisors.
24  Q.   Who was the other supervisor?
25  A.   Katherine -- what's



Page 177
1          M. A. Fischer
2   Katherine's -- Cavallo and Kristin Slack.
3       Q.   Okay.  So, you would be a part
4   of meetings that happened with your peers
5   that reported to Kristin Slack?
6       A.   Yes.
7       Q.   Would you be a part of meetings
8   for your peers that reported to Kristen
9   Cavallo [sic?
10      A.   Katherine.
11      Q.   Katherine Cavallo.  Apologies.
12      A.   Yes, they would put us -- at
13  that point, I believe that it was all
14  together.
15      Q.   Okay.  So, that was, I guess --
16  my question was:  Would the two teams have
17  separate meetings?  Or would it be one big
18  group meeting?
19      A.   One big group meeting when it
20  was two teams, I believe, best I can
21  remember.  It wasn't that long.
22      Q.   That happened approximately
23  once a month -- once a month, you said?
24      A.   I would think so, yeah.
25      Q.   Where did they take place?

Page 178
1          M. A. Fischer
2       A.   In one of the conference rooms,
3   I believe, to the best that I can remember.
4       Q.   Okay.  Would people that were
5   assigned out of the New Jersey office
6   participate?
7       A.   No.
8       Q.   What would typically be
9   discussed in these meetings?
10      A.   Any changes that were going on,
11  trends that were happening, expectations,
12  any updates, any news, things like that.
13      Q.   Would individual investigators,
14  like, present during this meeting?  So, I
15  guess was it interactive amongst the whole
16  group?  Or was it more of a download from
17  the supervisors?
18      A.   It would -- the supervisor
19  would lead, and then people would add if
20  they're asked for questions.
21      Q.   Would the SIU manager
22  participate in these meetings?
23      A.   Once in a while.
24      Q.   If you had to estimate, how
25  frequently?

Page 179
1          M. A. Fischer
2       A.   Every few months.
3       Q.   Okay.  During these meetings,
4   were there ever concerns about unpaid
5   overtime being raised?
6       A.   No.
7       Q.   No investigator you ever heard
8   raised a concern to a supervisor about
9   unpaid overtime?
10      A.   Not about unpaid overtime.
11      Q.   Am I understanding correctly
12  that some people raised concerns about
13  having to work overtime?
14      A.   That we did work overtime.
15      Q.   Okay.  What was the concern
16  that you raised or that others raised?
17      A.   There was a lot of work that
18  had to be done.  It takes time to keep
19  current.
20      Q.   Okay.  So, was the issue --
21  well, strike that.
22           Was it you that raised that
23  issue or others?
24      A.   Say it again.
25      Q.   Was it you that brought that up

Page 180
1          M. A. Fischer
2   and raised that issue?  Or was it others?
3       A.   No.  It would just be as part
4   of a discussion.
5       Q.   So, there would be a discussion
6   about workload generally is what I'm
7   understanding?
8       A.   Workload, yes.
9       Q.   Okay.  So, you and other
10  investigators would have discussions with
11  the supervisor about your workload
12  generally?
13      A.   Yes.
14      Q.   Okay.  During the course of
15  those discussions, you didn't inform your
16  supervisor that you were working overtime
17  and not logging it into Workday; is that
18  correct?
19      A.   Correct.
20           MS. DSOUZA:  Objection.
21  BY MR. TSONIS:
22      Q.   And during those discussions,
23  your supervisor didn't instruct you to work
24  overtime and not log it into Workday,
25  correct?



```
                                    Page 297
 1               M. A. Fischer
 2          E X H I B I T S
 3
 4  DEFENDANT EXHIBITS
 5
 6  EXHIBIT    EXHIBIT                    PAGE
 7  NUMBER     DESCRIPTION
 8  1          interrogatories            79
 9  2          Workday profile            153
10  3          human resources            167
11             associate handbook
12  4          Excel spreadsheet          200
13  5          2017 self-appraisal        213
14  6          Excel spreadsheet          227
15  7          the operative complaint    233
16  8          interrogatories            258
17  9          e-mail chain               270
18
19
20      (*Exhibits attached to transcript.)
21
22             (Cont'd next page.)
23
24
25
```

```
                                    Page 298
 1               M. A. Fischer
 2             I N D E X
 3
 4  EXAMINATION BY                         PAGE
 5  MR. TSONIS                             7, 287
 6  MS. DSOUZA                             282
 7
 8
 9    INFORMATION AND/OR DOCUMENTS REQUESTED
10  INFORMATION AND/OR DOCUMENTS          PAGE
11  BY MR. TSONIS:
12  1. Request to preserve notes          42
13  2. Request for notes                  43
14  BY MS. DSOUZA:
15  3. Request for e-mails                292
16  4. Request for swipe card activity    293
17     as well as SICM data
18  5. Request for yearly goals           293
19
20
21       QUESTIONS MARKED FOR RULINGS
22  PAGE LINE QUESTION
23  (None)
24
25
```

```
                                    Page 299
 1               M. A. Fischer
 2          C E R T I F I C A T E
 3
 4  STATE OF NEW YORK      )
                           :
 5  COUNTY OF RICHMOND     )
 6
 7      I, MARINA DUBSON, a Notary Public for
 8  and within the STATE OF NEW YORK, do hereby
 9  certify:
10      That the witness whose examination is
11  hereinbefore set forth was duly sworn and
12  that such examination is a true record of
13  the testimony given by that witness.
14      I further certify that I am not
15  related to any of the parties to this
16  action by blood or by marriage and that I
17  am in no way interested in the outcome of
18  this matter.
19      IN WITNESS WHEREOF, I have hereunto
20  set my hand this 19th day of December 2024.
21
22
23      _____
              MARINA DUBSON
24
25
```

```
                                    Page 300
 1           ERRATA SHEET
 2  WITNESS NAME: MARGARET. A FISCHER
 3  PAGE  LINE(s)      CHANGE         REASON
 4  ____|_____|  _____|_____
 5  ____|_____|  _____|_____
 6  ____|_____|  _____|_____
 7  ____|_____|  _____|_____
 8  ____|_____|  _____|_____
 9  ____|_____|  _____|_____
10  ____|_____|  _____|_____
11  ____|_____|  _____|_____
12  ____|_____|  _____|_____
13  ____|_____|  _____|_____
14  ____|_____|  _____|_____
15  ____|_____|  _____|_____
16  ____|_____|  _____|_____
17  ____|_____|  _____|_____
18  ____|_____|  _____|_____
19  ____|_____|  _____|_____
20  ____|_____|  _____|_____
21
22  ---------------------
    MARGARET. A FISCHER
23
    SUBSCRIBED AND SWORN BEFORE ME
24  THIS ____ DAY OF _____, 20___.
25  _____  _____
    (NOTARY PUBLIC)   MY COMMISSION EXPIRES:
```

