# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | No. 23 Civ. 02848 (GRB) (ARL)<br><br>**DECLARATION OF CATHERINE O'NEIL IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION** |

I, Catherine O'Neil, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I was asked to review GEICO's Exhibit 65, Declaration of Matthew R. Thompson. In preparing this document I relied on GEICO's Exhibit 65, as well as the documents referred to in my original declaration in support of class certification (Pls.' Ex. 62, ¶ 3), and the hours estimates of 24 GEICO investigators that submitted declarations in this matter. *See* Docket Entries 56-1 to 56-11; 56-13 to 56-25.

2. Mr. Thompson's declaration does not undermine my confidence in being able to create a damages model in this case like that proposed in my prior declaration (Pls. Ex. 62). As discussed there, I am proposing to use GEICO's datasets (SICM, payroll, etc.) and Plaintiffs' testimony to create a "linear regression" analysis that will estimate approximate time costs for each kind of investigative activity, which can then be used to calculate average hours worked and damages for all class members.

1

3. In the following statements, any references to paragraphs refer to the corresponding numbered paragraphs in GEICO's Exhibit 65 (and not my prior declaration) unless otherwise indicated.

**Connecting Hours Worked to Data**

4. Mr. Thompson questions how I could estimate hours worked that were not reported precisely based on the tasks completed and logged in GEICO's work systems. Although I do not have complete datasets yet, the examples I have seen indicate that such a model is perfectly feasible. The model will reasonably correlate work tasks tracked by GEICO and estimated hours worked. Although it's true that my model doesn't use granular information showing precisely how many hours any investigator worked in a given week – because that data does not exist – it will still do a good job of estimating the amount of time different kinds of cases or tasks take on average because we will have thousands of person-months of data, and the narrow limits of the inputs and the outcome variable are ideal for the methodology of linear regression to have good estimates with comparatively small error terms.

5. The Special Investigation Case Management (SICM) data fields (e.g., new cases assigned, closed cases, investigative events, etc.) have a measurable relationship to hours worked. These are all metrics that were categorized by GEICO as being distinct and meaningfully different in nature. It is reasonable to assume they were essentially binned by difficulty, on average, and as such some activities will take longer on average than others. In any case, even if a category consists of activities of variable time, the average length of time for a type of activity is a well-defined and statistically valid statistic. That is to say, if on average it takes 3 hours to perform a certain investigative activity, but sometimes it takes 2 hours and

2

sometimes 4, it still makes sense to "count it" as a 3-hour activity, knowing things will even out over many weeks and months of activity.

6. Mr. Thompson provides unreasonably stark examples (such as paragraph 55) to try to show how this model would not be reliable. His example assumes that one class member is consistently three times slower than another. Seeing as productivity metrics are how investigators are evaluated, I doubt that such an employee would last very long in the job if they were in fact three times slower than others. Indeed, the entire point of GEICO's productivity measurements seems to be to keep people very in line with each other. In that sense, by connecting hours worked to productivity metrics, I am merely treating the investigators like GEICO did.

7. As I stated in my deposition, I intend to use efficiency modifications if the data suggests this will lead to a more accurate model. This can be done with a single formula; it does not require individual interviews and is not "hand-tuning" but the application of a formula. Specifically, I would seek to estimate how much investigators worked per week on average during baseline (let's call this estimate the "Baseline"). If the regression estimated they did 58 hours' worth of work on average even though the Baseline is 52, over a time period when the quantity of work remained steady, that likely means they consistently were more productive. That person would have an efficiency factor of 58/52. Likewise, if someone consistently did 47 hours' worth of work in the baseline period on average, they'd have an efficiency factor of 47/52. These factors could be applied outside of the baseline period. For example, if someone had an efficiency factor of 0.90, they could be assumed to have worked 52 hours during the baseline period but be a slow worker. In other words, we would be effectively multiplying their inferred work hours by $1/0.90 \approx 1.11$. Outside of the baseline period they could be assumed to be

3

similarly inefficient, so we could inflate those inferred hours by $1/0.90 \approx 1.11$ as well in order to calculate overtime. Another example is if someone was more efficient in the baseline period, and had an efficiency factor of 1.2, then we would effectively scale down their inferred hours by $1/1.2 \approx 0.833$, and likewise we could continue to scale down their inferred hours outside of the baseline period by the same factor.

8. The fact that these workers were measured against each other and given a percentile of productivity suggests that GEICO thought their jobs were commensurate. To bolster the model's reliability, we could check the representative Plaintiffs' percentile productivity scores to make sure the Plaintiffs are fairly representative of the group (i.e., sufficiently random).

