# EXHIBIT K

```
 1    UNITED STATES DISTRICT COURT

 2    EASTERN DISTRICT OF NEW YORK
      ---------------------------------------X
 3    KEITH FISCHER, MICHAEL O'SULLIVAN,
      JOHN MOESER, LOUIS PIA, THOMAS
 4    BARDEN, CONSTANCE MANGAN, and
      CHARISE JONES, individually and on behalf
 5    of all others similarly situated,

 6             Plaintiffs,

 7                                  Case No.:
                                    2:23 Civ. 2848
 8                                  (GRB) (ARL)
            -against-
 9
      GOVERNMENT EMPLOYEES INSURANCE
10    COMPANY D/B/A GEICO,

11             Defendants.
      ---------------------------------------X
12

13
      DEPOSITION of MARGARET A. FISCHER
14

15
            December 19, 2024
16

17       New York, New York

18

19

20

21

22    Reported By:

23    Marina Dubson

24    Job #: J12144278

25
```



```
            DATE: December 19, 2024

            TIME: 10:00 a.m.


     DEPOSITION of MARGARET A. FISCHER, an
opt-in Plaintiff herein, taken by the
Defendant, pursuant to Federal Rules of
Civil Procedure, and Notice, held at the
Duane Morris LLP, 1540 Broadway, 14th
Floor, New York, New York 10036, at the
above-mentioned date and time, before
MARINA DUBSON, a Notary Public of the State
of New York.
```



```
 1   APPEARANCES:

 2


 3   OUTTEN & GOLDEN, LLP
     Attorney for Plaintiffs
 4   685 Third Avenue, 25th Floor,
     New York, New York 10017
 5   (212) 245-1000
     BY: SABINE JEAN, ESQ.
 6        Sjean@outtengolden.com

 7        ZARKA DSOUZA, ESQ.
          Zdesouza@outtengolden.com
 8


 9


10   DUANE MORRIS, LLP
     Attorney for Defendant
11   1540 Broadway, 14th Floor,
     New York, New York 10036
12   (212)471-1856
     BY: GREG TSONIS, ESQ.
13   Gtsonis@duanemorris.com

14


15
     Gil Peretz, Shereck Video, videographer,
16

17

18

19

20

21

22

23

24

25
```



1         IT IS HEREBY STIPULATED AND AGREED,
2    by and between the attorneys for the
3    respective parties, as follows:
4
5    THAT all objections, except as to the form
6    of the questions, shall be reserved to the
7    time of the trial;
8
9    THAT the within examination may be signed
10   and sworn to before any Notary Public with
11   the same force and effect as if signed and
12   sworn to before the Court;
13
14   THAT filing of the original transcript of
15   the examination is waived.
16
17
18
19
20
21
22
23
24
25



```
1           M. A. Fischer
2        THE REPORTER:  Are you ordering
3   a copy of this transcript?
4        MS. JEAN:  Yes, copy.
5        MR. TSONIS:  Regular turnaround
6   final, no rough.
7                  XXXX
8        THE VIDEOGRAPHER:  Good
9   morning.  We are on the record, and
10  the time now is 10:12 a.m.
11       Today's date is December 19,
12  2024.
13       This is media one in the video
14  deposition of Ms. Margaret Fischer --
15  one second -- Margaret Fischer, in
16  the matter of Government Employee
17  Insurance Company -- I'm sorry.
18       In the matter of Keith Fischer
19  versus Government Employee Insurance
20  Company, index number 2:23 Civ. 2848
21  (GRB) (ARL).
22       My name is Gil Peretz.  I am
23  the legal videographer with Shereck
24  Video in association with Esquire.
25       Today we're at the offices of
```



```
                       M. A. Fischer
 1
 2    Duane Morris, LLC, located at 1540
 3    Broadway on the 14th floor in New
 4    York City, New York.
 5         Would counsel please identify
 6    yourself and state whom they
 7    represent.
 8         MS. DSOUZA:  This is Zarka
 9    Dsouza from Outten & Golden on behalf
10    of plaintiffs.
11         Joining me today is my
12    colleague, Sabine Jean, also from
13    Outten & Golden, also representing
14    the plaintiffs.
15         MR. TSONIS:  Gregory Tsonis
16    from Duane Morris, LLC, on behalf of
17    defendant Geico.
18         THE VIDEOGRAPHER:  Thank you.
19         The court reporter with us
20    today is Marina Dubson with Esquire.
21         Will the court reporter please
22    swear in the witness.
23         (Whereupon, the witness was
24    sworn in by the Court Reporter.)
25                   XXXX
```



```
 1                    M. A. Fischer
 2    M A R G A R E T   A.   F I S C H E R,
 3            called as a witness, having been
 4            first duly sworn by a Notary Public
 5            of the State of New York, was
 6            examined and testified as follows:
 7    EXAMINATION
 8    BY MR. TSONIS:
 9            Q.    Good morning, Ms. Fischer.
10            A.    Good morning.
11            Q.    Can you please state and spell
12    your name for the record.
