IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,

           Plaintiffs,
  v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

           Defendant.

Case No. 2:23-CV-02848 (SJB) (SLT)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. CATHERINE O'NEIL**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

I. Legal Standard .................................................................................................................. 1

II. What Is At Issue In This Motion? ..................................................................................... 3

      A. The Present Exercise ............................................................................................. 3

      B. The Future Model ................................................................................................. 4

III. Dr. O'Neil's Declaration Testimony Satisfies Rule 702. .................................................. 5

      A. Dr. O'Neil's Declarations Are Based on Sufficient Facts and Data. ..................................................................................................................... 6

      B. Dr. O'Neil's Testimony is Based on Reliable Principles. ...................................... 8

            1. The Present Exercise Will Be Tested. ........................................... 9

            2. The "Theory or Technique" Behind the Present Exercise Can be Subjected to Peer Review When Tested. ....................... 10

            3. The Potential Rate of Error for the Present Exercise is Based on the Data Produced. ....................................................... 10

            4. The Present Exercise's Methodology is Generally Accepted by the Scientific Community. .................................... 11

      C. The Present Exercise Reliably Applies to the Facts of This Case. ........ 11

CONCLUSION ............................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES**

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................................ 2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) .......................................................................................................... 2, 4

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ............................................................................................................. 4

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06 Civ. 5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ................................................ 5

*Bickerstaff v. Vassar College*,
   196 F.3d 435 (2d Cir. 1999) .................................................................................................. 9

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12 Civ. 1831, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ........................................... 11

*Bruno v. Bozzuto's, Inc.*,
   311 F.R.D. 124 (M.D. Pa. 2015) .......................................................................................... 7

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10 Civ. 6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) ......................................... 1, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 8

*Fantasia Distrib, Inc. v. Cool Clouds Distrib. Inc.*,
   693 F. Supp. 3d 335 (E.D.N.Y. 2023) .................................................................................. 7

*Greenbaum v. N.Y.C. Trans. Auth.*,
   No. 21 Civ. 1777, 2022 WL 3347893 (2d Cir. Aug. 15, 2022) ............................................... 3

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
   305 F.R.D. 164 (N.D. Cal. 2015) .......................................................................................... 7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   2542, 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ................................................................. 9

*Lara v. Delta Int'l Mach. Corp.*,
   174 F. Supp. 3d 719 (E.D.N.Y. 2016) .................................................................................. 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................................... 2

*Lytle v. Nutramax Laboratories, Inc.*,
   114 F.4th 1011 (9th Cir. 2024) .................................................................................... 10, 11

*Maurizio v. Goldsmith*,
   No. 96 Civ. 4332, 2002 WL 535146 (S.D.N.Y. Apr. 9, 2002) ................................................. 7

*Pogil v. KPMG L.L.P.*,
   No. 21 Civ. 7628, 2024 WL 1208909 (2024) ......................................................................... 7

*Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*,
   49 F. Supp. 3d 385 (S.D.N.Y. 2014) ........................................................................................ 9

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................................ 2, 5

*Sorto-Romero v. Delta Int'l Mach. Corp.*,
   No. 05 Civ. 5712, 2007 WL 2816191 (2007) ......................................................................... 7

*Toomey v. MillerCoors LLC*,
   86 F. Supp. 3d 202 (E.D.N.Y. 2015) ....................................................................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................................................ 3, 5

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ................................................................................................... 1

*In re Vale S.A. Sec. Litig.*,
   No. 19 Civ. 526, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ............................................ 2, 6

*Young v. Brand Scaffold Servs., LLC*,
   No. 07 Civ. 917, 2009 WL 4674053 (E.D. Tex. Mar. 16, 2009) ............................................. 7

*Zaremba v. Gen. Motors Corp.*,
   360 F.3d 355 (2d Cir. 2004) ................................................................................................... 7

*In re Zyprexa Products Liability Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ..................................................................................... 8

**FEDERAL RULES**

Fed. R. Evid. 702 ............................................................................................................................ 1

# **INTRODUCTION**

The Court should not exclude the declarations of Dr. Catherine O'Neil describing a proposed methodology for calculating classwide damages. Those declarations were offered in support of Plaintiffs' motion for class certification, *see* Docket Entries ("DE") 98-62 ("O'Neil Decl."), 98-142 (O'Neil Reply Decl."), for the limited purpose of satisfying Rule 23. Under the guise of this motion, GEICO attempts to take another bite at the apple to oppose class certification. But its arguments are premature, as they are all oriented toward an anticipated model that has not been built, based on data GEICO has not yet produced. Dr. O'Neil will produce a complete expert report following Phase II (opt-in plaintiff and merits discovery) in Phase III (expert and damages discovery). At that time, GEICO's arguments may be ripe. But they have little weight as applied to the declaration testimony that is before the Court now.

