# Exhibit 2



**Advocates for Workplace Fairness**

July 11, 2025

**Via ECF**
Magistrate Judge Chelsea J. Crawford
United States District Court for the
District of Maryland
101 West Lombard Street,
Baltimore, MD 21201

      Re:    <u>*Ashley Alvarez, et al. v. Gov't Emps. Ins. Co.*</u>, **Case No. 1:24-c-00722 (GLR)**

Dear Magistrate Judge Crawford,

    Pursuant to the Court's directive at the June 5 discovery conference, the Parties respectfully submit this joint status letter to update the Court on their discussion of a discovery plan proportional to the needs of this case. The Parties have reached some agreement but continue to hold different views on a number of topics, and set forth their respective positions below.

    1. **Areas of Agreement**

    GEICO has agreed to produce redacted versions of business plans and overtime budgets. It has also agreed to search for complaints about overtime or workload that were submitted to its Ethics Hotline, and to conduct a search for email and other communications containing such complaints, from opt-in Plaintiffs who are subject to discovery (further discussed below).

    2. **Performance Metrics**

    Plaintiffs also believed, based on prior discussions, that GEICO had agreed to provide discovery sufficient to show how it calculated Class and Collective Members' performance metrics, but in preparing this status report, GEICO informed Plaintiffs that it would only disclose *which* performance metrics applied to the members of the collective during the relevant period.[1]

    Defendant agreed to produce discovery sufficient to show the performance metrics applicable to the members of the collective, which it interpreted to mean an identification of applicable metrics, a description of what those metrics measure, and any rating scales associated with those metrics which were utilized to assess performance. Defendant believes the information it has agreed to produce is sufficient, and the additional information sought would be unduly

---

[1]     Plaintiffs propounded a document request for this information on January 24, 2025, but have received no responsive documents. Plaintiffs have proposed to serve an interrogatory if that is more efficient, but have yet to hear from GEICO which approach it prefers.

New York  685 3rd Ave 25th Floor, New York, NY 10017  T (212) 245-1000  F (646) 509-2060
San Francisco  1 California Street, 12th Floor, San Francisco, CA 94111  T (415) 322-1391  F (415) 638-8810
Washington, DC  1225 New York Ave NW, Suite 1200B, Washington DC 20005  T (202) 914-5097  F (202) 847-4410
outtengolden.com  mail@outtengolden.com

Case 2:23-cv-02848-SJB-ST   Document 128-18   Filed 08/27/25   Page 3 of 10 PageID #: 4741
Case 1:24-cv-00722-GLR   Document 154   Filed 07/11/25   Page 2 of 9

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 2 of 9

burdensome.

### 3. Collective and Class-Wide Data

*Plaintiffs' Position*

To select opt-in Plaintiffs who will be subject to discovery, Plaintiffs requested an electronic list containing certain data points for all Collective members. GEICO produced some of the requested data points pursuant to an Order compelling it to produce the Collective List for notice purposes, and in its discovery responses dated March 11, 2025, it agreed to produce (1) job title(s); (2) exemption status in each job title; and (3) form or method of compensation for the full Collective; but GEICO did not state a date by which it would produce these data as required by Fed. R. Civ. P. 34(b)(2)(B), and to date has not produced the promised data. It refused to produce (4) the supervisor(s) to whom each person was assigned or (5) the city and state in which each person worked. *See* **Exhibit A**.

On July 3, 2025, GEICO changed its position and refused to produce *any* of the outstanding data points for anyone other than opt-in Plaintiffs who are selected for discovery. It did not respond to Plaintiffs' request that it identify any technical impediment to producing the data, but stated in response that "GEICO is not obligated to generate a comprehensive database for all opt-ins" without explaining why it would need to create a new database for ordinary Human Resources data. *See* **Exhibit B**.

Elsewhere in the same exchange, GEICO agreed to bilateral selection of discovery opt-ins, and stated that the sample should reflect variations in "job duties, supervision, and geographic differences." *Id*. These criteria track the exact data points GEICO now refuses to produce. These data are presumably in GEICO's control, but it refuses to make the same information available to Plaintiffs despite conceding its relevance to opt-in selection.

*GEICO's Position*

The parties agreed that discovery should be proportional to the needs of the case, a guiding principle to discovery. GEICO produced an electronic list that contains complete names, address, contact information, employee numbers, hire and termination dates, and the city and state of the GEICO office to which the individual was assigned for purposes of sending notice to the conditionally certified collective. GEICO has also produced various documents which indicate Plaintiffs' job titles, exemption status and form/method of compensation, such as in Workday profiles and pay stubs. (*See* GA0000001-6210). The opt-in plaintiffs themselves are in possession of much of the same information sought, though Plaintiffs' counsel has never indicated why it would not seek to obtain information available from their own clients.

