IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:23-CV-02848<br><br>District Judge Sanket J. Bulsara<br><br>Magistrate Judge Steven L. Tiscione |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE THE TESTIMONY OF CATHERINE O'NEIL**

Gerald L. Maatman, Jr.
(gmaatman@duanemorris.com)
Jennifer A. Riley
(jariley@duanemorris.com)
Gregory Tsonis
(gtsonis@duanemorris.com)
Justin Donoho
(jrdonoho@duanemorris.com)
Gregory S. Slotnick
(gsslotnick@duanemorris.com)
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiffs Misstate The Applicable *Daubert* Standard At The Class Certification Stage ............................................................................................... 2

        1. Plaintiffs Must Prove That Damages Can Be Reliably Measured On A Classwide Basis ................................................................................... 2

        2. Plaintiffs Also Rely On O'Neil's Testimony To Attempt To Show Predominance ....................................................................................... 5

    B. Plaintiffs Fail To Address Or Rebut O'Neil's Failure To Base Her Testimony On Sufficient Facts Or Data ................................................................. 6

    C. Plaintiffs Do Not Establish That O'Neil's Opinions Are The Product Of Reliable Principles And Methods ........................................................................ 8

    D. Plaintiffs Fail To Address Or Rebut Defendant's Showing That O'Neil Did Not Reliably Apply Her Principles And Methods To The Facts ................... 10

    E. Plaintiffs Fail To Establish That O'Neil's Opinions Are Relevant And Helpful ................................................................................................................ 11

III. CONCLUSION ..............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*In Re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5 (S.D.N.Y. 2020) ..............................3

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ...............................6, 10

*Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796 (S.D.N.Y. May 2, 2011)........................6

*Belliard v. Koryeo Int'l Corp.*, 2019 WL 13213671 (E.D.N.Y. 2019)..........................................12

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435 (2d Cir. 1999) ...............................................................9

*Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873 (N.D. Cal. 2014) .................................9

*Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124 (M.D. Pa. 2015) ............................................................6

*Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074 (S.D.N.Y. 2022) ..............................3, 9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...................................................................2, 4, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).......................................2, 8

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) .........................................................5

*Jacob v. Duane Reade, Inc.*, 602 F. App'x 3 (2d Cir. 2015) ..............................................6, 9, 11

*Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019) .................................. 5-6

*Jerue v. Drummond Co., Inc.*, 2023 WL 6610603 (M.D. Fla. 2023) ...........................................11

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)........................................................5

*In Re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018) ..................................................................................................................................3

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011 (9th Cir. 2024)................................................ 3-4

*Maurizio v. Goldsmith*, 2002 WL 535146 (S.D.N.Y. 2002)..........................................................6

*Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385 (S.D.N.Y. 2014)..............9

*In Re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)...............................2-4, 7

*In Re Vale S.A. Securities Litigation*, 2022 WL 122593 (E.D.N.Y. 2022).................................7-8

**Other Authorities**

Black's Law Dictionary (12th ed. 2024)..........................................................................................9

Fed. R. Civ. P. 23 ............................................................................................................. *Passim*

Fed. R. Civ. P. 23(a) ..................................................................................................................11

Fed. R. Civ. P. 23(b)(3) ........................................................................................................4, 6, 11

Fed. R. Evid. 702 ................................................................................................................1, 8, 10

I. **INTRODUCTION**

In its Motion, Defendant firmly established that exclusion of Catherine O'Neil's testimony is proper. In their Response, Plaintiffs failed to show otherwise. Recognizing the irremediable flaws in O'Neil's opinions, Plaintiffs invite this Court to jettison well-established legal standards applicable at the class certification stage, but *Daubert*, Federal Rule of Evidence 702, and Second Circuit precedent do not allow the Court to delay its gatekeeping role until after ruling on class certification. Plaintiffs have not met their burden to establish the admissibility of O'Neil's testimony and the Court should exclude O'Neil's opinions for several reasons.

