# EXHIBIT J

1

2   IN THE UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF NEW YORK
3   ------------------------------------x

4   KEITH FISCHER, MICHAEL O'SULLIVAN,
    JOHN MOESER, LOUIS PIA, THOMAS
5   BARDEN, CONSTANCE MANGAN, and
    CHARISE JONES, Individually and on
6   behalf of all others similarly
    situated,

7

8                        Plaintiffs,

9             -against-              Case No.
                                     2:23 Civ. 2848
    GOVERNMENT EMPLOYEES INSURANCE    (GRB)(ARL)
10  COMPANY d/b/a GEICO,

11                        Defendant.

12  ------------------------------------x

13                   August 28, 2024
                     10:06 a.m.

14

15  ***This Transcript Contains a Confidential Section***

16

17         Videotaped Deposition of KEITH FISCHER,

18  taken by Defendant, pursuant to Notice and Agreement,

19  held at 1540 Broadway, New York, New York, before

20  Joseph R. Danyo, a Shorthand Reporter and Notary

21  Public within and for the State of New York.

22

23

24

25



1

2    A P P E A R A N C E S :

3        OUTTEN & GOLDEN LLP
          Attorneys for Plaintiffs
4            1225 New York Avenue, N.W.
              Suite 1200B
5            Washington, D.C. 20005

6        By:   ZARKA SHABIR DSOUZA, ESQ.
                HANNAH COLE-CHU, ESQ.

7

8

          DUANE MORRIS LLP
9         Attorneys for Defendant
             190 South LaSalle Street
10            Suite 3700
              Chicago, Illinois 60603
11

          By:   TIFFANY ALBERTY, ESQ.
12

13

14    Also Present:

15        ADRIENNE CHEMMEL, Videographer

16                    ~oOo~

17

18

19

20

21

22

23

24

25



| | Fischer |
|---|---|
| 1 | |

2      THE VIDEOGRAPHER:  Good morning.  We

3   are now on the record.  The time is 10:06

4   a.m. on August 28, 2024.  This begins the

5   video deposition of Keith Fischer taken in        10:06

6   the matter of Keith Fischer versus

7   Government Employees Insurance Company

8   filed in the United States District Court

9   for the Eastern District of New York, the

10   case number of which is 2:23 Civ.                 10:07

11   2848(GRB)(ARL).

12      My name is Adrienne Chemmel.  I am

13   your videographer today.  The court

14   reporter is Joe Danyo.  We are

15   representing Esquire Deposition Solutions.        10:07

16      Will everyone present please identify

17   themselves and state whom you represent,

18   after which the witness will be sworn in.

19      MS. DSOUZA:  Zarka Shabir Dsouza from

20   Outten & Golden for the Plaintiffs.              10:08

21      MS. ALBERTY:  Tiffany Alberty of

22   Duane Morris on behalf of the Defendant

23   GEICO.

24      THE VIDEOGRAPHER:  Will the court

25   reporter please swear in the witness, and        10:08



```
 1                        Fischer
 2          then, Counsel, you may proceed.
 3    K E I T H    F I S C H E R, having been first
 4    duly sworn by Joseph R. Danyo, a Notary Public,
 5    was called as a witness and testified as follows:    10:08
 6    EXAMINATION BY MS. ALBERTY:
 7          Q.   Can you please state and spell your
 8    first and last name.
 9          A.   Keith, K-e-i-t-h, Fischer,
10    F-i-s-c-h-e-r.                                        10:08
11              MS. ALBERTY:  Let the record reflect
12          that this is the discovery deposition of
13          Mr. Keith Fischer taken pursuant to notice
14          and by agreement of the parties.  Today's
15          deposition will be taken in accordance         10:08
16          with all applicable rules.
17          Q.   Mr. Fischer, I know I introduced
18    myself off the record, and I just stated my name
19    for the record, but I'm Tiffany Alberty.  I'm
20    counsel for GEICO, the Defendant in this case.       10:08
21              I'm going to be asking you a series
22    of questions about your background, your
23    experience at GEICO.  Before we get started, have
24    you been deposed before?
25          A.   Deposed, I mean as far as grand jury,     10:09
```







800.211.DEPO (3376)
EsquireSolutions.com







Fischer

| | | |
|---|---|---|
| 5 | | 10:55 |
| 10 | | 10:56 |
| 15 | | 10:56 |
| 20 | | 10:56 |
| 25 | | 10:57 |



KEITH FISCHER  Confidential
Keith Fischer, et al. vs GEICO

August 28, 2024
41

















                              Fischer

1

2    given cases.

