# EXHIBIT K

```
 1   UNITED STATES DISTRICT COURT

 2   EASTERN DISTRICT OF NEW YORK
     ------------------------------------X
 3   KEITH FISCHER, MICHAEL O'SULLIVAN,
     JOHN MOESER, LOUIS PIA, THOMAS
 4   BARDEN, CONSTANCE MANGAN, and
     CHARISE JONES, individually and on behalf
 5   of all others similarly situated,

 6            Plaintiffs,

 7                              Case No.:
                                2:23 Civ. 2848
 8                              (GRB) (ARL)
          -against-
 9
     GOVERNMENT EMPLOYEES INSURANCE
10   COMPANY D/B/A GEICO,

11            Defendants.
     ------------------------------------X
12

13
     DEPOSITION of MARGARET A. FISCHER
14

15
          December 19, 2024
16

17        New York, New York

18

19

20

21

22   Reported By:

23   Marina Dubson

24   Job #: J12144278

25
```



1

2
              DATE: December 19, 2024

3
              TIME: 10:00 a.m.

4

5

6
       DEPOSITION of MARGARET A. FISCHER, an

7
opt-in Plaintiff herein, taken by the

8
Defendant, pursuant to Federal Rules of

9
Civil Procedure, and Notice, held at the

10
Duane Morris LLP, 1540 Broadway, 14th

11
Floor, New York, New York 10036, at the

12
above-mentioned date and time, before

13
MARINA DUBSON, a Notary Public of the State

14
of New York.

15

16

17

18

19

20

21

22

23

24

25



1  APPEARANCES:

2

3  OUTTEN & GOLDEN, LLP
   Attorney for Plaintiffs
4  685 Third Avenue, 25th Floor,
   New York, New York 10017
5  (212) 245-1000
   BY: SABINE JEAN, ESQ.
6      Sjean@outtengolden.com

7      ZARKA DSOUZA, ESQ.
       Zdesouza@outtengolden.com
8

9

10 DUANE MORRIS, LLP
   Attorney for Defendant
11 1540 Broadway, 14th Floor,
   New York, New York 10036
12 (212)471-1856
   BY: GREG TSONIS, ESQ.
13 Gtsonis@duanemorris.com

14

15
   Gil Peretz, Shereck Video, videographer,
16

17

18

19

20

21

22

23

24

25



1          IT IS HEREBY STIPULATED AND AGREED,

2     by and between the attorneys for the

3     respective parties, as follows:

4

5     THAT all objections, except as to the form

6     of the questions, shall be reserved to the

7     time of the trial;

8

9     THAT the within examination may be signed

10    and sworn to before any Notary Public with

11    the same force and effect as if signed and

12    sworn to before the Court;

13

14    THAT filing of the original transcript of

15    the examination is waived.

16

17

18

19

20

21

22

23

24

25



1         M. A. Fischer

2         THE REPORTER:  Are you ordering

3    a copy of this transcript?

4         MS. JEAN:  Yes, copy.

5         MR. TSONIS:  Regular turnaround

6    final, no rough.

7                   XXXX

8         THE VIDEOGRAPHER:  Good

9    morning.  We are on the record, and

10   the time now is 10:12 a.m.

11        Today's date is December 19,

12   2024.

13        This is media one in the video

14   deposition of Ms. Margaret Fischer --

15   one second -- Margaret Fischer, in

16   the matter of Government Employee

17   Insurance Company -- I'm sorry.

18        In the matter of Keith Fischer

19   versus Government Employee Insurance

20   Company, index number 2:23 Civ. 2848

21   (GRB) (ARL).

22        My name is Gil Peretz.  I am

23   the legal videographer with Shereck

24   Video in association with Esquire.

25        Today we're at the offices of



1          M. A. Fischer

2    Duane Morris, LLC, located at 1540

3    Broadway on the 14th floor in New

4    York City, New York.

5          Would counsel please identify

6    yourself and state whom they

7    represent.

8          MS. DSOUZA:  This is Zarka

9    Dsouza from Outten & Golden on behalf

10   of plaintiffs.

11         Joining me today is my

12   colleague, Sabine Jean, also from

13   Outten & Golden, also representing

14   the plaintiffs.

15         MR. TSONIS:  Gregory Tsonis

16   from Duane Morris, LLC, on behalf of

17   defendant Geico.

18         THE VIDEOGRAPHER:  Thank you.

19         The court reporter with us

20   today is Marina Dubson with Esquire.

21         Will the court reporter please

22   swear in the witness.

23         (Whereupon, the witness was

24   sworn in by the Court Reporter.)

