**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated, | Case No. 2:23-CV-02848 |
| Plaintiffs, | District Judge Sanket J. Bulsara |
| v. | Magistrate Judge Steven L. Tiscione |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Gerald L. Maatman, Jr.
(*gmaatman@duanemorris.com*)
Jennifer A. Riley
(*jariley@duanemorris.com*)
Gregory Tsonis
(*gtsonis@duanemorris.com*)
Gregory S. Slotnick
(*gsslotnick@duanemorris.com*)

**DUANE MORRIS LLP**
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone: (212) 692-1000

**ATTORNEYS FOR DEFENDANT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................3

LEGAL STANDARD.......................................................................................................11

ARGUMENT ...................................................................................................................12

I. CERTAIN PLAINTIFFS CANNOT SHOW THAT THEIR ALLEGEDLY UNPAID ACTIVITIES WERE COMPENSABLE WORK.................................................12

    A. Commute Time Underlying Plaintiffs' Claims Is Not Compensable ................... 13

    B. Plaintiff M. Fischer Bases Her Claims On Non-Essential, Non-Compensable Tasks ................................................................................................. 15

II. CERTAIN PLAINTIFFS CANNOT SHOW THAT GEICO OWES THEM ADDITIONAL COMPENSATION .......................................................................16

    A. Several Plaintiffs Repudiated All Or Substantial Portions Of Their Claims For Allegedly Uncompensated Work .................................................. 16

    B. Plaintiffs Cannot Double Recover For Already-Compensated Overtime............. 18

    C. Plaintiff Wendling Cannot Submit Evidence Of Allegedly Unpaid Wages ......... 18

III. CERTAIN PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY CANNOT SHOW THAT GEICO HAD KNOWLEDGE OF ANY ALLEGED OFF-THE-CLOCK WORK .........................................................................19

    A. The Varied Bases On Which Plaintiffs Assert GEICO Had Actual Knowledge Of Off-The-Clock Work All Fail As A Matter Of Law ................... 19

        1. Plaintiffs Brust, Caniglia Jr., Costanzo, Grey, Jones And Reed Each Failed To Raise Off-The-Clock Work, Precluding Actual Knowledge By GEICO ............................................................................ 20

        2. Plaintiffs K. Fischer, M. Fischer, Munoz, Mangan, And Pia Made Only Generalized Complaints About Workload, Precluding Actual Knowledge ................................................................................. 20

        3. Plaintiffs' Failure To Record Work In GEICO's Timekeeping System Precludes Actual Knowledge ........................................................ 22

    B. Plaintiffs Cannot Establish Constructive Knowledge Of Off-The-Clock Work ........................................................................................................ 27

i

1.    Plaintiffs Routinely Recorded And Could Have Recorded Off-The-Clock Work In GEICO's Timekeeping System, Depriving GEICO Of Constructive Notice ................................................................. 28

2.    Plaintiffs Barden, Brust, Mangan, Pia, and Jones Deliberately Deprived GEICO Of Knowledge Of Unrecorded Work .......................... 29

3.    Plaintiffs Cannot Otherwise Establish GEICO's Constructive Knowledge Through Computerized Records Apart From Its Timekeeping System .............................................................. 30

IV.    PLAINTIFFS CANNOT DEMONSTRATE THAT GEICO WILLFULLY VIOLATED THE FLSA OR NYLL .............................................. 32

CONCLUSION .......................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017)................................. 21-22, 28, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................................12

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).....................................12, 21

*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) ...............................................12

*Campbell v. City of New York,* 2021 WL 826899 (S.D.N.Y. 2021)................................. 22, 24-25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................19

*Chang v. Clean Air Car Serv. & Parking, Corp.*, 2024 WL 32188330 (E.D.N.Y. 2024).............18

*Chavez-DeRemer v. Sarene Servs., Inc.*, 2025 WL 1127703 (E.D.N.Y. 2025)...........................13

*Choi v. SD Tools, Inc.*, 2024 WL 4989224 (E.D.N.Y. 2024) ........................................19

*Daniels v. 1710 Realty LLC*, 2011 WL 3648245 (E.D.N.Y. 2011) ...............................................21

*Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986) .......................................................28

*Edwards v. City of New York*, 2012 WL 1694608 (S.D.N.Y. 2012) ...........................23-24, 26-27

*Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016) ......................................30

*Fangrui Huang v. GW of Flushing I, Inc.*, 2021 U.S. Dist. LEXIS 2505 (E.D.N.Y. 2021).........27

*Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) ...........................29, 33

*Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014)......................................................22

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007)....................................................15

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) ................................................. 12-13

*Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339 (S.D.N.Y. 2010)............................................16

*Heredia v. Americare, Inc.*, 2020 WL 3961618 (S.D.N.Y. 2020)..........................................22, 24

*Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775 (8th Cir. 2009)................................................30-31

*Hinterberger v. Cath. Health Sys.*, 299 F.R.D. 22 (W.D.N.Y. 2014)...........................................29

*Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516 (2d Cir. 1998)...........................................19

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) .............................................................. 14-15

*Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005) ................................................12

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 2019 WL 1244291 (S.D.N.Y. 2019) ............18

*Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423 (N.D.N.Y. 2014) ......................................12

*Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y. 2010)...............................................20, 28

*Kavanagh v. Grand Union Co.*, 192 F.3d 269 (2d Cir. 1999) ........................................13

*Kellar v. Summit Seating Inc.*, 664 F.3d 169 (7th Cir. 2011) ........................................32

*Kemp v. Regeneron Pharmaceuticals, Inc.*, 117 F.4th 63 (2d. Cir. 2024)...................................11

*Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98 (S.D.N.Y. 2009).........................13

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)............................... 12-15, 19, 21, 32

*Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212 (N.D. Ga. 2020) ................................................................................... 21-22

*Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ..............................17

*MacEachern v. Quicken Loans, Inc*, 2016 WL 5118380 (E.D. Mich. 2016) ...............................30

*Micone v. Levering Reg'l Health Care Ctr., L.LC.*, 132 F.4th 1074 (8th Cir. 2025) ...................28

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) ...........................................30

*Perry v City of New York*, 78 F.4th 502 (2d Cir. 2023) ........................................ 25-27

*Ridinger v. Dow Jones & Co.*, 651 F.3d 309 (2d Cir. 2011) ...........................................26

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) ...........................................14, 16

*Stanislaw v. Erie Indem. Co.*, 2012 WL 517332 (W.D.Pa. 2012) ...........................................29

*White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) ................................................................................... 21-22, 28

*Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378 (6th Cir. 2006) ........................... 22, 24-25, 29

*Xing v. Mayflower Int'l Hotel, Grp. Inc.*, 2022 WL 4644214 (E.D.N.Y. 2022)...........................17

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ...........................................32

**Statutes**

29 U.S.C. § 207 .................................................................................................................17

29 U.S.C. § 207(a)(1) ........................................................................................................12

29 U.S.C. § 213 .................................................................................................................17

29 U.S.C. § 254(a)(1) ........................................................................................................13

29 U.S.C. § 254(a)(2) ........................................................................................................15

29 U.S.C. § 255(a) .............................................................................................................32

**Other Authorities**

29 C.F.R. § 541.200 ..........................................................................................................17

29 C.F.R. § 785.12 ............................................................................................................19

29 C.F.R. § 785.35 ............................................................................................................13

29 C.F.R. § 790.6 ..............................................................................................................14

29 C.F.R. § 790.7(b) ..........................................................................................................15

29 C.F.R. § 790.7(h) ..........................................................................................................15

12 NYCRR § 142-2.2 ........................................................................................................12

12 NYCRR. § 142-2.14(c)(4)(ii)(c) ..................................................................................17

12 NYCRR § 142-3.1(b) ...................................................................................................13

Fed. R. Civ. P. 56(a) .........................................................................................................11

Rule 56 ..............................................................................................................................18

Rule 56.1 .............................................................................................................................3

## **INTRODUCTION**

Summary judgment is appropriate on the claims of the 16 Named and Opt-in Plaintiffs who participated in discovery (the "Plaintiffs"). Each Plaintiff brings claims against GEICO related to his or her alleged off-the-clock work, supposedly occurring at different times, in different locations, under different supervisors with different practices, and while performing different tasks. Although Plaintiffs recorded and were paid for 1,139 of overtime during at least 301 workweeks during the relevant time period, they contend that GEICO under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") should have paid them additional hours that they spent on non-compensable activities and failed to record. The undisputed record shows that their claims fail for myriad separate reasons.

