# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | Case No. 2:23-CV-02848 (GRB) (ARL) |

### DECLARATION OF JENNIFER FOGARTY

I, Jennifer Fogarty, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an employee of Government Employees Insurance Company ("GEICO" or the "Company"). I have worked for the Company for about 23 years.

2. I currently work for GEICO as a Senior Manager in the Special Investigations Unit (the "SIU") and have been in this role since approximately October 2023. In this role, I am responsible for the general operations of the SIU. Prior to my current role, from 2018 to approximately October 2023, I worked for the Company as SIU Operations Manager. In both roles, I have been familiar with, and had access to, SIU employee data, employee files, and onboarding documents.

3. I make this declaration based upon my personal knowledge, as well as my review of information compiled for me by members of the payroll department, human resources department, and other GEICO staff acting under my direction and supervision.

4. GEICO is the third-largest private passenger auto insurer in the United States. GEICO is headquartered in Chevy Chase, Maryland and maintains 18 major offices around the country, including offices in Buffalo, New York and Melville, New York.

5. I am the only SIU Manager who did not regularly supervise SIU investigators. Instead, as SIU Operations Manager, my work responsibilities focused on the operation of the SIU nationwide. As such, I am very familiar with the general structure and functioning of SIU.

6. From November 2020 through present, GEICO has employed approximately 130 to 140 SIU employees throughout New York State in positions that have the word "investigator" in their job titles. GEICO does not call, and never has called, all of these individuals "Special Investigators" because, among other things, their roles are very different from one another.

7. According to GEICO's records, there is not currently, and there has not been during my time in SIU, any "Special Investigator" job position or any iteration of such title in SIU. The job titles in the SIU with the word "investigator" in the job title include: Claims Security Investigator; Field Major Case SIU Investigator; Field Medical Fraud Investigator; Internal Major Case SIU Investigator; Internal Security Investigator; Lead Security Investigator; Major Case SIU Investigator; Senior Field Security Investigator; and Senior Internal Security Investigator.

8. According to GEICO's records, there is also a position called SIU Trainer. The individuals who work as SIU Trainers are classified as exempt from overtime.

9. Each of these positions is unique and includes specific tasks, duties, and essential functions that differ from all other positions.

10. These employees with the word "investigator" in their job titles work or worked in one or more of approximately 9 different job positions reporting into one of approximately 12 to 16 different immediate SIU supervisors and one of 3 different SIU former Regional Managers at a given time.

11. The employees in these 9 different job titles have had various degrees of seniority, specializations, and work functions. With respect to work functions, in particular, many of these employees work or worked in "field" roles, meaning in positions with responsibilities that required them to work "outside" in the "field." Others worked in "internal" or "desk" roles that they performed "inside" from a "desk." We often refer to the former as "field" and the latter as "internal" or "desk" positions.

12. These employees work or worked in a wide variety of locations and areas within New York State. "Field" employees, for instance, worked from their cars and from ever-changing, unique, variable locations such as third party doctors' offices, medical clinics, auto body shops, etc. The "internal" or "desk" employees, by contrast, worked from physical GEICO offices or remote from their homes.

13. In the time since November 2020, GEICO's SIU operating model has changed drastically, resulting in significant changes to many of the jobs performed by GEICO SIU employees that have the word "investigator" in their job titles. In other words, the reporting structure of the SIU is very different today than it was even one or two years ago.

14. Prior to May 2024, SIU was separated into ten "Regions." Each Region was led by a separate Vice President or Assistant Vice President. SIU had one or two Managers in

charge of SIU in each Region, who reported to the Vice President or Assistant Vice President for each Region. As a result, each Region was tantamount to its own fiefdom, in that it was operated independently without coordination with the others.

15. As of May 2024, SIU is no longer separated into "Regions" like it used to be. Instead, SIU is separated into two general areas nationwide: (1) East; and (2) West. There is also now a third SIU team comprised of Compliance, Processes, Auditing and Training. The process of moving SIU out of the prior Regional structure began in earnest in late 2022, but was an ongoing process for much of 2023.

