# Exhibit 22

```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF NEW YORK
2
   KEITH FISCHER, MICHAEL        )
3  O'SULLIVAN, JOHN MOESER,      )
   LOUIS PIA, THOMAS BARDEN,     )
4  CONSTANCE MANGAN, and         )
   CHARISE JONES,                )
5  individually and on behalf    )
   of all others similarly       )
6  situated,                     )
                                 )
7          Plaintiffs,           )   Case No:
                                 )   2:23-Civ. 2848
8       -vs-                     )   (GRB)(ARL)
                                 )
9  GOVERNMENT EMPLOYEES          )
   INSURANCE COMPANY d/b/a       )
10 GEICO,                        )
                                 )
11          Defendant.           )

12         The videotaped videoconference deposition of

13  LOUIS CANIGLIA, JR., called for examination, taken

14  pursuant to the Federal Rules of Civil Procedure of

15  the United States District Courts pertaining to the

16  taking of depositions, taken remotely before ALICE

17  M. SCHWINGER, CSR NO. 84-2913, a Certified

18  Shorthand Reporter of the State of Illinois, on the

19  17th day of January, A.D. 2025, commencing at 10:00

20  a.m. Central Standard Time.

21

22

23

24
```



```
1    APPEARANCES:

2         OUTTEN & GOLDEN, LLP,

3         (685 Third Avenue, 25th Floor,

4         New York, New York 212/245-1000,

5         516/788-7159), by:

6         MR. JARRON D. McALLISTER,

7              appeared on behalf of the Plaintiffs;

8

9         DUANE MORRIS LLP,

10        (190 South LaSalle Street, Suite 3700,

11        Chicago, Illinois 60603,

12        312/499-6700), by:

13        MR. GREGORY TSONIS,

14             appeared on behalf of the Defendant;

15

16

17

18

19

20

21

22   REPORTED BY:  ALICE M. SCHWINGER, CSR

23              CSR No. 84-2913.

24
```



LOUIS CANIGLIA, JR.                                          January 17, 2025
KEITH FISCHER, et al. vs GEICO                                            3

 1        THE VIDEOGRAPHER:  We are now on the record.     10:01:54

 2   The time is 10:00 a.m. Central Time on January 17,    10:01:55

 3   2025.  This begins the videoconference deposition     10:01:59

 4   of Louis Caniglia, Jr., taken in the matter of        10:02:03

 5   Keith Fischer, et al., v. Government Employees         10:02:07

 6   Insurance Company.  This case is filed in the         10:02:11

 7   United States District Court, Eastern District of     10:02:14

 8   New York, Case No. 2:23 CIV 2848.                     10:02:16

 9        My name is Brent Jordan.  I'm your              10:02:23

10   remote videographer today.  The court reporter is     10:02:26

11   Alice Schwinger.  We are representing Esquire         10:02:29

12   Deposition Solutions.                                 10:02:31

13        Will counsel present please identify            10:02:32

14   yourself and state whom you represent.                10:02:34

15        MR. McALLISTER:  Jarron McAllister for           10:02:36

16   plaintiffs from Outten and Golden representing        10:02:39

17   Mr. Caniglia in this deposition today.                10:02:42

18        MR. TSONIS:  Greg Tsonis from Duane Morris,      10:02:45

19   LLP, representing defendant GEICO.                    10:02:48

20        THE COURT REPORTER:  My name is Alice            10:02:51

21   Schwinger, Illinois Certified Shorthand Reporter.

22   This deposition is being held via videoconferencing

23   equipment.  The witness and reporter are not in the

24   same room.  The witness will be sworn in remotely



```
 1    pursuant to agreement of all parties.  The parties

 2    stipulate that the testimony is being given as if

 3    the witness was sworn in person.                        10:03:23

 4               (WHEREUPON, the witness was duly

 5               sworn.)

 6               LOUIS CANIGLIA, JR.,

 7    called as a witness herein, having been first duly

 8    sworn, was examined and testified as follows:

 9                    EXAMINATION

10    BY MR. TSONIS:

11        Q.    Good morning, Mr. Caniglia.               10:03:24

12        A.    Hello.                                    10:03:26

13        Q.    Can you please state and spell your name  10:03:27

14    for the record?                                     10:03:29

15        A.    Yeah, my name is Louis Caniglia.  That's  10:03:29

16    L-o-u-i-s, last name is Caniglia, C-a-n-i-g-l-i-a.  10:03:33

17        Q.    All right.  What's your current address?  10:03:42

18        A.    ███████████████████████████               10:03:43

19    ██████████████████████.                             10:03:49

20        Q.    Thank you.  And, Mr. Caniglia, as I       10:03:52

21    said, my name is Greg Tsonis.  I'm a lawyer for     10:03:55

22    GEICO, and I'll be taking your deposition today.    10:03:58

23               Have you ever been deposed before?       10:04:02

24        A.    No.                                       10:04:03
```



1    investigation unit while you worked for GEICO;        10:24:49

2    right?                                                10:24:51

3         A.    That's correct, yes.                       10:24:51

4         Q.    Besides senior outside security            10:24:52

5    investigator, did you hold any other job titles?      10:24:57

6         A.    With GEICO?                                 10:25:00

7         Q.    Yes.                                        10:25:03

8         A.    I'm sorry.  Yes, I was an auto damage       10:25:04

9    adjuster prior to becoming an investigator.           10:25:07

10        Q.    Okay.  And when were you an auto damage     10:25:10

11   adjuster?                                              10:25:13

12        A.    Started approximately April of 2011.        10:25:13

13        Q.    When did you move from auto damage          10:25:22

14   adjuster to SIU?                                       10:25:25

15        A.    I'm going to say approximately four or      10:25:27

16   five years later, so 2015ish, about.                  10:25:29

17        Q.    Okay.  And since you transferred into       10:25:41

18   SIU -- well, you transferred into SIU as a senior     10:25:47

19   field security investigator?                          10:25:53

20        A.    That's correct, yes.                        10:25:54

21        Q.    Okay.  Did you hold any other job titles    10:25:55

22   in SIU before you left GEICO?                          10:25:58

23        A.    No.                                         10:26:02

24        Q.    And I think you said Gerry Cassagne was     10:26:04



1    one of your supervisors; right?                        10:26:09

2        A.    Yes.                                          10:26:11

3        Q.    Was he your supervisor initially when        10:26:12

4    you joined SIU?                                        10:26:15

5        A.    Yes, that's correct.  Yes.                   10:26:16

6        Q.    And did he continue being your               10:26:17

7    supervisor until about 2021?                           10:26:19

8        A.    I'm going to say yeah, I'll agree with       10:26:22

9    that approximately, yes.                               10:26:25

10       Q.    Sure.  And we'll -- we'll get more           10:26:26

11   precise with -- with dates later.  I'm just trying     10:26:27

12   to get the lay of the land now.                        10:26:30

13            After Mr. Cassagne, was Toni D'Agata          10:26:32

14   your supervisor?                                       10:26:36

15       A.    Yes.                                         10:26:37

16       Q.    How long was she your supervisor for?        10:26:37

17       A.    I'm going to say approximately a year        10:26:40

18   and a half to two years.                               10:26:43

19       Q.    Okay.  And then after that -- go ahead.      10:26:45

20       A.    After that was Mr. Aniolowski and then       10:26:48

21   Ms. Bishop.                                            10:26:56

22       Q.    Is that Theresa Bishop?                      10:26:57

23       A.    Correct, yes.                                10:26:59

24       Q.    Okay.  When did you leave GEICO?             10:27:00



| | | |
|---|---|---|
| 1 | A.    December 31, 2023. | 10:27:04 |
| 2 | Q.    Why did you leave GEICO? | 10:27:07 |
| 3 | A.    You know, I -- life.  I mean, you move | 10:27:11 |
| 4 | on, seeking new things.  It was a personal matter. | 10:27:16 |
| 5 | I just -- personally, meaning like I just wanted to | 10:27:25 |
| 6 | move on to do something else.  I found another | 10:27:28 |
| 7 | opportunity that I wanted to take. | 10:27:30 |
| 8 | Q.    Okay.  So I guess when you left GEICO, | 10:27:32 |
| 9 | did you leave with another job already lined up? | 10:27:35 |
| 10 | A.    Yeah.  That's fair to say, yes. | 10:27:38 |
| 11 | Q.    Okay.  And what was that job? | 10:27:41 |
| 12 | A.    I work for Plymouth Rock Assurance, | 10:27:43 |
| 13 | Woodbridge, New Jersey. | 10:27:47 |
| 14 | Q.    Do you currently work there? | 10:27:52 |
| 15 | A.    Yes. | 10:27:54 |
| 16 | Q.    What was your start date at Plymouth | 10:27:54 |
| 17 | Rock? | 10:28:02 |
| 18 | A.    January 2, 2024.  Best of my | 10:28:02 |
| 19 | recollection, I believe that's correct. | 10:28:04 |
| 20 | Q.    Do you work with Al Brust? | 10:28:06 |
| 21 | A.    Al Brust.  It sounds familiar. | 10:28:09 |
| 22 | Q.    Well, he's a former GEICO employee and | 10:28:13 |
| 23 | also works at Plymouth Rock. | 10:28:17 |
| 24 | A.    Al Brust.  The name sounds familiar, but | 10:28:21 |



