# Exhibit 23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>                Defendant. | Case No. 23 Civ. 2848 (GRB) (ARL) |

### PLAINTIFF THOMAS BARDEN'S RESPONSES TO THE COURT'S INTERROGATORIES

**INTERROGATORY NO. 1:**

During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 2:**

Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2**:

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 3:**

Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒Off-the-clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

☐Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐Misclassification (Defendant failed to correctly calculate your compensation);

☐Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

    a) Dates

    b) Regular hours worked

    c) Over-time hours worked

    d) Pay received versus pay claimed

    e) Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a) Describe the class of employees you seek to include in this action.

b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a) Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b) Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response. Further

---

[1] As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2] The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit. This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs' forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ 375.00 | 148.5 | $ 55,687.50 |
|---|---|---|---|---|---|
| Sabine Jean | SXJ | Associate | $ 450.00 | 56.9 | $ 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ 325.00 | 63.7 | $ 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ 325.00 | 12.7 | $ 4,127.50 |
| | | | Totals: | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
| | | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Thomas Barden.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

**RESPONSE TO INTERROGATORY NO. 12:**

    See attached Declaration of Thomas Barden.

| | |
|---|---|
| Dated: November 6, 2023<br>New York, NY | */s/Michael J. Scimone*<br>Michael J. Scimone |

Michael J. Scimone
Jarron D. McAllister
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
jmcallister@outtengolden.com
sjean@outtengolden.com

Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
tliusvedman@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

## VERIFICATION

I, Thomas Barden, have read the foregoing **PLAINTIFF THOMAS BARDEN'S RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11/06/2023

Signature: *Thomas Barden*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,<br><br>          Defendant. | No. 23 Civ. 02848 (GRB) (ARL) |

**DECLARATION OF THOMAS BARDEN**

I, Thomas Barden, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1. I was employed as a Special Investigator at GEICO from September 2019 to December 2022. I worked remotely from the field and from my home in Saratoga Springs, New York and was assigned to GEICO's Woodbury (now Melville) office in Nassau County, New York.

2. I reported to Chester Janik, who was my immediate supervisor. Bill Newport was the manager of the Special Investigation Unit at the GEICO Woodbury/Melville office.

3. As a Special Investigator my main job duties were to investigate claims of suspected insurance fraud. GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud. As part of this process,

my job duties included, among other things, reviewing case files; running background checks; driving out to accident scenes; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about my findings in cases.

4. I left GEICO as a Level 65 Special Investigator. I had no supervisory authority over other Special Investigators and did not have authority to set others' employees schedules, to direct their work, or to hire, fire, or discipline other employees. My last regular rate of pay was $32.36/hour.

5. Since January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week. Prior to January 2020, GEICO classified me and other Special Investigators as non-exempt employees eligible for overtime pay, but they used a different method of payment. I never understood how GEICO calculated this pay rate but believe that it was around half of my regular rate of pay.

**My Schedule and Unpaid Wages and Overtime**

6. As a non-exempt employee, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis.

7. When I first started working for GEICO, I typically entered 7.75 working hours per day, five days a week because these were the hours that I worked. I was in training for the first few months of my employment, and did not have regular cases assigned to me until January 2020.

8. Starting in March 2020, the COVID-19 pandemic halted field operations, so all of my work was done remotely until approximately November 2021. GEICO assigned cases using

a point-based system. GEICO inaccurately assumed that remote work could be completed in substantially less time than in-person field work, so it assigned remote cases fewer points. Because remote cases were given a lesser point value, GEICO increased my caseload significantly after March 2020. I recall being assigned approximately 5-7 new cases per day, in contrast to 5-7 new cases per week prior to the pandemic. My overtime hours increased substantially as a result, to approximately 55-60 hours per week.

9. GEICO returned to limited field operations in or about November 2021. However, my caseload still required me to work the same amount of overtime to keep up with my workload.

10. From March 2020 to December 2022, my regular hours worked were approximately 55-60 hours per week. My last regular pay rate was $32.36 per hour. During most of this time, I entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($1,253.95 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $98,778.90 in unpaid wages. This is based on my best recollection over a period of several years and my last regular rate of pay, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise. This amount does not include liquidated damages, which would add another $98,778.90 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as provided by law.

**GEICO's Overtime Pay Practices**

11. From May 2020 to August 2020, GEICO permitted me to submit overtime hours for approval, but required me to document my reasons for requesting overtime, case information, and specific tasks that I needed to do on each case. This made my job more difficult, and

required me to work overtime to document the overtime I had already worked. In May 2020, my supervisor informed me and other Special Investigators that starting in August 2020, GEICO would no longer permit us to request overtime and that we could only work the 7.75 hours per day. However, GEICO did not reduce our caseloads and I still had to work the same number of hours to keep up with my cases. Accordingly, I entered working 7.75 hours per day, five days a week regardless of how many hours I actually worked.

**GEICO's Performance Ratings**

12. GEICO also had a variety of performance metrics that I was required to meet to remain in good standing. These performance metrics and ratings changed constantly, but to the best of my recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, how many cases I completed within a month, and whether we were able to document fraud in the case. These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines.

13. GEICO's performance metrics and ratings determined whether I was entitled to an annual raise. If I failed to meet them, they could also lead to disciplinary action such as being put on a coaching plan that could eventually lead to termination.

14. In the late spring or summer of 2022, GEICO put me on a counseling or coaching plan for 2-3 months, and manager Bill Newport explained to me that if my caseloads go up, but I did not increase closing cases, the next step would be to put me on "remedial," which was another step toward termination. As part of my coaching plan, GEICO implemented a pilot program where they assigned a non-Special Investigator employee to complete certain tasks on new cases, such as conducting background checks and other initial steps for a case. This gave

me time to catch up on my existing cases and close them more quickly (although I was working the same number of hours), but to the best of my knowledge, GEICO did not ultimately continue this program for Special Investigators.

15. GEICO's threat to put me on a further remedial plan factored into my decision to leave GEICO at the end of 2022.

**Special Investigators' Caseloads**

16. I recall in summer 2020 meeting regularly with my supervisor Chet Janik and discussing the heavy workload and hours. He agreed with me about the issues but did not have the power to change my assigned workload or the overtime hours.

17. In late 2021, I remember larger team meetings with GEICO manager Bill Newport where Special Investigators complained about caseloads and hours, and said that it was impossible to do the work required by GEICO's productivity metrics to remain in good standing and be eligible for raises without working overtime. Special Investigators stated in these meetings that GEICO either needed to approve overtime or reduce our caseloads. I remember that these meetings got heated and that Bill Newport was very frustrated, but he defended GEICO's policies including the overtime policies. He said that he would speak with the other GEICO managers to see if they could weed out some cases, but I never saw a reduction in my caseload.

**Overtime Hours**

18. As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.

**Other Special Investigators**

19. I worked with approximately 7 other Special Investigations in my team, including Mike Grey, Mike Reed, John McCarthy, and Craig Costanzo.

20. I also know that other Special Investigators worked many overtime hours off the clock each week without receiving overtime pay. I know this because we had regular team meetings and discussed the duties we performed and the long hours we were working.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/06/2023
Coventry, Rhode Island

*Thomas Barden*
Thomas Barden