# Exhibit 26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>                 Defendant. | Case No. 23 Civ. 2848 (GRB) (ARL) |

**OPT-IN PLAINTIFF ALBERT BRUST'S RESPONSES TO THE COURT'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 2:**

Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 3:**

Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒Off-the-clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

☐Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐Misclassification (Defendant failed to correctly calculate your compensation);

☐Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

   a) Dates

   b) Regular hours worked

   c) Over-time hours worked

2

d) Pay received versus pay claimed

e) Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a) Describe the class of employees you seek to include in this action.

b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a) Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b) Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response. Further

---

[1] As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2] The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit. This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs' forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ 375.00 | 148.5 | $ 55,687.50 |
|---|---|---|---|---|---|
| Sabine Jean | SXJ | Associate | $ 450.00 | 56.9 | $ 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ 325.00 | 63.7 | $ 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ 325.00 | 12.7 | $ 4,127.50 |
| | | | Totals: | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
| | | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Albert Brust.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

**RESPONSE TO INTERROGATORY NO. 12:**

    See attached Declaration of Albert Brust.

Dated: November 7, 2023
New York, NY

*/s/Michael J. Scimone*
Michael J. Scimone

Michael J. Scimone
Sabine Jean
Jarron D. McAllister
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
sjean@outtengolden.com
jmcallister@outtengolden.com

Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
tliusvedman@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24

**VERIFICATION**

I, Albert Brust, have read the foregoing **OPT-IN PLAINTIFF ALBERT BRUST'S RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11 / 08 / 2023

Signature: *[signature]*

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,<br><br>Defendant. | No. 23 Civ. 02848 (GRB) (ARL) |

### DECLARATION OF ALBERT BRUST

I, Albert Brust, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1. I have been employed as a Special Investigator at GEICO since September 2019. I worked remotely throughout my tenure, either in the field or from my home in Holbrook, New York. I am assigned to GEICO's office in Melville, New York, which was previously located in Woodbury, New York.

2. For most of my employment, Gerard Cassagne was my immediate supervisor. Mr. Cassagne left GEICO in about May 2023. Thereafter, I reported to Toni D'Agata until about October 19, 2023. Sarah Greeman has been my supervisor since about October 23, 2023. She is based out of Pennsylvania.

3. Bill Newport was the manager of the Special Investigation Unit at the GEICO Woodbury/Melville office, until about April 2023. Thereafter, a Buffalo-based manager took over as my manager for about three weeks, whose name I cannot recall. Since about May 2023, René Cubas, the Southeast Investigative Division Manager, has been my manager. He is based out of Florida.

4. As a Special Investigator my main job duties are to investigate claims of suspected insurance fraud. GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud. As part of this process, my job duties include, among other things, reviewing case files; running background checks; examining provider billing reports; driving out to medical facilities, accident scenes, or theft sites; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about my findings in cases.

5. Since January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week. My current regular rate of pay is $41.32 per hour.

**My Schedule and Unpaid Wages and Overtime**

6. As a non-exempt employee, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis.

7. When I started working for GEICO, I was told that I was supposed to work and report 7.75 hours a day during my training orientation. Throughout my employment, my supervisors reiterated that we were only getting paid for 7.75 hours a day, up to 38.75 a week,

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24

and would not get paid overtime. Accordingly, I only entered 7.75 hours per day, five days a week. regardless of how many hours I actually worked.

8. From the start of my employment with GEICO through February 2020, on top of my recorded 7.75 hours a day, I regularly worked an extra two hours a day plus another five hours on weekends to keep up with my work. I worked about 50 hours a week on average.

9. Starting in March 2020, the COVID-19 pandemic halted field operations, so all of my work was done remotely until approximately November 2021. GEICO increased my caseload significantly after March 2020. My overtime hours increased substantially as a result. I was generally working about 11 hours a day, without a full lunch break, plus another five or more hours on weekends. On average, during this time, I was working about 60 hours a week.

10. GEICO returned to normal field operations in or about November 2021. My overtime hours decreased somewhat as a result, but my caseload still required me to work overtime to keep up with my workload. I estimate that from November 2021 through about February 2023 I, again, worked about 50 hours a week on average.

11. From September 2019 through February 2020, my regular hours worked were approximately 50 hours per week; from March 2020 to November 2021 my regular hours worked were approximately 60 hours per week; and from November 2021 to February 2023, my regular hours worked were approximately 50 hours per week. My most recent regular rate of pay is $41.32 per hour. During nearly all of this time, I entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($1,601.15 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $137,743.59 in base wages. This amount does not include liquidated damages, which would add another $137,743.59 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24

post-judgment interest as provided by law.  This is based on my best recollection over a period of several years, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise.

**GEICO's Overtime Pay Practices**

12. GEICO requires me to seek approval from my supervisor to submit any hours worked above 38.75.  My supervisor, Mr. Cassagne, frequently reiterated to me and other Special Investigators that hours above 38.75 to complete regular case work would not be approved.  At various times, my supervisor approved a limited amount of extra hours to allow me to catch up on work.  This was limited to about an hour or two extra hours a week.  Accordingly, GEICO failed to record all of my hours worked during my tenure, and I was not paid for hours, including overtime hours, that I worked off the clock.

13. GEICO has a variety of performance metrics that I am required to meet to remain in good standing.  These performance metrics and ratings changed constantly, but to the best of my recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, and how many cases I completed within a month.  These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines.  If I don't satisfy these performance metrics, I can either be terminated or not given a raise at the end of the year.

14. In or around the end of 2021 and on a few occasions in 2022, I complained verbally to my supervisor, Mr. Cassagne, during our monthly team meetings.  I told him about the volume of work we were being assigned and the number of unpaid hours I, and my colleagues, were working as a result.  His response to these complaints was that he was not permitted to approve this overtime work.

4

15. Throughout my time working under Ms. D'Agata, she held weekly one-on-one meetings with the Special Investigators. During these meetings, I verbally expressed my displeasure with working overtime without pay. Ms. D'Agata, though sympathetic to my concerns, told me that she was not authorized to approve the overtime I was working.

16. As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system. As a result, I was not paid for overtime hours that I worked off the clock.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  11 / 08 / 2023
Holbrook, New York

_____
ALBERT BRUST

Doc ID: acdf3359fa061fd0c84ecdc42c938b29d8271c24