# Exhibit 37

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>                      Defendant. | Case No. 23 Civ. 2848 (GRB) (ARL) |

**PLAINTIFF KEITH FISCHER'S RESPONSES TO THE COURT'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

    During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

    See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 2:**

    Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2**:

    See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 3:**

    Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒ Off-the-clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

☐ Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐ Misclassification (Defendant failed to correctly calculate your compensation);

☐ Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

    a) Dates

    b) Regular hours worked

    c) Over-time hours worked

2

    d) Pay received versus pay claimed

    e) Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a) Describe the class of employees you seek to include in this action.

b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a) Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b) Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response. Further

---

[1] As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2] The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit. This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs' forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | Hours | Fees |
|---|---|---|
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | Hours | Fees |
|---|---|---|
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ 375.00 | 148.5 | $ 55,687.50 |
|---|---|---|---|---|---|
| Sabine Jean | SXJ | Associate | $ 450.00 | 56.9 | $ 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ 325.00 | 63.7 | $ 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ 325.00 | 12.7 | $ 4,127.50 |
| | | | Totals: | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
| | | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Keith Fischer.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

**RESPONSE TO INTERROGATORY NO. 12:**

 See attached Declaration of Keith Fischer.

| | |
|---|---|
| Dated: November 6, 2023<br>New York, NY | */s/Michael J. Scimone*<br>Michael J. Scimone |

Michael J. Scimone
Jarron D. McAllister
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
jmcallister@outtengolden.com
sjean@outtengolden.com

Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
tliusvedman@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

## VERIFICATION

I, Keith Fischer, have read the foregoing **PLAINTIFF KEITH FISCHER'S RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11/06/2023

Signature: *Keith Fischer*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,<br><br>Defendant. | Case No. 23 Civ. 02848 (GRB) (ARL) |

### DECLARATION OF KEITH FISCHER

I, Keith Fischer, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1. I was employed as a Special Investigator at GEICO from May 1999 to approximately December 2020. I worked remotely throughout my tenure, either in the field or from home, and was assigned to GEICO's Woodbury (now Melville) office in Nassau County, New York.

2. I reported to Gerard Cassagne who was my immediate supervisor. Bill Newport was the manager of the Special Investigation Unit at the GEICO Woodbury/Melville office at the end of my tenure.

3. As a Special Investigator my main job duties were to investigate claims of suspected insurance fraud, including, among other things, alleged thefts, jump-ins, and arson.

GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud.  As part of this process, my job duties included, among other things, reviewing case files; running background checks; examining provider billing reports; driving out to theft sites; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath ("EUOs"); and writing and submitting reports about my findings in cases.

4.	I left GEICO as a Level 66 Special Investigator.  As a Level 66 Lead Investigator, in addition to having the same regular investigative responsibilities as other Special Investigators, I occasionally trained new Special Investigators.  I had no supervisory authority over other Special Investigators and did not have authority to set other employees' schedules, to direct their work, or to hire, fire, or discipline other employees.

5.	Starting in January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week.  But GEICO only offered to pay me for overtime from May 2020 to August 2020 if I worked an additional ten cases per month, which I declined.  Prior to January 2020, GEICO classified me and other Special Investigators as non-exempt employees eligible for overtime pay, but they used a different method of payment.  I did not understand this payment system, but I understood it to be less one and one-half times my regular rate.  My last regular rate of pay was $49.60.

6.	I was an opt-in plaintiff in the *Calderon v. GEICO* and *Vetter v. GEICO* lawsuits, which alleged that I and other Special Investigators were not compensated for overtime because GEICO classified us as overtime-exempt, when we were actually overtime eligible.  Following

the *Vetter* settlement, GEICO reclassified me and other Special Investigators from overtime-exempt to non-exempt employees.

**My Schedule and Unpaid Wages and Overtime**

7. As a non-exempt employee, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis. The timekeeping system auto-filled my hours for each day to be 7.75 hours.

8. Throughout my tenure, my supervisors told me that I could only report up to 38.75 hours per week, or 7.75 hours a day, five days a week, in the timekeeping program. Accordingly, I only entered 7.75 working hours per day, five days a week. regardless of how many hours I actually worked. Except for emergencies (for example, going to out-of-state catastrophes, going to court, or when my car broke down), my supervisor would not approve my requests to work overtime.

9. From 2016 to approximately March 2020, I worked about 10-12 hours a day Monday through Friday and 8 hours on many weekends. I estimate working a total of 50 to 65 hours a week on average during this time period.

