**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated, <br><br><br> Plaintiffs, <br> v. <br><br> GOVERNMENT EMPLOYEES INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:23-CV-02848 (SJB) (SLT) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.    Relevant Background ....................................................................................... 2

II.   Legal Framework ........................................................................................... 2

    A.   Summary Judgment ............................................................................ 2

    B.   What Plaintiffs Must Prove at Trial ................................................. 3

        1.   Liability.................................................................................. 4

        2.   Damages ................................................................................. 5

III.  GEICO Had Knowledge of Plaintiffs' Unpaid Overtime Work. ....................... 5

    A.   GEICO Had Actual Knowledge......................................................... 7

    B.   GEICO Had Constructive Knowledge................................................ 10

    C.   GEICO's "Flex" Time Policy Does Not Show Lack of Knowledge. ......................................................................................... 13

    D.   GEICO's Reporting System is Not a Get-Out-Of-Liability-Free Card............................................................................................. 15

IV.  The Court Should Reject GEICO's Fringe Legal Arguments. ......................... 16

    A.   Special Investigators' Drive Time is Not Amenable to Summary Judgment. ............................................................................ 16

    B.   Plaintiff Margaret Fischer's Pre- and Post-Shift Activities Were Integral to her Work and Compensable...................................... 20

    C.   Questions About the Extent of Damages Are Not Before the Court. ........................................................................................................ 21

    D.   Ted Wendling's Claims Are Not Amenable to Summary Judgment. ............................................................................................... 22

V.   Willfulness Is a Jury Question. ....................................................................... 23

CONCLUSION ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **Page(s)**

*Adams v. City of N.Y.*,
   No. 16 Civ. 3445, 2021 WL 1791182 (S.D.N.Y. May 6, 2021) ............................................ 16

*Amnesty Am. v. Town of W. Hartord*,
   361 F.3d 113 (2d Cir. 2004) ..................................................................................................... 3

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ............................................................................................................. 4, 5

*Cadena v. Customer Connexx LLC*,
   51 F.4th 831 (9th Cir. 2022) .................................................................................................. 21

*Campbell v. City of New York*,
   No. 16 Civ. 8719, 2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) ............................................. 16

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ............................................................................................ 14, 15

*Clarke v. City of New York*,
   No. 6 Civ. 11397, 2008 WL 3398474 (S.D.N.Y. June 16, 2008) .............................. 10, 20, 21

*Crawford v. ExlService.com, LLC*,
   No. 16 Civ. 9137, 2019 WL 5887214 (S.D.N.Y. Nov. 12, 2019) ........................................ 2-3

*Edwards v. City of New York*,
   No. 08 Civ. 3134, 2012 WL 1694608 (S.D.N.Y. May 15, 2012) ......................................... 16

*Heredia v. Americare, Inc.*,
   No. 17 Civ. 06219, 2020 WL 3961618 (S.D.N.Y. July 13, 2020) ........................................ 16

*Holzapfel v. Town of Newburgh*,
   145 F.3d 516 (2d Cir. 1998) ................................................................................................. 16

*IBP, Inc. v. Alvarez*,
   546 U.S. 21 (2005) .......................................................................................................... 17, 20

*Kinkead v. Humana at Home, Inc.*,
   450 F. Supp. 3d 162 (D. Conn. 2020) .................................................................................. 24

*Kosakow v. New Rochelle Radiology Assocs.*,
   274 F.3d 706 (2d Cir. 2001) ................................................................................................. 21

*Kuebel v. Black & Decker Inc.*,
   643 F.3d 352 (2d Cir. 2011) .......................................................................................... *passim*

*Lassen v. Hoyt Livery, Inc.*,
    120 F. Supp. 3d 165 (D. Conn. 2015) ................................................................. 18

*Lawtone-Bowles v. City of New York*,
    No. 16 Civ. 4240, 2020 WL 2833366 (S.D.N.Y. June 1, 2020) .............................. 3

*Nell v. City of New York*,
    No. 19 Civ. 6702, 2021 WL 2716523 (S.D.N.Y. July 1, 2021) ................................ 3

*Perry v. City of New York*,
    78 F.4th 502 (2d Cir. 2023) ......................................................................... *passim*

*Peterson v. Nelnet Diversified Sols., LLC*,
    15 F.4th 1033 (10th Cir. 2021) ............................................................................ 21

*Ramirez v. Riverbay Corp.*,
    39 F. Supp. 3d 354 (S.D.N.Y. 2014) .................................................................... 4

*Reich v. New York City Transit Auth.*,
    45 F.3d 646 (2d Cir. 1995) ................................................................................. 21

*Sikiotis v. Vitesse Worldwide Chaufeeured Servs.*,
    147 F. Supp. 3d 39 (D. Conn. 2015) ................................................................... 23

*Solis v. SCA Rest. Corp.*,
    938 F. Supp. 2d 380 (E.D.N.Y. 2013) ................................................................ 23

*Tarax Tarax v. Blossom West Inc.*,
    No. 19 Civ. 6228, 2021 WL 1226954 (E.D.N.Y. Mar. 31, 2021) ............................ 4

*Thompson v. Global Contact Servs., LLC*,
    No. 20 Civ. 651, 2021 WL 3486944 (E.D.N.Y. July 21, 2021) ...................... 10, 15

*White v. Baptist Memorial Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) .............................................................................. 16

**FEDERAL STATUTES**

Title 28 U.S.C. § 254(a) .......................................................................................... 18

Title 29 U.S.C. § 203(g) ............................................................................................ 3

Title 29 U.S.C. § 254(a) .......................................................................................... 17

Title 29 U.S.C. § 254(a)(1) ...................................................................................... 20

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ................................................................................................. 2

Fed. R. Civ. P. 56(c)(1)(A) ................................................................................. 3

Fed. R. Evid. 404(b)(2) ...................................................................................... 12

**FEDERAL REGULATIONS**

Title 29 C.F.R. § 578.3 ...................................................................................... 23

Title 29 C.F.R. § 785.11 ...................................................................................... 3

Title 29 C.F.R. § 785.13 ................................................................................ 4, 15

## INTRODUCTION

The Court should deny GEICO's motion for summary judgment against 16 of the 60 Plaintiffs in this case.  The heart of GEICO's motion is that it claims no knowledge of Plaintiffs' "off-the-clock" work, but the record unequivocally shows that GEICO had *actual* knowledge in at least 9 of the 16 cases cited; and under operative Second Circuit precedent, "knowledge that some compensable, extra-shift work was not being paid suffices to put [an employer] on notice" as to the rest.  *Perry v. City of New York*, 78 F.4th 502, 522 (2d Cir. 2023).  The evidence of actual knowledge in the record – plus a wealth of other evidence sufficient to show constructive knowledge – is sufficient to deny that aspect of GEICO's motion.

