## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,

Case No. 2:23-CV-02848 (SJB) (SLT)

Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant.

## PLAINTIFFS' RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Eastern District of New York, Plaintiffs hereby respectfully submit this Statement of Additional Material Facts in support of its Opposition to GEICO's Motion for Summary Judgment on the claims of Named Plaintiffs Keith Fischer ("K. Fischer"), Michael O'Sullivan ("O'Sullivan"), John Moeser ("Moeser"), Louis Pia ("Pia"), Thomas Barden ("Barden"), Constance Mangan ("Mangan"), and Charise Jones ("Jones"); and Opt-In Plaintiffs Louis Caniglia, Jr. ("Caniglia, Jr."), Michael Grey ("Grey"), Daniel King ("King"), Margaret Fischer ("M. Fischer"), Craig Costanzo ("Costanzo"), Ted Wendling ("Wendling"), Maria Muñoz ("Muñoz") and Albert Brust ("Brust") (collectively, "Plaintiffs"):

1.    Until approximately February 2023, GEICO Special Investigators ("Investigators") worked on small teams with seven to ten other Investigators.  Ex. FF, Newport Tr. 52:2-3; Ex. H, Muñoz Tr. 98:1-13, 139:8-140:18.

2.    Until approximately July 2023, Investigators reported to SIU Supervisors, who reported to a single SIU Manager per office.  Ex. GG, 30(b)(6) Tr. 82:24-83:3; Ex. HH,

November 21, 2023 Email from Rene Cubas to Team at G020144 (stating "reorganization began" around July 1, 2023).

    3.     Investigators regularly speak with their Supervisors about their cases and workloads during team meetings and one-on-one calls. *See* Ex. N, Cassagne Tr. 50:16-51:8; Ex. K, Brust Tr. 254:21-256:4.

    4.     Investigators' primary job duties are to investigate cases of suspected insurance fraud. In doing so, they must review case files; run background checks; examine billing reports; drive to medical facilities, accident scenes, and/or theft sites; gather evidence; interview witnesses and law enforcement; confirm police reports; canvass and surveil scenes; conduct examinations under oath; and write and submit reports about their findings. *See* Ex. II, Senior Field Security Investigator Job Description at G006749; Ex. JJ, Lead Security Investigator Job Description at G006754; Ex. KK, Internal Major Case SIU Investigator Job Description at G006756; Ex. LL, Senior Internal Security Investigator Job Description at G007697; Ex. MM, Major Case SIU Investigator Job Description at G007700; Ex. NN, Internal Security Investigator Job Description at G007705; Ex. OO, Field Major Case SIU Investigator Job Description at G007709; Ex. PP, Claims Security Investigator Job Description at G007711).

    5.     Investigators' primary duties and the prescribed procedures for them are outlined in GEICO's SIU Operations Manuals. Ex. QQ, 2017 SIU Operations Manual at G010748-92.

    6.     GEICO requires that requests for overtime pay receive prior management approval. *See* Ex. RR, November 2017 HR Handbook at G000041 ¶ 5; Ex. SS, May 2023 HR Handbook at G000054.

    7.     GEICO's policies required Investigators to "discuss[] [overtime requests] with [their] supervisor to determine if the extra time was needed," during which the supervisor may approve or deny the request. Ex. FF, Newport Tr. 257:2-3; 239:5-17; *see also, e.g.*, Ex. K, Brust Tr. 140:20-21.

8.      During the relevant period, neither the SIU Supervisors nor the former Region 2 Manager, Bill Newport, had unlimited discretion to approve overtime.  *See* Ex. FF, Newport Tr. 255:9-23; Ex. TT, July 8, 2020 Email from Manager Bill Newport to Supervisors at G013561.

9.      GEICO tightly regulated overtime, and only "pre-authorized" its use for special circumstances, like catastrophe projects, that fell outside Investigators' regular caseload.  *See* Ex. UU, November 2017 Associate Handbook at G000040; Ex. TT, July 8, 2020 Email from Manager Bill Newport to Supervisors at G013561; Ex. A, K. Fischer Tr. 119:10-22.

10.      For example, on November 25, 2016, Supervisor Gerard Cassagne sent Mr. Fischer an email stating, "Bottom line- continue to work the way you were working.  If you determine that you need to work overtime on any specific day, you can work the overtime and you will get paid for it.  You have to document your overtime hours and be able to verify why it was needed.  Your supervisor will also be responsible to verify your overtime."  Ex. Q, November 25, 2016 Email from Supervisor Gerard Cassagne to Keith Fischer at P00000077. However, after Mr. Fischer received this email, he "did try to submit overtime, and [] was turned down, and [he] gave up after about two to three months."  Ex. A, K. Fischer Tr. 242:20-23.

