# Exhibit BB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>     v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>                      Defendant. | Case No. 23 Civ. 2848 (GRB) (ARL) |

## **PLAINTIFF MICHAEL O'SULLIVAN'S RESPONSES TO THE COURT'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 2:**

Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2**:

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 3:**

Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒Off-the-clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

☐Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐Misclassification (Defendant failed to correctly calculate your compensation);

☐Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

 a) Dates

 b) Regular hours worked

 c) Over-time hours worked

2

    d) Pay received versus pay claimed

    e) Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a) Describe the class of employees you seek to include in this action.

b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a) Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b) Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response. Further

---

[1] As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2] The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit. This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs' forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | Hours | Fees |
|---|---|---|
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | Hours | Fees |
|---|---|---|
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ 375.00 | 148.5 | $ 55,687.50 |
| Sabine Jean | SXJ | Associate | $ 450.00 | 56.9 | $ 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ 325.00 | 63.7 | $ 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ 325.00 | 12.7 | $ 4,127.50 |
| | | | Totals: | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
| | | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Michael O'Sullivan.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

**RESPONSE TO INTERROGATORY NO. 12:**

  See attached Declaration of Michael O'Sullivan.

| | |
|---|---|
| Dated: November 6, 2023<br>   New York, NY | */s/Michael J. Scimone*<br>Michael J. Scimone |

Michael J. Scimone
Jarron D. McAllister
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
jmcallister@outtengolden.com
sjean@outtengolden.com

Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
tliusvedman@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

## VERIFICATION

I, Michael O'Sullivan, have read the foregoing **PLAINTIFF MICHAEL O'SULLIVAN'S RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11/08/2023

Signature: *Michael O'Sullivan*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,

　　　　　　Plaintiffs,

　v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,

　　　　　　Defendant.

No. 23 Civ. 02848 (GRB) (ARL)

## DECLARATION OF MICHAEL O'SULLIVAN

I, Michael O'Sullivan, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1. I was employed as a Special Investigator at GEICO from November 2003 to April 2022. I worked remotely throughout my tenure, either in the field or from my home in Merrick, New York, and was assigned to GEICO's Woodbury (now Melville) office in Nassau County, New York.

2. I most recently reported to Brian Portnoy, who was my immediate supervisor. My former immediate supervisors include Toni D'Agata, Dara Campbell, Richard Kilgin, and Nora Leeds. Bill Newport was the manager of the Special Investigation Unit at the GEICO Woodbury office.

3. As a Special Investigator my main job duties were to investigate claims of

suspected insurance fraud. GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud. As part of this process, my job duties included, among other things, reviewing case files; running background checks; conducting social media background checks; examining provider billing reports; driving out to medical facilities, conducting clinic inspections; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about my findings in cases.

4. I left GEICO as a Level 65 Special Investigator. I had no supervisory authority over other Special Investigators and did not have authority to set others' employees schedules, to direct their work, or to hire, fire, or discipline other employees.

5. Since January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week. Prior to January 2020, GEICO classified me and other Special Investigators as non-exempt employees eligible for overtime pay, but they used a different method of payment. My understanding of this payment method, called "premium pay" was that it was less than my regular rate. My regular rate when I left GEICO was $41.84 per hour.

6. I was an opt-in plaintiff in both the *Calderon* and *Vetter v. GEICO* lawsuits, which alleged that Special Investigators should have been entitled to overtime pay, even though we were salaried. After the *Calderon/Vetter* settlements, GEICO reclassified me and other Special Investigators from overtime-exempt to non-exempt employees.

**My Schedule and Unpaid Wages and Overtime**

7. As a non-exempt employee, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis.

8. I only entered 7.75 working hours per day, five days a week, regardless of how many hours I actually worked. I only entered this amount of time because I understood based on conversations with my supervisor that GEICO would not authorize overtime pay "just for typing," meaning writing my case reports as required by my job.

9. GEICO did not provide me with an official schedule. I usually worked from 8:30 A.M. to 6:00 or 6:30 P.M., and a few times a month I would work as late as 7:30 P.M. or 8:00 P.M. I worked about 47.5 to 50 hours a week on average.

10. From December 2016 to April 2022, my regular hours worked were approximately 47.5 to 50 hours per week, and my last regular rate of pay was $41.84 per hour. During nearly all of this time, I entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($1,621.30 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $86,801.29 in unpaid wages. This is based on my best recollection over a period of several years and my last regular rate of pay, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise. This amount does not include liquidated damages, which would add another $86,801.29 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as provided by law.

**GEICO's Overtime Pay Practices**

11. GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75. I recall sometime after January 2020 I asked my supervisor Brian Portnoy if GEICO would approve overtime one week. However, Brian told me to just complete what work I could during the 38.75 hours. I still ended up working overtime to complete the work

assigned to me, and did not submit the hours I worked because GEICO did not approve my overtime work.

12. GEICO authorized me to work overtime only if I agreed to take on additional cases, such as a social media investigation. I remember GEICO offered me overtime pay to work on social media cases one year in December, because GEICO wanted these cases completed by the end of the year.

**GEICO's Performance Ratings**

13. GEICO also had a variety of performance metrics that I was required to meet to remain in good standing. To the best of my recollection GEICO generally evaluated me based on how often I made an entry in a case report, how many days I took to close a case, and how many cases I completed within a month. These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines.

14. My best understanding of GEICO's performance metrics was that they were tied to the number of hours I reported. I received more favorable ratings related to my productivity metrics if I completed more work within the 7.75 hours per day or 38.75 hours per week. If I reported working more hours, that would negatively my performance ratings. When GEICO paid me at the "premium pay" rate for overtime hours, this especially deterred me from entering the hours I worked. This is because more hours entered would increase my productivity requirement and so decrease my ratings, all while I was paid a low pay rate for that overtime.

15. GEICO's performance metrics and ratings determined whether I was entitled to an annual raise. If I failed to meet them, they could also lead to disciplinary action such as being put on a coaching plan that could eventually lead to termination. I remember that GEICO placed

me on a coaching plan because I fell behind on case documentation metrics. I also recall one year I did not receive an annual raise due to my ratings.

**Overtime Hours**

16. As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.

**Other Special Investigators**

17. I worked with approximately four to six other Special Investigations in my Medical team, including Daniel King, Pat Ormberger, Eric David, and Brad Waltman.

18. I also know that other Special Investigators worked many overtime hours off the clock each week without receiving overtime pay. I know this because we had regular conversations about our work and the long hours we were working.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/08/2023
Merrick, New York

*Michael O'Sullivan*
Michael O'Sullivan

- 5 -