# Exhibit DD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | Case No. 23 Civ. 2848 (GRB) (ARL) |

**PLAINTIFF LOUIS PIA'S RESPONSES TO THE COURT'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 2:**

Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2**:

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 3:**

Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒Off-the-clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

☐Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐Misclassification (Defendant failed to correctly calculate your compensation);

☐Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

   a) Dates

   b) Regular hours worked

   c) Over-time hours worked

    d)  Pay received versus pay claimed

    e)  Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a) Describe the class of employees you seek to include in this action.

b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a) Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b) Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response. Further

---

[1] As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2] The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit. This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs' forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | Hours | Fees |
|---|---|---|
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | Hours | Fees |
|---|---|---|
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ 375.00 | 148.5 | $ 55,687.50 |
|---|---|---|---|---|---|
| Sabine Jean | SXJ | Associate | $ 450.00 | 56.9 | $ 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ 325.00 | 63.7 | $ 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ 325.00 | 12.7 | $ 4,127.50 |
|  |  |  | Totals: | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
|  |  | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Louis Pia.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

**RESPONSE TO INTERROGATORY NO. 12:**

    See attached Declaration of Louis Pia.

| | |
|---|---|
| Dated: November 6, 2023<br>New York, NY | */s/Michael J. Scimone*<br>Michael J. Scimone<br><br>Michael J. Scimone<br>Jarron D. McAllister<br>Sabine Jean<br>**OUTTEN & GOLDEN LLP**<br>685 Third Avenue, 25th Floor<br>New York, NY 10017<br>Telephone: 212-245-1000<br>Facsimile: 646-509-2060<br>mscimone@outtengolden.com<br>jmcallister@outtengolden.com<br>sjean@outtengolden.com<br><br>Theanne Liu Svedman<br>**OUTTEN & GOLDEN LLP**<br>1225 New York Ave NW, Suite 1200B<br>Washington, DC 20005<br>Telephone: (202) 847-4400<br>Facsimile: (202) 847-4410<br>tliusvedman@outtengolden.com<br><br>Troy L. Kessler<br>Garrett Kaske<br>**KESSLER MATURA P.C.**<br>534 Broadhollow Road, Suite 275<br>Melville, New York 11747<br>Telephone: (631) 499-9100<br>Facsimile: (631) 499-9120<br>tkessler@kesslermatura.com<br>gkaske@kesslermatura.com<br><br>*Attorneys for Plaintiffs and the Putative Class and Collective* |

## VERIFICATION

I, Louis Pia, have read the foregoing **PLAINTIFF LOUIS PIA'S RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11/06/2023

Signature: *Louis Pia*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,<br><br>                   Defendant. | No. 23 Civ. 02848 (GRB) (ARL) |

**DECLARATION OF LOUIS PIA**

I, Louis Pia, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1. I was employed as a Special Investigator at GEICO from September 2003 until November 2022, when I retired. I worked remotely, either in the field or from my home in Plainview, New York, throughout my tenure and was assigned to GEICO's Woodbury (now Melville) office in Nassau County, New York.

2. I reported to Gerard Cassagne, who was my immediate supervisor. Bill Newport was the manager of the Special Investigation Unit at the GEICO Woodbury office.

3. As a Special Investigator my main job duties were to investigate claims of suspected fraud. GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud. As part of this process, my job duties

included, among other things, reviewing case files; running background checks; examining provider billing reports; driving out to accident scenes; monitoring medical facilities; recording statements and conducting face-to-face interviews; gathering evidence; interviewing witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about my findings in cases.

4. I left GEICO as a Level 66 Special Investigator. As a Level 66 Lead Investigator, in addition to having the same regular investigative responsibilities as other Special Investigators, I occasionally trained new Special Investigators. I had no supervisory authority over other Special Investigators and did not have authority to set other employees' schedules, to direct their work, or to hire, fire, or discipline other employees.

5. Since January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week. Prior to January 2020, GEICO classified me and other Special Investigators as non-exempt employees eligible for overtime pay, but they used a different method of payment. The exempt classification and overtime payment method during this period confused me.

6. I was not an opt-in plaintiff in the *Calderon v. GEICO* or *Vetter v. GEICO* lawsuits. Following the *Calderon* and *Vetter* settlements, GEICO reclassified me and other Special Investigators from overtime-exempt to non-exempt employees.

**My Schedule and Unpaid Wages and Overtime**

7. As a non-exempt employee, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis. All timesheets were approved by my supervisor, Gerard Cassagne.

8. I only reported up to 38.75 hours per week, or 7.75 hours a day, five days a week, in the timekeeping program because I understood based on statements from my supervisors that GEICO would not approve overtime, except in extreme cases (e.g., catastrophe assignments like major hurricanes). I recall my supervisor Gerard Cassagne discussed with me the norms of everyone working overtime off the clock to keep up with GEICO's performance metrics, and he said that the only way the practice would stop is if everyone collectively stopped working after 7.75 hours per day and allowed their cases to "go red," meaning the cases would receive poor ratings. Accordingly, I only entered working 7.75 hours per day, five days a week regardless of how many hours I actually worked.

9. I did not have a set schedule during my tenure, but was required to work 7.75 hours per day, five days a week. From approximately late 2016 to approximately March 2020, I worked approximately 10 hours each day Monday through Friday, and another 4-6 hours on weekends to keep up with my work. I worked about 55 hours a week on average.

