# EXHIBIT 90

```
 1   UNITED STATES DISTRICT COURT

 2   EASTERN DISTRICT OF NEW YORK
     ---------------------------------------X
 3   KEITH FISCHER, MICHAEL O'SULLIVAN,
     JOHN MOESER, LOUIS PIA, THOMAS
 4   BARDEN, CONSTANCE MANGAN, and
     CHARISE JONES, individually and on behalf
 5   of all others similarly situated,

 6            Plaintiffs,

 7                                    Case No.:
                                      2:23 Civ. 2848
 8                                    (GRB) (ARL)
          -against-
 9
     GOVERNMENT EMPLOYEES INSURANCE
10   COMPANY D/B/A GEICO,

11            Defendants.
     ---------------------------------------X
12

13
     DEPOSITION of MARGARET A. FISCHER
14

15
          December 19, 2024
16

17        New York, New York

18

19

20

21

22   Reported By:

23   Marina Dubson

24   Job #: J12144278

25
```



```
                DATE: December 19, 2024

                TIME: 10:00 a.m.


       DEPOSITION of MARGARET A. FISCHER, an
opt-in Plaintiff herein, taken by the
Defendant, pursuant to Federal Rules of
Civil Procedure, and Notice, held at the
Duane Morris LLP, 1540 Broadway, 14th
Floor, New York, New York 10036, at the
above-mentioned date and time, before
MARINA DUBSON, a Notary Public of the State
of New York.
```



```
 1   APPEARANCES:

 2


 3   OUTTEN & GOLDEN, LLP
     Attorney for Plaintiffs
 4   685 Third Avenue, 25th Floor,
     New York, New York 10017
 5   (212) 245-1000
     BY: SABINE JEAN, ESQ.
 6       Sjean@outtengolden.com

 7       ZARKA DSOUZA, ESQ.
         Zdesouza@outtengolden.com
 8


 9


10   DUANE MORRIS, LLP
     Attorney for Defendant
11   1540 Broadway, 14th Floor,
     New York, New York 10036
12   (212)471-1856
     BY: GREG TSONIS, ESQ.
13   Gtsonis@duanemorris.com

14


15
     Gil Peretz, Shereck Video, videographer,
16

17

18

19

20

21

22

23

24

25
```



```
 1        IT IS HEREBY STIPULATED AND AGREED,
 2   by and between the attorneys for the
 3   respective parties, as follows:
 4
 5   THAT all objections, except as to the form
 6   of the questions, shall be reserved to the
 7   time of the trial;
 8
 9   THAT the within examination may be signed
10   and sworn to before any Notary Public with
11   the same force and effect as if signed and
12   sworn to before the Court;
13
14   THAT filing of the original transcript of
15   the examination is waived.
16
17
18
19
20
21
22
23
24
25
```



```
 1              M. A. Fischer
 2         THE REPORTER:  Are you ordering
 3   a copy of this transcript?
 4         MS. JEAN:  Yes, copy.
 5         MR. TSONIS:  Regular turnaround
 6   final, no rough.
 7                  XXXX
 8         THE VIDEOGRAPHER:  Good
 9   morning.  We are on the record, and
10   the time now is 10:12 a.m.
11         Today's date is December 19,
12   2024.
13         This is media one in the video
14   deposition of Ms. Margaret Fischer --
15   one second -- Margaret Fischer, in
16   the matter of Government Employee
17   Insurance Company -- I'm sorry.
18         In the matter of Keith Fischer
19   versus Government Employee Insurance
20   Company, index number 2:23 Civ. 2848
21   (GRB) (ARL).
22         My name is Gil Peretz.  I am
23   the legal videographer with Shereck
24   Video in association with Esquire.
25         Today we're at the offices of
```



```
 1         M. A. Fischer
 2   Duane Morris, LLC, located at 1540
 3   Broadway on the 14th floor in New
 4   York City, New York.
 5         Would counsel please identify
 6   yourself and state whom they
 7   represent.
 8         MS. DSOUZA:  This is Zarka
 9   Dsouza from Outten & Golden on behalf
10   of plaintiffs.
11         Joining me today is my
12   colleague, Sabine Jean, also from
13   Outten & Golden, also representing
14   the plaintiffs.
15         MR. TSONIS:  Gregory Tsonis
16   from Duane Morris, LLC, on behalf of
17   defendant Geico.
18         THE VIDEOGRAPHER:  Thank you.
19         The court reporter with us
20   today is Marina Dubson with Esquire.
21         Will the court reporter please
22   swear in the witness.
23         (Whereupon, the witness was
24   sworn in by the Court Reporter.)
25                XXXX
```



```
 1                    M. A. Fischer
 2   M A R G A R E T   A.   F I S C H E R,
 3         called as a witness, having been
 4         first duly sworn by a Notary Public
 5         of the State of New York, was
 6         examined and testified as follows:
 7   EXAMINATION
 8   BY MR. TSONIS:
 9         Q.    Good morning, Ms. Fischer.
10         A.    Good morning.
11         Q.    Can you please state and spell
12   your name for the record.
13         A.    It's Margaret, M-A-R-G-A-R-E-T,
14   Fischer, F-I-S-C-H-E-R.
15         Q.    All right.  And have you ever
16   gone by any other names?
17         A.    Peggy.
18         Q.    Peggy.  Any other last names?
19         A.    My maiden name is Meehan,
20   M-E-E-H-A-N.
21         Q.    And, Ms. Fischer, what's your
22   current address?
23         A.    [REDACTED],
24   [REDACTED]
25         Q.    So, my name -- as I introduced
```



```
 1                    M. A. Fischer
 2             MS. DSOUZA:  I'd just like
 3        to -- Counsel, could you just wait
 4        for the witness to complete her
 5        answer before you ask the next
 6        question?
 7             MR. TSONIS:  Sure.
 8   BY MR. TSONIS:
 9        Q.   I think you said that you would
10   be assigned cases by your supervisor; is
11   that right?
12        A.   Correct.
13        Q.   Approximately how many cases
14   would you be assigned in a month?
15        A.   I believe four.
16        Q.   Four cases per month?
17        A.   I believe so.
18        Q.   All right.  And what kinds of
19   things would you have to do to investigate
20   those cases?
21        A.   I would have to run background
22   searches.  I would have to run data
23   searches, review billing, review public
24   records, review previous cases through our
25   case system.  I would assign clinic
```



```
1                     M. A. Fischer
2         A.    Yes.
3         Q.    Okay.  Did you have some sort
4    of expectation or metric that required you
5    to log a certain number of activities each
6    day?
7         A.    Not a number of activities, but
8    we had a goal that we needed to be -- in
9    the case, we had metrics set up how many
10   days you needed to be in the case.
11        Q.    Are you talking about a case
12   going red if it was pending for too long?
13        A.    That's one of the things, yes.
14        Q.    And what are other ones?
15        A.    Well, every time when you get a
16   new case, you have parameters that you have
17   to cover within a certain amount of time.
18   And then you set up a diary, and then you
19   need to be in that case every 15 days, we
20   had to at that point.
21              So, you would set up a reminder
22   diary, and that would come up on your
23   calendar to remind you that, okay, it's
24   15 days.  You need to update this.
25              My cases would go on for a
```



```
 1                  M. A. Fischer
 2   period of time.  They weren't once-and-done
 3   quick cases.
 4         Q.    Sure.
 5         A.    Yeah.
 6         Q.    So, in terms of, you know, the
 7   time it takes to close one of your cases
 8   versus cases handled by either field or
 9   desk investigators, your cases would take
10   substantially longer?
11         A.    Months.
12         Q.    There were some that even
13   lasted years?
14         A.    There could be, yeah.
15         Q.    Okay.  So, I guess, knowing
16   that you referenced having to update, you
17   know, a case every 15 days; is that right?
18         A.    Yes.
19         Q.    All right.  Besides that 15-day
20   requirement, was there any other, you know,
21   timeline you had to meet in terms of
22   entries you had to make in SICM?
23         A.    In the beginning of a case when
24   you opened it, there were -- there was
25   standards of things that needed to be
```