**Using Plaintiffs' Testimony**

9. In addition to Plaintiffs' estimated hours testimony, I can also use timestamp data to help corroborate hours worked. While I agree that timestamp data will not indicate total time worked, by seeing how the timestamps occurred, we could draw inferences about off-the-clock work. At minimum, we know that if there was a time stamp at 9:00 pm, the investigator was doing work at 9:00 pm. In addition, if timestamps piled up on Monday mornings (versus other weekday mornings) we could infer work was done over the weekend. These are not the data that the model is based on – but they can be used as a check to confirm that the model is working correctly.

10. When it comes to calculating damages, my model can be built so that the number of hours shown at trial can dictate projected damages. For example, if Baseline implies an average of 10 hours of unpaid overtime per week, but the jury concludes that the testimony, after cross-examination, proves only 7 hours of unpaid overtime per week, the damages model can be

4

calibrated to the jury's decision. This would look like a sliding bar in the model that could be move up or down. Moving the bar would adjust the outputs of hours imputed to each class member.

**Using a Linear Regression Analysis**

11. Mr. Thompson appears to question the use of a linear regression in this case, but that is without basis. He raises the possibility that there may be no statistically-robust relationship between hours worked and the amounts and types of investigative activities undertaken; but that defies common sense, and regression analysis offers a safeguard against this scenario anyway. Goodness-of-fit statistics can help me characterize the degree to which my model explains the variation in stated hours worked. Linear regressions are a standard approach to inferring relationships between variables and outputs. In this case we have types of cases or types of activities, which take variable amounts of time, and we have the hours estimate. This is an absolutely textbook case where linear regression applies. It's the most generally accepted approach to this question that practitioners use, and has all sorts of reliability measurements associated to it. Mr. Thompson's argument that it is meaningless to talk about the average amount of time a task takes just because the amount of time varies is without statistical basis.

12. GEICO's graph in paragraph 29 helps demonstrate my point. It shows what I was hoping to be true: that the average monthly hours worked and cases closed (between January 2022 and August 2022) are all within a very tight range. For example, it looks like the average number of cases closed are all within a range of 28-35 or so, which is indeed quite tight, and shows that my regression approach will likely be effective.

5

**Model Integrity**

13. Mr. Thompson makes a number of claims about the integrity of my proposed model. None are cause for concern.

14. I am not concerned with the potential for "biased" hours estimates. While it is true that people might estimate more hours than they actually worked, the model does not rely on testimony alone. In fact, GEICO's data does a good job of avoiding employees "gaming the system" by tracking the particulars of each task. After all, gaming happens when poor substitute variables are used instead; but in this case, excellent variables – direct measurements of the underlying work product – are being used. Or you might say there are no substitute variables at all, just a reporting of actual tasks being completed, which can (and I believe were) verified by managers. In other words, GEICO has meticulously tracked its employees' work tasks (just not their hours), which will make building a reliable model fairly straightforward.

15. GEICO misquotes my deposition testimony when it says I plan on "hand tun[ing]" the model to match the Plaintiffs' testimony. *See* Opp. Ex. 65, ¶ 13. I never suggested "hand tuning" on the individual worker level. I was suggesting hand tuning the *coefficients*, i.e., the amount of time a task requires on average, to account for changes in work process, such as during COVID or before there was a tool available to help investigators review social media posts. In that case, we would hand-tune the *parameter* which serves as an estimate of hours for a specific task for *all* employees. That is not the same as "hand tuning" individual damages.

16. In paragraph 41, Mr. Thompson claims that the model is not "precise." That is true in the literal sense. The model will create an approximation, and I am not claiming it will be perfect. But it will provide a reasonable correlation between tasks completed and hours worked (and therefore damages), and will on average be correct. To the extent there is a concern with

6

how "precise" the model can be, I am happy to provide the standard statistics around the error of the regression model, for example goodness-of-fit statistics such as R-squared. In addition, the more data we get from GEICO, the more "precise" the numbers will become.

17. I have never stated that the model cannot exclude individuals who did not work overtime. My model can, and very well might, estimate that a given investigator earned no overtime in a given month. The underlying model is neutral to the question of who worked overtime and uses Baseline as a key input that calibrates the rest of the inferred hours. It is only after we infer the hours that we can tell if a particular investigator can be inferred to have worked overtime and how much, given the data we have from GEICO and Plaintiffs' representative testimony.

Dated: June 11, 2025
      Cambridge, MA

_____
Catherine O'Neil

7