13            A.    It's Margaret, M-A-R-G-A-R-E-T,
14    Fischer, F-I-S-C-H-E-R.
15            Q.    All right.  And have you ever
16    gone by any other names?
17            A.    Peggy.
18            Q.    Peggy.  Any other last names?
19            A.    My maiden name is Meehan,
20    M-E-E-H-A-N.
21            Q.    And, Ms. Fischer, what's your
22    current address?
23            A.    ████████████████████████████████
24    ████████████
25            Q.    So, my name -- as I introduced
```



```
 1                    M. A. Fischer
 2               MS. DSOUZA:  I'd just like
 3       to -- Counsel, could you just wait
 4       for the witness to complete her
 5       answer before you ask the next
 6       question?
 7               MR. TSONIS:  Sure.
 8   BY MR. TSONIS:
 9       Q.    I think you said that you would
10   be assigned cases by your supervisor; is
11   that right?
12       A.    Correct.
13       Q.    Approximately how many cases
14   would you be assigned in a month?
15       A.    I believe four.
16       Q.    Four cases per month?
17       A.    I believe so.
18       Q.    All right.  And what kinds of
19   things would you have to do to investigate
20   those cases?
21       A.    I would have to run background
22   searches.  I would have to run data
23   searches, review billing, review public
24   records, review previous cases through our
25   case system.  I would assign clinic
```



```
 1                   M. A. Fischer
 2   period of time.  They weren't once-and-done
 3   quick cases.
 4        Q.    Sure.
 5        A.    Yeah.
 6        Q.    So, in terms of, you know, the
 7   time it takes to close one of your cases
 8   versus cases handled by either field or
 9   desk investigators, your cases would take
10   substantially longer?
11        A.    Months.
12        Q.    There were some that even
13   lasted years?
14        A.    There could be, yeah.
15        Q.    Okay.  So, I guess, knowing
16   that you referenced having to update, you
17   know, a case every 15 days; is that right?
18        A.    Yes.
19        Q.    All right.  Besides that 15-day
20   requirement, was there any other, you know,
21   timeline you had to meet in terms of
22   entries you had to make in SICM?
23        A.    In the beginning of a case when
24   you opened it, there were -- there was
25   standards of things that needed to be
```



1                  M. A. Fischer
2       A.    As the day would come to an
3    end, I would see what needed to still be
4    accomplished in that day to fulfill my
5    diary, and I would be catching up, making
6    sure that everything was -- that I had to
7    accomplish in that day was done.
8       Q.    Okay.
9       A.    To the best of my ability.
10      Q.    And, I guess, is that things
11   that are -- that you had to do to complete
12   a diary entry that day?
13      A.    Some of it was, yes.
14      Q.    Okay.  So, I guess, you know,
15   if it's due the next day or the day
16   after -- well, step back for a moment.
17            You said the diary sort of
18   entries were every 15 days you had to
19   submit, right?
20      A.    Right.
21      Q.    Is that 15 business days or 15
22   real-time days?
23      A.    I think it was 15 business
24   days.
25      Q.    Okay.  So, essentially, three



```
 1                    M. A. Fischer
 2    half hours a week.
 3         Q.    Okay.  And that includes the
 4    meal period?
 5         A.    Yes.
 6         Q.    All right.  So, we say in
 7    paragraph eight is when, essentially, COVID
 8    started, right?
 9         A.    Yes.
10         Q.    And you write here in the
11    second full sentence:  I was specifically
12    assigned to work on cases of medical fraud,
13    and Geico kept my caseload steady.  So,
14    during this period, my overtime hours
15    slightly decreased.
16               Let me pause there for a
17    second.
18               You were always assigned to
19    work on cases of medical fraud during this
20    time period, right?
21         A.    Correct.
22         Q.    The 2016 to retirement time
23    period?
24               And you're saying Geico kept
25    your caseload steady, right?
```



1                     M. A. Fischer
2        A.    To the COVID time and then they
3    stopped.  We weren't getting new cases.
4        Q.    So, when you say, Geico kept my
5    caseload steady, is what you mean, I was
6    not being assigned new cases?
7        A.    Correct.
8        Q.    Okay.  So, without any new
9    cases being assigned, you were still
10   working overtime, you're saying?
11       A.    Yes.
12       Q.    And that was just from the
13   existing caseload you had?
14       A.    That was also because every day
15   I had to be on at 9:00 a.m.  I had to build
16   my station every morning.  I had to set up
17   my computers, my monitors, my -- get
18   everything set online, ready to go.  I had
19   to be -- 9:00 o'clock, I had to be up and
20   running every morning, so that was time
21   before.  And at the end of my shift, I had
22   to break everything down and -- and also I
23   was working on stuff.  There was stuff I
24   would work extra on.