## **I.    Legal Standard**

"Exclusion of expert testimony is 'the exception rather than the rule.'" *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 WL 814074, at *4 (S.D.N.Y. Mar. 17, 2022) (quoting *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 Civ. 7907, 2019 WL 1055527, at *1 (S.D.N.Y. Mar. 6, 2019)). Federal Rule of Evidence 702 states that opinion testimony by a witness with requisite "knowledge, skill, experience, training, or education" is admissible if their knowledge (1) "will help the trier of fact to understand the evidence or determine a fact in issue," (2) is "based on sufficient facts or data," (3) is the "product of reliable principles and methods," and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The role of this inquiry at the class certification stage is unsettled in the Second Circuit. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) ("We need not reach that question here."). Where courts have undertaken the *Daubert* analysis in the Rule 23 context, they have recognized that its scope is "limited to whether or not the expert reports are

1

admissible to establish the requirements of Rule 23." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 471 (S.D.N.Y. 2018) ("our inquiry is guided by the purpose for which the evidence is introduced—establishing the various class certification requirements."). That limitation reflects the Supreme Court's instruction that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). And the purpose of the inquiry is further limited by the Rule 23 factors themselves. Rule 23 does not require a plaintiff to proffer a fully articulated damages model. *See In re Vale S.A. Sec. Litig.*, No. 19 Civ. 526, 2022 WL 122593, at *18 (E.D.N.Y. Jan. 11, 2022) (Bulsara, J.) ("[N]o calculation needs to be performed at certification." (cleaned up)). Rather, a plaintiff need only establish that "a model for determining classwide damages . . . actually measure damages that result from the class's asserted theory of injury. . . ." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Tying these requirements together, expert testimony offered for class certification should be (1) helpful, (2) based on sufficient facts or data, (3) reliable in principle and (4) reliable in application – but the question it must be "helpful" to is whether damages can be fairly attributed to Plaintiffs' theory of liability. If that testimony shows more, *e.g.*, that damages can in fact be *measured* on a classwide basis, that would clearly satisfy predominance, but is not required. *Id.*

2

## II. What Is At Issue In This Motion?

### A. The Present Exercise

A motion under Fed. R. Evid. 702 is fundamentally a motion to strike testimony, and is thus limited to the testimony that is before the Court. *See Greenbaum v. N.Y.C. Trans. Auth.* No. 21 Civ. 1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) ("[D]efendants did not challenge the reliability of plaintiff's expert by filing a motion to strike such evidence pursuant to Rule 702(c) or *Daubert* . . . ."). It is not a generalized ruling about credibility, *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016) ("Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury."), and an adverse finding does not preclude an expert from offering additional testimony at a later date.

Dr. O'Neil's two declarations, DE 98-62, 98-142, outline how Dr. O'Neil would build a mathematical model to assess damages for class members based on data that GEICO has not yet produced. The Court's task on this motion ("The Present Exercise") is to evaluate whether *those two declarations* are admissible to help the Court determine whether damages will be based on Plaintiffs' theory of liability. *See* Part I above. The damages model itself is not yet before the Court, and as Dr. O'Neil explicitly states, she will refine the model as she builds it to make it more precise based on what the data shows. O'Neil Decl. ¶¶ 5 (model will use full dataset produced at later stage of discovery), 6 (noting "the exact details of [the] anticipated report are subject to a review of evidence that will be produced later in the case"); O'Neil Reply Decl. ¶ 16 ("[T]he more data we get, the more "precise" the numbers will become").

The narrowness of The Present Exercise flows down through each of the relevant Fed. R. Evid. 702 factors. The Court must therefore decide whether the declarations are helpful to the Court's task, whether Dr. O'Neil has sufficient facts or data to support her declaration testimony, whether her declaration testimony reflects reliable principles, and whether her testimony applies those principles to the facts of the case.

3

### B. The Future Model

What is *not* at issue on this motion is whether the model Dr. O'Neil proposes to build ("The Future Model") is itself admissible. Not only would that inquiry constitute a "free-ranging merits inquir[y]" that is impermissible at class certification, *Amgen*, 568 U.S. at 466, it would be boxing at shadows. The Future Model has not been built, is not yet before the Court, and cannot be evaluated. When The Future Model is before the Court, another *Daubert* evaluation will be in order. But that is not The Present Exercise.