When GEICO responded to Plaintiffs' discovery requests, prior to the closure of the notice period and when there were far less opt-ins, GEICO understood that Plaintiffs would similarly respond to discovery on behalf of opt-in plaintiffs. Instead, during the parties' conferrals, Plaintiffs

Case 2:23-cv-02848-SJB-ST   Document 128-18   Filed 08/27/25   Page 4 of 10 PageID #: 4742
Case 1:24-cv-00722-GLR   Document 154   Filed 07/11/25   Page 3 of 9

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 3 of 9

expressly refused to respond to GEICO's written discovery and maintained that GEICO was required to engage in vast and burdensome collective-wide discovery. Discovery is a two-way street, and Plaintiffs cannot seek untrammeled discovery from GEICO while simultaneously seeking to minimize their own discovery obligations.

GEICO agreed to produce employment-related data, including supervisor information, personnel files, and job title and location information for the opt-ins subject to discovery. Plaintiffs contend that they are entitled to all such data, for the entire collective, while simultaneously asserting that they need only respond to five of GEICO's written discovery requests, and only for 50 individuals. Discovery is a two-way street, and Plaintiffs cannot escape their discovery obligations while simultaneously demanding collective-wide discovery from GEICO.

Now, Plaintiffs also contend that GEICO must bear the burden of compiling duplicative and/or disparate information from various systems in order to facilitate Plaintiffs' selection of opt-ins subject to discovery. But the notice list and already-produced documents contain the majority of the information sought, and consequently Plaintiffs lack any basis to impose additional burdens on GEICO. Further, Plaintiffs misrepresent GEICO's reference to varied "job duties, supervision, and geographic differences." GEICO never indicated that those criteria should guide the *selection* process, only that a selection focused on crafting an estimate of hours worked was myopic and failed to account for other relevant issues in the case. Other information sought by Plaintiffs, such as the city and state where opt-in plaintiffs' supervisors are located, lacks any relevance to Plaintiffs' claims.

### 4. Opt-In Discovery

*Plaintiffs' Position*

Plaintiffs propose a sample of 10% of the collective, or 27 individuals, for depositions and approximately 19% of the collective, or 50 individuals, for written discovery, with each party selecting approximately 50%.[2] Plaintiffs have proposed to respond to two interrogatories and three document requests that are most directly related to the merits issues in the case, i.e. (1) whether Plaintiffs worked off the clock, and by how much, and (2) whether Plaintiffs raised complaints about GEICO's timekeeping or work-assignment practices.

Plaintiffs' proposed sample is based on a mathematical formula suggested by Plaintiffs' proposed damages expert, cross-referenced with testimony already provided in this case. That testimony shows that "field" investigators (who worked outside GEICO's offices) typically worked between 45 and 55 hours per week, while "desk" investigators worked between 41 and 45

---

[2] Nine Plaintiffs have already been served with written discovery and deposition notices, and eight have been deposed; for the remaining 18 deponents and 41 written discovery respondents in Plaintiffs' proposed sample, Plaintiffs proposed to skew the selection slightly in GEICO's favor. *See* Ex. A (June 13 email).

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 4 of 9

hours. If this testimony remains consistent, the parties can be 95% confident that a 29-person sample should be statistically representative of the total population, within a 1-hour margin of error.[3] Plaintiffs' proposed sample size of 50 written discovery respondents provides ample information to evaluate this representativeness, and to guide deponent selection.

GEICO proposes a higher percentage of deponents and written discovery respondents, and a larger scope of written discovery. *See* Exs. A & B (June 20 & 30 emails). To date, GEICO has not offered a proportionality rationale for this scale of discovery, and has not identified which issues in the case its written discovery requests will resolve (or addressed any other proportionality factor). As explained in Plaintiffs' May 22, 2025, letter to the Court (ECF No. 146), GEICO's written discovery requests are overly broad, duplicative of its own records, and disproportionate to the needs of the case. Based on prior experience, Plaintiffs estimate that responding to GEICO's written discovery would require approximately 535 attorney hours and 214 paralegal hours; its requested deposition testimony would require approximately 400 attorney hours and 80 paralegal hours. In contrast, Plaintiffs' proposal would require 75 attorney hours and 25 paralegal hours for written discovery and 270 attorney hours and 54 paralegal hours for depositions. *See* Ex. A (June 23 email).