*First*, Rule 702 and *Daubert* require the Court, at the class certification stage, to rigorously examine whether O'Neil's proposed model is reliable for the purposes introduced. Plaintiffs incorrectly attempt to cabin the Court's review to considering only "whether damages will be based on Plaintiffs' theory of liability." (Resp. at 3.) Plaintiffs' manufactured standard contradicts applicable precedent and must be rejected.

*Second*, O'Neil failed to use data available to her – the same data she would use to build her proposed model – to demonstrate the viability and reliability of her opinions. Having chosen not to construct her proposed model, neither O'Neil nor Defendant can test her opinions, rendering this case indistinguishable from numerous others that excluded untested and untestable opinions.

*Third*, Plaintiffs have not met their burden of demonstrating that O'Neil's opinions are reliable. Plaintiffs claim that O'Neil's methodology is "generally accepted" and scientific despite its reliance on Plaintiffs' self-serving, non-representative testimony, but make only generic claims and cite inapplicable precedent while ignoring O'Neil's contrary admissions. Multiple courts exclude damages models in such circumstances.

*Fourth*, Plaintiffs have not demonstrated that O'Neil reliably applied her principles and methods to the facts of the case. Defendant established that O'Neil's methodology cannot account

1

for multiple individualized variables, and Plaintiffs respond only that examining those deficiencies now would be premature. But *Daubert* requires the Court to consider the admissibility of O'Neil's testimony before including it in the class certification analysis.

*Fifth*, O'Neil's methodology requires individualized inquires that defeat the purpose of her testimony, rendering it irrelevant and unhelpful. Plaintiffs fail to substantively respond to Defendant's arguments, waiving arguments to the contrary and demonstrating the propriety of exclusion.

## II.   ARGUMENT

### A. Plaintiffs Misstate The Applicable *Daubert* Standard At The Class Certification Stage

Plaintiffs' contention that they need only show that they can "prove damages that flow from their legal theory" or that O'Neil's "damages model will not misattribute damages" (Resp. at 3, 9) is incorrect. Plaintiffs rely on O'Neil's testimony to attempt to show that liability can be determined and that damages can be measured on a classwide basis. Plaintiffs must make such showings using admissible evidence.

#### 1. Plaintiffs Must Prove That Damages Can Be Reliably Measured On A Classwide Basis

To prevail on a motion for class certification, a plaintiff must prove "that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "In *Comcast*, the Supreme Court held that courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In Re U.S. Foodservice Inc. Pricing Litig.* ("*Foodservice*"), 729 F.3d 108, 123 n.8 (2d Cir. 2013).

Consistent with *Comcast*'s reasoning, Second Circuit courts recognize that the "rigorous" analysis required by *Daubert* applies to a proffered expert's damages methodology at the class

2

certification stage. *See In Re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020) (explaining that "[c]ourts in the Second Circuit regularly subject expert testimony to *Daubert*'s rigorous standards insofar as that testimony is relevant to the Rule 23 class certification analysis" and "the onus is on the [plaintiffs], not defendants, to present a damages model that can be used on a class-wide basis based on common proof"); *Foodservice*, 729 F.3d at 123 n.8 (assessing the court's "gatekeeping function" in "resolv[ing] the disputes regarding expert testimony," stating "courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis"). Other Courts of Appeals similarly recognize that "where an expert's model has yet to be fully developed, a district court is limited at class certification to making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit. This still requires determining whether the expert's methodology is reliable." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1031 (9th Cir. 2024).

Accordingly, courts in this jurisdiction routinely exclude experts' proposed damages methodologies that fail to meet *Daubert* standards at the class certification stage. *See In Re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 488 (S.D.N.Y. 2018) (excluding expert opinions offered to show "that classwide methods are available to determine [damages]" in support of class certification because the model was not "sufficiently complete so as to be reliable and helpful"); *Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *8 (S.D.N.Y. 2022) (excluding expert opinion offered in support of class certification due to insufficient data). Because O'Neil's declarations "describ[e] a proposed methodology for calculating classwide damages" and were offered for the "purpose of satisfying Rule 23" (Resp.