3              When I had the flood cases out in

4    Houston, I spent a few days, I think I did about

5    500 cars a day where I would test the water, salt    11:11

6    or freshwater inside a car.  I would look the car

7    over.  I would inspect the car to see if there

8    was any fraud concerns.  I actually did it at I

9    believe the Texas stadium where the Texans played

10   as the cars were towed in.                            11:12

11        Q.   With the cat cases, though, for that

12   two to three weeks and when we were talking about

13   Houston and Colorado, that would have been either

14   right before or right at the very beginning of

15   2016, correct?                                        11:12

16        A.   Yes, I believe so.  I don't know when

17   the Houston floods were.  That was the last set

18   of catastrophes that I went to.  I want to say

19   that I did hail 60 or 70 cases in a matter of two

20   weeks, and I did take some home with me back to     11:12

21   New York, back to region 2, which I had to work

22   on to their fruition at the end of the claim.

23   Also do my regular cases.

24              So I was still responsible for those

25   cases even when I got back to New York and back     11:12



```
 1                        Fischer
 2    my investigation, and, just to clarify, that
 3    could have been multiple examiners.  It could
 4    have been the PIP.  It could have been the bodily
 5    injury claim, and it could also be an AD          11:21
 6    adjuster.  Whoever was assigned at the top of
 7    that claims file on the claim screen I would have
 8    to touch base with each and every one of those as
 9    to my findings during my investigation and as
10    well as submit a report to them.  My entire       11:21
11    report, whether it be, you know, three pages or
12    20 pages.
13          Q.   How long or short were your typical
14    reports?
15          A.   Depending on the type of case, you     11:22
16    know, a staged accident and maybe a theft could
17    be anywhere from five pages up to, you know,
18    maybe ten pages, 12 pages.  Each claim was
19    different.  It depended on the extent of the
20    investigation.  You know, if someone was hurt or  11:22
21    someone was arrested, if someone, there was a
22    fire and someone was killed, those kind of things
23    were obviously, there's more to my report, but
24    the more detailed the investigation obviously the
25    bigger the report.                                11:22
```



```
 1                    Fischer
 2    maybe 10 max.
 3         Q.   How long would it take to investigate
 4    an auto body fraud case?
 5         A.   Again, depending on the severity and      11:27
 6    how many cars were involved, again, it was
 7    usually enhanced damages that we were concerned
 8    with at body shops.  It was the same types of
 9    damage.  So to review multiple auto damage
10    adjusters' pictures and estimates of fraud, I      11:27
11    mean their estimates of damages, I'm sorry, if I
12    I was given a particular body shop and there was
13    15 cars of concern, that could be a minimum of
14    ten hours.  If it was more cars, it could be 20
15    or 30 with also a lot of street time and a lot of  11:27
16    surveillance.
17         Q.   Did you ever have theft cases that
18    you can open and close the same day?
19         A.   Yes.
20         Q.   Did you have med fraud cases that you     11:27
21    could open and close the same day?
22         A.   Not to my recollection, no.
23         Q.   Did you have social media cases that
24    you could open and close the same day?
25         A.   Yes.                                       11:28
```



                              Fischer

2   persons that were inside the residence.

3        Q.   For arson cases, how long did it take

4   you to investigate those types of claims?

5        A.   Those are more of my heavier cases.      11:29

6   So I mean those could go from a minimum of 15

7   hours all the way up to maybe 30, dependent on

8   from beginning to end and how much time I put

9   into them.  It depended on how many times I had

10  to go to the fire marshal's office.  How many     11:29

11  times I had to go to the New York City Police

12  Department, Nassau.

13          I also had a very big following out

14  in Suffolk County, and those were long drives.

15  So I could be, it all depended on the location,   11:30

16  which borough that it was in it depended on.

17          So I would say a minimum of, you

18  know, 15 to 20 hours all the way up to 30 or 40,

19  depending on the severity of the arson.  The

20  fire.  I shouldn't say arson.  The fire.  It      11:30

21  depended if it damaged the home.  Did it hurt

22  anybody?  Did it damage the car?  Did the police

23  have more to this?  You know, as time went on,

24  from 2016 to 2020, surveillance cameras became

25  more pronounced.  They were out in the street.    11:30



1                      Fischer

2          Q.   As a lead security investigator, I

3    believe you said you were assigned four to six

4    additional cases a month.  Correct?