25                 XXXX



```
 1                  M. A. Fischer
 2   M A R G A R E T   A.   F I S C H E R,
 3          called as a witness, having been
 4          first duly sworn by a Notary Public
 5          of the State of New York, was
 6          examined and testified as follows:
 7   EXAMINATION
 8   BY MR. TSONIS:
 9        Q.    Good morning, Ms. Fischer.
10        A.    Good morning.
11        Q.    Can you please state and spell
12   your name for the record.
13        A.    It's Margaret, M-A-R-G-A-R-E-T,
14   Fischer, F-I-S-C-H-E-R.
15        Q.    All right.  And have you ever
16   gone by any other names?
17        A.    Peggy.
18        Q.    Peggy.  Any other last names?
19        A.    My maiden name is Meehan,
20   M-E-E-H-A-N.
21        Q.    And, Ms. Fischer, what's your
22   current address?
23        A.    ███████████████████████████
24   ███████████
25        Q.    So, my name -- as I introduced
```



```
 1                  M. A. Fischer
 2              MS. DSOUZA:  I'd just like
 3         to -- Counsel, could you just wait
 4         for the witness to complete her
 5         answer before you ask the next
 6         question?
 7              MR. TSONIS:  Sure.
 8    BY MR. TSONIS:
 9         Q.    I think you said that you would
10    be assigned cases by your supervisor; is
11    that right?
12         A.    Correct.
13         Q.    Approximately how many cases
14    would you be assigned in a month?
15         A.    I believe four.
16         Q.    Four cases per month?
17         A.    I believe so.
18         Q.    All right.  And what kinds of
19    things would you have to do to investigate
20    those cases?
21         A.    I would have to run background
22    searches.  I would have to run data
23    searches, review billing, review public
24    records, review previous cases through our
25    case system.  I would assign clinic
```



1                    M. A. Fischer

2    period of time.  They weren't once-and-done

3    quick cases.

4         Q.    Sure.

5         A.    Yeah.

6         Q.    So, in terms of, you know, the

7    time it takes to close one of your cases

8    versus cases handled by either field or

9    desk investigators, your cases would take

10   substantially longer?

11        A.    Months.

12        Q.    There were some that even

13   lasted years?

14        A.    There could be, yeah.

15        Q.    Okay.  So, I guess, knowing

16   that you referenced having to update, you

17   know, a case every 15 days; is that right?

18        A.    Yes.

19        Q.    All right.  Besides that 15-day

20   requirement, was there any other, you know,

21   timeline you had to meet in terms of

22   entries you had to make in SICM?

23        A.    In the beginning of a case when

24   you opened it, there were -- there was

25   standards of things that needed to be



```
 1                  M. A. Fischer
 2        A.    As the day would come to an
 3  end, I would see what needed to still be
 4  accomplished in that day to fulfill my
 5  diary, and I would be catching up, making
 6  sure that everything was -- that I had to
 7  accomplish in that day was done.
 8        Q.    Okay.
 9        A.    To the best of my ability.
10        Q.    And, I guess, is that things
11  that are -- that you had to do to complete
12  a diary entry that day?
13        A.    Some of it was, yes.
14        Q.    Okay.  So, I guess, you know,
15  if it's due the next day or the day
16  after -- well, step back for a moment.
17              You said the diary sort of
18  entries were every 15 days you had to
19  submit, right?
20        A.    Right.
21        Q.    Is that 15 business days or 15
22  real-time days?
23        A.    I think it was 15 business
24  days.
25        Q.    Okay.  So, essentially, three
```



```
 1              M. A. Fischer
 2   half hours a week.
 3        Q.    Okay.  And that includes the
 4   meal period?
 5        A.    Yes.
 6        Q.    All right.  So, we say in
 7   paragraph eight is when, essentially, COVID
 8   started, right?
 9        A.    Yes.
10        Q.    And you write here in the
11   second full sentence:  I was specifically
12   assigned to work on cases of medical fraud,
13   and Geico kept my caseload steady.  So,
14   during this period, my overtime hours
15   slightly decreased.
16              Let me pause there for a
17   second.
18              You were always assigned to
19   work on cases of medical fraud during this
20   time period, right?
21        A.    Correct.
22        Q.    The 2016 to retirement time
23   period?
24              And you're saying Geico kept
25   your caseload steady, right?
```



                        M. A. Fischer

1

2          A.    To the COVID time and then they

3    stopped.  We weren't getting new cases.

4          Q.    So, when you say, Geico kept my

5    caseload steady, is what you mean, I was

6    not being assigned new cases?

7          A.    Correct.

8          Q.    Okay.  So, without any new

9    cases being assigned, you were still

10   working overtime, you're saying?

11         A.    Yes.

12         Q.    And that was just from the

13   existing caseload you had?

14         A.    That was also because every day

15   I had to be on at 9:00 a.m.  I had to build

16   my station every morning.  I had to set up

17   my computers, my monitors, my -- get

18   everything set online, ready to go.  I had

19   to be -- 9:00 o'clock, I had to be up and

20   running every morning, so that was time

21   before.  And at the end of my shift, I had

22   to break everything down and -- and also I

23   was working on stuff.  There was stuff I

24   would work extra on.