*First*, certain Plaintiffs cannot show that the time for which they seek compensation was compensable. Keith Fischer seeks overtime wages for time that he spent napping. Costanzo, K. Fischer, Reed, Pia, and Jones seek pay for time spent commuting to and from work. Peggy Fischer seeks pay for time that she spent each day setting up and taking down her home workstation because she wanted to work and eat dinner at the same table. These and other activities on which certain Plaintiffs base their claims are not compensable as a matter of law, foreclosing their claims and warranting summary judgment.

*Second*, certain Plaintiffs cannot show that they were entitled to overtime compensation, either because they were exempt from overtime requirements or because they did not work more than 40 hours per workweek. Jones worked as a trainer, was paid a salary, and did not qualify for overtime. Munoz admits that she consciously decided not to work more than 40 hours in a workweek, precluding any overtime claim. Grey and King took leaves of absence for which they cannot seek compensation. These circumstances, and others, bar Plaintiffs' claims.

*Third*, certain Plaintiffs cannot show that GEICO had actual knowledge of any alleged off-the-clock work. Many Plaintiffs regularly recorded overtime hours, for which GEICO paid them in full, demonstrating that they knew how to notify GEICO if they worked overtime. Grey admits that GEICO disciplined him for failing to properly report all of his work hours. Caniglia, Jr., Peggy Fischer, and Grey, among others, conceded at their depositions that they never informed their supervisors that they worked off the clock, depriving GEICO of actual knowledge.

*Fourth*, GEICO lacked constructive knowledge of any alleged off-the-clock work for various Plaintiff-specific reasons. Brust, Jones, and K. Fischer made vague, generalized, or cryptic statements that are insufficient, as a matter of law, to establish notice of off-the-clock work. Other Plaintiffs point to timestamps in emails or the case management system as proof of overtime, but these too cannot establish that GEICO knew or should have known that Plaintiffs worked additional time, including overtime, that they failed to record in GEICO's timekeeping system. An employer need not divine off-the-clock work from such systems, and most Plaintiffs worked flexible schedules or followed idiosyncratic processes such that timestamps could not even establish off-the-clock work. Other Plaintiffs, including Barden, Caniglia, Jr., and O'Sullivan, admit that they intentionally hid their overtime hours to inflate performance metrics and secure better pay increases.

*Fifth*, in the alternative, no reasonable jury could conclude that any alleged violation of the NYLL or FLSA was willful. GEICO maintained written policies forbidding off-the-clock work, encouraged employees to record all hours, including overtime, and disciplined anyone identified as working off the clock. Summary judgment on the issue of willfulness is warranted.

In sum, no reasonable jury could find in Plaintiffs' favor, and Plaintiffs cannot demonstrate that any genuine dispute of material fact precludes summary judgment on their claims. Thus, GEICO is entitled to judgment as a matter of law.

## BACKGROUND

GEICO is a national insurance company. (Def.'s Rule 56.1 Statement of Undisputed Facts ("SOF") ¶ 1.) On April 17, 2023, Plaintiffs Keith Fischer ("K. Fischer"), Michael O'Sullivan, John Moeser, Luis Pia, Thomas Barden, Constance Mangan, and Charise Jones sued GEICO asserting claims under the FLSA and NYLL. Thereafter, Albert Brust, Louis Caniglia, Jr., Craig Costanzo, Margaret "Peggy" Fischer ("M. Fischer"), Michael Grey, Daniel King, Maria Munoz, Michael Reed, and Ted Wendling joined this matter as opt-in Plaintiffs. Each Plaintiff worked in GEICO's Special Investigations Unit ("SIU"). (*Id* ¶ 2-4.)

At all relevant times, GEICO maintained a strict time-recording policy. GEICO emphasized in its employee handbook that "**[n]on-exempt associates are never allowed to work 'off the clock.'**" (SOF ¶ 6 (emphasis in original).) GEICO instructed its employees that, if anyone ever asked them to work without reporting their hours, they should seek support from GEICO's human resources department, Associate Relations, or call the Berkshire Hathaway ethics hotline. (*Id.*)

GEICO trained and required Plaintiffs to accurately record all hours worked, including any overtime, in its timekeeping system. (*Id.* ¶ 5.) By 2023, some Plaintiffs recorded hours via mobile application. (*Id.* ¶¶ 12, 45, 176.) Plaintiffs were responsible for recording their time and verifying its accuracy. (*Id.* ¶¶ 7-13.) Some supervisors required employees to seek preapproval before submitting overtime, while others simply required documentation regarding the business purpose for working overtime. (*Id.* ¶¶ 40-41, 69-70, 161.)

Despite unambiguous policies and direction, Plaintiffs maintain that they worked off-the-clock and that GEICO violated the FLSA and the NYLL by failing to pay them accordingly.

**Barden** was a special investigator in SIU in the Albany, New York region from September 2019 to December 2022. (SOF ¶¶ 14-15.) He worked approximately eight hours per day, though his work hours "were flexible." (*Id*. ¶¶ 16-17.) He alleges that he worked between 55 and 60 hours per week beginning in August 2020. (*Id*. ¶ 20.) Around that time, his supervisor Chet Janik instructed him, "if you're working extra hours, put in for it. Document it." (*Id*. ¶ 18.) Barden received overtime pay for the overtime hours that he recorded. (*Id*. ¶ 19.) Barden believed that working off the clock would net him better performance metrics resulting in pay increases. (*Id*. ¶ 21.)

**Brust** worked for GEICO as a Senior Field Security Investigator from approximately September 2019 to February 2024 and primarily investigated fraud and theft claims in New York City and the surrounding counties. (SOF ¶ 23.) Brust worked "flextime," meaning he could adjust his day-to-day schedule as he saw fit. (*Id*. ¶¶ 25-26.) Brust estimates that he worked approximately 50 hours per week on average. (*Id*. ¶ 24.) His supervisor Gerry Cassange instructed him, "don't forget to put in any overtime if worked." (SOF ¶¶ 28.) Brust recorded overtime hours in 22 workweeks, for which GEICO compensated him accordingly, though he claims he worked hours that he did not record. (SOF ¶ 27.) At an unspecified time, Brust informed Cassagne that he was working while watching hockey games, but he never reported that he was "working off the clock" or working overtime without compensation. (*Id*. ¶¶ 29-30.) Brust never informed GEICO's human resources that he was not receiving pay for all hours worked. (*Id*. ¶ 30.) Brust admitted that he often did not log or otherwise report overtime because he wanted to improve his performance metrics in hopes of receiving merit pay increases. (*Id*. ¶ 32.)

4

**Caniglia, Jr.** was a GEICO senior field security investigator from 2015 to December 2023, investigating fraud around New York City and Long Island. (*Id*. ¶ 34.) Caniglia, Jr. generally set his own work schedule using "flextime." (*Id*. ¶ 37.) He contends that he worked approximately 43 to 50 hours per week. (SOF ¶ 36.) His supervisor, Cassagne, instructed him, "If you plan on working overtime … you must enter it into this timesheet." (SOF ¶ 41.) Cassagne added, "[Y]ou can work the overtime and you will get paid for it. You have to document your overtime hours and be able to verify why it was needed." (*Id.* ¶ 40; SOF Ex. 30.) No supervisor ever instructed Caniglia, Jr. to work off the clock or informed him that overtime was unavailable. (*Id*. ¶ 44.) Indeed, he recorded overtime in at least 32 workweeks, regularly requested overtime, and at least once emailed his supervisor, specifically stating that "I am requesting overtime" before working more than 40 hours in a week. (SOF ¶ 43.) He never reported that he worked hours not reflected on his paycheck. (*Id*. ¶ 46.) Caniglia, Jr. believed that appearing to close cases faster would result in a pay increase. (*Id*. ¶ 48.)

**Costanzo** began working for GEICO in 2014 as a Senior Field Security Investigator and, since 2019, as Lead Security Investigator. (SOF ¶ 50.) Costanzo works in upstate New York. (*Id*.) "[I]f [Costanzo] worked overtime, [he] knew that [he was] supposed to document that" in GEICO's timekeeping system, and he recorded overtime in 59 workweeks between April 2017 and September 2024. (SOF ¶ 56.) Costanzo submitted overtime requests to supervisor Chet Janik, which were approved and paid, but Costanzo did not report that he was working hours beyond what he recorded. (*Id*. ¶¶ 55, 58, 61.) Costanzo spends three hours per day commuting to and from work and acknowledged that one hour of claimed overtime per day could be attributable to his commute. (*Id*. ¶¶ 53-54.) Costanzo stopped working off the clock at some point in 2022 or 2023. (*Id*. ¶ 60.)