16. The reorganization consisted of changing the structure of SIU from separate Regions to verticals whereby SIU is no longer separated into geographic Regions. A major incentive for the reorganization stemmed from the vast differences among the former Regions.

17. As noted above, both before and during the time since the start of the phased SIU reorganization, each SIU employee with "investigator" in his or her job title reported to one of approximately 12 to 16 different immediate SIU supervisors at a given time. The supervisors had and continue to have flexibility and discretion over their teams, including flexibility to set (or not set) work schedules for their reports. Unsurprisingly, different supervisors adopt different practices for different reports based on various factors, such as whether they work in "field" or "internal" roles.

18. Employees who work in the "field" rarely have set work schedules and generally have flexibility to decide what they need to do, where they need to go, and when they will perform their work responsibilities, such as whether, where, and when they will conduct in-person interviews. They are able unilaterally to schedule such work based on what works best for them. In my view, this is one of the main reasons that they like their jobs at GEICO and why

many, including most of the named and opt-in plaintiffs, tend to stay with GEICO and work in those jobs for many years – even decades. These individuals have freedom and autonomy to complete their work in a way that is entirely dissimilar from traditional "nine to five" office jobs with set or scheduled work hours.

19. Employees with "internal" or "desk" roles, by contrast, typically have regular hours that they coordinate through their supervisors. For instance, they might work 6:00 a.m. to 2:15 p.m., with a 30-minute lunch, or 9:00 a.m. to 5:30 p.m., with a 45-minute lunch, or something else. Many supervisors also allow employees to "flex" their time within the same workweek, and they have different approaches to "flex time," with some allowing employees to work shorter days early in the week or longer days later in the week, or vice versa.

20. Employees have different work environments that vary drastically based on whether they work out in the field or internally at a desk, from a GEICO office, remotely from home, or some combination of the above. Among employees who work in any of these categories, their environments further vary based on their jobs, circumstances, and daily tasks. For instance, an employee working in the field might spend much of the day in a car, for example, if he or she covers a large territory, or might spend little time in a car, e.g., if he or she works locally and needs to audit medical records at a third-party clinic.

21. Employees who work "inside," by contrast, have very different work environments, which are more akin to those of Company claims examiners in other departments, for example, than to the work environments of those in the field. Those who work "inside" primarily work from their desks. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22. The work that employees in some positions perform varies dramatically from the work that others perform. By way of example, employees who work "inside," such as those who work as Internal Security Investigators, generally have less complex cases than employees who work in the field. As explicitly noted in the job description for Internal Security Investigator: "Conducts non-complex investigations of suspected cases of insurance fraud."

23. Many of the employees who work in job titles with more complex roles are required to work in the field physically knocking on doors in person and/or working on-site at relevant locations, such as medical offices, auto body shops, and accident scenes. Many of these "outside" employees also take examinations under oath in person. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Examinations under oath could be scheduled in the beginning, middle, or end of a workday based on, *inter alia*, the testifying individual's availability. They physically could take place many miles from the questioner's home.

24. Other employees with "investigator" in their job titles perform completely different roles. For instance, Lead Security Investigators are like assistant supervisors – they are responsible for supervising a team when the regular supervisor is unavailable or out of the office. A Claims Security Investigator might primarily investigate policy coverage issues involving an insured making policy changes shortly before submitting a claim, whereas a Field Medical Fraud Investigator might investigate medical providers who are systematically submitting fraudulent bills and develop cases for pressing criminal charges where appropriate.

25. Generally, the work of investigators in positions that work "inside" or at a "desk" and do not require or permit work in the field is much more limited in scope, and they are regularly able to close out their cases with a few phone calls.

26. According to GEICO's records, the named and opt-in plaintiffs who worked in New York during the relevant period, who filed declarations and remain parties to this matter, worked as "Senior Field Security Investigators" and/or "Lead Security Investigators." Both of these are "field" positions that necessitated regular in-person interactions and other tasks that could only be performed "outside." These jobs were not "inside" roles, and they could not be performed inside from a GEICO office desk or remotely from home.