1    BY THE WITNESS:                                    10:43:06

2        A.    I can't recall.  Workday, I might       10:43:06

3    have -- there might have been a prior system before  10:43:10

4    Workday.                                           10:43:10

5    BY MR. TSONIS:                                     10:43:13

6        Q.    That's what -- I was going to get to it.  10:43:13

7    At some point, the timekeeping sort of system      10:43:16

8    changed to Workday; right?                         10:43:19

9        A.    Yes.                                     10:43:21

10       Q.    Okay.  And I recognize that Workday even  10:43:21

11   underwent a change, so I'll clarify.  You know,    10:43:25

12   when you first worked in SIU and you used Workday,  10:43:28

13   how frequently would you enter in your time?       10:43:32

14       A.    It was biweekly.                         10:43:35

15       Q.    Are you sure that it wasn't on a weekly  10:43:38

16   basis?                                             10:43:41

17       MR. McALLISTER:  Objection.                    10:43:42

18   BY THE WITNESS:                                    10:43:43

19       A.    I'm -- from what I can recall, it was    10:43:43

20   biweekly.  It might have been weekly, but it wasn't  10:43:47

21   daily until later on --                            10:43:51

22   BY MR. TSONIS:                                     10:43:51

23       Q.    Okay.                                    10:43:51

24       A.    -- in terms of Workday, putting in time.  10:43:54



1      Q.    All right.  And at some point, the      10:52:31

2   Workday system, your timekeeping system and      10:52:34

3   procedures changed; right?                       10:52:37

4      A.    Yes.                                     10:52:39

5      Q.    All right.  So at some point, GEICO      10:52:39

6   changed where you would actually sort of sign in  10:52:42

7   and sign out from your phone?                     10:52:45

8      MR. McALLISTER:  Objection.                    10:52:48

9   BY THE WITNESS:                                   10:52:49

10     A.    Yes.                                     10:52:49

11  BY MR. TSONIS:                                    10:52:51

12     Q.    And that was using like a Workday        10:52:51

13  application on your phone?                        10:52:54

14     A.    Yes.                                     10:52:56

15     Q.    All right.  Do you have a recollection   10:52:56

16  as to when that change occurred?                  10:52:59

17     A.    No, I don't.                             10:53:00

18     Q.    That was the timekeeping process,        10:53:03

19  though, that you had to follow up until you left  10:53:10

20  GEICO; right?                                     10:53:14

21     A.    Yes.                                     10:53:15

22     Q.    Okay.  And is it your testimony that     10:53:16

23  when that timekeeping process was in effect, that 10:53:20

24  you were not permitted to log any hours in excess 10:53:22



```
 1        Q.    So I'm not asking about any specific        10:54:23
 2   day.  I'm just asking were there times where you      10:54:28
 3   worked more than 7.75 hours in a day, and that's --   10:54:31
 4        A.    Yes.                                        10:54:35
 5        Q.    -- and recorded more than 7.75 hours in    10:54:35
 6   a day?                                                 10:54:38
 7        A.    Again, I -- yes.  I would have to say       10:54:39
 8   yes.  I can't recall, though, the specific days,      10:54:44
 9   but possibly, yes.                                     10:54:48
10        Q.    Okay.  When that would occur, what was     10:54:50
11   the process that you would follow?  Would you have    10:54:52
12   to, for example, notify anyone that you were going    10:54:56
13   to work more than 7.75 hours?                          10:54:58
14        A.    Yeah, my supervisor.                       10:55:01
15        Q.    Okay.  And how would you notify your       10:55:02
16   supervisor?                                            10:55:05
17        A.    E-mail.                                     10:55:05
18        Q.    What would you say in an e-mail to your    10:55:06
19   supervisor?                                            10:55:10
20        A.    I need some extra hours to work.  I'm --   10:55:10
21   you know, I'm going to be working extra hours.  Can   10:55:17
22   you approve overtime?                                  10:55:19
23        Q.    And what would your supervisor respond,    10:55:21
24   typically?                                             10:55:25
```



LOUIS CANIGLIA, JR.                                      January 17, 2025
KEITH FISCHER, et al. vs GEICO                                        54

| | | |
|---|---|---|
| 1 | A.    It would usually be, in sum and | 10:55:26 |
| 2 | substance, a negative for payment, but didn't say | 10:55:30 |
| 3 | don't work. | 10:55:35 |
| 4 | Q.    But they didn't say work the hours | 10:55:36 |
| 5 | anyway? | 10:55:40 |
| 6 | A.    They didn't say don't work. | 10:55:41 |
| 7 | Q.    Right.  I understand your testimony. | 10:55:43 |
| 8 | I'm just clarifying.  They didn't tell you to work | 10:55:46 |
| 9 | the hours anyway; right? | 10:55:48 |
| 10 | MR. McALLISTER:  Objection. | 10:55:50 |
| 11 | BY THE WITNESS: | 10:55:51 |
| 12 | A.    No, they didn't tell me to work and | 10:55:51 |
| 13 | you're not getting paid, no, they didn't say that. | 10:55:55 |
| 14 | BY MR. TSONIS: | 10:55:58 |
| 15 | Q.    Did any of your supervisors in your time | 10:55:58 |
| 16 | in SIU at GEICO ever instruct you to work off the | 10:56:01 |
| 17 | clock? | 10:56:05 |
| 18 | A.    No. | 10:56:06 |
| 19 | Q.    When you first joined SIU, were you -- | 10:56:09 |
| 20 | after your training was completed, were you working | 10:56:18 |
| 21 | remotely from your home? | 10:56:21 |
| 22 | A.    Yes. | 10:56:22 |
| 23 | Q.    And did that, I guess, continue the | 10:56:22 |
| 24 | entire time that you worked for GEICO in SIU? | 10:56:25 |



| | |
|---|---|
| 1 | A.    Yes.  Like I said before, I had -- | 10:56:29 |
| 2 | they -- GEICO would set -- set us up -- well, or | 10:56:33 |
| 3 | me, with a home office.  So, yes, I was remote.  I | 10:56:36 |
| 4 | wasn't on location in the GEICO office. | 10:56:39 |
| 5 | Q.    Were there ever times that you did go | 10:56:43 |
| 6 | into the GEICO office? | 10:56:46 |
| 7 | A.    Yes. | 10:56:48 |
| 8 | Q.    All right.  Was that the Woodbury | 10:56:48 |
| 9 | office? | 10:56:50 |
| 10 | A.    Yes. | 10:56:51 |
| 11 | Q.    And then subsequently, the Woodbury | 10:56:51 |
| 12 | office moved and is also known as the Melville | 10:56:55 |
| 13 | office? | 10:56:57 |
| 14 | A.    Yes. | 10:56:58 |
| 15 | Q.    All right.  Aside from the | 10:56:59 |
| 16 | Woodbury/Melville office, were you ever assigned to | 10:57:03 |
| 17 | any other GEICO office? | 10:57:04 |
| 18 | A.    No.  I mean, I think there was a legal | 10:57:06 |
| 19 | office in Huntington Quad -- Quadrangle.  That's | 10:57:08 |
| 20 | where I think the attorneys were.  We had a few | 10:57:12 |
| 21 | meetings there.  But other than that, no. | 10:57:15 |
| 22 | Q.    You weren't assigned, for example, to | 10:57:17 |
| 23 | the Buffalo office at any point? | 10:57:20 |
| 24 | A.    No.  No. | 10:57:22 |



```
 1   BY THE WITNESS:                                    11:05:36

 2        A.    I believe it's 37.5 a week.            11:05:36

 3   BY MR. TSONIS:                                     11:05:39

 4        Q.    So if you were to work more than 37.5, 11:05:39

 5   what would the procedure be at your current        11:05:46

 6   employer?                                          11:05:48

 7        MR. McALLISTER:  Objection.                   11:05:48

 8   BY THE WITNESS:                                    11:05:49

 9        A.    I would ask for overtime compensation. 11:05:49

10   BY MR. TSONIS:                                     11:05:57

11        Q.    Do you have an understanding as to how 11:05:57

12   that overtime rate is calculated?                  11:05:59

13        MR. McALLISTER:  Objection.                   11:06:02

14   BY THE WITNESS:                                    11:06:03

15        A.    I mean, to be honest, it's like        11:06:03

16   comparing apples and oranges.  I mean, I have      11:06:06

17   enough work to do with my current position that I  11:06:09

18   can do in my seven -- you know, my seven and a half 11:06:12

19   hours a day.  When I compare it with GEICO, I had  11:06:15

20   three times the work to do and still being asked to 11:06:23

21   do the same thing.  So I don't think it's fair to  11:06:27

22   compare the two.                                   11:06:30

23   BY MR. TSONIS:                                     11:06:32

24        Q.    Mr. Caniglia, I'm not comparing        11:06:32
```



| | | |
|---|---|---|
| 1 | MR. McALLISTER:  Objection. | 11:18:07 |
| 2 | BY THE WITNESS: | 11:18:08 |
| 3 | A.    My understanding, yes. | 11:18:08 |
| 4 | BY MR. TSONIS: | 11:18:09 |
| 5 | Q.    And was -- when you started with GEICO, | 11:18:09 |
| 6 | was that associate handbook provided to you? | 11:18:12 |
| 7 | A.    Yes. | 11:18:14 |
| 8 | Q.    I'm going to -- so in terms of exhibits | 11:18:16 |
| 9 | today, what I think will work best, I'm going to | 11:18:21 |
| 10 | drop a document in the chat -- | 11:18:24 |
| 11 | A.    Okay. | 11:18:24 |
| 12 | Q.    -- right now, and once you click on it | 11:18:26 |
| 13 | in the chat, it will ask you to download it and | 11:18:29 |
| 14 | save it somewhere.  Once it downloads, if you click | 11:18:32 |
| 15 | it again in the chat, it should open it.  So let me | 11:18:35 |
| 16 | know when you've done that, if you've got it open. | 11:18:37 |
| 17 | A.    Okay.  So I can download this; correct? | 11:18:41 |
| 18 | Q.    Yes.  It's just a PDF file. | 11:18:42 |
| 19 | A.    Okay.  I think I have it up.  It says | 11:19:02 |
| 20 | Compensation Contents? | 11:19:04 |
| 21 | Q.    Yes.  And for the record, so this will | 11:19:06 |
| 22 | be marked as Exhibit 1, and it's the document | 11:19:06 |
| 23 | bearing the Bates label G000028 through 0043. | 11:19:09 |
| 24 | | |



| | | |
|---|---|---|
| 1 | (WHEREUPON, a certain document was | 11:19:09 |
| 2 | marked Caniglia Deposition Exhibit | |
| 3 | No. 1, for identification, as of | |
| 4 | January 17, 2025.) | 11:19:17 |
| 5 | BY MR. TSONIS: | 11:19:17 |
| 6 | Q.    Mr. Caniglia, so when I say "Bates | 11:19:21 |
| 7 | numbers," and I'll probably refer to it, if you see | 11:19:23 |
| 8 | in the lower right-hand corner, do you see there's | 11:19:25 |
| 9 | a letter G and then followed by a series of | 11:19:28 |
| 10 | numbers? | 11:19:30 |
| 11 | A.    Would you like me to read them?  Yes, I | 11:19:30 |
| 12 | see that. | 11:19:32 |
| 13 | Q.    No, you don't have to read them.  I'm | 11:19:32 |
| 14 | just orienting.  So as I -- I'll refer to, you | 11:19:36 |
| 15 | know, the document ending in, for example, this | 11:19:37 |
| 16 | first page is 0028, and so if I direct you to | 11:19:39 |
| 17 | another page using those numbers, that's the number | 11:19:42 |
| 18 | set that I'm referencing.  Okay? | 11:19:46 |
| 19 | A.    Okay. | 11:19:47 |
| 20 | Q.    So does this document look familiar to | 11:19:48 |
| 21 | you, Mr. Caniglia? | 11:19:50 |
| 22 | A.    Yes.  I mean, I was handed a paper | 11:19:51 |
| 23 | document, but yeah, I would say this is similar, | 11:19:55 |
| 24 | yes. | 11:19:57 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      78

```
 1        Q.    Okay.  And when you would have those          11:28:24

 2   conversations, it sounds like part of that either       11:28:25

 3   e-mail or conversation would be requesting              11:28:28

 4   overtime?                                               11:28:30

 5        A.    Yes.                                          11:28:31

 6        Q.    All right.  And those conversations,         11:28:32

 7   though, didn't say I feel like my pay doesn't -- my     11:28:36

 8   paycheck that I received doesn't reflect the hours      11:28:40

 9   that I actually worked, right, as we were looking       11:28:42

10   at in the handbook?                                     11:28:45

11        A.    I don't --                                   11:28:47

12        MR. McALLISTER:  Objection.                        11:28:47

13   BY THE WITNESS:                                         11:28:48

14        A.    I don't know.  Can you rephrase that,        11:28:48

15   Counsel?  I think you're summarizing my statements      11:28:49

16   a little bit.                                           11:28:52

17   BY MR. TSONIS:                                          11:28:53

18        Q.    Right.  I guess I'm trying to get            11:28:53

19   specifically as to an understanding as to what you      11:28:55

20   would say.  You wouldn't say I worked, you know, 50     11:28:57

21   hours last week, and my paycheck does not reflect       11:29:02

22   that; right?                                            11:29:05

23        MR. McALLISTER:  Objection.                        11:29:06

24                                                           11:29:06
```