10. Starting in March 2020, the COVID-19 pandemic halted field operations, so all of my work was done remotely until I retired in August 2020. GEICO assigned cases using a point-based system. GEICO inaccurately assumed that remote work could be completed in substantially less time than in-person field work, so it assigned remote cases fewer points. Because remote cases were given a lesser point value, GEICO increased my caseload significantly after March 2020. In or around April 2020, I recall being assigned approximately 70 cases, in contrast to a monthly average of 40 cases in 2018/19. My overtime hours increased substantially as a result from March through April 2020, approximately 60-75 hours per week.

- 3 -

11. From December 2016 to March 2020, my regular hours worked were approximately 50-65 hours per week; and from March 2020 through April 2020, my regular hours worked were approximately 60-75 hours per week. My last regular pay was $49.60 per hour. During nearly all of this time, I entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($1,922.00 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $69,359.08 in unpaid wages. This is based on my best recollection over a period of several years and my last regular rate of pay, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise. This amount does not include liquidated damages, which would add another $69,359.08 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as provided by law.

**GEICO's Overtime Pay Practices**

12. GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75. It was well known that supervisors would not approve overtime for Special Investigators, and that hours above 38.75 to complete regular case work would not be approved.

13. GEICO authorized me to work overtime only if I agreed to take on additional cases, covered for Special Investigators out on leave, or worked on a special project, such as a social media investigation. For example, GEICO told me that it would authorize overtime from approximately May 2020 to August 2020 if I worked on ten additional cases. I declined this offer because I was unable to take on additional cases on top of my existing caseload, because I was already working overtime off the clock, and because I was on medical leave for 3 weeks during this period.

**GEICO's Performance Ratings**

14. GEICO had a variety of performance metrics that I was required to meet to remain in good standing. These performance metrics and ratings changed constantly, but to the best of my recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, and how many cases I completed within a month. For theft specifically, there were certain criteria on which I was evaluated in addition to the general criteria. I received report cards every few months with my rating between one and five. These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines.

15. My best understanding of GEICO's performance metrics was that they were tied to the number of hours I reported. I received more favorable ratings if I completed more work within the 7.75 hours per day or 38.75 hours per week. If I reported working more hours, I understood that would negatively affect my performance ratings.

16. GEICO's performance metrics and ratings determined whether I was entitled to an annual raise. Any rating over three entitled me to a raise, with an increase if my rating was closer to five. If I failed to meet them, they could also lead to disciplinary action such as being put on a coaching plan that could eventually lead to termination. The Special Investigators on each team with the lowest rating, even if their rating was four or more, had to go through coaching.

**Special Investigators' Caseloads**

17. I attended a Christmas luncheon in or around 2018 where Richie Lenihan, another Special Investigator, raised concerns to GEICO manager Mike DeGrocco about our escalating workload and the lack of authorized overtime hours. Mike DeGrocco responded that this was

- 5 -

just the way it was going to be and promised that Special Investigators' raises were going to go up.

18. In approximately April or May 2019 in a meeting with GEICO manager Bill Newport, I raised complaints about our heavy caseloads and said that it felt like GEICO was trying to force me and other Special Investigators out of the company. Bill Newport's response was that the metrics at GEICO had changed in recent years so that changes the number of cases assigned. However, GEICO otherwise did not address my complaints.

19. Throughout my time at GEICO, management's response to complaints about our caseloads and hours was that we should complete our work in the 38.75 hours per week, even though it was not possible.

20. GEICO was well aware that the work it required Special Investigators to perform would require more than 40 hours per week to complete. In or about 2008 to 2010, GEICO conducted an internal time study of the work done by Special Investigators through a department called the Competitive Advantage Leadership Group ("CALG"). Employees conducting the study were tasked with shadowing Special Investigators as they performed their work and made recommendations about work allocation and case load based on their findings. I was not shadowed, but I spoke with one of the employees conducting the study. During this process, one of the employees expressed disbelief to me about the high amount of work Special Investigators handled. I explained that we were only able to complete the work because most Special Investigators continued to work late into the evening after returning home from GEICO's office. I and the other Special Investigators were never shown the study. I believe CALG recommended a target caseload of approximately 16 cases for Special Investigators, which was and is far below my actual workload.

**Overtime Hours**

21. As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.

**Other Special Investigators**

22. I worked with approximately 7 other Special Investigations in my Theft team, including Louis Pia, Anthony Geraci, Maria Munoz, and Al Brust.

23. I also know that other Special Investigators worked many overtime hours off the clock each week without receiving overtime pay. I know this because we had regular team meetings and discussed the duties we performed and the long hours we were working.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   11/06/2023
         Orchard Park, NY

*Keith Fischer*
_____
Keith Fischer