Take John Moeser, who complained directly to SIU Manager Bill Newport that "I, along with *everybody else that I knew of*, were working more hours than what they were documenting." *See* Plaintiffs' Response to Defendant's Local Civil Rule 56.1 Statement of Material Facts ("RSOF"), ¶ 163 (emphasis added).  Or Constance Mangan, whose supervisors "constantly told me and . . . *most [of] the people that I spoke with* . . . that we were limited to a 7.75-hour day, in spite of the fact that *we were all complaining* and all saying that *we're all working way past that*."  RSOF ¶ 147 (emphasis added).  These statements, on their face, were not limited to the cases of the testifying Plaintiffs.  Nor was an office-wide meeting in which a spokesperson for the Investigators told managers "how everybody was struggling, and that we weren't able to manage it, and that *we were working past our scheduled hours*.  And I remember Bill Newport just shrugged his shoulders and said, '*I don't give a fuck*.'"  Plaintiffs' Rule 56.1 Statement of Additional Material Facts ("PAF") ¶ 30.

GEICO's remaining arguments nibble at the edges, but they all misapply the law about compensable time, ignore the facts, or take aim at imagined claims Plaintiffs do not raise.  All of them should be summarily rejected.

1

## I.    Relevant Background

Soon after Plaintiffs filed this case in April 17, 2023, they moved for court-authorized notice, supported by 27 detailed declarations.  Docket Entry ("DE") 54.  These declarations – which included testimony from all Plaintiffs at issue in this motion – showed "that Plaintiffs and the proposed FLSA Collective members were subject to Defendant's common policy or plan of deterring the reporting of all hours worked, and failing to pay for such hours worked."  DE 91 at 20.  Almost 40% of the eligible participants – 60 out of a possible 151 – have joined the case.  *See* Declaration of Michael J. Scimone ¶ 3.

All but one of the Plaintiffs at issue in this motion have been deposed.[1]  And as shown below, all of them testified, consistent with their declarations, that (1) they regularly worked more than 40 hours in a workweek without receiving overtime pay; and (2) GEICO knew or should have known of this off-the-clock work.

Plaintiffs filed their Motion for Class Certification on June 11, 2025.  *See* DE 98.  That motion is now before the Court, but GEICO has interposed both a *Daubert* motion and the instant summary judgment motion, interrupting the progress of this case.

## II.    Legal Framework

### A.    Summary Judgment

Summary judgment is only appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party."  *Crawford v. ExlService.com, LLC*, No. 16 Civ. 9137, 2019 WL

---

[1]    The exception is Ted Wendling, who is addressed in Section IV.D.

5887214, at *1 (S.D.N.Y. Nov. 12, 2019) (*quoting Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016)).

"[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Nell v. City of New York*, No. 19 Civ. 6702, 2021 WL 2716523, at *4 (S.D.N.Y. July 1, 2021). The moving party must support any assertion of undisputed fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the court is "not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgement, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Lawtone-Bowles v. City of New York*, No. 16 Civ. 4240, 2020 WL 2833366, at *2 (S.D.N.Y. June 1, 2020) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)).

### B.    What Plaintiffs Must Prove at Trial

Under the FLSA, to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). "So defined," it includes any work the employer "(a) requires, (b) knows about, or (c) should have known about through the exercise of reasonable diligence." *Perry*, 78 F.4th at 512-13; *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). Here, Plaintiffs must prove: (1) that they performed unpaid overtime work; (2) that GEICO required, knew of, or failed to exercise reasonable diligence to discover that Plaintiffs performed that work; and (3) damages for the Class and Collective.

New York Labor Law ("NYLL"), which "incorporates the overtime requirements of the FLSA," requires the same showing: that the plaintiff "performed work for which he was not

properly compensated, and that the employer had actual or constructive knowledge of that work." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 363 (S.D.N.Y. 2014) (cleaned up).

The Second Circuit has repeatedly and unequivocally held that an employee's "failure to report work the employer in fact knew about or required does not protect the employer from FLSA liability." *Perry*, 78 F.4th at 513; *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."). The FLSA places the burden on employers "for recording time worked and for ensuring that payment is made." *Perry*, 78 F.4th at 514; *see also* 29 C.F.R. § 785.13 ("The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.").

At trial, a plaintiff "need not demonstrate exactly 'how much' off-the-clock work was performed with [the employer's] knowledge." *Kuebel*, 643 F.3d at 365 (cleaned up); *Perry*, 78 F.4th at 522 (proving "*particular* slivers" of unpaid work was not necessary where there was "knowledge that some compensable, extra-shift work was not being paid"). Rather, where an employer's records are "inaccurate or inadequate" – as here – Plaintiffs' burden is to establish damages as a matter of "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). To defeat summary judgment, Plaintiffs need only present "estimates based on [their] own recollection[s]." *Kuebel*, 643 F.3d at 362; *see also Tarax Tarax v. Blossom West Inc.*, No. 19 Civ. 6228, 2021 WL 1226954, at *3 (E.D.N.Y. Mar. 31, 2021) (denying SJ where plaintiffs alleged that payroll records did not reflect actual hours worked).

### 1.  Liability

At trial, Plaintiffs will show that GEICO's policies and practices systematically forced Investigators to work off the clock. The Jury will hear that after years of overtime litigation and

4

consistent complaints from Investigators, GEICO continued overloading Investigators with work, tightly controlling their hours, and subjecting them to performance metrics that penalized them for reporting all their work time. And the Jury will hear that when Investigators pushed back, GEICO's managers shrugged off the fact that they were violating the law – publicly, under circumstances that left little doubt that GEICO knew exactly what it was doing. *See* DE 52 (Second Am. Compl.) ¶ 58 ("At that meeting, Special Investigators voiced concerns regarding their workload and unpaid overtime hours. In response to the complaints . . . the GEICO manager who ran the office simply said, 'I don't give a fuck.'"); PAF ¶ 30.