11.      In 2018, SIU Manager Bill Newport submitted an "OT approval form" to GEICO Vice President Rick Hoagland, who authorized a one-week overtime "campaign" allowing Investigators to work an additional ten hours for one week to resolve an unexpected excess of cases – but on the "conditions" that the time spent would be rigorously tracked, and the effects of the work documented, with continued approval contingent on the results.  Ex. VV, November 23, 2018 Email from Rick Hoagland to Newport at G010848; Ex. O, November 26, 2018 Email from Cassagne to Investigators at G011553.

12.      In June 2020, SIU Manager Bill Newport received approval to run another overtime "campaign," during which Investigators were pre-authorized to work additional hours, similar to the campaign that occurred in 2018.  Ex. WW, June 2020 Cassagne Emails to Supervisors and Investigators at G011584-85.

13.     GEICO applied performance metrics to Investigators, who were scored on a 1-5 scale. Investigators who were rated less than a 3.0 were ineligible for an annual salary increase and put on a performance improvement plan.  *See* Ex. UU, November 2017 Associate Handbook – Employment Contents at G000172; Ex. XX, July 2023 Associate Handbook at G000210; Ex. YY, Reed 2017 Performance Appraisal at G006014-18; Ex. UU, November 2017 Associate Handbook – Employment Contents at G000170; Ex. XX, July 2023 Associate Handbook at G000210; Ex. G, Barden Tr. 167:19-24.

14.     One key metric, (Adjusted) Productivity, was calculated as a ratio that divided the number of cases an Investigator closed by the number of work hours reported for the month, and GEICO Supervisors emphasized to Investigators that reporting additional work hours could negatively impact their ratings.  *See* Ex. R, SIU Case Investigations Instructions at G017297; Ex. B, Moeser Tr. 104:5-8; 106:2-22.

15.     Working more overtime hours lowered an Investigator's Productivity score.  Ex ZZ, March 21, 2018 Email from Supervisor Dara Campbell to Constance Mangan at G011670 ("Looks like you worked a lot of overtime which is lowering the overall [adjusted productivity] number."); Ex. A, K. Fischer Tr. 94:11-25; Ex. AAA, SIU Case Investigations Dictionary at G010919-20.

16.     To score File Quality, GEICO randomly audited cases and assigned a quality score based on various factors, while other metrics, such as Case Life, measured how quickly Investigators resolved cases.  *See* Ex. BBB, Costanzo 2021 Performance Appraisal at G006624; Ex. D Jones Tr. 96:4-13; Ex. B Moeser Tr. 181:13-182:12; Ex. S, SIU Core Metrics Report Card Excel at G007938; Ex. AAA, SIU Case Investigations Dictionary at G0109120-21.

17.     GEICO forwarded "report cards" to Investigators every month showing their ratings and ranked Investigators against each other.  Ex. CCC, October 20, 2021 Email from Supervisor Chester Janik to Michael Grey at G012429-30; Ex. UU, November 2017 Associate Handbook – Employment Contents at G000170; Ex. FF, Newport Tr. 155:21-23).

18.     Investigators' caseloads rose steadily over the years, with caseloads increasing after March 2020.  Ex. N, Cassagne Tr. 93:10-12.

19.     Investigators discussed their increasing caseloads in team meetings and during one-on-one phone calls with their supervisors.  Ex. CC, Pia Tr. 220:13-16; Ex. D, Costanzo Tr. 50:13-22, 51:4-23; Ex. A, K. Fischer Tr. 156:20-157:9, 206:10-24; Ex. DDD, Supervisor D'Agata Coaching Log for Ted Wendling at G016093-98.

20.     Thomas Barden testified to working 55 to 60 hours per week.  He "had meetings with supervisors and discussed the time that [Investigators] were actually putting into cases, and how much time [they] were spending working off the clock."  Ex. G, Barden Tr. 101:13-22.  Starting around July 2020, Mr. Barden stopped requesting overtime because GEICO told him he was not allowed to record it.  *Id.* 99:16-21.

21.     GEICO assigns cases through its database SICM ("Special Investigation Case Management"), where Investigators submit casework.  Ex. GG, 30(b)(6) Tr. 188:15-17.