10. Starting in March 2020, the COVID-19 pandemic halted field operations. GEICO assigned cases using a point-based system. GEICO inaccurately assumed that remote work could be completed in substantially less time than in-person field work, so it assigned remote cases fewer points. Because remote cases were given a lesser point value, GEICO increased my caseload significantly after March 2020. In or around April 2020, I recall being assigned approximately 70 cases, in contrast to a monthly average of approximately 30 cases in 2018/19. A couple months after the pandemic started, my supervisor Gerard Cassagne told me that if I wanted to keep my GEICO-owned car, I had to go out in the field to take pictures and visit locations for my cases. This was because less field work was being done during the pandemic, so GEICO was considering taking back its cars unless Special Investigators used them.

However, I still had to work most of my cases remotely, which were still assigned fewer points so there were more cases. My overtime hours increased substantially due to the increased caseload from remote cases, and the time it took to conduct field work because I did not want to lose the car. As a result, I recall working approximately 65 hours a week on average from March 2020 to November 2021.

11. GEICO returned to normal field operations in or about November 2021. My overtime hours and caseload decreased slightly as a result because cases were not treated as lower-value remote cases, but I still had to work overtime to keep up with my caseload.

12. From December 2016 to March 2020, my regular hours worked were approximately 55 hours per week; from March 2020 to November 2021 my regular hours worked were approximately 65 hours per week; and from December 2021 to December 2022, my regular hours worked were approximately 55-60 hours per week. My last regular pay rate was $54.37 per hour. During nearly all of this time, I entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($2,106.84 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $272,657.62 in unpaid wages. This is based on my best recollection over a period of several years and my last regular rate of pay, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise. This amount does not include liquidated damages, which would add another $272,657.62 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as provided by law.

**GEICO's Overtime Pay Practices**

13. GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75. Gerard Cassagne, my supervisor, frequently reiterated to me and other Special Investigators that we had to get all of our work done in 38.75 hours and that an inability to do so may lead to lower ratings, coaching, and possibly termination.

14. GEICO authorized me to work overtime only if I agreed to take on additional cases, covered for Special Investigators out on leave, or worked on a special project, such as a social media investigation or catastrophe. For example, GEICO told me that it would authorize overtime from approximately May-August 2020 if I worked on additional cases/took on cases from a Special Investigator who was out on leave. I worked on a couple of additional cases and received overtime for time worked on those cases, but did not receive pay for additional overtime hours worked on my own cases during that period.

**GEICO's Performance Ratings**

15. GEICO had a variety of performance metrics that I was required to meet to remain in good standing. These performance metrics and ratings changed constantly, but to the best of my recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, and how many cases I completed within a month. Some of the case assignments did not allow us to meet our goals. For example, I was sometimes unable to meet unattainable deadlines, such as immediately speaking with a claims adjuster, because the case was assigned too late in the week to reach the adjuster. These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines, or make up for missed goals by meeting other

metrics such as scoring higher on the quality of my case work. However, if I was unable to meet a goal, I could not fully make up for it even if I performed well on other metrics.

16. My best understanding of GEICO's performance metrics was that they were tied to the number of hours I reported. I received more favorable ratings if I completed more work within the 7.75 hours per day or 38.75 hours per week. If I reported working more hours, I understood that would negatively affect my performance ratings.

17. GEICO's performance metrics and ratings determined whether I was entitled to an annual raise. My supervisor was given a pool of money for raises at the end of each year, which was divided between the Special Investigators on each team. Higher rated team members received a higher raise percentage increase each year. If I failed to meet these goals, I could be subject to disciplinary action such as being put on a coaching plan that could eventually lead to termination. I recall one Special Investigator, Stevie Banks, was put on a coaching plan because he regularly ended his workday around 4:30 P.M. instead of working overtime off the clock, which caused him to miss some of his performance goals.

**Special Investigators' Caseloads**

18. I recall occasionally attending team meetings with other Special Investigators and our supervisor throughout 2018, after the prior lawsuits. At these meetings, we consistently asked if overtime pay would be available considering the long hours we worked and our large caseloads. Our supervisor informed us that GEICO would not approve our overtime requests.

19. GEICO was well aware that the work it required Special Investigators to perform required more than 40 hours per week to complete. In or about 2008 to 2010, GEICO conducted an internal time study of the work done by Special Investigators through the Competitive Advantage Leadership Group ("CALG") department. Employees conducting the study were

tasked with shadowing Special Investigators as they performed their work and made recommendations about work allocation based on their findings. I was not shadowed directly for this study. During this time, I had to take detailed notes about the time it took me to complete tasks for each case I worked on. I do not recall the target caseload recommended by the CALG study, but I remember that it was far below the actual workload handled by Special Investigators.

**Overtime Hours**

20. As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.

**Other Special Investigators**

21. I worked with approximately 10 other Special Investigations in my team, including Maria Munoz, Al Brust, Keith Fischer, Jeff Lewonka, Kevin Dux, and Scott Brady.

22. I also know that other Special Investigators worked many overtime hours off the clock each week without receiving overtime pay. I know this because we had regular team meetings and discussed the duties we performed and the long hours we were working. In addition, there was an internal messaging system that identified whether people were online working. I often saw people online in the evenings and on the weekends.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/06/2023
Plainview, New York

*Louis Pia*
Louis Pia