1                    M. A. Fischer
2    BY MR. TSONIS:
3         Q.    Okay.  Typically, it was more
4    pursuing, I guess, you know, the payback of
5    money from these entities?
6         A.    Correct.
7         Q.    All right.  If there were
8    follow-up activities like an examination
9    under oath, would that be the same case
10   that you were working on or a new case?
11        A.    The examination under oath
12   would be in that case, in my original case.
13   I would sometimes attend it; and if not,
14   the attorneys would give me their reports
15   on it.  I would summarize that, and that
16   would go into part of the case file.
17        Q.    Okay.  So, in terms of your
18   case life, maybe it will make more sense if
19   I refer to the other job titles.
20              So, do you have an
21   understanding as to what a field or a desk
22   investigator does once they have
23   accumulated enough evidence to make a
24   determination as to whether a case does or
25   does not present indications of fraud?



```
 1                    M. A. Fischer
 2        A.    As the day would come to an
 3   end, I would see what needed to still be
 4   accomplished in that day to fulfill my
 5   diary, and I would be catching up, making
 6   sure that everything was -- that I had to
 7   accomplish in that day was done.
 8        Q.    Okay.
 9        A.    To the best of my ability.
10        Q.    And, I guess, is that things
11   that are -- that you had to do to complete
12   a diary entry that day?
13        A.    Some of it was, yes.
14        Q.    Okay.  So, I guess, you know,
15   if it's due the next day or the day
16   after -- well, step back for a moment.
17              You said the diary sort of
18   entries were every 15 days you had to
19   submit, right?
20        A.    Right.
21        Q.    Is that 15 business days or 15
22   real-time days?
23        A.    I think it was 15 business
24   days.
25        Q.    Okay.  So, essentially, three
```