25       Q.    So, if I'm understanding



```
 1                  M. A. Fischer
 2             MR. TSONIS:  Let's go off the
 3       record and take a break.
 4             THE VIDEOGRAPHER:  We are going
 5       off the record.  The time now is
 6       12:38 p.m.
 7             (Whereupon, a short break was
 8       taken at this time.)
 9             THE VIDEOGRAPHER:  We are back
10       on the record, and the time now is
11       1:34 p.m.
12        Q.    All right, Ms. Fischer.  We
13   were looking at Exhibit 1, your
14   declaration, before we went on lunch.
15             Can you turn to paragraph 9 of
16   your declaration.  So, from December 2016
17   to March 2020, it states that you said your
18   regular hours worked were approximately
19   41.5 to 42 hours per week; and from
20   March 2020 to September 2020, your regular
21   hours worked were approximately 40.75 hours
22   per week.  So, I'll stop there.
23             Is this accurate?
24        A.    Yes, to the best of my memory,
25   yes.
```



1               M. A. Fischer
2       Q.   All right.  So, if you recall,
3   just prior to going on lunch, we were also
4   talking about the COVID timeframe, from
5   March 2020 until the time you retired,
6   right?
7       A.   Uh-huh.
8       Q.   And we were talking about the
9   time that you said you spent setting up and
10  taking down your work station each day?
11      A.   Correct.
12      Q.   Does this incorporate that
13  time?
14      A.   The 40.75, yes, and also other
15  overtime that I would be doing during that
16  time.
17      Q.   Okay.  So, I just want to be
18  clear because I thought you said the
19  opposite before we went to lunch and I just
20  want to make sure that we're right.
21           The 40.75 hours per week, if
22  you were scheduled for 38.75 hours, means
23  two hours additional each work week that
24  you're claiming, right?
25      A.   Yes.



```
 1                  M. A. Fischer
 2        Q.    All right.  Does that two hours
 3   include the 10 to 15 minutes setting up
 4   your workstation and the 10 to 15 minutes
 5   taking down your workstation each day?
 6        A.    Yes.
 7        Q.    Okay.  Whatever time remains,
 8   if I understand you correctly, you're
 9   saying would be other work that you did?
10        A.    Yes.
11        Q.    Now, you say in the rest of
12   that sentence:  And my last regular pay was
13   $41.95 per hour.
14              I'll pause there again.
15              Were you compensated on an
16   hourly rate the entire time you worked as
17   an investigator?
18        A.    Yes.
19        Q.    Was there ever a period of time
20   in which you were paid an hourly rate but
21   the way that your hourly rate was
22   calculated changed?
23        A.    I don't understand.
24        Q.    Sure.  So, was there a period
25   of time where you would not potentially get
```



```
 1                  M. A. Fischer
 2        A.    A lot.
 3        Q.    Okay.  As a major case
 4   investigator, we said that your caseload
 5   did not increase, right?
 6        A.    Correct.
 7        Q.    In fact, your caseload
 8   decreased because you weren't assigned new
 9   cases?
10        A.    Correct.
11        Q.    Okay.  If you continue on in
12   that paragraph, bottom of page 5 going onto
13   page 6, it says:  As a result, to keep up
14   with his escalating workload and Geico's
15   demanding performance metrics, Fischer
16   typically began working at approximately
17   6:00 a.m. and finished his work for the day
18   at approximately 11:00 p.m., accounting for
19   some gaps in his workday for meals and
20   other self-care from March 2020 through
21   April 2020 -- plaintiff Fischer worked
22   between approximately 60 and 75 hours per
23   week in most full workweeks, i.e., weeks
24   with no days lost to holidays or other time
25   off.
```



```
 1            M. A. Fischer
 2        THE VIDEOGRAPHER:  This
 3   concludes the video deposition of
 4   Ms. Margaret Fischer.  The time now
 5   is approximately 4:48 p.m.  We are
 6   off the record.  Thank you, everyone.
 7        (Whereupon, at 4:50 P.M., the
 8   Examination of this Witness was
 9   concluded.)
10
11
                  _____
12                   MARGARET. A FISCHER
13

14   Subscribed and sworn to before me
15   this _____ day of _____ 20____.
16
     _____
17        NOTARY PUBLIC
18
19
20
21
22
23
24
25
```



```
1                   M. A. Fischer
2               C E R T I F I C A T E
3
4    STATE OF NEW YORK        )
                              :
5    COUNTY OF RICHMOND       )
6
7         I, MARINA DUBSON, a Notary Public for
8    and within the STATE OF NEW YORK, do hereby
9    certify:
10        That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14        I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19        IN WITNESS WHEREOF, I have hereunto
20   set my hand this 19th day of December 2024.
21
22
23            _____
                       MARINA DUBSON
24
25
```