The Future Model – subject to refinement based on data GEICO has yet to produce – will use a linear regression to correlate the hours testimony of a sample of Plaintiffs with their caseloads and other measures of work quantity that GEICO tracked in its SICM database; this will establish the baseline time costs of the work GEICO required. O'Neil Decl. ¶¶ 5-8. The Future Model will then estimate the hours worked by each Class Member based on the work activities logged in SICM. *Id.* ¶ 9. Hours can then be cross-referenced with recorded absences, multiplied by wage rates, and any overtime already paid can be subtracted to determine damages. *Id.* ¶ 11.

The Future Model, if admitted into evidence after a later *Daubert* analysis, will be presented at trial to meet Plaintiffs' burden to show a "just and reasonable inference" about the extent of their unpaid work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). To preserve GEICO's right to "to come forward with evidence . . . to negative the reasonableness of the interference," *id.*, The Future Model will be built so that the hours associated with the sample testimony can be adjusted up or down to match the jury's findings. O'Neil Reply Decl. ¶ 10. In other words, if the Plaintiffs testify to an average of 10 hours, but GEICO's cross-examination leads the jury to conclude that they only worked an average of 8 hours, The Future Model can be adjusted to impute a correspondingly lower number of hours to

the Class. *Id*. "This would look like a sliding bar in the model that could be move[d] up or down. Moving the bar would adjust the outputs of hours imputed to each class member." *Id.*

GEICO can also contest the reasonableness of the inference by disputing the weight to be given to Dr. O'Neil's model at trial. That is a jury question. *See Tyson Foods*, 577 U.S. at 459 (The reasonableness of an expert's damages model "is the near-exclusive province of the jury" to determine).

But none of that is before the Court. It is presented here only for purposes of distinguishing The Future Model from The Present Exercise.

### III. Dr. O'Neil's Declaration Testimony Satisfies Rule 702.

GEICO does not dispute that Dr. O'Neil is qualified to testify (she is),[1] principally raising arguments about whether she relied on sufficient data and whether The Future Model will be reliable in principle and application. Dr. O'Neil's declarations – the testimony actually before the Court – readily satisfy each of Rule 702's requirements.

Dr. O'Neil's declarations are helpful because they are not "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *Arista Records LLC v. Lime Grp. LLC*, No. 06 Civ. 5936, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011)). Her opinion, in sum, is that The Future Model can be built with sufficient data from GEICO. That testimony is helpful insofar as it helps the Court understand The Future Model with enough detail to conclude that it will not impermissibly measure damages attributable to some other legal theory. *See Roach*, 778 F.3d at 407. In fact, it shows more – that The Future Model will in fact measure damages based on aggregate proof.

GEICO offers a *pro forma* argument that Dr. O'Neil's testimony is not helpful, but this is a thinly disguised effort to argue against class certification. Def.'s Br. 26-28 (arguing that The

---

[1] *See* O'Neil Decl. ¶ 2, and accompanying CV.

5

Future Model will be unhelpful because "[a] model that requires analysis into the individual circumstances of each putative class member cannot calculate damages on a class-wide basis and satisfy Plaintiffs' obligation under Rule 23"). Taking this for what it is – a class certification argument that does not belong in a *Daubert* brief – it should be rejected because (a) it is an argument about The Future Model, not The Present Exercise, and (b) it ignores the real issue in the predominance inquiry, which is whether damages are attributable to Plaintiffs' liability theory. *See* Part II.A above.

      A.      **Dr. O'Neil's Declarations Are Based on Sufficient Facts and Data.**

Dr. O'Neil's declarations rely on sufficient facts and evidence for purposes of The Present Exercise. To evaluate whether The Future Model can be built, Dr. O'Neil reviewed a report from the SICM database that shows several data points GEICO used to measure Investigators' productivity. O'Neil Decl. ¶ 3. To better understand that data, she also reviewed a "data dictionary" that explains what those data points reflect, as well as the testimony of former SIU Manager William Newport. *Id*. In addition, Dr. O'Neil interviewed three Special Investigators who used SICM on a regular basis to understand how they entered the data. *Id*.

Dr. O'Neil's conclusion that a complete dataset would allow her to build The Future Model supposes that a full dataset can be produced. Based on recent conferral sessions with GEICO, that premise is correct. *See* Scimone Decl. ¶ 4. And the reliability of the data itself is buttressed by the fact that The Future Model will rely on the same data points GEICO used to evaluate its employees' productivity. O'Neil Reply Decl. ¶ 6.