### *GEICO's Position*

GEICO proposes a sample of 40% of the opt-in plaintiffs, or approximately 107 individuals, who should be subject to written discovery (what has already been propounded). Plaintiffs' assertions that such discovery would take "over 535 attorney hours and 214 paralegal hours; its requested deposition testimony would require approximately 400 attorney hours and 80 paralegal hours" are extremely overstated, and Plaintiffs have never provided a response as to why they could not issue a standard discovery packet to the opt-in plaintiffs subject to discovery.

Plaintiffs' proposal to limit their obligation to respond to written discovery to only two interrogatories and three requests for production is demonstrative of their "good for me but not for thee" approach to discovery to date. More fundamentally, however, Plaintiffs mischaracterize the purpose of GEICO's discovery, impliedly claiming that its discovery should be limited to establishing "whether Plaintiffs worked off the clock, and by how much" and "whether Plaintiffs raised complaints about GEICO's timekeeping or work-assignment practices." That incorrect premise forms the basis for Plaintiffs' proposal to limit discovery to only 50 individuals.

GEICO is certainly entitled to discovery on those issues as a means of identifying and defending against Plaintiffs' overtime claims and GEICO's alleged knowledge of any overtime.

---

[3] The relevant formula is as follows: [high hours – low hours] ÷ (2 * √ [sample size] = [margin of error]. For example, if difference between the high and low range of hours worked by Field Investigators is 10, among a sample of 25 Field Investigators, we would divide 10 by 2 * √ 25 (that is, 10/ (2*5), or 10/10), which equals 1, suggesting a 1-hour margin of error). Similarly, based on Desk Investigator estimates, the sample size needed to arrive at a 1-hour confidence interval is 4 witnesses.

Case 2:23-cv-02848-SJB-ST   Document 128-18   Filed 08/27/25   Page 6 of 10 PageID #: 4744
Case 1:24-cv-00722-GLR   Document 154   Filed 07/11/25   Page 5 of 9

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 5 of 9

But many other issues are relevant too, particularly to decertification, as GEICO contends that the opt-in plaintiffs are not similarly situated for purposes of the FLSA. Relevant here, evidence obtained in discovery in the *Fischer* litigation, and which was essential in opposing class certification, established that the roles performed by different investigators varied (*Fischer* ECF No. 98-66 at 3), that some investigators were divided amongst teams and some were not (*id*. at 3-4), that different types of investigators performed different investigative activities (*id*. at 4), that schedules amongst different types of investigators varied (*id*. at 5), that the practices that supervisors regarding overtime "varied substantially from supervisor to supervisor." (*id*. at 17-19), and that the performance metrics applicable to different types of investigators varied drastically, with some not subject to metrics related to case closure at all. (*Id*. at 19-20). GEICO also asserted that Plaintiffs could not establish GEICO's constructive knowledge of any unrecorded overtime, and Plaintiffs claimed varied methods of alleged communication of unrecorded overtime to supervisors. (*Id*. at 20-22.) The same discovery that was proper and necessary in *Fischer* is appropriate here.

The written discovery GEICO seeks here bears directly on the same and similar issues. For example, GEICO seeks the method(s) by which any opt-in plaintiff could request overtime and whether such requests were approved. (Interrog. Nos. 10 and 11.) Unless opt-in plaintiffs' requests were approved and recorded in the timekeeping system (and thus paid), GEICO has no such information in its possession. Similarly, the metrics applicable to each opt-in plaintiff (Interrog. No. 13), as discovery in *Fischer* demonstrated, varied substantially. Discipline or corrective action for any alleged failure to meet performance metrics (Interrog No. 14) is similarly relevant to Plaintiffs' claims and discoverable here. GEICO's requests for production also seek crucial documents that would not be in GEICO's possession, such as any records kept independently by opt-in plaintiffs regarding time worked (RFP Nos. 10), communications reflecting hours worked (RFP No. 11), and documents demonstrating timekeeping instructions, discipline issued, overtime requests, and alleged complaints made. (RFP Nos. 3-7.) GEICO's requests for admission are likewise designed to narrow the issues in dispute, and opt-in plaintiffs can simply admit or deny the requests.

If opt-in plaintiffs have no such documents, they can simply inform their counsel and the burden is minimal. If the opt-in plaintiffs have such documents, they are unlikely to be voluminous and GEICO is entitled to them. In either event, the burden on any opt-in individually, or Plaintiffs' counsel collectively, will be minimal.