3

at 1), this Court must analyze O'Neil's proposed damages methodology to ensure that it is reliable and admissible evidence.

Plaintiffs' attempt to limit this Court's analysis to only whether O'Neil's model is "based on Plaintiffs' theory of liability" ignores the full analysis required. (Resp. at 3.) In *Comcast*, the plaintiffs "provided a method to measure and quantify damages on a classwide basis," and the Court of Appeals found it "unnecessary to decide 'whether the methodology [was] a just and reasonable inference or speculative'" in granting class certification. 569 U.S. at 35. The Supreme Court expressly rejected that reasoning, explaining that "[u]nder that logic, at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id*. at 35-36. This Court must analyze whether O'Neil's proposed model is "consistent with the classwide theory of liability," but it must also analyze whether the "proposed damages methodology" is "capable of measurement on a classwide basis." *Foodservice*, 729 F.3d at 123 n.8.

Plaintiffs' contention that "Rule 23 does not require a plaintiff to proffer a fully articulated damages model" is a red herring. (Resp. at 2.) Defendant is not seeking to exclude O'Neil's testimony because she did not actually calculate Plaintiffs' claimed damages but, rather, because O'Neil failed to show that "damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. O'Neil failed to utilize available evidence and data to demonstrate the reliability of her proposed model, follow reliable principles and methods, and reliably apply her methodology to the facts of this case. Having failed to do so – or tactically elected not to do so – Plaintiffs cannot now complain that attempting to assess the reliability of a future model is "boxing at shadows." Resp. at 4; *see Lytle*, 114 F.4th at 1034 ("[A] plaintiff may not avoid ultimate scrutiny

4

of the admissibility of their experts' final opinions simply by declining to develop those opinions in advance of class certification."). O'Neil failed to show that she can reliably measure damages on a class-wide basis, the necessary inquiry at class certification. (Def.'s Memorandum at 9-28.)

### 2. Plaintiffs Also Rely On O'Neil's Testimony To Attempt To Show Predominance

While Plaintiffs' claim that O'Neil will "assess damages for class members" (Resp. at 3), they also relied on O'Neil's testimony to support their arguments regarding liability under Rule 23's predominance requirement.

A court examining predominance must assess (1) "the elements of the claims and defenses to be litigated," and (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 125 (E.D.N.Y. 2019).

An employee seeking unpaid overtime must "prov[e] that the employer did not compensate him for completed work" and, in certain circumstances, may carry his burden if he (i) "proves that he has in fact performed work for which he was improperly compensated," and (ii) "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (explaining that "the *amount* of [plaintiff's] uncompensated work" is "in essence, his damages") (emphasis in original).

Plaintiffs rely on O'Neil to attempt to show predominance, not just the amount of damages. Plaintiffs contend O'Neil's testimony is a "mode of proof [] common to the Class" that will establish "the fact" of off-the-clock work – *i.e.*, liability – for all class members. (ECF No. 98-133 at 5.) O'Neil will allegedly "quantify [Plaintiffs'] workload," ultimately "show[ing] the fact

5

and amount of unrecorded hours[.]" (*Id.*) If O'Neil's methodology cannot reliably establish "the fact" of off-the-clock work, her testimony cannot be utilized to establish predominance. *See Jensen*, 372 F. Supp. 3d 95, 112-17, 127 (E.D.N.Y. 2019) (applying *Daubert* at class certification, excluding two experts' testimony, and finding predominance lacking because remaining evidence did not establish class-wide injury).