5          A.    Um-hum.  One to two cases a week.          12:01

6          Q.   Do you know for those who would have

7    been 65s in your theft team if they would have a

8    lower workload than you since they didn't have to

9    have those additional assignments?

10              MS. DSOUZA:  Objection.                     12:01

11         A.   I can't speak for anybody else as far

12   as their workload.  I really didn't deal with it.

13   I mean they may have caught a few less cases.

14   Five, eight different, you know, small cases than

15   me.  That was really about the same.                   12:02

16         Q.   Do you know how their workloads

17   differed?

18         A.    Each case was different, so it all

19   depended on the severity of the type of theft.

20   Where it occurred.  How far you had to drive.         12:02

21   How many people were involved.  Was it just the

22   insured.  Was it a family.  How many witnesses

23   they had.  It all depended on there were so many

24   different criteria as to the claim that you had

25   to speak to.  The more people that the insured     12:02



```
 1                    Fischer

 2    brought in to the theft claim as far as

 3    witnesses, you know, how did he get home, who was

 4    he with prior to, who picked him up after the car

 5    was stolen, who did he call, who did he tell      12:02

 6    about the theft.

 7              So sometimes you have to interview

 8    five or six other people other than just the

 9    insured.  So it all depended on the insured's

10    version of the chain of events.                   12:03

11         Q.   From 2016 until 2020, were you ever

12    disciplined in your capacity as a lead security

13    investigator?

14         A.   No.

15         Q.   Did you ever issue out any             12:03

16    disciplinary action?

17         A.   No.

18         Q.   Do you have any knowledge as to

19    GEICO's disciplinary tiering process?

20         A.   No.  The only thing I can speak to is  12:03

21    summonses.  They did, as you know, Queens County

22    and the five boroughs did change the speed limit

23    as to I think down to 25 miles an hour.  GEICO

24    did inform us that, if we were to receive more

25    than three summonses, moving summonses, red light 12:04
```



                                 Fischer

1

2        Q.   You're stating that GEICO assigned

3   remote cases with fewer points.  What was a

4   regular theft case worth?  What was a remote

5   theft case worth on this point-based system that      02:06

6   you're stating?

7        A.   They were worth the same as far as,

8   you know, I mean, if it was a high-level case, I

9   don't know if there was actually any, they graded

10  it at all.  It was just you were told you want to     02:06

11  catch more.

12       Q.   Okay, but as far as the point system

13  and the matrix for the point system, you can't

14  sit here today and tell me what that point system

15  was?                                                  02:06

16       A.   No, I can't.

17       Q.   Why do you believe that GEICO assumed

18  remote work took less time than in-person field

19  work?

20       A.   Why it took more or less?                   02:07

21       Q.   Less time than in-person field work.

22       A.   Oh, well, I didn't have to travel,

23  windshield time from Brooklyn to Queens, Brooklyn

24  to Manhattan.  I couldn't go out and do canvasses

25  of neighbors and things like that.  Things that I     02:07



1                    Fischer

2              MS. ALBERTY:  Objection.

3         A.   Yes.

4              MS. DSOUZA:  I think that is it.

5              MS. ALBERTY:  I don't have any                    05:33

6         further questions.  Thank you.

7              MS. DSOUZA:  Thank you.

8              THE VIDEOGRAPHER:  This marks the end

9         of the deposition.  We are going off the

10        record at 5:33 p.m.                                    05:34

11             (Time noted:  5:33 p.m.)

12                          _____

13

14   Subscribed and sworn to

15   before me this____day of_____, 2024.

16   _____

17

18

19

20

21

22

23

24

25



1

2              C E R T I F I C A T I O N

3

4          I, JOSEPH R. DANYO, a Shorthand Reporter

5    and Notary Public, within and for the State of New

6    York, do hereby certify:

7              That I reported the proceedings in the

8    within entitled matter, and that the within transcript

9    is a true record of such proceedings.

10             I further certify that I am not related, by

11   blood or marriage, to any of the parties in this

12   matter and that I am in no way interested in the

13   outcome of this matter.

14             IN WITNESS WHEREOF, I have hereunto set my

15   hand this 2nd day of September, 2024.

16

17   _____

18                    JOSEPH R. DANYO

19            STATE OF NEW YORK

20            My Commission Expires 2/20/2027

21

22

23

24

25



800.211.DEPO (3376)
EsquireSolutions.com