25         Q.    So, if I'm understanding



```
1              M. A. Fischer
2              MR. TSONIS:  Let's go off the
3          record and take a break.
4              THE VIDEOGRAPHER:  We are going
5          off the record.  The time now is
6          12:38 p.m.
7              (Whereupon, a short break was
8          taken at this time.)
9              THE VIDEOGRAPHER:  We are back
10          on the record, and the time now is
11          1:34 p.m.
12      Q.    All right, Ms. Fischer.  We
13  were looking at Exhibit 1, your
14  declaration, before we went on lunch.
15              Can you turn to paragraph 9 of
16  your declaration.  So, from December 2016
17  to March 2020, it states that you said your
18  regular hours worked were approximately
19  41.5 to 42 hours per week; and from
20  March 2020 to September 2020, your regular
21  hours worked were approximately 40.75 hours
22  per week.  So, I'll stop there.
23              Is this accurate?
24      A.    Yes, to the best of my memory,
25  yes.
```



```
 1                    M. A. Fischer
 2        Q.    All right.  So, if you recall,
 3   just prior to going on lunch, we were also
 4   talking about the COVID timeframe, from
 5   March 2020 until the time you retired,
 6   right?
 7        A.    Uh-huh.
 8        Q.    And we were talking about the
 9   time that you said you spent setting up and
10   taking down your work station each day?
11        A.    Correct.
12        Q.    Does this incorporate that
13   time?
14        A.    The 40.75, yes, and also other
15   overtime that I would be doing during that
16   time.
17        Q.    Okay.  So, I just want to be
18   clear because I thought you said the
19   opposite before we went to lunch and I just
20   want to make sure that we're right.
21              The 40.75 hours per week, if
22   you were scheduled for 38.75 hours, means
23   two hours additional each work week that
24   you're claiming, right?
25        A.    Yes.
```



```
 1                 M. A. Fischer
 2        Q.    All right.  Does that two hours
 3   include the 10 to 15 minutes setting up
 4   your workstation and the 10 to 15 minutes
 5   taking down your workstation each day?
 6        A.    Yes.
 7        Q.    Okay.  Whatever time remains,
 8   if I understand you correctly, you're
 9   saying would be other work that you did?
10        A.    Yes.
11        Q.    Now, you say in the rest of
12   that sentence:  And my last regular pay was
13   $41.95 per hour.
14               I'll pause there again.
15               Were you compensated on an
16   hourly rate the entire time you worked as
17   an investigator?
18        A.    Yes.
19        Q.    Was there ever a period of time
20   in which you were paid an hourly rate but
21   the way that your hourly rate was
22   calculated changed?
23        A.    I don't understand.
24        Q.    Sure.  So, was there a period
25   of time where you would not potentially get
```



```
 1                  M. A. Fischer
 2         A.    A lot.
 3         Q.    Okay.  As a major case
 4   investigator, we said that your caseload
 5   did not increase, right?
 6         A.    Correct.
 7         Q.    In fact, your caseload
 8   decreased because you weren't assigned new
 9   cases?
10         A.    Correct.
11         Q.    Okay.  If you continue on in
12   that paragraph, bottom of page 5 going onto
13   page 6, it says:  As a result, to keep up
14   with his escalating workload and Geico's
15   demanding performance metrics, Fischer
16   typically began working at approximately
17   6:00 a.m. and finished his work for the day
18   at approximately 11:00 p.m., accounting for
19   some gaps in his workday for meals and
20   other self-care from March 2020 through
21   April 2020 -- plaintiff Fischer worked
22   between approximately 60 and 75 hours per
23   week in most full workweeks, i.e., weeks
24   with no days lost to holidays or other time
25   off.
```



1              M. A. Fischer

2            THE VIDEOGRAPHER:  This

3        concludes the video deposition of

4        Ms. Margaret Fischer.  The time now

5        is approximately 4:48 p.m.  We are

6        off the record.  Thank you, everyone.

7              (Whereupon, at 4:50 P.M., the

8        Examination of this Witness was

9        concluded.)

10

11                _____

12                    MARGARET. A FISCHER

13

14    Subscribed and sworn to before me

15    this _____ day of _____ 20____.

16    _____

17        NOTARY PUBLIC

18

19

20

21

22

23

24

25



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                        M. A. Fischer

 2                   C E R T I F I C A T E

 3

 4    STATE OF NEW YORK        )
                               :
 5    COUNTY OF RICHMOND       )

 6

 7         I, MARINA DUBSON, a Notary Public for

 8    and within the STATE OF NEW YORK, do hereby

 9    certify:

10         That the witness whose examination is

11    hereinbefore set forth was duly sworn and

12    that such examination is a true record of

13    the testimony given by that witness.

14         I further certify that I am not

15    related to any of the parties to this

16    action by blood or by marriage and that I

17    am in no way interested in the outcome of

18    this matter.

19         IN WITNESS WHEREOF, I have hereunto

20    set my hand this 19th day of December 2024.

21

22

23    _____
                 MARINA DUBSON

24

25
```