5

**K. Fischer** was an SIU investigator from 1999 to 2004 and Lead Investigator from 2004 to 2020, based in New York City and Long Island. (*Id*. ¶ 65.) K. Fischer entered his time into GEICO's timekeeping software. (*Id*. ¶ 71.) K. Fischer understood GEICO's policy to record all time worked, and neither his supervisor (Cassagne) nor his manager (Bill Newport) told him to work off the clock. (*Id*. ¶¶ 69-72.) GEICO paid K. Fischer for any overtime that he recorded. (*Id*. ¶ 68.) K. Fischer alleges that Cassagne told him to control his overtime and "you have to do what you have to do to complete your work." (*Id*. ¶ 69.) K. Fischer estimates that he worked 50 to 65 hours per week from 2016 through March 2020, but including time spent commuting to and from work and napping as much as two hours per day. (SOF ¶¶ 73-74.) At some point, K. Fischer asked Newport, "who's watching the store here?" (*Id*. ¶ 82.)

**M. Fischer** worked as a Medical Major Case investigator from 2016 through her retirement in November 2020. (*Id*. ¶ 87.) M. Fischer's supervisor was Danielle Perdomo from 2016 to 2018 and then Kristen Slack until she retired. (*Id*. ¶ 88.) As of 2016, M. Fischer's work schedule was 9:00a.m. to 5:30p.m. (*Id*. ¶ 89.) She alleges that she worked 41.5 to 42 hours per week from December 2016 to March 2020, and 40.75 hours per week from March to September, 2020. (*Id*.) Her estimates include 20 to 30 minutes each day to set up and break down her workstation. (*Id*. ¶ 90.) M. Fischer understood that GEICO required her to accurately log all time worked, including overtime, but she rarely requested overtime because "[i]t has been the trend in GEICO that people just worked to get their work done for the day" and she "didn't feel that it would be approved." (*Id*. ¶¶ 93-94.) GEICO paid her for any overtime she recorded. (*Id*. ¶ 95.)

**Grey** was a senior field security investigator in the Buffalo, New York region from 2003 to December 2023 when he transitioned to a desk position. (*Id*. ¶ 102.) As a field investigator, he had "flextime" and set his own schedule. (*Id*. ¶ 105.) Grey asserts that he worked approximately

6

45 to 50 hours per week.  (*Id.*)  He took leaves of absence from November 2019 to December 2019 and again from November 2020 to January 2021.  (*Id.* ¶ 104.)  In 2018, Grey's supervisor Chet Janik instructed him, "[i]f you are working beyond 7.75 hours in a day, you should be putting in for the overtime pay."  (*Id.* ¶107.)  Janik never told him to work off the clock.  (*Id.* ¶ 111.)  Grey requested, worked, recorded, and was paid for overtime in at least 39 workweeks.  (*Id.* ¶¶ 108, 113.)  Grey knew he could bring concerns about pay to his supervisor, but never reported working off the clock.  (*Id.* ¶ 112.)

**Jones** worked for GEICO since 1986 and as an SIU investigator from 2016 to 2022.  (*Id.* ¶ 114.)  As an investigator, Jones used flex time "to take time off, make it up at the end of the day, or on a different day."  (*Id.* ¶ 121.)  While Jones understood that GEICO policy required her to accurately record her work time, she "never report[ed]" working more than 7.75 hours per day.  (*Id.* ¶ 118.)  Jones attended a meeting where Newport reminded SIU investigators to record any overtime hours so GEICO could track the team's workload and hire additional team members accordingly.  (*Id.* ¶ 119.)  GEICO paid Jones for all overtime hours recorded, which she did in at least 21 workweeks.  (*Id.* ¶¶ 124, 128.)  Jones at one point informed her supervisor that she "wasn't able to finish up what I had" due to "so much windshield time."  (*Id.* ¶ 117.)  Jones sometimes "put[] in almost [her] entire day of [her] 7.75 in the car."  (*Id.*)  When Newport asked Jones and others "if [they] needed anything," she did not raise any concerns about hours or pay.  (*Id.* ¶ 127.)  She postulates that timestamps on her entries in SICM notified GEICO of her hours.  (*Id.* ¶ 126.)

**King** was a GEICO SIU senior field security investigator from 2005 to May 2022 in the Long Island, New York area.  (*Id.* ¶ 129.)  King's supervisors were Toni D'Agata and Dara Campbell.  (*Id.* ¶ 130.)  King alleges working approximately 50 to 52 hours per week from December 2016 to May 2022, though he took FMLA leave from February 2020 to August

2020.  (*Id*. ¶¶ 131, 140.)  King regularly requested overtime, recording and being compensated for overtime in 37 workweeks between April 2017 and May 2022.  (*Id*. ¶¶ 136-137, 142.)  None of King's supervisors discouraged him from doing so.  (*Id*. ¶ 139.)

**Mangan** worked for GEICO as a senior investigator from April 2004 until July 1, 2020. (SOF ¶ 143.)  Mangan alleges that between late 2016 and May 2020, she worked "around 50 to 60 hours a week on average."  (*Id*. ¶ 145.)  That estimate is based "on a week in September that [she] could more specifically recall working [overtime]" which lacks documentary support.  (*Id*. ¶ 146.) She believes that her supervisors knew she worked unrecorded hours from time stamps on her emails and SICM notes.  (*Id*. ¶ 149.)  Mangan alleges that she "sometimes" informed supervisors she was "working 'till 7:30 at night," or "8:00 o'clock," or "9:00 o'clock."  (*Id*. ¶ 147.)  Mangan was trained on GEICO's policies, including policies forbidding off-the-clock work.  (*Id*. ¶ 144.) Mangan mostly declined to record overtime because she thought "it affects [her] performance evaluation," but was paid for any overtime recorded and regularly received raises.  (*Id*. ¶¶ 150-151, 153.)  She testified that supervisors at unspecified times told her "Don't do overtime.  Work 38.75; work 7.75."  (*Id*. ¶ 147.)

**Moeser** worked as a Senior Field Security Investigator from 2006 to April 2021 in New York City and on Long Island.  (SOF ¶ 154.)  He set his own schedule and used "flexible hours" to adjust that schedule as needed.  (*Id*. ¶ 157.)  Moeser alleges that he worked approximately 52.5 to 55 hours per week from December 2016 to April 2021.  (*Id*. ¶ 155.)  Moeser understood that GEICO required him to record all hours worked in GEICO's timekeeping system and that he could raise concerns regarding his pay to his supervisor or human resources.  (*Id*. ¶¶ 160, 163.)  He did not make case notes as he completed case tasks.  (*Id*. ¶ 159.)  GEICO paid Moeser for all hours that he recorded, including six workweeks in which he recorded overtime.  (*Id*. ¶¶ 162, 166.)

**Munoz** began working at GEICO in 1999 and since 2015 has been a field investigator based in Long Island. (*Id*. ¶¶ 167-168.) Munoz received regular training on GEICO's timekeeping policies, and understood that GEICO required her to "record our time or input our time that was worked." (*Id*. ¶ 170.) Munoz recorded and was paid for overtime in 33 workweeks between April 2017 and September 2024. (*Id*. ¶ 179.) She alleges that she worked approximately 46 to 48 hours per week from July 2016 through March 2020 and 48 to 52 hours per week from March 2020 to November 2021. (*Id*. ¶ 169.) Munoz once reported to her supervisor that "work can't get done, that we have too much work," and her supervisor encouraged her to complete her work but "never said that you can work overtime." (*Id*. ¶ 177.) Eventually, Munoz began working and recording 39.99999 hours per week, for which GEICO paid her. (*Id*. ¶ 176.) According to Munoz, once she works 40 hours, "computer goes off. Phone's on the charger. I don't do anything after the hours." (*Id*.)

**O'Sullivan** worked as a senior field security investigator focused on medical fraud investigations from 2003 to 2022 in New York City and Long Island. (*Id*. ¶ 180.) He set his own work schedule using "flextime" but alleges that he generally worked from 8:30 a.m. to 6:00 p.m., approximately 47.5 to 50 hours per week. (*Id*. ¶¶ 181, 184.) O'Sullivan knew that he could bring any concerns about pay issues to his supervisor or to Human Resources. (*Id*. ¶ 188.) No GEICO SIU supervisor or manager ever told him to work off the clock, and he could decline taking additional cases. (*Id*. ¶¶ 183, 187.) O'Sullivan testified that one supervisor, Brian Portnoy, once commented to him that GEICO would not authorize overtime "just for typing." (*Id*. ¶ 191.) His other supervisors, Dara Campbell and Toni D'Agata, never said anything that deterred him from entering overtime hours. (*Id*. ¶ 180, 187.) O'Sullivan in fact requested overtime pay in 13 workweeks, and GEICO paid him for overtime for the hours that he submitted. (*Id*. ¶¶ 190, 195.)