27. As reflected in the job description for Senior Field Security Investigators, their job is "[p]rimarily a field investigative position that, under general supervision, INVESTIGATES suspected cases of fraud or other illegal conversion of Company assets." Persons in this position "[c]onduct field investigations, neighborhood canvasses, and surveillance when appropriate." Individuals who work as Senior Field Security Investigators must have "a valid driver's license," "be able to drive the assigned vehicle for extended periods of time as needed," and "be able to perform duties in an automobile used as a mobile work station." The job description's "Working Conditions" confirms that the "*duties of this position are generally performed in the field, in an auto repair environment or at a business location under minimum supervision*." Accordingly, the Senior Field Security Investigator "must be willing to work in indoor and outdoor environments, inclement weather, in dim or bright light and subject to adverse weather conditions and noise." A true and correct copy of this job description is labeled Exhibit 7.

28. As reflected in the job description for Lead Security Investigators, their job objective is: "Under general direction, INVESTIGATES suspected cases of fraud or other illegal conversion of Company assets in the field. SERVES as lead investigator by providing guidance and mentoring to other security investigators." Lead Security Investigators' job description duties include "locating sources of information and witnesses in the field" and "leads team in Supervisor's absence." Lead Security Investigators also must have "a valid driver's license," "be able to drive the assigned vehicle for extended periods of time as needed," and "be able to perform duties in an automobile used as a mobile work station." The job description's "Working Conditions" state the Lead Security Investigator: "[M]ust be willing to work in indoor and outdoor environments, inclement weather, in dim or bright light and subject to adverse weather conditions and noise" and confirms that the "*duties of this position are generally performed in the field, in an auto repair environment or at a business location under minimum supervision.*" A true and correct copy of this job description is labeled Exhibit 16.

29. In stark contrast to the field-based job duties, the Internal Security Investigators' primary position objective is: "CONDUCTS non-complex investigations of suspected cases of insurance fraud. *This is a non-field investigative position*. Investigations are conducted *exclusively from an internal desk location* by telephone, mail or by computer databases." There are no field-related requirements for Internal Security Investigators because they are not permitted to, and do not perform work in the field. A true and correct copy of the job description for Internal Security Investigator is attached as Exhibit 8.

30. Based on a review of GEICO's records and time and pay data, 19 of the 26 plaintiffs who submitted declarations claiming they were not paid for overtime hours, in fact, recorded and were properly compensated for overtime hours during the relevant statutory period.

The named and opt-in plaintiffs who recorded working more than 40 hours in a work week were correctly paid by GEICO for such hours at an overtime rate of one and one-half times their regular rate of pay.

31. The number of overtime hours submitted by and paid to each plaintiff differed significantly. By way of example only example, overtime ("OT") hours were reflected on the paystubs of the following plaintiffs during the following pay periods:

| Named or Opt-In Plaintiff | Overtime Hours Paid | Pay Periods | Production Bates Number | Additional Overtime Pay Notes |
|---|---|---|---|---|
| John Moeser | 3 | July 4, 2020 to July 17, 2020 | G001873 | |
| Louis Pia | 8.75 | May 23, 2020 to June 5, 2020 | G002583 | Received overtime pay in each pay period between May 23, 2020 and July 31, 2020 (G002583 to G002587) |
| Thomas Barden | 4.75 | May 23, 2020 to June 5, 2020 | G003774 | Received overtime pay in each pay period between May 23, 2020 and July 3, 2020 (G003774 to G003776) |
| Charise Jones | 17 | July 18, 2020 to July 31, 2020 | G000851 | Received overtime pay in each pay period between June 6, 2020 and July 31, 2020 (G000848 to G000851) |
| Albert Brust | 2.8 | February 11, 2023 to February 24, 2023 | G000578 | |
| Louis Caniglia, Jr. | 17.5 | June 6, 2020 to June 19, 2020 | G002307 | Received overtime pay in each pay period between May 23, 2020 and July 31, 2020 (G002306 to G002310) and between March 11, 2023 to June 2, 2023 (G002382 to G002387) |
| Louis | 4.75 | May 23, 2020 to June | G002487 | |