LOUIS CANIGLIA, JR.                                     January 17, 2025
KEITH FISCHER, et al. vs GEICO                                        79

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 11:29:07 |
| 2 | A.   I don't -- if I can recall back to my | 11:29:07 |
| 3 | conversations with my supervisors, it's possible | 11:29:11 |
| 4 | that I -- I could have said something like that, | 11:29:14 |
| 5 | like I worked 20 hours overtime and my pay -- my | 11:29:17 |
| 6 | paycheck doesn't reflect that.  It's possible. | 11:29:20 |
| 7 | BY MR. TSONIS: | 11:29:23 |
| 8 | Q.   But you don't recall -- | 11:29:23 |
| 9 | A.   Yes. | 11:29:23 |
| 10 | Q.   You don't recall any conversation like | 11:29:25 |
| 11 | that? | 11:29:26 |
| 12 | A.   Do I recall any -- I just said that, | 11:29:27 |
| 13 | it's definitely possible that I said that to my | 11:29:32 |
| 14 | supervisors, and it fell on deaf ears. | 11:29:35 |
| 15 | Q.   So you're saying it's possible, but do | 11:29:38 |
| 16 | you recall any specific conversation like that? | 11:29:40 |
| 17 | A.   A specific date and time, no; but, yes, | 11:29:42 |
| 18 | I've definitely expressed my overtime to my | 11:29:47 |
| 19 | supervisors over the phone, and I wasn't | 11:29:52 |
| 20 | compensated for it. | 11:29:56 |
| 21 | Q.   Okay.  So when you say -- | 11:29:58 |
| 22 | A.   I don't know how far up that goes up the | 11:29:59 |
| 23 | line after the supervisor, if the manager or the | 11:30:01 |
| 24 | vice president or -- again, I can't attest to any | 11:30:03 |



| | | |
|---|---|---|
| 1 | document for reference.  I'm just asking you a | 11:34:50 |
| 2 | basic factual question. | 11:34:52 |
| 3 | A.    Okay. | 11:34:52 |
| 4 | Q.    Did you ever report to your local human | 11:34:53 |
| 5 | resources manager that you did not receive pay for | 11:34:55 |
| 6 | all the hours you actually worked? | 11:34:58 |
| 7 | A.    I'm going to say no. | 11:35:00 |
| 8 | Q.    All right.  Did you ever -- | 11:35:00 |
| 9 | A.    Yes, no.  Sorry. | 11:35:02 |
| 10 | Q.    Did you ever report to corporate human | 11:35:03 |
| 11 | resources that you -- you did not receive pay for | 11:35:06 |
| 12 | all the hours you actually worked? | 11:35:09 |
| 13 | A.    I didn't even know we could do that, but | 11:35:11 |
| 14 | no. | 11:35:15 |
| 15 | Q.    Okay.  Were you aware that GEICO | 11:35:16 |
| 16 | maintains like a Berkshire Hathaway ethics hotline? | 11:35:17 |
| 17 | A.    Yes. | 11:35:21 |
| 18 | Q.    Did you ever report to the Berkshire | 11:35:21 |
| 19 | Hathaway ethics hotline that you did not receive | 11:35:23 |
| 20 | pay for all hours that you actually worked? | 11:35:25 |
| 21 | A.    I did not. | 11:35:27 |
| 22 | Q.    Okay.  So I'm going to drop another | 11:35:28 |
| 23 | exhibit into the chat here.  You should be getting | 11:35:34 |
| 24 | it now.  This is going to be marked as Exhibit 2, | 11:36:02 |



LOUIS CANIGLIA, JR.                                                January 17, 2025
KEITH FISCHER, et al. vs GEICO                                              91

```
 1        A.    No, I -- no.                              11:42:21

 2        Q.    Okay.                                     11:42:21

 3        A.    I'm going to assume my supervisor.        11:42:26

 4   That's an assumption, though.  I'm going to assume   11:42:29

 5   my supervisor.                                       11:42:31

 6        Q.    And when your supervisor -- so I guess    11:42:32

 7   when you submit it, are you certifying that it's,    11:42:34

 8   like, you know, accurate, accurately reflects the    11:42:36

 9   time that you worked?                                11:42:39

10        MR. McALLISTER:  Objection.                     11:42:39

11   BY THE WITNESS:                                      11:42:40

12        A.    No.                                       11:42:40

13   BY MR. TSONIS:                                       11:42:42

14        Q.    It's your testimony that it's not a       11:42:42

15   certification each week when you submit in Workday?  11:42:44

16        MR. McALLISTER:  Objection.                     11:42:47

17   BY THE WITNESS:                                      11:42:48

18        A.    A certification of what I was allotted    11:42:48

19   to do during that time period.                       11:42:52

20   BY MR. TSONIS:                                       11:42:55

21        Q.    Is that what the certification that you   11:42:55

22   have to acknowledge each week says, this certifies   11:42:58

23   that you have entered what you were allotted to      11:43:01

24   work, or does it say that you --                     11:43:03
```



LOUIS CANIGLIA, JR.                                          January 17, 2025
KEITH FISCHER, et al. vs GEICO                                            92

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:43:03 |
| 2 | (WHEREUPON, there was a brief | 11:43:03 |
| 3 | interruption.) | 11:43:03 |
| 4 | THE COURT REPORTER:  Hold on.  Hold on. | 11:43:11 |
| 5 | MR. McALLISTER:  Lou, if you can just let him | 11:43:11 |
| 6 | finish the question before you answer. | 11:43:12 |
| 7 | THE WITNESS:  I'm sorry. | 11:43:15 |
| 8 | (Record read.) | 11:43:15 |
| 9 | MR. TSONIS:  I'll finish my question. | 11:43:15 |
| 10 | BY MR. TSONIS: | 11:43:28 |
| 11 | Q.    Does it say that you certify that the | 11:43:28 |
| 12 | hours that you entered are accurate and reflect the | 11:43:32 |
| 13 | time worked? | 11:43:35 |
| 14 | MR. McALLISTER:  Objection. | 11:43:35 |
| 15 | BY THE WITNESS: | 11:43:37 |
| 16 | A.    Answer it as a yes-or-no question.  I | 11:43:37 |
| 17 | believe it does say that, but that doesn't mean | 11:43:42 |
| 18 | that I felt accurate about doing that.  I mean, I | 11:43:45 |
| 19 | did have to keep my job and pay my mortgage, so I | 11:43:49 |
| 20 | clicked yes. | 11:43:53 |
| 21 | BY MR. TSONIS: | 11:43:54 |
| 22 | Q.    Okay.  And, Mr. Caniglia, you have | 11:43:54 |
| 23 | already said a number of things, and you will have | 11:43:57 |
| 24 | plenty of opportunity to explain your -- I just -- | 11:44:00 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                       96