### 2.    Damages

Plaintiffs will prove damages as a matter of "just and reasonable inference" using a combination of their own testimony and GEICO's granular productivity data. *Anderson*, 328 U.S. at 687. Some subset of the more than two dozen Plaintiffs who have testified already will testify at trial about the hours they worked. And Plaintiffs' expert will correlate and calibrate GEICO's data to that testimony to show damages on a classwide basis using the very same measures of productivity that GEICO used to pressure Plaintiffs to work off the clock. The burden will then shift to GEICO to rebut the inference Plaintiffs establish. The Jury may be asked by special interrogatory what the testimony shows after cross-examination, and the anticipated model can be adjusted up or down accordingly. DE 128-15 (Pls.' Daubert Opp.) at 8.

### III.    GEICO Had Knowledge of Plaintiffs' Unpaid Overtime Work.

GEICO argues that no "reasonable jury" could find liability here because the "undisputed record" shows that GEICO did not know Plaintiffs worked off the clock. Mot. 19. That misrepresents the record and the law. GEICO knew – or at a bare minimum should have known – that all Plaintiffs were working unpaid overtime off the clock.

GEICO's motion rests on the premise that each individual Plaintiff must prove that GEICO had knowledge of each *specific* instance of unpaid overtime – an absurd proposition engineered not for summary judgment but to defeat class certification. The Second Circuit has squarely rejected this argument. In *Perry v. New York*, the proof at trial showed that the employer "knew that *some* required extra-shift work was not being compensated." 78 F.4th at 522 (emphasis added). After the employer learned this, it issued a written policy much like GEICO's here – one which forbade "extra-shift work unless the work has been approved by a supervisor and such time has been accurately recorded on their timesheets." *Id.* (cleaned up). Additional off-the clock work ensued. Based on these facts, the Second Circuit held that the jury could reasonably infer that the employer had the requisite knowledge that employees were underreporting their time, explaining "[i]t was not necessary to demonstrate that the [employer] knew that the *particular* slivers now at issue were going unpaid; knowledge that some compensable, extra-shift work was not being paid suffices to put the [employer] on notice." *Id.*

So here. Besides specific examples of the Plaintiffs now before the Court putting GEICO on *actual* notice (in nine instances) and making statements that *should have* put GEICO on notice (in at least nine instances), the Jury will learn that GEICO drafted its current timekeeping policy after learning through multiple successive lawsuits that the same employment practices were causing other employees to work off the clock. *See* DE 52, Second Am. Compl. ¶ 5 (citing six lawsuits involving identical practices, involving other categories of GEICO employees); RSOF ¶ 6 (no mention of off-the-clock work in GEICO's employee handbook until July 2023). This is sufficient evidence to establish an inference (here, in favor of the non-moving party) that

GEICO should have exercised "reasonable diligence" to comply with the law.[2] *Perry*, 78 F.4th at 512.

### A. GEICO Had Actual Knowledge.

The record contains multiple instances where Plaintiffs complained directly to GEICO supervisors and managers about their unpaid work, and GEICO ignored or rejected their concerns. **John Moeser** testified that he complained directly to SIU Manager Bill Newport that "I, along with everybody that I knew of, were working more hours than what they were documenting." RSOF ¶ 163. **Constance Mangan** similarly testified that her supervisors "constantly told me and . . . most the people that I spoke with and worked with that I knew and had conversations with, that we were limited to a 7.75-hour day, in spite of the fact that we were all complaining and all saying that we're all working way past that." RSOF ¶ 147. **Albert Brust** "spoke to [supervisor] Gerry Cassagne and told him specifically that [he] was working off the clock[.]" RSOF ¶ 27 ("I would discuss with Gerry [Cassagne] that to get my work done, I'm working past the eight hours, and could we get overtime. And he told me he will bring it up at the next meeting with Bill (Newport). And then every meeting, it was the same answer, that he can't authorize the overtime"). **Louis Caniglia, Jr.** contacted his supervisors when he felt he did not receive pay for all hours worked, and "definitely expressed [his] overtime to [his] supervisors over the phone" and email, RSOF ¶ 46 (describing a series of conversations where he informed

---

[2]     Under the rule in *Perry*, constructive knowledge of the current Plaintiffs' off-the-clock work could also be established by testimony of *other* Plaintiffs not before the Court on this motion who put GEICO on notice of their unpaid hours. That evidence is in the record and is a further reason why summary judgment on the knowledge issue is inappropriate. *See* PAF ¶¶ 3 (27 declarations from Plaintiffs and Opt-in Plaintiffs describing off-the-clock work); 33, 34 (Opt-in Plaintiff Scott Brady: GEICO "did not authorize overtime if I needed to work on my regular caseload"); Ex. HHH, (Nov. 8, 2022 Email from Plaintiff Vito DiNiso to his supervisor), P00000065 (Q: "Is GEICO authorizing overtime to work the excess of cases being assigned?" A: "No there has been no mention of overtime.").

his supervisor that he worked overtime and "wasn't compensated for it"). **Charise Jones** complained to her supervisor April Neyland about off the clock work "four to five times." RSOF ¶ 126. Ms. Neyland suggested that Ms. Jones was the only Investigator who couldn't get her work done in 38.75 hours per week, but other investigators (Keith Fischer, John Moeser, and Anthony Geraci) later told Jones that "there was no way possible to finish all of what they were expecting us to finish within the time frame allotted" and that they were working off the clock as well. *Id.* **Thomas Barden** complained to his supervisor and Bill Newport on "several occasions" that he was not being paid for all hours worked. PAF ¶ 20 ("We had meetings with supervisors and discussed the time that we were actually putting into cases, and how much time we were spending working off the clock."). **Michael Grey** had "dozens" of conversations with his supervisor, Chet Janik, about working unpaid overtime, RSOF ¶ 111, and testified that his supervisor "knew his entire team was putting in more hours than [their] scheduled hours," *id.*; this fact was "well known." *Id.* (describing an email where Mr. Janik stated, "I know the math doesn't add up, but just get [the work] done."). **Craig Costanzo** "made it clear" to his supervisors, and manager Bill Newport, that he was only able to stay on top of his caseload because he "put extra time in." RSOF ¶ 57. He stated that he made it "clear to them . . . that the only way [this] was working was because we were putting extra time in." *Id.* (complaining to his supervisor about "the huge volume of cases" and how "there was no way to do it within the eight-hour work day"). **Keith Fischer** told his supervisor Gerry Cassagne, "if not weekly, biweekly," that he was working over ten hours of overtime a week, and Mr. Cassagne simply told him "you can't put in for overtime." RSOF ¶ 79.[3] He also raised these concerns with Bill Newport. *Id.*