22.     SICM records the date and time when a Special Investigator is assigned a new case.  Ex. N, Cassagne Tr. 235:12-15.

23.     Special Investigators "mark down every task that they take" in SICM, and these entries are timestamped.  Ex. GG, 30(b)(6) Tr. 262:20-24.

24.     After an investigation, when Investigators "close out" of a case, SICM timestamps this action.  Ex. GG, 30(b)(6) Tr. 267:15-18.

25.     After Investigators complete their work, SICM tracks their activity metrics, including Productivity, Case Life, and File Quality.  Ex. GG, 30(b)(6) Tr. 197:2-6, 197:21-198:5, 198:10-12; Ex. N, Cassagne Tr. 235:16-20.

26.     GEICO considered travel time to investigation-related appointments to be work time.  *See* Ex. Q, November 25, 2016 Email from Supervisor Gerard Cassagne to Keith Fischer at P00000077 (stating "your travel time to appointments is considered working hours").

27.     Investigators working in the field also considered their travel time to be work time.  *See, e.g.*, Ex. M, Caniglia, Jr. Tr. 197:2-17 ("I also want to get on the record that, like,

when you say travel, *we're field investigators*. *So me going to some place is work.*  When I leave, like, I'm doing -- I'll get a case.  I'll do database searches.  I'll make phone calls.  I'll call local police departments, do what I have to do, and then I'll go out and try to get to the location where I have to canvass or anything like that.  *So if I'm stuck in traffic, to me, that's still work.*" (emphasis added)); Ex. K, Brust Tr. 55:10-16 ("You're a field investigator, and . . . we want you in the field.  We don't want . . . your investigations all to be conducted in your house.").

28.     Investigators who conducted field work spent many hours driving to investigation related appointments within their prescribed territories.  For example, in the second half of 2022, Craig Costanzo's territory increased to include Rochester, New York – an "hour and a half to two hours away."  Ex. D, Costanzo Tr. 225:8-13.  He estimates that he travelled "6,877 miles" within his territory during this timeframe.  *Id.* 19-23.  Charise Jones spent "hours and hours on the road" each day to complete her duties, as her territory included cases that could be up to a few hours "one way."  Ex. C, Jones Tr. 154:18-21, 231:6-12.

29.     GEICO Supervisors often received requests for overtime late in the evening.  *See, e.g.*, Ex. EEE, November 30, 2016 Email from Keith Fischer to Gerard Cassagne at G011492; Ex. FFF, June 3, 2020 Email from Albert Brust to Gerard Cassagne at G012079; Ex. GGG, December 15, 2016 Email from Louis Caniglia, Jr. to Gerard Cassagne at G011493.

30.     Plaintiffs complained to their supervisors about their workload multiple times and on multiple occasions.  For example, Plaintiff Mangan described a Christmas luncheon involving the entire office in or around 2018:

> The last large meeting that I can remember was – it was either 2018 or 2019 . . . and that was a meeting that was upstate investigators, Staten Island investigators, the local metropolitan area investigators, including Nassau and Suffolk County, the five boroughs of the city, our supervisors, inside staff, people from legal who prepared our legal letters for us, our – and our manager also, Bill Newport, I know was there. . . .
>
> I – it would have to be at least forty people . . . . That meeting was being led by Bill Newport, which I recall because he – we never saw him . . . . Collectively we raised issues of unreasonable and unmanageable caseloads, and specifically I remember Mark Giambalvo speaking and he was a – very well spoken, Mark,

and often he would sort of be a spokesperson for us because he was so well spoken. He was very articulate. And I can remember at this particular meeting that Mark Giambalvo was speaking to the caseload, and how everybody was struggling, and that we weren't able to manage it, and that we were working past our scheduled hours. And I remember Bill Newport just shrugged his shoulders and said, "I don't give a fuck."

Q. He said that explicitly?

A. Explicitly, and it has stuck with me to this day, because I was stung by it. I – I could not believe that he would act in such an unprofessional manner. But it stunned the whole room. It just went quiet.

Ex. Z, Mangan Tr. 182:24-184:20.

31.     Similarly, in Craig Costanzo's experience, it was "pretty clear" that Investigators could not "keep up with this [workload] and get the[] deadlines done." Ex. D, Costanzo Tr. 142:12-143:2. Costanzo recalled telling his supervisor, Chet Janik, that he had "to stay . . . [and] work past the times to try to meet [GEICO's] requirements." *Id.* 50:12-22. He also recalled a conversation with Bill Newport where he told Newport that GEICO was giving Investigators "way too many cases to have the expectation that [they would be] able to do this in eight hours." *Id.* 51:8-23.