1                M. A. Fischer
2    half hours a week.
3         Q.    Okay.  And that includes the
4    meal period?
5         A.    Yes.
6         Q.    All right.  So, we say in
7    paragraph eight is when, essentially, COVID
8    started, right?
9         A.    Yes.
10        Q.    And you write here in the
11   second full sentence:  I was specifically
12   assigned to work on cases of medical fraud,
13   and Geico kept my caseload steady.  So,
14   during this period, my overtime hours
15   slightly decreased.
16              Let me pause there for a
17   second.
18              You were always assigned to
19   work on cases of medical fraud during this
20   time period, right?
21        A.    Correct.
22        Q.    The 2016 to retirement time
23   period?
24              And you're saying Geico kept
25   your caseload steady, right?



```
 1                   M. A. Fischer
 2       A.    To the COVID time and then they
 3   stopped.  We weren't getting new cases.
 4       Q.    So, when you say, Geico kept my
 5   caseload steady, is what you mean, I was
 6   not being assigned new cases?
 7       A.    Correct.
 8       Q.    Okay.  So, without any new
 9   cases being assigned, you were still
10   working overtime, you're saying?
11       A.    Yes.
12       Q.    And that was just from the
13   existing caseload you had?
14       A.    That was also because every day
15   I had to be on at 9:00 a.m.  I had to build
16   my station every morning.  I had to set up
17   my computers, my monitors, my -- get
18   everything set online, ready to go.  I had
19   to be -- 9:00 o'clock, I had to be up and
20   running every morning, so that was time
21   before.  And at the end of my shift, I had
22   to break everything down and -- and also I
23   was working on stuff.  There was stuff I
24   would work extra on.
25       Q.    So, if I'm understanding
```



1                M. A. Fischer
2           MR. TSONIS:  You are
3       dangerously close to crossing the
4       line now of coaching the witness.
5       You're entitled to object --
6           [Crosstalk.]
7           MR. TSONIS:  I'm entitled to
8       explore the witness's knowledge in an
9       area when she may have knowledge
10      about another plaintiff in this case.
11      It's no different than if she was
12      close friends with somebody else and
13      I was asking about that.
14   BY MR. TSONIS:
15      Q.   I'll ask my question again, Ms.
16   Fischer.
17           Do you have an understanding as
18   to how your husband's caseload changed
19   during the time in or about March 2020?
20      A.   Yes.
21      Q.   Okay.  And what's your
22   understanding?
23      A.   That it increased.
24      Q.   Do you have an understanding as
25   to how much it increased?



1                M. A. Fischer
2        A.   A lot.
3        Q.   Okay.  As a major case
4    investigator, we said that your caseload
5    did not increase, right?
6        A.   Correct.
7        Q.   In fact, your caseload
8    decreased because you weren't assigned new
9    cases?
10       A.   Correct.
11       Q.   Okay.  If you continue on in
12   that paragraph, bottom of page 5 going onto
13   page 6, it says:  As a result, to keep up
14   with his escalating workload and Geico's
15   demanding performance metrics, Fischer
16   typically began working at approximately
17   6:00 a.m. and finished his work for the day
18   at approximately 11:00 p.m., accounting for
19   some gaps in his workday for meals and
20   other self-care from March 2020 through
21   April 2020 -- plaintiff Fischer worked
22   between approximately 60 and 75 hours per
23   week in most full workweeks, i.e., weeks
24   with no days lost to holidays or other time
25   off.



```
 1          M. A. Fischer
 2  data regarding time entries as well
 3  as other ways of keeping track of
 4  time.
 5          MS. DSOUZA:  But we will do, as
 6  you pointed out, we will probably
 7  follow up in writing and confer on
 8  this.
 9          MR. TSONIS:  Right.  I think
10  that's probably the most productive.
11  Thank you.
12          MS. DSOUZA:  Thank you.
13          (Page break to accommodate
14  jurat.)
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                M. A. Fischer
 2         THE VIDEOGRAPHER:  This
 3    concludes the video deposition of
 4    Ms. Margaret Fischer.  The time now
 5    is approximately 4:48 p.m.  We are
 6    off the record.  Thank you, everyone.
 7         (Whereupon, at 4:50 P.M., the
 8    Examination of this Witness was
 9    concluded.)
10
11
                       _____
12                      MARGARET. A FISCHER
13
14  Subscribed and sworn to before me
15  this _____ day of _____ 20____.
16
    _____
17      NOTARY PUBLIC
18
19
20
21
22
23
24
25
```



800.211.DEPO (3376)
*EsquireSolutions.com*

```
 1                  M. A. Fischer
 2               C E R T I F I C A T E
 3
 4   STATE OF NEW YORK       )
                             : 
 5   COUNTY OF RICHMOND      )
 6
 7          I, MARINA DUBSON, a Notary Public for
 8   and within the STATE OF NEW YORK, do hereby
 9   certify:
10          That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14          I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19          IN WITNESS WHEREOF, I have hereunto
20   set my hand this 19th day of December 2024.
21
22
23          _____
                     MARINA DUBSON
24
25
```