The main thrust of GEICO's argument on this prong, Def.'s Br. 9-13, is that Dr. O'Neil does not have sufficient facts or data to conclude that The Future Model will be *accurate*. That misapprehends the nature of The Present Exercise. Plaintiffs need not show, for purposes of Rule 23, that an *accurate* model can be built – in fact, they need not proffer a model at all. *See In re Vale*, 2022 WL 122593, at *18. For purposes of The Present Exercise, which is simply to

6

show that Plaintiffs can prove damages that flow from their legal theory, *see* Part I above, it would be overkill for Dr. O'Neil to build a miniature version of The Future Model as GEICO suggests. Def.'s Br. 11-12. As she explains throughout both declarations, several aspects of The Future Model will depend on "evidence that will be produced later in the case." O'Neil Decl. ¶¶ 6, 13 (discussing how she might compare different measurements of workload); ¶ 14 (analysis may differ for different kinds of cases or teams); O'Neil Reply Decl. ¶ 7 (data may suggest the need for efficiency modifications). It would be pointless to build a model in miniature that might need to be substantially changed later, especially when The Present Exercise is so cabined.

GEICO's cases are inapposite because all of them considered complete reports.[2] That is not The Present Exercise.

---

[2] *See Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 357 (2d Cir. 2004) (excluding complete report submitted after close of discovery); *Pogil v. KPMG L.L.P.*, No. 21 Civ. 7628, 2024 WL 1208909, at * 12-14 (S.D.N.Y. Mar. 21, 2024) (updated and revised report submitted during discovery to support the plaintiffs' front pay damages projections); *Fantasia Distrib, Inc. v. Cool Clouds Distrib. Inc.*, 693 F. Supp. 3d 335, 343-44 (E.D.N.Y. 2023) (complete reports and declarations filed with cross-summary judgment pre-motion letters after close of discovery); *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 724, 737 (E.D.N.Y. 2016) (complete report submitted at summary judgment and after close of discovery); *Toomey v. MillerCoors LLC*, 86 F. Supp. 3d 202, 204, 207-08 (E.D.N.Y. 2015) (complete report submitted at summary judgment); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 181-82 (N.D. Cal. 2015) (complete report submitted at class certification after substantial discovery); *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 127, 137-40 (M.D. Pa. 2015) (complete report submitted after close of fact discovery); *Young v. Brand Scaffold Servs., LLC*, No. 07 Civ. 917, 2009 WL 4674053, at *3-5 (E.D. Tex. Mar. 16, 2009) (complete report submitted after close of expert discovery); *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05 Civ. 5712, 2007 WL 2816191, at * 7 (E.D.N.Y. Sept. 24, 2007) (complete report submitted at summary judgment and after close of discovery); *Maurizio v. Goldsmith*, No. 96 Civ. 4332, 2002 WL 535146, at *5 (S.D.N.Y. Apr. 9, 2002) (complete report and supplement submitted prior to trial).

7

### B. Dr. O'Neil's Testimony is Based on Reliable Principles.

Dr. O'Neil's testimony satisfies the *Daubert* reliability factors for purposes of The Present Exercise. Courts consider a non-exhaustive list of reliability factors: (1) whether testimony can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known potential rate of error; and (4) general acceptance within the scientific community. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). "The method for determining the reliability of such testimony is within the discretion of the district court." *In re Zyprexa Products Liability Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

GEICO's motion recites these factors, but largely fails to analyze them. Def.'s Br. 13-20. Instead, it launches a second credibility attack on the sufficiency of the underlying facts and data – i.e. Plaintiffs' testimony about hours. It should be noted that these "inputs" are not the inputs for The Present Exercise. *See* Part II.A above. They are the inputs on which The Future Model will be based. In any event, Dr. O'Neil has addressed these arguments. *See* O'Neil Decl. ¶ 8 (The Future Model will include a crosscheck of Plaintiffs' testimony with corroborating data such as SICM entries and emails); O'Neil Reply Decl. ¶ 9 (same), ¶ 14 (explaining that The Future Model will use objective data to detect and adjust for bias). And as explained in Part II.B above, the hours testimony can be a variable input to The Future Model so that the jury has the chance to evaluate bias and other aspects of credibility, as juries typically do.[3]

---

[3] GEICO argues that The Present Exercise should have considered GEICO's "happy camper" declarations. Def.'s Br. 19 ("O'Neil selectively disregards other members of the putative class"). That makes little sense. GEICO produced these declarations after Plaintiffs produced Dr. O'Neil 's original declaration. *See* DE 98-123 to 128. Nothing in Dr. O'Neil's subsequent Reply Declaration suggests that she has ruled out considering these declarations for what they are worth in The Future Model. And by that point, Plaintiffs will presumably have deposed these individuals to evaluate whether their testimony is reliable enough to include.