GEICO also proposes to take depositions for 15% of the opt-in plaintiffs, approximately 40 individuals, with GEICO agreeing generally to the selection process outlined by Plaintiffs. Plaintiffs contend that their proposed sample is of sufficient size, but as discussed with Plaintiffs, GEICO is not merely trying to quantify "within a 1-hour margin for error" the amount of overtime allegedly worked, nor is it obligated to accept Plaintiffs' expert's confidence interval. Rather, as with written discovery, GEICO intends to use depositions to demonstrate that the opt-in plaintiffs are vastly dissimilar and that this litigation cannot be maintained as a collective action, in addition to defeating Plaintiffs' claims on the merits. As established in GEICO's May 30, 2025 letter, courts routinely provide for opt-in discovery such as that sought by GEICO here. (ECF No. 150.)

Case 2:23-cv-02848-SJB-ST    Document 128-18    Filed 08/27/25    Page 7 of 10 PageID #: 4745
Case 1:24-cv-00722-GLR    Document 154    Filed 07/11/25    Page 6 of 9

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 6 of 9

GEICO's proposal is reasonable, proportionate, and should be adopted.

### 5. Email and Other Electronic Communications

The parties met about ESI production on June 30, 2025, and have agreed to conduct a search for email and other electronic communications ("unstructured ESI") for the opt-in plaintiffs who are subject to discovery. Plaintiffs presented an initial proposal for the scope of the search. GEICO proposed to send a written response the same week, but has not yet done so.

One initial area of disagreement involves the relevant custodians.

*Plaintiffs' Position*

Plaintiffs have proposed that Regional Managers and Vice Presidents be included as custodians GEICO's search. In parallel, ongoing litigation in the Eastern District of New York, GEICO has produced documents showing Regional Vice Presidents had a deciding role in overtime approval and budgeting, and in approving and overseeing the performance metrics that drove the off-the-clock work in this case. *See* **Exhibit C**. While direct communications between Managers and Vice Presidents would be captured in a search of Managers alone – which GEICO has agreed to conduct – that search would not capture communications among Vice Presidents, or between Vice Presidents and other employees at GEICO. If there are few such communications, a standard, automated de-duplication process would limit the amount of review time needed to produce such documents, and the only cost to including Vice Presidents would be the cost of processing their data. If there are many unique communications that hit on search terms such as "overtime," then the burden on GEICO would be greater, but the value of the documents in resolving issues in the case would presumably be greater as well.

In light of the substantial amount of time that has elapsed without input from GEICO, even on this threshold matter, a more closely supervised discovery process may be necessary.

*GEICO's Position*

GEICO proposes that the appropriate custodians for ESI discovery are subsets of opt-in plaintiffs and opt-in plaintiff supervisors. During the parties' conferral on June 30, GEICO reiterated why those are the most appropriate custodians, particularly because Plaintiffs contend in the parallel *Fischer* litigation, which asserts identical claims, that "supervisors consistently barred or discouraged Special Investigators from reporting hours above 38.75 per week" and that "Plaintiffs discussed their heavy caseloads and overtime hours with supervisors" regularly. (*Fischer* ECF No. 62-1 at 6-7). Given Plaintiffs' supervisor-centric claims, the communications of the plaintiffs and their supervisors are the most relevant communications to the claims and defenses at issue in this litigation and should be the focus of ESI. In light of the number of opt-in Plaintiffs, GEICO proposed that a limited sub-set of the individuals, and their supervisors, be custodians.

Regarding SIU managers, GEICO acknowledges these individuals' potential relevance and has offered to conduct "targeted searches for [] specific documents." Plaintiffs have never provided any specific search terms or specific search criteria so that GEICO can evaluate the reasonableness of any request compared to the potential burden imposed.

Regional Vice Presidents are simply unrelated to the issues presented by this case, and Plaintiffs' claimed relevance relies on misconstruing evidence. Regional Vice Presidents, at the time GEICO employed a geographic-based hierarchy, oversaw all business units in a geographic area. In other words, in addition to SIU, they oversaw vastly larger departments such as Sales, Service, Claims, and other parts of the traditional insurance business that are entirely disconnected from this litigation. Given the tens of thousands of individuals that GEICO employs, the word "overtime" would undoubtedly appear in innumerable communications that are completely divorced from SIU, and exponentially removed from any relevance to the claims asserted here. GEICO has repeatedly explained this to Plaintiffs, but their continued insistence on including Regional Vice Presidents is predicated on simply ignoring the vastly increased burden that would accompany their inclusion as custodians. To the extent Plaintiffs rely on Exhibit C, Douglas Shiring was not a Regional Vice President. Douglas Shiring was the Director of SIU at GEICO's Claims Home Office for a period of time, thus Exhibit C does not support Plaintiffs' argument.