### B. Plaintiffs Fail To Address Or Rebut O'Neil's Failure To Base Her Testimony On Sufficient Facts Or Data

Plaintiffs contend that the "main thrust" of Defendant's argument is that O'Neil "does not have sufficient facts or data to conclude that The Future Model will be *accurate*," but they "need not show, for purposes of Rule 23, that an *accurate* model can be built." (Resp. at 6.) Defendant's argument is not anchored in accuracy but, rather, on O'Neil's failure to connect her opinions to available facts and data through anything other than "*ipse dixit*." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); Mem. at 9-13.

"[A] model for measuring classwide damages relied upon to certify a class under Rule 23(b)(3) must *actually measure* damages that result from the class's asserted theory of injury." *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 7 (2d Cir. 2015) (emphasis added); *see Maurizio v. Goldsmith*, 2002 WL 535146, at *5 (S.D.N.Y. 2002) (excluding expert testimony that had "no facts or data supporting his proposed testimony"); *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 144 (M.D. Pa. 2015) (excluding expert's damages opinion where no "independent investigation or verification" was conducted of available data to ensure it is "accurate and helpful"). Even Plaintiffs' cited precedent supports exclusion where the expert's opinion had "little empirical basis." *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *10 (S.D.N.Y. May 2, 2011) (excluding expert opinion).

6

Here, O'Neil failed to set forth a methodology that is capable of actually measuring damages. (Mem. at 9-13.) O'Neil submitted two declarations outlining a "thought experiment," reliant on untested and untestable assumptions and hypotheticals rather than "analysis grounded in available data." (Mem. at 12.) Plaintiffs do not contest that O'Neil possessed the very data she would use to build her model for 34 Plaintiffs and putative class members for seven complete months, and could have utilized that data to attempt to demonstrate the reliability of her model. (Mem. at 9-13; Resp. at 6-7.) While Plaintiffs contend that doing so would have been "pointless" and "overkill," it appears more likely designed to prevent Defendant from challenging O'Neil's methodology until after a class is certified. (Resp. at 7.) By consciously failing to utilize the data available to her, O'Neil "avoid[ed] presenting any data or information upon which opposing counsel and the jury can utilize to test the correctness of [her] conclusion." *Foodservice*, 729 F.3d at 123 n.8. Plaintiffs' purposeful decision to obfuscate O'Neil's methodology and its ability to measure damages on a classwide basis, using available facts and data, warrants exclusion. (Mem. at 12-13.)

Plaintiffs' reliance on *In Re Vale S.A. Securities Litigation*, 2022 WL 122593, at *19 (E.D.N.Y. 2022), for the proposition that they "need not proffer a model at all" is misplaced. (Resp. at 6.) The *Vale* court permitted expert testimony describing a forthcoming damages methodology in a securities fraud class action because "the model [] outlined is similar in operation and detail to ones that have regularly been approved by other courts in this circuit." *Id*. at *19. Further, the damages model described, which used "discounted cash flow models and scenario analysis," was "the generally accepted method for measuring damages in a securities fraud class action." *Id*. O'Neil's model has no such imprimatur of acceptance. She admits that she has never created a model using her proposed methodology, is unaware of any other such model, and that it

7

is "completely theoretical." (Mem. at 4-5.) Even Plaintiffs acknowledge "the possibility that Dr. O'Neil is wrong that a future damages model can be built." (Resp. at 10.) This case is wholly dissimilar from *Vale*.

Plaintiffs contend Defendant's precedent is inapplicable because it pertains to "complete" reports (Resp. at 7), whereas O'Neil's opinions involve a model she only "proposes to build." (*Id.* at 4-5.) But Rule 702 applies to all expert "testimony" and does not differentiate between testimony in "complete" reports and those set forth in declarations. Fed. R. Evid. 702 (requiring that "the testimony is based on sufficient facts or data" and "the testimony is the product of reliable principles and methods"). Plaintiffs fail to show that O'Neil's methodology is reliable as she describes it now or as she intends to use it in the future, and do not and cannot dispute or distinguish the myriad decisions demonstrating that an unreliable expert methodology that fails to consider sufficient facts or data must be excluded, even at the class certification stage. (Mem. at 9-28.)