**Pia** worked as an SIU Investigator from 2003 until 2017 and as a Lead SIU Investigator until he retired in November 2022. (*Id*. ¶ 196.) Pia alleges that he worked an average of 55 hours per week "based on what [he] can recall" but lacks any documentation demonstrating off-the-clock work. (*Id*. ¶ 197.) For "most of [Pia's] cases," he "would leave [his] house at approximately 7:00 o'clock, and I wouldn't get to the Bronx … until about 8:20, 8:30," though weather could "add on a half hour to 45 minutes." (*Id*. ¶ 200.) At some point, Pia told his supervisor Gerry Cassagne that "nobody can do 70 cases" and suspects Cassagne "was well aware that [Pia was] working over and above the 38.75." (*Id*. ¶ 201.) Pia knew GEICO's policy prohibited off-the-clock work. (*Id*. ¶ 202.) Pia accepted preapproved opportunities to work overtime and was paid for that work. (*Id*. ¶ 203.) Though Pia recorded overtime in at least 16 workweeks, Pia admits that he intentionally failed to record overtime to improve his performance metrics and thereby avoid losing a potential raise. (*Id*. ¶¶ 204, 207.) Pia received a raise every year. (*Id*. ¶ 206.)

**Reed** was a senior security investigator with GEICO from approximately 2005 to 2023. (*Id*. ¶ 208.) During that time, he generally worked from 7:00 a.m. to 3:30 p.m. (*Id*.) In addition to those hours, he estimates that he "worked" an extra two hours per day based on "[t]he hours that [he] would be on the road traveling back and forth to statements," which could be as much as "between an hour and a half, an hour and forty-five minutes one way." (*Id*. ¶¶ 210, 214.) GEICO paid him for all hours that he recorded. (*Id*. ¶ 211.) Supervisor Chet Janek at some point allegedly told him that "there was no overtime," although he admits that neither Janek nor any manager ever instructed him to work off the clock. (*Id*. ¶¶ 212-213.) Reed never requested overtime because he believed "that was something that was not done" (*id*.), and never informed human resources or anyone else that he worked more hours than he recorded. (*Id*. ¶ 211.) His "assumption" was that GEICO did not permit overtime. (*Id*. ¶ 213.)

**Wendling** worked as a senior field security investigator from approximately September 2019 to November 2023, worked remotely, and was supervised by Toni D'Agata for nearly his entire tenure. (*Id.* ¶¶ 217-18.)  Wendling alleges that before February 2023, he regularly worked without a lunch break from 7:00 a.m. to 6:00 p.m., averaging "approximately 57.625 hours per week," but recorded only 7.75 hours per day.  (*Id.* ¶ 219.)  He never complained about overtime work.  (*Id.* ¶ 221.)  Wendling reported in May 2020 that "he had a hard time keeping up this week" and that the workload was "hard to manage," and D'Agata explained that "if needed, and he works extra – put in for the time worked." (*Id.* ¶ 222.)  GEICO paid Wendling for overtime that he recorded in GEICO's timekeeping system.  (*Id.* ¶¶ 223, 225.) Beginning in February 2023, he alleges that he worked "about 38.75 hours a week." (*Id.* ¶ 220.)  Despite GEICO's noticing Wendling's deposition on three separate occasions, Wendling failed to appear, and he also failed to respond to GEICO's written discovery requests.  (*Id.* ¶ 224.)

Based on the above allegations, Plaintiffs assert that GEICO owes them wages for time spent working but never recorded.  Having completed fact discovery on their claims, there is no genuine dispute of material fact, and GEICO is entitled to summary judgment.

## LEGAL STANDARD

"A district court must 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kemp v. Regeneron Pharmaceuticals, Inc.*, 117 F.4th 63, 68 (2d. Cir. 2024) (quoting Fed. R. Civ. P. 56(a)).  When faced with a motion for summary judgment, the opposing party must "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Nor can the opposing party "rely on conclusory

allegations or unsubstantiated speculation." *Brown*, 654 F.3d at 358 (quotations omitted). Instead, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Summary judgment is rightfully granted to the defendant when the record refutes the plaintiff's "unsupported ipse dixit." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005).

## ARGUMENT

The undisputed evidence in this case shows that GEICO does not owe Plaintiffs additional wages for any unreported hours that they allegedly worked, under either the FLSA or the NYLL. The FLSA requires employers to pay employees at overtime rates for time worked above 40 hours per week. *See* 29 U.S.C. § 207(a)(1). The NYLL, through its regulations, adopts the same general rule. *See* 12 NYCRR § 142-2.2; *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 433 (N.D.N.Y. 2014). To succeed on their claims, each Plaintiff bears the burden of proving "that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Plaintiffs cannot meet their burden for myriad reasons.

## I.    CERTAIN PLAINTIFFS CANNOT SHOW THAT THEIR ALLEGEDLY UNPAID ACTIVITIES WERE COMPENSABLE WORK

Certain Plaintiffs cannot meet their threshold burden of demonstrating that they performed compensable work during the hours for which they allege they were not paid. "An employee who sues for unpaid minimum wages or overtime compensation has the burden of proving that the employer did not compensate him for completed work." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)). Plaintiffs' "speculation to … what hours [they] worked" is not enough. *Id.* at 88-89. A plaintiff facing summary judgment must identify "concrete particulars … to support a finding that she

worked overtime hours for which she was not paid." *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) (internal quotation omitted).

### A.    Commute Time Underlying Plaintiffs' Claims Is Not Compensable

Certain Plaintiffs seek overtime for "off the clock" time that they spent commuting, which is not compensable under the Portal-to-Portal Act.  Under that Act, an employer is not liable for failing to compensate for time spent "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform."  29 U.S.C. § 254(a)(1).  "[O]rdinary home to work travel … is a normal incident of employment … whether [the employee] works at a fixed location or at different job sites [and] is not worktime."  29 C.F.R. § 785.35.  Thus, an employer need not compensate an employee "for his time spent traveling to the first job of the day and from the last job of the day, regardless of the length of that distance." *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 273 (2d Cir. 1999) (concluding "an average of seven to eight hours" of travel per day was "strik[ing]," but nevertheless non-compensable "normal travel"); *see Kuebel*, 643 F.3d at 355; *Chavez-DeRemer v. Sarene Servs., Inc.*, 2025 WL 1127703, at \*16 n.4 (E.D.N.Y. 2025) (concluding that time spent napping is not compensable).  The NYLL adopts the same exemptions.  *See* 12 NYCRR § 142-3.1(b) (limiting minimum wage to "time spent in traveling *to the extent that such traveling is part of the duties of the employee*" (emphasis added)).

The Second Circuit in *Kuebel* applied the Portal-to-Portal Act to employees who, like certain Plaintiffs, traveled to different sites to complete their work.  In *Kuebel*, the plaintiff used his home as a base and traveled frequently to job sites between 20 minutes and 3 hours away. 643 F.3d at 355.  He completed 15 to 30 minutes of work-related, administrative duties before he left his home and when he returned.  *Id.*  The Second Circuit noted that the continuous workday rule ordinarily counts all hours in "the period between the commencement and completion on the

same workday of an employee's principal activity or activities." *Id.* at 359 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) and citing 29 C.F.R. § 790.6). The Second Circuit, however, held that the plaintiff's administrative tasks before the commute "do not affect the compensability of [the] driving time." *Id.* at 360. "The fact that [plaintiff] performs some administrative tasks at home, on his own schedule," the court explained, "does not make his commute time compensable any more than it makes his sleep time or his dinner time compensable." *Id.*; *see Singh v. City of New York*, 524 F.3d 361, 368-69 (2d Cir. 2008) (concluding that transporting supplies for employer did not make commute compensable).

Similarly, here, certain Plaintiffs seek overtime compensation for non-compensable commute time, and removing that time defeats their claims in part or entirely. K. Fischer, for example, alleges that he worked approximately 50-65 hours per week, or 10-13 hours per day. (SOF ¶ 73-74.) At his deposition, however, Keith Fischer testified that such time includes two hours commuting to his first work site and two hours back, as well as additional time spent "napping," for a total of 4 to 6 hours per day. (*Id*. ¶ 74.) Removing K. Fischer's commute time and results in, at most, seven hours of compensable time per day, or 35 hours per week, foreclosing any claim for unpaid regular or overtime hours.