9

| | | | | |
|---|---|---|---|---|
| Caniglia, Sr. | | 5, 2020 | | |
| Maria Munoz | 3.25 | May 23, 2020 to June 5, 2020 | G002831 | |
| Michael Grey | 0.05 | April 22, 2023 to May 5, 2023 | G004029 | Received overtime pay in each pay period between May 23, 2020 and July 31, 2020 (G003219 to G003223) |
| Craig Costanzo | 0.75 | March 11, 2023 to March 24, 2023 | G001186 | |
| Evan Teatum | 0.95 | April 8, 2023 to April 21, 2023 | G001592 | |
| George McManus | 3.5 | June 6, 2020 to June 19, 2020 | G001695 | Received overtime pay in each pay period between May 23, 2020 and July 17, 2020 (G001694 to G001697) |
| Michael O'Sullivan | 0.75 | February 15, 2020 to February 28, 2020 | G003355 | |
| Scott Brady | 6.25 | May 23, 2020 to June 5, 2020 | G003547 | Received overtime pay in each pay period between May 23, 2020 and July 31, 2020 (G003547 to G003551) |
| Margaret Fischer | 1.0 | September 16, 2017 | G002657 | |
| Vito DiNiso | 7.25 | May 23, 2020 to June 5, 2020 | G003924 | |
| Daniel King | 18.5 | June 6, 2020 to June 19, 2020 | G001284 | |
| Ted Wendling | 0.13 | April 22, 2023 to May 5, 2023 | G003740 | |
| Joseph Costanza | 0.82 | July 1, 2023 to July 14, 2023 | G004253 | Received overtime pay in each pay period between June 3, 2023 and August 25, 2023 (G004251 to G004256), and each pay period between September 9, 2023 and November 17, 2023 (G004258 |

|  |  |  |  | to G004262) |
|---|---|---|---|---|

32. I have further reviewed the GEICO time and pay records for each plaintiff and opt-in plaintiff for most of the relevant statutory period, which were assembled for me by GEICO's payroll department. By way of example only, there are at least 1,410 separate instances of workdays on which a New York plaintiff or opt-in plaintiff recorded working in excess of 8 hours in a workday on GEICO's timekeeping system. When the threshold number is lowered to workdays on which a New York plaintiff or opt-in plaintiff recorded working in excess of 7.75 hours in a workday on GEICO's timekeeping system, the result is at least 1,916 separate instances.

33. GEICO's records reflect that employees in "field" roles were permitted the freedom to work many workdays beyond the 7.75 hours they claim. For example, on many occasions, opt-in plaintiff Ted Wendling worked four workdays exceeding 7.75 hours per workday, and one workday totaling less than 7.75 hours in the same workweek. As shown by the records, Wendling recorded working at least 26 workweeks that exceeded 38.75 recorded weekly work hours, and Wendling's records show 6 workweeks exceeding 40 hours.

34. GEICO's records also show that SIU included a number of Specialty Teams made up of a small subset of SIU investigators, who particularized in district types of cases. For example, GEICO's records indicate that at least two opt-in plaintiffs (Maria Munoz and Al Brust) were members of a "New York Theft-staged" Specialty Team, while none of the other named or opt-in plaintiff were members of a Specialty Team.

35. GEICO trains all employees, as well as its SIU Managers and SIU Supervisors, on its lawful wage-and-hour policies, and requires all SIU employees to read, sign, and acknowledge receipt and understanding of same within its Company Associate Handbook.

11

36. GEICO's records show that Opt-In Margaret Fischer's last day of employment with GEICO was in October 2020.

37. GEICO's records show that Named Plaintiff Charise Jones has worked as an exempt employee since in or around March 2022 – first as an SIU Trainer from March 2022 to September 2023, and as a Claims PMA IV from September 2023 to present.

38. Former SIU Regions differed in various ways. For example, the Regions differed based on the types of cases received and investigated, investigative steps taken, and various state and local regulations in place within the Region, which allowed certain employees in one Region to complete tasks that other employees in another respective Region simply were unable to complete due to, for example, different state laws and regulations.

## PARTICIPATION

39. I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

40. I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

41. I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

May 15, 2024

Date

Jennifer Fogarty