1    time he told me that.                                    11:47:10

2         Q.    All right.  Did Gerry Cassagne tell you       11:47:11

3    that 38.75 hours was the normal scheduled workweek?      11:47:13

4         A.    Yeah, I'll agree to that, yes.                11:47:17

5         Q.    All right.  Did Gerry Cassagne tell you       11:47:25

6    that if you needed to work more than 38.75 hours         11:47:27

7    that you just needed to get his approval?                11:47:30

8         A.    Yes, he has said that to me before, yes.      11:47:34

9         Q.    Okay.  Wasn't it Gerry Cassagne's             11:47:41

10   process that if you needed to work overtime, you         11:47:44

11   could work it, but he just wanted you to send him        11:47:45

12   an e-mail afterwards?                                    11:47:48

13        MR. McALLISTER:  Objection.                         11:47:50

14   BY THE WITNESS:                                          11:47:51

15        A.    I don't know what Gerry Cassagne's            11:47:51

16   process was.  I can tell you what my -- if you want      11:47:54

17   to ask about what -- how I -- I viewed it, then          11:47:56

18   that's fine.                                             11:48:00

19   BY MR. TSONIS:                                           11:48:00

20        Q.    Sure.  How did you view it?                   11:48:00

21        A.    I viewed it as I would call, request the      11:48:02

22   overtime, and -- let me -- Gerry Cassagne's a            11:48:08

23   great -- he's a -- he's -- he's a good man.  I'm         11:48:13

24   being honest with you, and on this deposition, but       11:48:16



1      A.    Yes.                                           11:54:55

2      Q.    And Gerry Cassagne, you know, starts off       11:54:56

3   thanking people for submitting their time sheets,       11:55:01

4   and then in the second paragraph says:  If you          11:55:03

5   still have to submit, please do so by tomorrow.         11:55:06

6   If you plan on working any overtime today or            11:55:09

7   tomorrow, you must enter it into this time sheet.       11:55:11

8   After I approve the time sheet, and the hours are       11:55:14

9   not correct, I must put in a special correction         11:55:17

10  through HR to adjust it.                                11:55:20

11        Do you see that?                                  11:55:22

12     A.    I do.                                          11:55:22

13     Q.    All right.  And in the third paragraph,        11:55:23

14  he writes:  If you get stuck working overtime after     11:55:23

15  you submitted your sheet, contact me immediately so     11:55:26

16  I can make the correction before I approve it and       11:55:29

17  send it in.  Right?                                     11:55:31

18     A.    Yes.                                           11:55:32

19     Q.    All right.  So here, in December of '16,       11:55:33

20  Gerry Cassagne is instructing you to enter in           11:55:36

21  overtime into your time sheet; right?                   11:55:39

22     A.    Yeah, I would agree with that, yes.            11:55:41

23     Q.    Okay.  He's instructing everyone, in           11:55:45

24  fact, that reports to him that any overtime work        11:55:49



1   has to be entered into their time sheet?                11:55:51

2       A.    I don't know if that's a question, but       11:55:53

3   I'll agree with your statement, yes.                    11:55:57

4       Q.    Okay.  And, in fact, I guess he's            11:55:58

5   saying -- he's saying that if -- if you work            11:56:01

6   overtime after you submitted your sheets, to let        11:56:04

7   him know so he can get you paid for it; right?          11:56:07

8       A.    Yes.  He sent an e-mail out for that,        11:56:12

9   yes.                                                    11:56:16

10      Q.    You can close this document out too.         11:56:16

11      A.    Okay.                                        11:56:20

12      Q.    I'm dropping another document in the         11:56:21

13  chat.                                                   11:56:31

14      A.    Okay.                                        11:56:32

15              (WHEREUPON, a certain document was         11:56:32

16              marked Caniglia Deposition Exhibit

17              No. 5, for identification, as of

18              January 17, 2025.)                         11:56:32

19  BY MR. TSONIS:                                          11:56:32

20      Q.    It's going to be marked as Exhibit 5,        11:56:33

21  and for the court reporter, Exhibit 5 for the           11:56:34

22  record is a document bearing the Bates label            11:56:38

23  G012903.                                                11:56:43

24      A.    Can I just ask, who is -- Gregory,           11:56:45



LOUIS CANIGLIA, JR.
KEITH FISCHER, et al. vs GEICO

January 17, 2025
112

| | | |
|---|---|---|
| 1 | document.  It's immediately above that sentence -- | 12:03:38 |
| 2 | A.    Yes.  Thank you for that.  Yes, 4 hours | 12:03:42 |
| 3 | and 15 minutes, yes. | 12:03:44 |
| 4 | Q.    All right.  So -- | 12:03:45 |
| 5 | A.    2 hours, 2 hours 15 minutes, for a total | 12:03:46 |
| 6 | of 4 hours 15 for the week so far, yes. | 12:03:49 |
| 7 | Q.    So Gerry Cassagne is asking his team to | 12:03:51 |
| 8 | report overtime that they have accrued so far that | 12:03:54 |
| 9 | week and -- | 12:03:56 |
| 10 | A.    Yeah. | 12:03:56 |
| 11 | Q.    -- it's fair to reason that he didn't | 12:03:56 |
| 12 | know that those individuals had overtime or not; | 12:03:58 |
| 13 | right? | 12:04:01 |
| 14 | A.    I mean, during this time period, from | 12:04:01 |
| 15 | what I can recall, yeah, I mean, GEICO did -- I | 12:04:03 |
| 16 | mean, when we were working, I believe we were | 12:04:06 |
| 17 | getting paid at this particular time for overtime, | 12:04:08 |
| 18 | and I can see the documented time slots of whatever | 12:04:11 |
| 19 | I did during that day.  It's in my diary.  So yes. | 12:04:15 |
| 20 | Q.    Okay.  And so you told Gerry 4 hours and | 12:04:19 |
| 21 | 15 minutes of overtime, and if you scroll up to the | 12:04:23 |
| 22 | first page in this document -- | 12:04:26 |
| 23 | A.    Yeah. | 12:04:26 |
| 24 | Q.    -- he responds:  Please give me a | 12:04:28 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    113

| | | |
|---|---|---|
| 1 | breakdown of your Monday and Tuesday schedule this | 12:04:30 |
| 2 | week when you received overtime.  Right? | 12:04:32 |
| 3 | A.    Under -- Counsel, I'm sorry, I -- | 12:04:34 |
| 4 | Q.    It's at the very bottom -- it's at the | 12:04:39 |
| 5 | very bottom of page 1. | 12:04:40 |
| 6 | A.    Please give me a break -- yes.  Okay. | 12:04:42 |
| 7 | It's at the bottom.  I see it.  Okay. | 12:04:44 |
| 8 | Q.    Okay.  And then you respond to that, | 12:04:46 |
| 9 | looking above, with kind of a breakdown of what | 12:04:48 |
| 10 | your Monday was and your activities by sort of | 12:04:51 |
| 11 | breaking down your day, and then the same thing for | 12:04:53 |
| 12 | Tuesday; right? | 12:04:55 |
| 13 | A.    Yes, the 11 -- 11/29 and 11/28. | 12:04:56 |
| 14 | Q.    That's right. | 12:05:01 |
| 15 | A.    Okay. | 12:05:03 |
| 16 | Q.    Okay.  So you thought you needed 4 hours | 12:05:03 |
| 17 | and 15 minutes of overtime to do your work this | 12:05:08 |
| 18 | day, and you worked it; right? | 12:05:11 |
| 19 | A.    To be honest with you, I probably should | 12:05:12 |
| 20 | have requested more overtime, but that's what I | 12:05:16 |
| 21 | felt like I -- I could ask for without being | 12:05:21 |
| 22 | like -- I don't know.  It's my feeling.  I felt | 12:05:26 |
| 23 | like -- I mean, if I look at this time period, from | 12:05:32 |
| 24 | what I can recall, and I remember that, yeah, I put | 12:05:37 |



LOUIS CANIGLIA, JR.                                      January 17, 2025
KEITH FISCHER, et al. vs GEICO                                        114

1   two hours -- it looks like two hours.  I requested        12:05:39

2   two hours, but that doesn't mean I really -- I            12:05:42

3   worked more than two hours.  I was just asking for        12:05:45

4   something just to, like, I don't know, get -- be          12:05:47

5   compensated for the work that I'm doing.                  12:05:52

6        Q.   I guess, Mr. Caniglia, you have a               12:05:55

7   specific recollection that on Monday, November 28,        12:05:58

8   2016, you worked more than the two hours of               12:06:01

9   overtime you requested that day?                          12:06:04

10       A.   Counsel, that's a -- it's a long time           12:06:05

11  ago.  I don't remember that specific day, but based       12:06:08

12  on this document, I would say yes.                        12:06:11

13       Q.   What about this document makes you think        12:06:14

14  you worked more when you have time stamped your           12:06:15

15  entries on this day and indicated why you needed          12:06:18

16  the two hours?                                            12:06:21

17       A.   Well, 6:00 a.m. to 6:30 p.m. is 12              12:06:22

18  hours; correct?                                           12:06:30

19       Q.   Are you asking me?                              12:06:36

20       A.   I mean, that's my statement.  I mean,           12:06:37

21  it's 12 hours right there.  And I only requested          12:06:40

22  two hours of overtime.  So I should have actually         12:06:46

23  requested four, but...                                    12:06:49

24       Q.   Did you work the entire time during this        12:06:53



1    time period?                                          12:06:56

2        A.    Yes, I would say I did.                     12:06:57

3        Q.    You do have a specific recollection?        12:06:59

4        A.    I don't remember the day entirely, but      12:07:04

5    based -- I can testify to my -- my notes and this     12:07:07

6    document in front of me, I would testify that         12:07:11

7    that's correct.                                       12:07:13

8        Q.    Okay.  Similarly, do you have a specific    12:07:14

9    recollection for November 29, 2016, that you          12:07:18

10   actually worked more than the 2 hours and 15          12:07:20

11   minutes that you requested?                           12:07:22

12       A.    I don't think it was -- no, I don't         12:07:24

13   remember this specific day, no.                       12:07:28

14       Q.    Okay.  But in any event, you felt like      12:07:29

15   you were able to request overtime for these two       12:07:33

16   days worked; right?                                   12:07:36

17       A.    Yes.  From this period, yes.                12:07:38

18       Q.    Okay.  And you were able to work the        12:07:41

19   overtime and just let Gerry Cassagne know after the   12:07:42

20   fact that you worked it?                              12:07:45

21       A.    Again, it's not a question, but I'll        12:07:46

22   agree with it.  Yes.                                  12:07:53

23       Q.    And Mr. Cassagne doesn't challenge it or    12:07:55

24   push back, he just says thank you; right?             12:07:58



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    116

 1        A.    Mr. Cassagne, at that particular time, I        12:08:01
 2   don't -- no, I --                                          12:08:06
 3        Q.    Look at the top e-mail.                         12:08:07
 4        A.    Yes, he says thank you.  Yes, that's            12:08:09
 5   correct.                                                   12:08:11
 6        Q.    Now, if we go to page 3 of the PDF, it's        12:08:11
 7   the page ending in 543.                                    12:08:16
 8        A.    Mm-hmm.  Yes.                                   12:08:17
 9        Q.    All right.  Do you see that you just            12:08:18
10   sent a daily activity report on December 7, 2016?         12:08:21
11        A.    Yes, I recall at this particular time I         12:08:24
12   think they -- that's -- this is what they wanted          12:08:27
13   it, GEICO management wanted to -- or maybe Gerry          12:08:30
14   just wanted.  I don't know if it came from the --         12:08:35
15   above him, but this is what he wanted us to do to         12:08:37
16   document our daily activity reports.  Just, you           12:08:42
17   know, to say what we're doing if we're going to put       12:08:50
18   in for overtime because we're requesting something        12:08:52
19   and we want to -- we want to, you know, be                12:08:55
20   compensated for it, for that particular time, so...       12:08:59
21        Q.    Sure.  So at this time period, Gerry            12:09:04
22   Cassagne let you, I guess, work overtime if you           12:09:08
23   needed it, but you just had to document what the          12:09:13
24   reasoning was for the overtime in a form that's           12:09:15



1   similar to what's your e-mail on the page ending in          12:09:18

2   543 looks like?                          12:09:22

3       MR. McALLISTER:  Objection.                          12:09:23

4   BY THE WITNESS:                          12:09:24

5       A.   I'm going to say that he -- Gerry asked          12:09:24

6   me, based on the e-mail, to do a daily activity          12:09:30

7   report of what I was doing during that day.  And as          12:09:33

8   you can see, from 7:00 a.m. to 6:30, there's no          12:09:38

9   p.m. at the bottom, but, I mean, on that day,          12:09:41

10  that's -- I'm going to say that's what I did.  I          12:09:44

11  mean, I did these things.                          12:09:47

12  BY MR. TSONIS:                          12:09:49

13      Q.   Okay.  And I'm not suggesting that you          12:09:49

14  didn't do any of the activities here.  I guess I'm          12:09:53

15  just asking generally, it looks to me that you          12:09:56

16  worked an hour and 15 minutes overtime, you write,          12:09:59

17  and -- on this day, and you just logged it and sent          12:10:02

18  it to Gerry; right?                          12:10:05

19      A.   Yeah.  Again, I should have put more in,          12:10:06

20  but I didn't.                          12:10:09

21      Q.   I understand that.  But I guess if          12:10:10

22  you're sending this e-mail and saying an hour and          12:10:13

23  15 minutes overtime for this day, you would be          12:10:15

24  entering that hour and 15 minutes into, you know,          12:10:19



1      Q.    All right.  Now, if you look at the next      12:18:04
2  page ending in 836.                                      12:18:06
3      A.    836.                                           12:18:12
4      Q.    It's an e-mail sent March 18 -- March 6,       12:18:14
5  2018, from you to Gerry.                                 12:18:17
6      A.    Now, what page is that?                        12:18:22
7      Q.    The page ending in 836.  It would be           12:18:23
8  page 9 of the PDF.                                       12:18:26
9      A.    Page 9.  Okay.                                 12:18:28
10      Q.    Do you see that page?                         12:18:30
11      A.    I got -- it's 2018, Counsel.                  12:18:32
12      Q.    All right.  So in March 6, 2018,              12:18:34
13  similarly, you're writing a daily activity report       12:18:37
14  and putting in for two hours of overtime; right?        12:18:40
15      A.    Yes.                                          12:18:42
16      Q.    Any recollection as to why you were           12:18:43
17  cc-ing Richard Kilgen?                                  12:18:46
18      A.    No.  Rich Kilgen was a supervisor for         12:18:49
19  another team.  He wasn't my direct supervisor.          12:18:59
20      Q.    Okay.                                         12:18:59
21      A.    It's possible Gerry might have been,          12:19:01
22  like, on vacation or something.  I -- I don't know       12:19:04
23  why I did that --                                       12:19:08
24      Q.    Okay.                                         12:19:08