---

[3]     Note that these examples include evidence from Brust, Caniglia, Jr., Costanzo, and Grey, whom GEICO inexplicably argues have "concede[d]" that they "failed to raise off-the-clock-

This drumbeat of complaints reached a pitch relatively early in the class period, at a Christmas luncheon involving the entire office in 2018 or 2019.  Plaintiff **Constance Mangan** describes the scene:

> The last large meeting that I can remember was – it was either 2018 or 2019 . . . and that was a meeting that was upstate investigators, Staten Island investigators, the local metropolitan area investigators, including Nassau and Suffolk County, the five boroughs of the city, our supervisors, inside staff, people from legal who prepared our legal letters for us, our – and our manager also, Bill Newport, I know was there.
>
> . . .
>
> I – it would have to be at least forty people . . . . That meeting was being led by Bill Newport, which I recall because he – we never saw him . . . . Collectively we raised issues of unreasonable and unmanageable caseloads, and specifically I remember Mark Giambalvo speaking and he was a – very well spoken, Mark, and often he would sort of be a spokesperson for us because he was so well spoken. He was very articulate.  And I can remember at this particular meeting that Mark Giambalvo was speaking to the caseload, and how everybody was struggling, and that we weren't able to manage it, *and that we were working past our scheduled hours*.  And I remember Bill Newport just shrugged his shoulders and said, "I don't give a fuck."
>
> Q.     He said that explicitly?
>
> A.     Explicitly, and it has stuck with me to this day, because I was stung by it. I – I could not believe that he would act in such an unprofessional manner.  But it stunned the whole room.  It just went quiet.

PAF ¶ 30.[4]

---

work" to GEICO.  Mot. at 20.  GEICO argues the same about Michael Reed, who also complained regularly about overtime to his supervisors and was consistently told "there was no overtime."  RSOF ¶ 213 ("Q. Do you recall any of your supervisors or managers telling you explicitly you cannot plug in and be entitled to overtime?  A. . . . yeah.").

[4]     GEICO's omission of this testimony from its summary judgment brief cannot be chalked up to a mere oversight in a voluminous record.  Plaintiffs cited Newport's statement in the operative Complaint, *see* DE 52 (Second Am. Compl.) ¶ 58, and in each iteration of the Complaint since this case was filed.  DE 1 (Compl.) ¶ 33.

The Jury could infer from this testimony that GEICO should have done more to exercise "reasonable diligence" to prevent off-the-clock work.  *Perry*, F.4th at 512.  This testimony, "which must be credited at the summary judgement stage," *Kuebel*, 643 F.3d at 363, is more than sufficient evidence to defeat GEICO's motion as to the Plaintiffs whose testimony is cited above. *See, e.g.*, *Thompson v. Global Contact Servs., LLC*, No. 20 Civ. 651, 2021 WL 3486944, at *6 (E.D.N.Y. July 21, 2021) (denying summary judgment where plaintiff provided affidavits alleging that she complained about off-the-clock work).  It is also sufficient to defeat GEICO's motion as to the other Plaintiffs.  *See Perry*, 78 F.4th at 522**.**

### B.    GEICO Had Constructive Knowledge.

Even more evidence supports the conclusion that GEICO had *constructive* knowledge of off-the-clock work.  *See Clarke v. City of New York*, No. 6 Civ. 11397, 2008 WL 3398474, at *10 (S.D.N.Y. June 16, 2008) (finding "'work not requested' by an employer may nonetheless be work if it is 'suffered or permitted by the employer'" (quoting 29 C.F.R. § 785.11)).

Many of the Plaintiffs at issue here complained to GEICO about their inability to satisfy GEICO's performance metrics without working overtime hours.  For example, **Albert Brust** stated on "numerous occasions" that "if we don't work extra . . . I cannot satisfy these metrics." RSOF ¶ 29.  Similarly, while **Maria Muñoz** admits that she did not utter the exact words "I am working off the clock," she "remember[ed] having [a] conversation with [supervisor] Gerry [Cassagne] in regard to the work being too much," and "even cried to him at one point," but that he did not authorize overtime despite her complaints.  RSOF ¶ 177.  So too for **Craig Costanzo**. RSOF ¶ 57 (complaining to his supervisor about "the huge volume of cases" and how "there was no way to do it within the eight-hour work day").  And **Louis Pia** testified that supervisors were aware of Investigators' increasing workloads, but frequently denied their requests for overtime. RSOF ¶ 201.  For example, at monthly meetings, Investigators frequently brought up the topic of

overtime, but were told they "weren't getting overtime." *Id. See also* RSOF ¶ 213 (**Michael Reed:** "[I]t was just a common complaint. With the amount of cases that we were receiving, and the amount of work that we're getting, it was just not feasible to do it in the amount of hours that we were working."); RSOF ¶ 139 (**Daniel King's** supervisor told him not to record overtime hours because GEICO was "not going to pay you guys . . . they're not going to pay you more than 7.75.").

Other Plaintiffs had conversations with their supervisors, who told them not to record overtime for certain types of activities. For instance, **John Moeser's** supervisor April Neyland discouraged him from requesting overtime for "office work." RSOF ¶ 161. Similarly, **Michael O'Sullivan's** manager Brian Portnoy told him he could not request overtime "just for typing" his case reports. RSOF ¶ 185. These instructions are obvious instances of GEICO's constructive (if not actual) knowledge.

Some Investigators, like **Albert Brust**, told their supervisors about the odd hours they worked in the course of non-work activities. For example, Brust testified about an example of his off-the-clock work that he discussed with his supervisor Gerard Cassagne, who was also a hockey fan and player :

> I would work in between periods. I told him I would do work. He knows hockey games generally start at 7:30 at night. So directly and indirectly, he's aware that I was working off the clock because in between periods, as soon as the period would end, I would do as many computer checks as I can.

RSOF ¶ 30.

There is more. GEICO also should have known about Investigators' off-the-clock work when reviewing case notes in SICM, the computer platform Plaintiffs used to track their investigations. Investigators regularly returned from the field toward the end of the workday and input time-stamped entries into SICM after the end of their regular work hours. RSOF ¶¶ 9, 159;

11

PAF ¶¶ 21-25.  Investigators were also told that supervisors and management were able to see when Investigators were logged on to their computers, including after regular work hours.  *See* RSOF ¶ 149 ("There was some monitoring system on the computer.").  Similarly, Investigators directly communicated with their supervisors while working off the clock after hours, such as **Margaret Fischer**, who had email exchanges with her supervisor Danielle Perdomo while working off the clock.  RSOF ¶ 90 ("Q.  Why do you believe she had actual knowledge [of your off-the-clock work]?  A.  Because I would e-mail her when I was in the office and she would answer me.").