32.     As a Major Case Investigator, Plaintiff Margaret Fischer worked primarily from the office or her home and used her computer to run background checks, database reviews, public record searches, and to verify licenses. Ex. T, M. Fischer Tr. 58:17-59:8, 87:2-7, 94:19-96:16.

33.     Plaintiffs submitted 27 declarations in support of their Renewed Motion for Class Certification (*see* Docket Entries ("DE") 56-1 to -27), from the following Plaintiffs and Opt-in Plaintiffs: (1) Thomas Barden; (2) Scott Brady; (3) Albert Brust; (4) Louis Caniglia, Jr.; (5) Louis Caniglia, Sr.; (6) Craig Costanzo; (7) Vito DiNiso; (8) Keith Fischer; (9) Margaret Fischer; (10) Anthony Geraci; (11) Mark Giambalvo; (12) John Gillen; (13) Michael Grey; (14) Charise Jones; (15) Daniel King; (16) Constance Mangan; (17) George McManus; (18) John Moeser; (19) Maria Muñoz; (20) Joseph Neenan; (21) Michael O'Sullivan; (22) Louis Pia; (23) Michael

Reed; (24) Evan Teatum; (25) Ted Wendling; (26) Danielle Ennis; and (27) Mark Sowell.  All of these declarations described unpaid overtime.  DE 56-1 to 56-27.

34.    Scott Brady worked an average of 49 hours a week before March 2020, 71 hours per week from March 2020 through December 2021, and 60 hours per week in 2022.  DE 56-2, Brady Decl. ¶ 12.  Despite working overtime, he only entered – and was only paid for – 7.75 hours per day, Monday through Friday.  *Id.* ¶ 8.  From his conversations with his supervisors, he understood that GEICO only paid overtime for special situations where GEICO had "additional work to offer me," but "did not authorize overtime if I needed to work on my regular caseload." *Id.* ¶¶ 8, 13.

35.    Vito DiNiso worked an average of 44 to 46 hours per week between November 2016 and May 2023.  DE 56-7, DiNiso Decl. ¶ 10.  His supervisor Dara Campbell "frequently reiterated" to him "and other Special Investigators that hours above 38.75 to complete regular case work would not be approved."  *Id.* ¶ 11.  DiNiso regularly complained to his supervisor about the lack of overtime pay and increasing caseload, *id.* ¶ 13, and on November 8, 2022, asked her directly by email: "Is GEICO authorizing overtime to work the excess of cases being assigned?"  Ms. Campbell responded, "No there has been no mention of overtime."  Ex. HHH, November 8, 2022 Email from Supervisor Dara Campbell to Vito DiNisio at P00000065-68.  As a result, DiNiso only entered 7.75 hours a day, five days a week, into GEICO's timekeeping system, regardless of his actual hours worked.  DE 56-7, DiNiso Decl. ¶ 6.

36.    Anthony Geraci worked an average of 42 to 45 hours per week from December 2016 to March 2020, and 45 to 50 hours per week from March 2020 to November 2020.  DE 56-10, Geraci Decl. ¶ 9.  Because Geraci's supervisor told him that overtime needed to be requested and preapproved, and that requesting overtime would negatively impact his productivity ratings, he only entered 7.75 hours per day into GEICO's timekeeping system.  *Id.* ¶ 6.  In Spring 2018, Geraci attended a skip-level meeting with Bill Newport, Michael DeGrocco, and other Special Investigators where investigators raised complaints about caseloads and overtime hours.  *Id.* ¶

12. While the managers acknowledged their complaints, GEICO did not adjust their caseloads.

*Id.*

Dated: September 12, 2025

Respectfully submitted,

By: /s/ Michael J. Scimone
Michael J. Scimone
Sabine Jean
Jarron D. McAllister
Zarka Shabir DSouza
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2005
Email: mscimone@outtengolden.com
Email: sjean@outtengolden.com
Email: jmcallister@outtengolden.com
Email: zdsouza@outtengolden.com

Ryan C. Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: rcowdin@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
Facsimile: (800) 451-0874
Email*:* tkessler@kesslermatura.com
Email: gkaske@kesslermatura.com

* Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Putative Class and Collective*