8

### 1. The Present Exercise Will Be Tested.

Dr. O'Neil's declaration testimony will be "tested" when she attempts to build The Future Model. As she explained in her deposition, The Future Model can also be tested once it is built. Declaration of Michael J. Scimone (Scimone Decl.), Ex. 1 (O'Neil Tr.) 199:2-11.[4]

The underlying methodology that Dr. O'Neil proposes to use is a linear regression. O'Neil Reply Decl. ¶ 2. While the reliability of that methodology is ultimately part of evaluating The Future Model, it is worthwhile to note that it is frequently used in litigation and regularly approved by courts, precisely because its purpose is to "infer[] relationships between variables and outputs." *Id.* ¶ 11. Knowing this is helpful to The Present Exercise, which is to ensure that the damages model will not misattribute damages. That is the reason courts routinely approve of its use. *See, e.g., Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999) (Regression analysis is "a commonly accepted method of statistical analysis for examining the effect of independent variables on a dependent variable."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MD 2542, 2025 WL 354671, at *16-19 (S.D.N.Y. Jan. 30, 2025) (finding regression analysis admissible); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 WL 814074, at *9 (S.D.N.Y. Mar. 17, 2022) (same); *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385, 398-401 (S.D.N.Y. 2014) (same, and collecting cases). And as Dr. O'Neil notes, linear regression "has all sorts of reliability measurements associated to it." O'Neil Reply Decl. ¶ 11. While it is not necessary to apply all those reliability measurements for purposes of The Present Exercise, they buttress her conclusion that a targeted and reliable damages model can be built.

---

[4] Unless otherwise noted, all exhibits are attached to the Scimone Declaration.

9

### 2. The "Theory or Technique" Behind the Present Exercise Can be Subjected to Peer Review When Tested.

The Present Exercise can be tested by other experts as drafted. GEICO has demonstrated this by introducing the testimony of Dr. Thompson, who attempts to rebut The Present Exercise by questioning whether The Future Model will be reliable. DE 198-132 (Thompson Decl.) ¶ 1 (rebuttal expert retained "to assess whether [Dr. O'Neil's] proposed methodology could accurately and reliably estimate potential individual damages on a class-wide basis").

Dr. Thompson's challenge to The Future Model is not, itself, relevant to The Present Exercise except to the extent that it satisfies this prong of the *Daubert* test. But it does demonstrate that The Future Model can be subjected to peer review after it is built.

### 3. The Potential Rate of Error for the Present Exercise is Based on the Data Produced.

The "error rate" of the Present Exercise refers to the possibility that Dr. O'Neil is wrong that a future damages model can be built. Nothing in GEICO's motion challenges this opinion – at best, GEICO takes aim at the potential error rate of The Future Model, which is not yet before the Court. The Court need not strain to apply this factor to The Present Exercise, because some *Daubert* factors, "such as known error rate, may be more applicable to the later-executed results of" a proposed damages model. *See Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1030 (9th Cir. 2024).

During her deposition, Dr. O'Neil discussed how she would calculate error rates in The Future Model. Ex. 1 (O'Neil Tr.) 173:23-184:18. The Future Model will "provide the standard statistics around the error of the regression model, for example goodness-of-fit statistics such as R-squared." O'Neil Reply Decl. ¶ 16. It is nonsensical for GEICO to expect The Present Exercise to include error rates, which would be without meaning at this stage.

GEICO "offers no reason to think that [Dr. O'Neil] will commit any of [the alleged] errors." *Lytle*, 114 F.4th at 1033. Its argument on this point, Def.'s Br. 20-23, is a re-tread of its

10

argument that Dr. O'Neil should have built a mini-model, which fails for the reasons explained in Part III.A. above. "The speculative possibility that [Dr. O'Neil] might slip up in executing [her future] model, standing alone, is insufficient to defeat class certification," nor is it a reason to exclude Dr. O'Neil's testimony. *Lytle*, 114 F.4th at 1033.