Further, though Plaintiffs contend that these individuals "had a deciding role in overtime approval and budgeting," Plaintiffs themselves acknowledge that Regional Vice Presidents would only have involvement in overtime requests in "a handful of exceptions in extreme or special circumstances." (*Fischer* ECF No. 62-1 at 6.) Indeed, the SIU Manager for a New York region confirmed that Regional Vice Presidents' involvement in SIU and overtime budgeting is sporadic and wholly infrequent. (Newport Decl. ¶ 38.) Plaintiffs offer no evidentiary basis for their belief that any conversations "among" Regional Vice Presidents, or between them and others, have ever taken place, much less how they would be relevant to this litigation or proportionate under Federal Rule of Civil Procedure 26.

6. **Data ("Structured ESI")**

*Plaintiffs' Position*

Plaintiffs have requested that GEICO produce specific data fields that have appeared in prior documents GEICO has produced. *See* **Exhibit B**. GEICO has agreed to produce a subset of the requested data fields, but has alluded to limitations on its data export capabilities without further specifics. Plaintiffs requested a detailed explanation of these limitations and GEICO's basis for withholding the remaining data on June 30, and GEICO promised to respond in writing the same week. As of the date of this submission, Plaintiffs have not received any such explanation.

This process also will likely require further supervision, or at least a date to be imposed by which GEICO will provide support for its discovery objection, or else have that objection deemed

waived. *See Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 359-60 (D. Md. 2008) (unsupported boilerplate objections may be deemed waived).

### *GEICO's Position*

As GEICO explained to Plaintiffs on June 30 and in multiple previous conferrals, the reporting that Plaintiffs sought was previously utilized by GEICO but is no longer utilized by GEICO today. Further, given the significant changes over time, both in terms of systems and organizational structure, assessing whether GEICO had the ability to access these reports, as well as ensure their accuracy, required collaboration with various individuals at GEICO. Defendant informed Plaintiffs of all of this, and Plaintiffs' assertion that they have not received an "explanation" is incorrect.

After investigating, GEICO believes that it has the ability to generate reporting that contains many, and possibly all, of the fields requested by Plaintiffs for the relevant time period. Doing so, however, will likely require dozens of hours, at the very least, to manually generate those reports for individual opt-ins for specific time intervals. As a result, generating the reporting will result in substantial time, effort, and cost on GEICO's part, thus requiring assessment of burden.

GEICO has agreed to produce reports that it has available for the opt-ins subject to discovery and, given the burden imposed, contends that it should limit production to the opt-ins subject to discovery. No intervention or special master is needed. The barrier here is Plaintiffs' refusal to engage in proportional discovery, agree on an opt-in discovery plan, and proceed with selection of a reasonable number of opt-in plaintiffs subject to discovery.

\*   \*   \*

The Parties thank the Court for its continued attention to this matter.

Case 2:23-cv-02848-SJB-ST   Document 128-18   Filed 08/27/25   Page 10 of 10 PageID #: 4748
Case 1:24-cv-00722-GLR   Document 154   Filed 07/11/25   Page 9 of 9

Magistrate Judge Chelsea J. Crawford
July 11, 2025
Page 9 of 9

Respectfully,

By:   /s/ Gregory Tsonis  

Gregory Tsonis*
Gerald L. Maatman, Jr.*
Tiffany E. Alberty*
**DUANE MORRIS LLP**
1540 Broadway
New York, NY10017
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
Email: gtsonis@duanemorris.com
Email: TEAlberty@duanemorris.com

*Admitted *pro hac vice*

*Attorneys for Defendant Government Employees Insurance Company*

By: [signature]

Michael J. Scimone*
Jarron D. McAllister*
Zarka S. Dsouza*
Sabine Jean*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2005
Email: mscimone@outtengolden.com
Email: jmcallister@outtengolden.com
Email: zdsouza@outtengolden.com
Email: sjean@outtengolden.com

Ryan Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: rcowdin@outtengolden.com

Arlus J. Stephens
David Rodwin
**MURPHY ANDERSON PLLC**
1401 K Street NW, Suite 300
Washington, DC 20005
Telephone: (202) 223-2620
Facsimile: (202) 296-9600
Email: astephens@murphypllc.com
Email: drowdin@murphypllc.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Putative Classes and Collective*