  **C. Plaintiffs Do Not Establish That O'Neil's Opinions Are The Product Of Reliable Principles And Methods**

Plaintiffs' contentions that O'Neil's methodology satisfies *Daubert*'s reliability factors lack merit. (Resp. at 8-11.)

*First*, Plaintiffs contend that O'Neil's methodology is merely "a hypothesis" that "can be tested by empirical data (when it becomes available)," and that the testing of hypotheses is "the most basic aspect of the scientific method." (Resp. at 11.) A future pledge to test O'Neil's hypothesis does not render her methodology reliable, and a "key question" for assessing reliability is "whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. O'Neil's failure to actually utilize the data available to her to demonstrate that her proposed methodology can be or has been tested runs afoul of *Daubert*'s requirements, as courts recognize. (Mem. at 10.) Further, a "hypothesis" is merely a "supposition" or "proposed explanation" that has not been proven,

8

Black's Law Dictionary (12th ed. 2024), thus by definition it cannot "actually measure damages that result from the class's asserted theory of injury." *Jacob*, 602 F. App'x at 7.

*Second*, general references to the reliability or testability of regression analyses does not demonstrate the reliability of O'Neil's methodology. A linear regression is a tool, one that must be applied using reliable principles and methods to be admissible. *See Chen-Oster*, 2022 WL 814074, at *8 (excluding opinion on regression model offered in support of class certification, due to the model's "small sample size" and "insufficient data" precluding "a classwide analysis"); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (excluding opinion based on regression model); *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385, 404 (S.D.N.Y. 2014) (same). Defendant cited a litany of decisions finding regression analyses unreliable and excludable. (Mem. at 22-23, 25-28.) Defendant does not contend that regression analyses in the abstract are inherently unreliable, and Defendant's expert similarly acknowledges their potential usefulness. (ECF No. 98-132 ¶ 8.) But, here, Plaintiffs' contention that linear regressions are "frequently used in litigation and regularly approved by courts" does not demonstrate the reliability of O'Neil's analysis. (Resp. at 9.)

*Third*, Plaintiffs' argument that O'Neil's proposed methodology is "generally accepted by the scientific community" is unsupported. (Resp. at 11.) Plaintiffs identify no precedent approving a model used to estimate time spent performing activities based on self-interested hours estimates. O'Neil has never attempted it. (Mem. at 11.) Defendant's expert opines that such an analysis using data from SICM is not possible. (ECF No. 98-132 ¶¶ 15-16.) And the only case Plaintiffs cite for "general acceptance" did not involve time estimates and did not even "accept" a linear regression model. *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *14 (N.D. Cal. 2014) (decertifying class "because [Plaintff]'s proposed damages model fails to provide a means

9

of showing damages on a classwide basis through common proof"). Accordingly, Plaintiffs failed to meet their burden of demonstrating the reliability of O'Neil's methodology.

### D. Plaintiffs Fail To Address Or Rebut Defendant's Showing That O'Neil Did Not Reliably Apply Her Principles And Methods To The Facts

Plaintiffs summarily assert O'Neil "properly applied her proposed regression analysis to the facts of this case" because this "is an absolutely textbook case where linear regression applies." (Resp. at 11.) Such conclusory assertions are insufficient to meet Plaintiffs' burden.

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266. Here, O'Neil's proposed methodology fails to account for myriad variables (such as worker efficiency, improvement of efficiency over time, commuting distances, traffic, and weather, among others) impacting case and task assignments. (Mem. at 22-34.) O'Neil's interview notes establish that a substantial amount of work occurs outside of SICM, and that Plaintiff Reed admitted to falsifying SICM records. (*Id*. at 25-26.) Defendant also established substantial variation in practices among putative class members, including Major Case investigators like Peggy Fischer, who lacked any performance metrics relating to case closure and who used SICM far less frequently than other Plaintiffs. (*Id*.)