Other Plaintiffs likewise assert claims for non-compensable commute time. Reed asserts that he worked two hours of overtime per day, but he admits that his estimate includes 3-3.5 hours per day "traveling back and forth." (*Id*. ¶ 214.) Pia alleges 15 overtime hours per week, but he admits that "most" of his cases required him to commute anywhere from 2.66 to 4.5 hours per day, or 13.33 to 22.5 hours per week. (*Id*. ¶¶ 197, 200.) Removing Jones' estimated four to six hours of commute time per day reduces her claimed 51 to 58 hours per week to a maximum of 38 hours per week, less than she generally recorded in GEICO's timekeeping system, defeating any claim

14

for additional pay.  (*Id*. ¶ 217.)  Costanzo believes he worked one hour per day of overtime, but that hour would be part of his regular three-hour commute to and from work, therefore, he cannot show it was compensable.  (*Id*. ¶¶ 53-54.)

As in *Kuebel*, time that Plaintiffs spent commuting is not compensable, even if they bookended their commute with work-related tasks.  Removing the non-compensable time from their estimated hours worked drops their total estimated time below the hours for which they were paid, defeating their claims as a matter of law.

**B.**    **Plaintiff M. Fischer Bases Her Claims On Non-Essential, Non-Compensable Tasks**

Plaintiff M. Fischer, on the other hand, claims that GEICO failed to compensate her for time spent performing other non-essential and non-compensable activities.

Under the Portal-to-Portal Act, time spent on "activities which are preliminary to or postliminary to . . . principal activity or activities" do not count toward compensable work time. 29 U.S.C. § 254(a)(2).  "Preliminary" and "postliminary" activities are those engaged in by an employee "before the commencement" and "after the completion" of his "principal" activities, such as "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks."  29 C.F.R. § 790.7(b).  To be compensable, the activity must be "integral and indispensable" to a principal activity.  *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591 (2d Cir. 2007) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 39-40 (2005). An activity is preliminary or postliminary if it is "voluntary."  *Id.* § 790.7(h).

Here, Plaintiff M. Fischer claims that GEICO failed to compensate her for time she spent setting up and taking down her workstation when she worked from home during the pandemic. (SOF ¶ 90.)  She concedes that, although she could have left her workstation intact each day, she chose not to because she liked to both work and eat dinner at her dining room table.  *Id.* Her

decision to set up and remove her workstation each day was voluntary, and activities are not "integral and indispensable" to her principal work activities as an investigator. Accordingly, the 20 to 30 minutes per day (1.66-2.5 hours per week) that M. Fischer seeks to recover as unpaid overtime is not compensable.

Any remaining time for which Plaintiff M. Fischer seeks recover is de minimus. "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Singh v. City of N.Y.*, 524 F.3d 361, 370 (2d Cir. 2008). When assessing whether asserted overtime is de minimis, courts consider the difficulty of recording the additional time, the aggregate time alleged, and the regularity of the work performed. *See id.* at 371 (concluding time "generally amounting to only a few minutes on occasional days" was not compensable); *Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339 (S.D.N.Y. 2010) (concluding seven minutes per employee per day was de minimis and non-compensable).

Here, M. Fischer asserts that she worked at most 41.5 to 42 hours per week. Subtracting her estimated 20 minutes per day (1.66 hours per week) adjusting her at-home workstation, she is left with an inconsistent 20 minutes of possible overtime per week, or 4 minutes per day. Just like the "few minutes" per day in *Singh* and 7 minutes per day in *Haight*, M. Fischer's remaining, allegedly uncompensated time is similarly de minimis under the FLSA and the NYLL. As a result, her claim fails as a matter of law, and summary judgment is appropriate.

## II.    CERTAIN PLAINTIFFS CANNOT SHOW THAT GEICO OWES THEM ADDITIONAL COMPENSATION

### A.    Several Plaintiffs Repudiated All Or Substantial Portions Of Their Claims For Allegedly Uncompensated Work

Many Plaintiffs provided testimony that forecloses their claims, in whole or part, because they cannot show that they are eligible for any additional compensation. An employee may not recover overtime compensation for workweeks in which he or she did not work more than 40

hours. *See, e.g.*, *Xing v. Mayflower Int'l Hotel, Grp. Inc.*, 2022 WL 4644214, at *6 (E.D.N.Y. 2022) (granting summary judgment to defendants for period in which plaintiff "failed to identify any uncompensated time in excess of 40 hours"); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207).

The record here shows that many of the Plaintiffs cannot demonstrate that they qualify for additional or overtime compensation for many, if not all, of the workweeks for which they seek recovery. Jones, beginning in 2022, was an exempt SIU Trainer responsible for training new hires and earned a salary while in that role, making her exempt from overtime requirements under the administrative exemption. SOF ¶ 115; 29 U.S.C. § 213; 29 C.F.R. § 541.200; 12 NYCRR § 142-2.14(c)(4)(ii)(c). Plaintiffs Munoz and Costanzo stopped allegedly off the clock in approximately 2022, foreclosing any claims after such time. (SOF ¶¶ 176, 60.)

Plaintiffs Grey and King have no claim for periods they were on leave. Grey took leaves of absence from November to December 2019 and from November 2020 to January 2021, as did King from February 2020 to September 2020, and neither can contend for these periods that they worked uncompensated time. (SOF ¶¶ 104, 140.) And while Plaintiff Mangan alleges that she worked "around 50 to 60 hours a week on average" (*Id*. ¶ 145), she admits that she has no recollection and no documentation reflecting off-the-clock work aside from "a week in September that [she] could more specifically recall." (*Id*. ¶ 146.)

Further, Plaintiffs are not entitled to recover for overtime in circumstances where no reasonable jury could find that they worked overtime. Within the relevant time period, there are approximately 433 workweeks in which the Plaintiffs worked three days or less in the week. (SOF Ex. 24 ¶¶ 4-37.) Plaintiffs' claimed weekly hours are based on five-day workweeks, and no

reasonable jury could find that any Plaintiff worked in excess of 40 hours in any workweek of three days or less.

As a result, summary judgment is appropriate on such Plaintiffs' claims for allegedly unpaid work time or overtime.

### B.    Plaintiffs Cannot Double Recover For Already-Compensated Overtime

GEICO indisputably paid Plaintiffs for all compensable time recorded, and Plaintiffs cannot claim unpaid wages for overtime pay already received.  An employee cannot secure overtime wages that he or she has already received.  *See, e.g.*, *Chang v. Clean Air Car Serv. & Parking, Corp.*, 2024 WL 32188330, at *14-15 (E.D.N.Y. 2024) (rejecting overtime claims because plaintiff "consistently received sufficient overtime" and "all the evidence shows Defendant paid [Plaintiff] his complete wages due"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 2019 WL 1244291, at *14 (S.D.N.Y. 2019) ("Plaintiffs have admitted that they were properly paid in the [relevant] Period …. That fact alone is fatal to this argument [regarding alleged time shaving]").  Plaintiffs admit that they were paid for all hours recorded, including any overtime.  (SOF ¶¶ 19, 27, 43, 61, 68, 95, 108, 124, 137, 148, 162, 176, 190, 203, 211, 223.) The FLSA and NYLL do not permit double recovery, thus GEICO is entitled to summary judgment on any overtime Plaintiffs recorded.

### C.    Plaintiff Wendling Cannot Submit Evidence Of Allegedly Unpaid Wages

Plaintiff Wendling's claims fail because he did not participate in discovery and, therefore, cannot put forth any evidence from which a jury could find in his favor.  Rule 56 requires courts to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

18

GEICO repeatedly noticed Wendling's deposition in this case. On each of the three occasions, Wendling failed to appear and GEICO recorded his non-appearance. (SOF ¶ 224.) Wendling has not put forth any evidence that he worked any unpaid overtime. Meanwhile, the record shows that GEICO paid him for all overtime hours that he recorded. Accordingly, GEICO is entitled to summary judgment on Wendling's claims.

## III.    CERTAIN PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY CANNOT SHOW THAT GEICO HAD KNOWLEDGE OF ANY ALLEGED OFF-THE-CLOCK WORK

No reasonable jury could find that GEICO is liable for failing to pay Plaintiffs for unrecorded worktime because the undisputed record shows that Plaintiffs have the opportunity and ability to report their work hours, and GEICO did not know, and should not reasonably have known, that Plaintiffs allegedly worked off the clock. "[A]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998). Accordingly, an employee's work is compensable only if the employer "knows or has reason to believe [it] is … performed." 29 C.F.R. § 785.12. An FLSA claim for unpaid overtime requires a plaintiff to "prove that [he or she] performed work for which [he or she] was not properly compensated, and the employer had actual or constructive knowledge of that work." *Choi v. SD Tools, Inc.*, 2024 WL 4989224, at *4 (E.D.N.Y. 2024) (citing *Kuebel*, 643 F.3d at 361). Here, the various Plaintiffs assert different purported theories and evidence, but none is sufficient to meet their burden.