| | | |
|---|---|---|
| 1 | A.    -- other than that reason. | 12:19:11 |
| 2 | Q.    And, again, it's an e-mail from, you | 12:19:12 |
| 3 | know, six, seven years ago.  I don't necessarily | 12:19:15 |
| 4 | expect that you would know precisely why, but I'm | 12:19:18 |
| 5 | just seeing if there is any recollection. | 12:19:20 |
| 6 | A.    Okay. | 12:19:20 |
| 7 | Q.    So if you go to the next page ending in | 12:19:23 |
| 8 | 535, you see similarly it's another e-mail from | 12:19:27 |
| 9 | March 12, 2018? | 12:19:31 |
| 10 | A.    Yes. | 12:19:32 |
| 11 | Q.    And, again, logging your time spent | 12:19:33 |
| 12 | working but -- and asking for three hours of | 12:19:38 |
| 13 | overtime? | 12:19:40 |
| 14 | A.    Yes. | 12:19:41 |
| 15 | Q.    All right.  And, again, Gerry Cassagne | 12:19:41 |
| 16 | just responds back thanks? | 12:19:46 |
| 17 | A.    Yes. | 12:19:48 |
| 18 | Q.    Go to the next page ending in 534. | 12:19:49 |
| 19 | A.    534.  Page 11 on the PDF? | 12:19:59 |
| 20 | Q.    Yes. | 12:20:03 |
| 21 | A.    Okay.  Yes, I'm on it. | 12:20:04 |
| 22 | Q.    All right.  And so here, once again, | 12:20:06 |
| 23 | March 21, 2018, an e-mail from you to Mr. Cassagne | 12:20:08 |
| 24 | outlining your activities on that day; right? | 12:20:12 |



1       A.    Yes.                                        12:20:16

2       Q.    All right.  And you request one hour of    12:20:16

3   overtime for that shift?                             12:20:21

4       A.    Yeah.                                       12:20:22

5       Q.    And, again, Gerry responds back thanks?    12:20:23

6       A.    Yes.                                        12:20:27

7       Q.    Flip to the next page, 50 -- that ends     12:20:27

8   in 502.                                              12:20:31

9       A.    Okay.  Yes.                                 12:20:33

10       Q.    Same type of document; right?  Monday --  12:20:36

11   or April 9, 2018, e-mail from you to Gerry?         12:20:38

12       A.    Yes.                                       12:20:41

13       Q.    All right.  And the subject is Overtime   12:20:41

14   Request 3 hours?                                    12:20:44

15       A.    Yes.                                       12:20:45

16       Q.    All right.  And, again, you outline your  12:20:46

17   activities and put three hours of overtime?         12:20:48

18       A.    Yes.                                       12:20:51

19       Q.    All right.  And, again, Gerry just        12:20:52

20   responds back thank you?                            12:20:54

21       A.    Yes.                                       12:20:55

22       Q.    All right.  Turn to the next page ending  12:20:56

23   in 501.                                             12:20:59

24       A.    Okay.  I'm on it.                          12:21:01



LOUIS CANIGLIA, JR.                                     January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      129

1      Q.    All right.  Similarly, April 11, 2018,    12:21:03

2   e-mail, right, from you to Gerry?                  12:21:05

3      A.    Yes.                                       12:21:07

4      Q.    All right.  Entitled Overtime Request     12:21:08

5   4/11/18.  And here, you --                          12:21:12

6      A.    Yes.                                       12:21:12

7      Q.    -- and here, you request two hours of      12:21:13

8   overtime; right?                                    12:21:16

9      A.    Yes.                                       12:21:17

10      Q.    And, once again, Gerry just says thank    12:21:17

11   you?                                               12:21:20

12      A.    Yes.                                       12:21:20

13      Q.    Turn to the next page ending in 500.      12:21:21

14      A.    Okay.                                      12:21:27

15      Q.    It's an e-mail from you to Gerry on       12:21:27

16   April 17, 2018; right?                             12:21:30

17      A.    Yes.                                       12:21:33

18      Q.    All right.  And it's entitled DAR for     12:21:33

19   4/17/2018 4 hours OT requested?                    12:21:37

20      A.    Yes.                                       12:21:40

21      Q.    And you go on to request four hours of    12:21:40

22   overtime on this date?                             12:21:43

23      A.    I did, yes.                               12:21:44

24      Q.    And Gerry responds back again, thank      12:21:46



| | | |
|---|---|---|
| 1 | you? | 12:21:49 |
| 2 | A. Yes. | 12:21:49 |
| 3 | Q. Look to the next page that ends in 486. | 12:21:50 |
| 4 | A. Okay. | 12:21:57 |
| 5 | Q. All right. This is an e-mail from you | 12:21:58 |
| 6 | to Gerry sent April 19, 2018; right? | 12:22:00 |
| 7 | A. Yes. | 12:22:03 |
| 8 | Q. All right. And it says "overtime | 12:22:04 |
| 9 | request" in the subject -- | 12:22:06 |
| 10 | A. Yes. | 12:22:08 |
| 11 | Q. -- with a date? All right. And here, | 12:22:09 |
| 12 | you outline kind of what you did and you request | 12:22:10 |
| 13 | six and a half hours of overtime? | 12:22:13 |
| 14 | A. Yes. | 12:22:15 |
| 15 | Q. Turn to the next page ending in 488. | 12:22:15 |
| 16 | A. Yes. | 12:22:24 |
| 17 | Q. It's an e-mail from you to Gerry, | 12:22:24 |
| 18 | April 24, 2018? | 12:22:26 |
| 19 | A. Yeah. | 12:22:29 |
| 20 | Q. And, again, you outline your activities | 12:22:30 |
| 21 | in the case and put in for three hours of overtime? | 12:22:34 |
| 22 | A. Yes. | 12:22:36 |
| 23 | Q. Turn to the next page ending in 489. | 12:22:36 |
| 24 | A. Yes. | 12:22:41 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      131

1      Q.    You see it's an e-mail from you to Gerry        12:22:42
2   dated April 25, 2018?                                    12:22:46
3      A.    Yes.                                            12:22:48
4      Q.    And, again, you log your activities and         12:22:48
5   put in for three hours of overtime?                      12:22:51
6      A.    Yes.                                            12:22:53
7      Q.    Turn to the next page ending in 418.            12:22:54
8      A.    418.   418.   Is this the 12/10/18, says 3      12:23:01
9   hours?   My -- 418, yes.   Sorry.   Yes, you're right.   12:23:08
10     Q.    It's an e-mail from you to Gerry sent           12:23:13
11  December 13, 2018?                                       12:23:17
12     A.    Yes.                                            12:23:18
13     Q.    And the subject is OT?                          12:23:19
14     A.    Yes.                                            12:23:21
15     Q.    And here, you just write, you know,             12:23:22
16  December 10, '18, 3 hours; December 11, '18, 3           12:23:24
17  hours; total of 6 this week?                             12:23:29
18     A.    Yes.                                            12:23:30
19     Q.    All right.   So you were putting in for         12:23:31
20  six hours of overtime for that week?                     12:23:32
21     A.    Total for this week, yes.                       12:23:34
22     Q.    All right.   So we looked at e-mails from       12:23:37
23  you to Gerry Cassagne putting in for overtime for        12:23:44
24  2016, 2017, and 2018; right?                             12:23:49



LOUIS CANIGLIA, JR.                                  January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    132

| | | |
|---|---|---|
| 1 | A.    Yes. | 12:23:53 |
| 2 | Q.    So is it accurate to say that during | 12:23:53 |
| 3 | this time, Gerry Cassagne allowed you to work | 12:23:55 |
| 4 | overtime so long as you simply sent him an e-mail | 12:23:58 |
| 5 | documenting the activities that required overtime? | 12:24:02 |
| 6 | MR. McALLISTER:  Objection. | 12:24:04 |
| 7 | BY THE WITNESS: | 12:24:05 |
| 8 | A.    For that particular time period of those | 12:24:05 |
| 9 | months, yes.  That doesn't incorporate the entire | 12:24:09 |
| 10 | year. | 12:24:11 |
| 11 | BY MR. TSONIS: | 12:24:12 |
| 12 | Q.    Okay.  But at least the time periods | 12:24:12 |
| 13 | that we saw throughout this multi-year period, | 12:24:16 |
| 14 | there were times where Gerry Cassagne allowed you | 12:24:20 |
| 15 | to work overtime? | 12:24:22 |
| 16 | MR. McALLISTER:  Objection. | 12:24:22 |
| 17 | BY THE WITNESS: | 12:24:24 |
| 18 | A.    GEICO did, I believe, compensate us.  I | 12:24:24 |
| 19 | mean, I don't see if it was approved or not, but | 12:24:30 |
| 20 | based on these e-mails, I requested it. | 12:24:32 |
| 21 | BY MR. TSONIS: | 12:24:34 |
| 22 | Q.    Do you have any reason to think that you | 12:24:34 |
| 23 | weren't paid for any of the hours that you | 12:24:36 |
| 24 | documented in the e-mails? | 12:24:37 |