If all this were not enough, the Jury will hear that this is not GEICO's first rodeo.  Since at least 2021, GEICO has been defending a series of lawsuits brought by its adjusters, who allege nearly identical claims – that they, like the Investigators here, were limited to working exactly 7.75 hours per day, and subjected to demanding productivity metrics that were designed to penalize them for working longer hours.  The proof at trial will show that GEICO's Investigators were subject to the identical practices – permitting an inference that GEICO knew[5] exactly what it was doing.  *See, e.g.*, PAF ¶ 14 (citing evidence that GEICO formulated productivity metrics for Investigators "that divided the number of cases an Investigator closed by the number of work hours reported for the month."); RSOF ¶ 164 ("[i]f you submit overtime you are gonna be docked" or "judged on more hours worked"; it would "negatively reflect on your rating").

GEICO's arguments on constructive knowledge ignore this evidence.  GEICO's claim that Barden, Brust, Mangan, Pia, and Jones "deliberately deprived" GEICO of knowledge, Mot. 29, ignores the context that GEICO ensured recording overtime would negatively affect their performance evaluations.  PAF ¶¶ 14-15.  All four Plaintiffs' supervisors told them overtime was

---

[5]      Under Federal Rule of Evidence 404(b)(2), evidence of prior bad acts is admissible to prove "knowledge, . . . absence of mistake, or lack of accident."

not allowed.  *See* RSOF ¶¶ 21 (Barden); 27 (Brust), 147 & 150 (Mangan); 201 (Pia).  And while

Jones did testify that the overtime request process was "time consuming," that was not the

primary or sole reason she did not request overtime regularly; she also gave up because she had

the "same conversation over and over" with her supervisor that "there is no approved overtime."

RSOF ¶ 118.  GEICO cannot escape liability on this basis.  *See Kuebel v. Black & Decker Inc.*,

643 F.3d 352, 363 (2d Cir. 2011) ("At least where the employee's falsifications were carried out

at the instruction of the employer or the employer's agents, the employer cannot be exonerated

by the fact that the employee physically entered the erroneous hours into the timesheets").

### C.    GEICO's "Flex" Time Policy Does Not Show Lack of Knowledge.

GEICO cannot escape liability by arguing that Plaintiffs *could have* been working odd

hours without incurring overtime because they could "flex" their schedules – i.e. work fewer

hours on one day to make up for longer hours on a different day, while remaining below 40

hours for the week.  *See* Mot. 31.  This argument fails on the standard, the law, and the facts.

First, it flips the summary judgment standard on its head, begging for inferences in *GEICO's*

favor rather than proving decisively that Plaintiffs cannot prove their claims.  Second, it flies

once more in the face of *Perry* and other Second Circuit caselaw rejecting nearly identical

arguments.  And third, it is inconsistent with the record evidence of how impractical GEICO's

"flex" time policy was.

*First*.  For this argument to work on summary judgment, GEICO would have to provide

evidence such as timestamps showing that Plaintiffs were *only* working during a 40-hour

timespan – say 9:00 a.m. to 5:00 p.m. on Monday, 10:00 a.m. to 6:00 p.m. on Tuesday, 7:00 p.m.

to 3:00 p.m. on Wednesday, and so on.  Alternatively, if *Plaintiffs* were moving for summary

judgment, relying on timestamps *alone* to show knowledge, GEICO might plead a dispute of fact

by citing the possibility that Plaintiffs were "flexing" their schedules to support an inference that

late hours did not necessarily prove unpaid overtime.  But on GEICO's motion, it is entitled to no such inference.

*Second*.  GEICO's argument conflicts with the law of this Circuit.  The employer in *Perry* made a similar argument, which the Second Circuit rejected: "that an employer cannot be held liable for unpaid, unreported overtime work unless it knew that the employee *would not be paid*, even if it required or knew about *the work*."  *Perry*, 78 F.4th at 515 (emphasis in original).  GEICO attempts the same sleight-of-hand here, claiming, "[t]imestamps in evening hours inform a supervisor only that the Plaintiff adjusted their schedule, not that they were working additional hours *and not recording those hours*."  Mot. 31 (emphasis added).  The Second Circuit rejected that argument because it added an atextual requirement to the statute; it shifted responsibility to the employee, amounting to a loophole by which an employee could waive overtime by not reporting it (FLSA rights cannot be waived); and it "would collapse the significant distinction between ordinary violations and willful violations of the FLSA."  *Perry*, 78 F.4th at 516 (cleaned up); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008) (employer's argument that it "acquired its knowledge [of overtime] only after the fact" "misses the point . . . "an employer's knowledge need [not] arise *concurrently* with the performance of overtime, for good reason").

*Third*.  Plaintiffs testified that "flex" time made no difference in light of their unmanageable workloads.  **Charise Jones** testified that while her supervisor April Neyland told her to try to flex her time if she worked late on any given day, she responded that "I still have my workload the next day," and Ms. Neyland replied "'there's no approved overtime.'"  RSOF ¶¶ 11, 122.  Similarly, **Thomas Barden** testified that while he could have flexed his time, he "didn't" because he "didn't have time to do that."  RSOF ¶¶ 11, 16.  Mr. Barden's hours were only "flexible" in that "the job dictated when I needed to work," not in the sense that he could

work "at any time that was convenient" for him.  *Id.* ¶ 16; *see also* RSOF ¶¶ 37 (**Louis Caniglia, Jr.**: "I mean, yeah, it's flex timing, but still, it goes over the 38.75."); 157 (**John Moeser** "normally" started working around 8:00 AM and would often work until 7:00 PM or 8:00 PM at night.); 184 (**Michael O'Sullivan** regularly worked 8:30 AM to 6:00 PM or 6:30 PM on "typing" days, and longer on "field" days).