### 4. The Present Exercise's Methodology is Generally Accepted by the Scientific Community.

The methodology behind The Present Exercise is generally accepted by the scientific community. Essentially, The Present Exercise is a hypothesis, which will be tested in The Future Model after GEICO provides additional discovery. Putting forward a hypothesis that can be tested by empirical data (when it becomes available) is the most basic aspect of the scientific method, and has been widely accepted since at least the time of Sir Isaac Newton.

As noted in Part III.B.1 above, the linear regression methodology that will be applied in The Future Model is also generally accepted in the relevant community. *See* O'Neil Reply Decl. ¶ 11 ("It's the most generally accepted approach to this question that practitioners use."); *see also Brazil v. Dole Packaged Foods, LLC*, No. 12 Civ. 1831, 2014 WL 5794873, at *2 (N.D. Cal. Nov. 6, 2014) (regression model, which had not been tested because defendant did not provide full discovery, accepted as a means of showing classwide damages).

### C. The Present Exercise Reliably Applies to the Facts of This Case.

To the extent necessary for The Present Exercise, Dr. O'Neil has properly applied her proposed regression analysis to the facts of this case, and concluded that, "[t]his is an absolutely textbook case where linear regression applies." O'Neil Reply Decl. ¶ 11. And as she explains in her Reply Declaration, GEICO's own expert, Dr. Thomspon, shows that the limited data available buttresses her conclusion that an *accurate* model can be built.[5] Figure 1 of Dr.

---

[5] The Present Exercise does not require Plaintiffs to demonstrate that their damages model will be accurate. *See* Part III.A above.

11

Thompson's declaration, DE 98-132 (Thompson Decl.) ¶ 29, shows, based on his independent review, that "the average monthly hours worked and cases closed . . . are all within a very tight range," which shows that The Future Model "will likely be effective."  O'Neil Reply Decl. ¶ 12.

GEICO once more proffers a litany of arguments about purportedly individualized facts (echoing its arguments against class certification), but all of them are aimed at rebutting the reliability of The Future Model.  Def.'s Br. 22-26.  In any event, it mischaracterizes the record, citing Dr. O'Neil's testimony for the clam that The Future Model "would significantly overstate damages" for some Class Members.  Def.'s Br. 23.  What Dr. O'Neil in fact said is that the model is "not going to be exactly-exactly right.  It could have been 186 instead of 188.  So that would be an overstatement, but it would be pretty small."  Ex. 1, (O'Neil Tr.) 94:17-20.

But The Future Model has not yet been built, and Dr. O'Neil has yet to deploy the full range of tools she might apply to refine her methodology, many of which will depend on the data itself.  When The Future Model is before the Court, GEICO may make these arguments again.  But they are not germane to The Present Exercise.

## **CONCLUSION**

GEICO's motion to exclude Dr. O'Neil's testimony is a thinly disguised attempt to further argue against class certification and undermine the credibility of the substantial testimony Plaintiffs have already submitted.  But GEICO misses the mark, because it aims to rebut only one aspect of predominance – damages – for which Plaintiffs' Rule 23 burden is limited.  And it misses again insofar as it aims at The Future Model, rather than the testimony that is actually before the Court.  As applied to The Present Exercise, GEICO's *Daubert* motion fails.

Respectfully submitted,

Dated: August 13, 2025    By: */s/ Michael J. Scimone*

Michael J. Scimone
Sabine Jean
Jarron D. McAllister
Zarka S. DSouza
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Fax: 646-509-2060
mscimone@outtengolden.com
sjean@outtengolden.com
jmcallister@outtengolden.com
zdsouza@outtengolden.com

Ryan Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Suite 1200B
Washington, DC 20005
Telephone: 202-929-0636
Fax: 202-847-4410
rcowdin@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: 631-499-9100
Facsimile: 800-451-0874
tkessler@kesslermatura.com
gkaske@kesslermatura.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Putative Class and Collective*

13

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C) AND JUDGE BULSARA'S INDIVIDUAL PRACTICES, RULE VI(E)

In accordance with Local Civil Rule 7.1(c) and District Judge Sanket J. Bulsara's Individual Practices, Rule VI(E), I hereby certify that Plaintiffs' Opposition to Defendant's Motion to Exclude the Testimony of Dr. Catherine O'Neil contains 3,737 words, including footnotes, as established by Microsoft Word, the software used to prepare the Motion. The word count does not include the brief's cover page, table of contents, table of authorities, and signature block, which are exempted by the applicable Rules.

Date:   August 13, 2025                                     */s/ Michael J. Scimone*
                                                            Michael J. Scimone