Plaintiffs wave away such methodological concerns as "aimed at rebutting the reliability of The Future Model." (Resp. at 11-12.) But Plaintiffs rely on the "The Present Exercise" to support their request for class certification and do not establish any tangible, material difference between the methodology of the "The Present Exercise" and "The Future Model." The same methodological deficiencies are present *now*, at class certification, and prevent Plaintiffs from demonstrating that they can "actually measure damages that result from the class's asserted theory

10

of injury." *Jacob*, 602 F. App'x at 7. O'Neil's failure to reliably apply her methodology to the facts warrants exclusion of her testimony. (*See* Mem. at 22-25.)

### E. Plaintiffs Fail To Establish That O'Neil's Opinions Are Relevant And Helpful

Plaintiffs contend that Defendant's argument that O'Neil's opinions are irrelevant and unhelpful is "a class certification argument that does not belong in a *Daubert* brief" and "ignores the real issue in the predominance inquiry, which is whether damages are attributable to Plaintiffs' liability theory." (Resp. at 6.) Not so.

Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," requiring a "close look" at "whether common questions predominate over individual ones." *Comcast*, 569 U.S. at 34. Where a methodology results in myriad individual inquiries rather than common questions susceptible to answers using common proof, exclusion is appropriate. *Jerue v. Drummond Co., Inc.*, 2023 WL 6610603, at *9 (M.D. Fla. 2023) (excluding regression model as "unhelpful" because class-wide impact would "be applied individually to [each putative class member]" and "that method would create individual inquiries which would predominate over class wide inquiries").

Defendant showed myriad individual issues which overwhelm any common questions. For example, Defendant illustrated that Peggy Fischer's claims are based entirely on time spent assembling and disassembling her workstation each day. (Mem. at 28.) O'Neil fails to account for such evidence, and Plaintiffs offer no explanation whatsoever as to how O'Neil's model, at any stage, could or would account for such individualized issues. (Mem. at 26-28.) And, as O'Neil conceded at her deposition, she would need to "hand tune" or create individualized models for putative class members for whom her proposed model would not work. (Mem. at 27.)

11

A methodology requiring individualized inquiries is unhelpful because it does not establish that "common questions predominate over individual ones" and, to the contrary, demonstrates that Plaintiffs cannot meet Rule 23's predominance requirement. *Id*. (citing *Jerue*, 2023 WL 6610603 at *9). O'Neil's proposed methodology, whether framed as "The Present Exercise" or "The Future Model," cannot calculate damages on a class-wide basis without individualized inquiries, cannot establish that common issues predominate over individualized issues, as required by Rule 23, and is therefore unhelpful.

By failing to rebut or even address these issues, Plaintiffs waived any arguments to the contrary. *See, e.g., Belliard v. Koryeo Int'l Corp.*, 2019 WL 13213671, at *7 (E.D.N.Y. 2019) ("The failure to respond to defendants' argument is tantamount to waiver[.]"). This alone merits exclusion.

### III. CONCLUSION

For the foregoing reasons, GEICO respectfully requests that the Court grant its Motion.

**Dated: August 27, 2025**

Respectfully submitted,

*/s/ Gerald L. Maatman, Jr.*

Gerald L. Maatman, Jr.
(gmaatman@duanemorris.com)
Jennifer A. Riley
(jariley@duanemorris.com)
Gregory Tsonis
(gtsonis@duanemorris.com)
Justin Donoho
(jrdonoho@duanemorris.com)
Gregory S. Slotnick
(gsslotnick@duanemorris.com)
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669

Telephone: (212) 692-1000

**ATTORNEYS FOR DEFENDANT**

Case 2:23-cv-02848-SJB-ST    Document 128-19    Filed 08/27/25    Page 17 of 18 PageID #: 4765

## **CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr., hereby certify that on August 27, 2025, I caused a true and correct copy of the foregoing to be served on counsel of record via email and through filing on the Court's Electronic Court Filing ("ECF") system.

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.