### A.    The Varied Bases On Which Plaintiffs Assert GEICO Had Actual Knowledge Of Off-The-Clock Work All Fail As A Matter Of Law

The undisputed record shows that GEICO did not know that Plaintiffs were working hours beyond those that Plaintiffs reported in the company's timekeeping system.

1.    **Plaintiffs Brust, Caniglia Jr., Costanzo, Grey, Jones And Reed Each Failed To Raise Off-The-Clock Work, Precluding Actual Knowledge By GEICO**

Several Plaintiffs concede that they did not inform GEICO that they worked hours that they failed to record and thus cannot show that GEICO had actual knowledge of any off-the-clock work. Employers are not required to "somehow divine[] [plaintiff] was working overtime." *Joza v. WW JFK LLC*, 2010 WL 3619551, at *10 (E.D.N.Y. 2010).   Brust denied that he ever raised a concern with his supervisor or human resources about working off the clock.  (SOF ¶¶ 29-31.)  Plaintiffs Caniglia, Jr., Costanzo, and Grey also admit that they never reported, on any occasion, that they allegedly worked unrecorded hours.  (*Id*. ¶¶ 46, 55, 112.)  Jones testified that SIU manager Newport once asked her and her team if they "needed anything," and she did not raise any concerns with her hours or pay.  (*Id*. ¶ 127.)  Reed's "assumption" was that GEICO knew he was working more hours than he submitted, but never raised the issue with anyone.  (*Id*. ¶ 213.)  Having expressly denied putting GEICO on actual notice of off-the-clock work, including overtime, they cannot establish GEICO's actual knowledge of their alleged off-the-clock work.  *Joza*, 2010 WL 3619551 at *10.

2.    **Plaintiffs K. Fischer, M. Fischer, Munoz, Mangan, And Pia Made Only Generalized Complaints About Workload, Precluding Actual Knowledge**

Plaintiffs K. Fischer, M. Fischer, Munoz, Mangan, and Pia made only vague comments about workload to different supervisors.  Such comments are insufficient to establish GEICO's actual knowledge of allegedly uncompensated work.

To survive summary judgment, a plaintiff "must 'produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  *Kuebel*, 643 F.3d at 361 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  In *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), the Sixth Circuit found an

20

employee's "time to time" reports to supervisors and the human resources department that she was not getting meal breaks insufficient to provide the employer with notice that plaintiff was owed overtime pay. *Id.* at 872. The Seventh Circuit similarly ruled that working extra hours, "sometimes with their supervisors' knowledge," does not establish the employer's knowledge as to whether and to what extent the plaintiff worked overtime. *Allen*, 865 F.3d at 942. General complaints about workload are insufficient to alert the employer that the complaining employee is working additional hours or overtime to address it. *See Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212, 1224 (N.D. Ga. 2020) (granting the summary judgment for employer because complaints about a voluminous workload, without an accompanying complaint of working beyond normal workweek, did not provide actual or constructive notice of unpaid overtime); *Daniels v. 1710 Realty LLC*, 2011 WL 3648245 (E.D.N.Y. 2011) (vague report of weekend work did not provide constructive knowledge of overtime).

Plaintiffs' vague statements did not put GEICO on notice that they worked beyond their regular hours or that they failed to record such work time. K. Fischer, for example, asked the SIU manager Newport, "who's watching the store here?" in reference to increased workload. (SOF ¶ 82.) That obtuse question cannot put GEICO on notice that K. Fischer worked more hours than he chose to record, particularly when he sometimes recorded overtime. Similarly, Mangan's reports that she "sometimes" worked "till 9:00 o'clock at night," does not provide notice of overtime work because she did not say when her day started or whether she engaged in non-compensable activities during the day. (*Id.* ¶ 147.) Munoz's statement that "work can't get done, that we have too much work" (SOF ¶ 177), and Pia's statement that "nobody can do 70 cases," (SOF ¶ 70), similarly do not establish that GEICO knew they were working off-the-clock and not

recording overtime, particularly when Munoz and Pia recorded overtime in 33 and 16 workweeks, respectively.  *See Allen*, 865 F.3d at 942; *Loiseau*, at 1224.

Generalized complaints regarding workload do not suffice to put GEICO on notice that Plaintiffs were performing but not recording work.

### 3. Plaintiffs' Failure To Record Work In GEICO's Timekeeping System Precludes Actual Knowledge

Plaintiffs failed to record alleged uncompensated overtime hours in GEICO's timekeeping system, depriving GEICO of actual notice of any overtime that they worked.

"[W]hen the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Gordon v. Kaleida Health*, 299 F.R.D. 380, 396 (W.D.N.Y. 2014) (quoting *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)). Where, as here, an employer sets up a "reasonable process for an employee to report uncompensated time," it "is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876.

Moreover, "[w]hen an employee "report[s] some overtime," the employer "[has] no reason to suspect that he neglected to report other overtime hours."  *Wood*, 192 F. App'x at 380-81; *see also Campbell v. City of New York,* 2021 WL 826899, at *6 (S.D.N.Y. 2021) (*abrogated on other grounds* by *Perry*, 78 F.4th 502) ("If [overtime] requests were regularly approved and Plaintiff had no legitimate basis for believing they would not be, then Defendant should not be expected to know that Plaintiffs were working unpaid overtime."); *Heredia v. Americare, Inc.*, 2020 WL 3961618, at *10 (S.D.N.Y. 2020) (granting employer summary judgment because record showed plaintiffs "received payment at the regular rate of pay for the verified additional regular hours they reported, and at the overtime rate for verified overtime hours they reported"); *Edwards v. City of*

*New York*, 2012 WL 1694608, at *4 (S.D.N.Y. 2012) (*abrogated on other grounds* by *Perry*, 78 F.4th 502) ("[The fact that] [s]ome plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked that did not exceed a certain arbitrary time threshold … is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work.").

GEICO had a clear policy requiring employees to log their overtime hours.  The handbook provided that "**[n]on-exempt associates are never allowed to work 'off the clock'**" and resources for issues recording all hours worked.   (SOF ¶ 5, SOF Ex. 9 (emphasis in original).)  Plaintiffs admit that they knew these GEICO policies.  (SOF ¶¶ 39, 68, 106, 133, 144, 160, 170, 185, 202.)  In addition to written policies, the record demonstrates that Plaintiffs consistently received instruction from supervisors to log all time worked, including overtime.  As early as 2016, Jerry Cassagne instructed various Plaintiffs "if you plan on working any overtime" that the individuals "must enter it into th[e] timesheet."  (SOF Ex. 31.)  In 2017, he instructed them to enter into the timekeeping system "whatever hours you worked for that day."  (SOF Ex. 12.)  Supervisor Dara Campbell instructed subordinates to "update your calendar if overtime comes into play" and log all hours into the timekeeping system.  (SOF Ex. 82.)  O'Sullivan's supervisor unambiguously told him "make sure you are keying any additional hours worked into Workday.  This is in reference to overtime."  (SOF Ex. 67.)  Barden's supervisor wrote, "I don't[] want anyone working over their 7.75 hours, without putting in for overtime." (SOF Ex. 8.)   His supervisor also told him, "if you're working extra hours, put in for it. Document it."  (SOF ¶ 18.)  Pia's supervisor instructed him, "You also must put the hours into workday as overtime … The overtime is there to be USED.  USE IT IF YOU NEED IT."  (SOF Ex. 83) (emphasis in original.)   These Plaintiffs were

undisputedly aware of GEICO's policy and knew that they were permitted and even encouraged to record all work time, including overtime.

GEICO's reliance on its time-reporting system was reasonable given that Plaintiffs regularly used it to log, and get paid for, overtime hours.  In the approximately 4,038 workweeks worked by Plaintiffs between April 2017 and September 2024, Plaintiffs recorded overtime (*i.e.*, greater than 40 hours) in GEICO's timekeeping system in 301 workweeks, or 7.45% of all workweeks, and 8.34% of the 3,605 workweeks in which they worked 4 days or more – the only conceivable weeks which they could have worked overtime.  (SOF Ex. 24 ¶¶ 36, 37.)