LOUIS CANIGLIA, JR.                                   January 17, 2025
KEITH FISCHER, et al. vs GEICO                                     165

```
 1      Q.    -- which manager are you referring to or    13:09:22

 2  managers?                                             13:09:24

 3      A.    Again, I can't -- the statement, I see      13:09:25

 4  it now, but the manager at the particular time was    13:09:31

 5  Bill Newport, I believe, during that 2023 period.     13:09:36

 6  So --                                                 13:09:47

 7      Q.    Let me ask --                               13:09:47

 8      A.    -- again, Bill Newport never said to me     13:09:49

 9  directly that I can't receive overtime, so I          13:09:52

10  don't --                                              13:09:59

11      Q.    Okay.  Did Rene Cubas ever tell you that    13:10:00

12  you couldn't receive overtime?                        13:10:04

13      A.    Directly, no.                               13:10:06

14      Q.    Did Mike DeGrocco ever tell you you         13:10:07

15  could not receive overtime?                           13:10:11

16      A.    No.                                         13:10:13

17      Q.    Okay.  Did any of those three managers      13:10:14

18  ever instruct you to work off the clock?              13:10:19

19      A.    To work off the clock, no, no.              13:10:22

20      Q.    Okay.  None of those managers would know    13:10:25

21  if you were working off the clock; right?             13:10:31

22      A.    I don't know that.  I don't know.  I'm      13:10:34

23  assuming there's ways to check if you're on the       13:10:41

24  computer and stuff or not, but I don't -- I don't     13:10:44
```



```
 1        A.    My complaint is that I was working and I      13:11:55
 2   wasn't compensated for my time that I worked for         13:12:01
 3   GEICO all of the time, in terms of the entirety of       13:12:05
 4   my overtime working.  I'm going to say no to your        13:12:12
 5   question because I can't attest to if they knew          13:12:19
 6   anything or not.  So, again, my complaint is unpaid      13:12:22
 7   overtime.  It's just -- it's a simple complaint,         13:12:27
 8   so...                                                    13:12:30
 9        Q.    Okay.  So that's fair.  So your               13:12:30
10   complaint is unpaid overtime, but you don't know if      13:12:32
11   any of the supervisors were aware of any of the          13:12:35
12   hours that you were working but not getting paid         13:12:38
13   for?                                                     13:12:40
14        MR. McALLISTER:  Objection.                         13:12:41
15   BY THE WITNESS:                                          13:12:41
16        A.    They were aware of it because I -- I --       13:12:41
17   you -- you showed me e-mails before of -- of me          13:12:45
18   telling them.  You only have a brief period of           13:12:50
19   time, though, from 2017 to 2018, I believe, but,         13:12:54
20   you know, there was other years that -- and days         13:12:58
21   that there's no documentation for that, and there        13:13:00
22   could have been con -- there were phone                  13:13:03
23   conversations and things like that, so...                13:13:05
24                                                            13:13:05
```



|    |                                                        |          |
|----|--------------------------------------------------------|----------|
| 1  | BY MR. TSONIS:                                          | 13:13:07 |
| 2  | Q.    Right.  I guess, listen to the question          | 13:13:07 |
| 3  | precisely, right, because we said for those            | 13:13:09 |
| 4  | e-mails, you were paid for those hours; right?         | 13:13:12 |
| 5  | MR. McALLISTER:  Objection.                            | 13:13:15 |
| 6  | BY THE WITNESS:                                         | 13:13:17 |
| 7  | A.    I -- I can say that I requested those            | 13:13:17 |
| 8  | hours for me, and if you can look at the outline of    | 13:13:20 |
| 9  | those -- of those e-mails, I requested two hours       | 13:13:25 |
| 10 | when I was -- I literally worked six hours             | 13:13:30 |
| 11 | overtime, sometimes, or four hours overtime, and      | 13:13:34 |
| 12 | I'm only requesting an hour or two hours.  So, I       | 13:13:37 |
| 13 | mean, it's -- again, the complaint is I'm not          | 13:13:40 |
| 14 | being -- I was -- we -- I was not paid for the time    | 13:14:00 |
| 15 | that I worked for the company of GEICO and             | 13:14:02 |
| 16 | protected their assets and did what I had to do to     | 13:14:06 |
| 17 | protect insurance fraud, people trying to get money    | 13:14:10 |
| 18 | that they didn't deserve, and that's what it was,      | 13:14:13 |
| 19 | so...                                                   | 13:14:13 |
| 20 | BY MR. TSONIS:                                          | 13:14:16 |
| 21 | Q.    Right.  Mr. Caniglia, I guess, just              | 13:14:16 |
| 22 | listen to where I'm trying to -- the question --       | 13:14:19 |
| 23 | A.    I can't give you yes-or-no questions all         | 13:14:21 |
| 24 | the time, Counsel.  You're trying to box me in         | 13:14:24 |



1    basically -- I mean, and that was it, so...          13:39:18

2        Q.    So he communicated the expectation of       13:39:24

3    the workweek was 38.75 hours?                         13:39:28

4        A.    I would say yes.  Yes.                       13:39:30

5        Q.    As a field investigator, were you able      13:39:33

6    to flex your time?                                    13:39:41

7        A.    Flex my time.  Can you -- what do you        13:39:42

8    mean by flex time?                                    13:39:48

9        Q.    Is that a term that sounds familiar to      13:39:48

10   you?                                                  13:39:52

11       A.    It is.  Do you mean like work the 38.75     13:39:52

12   hours a week in the time I want to work, like --      13:40:00

13   you know what I mean?  Like -- like, if I -- if I     13:40:05

14   work 15 hours on Monday, 8 hours on Tuesday, 4        13:40:08

15   hours on Wednesday, 10 hours on Thursday, 12 hours    13:40:14

16   on Friday, I mean, yeah, it's flex timing, but        13:40:18

17   still, it goes over the 38.75.  But, yeah, I would    13:40:21

18   say yes, I do have the opportunity to flex time,      13:40:25

19   yes.                                                  13:40:27

20       Q.    Okay.  So I guess let's -- let's            13:40:28

21   clarify.  When you say flex time, are you             13:40:32

22   referencing your time, like how you work any          13:40:34

23   specific day, or are you talking about, hey, if I     13:40:37

24   work an extra hour one day, I can take away an hour   13:40:40



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      200

| | | |
|---|---|---|
| 1 | Q.   So I guess one of the tactics, it's your | 13:46:05 |
| 2 | understanding that a supervisor wouldn't think if | 13:46:09 |
| 3 | you're saying, hey, I worked two hours or I need to | 13:46:11 |
| 4 | work two hours, you know, overtime on Thursday, | 13:46:14 |
| 5 | that the supervisor wouldn't say, hey, can you cut | 13:46:16 |
| 6 | it out, work less two hours on Friday? | 13:46:18 |
| 7 | MR. McALLISTER:  Objection. | 13:46:21 |
| 8 | BY THE WITNESS: | 13:46:22 |
| 9 | A.   I mean, you showed me those exhibits | 13:46:22 |
| 10 | before where I put the documentation of overtime, | 13:46:30 |
| 11 | and if you -- if we do the math, it's more overtime | 13:46:35 |
| 12 | that I actually requested.  So I'm going to say | 13:46:40 |
| 13 | that, no, my supervisors never said that to me, | 13:46:45 |
| 14 | from my recollection. | 13:46:51 |
| 15 | BY MR. TSONIS: | 13:46:55 |
| 16 | Q.   Well, you, I guess -- as a field | 13:46:55 |
| 17 | investigator, if you're at 38.75 hours, I guess you | 13:47:01 |
| 18 | have the authority or the ability to stop working | 13:47:08 |
| 19 | on Friday and pick it up on Monday again; right? | 13:47:10 |
| 20 | MR. McALLISTER:  Objection. | 13:47:13 |
| 21 | BY THE WITNESS: | 13:47:14 |
| 22 | A.   Absolutely.  Why not? | 13:47:14 |
| 23 | BY MR. TSONIS: | 13:47:16 |
| 24 | Q.   Right.  So you could stop working at the | 13:47:16 |



| | | |
|---|---|---|
| 1 | 38.75 hours and then start up again Monday morning, | 13:47:17 |
| 2 | for example? | 13:47:21 |
| 3 |     MR. McALLISTER:  Objection. | 13:47:22 |
| 4 | BY THE WITNESS: | 13:47:22 |
| 5 |     A.   Yeah. | 13:47:22 |
| 6 | BY MR. TSONIS: | 13:47:26 |
| 7 |     Q.   Okay.  When you -- is there a difference | 13:47:26 |
| 8 | in how you document, like, a social media case | 13:47:32 |
| 9 | versus a field investigation? | 13:47:35 |
| 10 |     A.   Again, I've been out of GEICO for a | 13:47:37 |
| 11 | year, but from what I can recall, a social media | 13:47:42 |
| 12 | investigation requires a plan of action, and then a | 13:47:49 |
| 13 | detailed social media investigation, if we can gain | 13:47:56 |
| 14 | access to even -- the information we're looking at, | 13:47:59 |
| 15 | but, yeah, every case is different.  So it's a yes. | 13:48:05 |
| 16 |     Q.   You use the phrase here, like in | 13:48:09 |
| 17 | paragraph 17, for example, you know, my fellow | 13:48:15 |
| 18 | Special Investigators.  Who do you mean? | 13:48:19 |
| 19 |     A.   I'm sorry.  Greg, I'm sorry, where was | 13:48:23 |
| 20 | that? | 13:48:25 |
| 21 |     Q.   So in your declaration, the last page, | 13:48:25 |
| 22 | paragraph 17, and that's just one example, but | 13:48:27 |
| 23 | there's -- you use the phrase, you know, my fellow, | 13:48:29 |
| 24 | but you use the phrase "Special Investigators." | 13:48:32 |