### D.   GEICO's Reporting System is Not a Get-Out-Of-Liability-Free Card.

GEICO cannot disclaim knowledge by relying on its reporting system.  Mot. 22.  While reporting systems can be *relevant* both to knowledge and willfulness, they are not dispositive. *See* 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.").  In *Perry*, the Second Circuit rejected the employer's argument that "it does not have to compensate for required overtime work unless employees report the work and request pay."  78 F.4th at 512 ("That appealing proposition is not the law.").  It explained that the Second Circuit has "long recognized that an employee's failure to report work the employer in fact knew about or required does not protect the employer from FLSA liability."  *Id.* at 513.  And it clarified that, even in the absence of actual knowledge, "requiring overtime reporting will not protect an employer who then interferes with employees' ability to report their work, such as by . . . punishing workers who ask for overtime pay, *or otherwise discouraging employees from reporting*."  *Id.* at 513 n.9 (emphasis added); *see also Thompson*, 2021 WL 3486944, at *7 (rejecting defendant's argument that the plaintiff's failure to utilize the timekeeping system entitled it to summary judgment as to knowledge); *Kuebel*, 643 F.3d at 363 (vacating summary judgment to employer where employee admitted falsifying timesheets); *Chao*, 514 F.3d at 288 (employer may have knowledge of uncompensated work "even where the employer has not requested the overtime be performed or does not desire the

employee to work, or where the employee fails to report his overtime hours"); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) (where knowledge is present, an employer "cannot deny compensation even where the employee fails to claim overtime hours").[6]

Here, Plaintiffs testified both that GEICO had actual knowledge and that GEICO discouraged them from reporting their overtime – directly, through supervisors who regularly told Plaintiffs that overtime is "not authorized," *see, e.g.*, RSOF ¶¶ 20 (Barden); 27 (Brust), 147 & 150 (Mangan); 201 (Pia); PAF ¶¶ 9, 34, 35, and somewhat less directly by reminding them that reporting overtime would negatively impact their performance metrics. RSOF ¶ 77 ("I was told that . . . because I asked for overtime, I would now be susceptible to getting more cases, because I had more time on the books, and my rating would go down"); PAF ¶¶ 14, 15.

As for GEICO's argument that Plaintiffs cannot show knowledge because they sometimes recorded and were paid overtime, Mot. 27-29, that set of overly generous inferences in GEICO's favor has no place in a summary judgment motion.

## IV.   The Court Should Reject GEICO's Fringe Legal Arguments.

### A.   Special Investigators' Drive Time is Not Amenable to Summary Judgment.

GEICO's arguments that Plaintiffs seek to recover for time driving to their first investigation task and home from their last investigation task fail. GEICO cites no clear examples of what it calls "commuting time" being included in Plaintiffs' estimates of time

---

[6]   GEICO's out-of-circuit caselaw has been rejected as "contrary to Second Circuit precedent." *Adams v. City of N.Y.*, No. 16 Civ. 3445, 2021 WL 1791182, at *5 (S.D.N.Y. May 6, 2021) (rejecting *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012)). And GEICO's in-circuit cases either involve inapposite facts, *see Heredia v. Americare, Inc.*, No. 17 Civ. 06219, 2020 WL 3961618, at *8 (S.D.N.Y. July 13, 2020) (sleep time), or were abrogated by *Perry*, 78 F.4th at 515 n.12 (rejecting *Campbell v. City of New York*, No. 16 Civ. 8719, 2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) and *Edwards v. City of New York*, No. 08 Civ. 3134, 2012 WL 1694608 (S.D.N.Y. May 15, 2012)).

worked.  And to the extent there is some concern that Plaintiffs occasionally count such "commute" time in their estimates, GEICO fails to show that those time periods are non-compensable as a matter of law.  At the end of the day, these are damages issues, not liability questions, and they do not entitle GEICO to summary judgment.

First, there is a distinction between time spent traveling from home to work and back – so-called "commute" time – and time spent traveling *between* work locations after one has already started the principal activities of the work day.  The latter is compensable under the "continuous workday rule."  *See Kuebel*, 643 F.3d at 359-60 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005)) ("the period between the commencement and completion on the same workday of an employee's principal activity or activities" is compensable even when it includes travel time).  In contrast, time spent "traveling to and from the actual place of performance of the principal activity" an employee performs – commute time – is not compensable under the Portal-to-Portal Act, 29 U.S.C. § 254(a) (but see further discussion of "principal activity" below).

GEICO offers no undisputed examples of commute time, and fails to show that such "commute time" is included in Plaintiffs' estimated hours.  For **Keith Fischer**, it offers a hypothetical example of how he structured "some days" that he drove to Brooklyn – which he did not do every day – without showing that his drive time at the start of the day accounts for the overtime hours he estimated.  RSOF ¶ 74 ("I did this . . . to organize my month so that, if I knew I was going to Brooklyn on Tuesday, you know, I wouldn't have to go on Thursday. I would try and do three in Brooklyn.").  And Fischer's travel home was not his last activity of the day, as he typed up notes from his field work after his return, in the hypothetical example cited.  *Id*.  Similarly, **Michael Reed** spent additional time after he returned home compiling notes from his field work; the testimony GEICO cites says only that he spent time "traveling back and forth to statements" without specifying when in the day that travel time occurred.  RSOF ¶ 214.  **Lou Pia**

17

explicitly testified that his driving time was *not* the first activity of his day, as he spent 30 minutes preparing for his field work before leaving the house – and nothing in the testimony establishes that Pia included travel time in his hours worked.  RSOF ¶ 200.  **Charise Jones** testified to several hours of drive time, but again without specifying whether that happened at the start or end of her day.  RSOF ¶ 117; PAF ¶ 28.[7]  And the two examples of **Craig Costanzo's** testimony GEICO offers either do not distinguish between home-to-work travel and worksite-to-worksite travel, RSOF ¶ 53, or else involved hypotheticals posed by GEICO's attorney that simply beg the question.  RSOF ¶ 54 ("A: "That's possible.").  These facts do not merit summary judgment.

Even if there were examples of "commute" time that GEICO could point to in the record, it fails to establish that this time is non-compensable.  While the Portal-to-Portal Act does not require pay for travel "to and from the actual place of performance of the *principal activity*," 28 U.S.C. § 254(a), the statute "does not change earlier definitions of compensable work," meaning that if drive time is itself "integral and indispensable" to a "principal activity" of one's employment, it is compensable.  *Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 174-75 (D. Conn. 2015) (Limo drivers' "principal activity" was "to pick up passengers and transport them," including travel "to the location where the passenger awaits this service.").  "Whether an activity is 'integral and indispensable' to an employee's principal activities is a fact-dependent inquiry." *Kuebel*, 643 F.3d at 359.

GEICO offers no facts to support the argument that Investigators' travel as part of their field work is non-compensable as a matter of law.[8]  If anything, the record suggests otherwise.

---

[7]     GEICO miscites this paragraph as ¶ 217, not ¶ 117.  Mot. 14-15.