Time records demonstrate that certain Plaintiffs recorded and were paid for substantial amounts of overtime.  Costanzo and King recorded overtime in 59 and 37 workweeks during the relevant time period, recording 300.25 and 213.75 overtime hours, respectively.  (SOF ¶¶ 64, 113.) Grey recorded overtime in 39 workweeks, and Caniglia Jr. did so in 32 workweeks, Brust did so in 22 workweeks, Jones did so in 21 workweeks, Pia did so in 16 workweeks, and O'Sullivan did so in 13 workweeks. (SOF Ex. 24.)  Plaintiffs K. Fischer, Barden, Wendling, Moeser, Mangan, and M. Fischer similarly recorded overtime in multiple workweeks.  (*Id.*)  Only Plaintiff Reed did not record overtime during the relevant time period.  (SOF ¶ 216.)

GEICO's written policies, coupled with Plaintiffs' routine recording of overtime, foreclose their claims.  GEICO's written policies indisputably prohibit off-the-clock work and require the accurate recording all time worked, and record evidence establishes that GEICO's supervisors encouraged the recording of all time worked in GEICO's timekeeping systems.  Just as in *Wood*, *Heredia*, *Campbell*, and *Edwards*, Plaintiffs were provided with GEICO's written policies and an established system to record overtime.  All Plaintiffs except Reed submitted overtime and were paid for the hours they recorded, foreclosing, as a matter of law, knowledge of additional,

24

unrecorded work. (SOF Ex. 24.) Given that others under common supervision routinely recorded overtime, the only reasonable conclusion a jury could reach as to Reed is that he did not work overtime or chose not to record any alleged unpaid work, contrary to GEICO's policies and without GEICO's knowledge.

At most, even granting certain Plaintiffs the reasonable inference that they made comments regarding workload to supervisors, the most that such comments would establish is that they worked the overtime for which they were compensated. *Campbell*, 2021 WL 826899 at *6; *Wood*, 192 F. App'x at 380-81. Accordingly, Plaintiffs cannot establish a material dispute as to whether GEICO knew Plaintiffs were working unrecorded overtime and summary judgment is appropriate.

Any contention that Plaintiffs' failure to report overtime is irrelevant under *Perry v City of New York*, 78 F.4th 502 (2d Cir. 2023) relies on misstating *Perry*'s narrow holding. In *Perry*, EMTs and paramedics sued for unpaid overtime because the employer knew via cameras that plaintiffs were on-premises before and after assigned shifts to check essential equipment. *See id.* at 510. The employer argued that "it does not have to compensate for required overtime work unless employees report the work and request pay." *Id.* at 512. The court explained that "[e]mployers may, of course, require employees to report overtime work, and an employee's failure to do so will in many circumstances allow the employer to disclaim the knowledge that triggers FLSA obligations." *Id.* at 512. Indeed, the *Perry* court expressly recognized that a system requiring employees to record overtime "will in effect preclude liability in many situations." *Id.* at 516. But as to the narrow issue of whether "the employer's knowledge of *non-payment* rather than its knowledge of the *work* itself" was the relevant inquiry for purposes of FLSA liability, the *Perry* court affirmed the employer's liability because it "required, knew about, or should have

known about the claimed work" regardless of whether or not it knew the employees were paid for that time. *Id.* at 515-16 (emphasis in original).

Unlike *Perry*, this case is one of the "many situations" where GEICO's time reporting system precludes liability. Contrary to the employer in *Perry*, which had methods to definitively identify when its employees were on site, GEICO gave plaintiffs considerable latitude to work when, where, and how they chose. Prior to, during, and after the COVID-19 pandemic, every Plaintiff except M. Fischer worked in the field or remotely from their homes when not in the field. (SOF ¶¶ 11, 26.) Barden, Caniglia, Jr., K. Fischer, Grey, Jones, Moeser, and O'Sullivan conceded that they could flex their schedules to determine shift start and end times. (*Id.* ¶¶ 11, 37, 66, 105, 121, 157, 184.) M. Fischer expressly disclaimed supervisors' actual knowledge of alleged off-the-clock work, relying exclusively on constructive knowledge based on building badge swipes and SICM and email time stamps. (*Id.* ¶ 99.) Accordingly, GEICO did not know and could not have known when *any* Plaintiffs were working unless they recorded their time in GEICO's timekeeping system.

Nor can Plaintiffs establish a disputed material fact as to an alleged unwritten policy discouraging them from submitting all time worked. In *Edwards*, the court determined that employees' testimony that they felt a "kind of pressure" and understood an "unwritten rule" against submitting overtime is the sort of "'conclusory statements, conjecture, and inadmissible evidence'" that is insufficient to show that the employer prohibited them from recording overtime. 2012 WL 1694608, at *14-15 (quoting *Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011). "[A plaintiff's] statement that 'they told me that I should continue my work' does not explain who 'they' were…when 'they" told him to continue working, and whether 'they' were aware that he

26

was clocked out while he was working." *Fangrui Huang v. GW of Flushing I, Inc*., 2021 U.S. Dist. LEXIS 2505, at \*11-12 (E.D.N.Y. 2021).

Here, as established above, supervisors repeatedly *encouraged* Plaintiffs to record their overtime hours.   Plaintiffs' timesheets confirm that Plaintiffs regularly did so.   O'Sullivan and Caniglia admitted at their depositions that no one told them not to work overtime.   (SOF ¶¶ 44, 187.)   Munoz conceded that her supervisor never instructed her to work overtime at any point.   (*Id*. ¶ 176.)   Mangan cannot remember when she was supposedly told not to log overtime (*Id*. ¶ 150), and Reed merely assumed his supervisor knew he would need to work overtime.   (*Id*. ¶ 212.)   Such speculative or generalized testimony is insufficient to establish defeat summary judgment, and "flies in the face of the [] thousands of dollars in overtime compensation paid to the [fif]teen deposed plaintiffs alone during the limitations period." *Edwards*, 2012 WL 1694608, at \*5; *see also Fangrui Huang*, 2021 U.S. Dist. LEXIS 2505, at \*11-12.   No reasonable jury could credit such allegations as they are contradicted by the record evidence, including records demonstrating that overtime was available and regularly utilized by essentially every Plaintiff.   (SOF ¶¶ 22, 33, 49, 64, 86, 101, 113, 128, 142, 153, 166, 179, 195, 207, 225.)

As GEICO lacked actual knowledge of alleged off-the-clock work, and no disputed material fact as to actual knowledge exists, summary judgment against all Plaintiffs is appropriate.

### B.    Plaintiffs Cannot Establish Constructive Knowledge Of Off-The-Clock Work

The record evidence demonstrates that no genuine disputed material fact exists as to any claim that GEICO had constructive knowledge that Plaintiffs were working off-the-clock.   An employer has constructive knowledge of an employee's off-the-clock work if the employer "should have known about [the work] through the exercise of reasonable diligence." *Perry*, 78 F.4th at 513.

1.    **Plaintiffs Routinely Recorded And Could Have Recorded Off-The-Clock Work In GEICO's Timekeeping System, Depriving GEICO Of Constructive Notice**

GEICO's timekeeping system and policies defeat any suggestion that GEICO had constructive knowledge of Plaintiffs' off-the-clock work.

An employer lacks constructive knowledge when it "establish[es] a reasonable process for an employee to report work time" *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017)); *see also Micone v. Levering Reg'l Health Care Ctr., L.LC.*, 132 F.4th 1074, 1079 (8th Cir. 2025) ("If employees fail to follow that [self-reporting] process, then an employer ordinarily is not deemed to have constructive knowledge of overtime work.").  The FLSA does not fault employers for failing to "anticipate[] that employees would routinely falsify their time records in violation of established company policy." *Davis v. Food Lion*, 792 F.2d 1274, 1278 (4th Cir. 1986).  Such a rule is necessary because otherwise "[a]n employee, whether or not having truly worked overtime hours, could manipulate the judicial process by deliberately filing inaccurate payroll records and waiting until the time of suit to confess their inaccuracy." *Joza*, 2010 WL 3619551 at *9.

As discussed above, Plaintiffs cannot reasonably dispute that GEICO had a system through which Plaintiffs could, and routinely did, record their hours worked.  Plaintiffs unquestionably knew how to log their time, including overtime hours, because they did so for years.  (SOF Ex. 24.)  The uncontested record shows that GEICO maintained a timekeeping system, which Plaintiffs failed to utilize, which would have informed GEICO that work was being performed.  Their failure to do so precludes GEICO's liability.  *Joza*, 2010 WL 3619551, at *9-10 (granting judgment in favor of employer given "the failure of an employee to use a recognized system for reporting and obtaining compensation for overtime work" and the employer's lack of knowledge); *White*, 699 F.3d at 876 (holding that when an employer merely sets up a "reasonable process for an employee

to report uncompensated time," it "is not liable for non-payment if the employee fails to follow the established process"). Any claimed constructive knowledge fails as a matter of law.