1          MR. McALLISTER:  Objection.                    13:52:09

2     BY THE WITNESS:                                     13:52:09

3          A.    Not entirely.  Sometimes I'd have to --   13:52:09

4     sometimes I was assigned cases where, like, I'd     13:52:14

5     have to attempt to, like, verify a tow bill or      13:52:20

6     there's excessive towing or things like that.  So   13:52:24

7     it's not always a pending claim.  Sometimes the     13:52:27

8     claim is closed where the -- the insured or the     13:52:30

9     claimant has been paid, but we're looking at some   13:52:33

10    other entity of it, like a body shop or a clinic or 13:52:35

11    something like that, so...                          13:52:39

12    BY MR. TSONIS:                                      13:52:42

13         Q.   Is what you're referencing doing assists  13:52:42

14    on major case investigations?                       13:52:45

15         MR. McALLISTER:  Objection.                    13:52:48

16    BY THE WITNESS:                                     13:52:49

17         A.   I would do assists on major case          13:52:49

18    investigations, yes.                                13:52:51

19    BY MR. TSONIS:                                      13:52:52

20         Q.   Right.  Isn't one of the key differences  13:52:52

21    that major case investigates fraud at an entity     13:52:53

22    level whereas you, for example, would investigate   13:52:57

23    individual claims?                                  13:53:00

24         MR. McALLISTER:  Objection.                    13:53:01



1    BY THE WITNESS:                                   13:53:02

2         A.    No.  I'm going to disagree with your   13:53:02

3    statement.                                        13:53:06

4    BY MR. TSONIS:                                    13:53:07

5         Q.    How do you disagree with it?           13:53:07

6         A.    Because I'm investigating sometimes the  13:53:09

7    actual clinic and the actual person who could be in  13:53:15

8    the ring.  When I say "the ring," I mean the       13:53:19

9    insurance fraud ring where they are a runner or    13:53:22

10   they are sometimes a staged accident or a caused   13:53:26

11   action participant.  So it's difficult to say that  13:53:30

12   I'm not part of a major case investigation.        13:53:34

13   Sometimes I am, sometimes I'm not.                 13:53:39

14        Q.    But I guess when you are doing those    13:53:42

15   things that you talked about, that is in           13:53:44

16   furtherance of somebody else's major case          13:53:47

17   investigation; right?                              13:53:49

18        A.    I'd agree with that.  I'm not -- I did  13:53:51

19   not, like, have the actual major case file where   13:53:53

20   we're looking at the actual -- well, we were       13:53:56

21   looking at, but GEICO is looking at the actual     13:53:59

22   medical facility per se, if, you know -- I don't   13:54:03

23   know.                                              13:54:07

24        Q.    Do you recall being in SIU in Region 2  13:54:08



| | |
|---|---|
| 1 | that investigators were at some point assigned to | 13:54:13 |
| 2 | kind of specialty teams? | 13:54:17 |
| 3 | A.    Yes, I can recall that, yes. | 13:54:19 |
| 4 | Q.    Do you recall what the specialty teams | 13:54:21 |
| 5 | were? | 13:54:23 |
| 6 | A.    There was a -- I believe a medical | 13:54:24 |
| 7 | investigation unit, a theft investigation unit, and | 13:54:29 |
| 8 | a staged and caused accident unit, and then there | 13:54:33 |
| 9 | was a unit that just took, no matter what, took | 13:54:37 |
| 10 | every case. | 13:54:41 |
| 11 | Q.    Was that the coverage unit? | 13:54:43 |
| 12 | A.    I don't -- I don't know that | 13:54:45 |
| 13 | terminology, but it might have been.  I don't know. | 13:54:47 |
| 14 | Q.    Which one of those specialty teams, if | 13:54:50 |
| 15 | any, were you assigned to? | 13:54:53 |
| 16 | A.    I was -- I caught every case, so I was | 13:54:54 |
| 17 | in every -- I just -- they gave me cases no matter | 13:54:56 |
| 18 | what it was, and I -- I investigated them. | 13:55:03 |
| 19 | Q.    Was it your understanding that the | 13:55:05 |
| 20 | productivity goals were different for different | 13:55:08 |
| 21 | people that worked on those different teams? | 13:55:11 |
| 22 | A.    Yes. | 13:55:14 |
| 23 | MR. McALLISTER:  Objection. | 13:55:14 |
| 24 | | 13:55:14 |



| | |
|---|---|
| 1 | BY THE WITNESS: | 13:55:14 |
| 2 | A.    Yes. | 13:55:14 |
| 3 | BY MR. TSONIS: | 13:55:15 |
| 4 | Q.    For example, you know, the staged team | 13:55:15 |
| 5 | had a different productivity goal than the theft | 13:55:18 |
| 6 | team? | 13:55:22 |
| 7 | A.    Yes. | 13:55:22 |
| 8 | MR. McALLISTER:  Objection. | 13:55:23 |
| 9 | BY MR. TSONIS: | 13:55:23 |
| 10 | Q.    And is the reason for the different | 13:55:23 |
| 11 | goals is that the number of cases assigned to | 13:55:25 |
| 12 | people on those teams differed? | 13:55:28 |
| 13 | MR. McALLISTER:  Objection. | 13:55:31 |
| 14 | BY THE WITNESS: | 13:55:32 |
| 15 | A.    I don't -- I mean, again, I can only -- | 13:55:32 |
| 16 | I got every -- when I said I received every case, | 13:55:36 |
| 17 | theft cases, staged cases, so I can just say what | 13:55:39 |
| 18 | I -- I received a lot of cases.  They, from what | 13:55:45 |
| 19 | I -- I don't know. | 13:55:51 |
| 20 | BY MR. TSONIS: | 13:55:53 |
| 21 | Q.    Were the cases that you received, I | 13:55:53 |
| 22 | guess was it consistent, you know, month to month, | 13:55:55 |
| 23 | or was there a large degree of variability? | 13:55:58 |
| 24 | A.    Again, comparatively speaking, I | 13:56:03 |



```
 1  personally thought it was a high caseload for me to      13:56:07
 2  do my job and provide a good product for the            13:56:10
 3  company, so I did my best, but I don't know.  I         13:56:13
 4  don't know how everybody in, like, the staged and      13:56:20
 5  caused accidents, I don't know their caseload          13:56:24
 6  specifically.  I don't.                                13:56:26
 7      Q.   I'm just talking about your caseload          13:56:27
 8  right now.  I guess I'll rephrase my question.         13:56:29
 9           Was your caseload just consistent, the       13:56:31
10  number of cases you were assigned month to month,     13:56:33
11  or did it vary significantly?                         13:56:35
12      A.   I mean, it varied.  I'm going to say it      13:56:38
13  varied.                                               13:56:42
14      Q.   Were there times that your caseload was     13:56:42
15  low?                                                  13:56:45
16      MR. McALLISTER:  Objection.                       13:56:48
17  BY THE WITNESS:                                        13:56:49
18      A.   I don't -- low?  Lower than other times,    13:56:49
19  I'd say yes.                                           13:56:53
20  BY MR. TSONIS:                                         13:56:54
21      Q.   Well, sure.  By default, one month might   13:56:54
22  be lower than the other, but were there times where  13:56:58
23  you would characterize your cases assigned as         13:57:01
24  pretty low?                                           13:57:04
```



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    213

1    closing you out from catching new cases?          14:54:53

2         A.    Yes, I believe my manager -- my        14:54:57

3    supervisor had that, yes --                        14:55:00

4         Q.    Okay.                                    14:55:00

5         A.    -- option.                              14:55:02

6         Q.    At times, is that something you would  14:55:02

7    request that your supervisor do?                   14:55:04

8         A.    Sometimes I did request that, yes.     14:55:06

9         Q.    Okay.  And was the purpose of requesting 14:55:08

10   to be taken off sort of the ability to be assigned 14:55:11

11   new cases so that you can catch up on your existing 14:55:14

12   cases?                                             14:55:17

13        A.    Yes.                                    14:55:17

14        Q.    Okay.  Similarly, is another strategy  14:55:18

15   that could be used to manage your caseload at any  14:55:22

16   given time having your supervisor assign cases from 14:55:26

17   you to another investigator?                       14:55:29

18        MR. McALLISTER:  Objection.                   14:55:31

19   BY THE WITNESS:                                    14:55:33

20        A.    For assist purposes, yes, but not -- not 14:55:33

21   like give -- give another investigator my case.  So 14:55:40

22   I don't know how to answer that, Counsel.  I -- but 14:55:46

23   I'm going to say I guess yes.  Yes.                14:55:50

24                                                       14:55:50



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      229

| | |
|---|---|
| 1 | Q.    Do you see there's a Pay Change History | 15:11:40 |
| 2 | here? | 15:11:43 |
| 3 | A.    I do. | 15:11:44 |
| 4 | Q.    Sort of in the middle.  All right.  And | 15:11:44 |
| 5 | do you see it sort of shows by year merit | 15:11:46 |
| 6 | compensation changes that happened? | 15:11:50 |
| 7 | A.    Yes. | 15:11:52 |
| 8 | Q.    So from approximately, you know, 2017 | 15:11:53 |
| 9 | where your total sort of base pay, it looks like, | 15:12:00 |
| 10 | was 66,800, as of January 28th of 2023, that it | 15:12:03 |
| 11 | increased to $90,171, approximately? | 15:12:10 |
| 12 | A.    I see this, yes. | 15:12:15 |
| 13 | Q.    All right.  And it looks like you | 15:12:16 |
| 14 | received a merit increase every single year? | 15:12:17 |
| 15 | A.    Yes. | 15:12:20 |
| 16 | Q.    Now, if you go to the page ending in | 15:12:20 |
| 17 | 4988. | 15:12:27 |
| 18 | A.    Is that -- in the PDF, Counsel, | 15:12:31 |
| 19 | which one? | 15:12:34 |
| 20 | Q.    Yeah, page 30. | 15:12:36 |
| 21 | A.    Okay.  Okay. | 15:12:37 |
| 22 | Q.    All right.  You see the bottom box here | 15:12:43 |
| 23 | that says Time Off Requests? | 15:12:44 |
| 24 | A.    Yes. | 15:12:47 |