[8]     Lest GEICO try to shift this burden to Plaintiffs on reply, recall that GEICO has not established that Plaintiffs are, in fact, claiming compensation for travel time – see above.

As **Louis Caniglia, Jr.** explained, "when you say travel, we're field investigators.  So me going to some place is work."  *See* PAF ¶ 27.  GEICO's practices reflect that understanding.  Keith Fischer's supervisor told him, "your travel time to appointments is considered working hours."  RSOF ¶ 75.  When Brust was hired, he was told, "You're a field investigator, and . . . we want you in the field.  We don't want . . . your investigations all to be conducted in your house."  PAF ¶ 27.  And some of the investigation work itself was performed while driving, such as when Investigators conducted "neighborhood canvasses, and surveillance when appropriate." PAF ¶ 4.

GEICO's reliance on *Kuebel*  is misplaced.  It makes no effort to analogize the "administrative responsibilities" of the plaintiff in *Kuebel* to the work of Investigators, or to show that Investigators had similar "flexibility in deciding when to complete . . . daily administrative responsibilities" so as to remove their field work from the continuous-workday rule.  643 F.3d at 360.  The record, again, suggests otherwise.  RSOF ¶¶ 74 (Fischer recorded notes from field work after returning home); 214 (Reed, same); 200 (Pia spent 30 minutes preparing for EUOs before leaving to conduct them).

Placing these facts in context, GEICO's arguments, at best, partially rebut the "just and reasonable inference" established by Plaintiffs' hours testimony.  These are questions of fact that should be resolved by the Jury.  Even if the Court were to hold as a matter of law that Plaintiffs' "commute" time is non-compensable, and find that Plaintiffs included some "commute" time in their estimates – which the record here does not clearly show – this would be easily remedied by asking Plaintiffs to exclude such time in their estimates at trial.  Even if GEICO satisfied its burden on summary judgment, that would not resolve any Plaintiff's claim in its entirety.

**B.    Plaintiff Margaret Fischer's Pre- and Post-Shift Activities Were Integral to her Work and Compensable.**

GEICO's argument that Plaintiff Peggy Fischer's claims are based on "non-essential" and "non-compensable" activities fails for two reasons: First, GEICO is wrong that M. Fischer seeks compensation *only* for "the time spent setting up and taking down her workstation when she worked from home during the pandemic." Mot. at 15.  Second, as a matter of law, that time is compensable as well.

Ms. Fischer seeks compensation for *all* unpaid overtime hours worked during the relevant period.  She testified that from 2016 to 2020, she regularly worked beyond her scheduled hours to complete case-related tasks at GEICO's Long Island office.  RSOF ¶¶ 87-90, 97.  She only started working remotely in 2020, and she testified that this time included setting up and taking down her workstation.  RSOF ¶ 90.

That work is compensable.  The FLSA mandates compensation for "the principal activity or activities which [an] employee is employed to perform," 29 U.S.C. § 254(a)(1), including tasks completed outside a regularly scheduled shift that are "an integral and indispensable part of the principal activities."  *IBP*, 546 U.S. at 29-30.  This standard is fact-dependent.  *Id.* at 40-41; *see also Kuebel*, 643 F.3d at 359 ("Whether an activity is integral and indispensable to an employee's principal activities is a fact-dependent inquiry.") (internal quotations omitted); *Clarke*, 2008 WL 3398474 at *7 (same).  Courts in this Circuit have identified six relevant factors to guide its application: (1) the degree to which the activity is "undertaken for the employer's benefit"; (2)  the degree to which the activity is indispensable to the "primary goal" of the employee's work; (3) the degree to which the employee lacks choice in whether to perform the activity; (4) whether the activity involves something other than traveling to and from work; (5) the ease with which the employer could "maintain records of [the] time expended" on

the activity; and (6) whether the amount of work involved is something more than "truly minimal." *Clarke*, 2008 WL 3398474 at *7 (citing *Reich v. New York City Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995)).

GEICO cites no facts to satisfy these factors, and the record cuts against its argument. Ms. Fischer testified that during the pandemic, she spent approximately 15 to 30 minutes each day setting up her computers and monitors so she could log on by 9:00 AM.  RSOF ¶ 90  She used her computer to run background checks, database reviews, public record searches, and to verify licenses.  PAF ¶ 32.  These were core aspects of M. Fischer's job that benefited GEICO and were not possible without a properly set up computer.  Courts have routinely found that time spent readying equipment that is essential for the completion of an employee's duties is compensable.  *See e.g.*, *Clarke*, 2008 WL 3398474 at *7-10 (denying summary judgment on defendant's claims that time spent charging laptops and batteries is not compensable); *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 718 (2d Cir. 2001) (finding that 15 minutes of prep time spent by a lab technologist turning on and preparing an x-ray processing machine was compensable); *Cadena v. Customer Connexx LLC*, 51 F. 4th 831, 838 (9th Cir. 2022) (holding that time spent by employees turning on their computers was compensable under the FLSA); *Peterson v. Nelnet Diversified Sols., LLC*, 15 F. 4th 1033, 1037-42 (10th Cir. 2021) (same).

GEICO cannot win summary judgment by isolating one task from the last several months of Plaintiff's employment while disregarding her broader pattern of overtime work.  And its arguments about M. Fischer's pandemic work time are properly left to the Jury.

### C.    Questions About the Extent of Damages Are Not Before the Court.

The Court should reject GEICO's attempt to chip away at the margins of Plaintiffs' claims.  Mot. 16-18.  Most of these arguments are ultimately about damages and turn on payroll records GEICO has not yet produced.  When Plaintiffs submit their damages report, they will

exclude periods when Plaintiffs were on leave, *see id.* 17, periods when they worked less than a full week, *see id*. 17-18, and periods when they admit they did not work overtime.  Mot. 17 (Muñoz and Costanzo).  They will also exclude overtime for which they were already paid.  Mot. 18; DE 98-64, Decl. of Catherine O'Neil.  GEICO has not substantiated the specific time periods at issue, *see, e.g.*, SOF ¶ 60 ("Costanzo stopped working off the clock *at some point* in 2022 or 2023." (emphasis added)), and has not yet produced all of the relevant records, which it will presumably produce during Phase 3.  Plaintiffs have made no claims based on these time periods, and these are not appropriate arguments for summary judgment.