### 2.    Plaintiffs Barden, Brust, Mangan, Pia, and Jones Deliberately Deprived GEICO Of Knowledge Of Unrecorded Work

The claims of Plaintiffs Barden, Brust, Mangan, Pia, and Jones case are foreclosed by the extraordinary fact that they admitted to hiding off-the-clock work from GEICO.

"Where an . . . employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA." *Hinterberger v. Cath. Health Sys.*, 299 F.R.D. 22, 37 (W.D.N.Y. 2014) (quoting *Stanislaw v. Erie Indem. Co*., 2012 WL 517332, at *4 (W.D.Pa. 2012)); *see also Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414–15 (9th Cir. 1981); *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006).

Several Plaintiffs testified that they *intentionally* did not report off-the-clock work so that GEICO would think that they were completing more work in less time and reward them with better performance evaluations and pay increases. Mangan admitted that she believed recording overtime "affects [her] performance evaluation." (SOF ¶ 150.) Barden, Brust, and Pia all similarly admitted that they did not log overtime to improve their performance metrics in hopes of securing pay increases. (*Id.* ¶¶ 21, 32, 204.) Jones similarly intentionally declined to report hours, but because she idiosyncratically found the process too "time consuming." (*Id.* ¶ 125.)

By intentionally withholding information about the number of hours they allegedly worked, these Plaintiffs designedly deprived GEICO of the constructive knowledge necessary to establish liability. *Hinterberger*, 299 F.R.D. at 37.

29

**3.** **Plaintiffs Cannot Otherwise Establish GEICO's Constructive Knowledge Through Computerized Records Apart From Its Timekeeping System**

While simultaneously falsifying their time entries, Plaintiffs contend that their use of other systems, and time-stamped records that result, establish GEICO's constructive knowledge of uncompensated work. Plaintiffs are incorrect.

An employer's reasonable diligence does not extend to computerized records, even if time-stamped. In *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775 (8th Cir. 2009), for example, the Eighth Circuit "refuse[d] to find that the [records at issue] in this case were an appropriate basis of constructive knowledge" because, though the payroll office "technically had access" to them, those records "were not used for payroll purposes." *Id.* at 781-82. The Seventh Circuit rejected a similar argument based on email and call records because the constructive knowledge standard "asks what the employer should have known, not what it could have known." *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017). The Fifth Circuit has similarly "[held] that as a matter of law … 'access' to information does not constitute constructive knowledge that [Plaintiff] was working overtime." *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995); *see also Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) (holding that "computer usage reports" did not place an employer on notice that an employee was working uncompensated overtime). An "employer is not required to act as a private detective . . . to document the hours plaintiff worked." *MacEachern v. Quicken Loans, Inc*, 2016 WL 5118380, at *10 (E.D. Mich. 2016).

Plaintiffs assert that the timestamps on their work emails and entries into SICM show that they were working more than their scheduled hours. (SOF ¶¶ 99, 126, 149.) But SICM entries and emails, though time-stamped, cannot impute constructive knowledge of unrecorded, uncompensated work to GEICO. Like the employers in *Hertz*, *Allen*, and *Newton*, GEICO

reasonably relied on its designated timekeeping system to identify the time employees are working. Plaintiffs' theory would require employers like GEICO to engage in the monumental task of searching for timestamps across disparate systems not used for timekeeping to deduce employees' total time worked. Neither the FLSA nor the NYLL impose such a requirement.

Moreover, even if such an onerous requirement existed, the at-issue records would not establish off-the-clock work. Most Plaintiffs worked "flex" schedules whereby their hours were inconsistent. (SOF ¶¶ 11, 16, 25, 37, 66, 105, 121, 157, 175, 184.) Timestamps in evening hours inform a supervisor only that the Plaintiff adjusted their schedule, not that they were working additional hours *and* not recording those hours. Moeser and K. Fischer, for example, did not enter case notes contemporaneously such that timestamps show when they performed the underlying work. (SOF ¶ 84, Ex. 81.) Time-stamped records from other systems cannot establish constructive knowledge of when work was performed, how long that work took, or that it was unrecorded – the records only identify, at most, when work previously done was entered. Such records cannot establish that GEICO should have known about unrecorded or overtime work, particularly since they are not "used for payroll purposes." *Hertz*, 566 F.3d at 782. Consequentially, Plaintiffs' assertion that GEICO could or should have known of work they performed from time-stamped computer records is irrelevant.

Plaintiff M. Fischer's claims of constructive knowledge fail for additional reasons. Fischer's claims rely exclusively on constructive knowledge, not actual knowledge (SOF ¶¶ 99-100), though each basis of knowledge fails as a matter of law. First, even if she could somehow establish that SICM entries could impart constructive knowledge of work on GEICO, she did not use SICM frequently enough to do so. Her unambiguous deposition testimony establishes that, as a Major Case investigator, she was only required to create a single SICM entry "diary" log every

15 business days.  (SOF ¶ 96.)  Further, her building badge swipes cannot establish constructive knowledge of off-the-clock work.  M. Fischer only speculates that her supervisor would have had access to her swipe times indicating when she entered and exited the building.  (SOF ¶99.)  Even if record evidence existed substantiating that claim, swiping into the office does not indicate that she is performing compensable work.  *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177-78 (7th Cir. 2011) (affirming summary judgment where employer was aware plaintiff punched in early but lacked knowledge plaintiff was actually conducting work between time she punched in and scheduled start of her shift).  Plaintiff M. Fischer's theories of constructive knowledge necessarily fail as a matter of law.

## IV.    PLAINTIFFS CANNOT DEMONSTRATE THAT GEICO WILLFULLY VIOLATED THE FLSA OR NYLL

Even if Plaintiffs could identify material disputed facts as to GEICO's liability, which they cannot, no reasonable jury could conclude that such violations were willful.  The statute of limitations for an FLSA claim is two years unless the violation is "willful," in which case the statute of limitations extends to three years.  *See* 29 U.S.C. § 255(a).  "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (internal quotations and citation omitted). "Mere negligence is insufficient." *Id.* .  Plaintiffs bear the burden of showing that their employer's conduct was willful in both FLSA and NYLL claims.  *See id.; Kuebel,* 643 F.3d at 352 (NYLL mirrors FLSA's willfulness standard.).

None of the evidence in this case suggests that any purported FLSA or NYLL violation was willful.  Because Plaintiffs recorded their own time, disregarded GEICO's time-recording policies, and chose not to report all hours worked, GEICO did not have any actual or constructive knowledge of any FLSA or NYLL violations.  GEICO reasonably believed its employees would

log their hours accurately and honestly into its timekeeping system, as required.  Indeed, it is undisputed that GEICO paid Plaintiffs for all time recorded.  Several Plaintiffs confirmed they willfully underreported hours to overstate their efficiency so GEICO would increase their wages. Courts recognize, in such circumstances, that any violation of the FLSA or NYLL is not willful. *See Forrester*, 646 F.2d at 414-15.  In light of GEICO's efforts to comply with applicable law and Plaintiffs' intentionally misleading behavior, GEICO is entitled to summary judgment on the issue of willfulness.

## **CONCLUSION**

For the foregoing reasons, GEICO's Motion for Summary Judgment should be granted.

**Dated:  August 8, 2025**

Respectfully submitted,

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

By: /s/ *Gerald L. Maatman, Jr.*
    One of its Attorneys

Gerald L. Maatman, Jr.
(*gmaatman@duanemorris.com*)
Jennifer A. Riley
(*jariley@duanemorris.com*)
Gregory Tsonis
(*gtsonis@duanemorris.com*)
Tiffany E. Alberty
(tealberty@duanemorris.com)
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone: (312) 499-6700
Facsimile: (312) 499-6701

Gregory S. Slotnick
(*gsslotnick@duanemorris.com*)
**DUANE MORRIS LLP**
22 Vanderbilt

New York, New York 10017
Telephone: (212) 692-1000
Facsimile: (212) 202-5384

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., hereby certify that on August 8, 2025, I caused a true and correct copy of the foregoing Defendant's Memorandum in Support of its Motion for Summary Judgment to be served via ECF on the following counsel of record:

Michael J. Scimone
Sabine Jean
Jarron D. McAllister
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
sjean@outtengolden.com
jmcallister@outtengolden.com

Ryan C. Cowdin
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4409
Facsimile: (202) 847-4410
rcowdin@outtengolden.com

Troy Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: 631-499-9100
Facsimile: 631-499-9120
tkesler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.