1    BY THE WITNESS:                                          15:24:55

2         A.    Because you have to sleep, you have to       15:25:14

3    eat properly, and there are other variables that        15:25:15

4    consider -- that have to take into consideration.       15:25:18

5    BY MR. TSONIS:                                           15:25:19

6         Q.    Okay.  Setting those sleep and eating        15:25:19

7    variables aside, isn't it true, just from a             15:25:22

8    quantity of time standpoint, you get to a hundred       15:25:24

9    faster if you're working 48.75 than you are 38.75?      15:25:26

10        A.    I'm going to say I don't know.               15:25:31

11        THE WITNESS:  And, Jarron, that's what I'm         15:25:32

12   going to say.                                           15:25:35

13   BY MR. TSONIS:                                          15:25:36

14        Q.    But you won't admit that mathematically      15:25:36

15   you can get to that point faster by working more        15:25:39

16   hours?                                                  15:25:42

17        A.    I -- I will admit that you could.            15:25:42

18        Q.    Okay.  But you won't admit that it's         15:25:44

19   possible you close cases faster --                      15:25:48

20        A.    I just said that.                            15:25:48

21        THE COURT REPORTER:  Hold on.  Sir, please let     15:25:48

22   him get the question out.                               15:25:48

23   BY MR. TSONIS:                                          15:25:53

24        Q.    Then are you agreeing that it's possible     15:25:53



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      243

1    that you closed cases faster because you claimed to        15:25:55

2    have worked more hours?                                    15:25:57

3         MR. McALLISTER:  Objection.                           15:25:58

4    BY THE WITNESS:                                            15:26:00

5         A.    For the sake of keeping this interview          15:26:00

6    rolling, I will say yes.                                   15:26:08

7    BY MR. TSONIS:                                             15:26:11

8         Q.    Okay.  You can close out this exhibit.          15:26:11

9              I'm going to send you now what's being           15:26:59

10   marked as I believe it's Exhibit 9.                        15:27:01

11        MR. McALLISTER:  Yes.                                 15:27:07

12                 (WHEREUPON, a certain document was           15:27:07

13                 marked Caniglia Deposition Exhibit

14                 No. 9, for identification, as of

15                 January 17, 2025.)                           15:27:17

16   BY MR. TSONIS:                                             15:27:17

17        Q.    Let me know when you have it opened.            15:27:18

18        A.    It's titled as June 1, 2023?                    15:27:19

19        Q.    Correct.  And for the record, Exhibit 9         15:27:22

20   is a document bearing Bates label G011375.                 15:27:25

21              Do you see that this is an e-mail from          15:27:27

22   you to Toni D'Agata on June 1, '23?                        15:27:30

23        A.    Yes.                                            15:27:34

24        Q.    All right.  And this is the time where          15:27:34



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    244

1   Ms. D'Agata would have been your supervisor; right?      15:27:38

2       A.    Yes.                                           15:27:40

3       Q.    All right.  And you ultimately -- or the       15:27:41

4   subject here is overtime?                                15:27:44

5       A.    Yes.                                           15:27:44

6       Q.    Okay.  And in the bottom e-mail, you           15:27:53

7   request essentially overtime because you had             15:27:54

8   multiple cases that you needed to work on?               15:27:58

9       A.    From what I'm reading, received three          15:28:02

10  cases Tuesday, three cases Wednesday, and two            15:28:07

11  today.  Counsel, yeah, I'd say yeah, that's what I       15:28:10

12  was asking, yes.                                         15:28:15

13      Q.    Okay.  And Ms. D'Agata asked, you know,        15:28:16

14  what do you need, an extra hour?  Right?                 15:28:19

15      A.    Yes.  Yes.                                     15:28:28

16      Q.    And then you said, yeah, maybe I have          15:28:29

17  two left to do; right?                                   15:28:31

18      A.    Yeah.  Yes.                                    15:28:32

19      Q.    So you understood that if you needed           15:28:33

20  overtime, you could request it from Ms. D'Agata?         15:28:36

21      MR. McALLISTER:  Objection.                          15:28:40

22  BY THE WITNESS:                                          15:28:41

23      A.    I -- yeah, of course I can ask.  Why           15:28:41

24  not?  Yeah.                                              15:28:48



| | |
|---|---|
| 1 | BY MR. TSONIS: | 15:28:48 |
| 2 |     Q.   Well, in this case, she was willing to | 15:28:48 |
| 3 | provide some additional overtime it seems; right? | 15:28:50 |
| 4 |     MR. McALLISTER:  Objection. | 15:28:50 |
| 5 | BY THE WITNESS: | 15:28:52 |
| 6 |     A.   It looks like she was willing to provide | 15:28:52 |
| 7 | it.  I don't know if I was granted it, though, but | 15:28:55 |
| 8 | again... | 15:28:57 |
| 9 | BY MR. TSONIS: | 15:28:59 |
| 10 |     Q.   Okay.  You can close that out. | 15:28:59 |
| 11 |     I'm going to send you what's going to be | 15:29:17 |
| 12 | marked as Exhibit 10 now. | 15:29:19 |
| 13 |          (WHEREUPON, a certain document was | 15:29:19 |
| 14 |          marked Caniglia Deposition Exhibit | |
| 15 |          No. 10, for identification, as of | |
| 16 |          January 17, 2025.) | 15:29:31 |
| 17 | BY MR. TSONIS: | 15:29:31 |
| 18 |     Q.   Let me know when you've got it open. | 15:29:31 |
| 19 |     A.   Looks like an e-mail from June 26, 2023. | 15:29:41 |
| 20 |     Q.   Yep.  And so in this e-mail, again, the | 15:29:46 |
| 21 | subject is overtime; right?  OT? | 15:29:49 |
| 22 |     A.   Yes. | 15:29:51 |
| 23 |     Q.   All right.  And again, you were | 15:29:51 |
| 24 | informing Toni D'Agata that you needed to work | 15:29:55 |



LOUIS CANIGLIA, JR.                                          January 17, 2025
KEITH FISCHER, et al. vs GEICO                                        246

1   overtime to work on your cases?                         15:29:59

2        A.    I requested, yes.                            15:30:00

3        Q.    Okay.  You can close that out.               15:30:02

4              I'm going to send you what is going to       15:30:48

5   be marked as Exhibit 11.                                15:30:50

6                    (WHEREUPON, a certain document was     15:30:50

7                    marked Caniglia Deposition Exhibit

8                    No. 11, for identification, as of

9                    January 17, 2025.)                     15:31:04

10  BY MR. TSONIS:                                          15:31:04

11       Q.    Let me know when you have it open.           15:31:13

12       A.    Okay.  I can see this.                       15:31:21

13       Q.    Have you seen this document before?          15:31:23

14       A.    To be honest with you, this is the first     15:31:24

15  time I'm seeing this document.                          15:31:29

16       Q.    Okay.  Do you under -- well, what do you     15:31:30

17  understand this document to be?                         15:31:34

18       A.    I mean, my rating, I guess.  I mean, it      15:31:36

19  might have been different when I -- I don't know.       15:31:47

20  Like, this document, I could say I never saw it,        15:31:50

21  but I think this is like my -- maybe a rating on        15:31:52

22  how I did for the year in terms of core metrics and     15:31:56

23  my merit increase.                                      15:32:00

24       Q.    Okay.  Well, if you look at the top          15:32:02



| | | |
|---|---|---|
| 1 | BY MR. TSONIS: | 15:52:29 |
| 2 | Q.    Right.  So you were compensated -- | 15:52:29 |
| 3 | A.    I don't know if I was compensated for | 15:52:32 |
| 4 | that. | 15:52:34 |
| 5 | Q.    Well, you were paid for the 15-minute | 15:52:34 |
| 6 | breaks; right? | 15:52:36 |
| 7 | A.    I don't know. | 15:52:36 |
| 8 | MR. McALLISTER:  Objection. | 15:52:38 |
| 9 | BY MR. TSONIS: | 15:52:39 |
| 10 | Q.    Right.  You just said that they were | 15:52:39 |
| 11 | compensated. | 15:52:42 |
| 12 | A.    Yeah, they were allegedly compensated, | 15:52:43 |
| 13 | yes. | 15:52:46 |
| 14 | Q.    Okay.  So with respect to your meal | 15:52:46 |
| 15 | period, are you -- so when you would be -- I think | 15:52:51 |
| 16 | you just said there were times where you worked | 15:52:56 |
| 17 | during your meal period? | 15:52:58 |
| 18 | A.    Absolutely. | 15:52:59 |
| 19 | Q.    It would either be at your home or out | 15:53:00 |
| 20 | in the field doing that; right? | 15:53:04 |
| 21 | A.    Both. | 15:53:05 |
| 22 | Q.    Your supervisor is not in your home or | 15:53:06 |
| 23 | out in the field with you? | 15:53:08 |
| 24 | A.    Not all the time, no.  I'm going to say | 15:53:09 |



LOUIS CANIGLIA, JR.                                           January 17, 2025
KEITH FISCHER, et al. vs GEICO                                            265

1   no.                                                          15:53:13

2        Q.    Well, was your supervisor ever in your          15:53:14

3   home with you?                                              15:53:15

4        A.    Was my supervisor ever in my home with          15:53:16

5   me, no.                                                     15:53:20

6        Q.    Okay.  So if you're working on your             15:53:21

7   lunch, your supervisor wouldn't know that?                 15:53:24

8        MR. McALLISTER:  Objection.                           15:53:26

9   BY THE WITNESS:                                             15:53:27

10       A.    I don't -- I don't know.                        15:53:27

11  BY MR. TSONIS:                                              15:53:31

12       Q.    Your supervisor didn't require you to           15:53:31

13  take lunch at a certain time; right?                       15:53:34

14       A.    No, we didn't have a lunch period.             15:53:37

15       Q.    Okay.  So given that you could take             15:53:39

16  lunch whenever you want and your supervisor wasn't         15:53:41

17  with you, your supervisor wouldn't know what time         15:53:43

18  you're on lunch; right?                                    15:53:46

19       MR. McALLISTER:  Objection.                           15:53:48

20  BY THE WITNESS:                                             15:53:49

21       A.    That's -- no.  That's -- he -- he or she        15:53:49

22  could know if I was on lunch at sometimes.                 15:53:52

23  BY MR. TSONIS:                                              15:53:55

24       Q.    Unless you told them, they wouldn't know       15:53:55



800.211.DEPO (3376)
EsquireSolutions.com

1   that you were on lunch; right?                          15:53:58

2        MR. McALLISTER:  Objection.                        15:54:00

3   BY THE WITNESS:                                         15:54:01

4        A.   Well, obvious -- yes, obviously.  I           15:54:01

5   mean, how would they know I'm on lunch unless they      15:54:03

6   had a camera in my house or something like that,        15:54:06

7   yeah.                                                   15:54:08

8   BY MR. TSONIS:                                          15:54:09

9        Q.   Did you ever tell any supervisor "I'm         15:54:09

10  working on my lunch"?                                   15:54:10

11       A.   Yes.                                          15:54:12

12       Q.   When?                                         15:54:13

13       A.   I don't recall.                               15:54:13

14       Q.   Who did you tell that to?                     15:54:15

15       A.   Gerry Cassagne, Toni D'Agata.                 15:54:17

16       Q.   Okay.  Your declaration references the        15:54:30

17  time that you spent working overtime, allegedly,        15:54:33

18  while you were working for GEICO; right?                15:54:36

19       A.   It's not allegedly.  It's what it is,         15:54:38

20  but yes.                                                15:54:43

21       Q.   Okay.  Your declaration, do you recall,       15:54:43

22  references time that you claim to have spent            15:54:45

23  working prior to and after your normal scheduled        15:54:47

24  shift?                                                  15:54:50



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    272

1   and sign the transcript?  We have to ask.                16:11:34

2        MR. McALLISTER:  Oh, sure.                          16:11:34

3        THE COURT REPORTER:  Okay.                          16:11:34

4        MR. TSONIS:  And we'll do --                        16:11:36

5        THE VIDEOGRAPHER:  Thank you.  This will            16:11:36

6   conclude today's videoconference deposition of          16:11:40

7   Louis Caniglia, Jr., taken on January 17, 2025, at      16:11:42

8   4:10 p.m. Central Time.                                 16:11:48

9        THE COURT REPORTER:  So I did get -- it's           16:11:48

10  five-day delivery for you, Counsel.  I did get          16:11:48

11  that.                                                   16:11:48

12            And Counsel, you said you wanted a copy?       16:12:01

13       MR. TSONIS:  Electronic transcript, yeah,          16:12:01

14  that's fine.                                            16:12:01

15       THE COURT REPORTER:  Mr. McAllister, copy?         16:12:05

16       MR. McALLISTER:  Yes.                               16:12:05

17       THE COURT REPORTER:  Okay.  All right.

18            (WHEREUPON, the deposition concluded

19             at 4:12 p.m.)

20

21

22

23

24



```
 1  STATE OF ILLINOIS    )

 2                       )  SS:

 3  COUNTY OF DUPAGE     )

 4           I, ALICE M. SCHWINGER, CSR No. 84-2913,

 5  a Certified Shorthand Reporter of the State of

 6  Illinois, do hereby certify:

 7           That previous to the commencement of the

 8  examination of the witness, the witness was duly

 9  sworn to testify the whole truth concerning the

10  matters herein;

11           That the foregoing deposition transcript

12  was reported stenographically by me, was thereafter

13  reduced to typewriting under my personal direction

14  and constitutes a true record of the testimony

15  given and the proceedings had;

16           That the said deposition was taken

17  before me at the time and place specified;

18           That I am not a relative or employee or

19  attorney or counsel, nor a relative or employee of

20  such attorney or counsel for any of the parties

21  hereto, nor interested directly or indirectly in

22  the outcome of this action.

23           IN WITNESS WHEREOF, I do hereunto set my

24  hand at Woodridge, Illinois, this 21st day of
```



1    January, A.D. 2025.

2

3

4

5

6                    Certified Shorthand Reporter

7

8

9    ALICE M. SCHWINGER, CSR No. 84-2913

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