Nor does **Charise Jones** seek overtime during the limited period when GEICO classified her as exempt from overtime.  Plaintiffs do not dispute that GEICO classified her trainer position as exempt – and that classification is not challenged in this case – but **Ms. Jones** only worked as a trainer during a portion of her employment.  RSOF ¶¶ 114-15*.*

**Constance Mangan** did not admit that she could only recall working overtime for "a week in September."  Mot. 17.  She testified that she worked 50-60 hours a week "between late 2016 and May 2020," as GEICO admits in its statement of facts.  RSOF ¶ 145.  The fact that she *also* itemized her hours during a specific week does not negate this testimony.  *Id.* ¶ 146.

### D.    Ted Wendling's Claims Are Not Amenable to Summary Judgment.

Summary judgment is not the appropriate vehicle to address Ted Wendling's claims.  Mr. Wendling testified in his declaration that (1) he worked 57.625 hours per week on average between September 2019 and February 2023, but only recorded 7.75 hours per day at the instruction of his supervisor, and (2) he complained about his workload and how difficult it was to manage.  *Id.* ¶¶ 219, 221.  Aside from a few stray paystubs, which do not rebut this testimony, GEICO has produced no evidence about Mr. Wendling's claims.  Accordingly, disputes of material fact still exist.  It is true that Mr. Wendling failed to appear for his deposition, but

GEICO's remedy is to move to dismiss Wendling as a sanction for failing to participate in discovery or for want of prosecution. It has not done so.

**V.    Willfulness Is a Jury Question.**

GEICO is not entitled to summary judgment on the issue of willfulness for all the reasons it is not entitled to summary judgment on knowledge; and also because GEICO ignored repeated Investigator complaints about their workload and the need for GEICO to approve more overtime. The Jury can infer that this lack of responsiveness to Plaintiffs' concerns was willful. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel*, 643 F.3d at 366 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)). Reckless disregard "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Sikiotis v. Vitesse Worldwide Chauffeured Servs.*, 147 F. Supp. 3d 39, 47 (D. Conn. 2015) (quoting *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014)). That standard is met, "among other situations, if the employer should have inquired further into whether its conduct was in compliance with the [FLSA], and failed to make adequate further inquiry." 29 C.F.R. § 578.3. The question of willfulness is for the jury. *See Kuebel*, 643 F.3d at 366; *see Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 393 (E.D.N.Y. 2013) ("Courts in this Circuit have generally left the question of willfulness to the trier of fact." (collecting cases)).

Plaintiffs have testified that when they told GEICO managers they could not complete their work in a 38.75-hour week, the response was that GEICO would not approve requests for overtime. RSOF ¶ 27 ("I would discuss with Gerry [Cassagne] that to get my work done, I'm working past the eight hours, and could we get overtime. And he told me he will bring it up at the next meeting with Bill [Newport]. And then every meeting, it was the same answer, that he can't authorize the overtime"); *id.* ¶ 139 (**Daniel King**, when working past dinner time, recalled

that his supervisor told him that "they're not going to pay you guys . . . they're not going to pay more than 7.75"); *id.* ¶ 149 (**Constance Mangan**: "I would tell my supervisors, there is no way I can complete my investigations, my reports, within the time frame of 7.75 hours a day; that in order to complete my work I had to work in excess of those hours on a regular basis.  And the response that I received from my supervisors…was that don't do overtime.  Work 38.75; Work 7.75"); *id.* ¶ 201 (**Louis Pia** recalled that at monthly meetings, the topic of overtime was always brought up and Investigators were told they "weren't getting overtime"); *id.* ¶ 213 (lack of authorized overtime was a "common complaint"); PAF ¶¶ 34 (GEICO "did not authorize overtime if [Scott Brady] needed to work on [his] regular caseload."), 35 (same for Vito DiNiso). And in the face of these complaints, GEICO admits that supervisors did not review timesheets to verify all hours worked, but only "to ensure time has been entered for each day, and that any vacation, sick, or holiday hours have been keyed appropriately to ensure proper compensation." SOF ¶ 7.

The Jury can infer from these statements – taken together with the testimony cited above as proof of knowledge – that GEICO was aware of Plaintiffs' off-the-clock work but failed to take adequate steps to comply with the law.  The Jury could reach the same conclusion based on GEICO's recidivism across multiple lawsuits involving the same practices.  *See* Part II.B, above. And, at the risk of repetition, Bill Newport's response, when confronted with reports of off-the-clock work, was "I don't give a fuck" – the epitome of a willful statement.  PAF ¶ 30.  This is far from the showing GEICO needs to make that there is no set of facts by which Plaintiffs could prove willfulness.  *See Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 190 (D. Conn. 2020) (denying summary judgment because "defendant [did] not point to evidence that conclusively show[ed] their noncompliance was not willful or done with reckless disregard").

## <u>CONCLUSION</u>

GEICO had no basis for this motion.  As the Court pointed out at the July 1, 2025 pre-motion conference, it will not end the case because it only targets 25% of the collective.  And GEICO could have filed the same partial motion after the close of discovery.  The practical effect of filing it now is to slow down the progress of the case and to create more work for the Court (and Plaintiffs' Counsel) before the motion for class certification can be decided.  Like GEICO's *Daubert* motion, DE 128-1, this appears to be a tactical move.  While that doesn't relieve Plaintiffs from the obligation to respond, or the Court from having to adjudicate the motion, it is characteristic of GEICO's defense strategy in this case, which has multiplied the attorneys' fees beyond reason.  The motion should be denied.

Respectfully submitted,

Dated: September 12, 2025          By:    */s/ Michael J. Scimone*

Michael J. Scimone
Sabine Jean
Jarron D. McAllister
Zarka Shabir DSouza
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Fax: 646-509-2060
mscimone@outtengolden.com
sjean@outtengolden.com
jmcallister@outtengolden.com
zdsouza@outtengolden.com

Ryan Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Suite 1200B
Washington, DC 20005
Telephone: 202-929-0636
Fax: 202-847-4410
rcowdin@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: 631-499-9100
Facsimile: 800-451-0874
tkessler@kesslermatura.com
gkaske@kesslermatura.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Putative Class and Collective*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C) AND JUDGE BULSARA'S INDIVIDUAL PRACTICES, RULE VI(E)</u>

In accordance with Local Civil Rule 7.1(c) and District Judge Sanket J. Bulsara's Individual Practices, Rule VI(E), I hereby certify that Plaintiffs' Opposition to Defendant's Motion for Summary Judgment contains 8,400 words, including footnotes, as established by Microsoft Word, the software used to prepare the Motion.  The word count does not include the Motion's cover page, table of contents, table of authorities, signature block, and certificate of service, which are exempted by the applicable Rules.