# Exhibit 22

1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF NEW YORK
2

KEITH FISCHER, MICHAEL          )
3  O'SULLIVAN, JOHN MOESER,      )
LOUIS PIA, THOMAS BARDEN,       )
4  CONSTANCE MANGAN, and         )
CHARISE JONES,                  )
5  individually and on behalf    )
of all others similarly        )
6  situated,                     )
                                )
7          Plaintiffs,           )   Case No:
                                )   2:23-Civ. 2848
8        -vs-                    )   (GRB)(ARL)
                                )
9  GOVERNMENT EMPLOYEES          )
INSURANCE COMPANY d/b/a         )
10  GEICO,                        )
                                )
11          Defendant.           )

12         The videotaped videoconference deposition of

13  LOUIS CANIGLIA, JR., called for examination, taken

14  pursuant to the Federal Rules of Civil Procedure of

15  the United States District Courts pertaining to the

16  taking of depositions, taken remotely before ALICE

17  M. SCHWINGER, CSR NO. 84-2913, a Certified

18  Shorthand Reporter of the State of Illinois, on the

19  17th day of January, A.D. 2025, commencing at 10:00

20  a.m. Central Standard Time.

21

22

23

24



```
 1   APPEARANCES:

 2         OUTTEN & GOLDEN, LLP,

 3         (685 Third Avenue, 25th Floor,

 4         New York, New York 212/245-1000,

 5         516/788-7159), by:

 6         MR. JARRON D. McALLISTER,

 7              appeared on behalf of the Plaintiffs;

 8

 9         DUANE MORRIS LLP,

10         (190 South LaSalle Street, Suite 3700,

11         Chicago, Illinois 60603,

12         312/499-6700), by:

13         MR. GREGORY TSONIS,

14              appeared on behalf of the Defendant;

15

16

17

18

19

20

21

22   REPORTED BY:  ALICE M. SCHWINGER, CSR

23              CSR No. 84-2913.

24
```



| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  We are now on the record. | 10:01:54 |
| 2 | The time is 10:00 a.m. Central Time on January 17, | 10:01:55 |
| 3 | 2025.  This begins the videoconference deposition | 10:01:59 |
| 4 | of Louis Caniglia, Jr., taken in the matter of | 10:02:03 |
| 5 | Keith Fischer, et al., v. Government Employees | 10:02:07 |
| 6 | Insurance Company.  This case is filed in the | 10:02:11 |
| 7 | United States District Court, Eastern District of | 10:02:14 |
| 8 | New York, Case No. 2:23 CIV 2848. | 10:02:16 |
| 9 | My name is Brent Jordan.  I'm your | 10:02:23 |
| 10 | remote videographer today.  The court reporter is | 10:02:26 |
| 11 | Alice Schwinger.  We are representing Esquire | 10:02:29 |
| 12 | Deposition Solutions. | 10:02:31 |
| 13 | Will counsel present please identify | 10:02:32 |
| 14 | yourself and state whom you represent. | 10:02:34 |
| 15 | MR. McALLISTER:  Jarron McAllister for | 10:02:36 |
| 16 | plaintiffs from Outten and Golden representing | 10:02:39 |
| 17 | Mr. Caniglia in this deposition today. | 10:02:42 |
| 18 | MR. TSONIS:  Greg Tsonis from Duane Morris, | 10:02:45 |
| 19 | LLP, representing defendant GEICO. | 10:02:48 |
| 20 | THE COURT REPORTER:  My name is Alice | 10:02:51 |
| 21 | Schwinger, Illinois Certified Shorthand Reporter. | |
| 22 | This deposition is being held via videoconferencing | |
| 23 | equipment.  The witness and reporter are not in the | |
| 24 | same room.  The witness will be sworn in remotely | |



```
 1  pursuant to agreement of all parties.  The parties

 2  stipulate that the testimony is being given as if

 3  the witness was sworn in person.                         10:03:23

 4              (WHEREUPON, the witness was duly

 5              sworn.)

 6              LOUIS CANIGLIA, JR.,

 7  called as a witness herein, having been first duly

 8  sworn, was examined and testified as follows:

 9              EXAMINATION

10  BY MR. TSONIS:

11     Q.    Good morning, Mr. Caniglia.                      10:03:24

12     A.    Hello.                                           10:03:26

13     Q.    Can you please state and spell your name         10:03:27

14  for the record?                                          10:03:29

15     A.    Yeah, my name is Louis Caniglia.  That's        10:03:29

16  L-o-u-i-s, last name is Caniglia, C-a-n-i-g-l-i-a.       10:03:33

17     Q.    All right.  What's your current address?        10:03:42

18     A.    ████████████████████████                         10:03:43

19  ████████████████████████.                                10:03:49

20     Q.    Thank you.  And, Mr. Caniglia, as I             10:03:52

21  said, my name is Greg Tsonis.  I'm a lawyer for          10:03:55

22  GEICO, and I'll be taking your deposition today.         10:03:58

23              Have you ever been deposed before?           10:04:02

24     A.    No.                                              10:04:03
```



1    investigation unit while you worked for GEICO;          10:24:49

2    right?                                                  10:24:51

3          A.    That's correct, yes.                        10:24:51

4          Q.    Besides senior outside security             10:24:52

5    investigator, did you hold any other job titles?        10:24:57

6          A.    With GEICO?                                  10:25:00

7          Q.    Yes.                                         10:25:03

8          A.    I'm sorry.  Yes, I was an auto damage        10:25:04

9    adjuster prior to becoming an investigator.             10:25:07

10         Q.    Okay.  And when were you an auto damage      10:25:10

11   adjuster?                                                10:25:13

12         A.    Started approximately April of 2011.         10:25:13

13         Q.    When did you move from auto damage           10:25:22

14   adjuster to SIU?                                         10:25:25

15         A.    I'm going to say approximately four or       10:25:27

16   five years later, so 2015ish, about.                    10:25:29

17         Q.    Okay.  And since you transferred into        10:25:41

18   SIU -- well, you transferred into SIU as a senior        10:25:47

19   field security investigator?                             10:25:53

20         A.    That's correct, yes.                         10:25:54

21         Q.    Okay.  Did you hold any other job titles     10:25:55

22   in SIU before you left GEICO?                            10:25:58

23         A.    No.                                          10:26:02

24         Q.    And I think you said Gerry Cassagne was      10:26:04



```
 1   one of your supervisors; right?                    10:26:09

 2        A.    Yes.                                     10:26:11

 3        Q.    Was he your supervisor initially when   10:26:12

 4   you joined SIU?                                     10:26:15

 5        A.    Yes, that's correct.  Yes.              10:26:16

 6        Q.    And did he continue being your          10:26:17

 7   supervisor until about 2021?                        10:26:19

 8        A.    I'm going to say yeah, I'll agree with  10:26:22

 9   that approximately, yes.                            10:26:25

10        Q.    Sure.  And we'll -- we'll get more      10:26:26

11   precise with -- with dates later.  I'm just trying 10:26:27

12   to get the lay of the land now.                     10:26:30

13             After Mr. Cassagne, was Toni D'Agata     10:26:32

14   your supervisor?                                    10:26:36

15        A.    Yes.                                     10:26:37

16        Q.    How long was she your supervisor for?   10:26:37

17        A.    I'm going to say approximately a year   10:26:40

18   and a half to two years.                            10:26:43

19        Q.    Okay.  And then after that -- go ahead. 10:26:45

20        A.    After that was Mr. Aniolowski and then  10:26:48

21   Ms. Bishop.                                         10:26:56

22        Q.    Is that Theresa Bishop?                  10:26:57

23        A.    Correct, yes.                            10:26:59

24        Q.    Okay.  When did you leave GEICO?        10:27:00
```



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      28

```
 1        A.    December 31, 2023.                        10:27:04

 2        Q.    Why did you leave GEICO?                   10:27:07

 3        A.    You know, I -- life.  I mean, you move     10:27:11

 4   on, seeking new things.  It was a personal matter.   10:27:16

 5   I just -- personally, meaning like I just wanted to  10:27:25

 6   move on to do something else.  I found another       10:27:28

 7   opportunity that I wanted to take.                    10:27:30

 8        Q.    Okay.  So I guess when you left GEICO,     10:27:32

 9   did you leave with another job already lined up?     10:27:35

10        A.    Yeah.  That's fair to say, yes.            10:27:38

11        Q.    Okay.  And what was that job?             10:27:41

12        A.    I work for Plymouth Rock Assurance,        10:27:43

13   Woodbridge, New Jersey.                               10:27:47

14        Q.    Do you currently work there?               10:27:52

15        A.    Yes.                                        10:27:54

16        Q.    What was your start date at Plymouth       10:27:54

17   Rock?                                                 10:28:02

18        A.    January 2, 2024.  Best of my               10:28:02

19   recollection, I believe that's correct.              10:28:04

20        Q.    Do you work with Al Brust?                10:28:06

21        A.    Al Brust.  It sounds familiar.             10:28:09

22        Q.    Well, he's a former GEICO employee and     10:28:13

23   also works at Plymouth Rock.                          10:28:17

24        A.    Al Brust.  The name sounds familiar, but  10:28:21
```



LOUIS CANIGLIA, JR.                                January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    42

```
 1   BY THE WITNESS:                                        10:43:06

 2       A.    I can't recall.  Workday, I might            10:43:06

 3   have -- there might have been a prior system before    10:43:10

 4   Workday.                                               10:43:10

 5   BY MR. TSONIS:                                         10:43:13

 6       Q.    That's what -- I was going to get to it.     10:43:13

 7   At some point, the timekeeping sort of system          10:43:16

 8   changed to Workday; right?                             10:43:19

 9       A.    Yes.                                         10:43:21

10       Q.    Okay.  And I recognize that Workday even     10:43:21

11   underwent a change, so I'll clarify.  You know,        10:43:25

12   when you first worked in SIU and you used Workday,     10:43:28

13   how frequently would you enter in your time?           10:43:32

14       A.    It was biweekly.                             10:43:35

15       Q.    Are you sure that it wasn't on a weekly      10:43:38

16   basis?                                                 10:43:41

17       MR. McALLISTER:  Objection.                        10:43:42

18   BY THE WITNESS:                                        10:43:43

19       A.    I'm -- from what I can recall, it was        10:43:43

20   biweekly.  It might have been weekly, but it wasn't    10:43:47

21   daily until later on --                                10:43:51

22   BY MR. TSONIS:                                         10:43:51

23       Q.    Okay.                                        10:43:51

24       A.    -- in terms of Workday, putting in time.     10:43:54
```



| | | |
|---|---|---|
| 1 | Q.   All right.  And at some point, the | 10:52:31 |
| 2 | Workday system, your timekeeping system and | 10:52:34 |
| 3 | procedures changed; right? | 10:52:37 |
| 4 | A.   Yes. | 10:52:39 |
| 5 | Q.   All right.  So at some point, GEICO | 10:52:39 |
| 6 | changed where you would actually sort of sign in | 10:52:42 |
| 7 | and sign out from your phone? | 10:52:45 |
| 8 | MR. McALLISTER:  Objection. | 10:52:48 |
| 9 | BY THE WITNESS: | 10:52:49 |
| 10 | A.   Yes. | 10:52:49 |
| 11 | BY MR. TSONIS: | 10:52:51 |
| 12 | Q.   And that was using like a Workday | 10:52:51 |
| 13 | application on your phone? | 10:52:54 |
| 14 | A.   Yes. | 10:52:56 |
| 15 | Q.   All right.  Do you have a recollection | 10:52:56 |
| 16 | as to when that change occurred? | 10:52:59 |
| 17 | A.   No, I don't. | 10:53:00 |
| 18 | Q.   That was the timekeeping process, | 10:53:03 |
| 19 | though, that you had to follow up until you left | 10:53:10 |
| 20 | GEICO; right? | 10:53:14 |
| 21 | A.   Yes. | 10:53:15 |
| 22 | Q.   Okay.  And is it your testimony that | 10:53:16 |
| 23 | when that timekeeping process was in effect, that | 10:53:20 |
| 24 | you were not permitted to log any hours in excess | 10:53:22 |



```
 1        Q.    So I'm not asking about any specific        10:54:23
 2   day.  I'm just asking were there times where you       10:54:28
 3   worked more than 7.75 hours in a day, and that's --    10:54:31
 4        A.    Yes.                                         10:54:35
 5        Q.    -- and recorded more than 7.75 hours in     10:54:35
 6   a day?                                                  10:54:38
 7        A.    Again, I -- yes.  I would have to say        10:54:39
 8   yes.  I can't recall, though, the specific days,        10:54:44
 9   but possibly, yes.                                      10:54:48
10        Q.    Okay.  When that would occur, what was      10:54:50
11   the process that you would follow?  Would you have      10:54:52
12   to, for example, notify anyone that you were going     10:54:56
13   to work more than 7.75 hours?                           10:54:58
14        A.    Yeah, my supervisor.                        10:55:01
15        Q.    Okay.  And how would you notify your        10:55:02
16   supervisor?                                             10:55:05
17        A.    E-mail.                                      10:55:05
18        Q.    What would you say in an e-mail to your     10:55:06
19   supervisor?                                             10:55:10
20        A.    I need some extra hours to work.  I'm --    10:55:10
21   you know, I'm going to be working extra hours.  Can    10:55:17
22   you approve overtime?                                   10:55:19
23        Q.    And what would your supervisor respond,     10:55:21
24   typically?                                              10:55:25
```



| | | |
|---|---|---|
| 1 | A.    It would usually be, in sum and | 10:55:26 |
| 2 | substance, a negative for payment, but didn't say | 10:55:30 |
| 3 | don't work. | 10:55:35 |
| 4 | Q.    But they didn't say work the hours | 10:55:36 |
| 5 | anyway? | 10:55:40 |
| 6 | A.    They didn't say don't work. | 10:55:41 |
| 7 | Q.    Right.  I understand your testimony. | 10:55:43 |
| 8 | I'm just clarifying.  They didn't tell you to work | 10:55:46 |
| 9 | the hours anyway; right? | 10:55:48 |
| 10 | MR. McALLISTER:  Objection. | 10:55:50 |
| 11 | BY THE WITNESS: | 10:55:51 |
| 12 | A.    No, they didn't tell me to work and | 10:55:51 |
| 13 | you're not getting paid, no, they didn't say that. | 10:55:55 |
| 14 | BY MR. TSONIS: | 10:55:58 |
| 15 | Q.    Did any of your supervisors in your time | 10:55:58 |
| 16 | in SIU at GEICO ever instruct you to work off the | 10:56:01 |
| 17 | clock? | 10:56:05 |
| 18 | A.    No. | 10:56:06 |
| 19 | Q.    When you first joined SIU, were you -- | 10:56:09 |
| 20 | after your training was completed, were you working | 10:56:18 |
| 21 | remotely from your home? | 10:56:21 |
| 22 | A.    Yes. | 10:56:22 |
| 23 | Q.    And did that, I guess, continue the | 10:56:22 |
| 24 | entire time that you worked for GEICO in SIU? | 10:56:25 |



LOUIS CANIGLIA, JR.                                                  January 17, 2025
KEITH FISCHER, et al. vs GEICO                                                      55

| 1 | A.    Yes.  Like I said before, I had -- | 10:56:29 |
| 2 | they -- GEICO would set -- set us up -- well, or | 10:56:33 |
| 3 | me, with a home office.  So, yes, I was remote.  I | 10:56:36 |
| 4 | wasn't on location in the GEICO office. | 10:56:39 |
| 5 | Q.    Were there ever times that you did go | 10:56:43 |
| 6 | into the GEICO office? | 10:56:46 |
| 7 | A.    Yes. | 10:56:48 |
| 8 | Q.    All right.  Was that the Woodbury | 10:56:48 |
| 9 | office? | 10:56:50 |
| 10 | A.    Yes. | 10:56:51 |
| 11 | Q.    And then subsequently, the Woodbury | 10:56:51 |
| 12 | office moved and is also known as the Melville | 10:56:55 |
| 13 | office? | 10:56:57 |
| 14 | A.    Yes. | 10:56:58 |
| 15 | Q.    All right.  Aside from the | 10:56:59 |
| 16 | Woodbury/Melville office, were you ever assigned to | 10:57:03 |
| 17 | any other GEICO office? | 10:57:04 |
| 18 | A.    No.  I mean, I think there was a legal | 10:57:06 |
| 19 | office in Huntington Quad -- Quadrangle.  That's | 10:57:08 |
| 20 | where I think the attorneys were.  We had a few | 10:57:12 |
| 21 | meetings there.  But other than that, no. | 10:57:15 |
| 22 | Q.    You weren't assigned, for example, to | 10:57:17 |
| 23 | the Buffalo office at any point? | 10:57:20 |
| 24 | A.    No.  No. | 10:57:22 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      64

1   BY THE WITNESS:                                    11:05:36

2        A.    I believe it's 37.5 a week.             11:05:36

3   BY MR. TSONIS:                                     11:05:39

4        Q.    So if you were to work more than 37.5,  11:05:39

5   what would the procedure be at your current        11:05:46

6   employer?                                          11:05:48

7        MR. McALLISTER:  Objection.                   11:05:48

8   BY THE WITNESS:                                    11:05:49

9        A.    I would ask for overtime compensation.  11:05:49

10  BY MR. TSONIS:                                     11:05:57

11       Q.    Do you have an understanding as to how  11:05:57

12  that overtime rate is calculated?                  11:05:59

13       MR. McALLISTER:  Objection.                   11:06:02

14  BY THE WITNESS:                                    11:06:03

15       A.    I mean, to be honest, it's like         11:06:03

16  comparing apples and oranges.  I mean, I have      11:06:06

17  enough work to do with my current position that I  11:06:09

18  can do in my seven -- you know, my seven and a half 11:06:12

19  hours a day.  When I compare it with GEICO, I had  11:06:15

20  three times the work to do and still being asked to 11:06:23

21  do the same thing.  So I don't think it's fair to  11:06:27

22  compare the two.                                   11:06:30

23  BY MR. TSONIS:                                     11:06:32

24       Q.    Mr. Caniglia, I'm not comparing         11:06:32



| | | |
|---|---|---|
| 1 | MR. McALLISTER:  Objection. | 11:18:07 |
| 2 | BY THE WITNESS: | 11:18:08 |
| 3 | A.    My understanding, yes. | 11:18:08 |
| 4 | BY MR. TSONIS: | 11:18:09 |
| 5 | Q.    And was -- when you started with GEICO, | 11:18:09 |
| 6 | was that associate handbook provided to you? | 11:18:12 |
| 7 | A.    Yes. | 11:18:14 |
| 8 | Q.    I'm going to -- so in terms of exhibits | 11:18:16 |
| 9 | today, what I think will work best, I'm going to | 11:18:21 |
| 10 | drop a document in the chat -- | 11:18:24 |
| 11 | A.    Okay. | 11:18:24 |
| 12 | Q.    -- right now, and once you click on it | 11:18:26 |
| 13 | in the chat, it will ask you to download it and | 11:18:29 |
| 14 | save it somewhere.  Once it downloads, if you click | 11:18:32 |
| 15 | it again in the chat, it should open it.  So let me | 11:18:35 |
| 16 | know when you've done that, if you've got it open. | 11:18:37 |
| 17 | A.    Okay.  So I can download this; correct? | 11:18:41 |
| 18 | Q.    Yes.  It's just a PDF file. | 11:18:42 |
| 19 | A.    Okay.  I think I have it up.  It says | 11:19:02 |
| 20 | Compensation Contents? | 11:19:04 |
| 21 | Q.    Yes.  And for the record, so this will | 11:19:06 |
| 22 | be marked as Exhibit 1, and it's the document | 11:19:06 |
| 23 | bearing the Bates label G000028 through 0043. | 11:19:09 |
| 24 | | |



```
 1                    (WHEREUPON, a certain document was        11:19:09

 2                    marked Caniglia Deposition Exhibit

 3                    No. 1, for identification, as of

 4                    January 17, 2025.)                        11:19:17

 5     BY MR. TSONIS:                                           11:19:17

 6          Q.    Mr. Caniglia, so when I say "Bates           11:19:21

 7     numbers," and I'll probably refer to it, if you see    11:19:23

 8     in the lower right-hand corner, do you see there's     11:19:25

 9     a letter G and then followed by a series of            11:19:28

10     numbers?                                               11:19:30

11          A.    Would you like me to read them?  Yes, I     11:19:30

12     see that.                                              11:19:32

13          Q.    No, you don't have to read them.  I'm       11:19:32

14     just orienting.  So as I -- I'll refer to, you         11:19:36

15     know, the document ending in, for example, this        11:19:37

16     first page is 0028, and so if I direct you to          11:19:39

17     another page using those numbers, that's the number    11:19:42

18     set that I'm referencing.  Okay?                       11:19:46

19          A.    Okay.                                       11:19:47

20          Q.    So does this document look familiar to      11:19:48

21     you, Mr. Caniglia?                                     11:19:50

22          A.    Yes.  I mean, I was handed a paper          11:19:51

23     document, but yeah, I would say this is similar,       11:19:55

24     yes.                                                   11:19:57
```



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      78

| | | |
|---|---|---|
| 1 | Q. Okay. And when you would have those | 11:28:24 |
| 2 | conversations, it sounds like part of that either | 11:28:25 |
| 3 | e-mail or conversation would be requesting | 11:28:28 |
| 4 | overtime? | 11:28:30 |
| 5 | A. Yes. | 11:28:31 |
| 6 | Q. All right. And those conversations, | 11:28:32 |
| 7 | though, didn't say I feel like my pay doesn't -- my | 11:28:36 |
| 8 | paycheck that I received doesn't reflect the hours | 11:28:40 |
| 9 | that I actually worked, right, as we were looking | 11:28:42 |
| 10 | at in the handbook? | 11:28:45 |
| 11 | A. I don't -- | 11:28:47 |
| 12 | MR. McALLISTER: Objection. | 11:28:47 |
| 13 | BY THE WITNESS: | 11:28:48 |
| 14 | A. I don't know. Can you rephrase that, | 11:28:48 |
| 15 | Counsel? I think you're summarizing my statements | 11:28:49 |
| 16 | a little bit. | 11:28:52 |
| 17 | BY MR. TSONIS: | 11:28:53 |
| 18 | Q. Right. I guess I'm trying to get | 11:28:53 |
| 19 | specifically as to an understanding as to what you | 11:28:55 |
| 20 | would say. You wouldn't say I worked, you know, 50 | 11:28:57 |
| 21 | hours last week, and my paycheck does not reflect | 11:29:02 |
| 22 | that; right? | 11:29:05 |
| 23 | MR. McALLISTER: Objection. | 11:29:06 |
| 24 | | 11:29:06 |



LOUIS CANIGLIA, JR.                                                January 17, 2025
KEITH FISCHER, et al. vs GEICO                                                   79

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 11:29:07 |
| 2 | A.    I don't -- if I can recall back to my | 11:29:07 |
| 3 | conversations with my supervisors, it's possible | 11:29:11 |
| 4 | that I -- I could have said something like that, | 11:29:14 |
| 5 | like I worked 20 hours overtime and my pay -- my | 11:29:17 |
| 6 | paycheck doesn't reflect that.  It's possible. | 11:29:20 |
| 7 | BY MR. TSONIS: | 11:29:23 |
| 8 | Q.    But you don't recall -- | 11:29:23 |
| 9 | A.    Yes. | 11:29:23 |
| 10 | Q.    You don't recall any conversation like | 11:29:25 |
| 11 | that? | 11:29:26 |
| 12 | A.    Do I recall any -- I just said that, | 11:29:27 |
| 13 | it's definitely possible that I said that to my | 11:29:32 |
| 14 | supervisors, and it fell on deaf ears. | 11:29:35 |
| 15 | Q.    So you're saying it's possible, but do | 11:29:38 |
| 16 | you recall any specific conversation like that? | 11:29:40 |
| 17 | A.    A specific date and time, no; but, yes, | 11:29:42 |
| 18 | I've definitely expressed my overtime to my | 11:29:47 |
| 19 | supervisors over the phone, and I wasn't | 11:29:52 |
| 20 | compensated for it. | 11:29:56 |
| 21 | Q.    Okay.  So when you say -- | 11:29:58 |
| 22 | A.    I don't know how far up that goes up the | 11:29:59 |
| 23 | line after the supervisor, if the manager or the | 11:30:01 |
| 24 | vice president or -- again, I can't attest to any | 11:30:03 |



| | | |
|---|---|---|
| 1 | document for reference.  I'm just asking you a | 11:34:50 |
| 2 | basic factual question. | 11:34:52 |
| 3 |     A.   Okay. | 11:34:52 |
| 4 |     Q.   Did you ever report to your local human | 11:34:53 |
| 5 | resources manager that you did not receive pay for | 11:34:55 |
| 6 | all the hours you actually worked? | 11:34:58 |
| 7 |     A.   I'm going to say no. | 11:35:00 |
| 8 |     Q.   All right.  Did you ever -- | 11:35:00 |
| 9 |     A.   Yes, no.  Sorry. | 11:35:02 |
| 10 |     Q.   Did you ever report to corporate human | 11:35:03 |
| 11 | resources that you -- you did not receive pay for | 11:35:06 |
| 12 | all the hours you actually worked? | 11:35:09 |
| 13 |     A.   I didn't even know we could do that, but | 11:35:11 |
| 14 | no. | 11:35:15 |
| 15 |     Q.   Okay.  Were you aware that GEICO | 11:35:16 |
| 16 | maintains like a Berkshire Hathaway ethics hotline? | 11:35:17 |
| 17 |     A.   Yes. | 11:35:21 |
| 18 |     Q.   Did you ever report to the Berkshire | 11:35:21 |
| 19 | Hathaway ethics hotline that you did not receive | 11:35:23 |
| 20 | pay for all hours that you actually worked? | 11:35:25 |
| 21 |     A.   I did not. | 11:35:27 |
| 22 |     Q.   Okay.  So I'm going to drop another | 11:35:28 |
| 23 | exhibit into the chat here.  You should be getting | 11:35:34 |
| 24 | it now.  This is going to be marked as Exhibit 2, | 11:36:02 |



| | | |
|---|---|---|
| 1 | A.    No, I -- no. | 11:42:21 |
| 2 | Q.    Okay. | 11:42:21 |
| 3 | A.    I'm going to assume my supervisor. | 11:42:26 |
| 4 | That's an assumption, though.  I'm going to assume | 11:42:29 |
| 5 | my supervisor. | 11:42:31 |
| 6 | Q.    And when your supervisor -- so I guess | 11:42:32 |
| 7 | when you submit it, are you certifying that it's, | 11:42:34 |
| 8 | like, you know, accurate, accurately reflects the | 11:42:36 |
| 9 | time that you worked? | 11:42:39 |
| 10 | MR. McALLISTER:  Objection. | 11:42:39 |
| 11 | BY THE WITNESS: | 11:42:40 |
| 12 | A.    No. | 11:42:40 |
| 13 | BY MR. TSONIS: | 11:42:42 |
| 14 | Q.    It's your testimony that it's not a | 11:42:42 |
| 15 | certification each week when you submit in Workday? | 11:42:44 |
| 16 | MR. McALLISTER:  Objection. | 11:42:47 |
| 17 | BY THE WITNESS: | 11:42:48 |
| 18 | A.    A certification of what I was allotted | 11:42:48 |
| 19 | to do during that time period. | 11:42:52 |
| 20 | BY MR. TSONIS: | 11:42:55 |
| 21 | Q.    Is that what the certification that you | 11:42:55 |
| 22 | have to acknowledge each week says, this certifies | 11:42:58 |
| 23 | that you have entered what you were allotted to | 11:43:01 |
| 24 | work, or does it say that you -- | 11:43:03 |



LOUIS CANIGLIA, JR.                                January 17, 2025
KEITH FISCHER, et al. vs GEICO                                   92

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:43:03 |
| 2 | (WHEREUPON, there was a brief | 11:43:03 |
| 3 | interruption.) | 11:43:03 |
| 4 | THE COURT REPORTER:  Hold on.  Hold on. | 11:43:11 |
| 5 | MR. McALLISTER:  Lou, if you can just let him | 11:43:11 |
| 6 | finish the question before you answer. | 11:43:12 |
| 7 | THE WITNESS:  I'm sorry. | 11:43:15 |
| 8 | (Record read.) | 11:43:15 |
| 9 | MR. TSONIS:  I'll finish my question. | 11:43:15 |
| 10 | BY MR. TSONIS: | 11:43:28 |
| 11 | Q.    Does it say that you certify that the | 11:43:28 |
| 12 | hours that you entered are accurate and reflect the | 11:43:32 |
| 13 | time worked? | 11:43:35 |
| 14 | MR. McALLISTER:  Objection. | 11:43:35 |
| 15 | BY THE WITNESS: | 11:43:37 |
| 16 | A.    Answer it as a yes-or-no question.  I | 11:43:37 |
| 17 | believe it does say that, but that doesn't mean | 11:43:42 |
| 18 | that I felt accurate about doing that.  I mean, I | 11:43:45 |
| 19 | did have to keep my job and pay my mortgage, so I | 11:43:49 |
| 20 | clicked yes. | 11:43:53 |
| 21 | BY MR. TSONIS: | 11:43:54 |
| 22 | Q.    Okay.  And, Mr. Caniglia, you have | 11:43:54 |
| 23 | already said a number of things, and you will have | 11:43:57 |
| 24 | plenty of opportunity to explain your -- I just -- | 11:44:00 |



1    time he told me that.                                    11:47:10

2        Q.    All right.  Did Gerry Cassagne tell you        11:47:11

3    that 38.75 hours was the normal scheduled workweek?      11:47:13

4        A.    Yeah, I'll agree to that, yes.                 11:47:17

5        Q.    All right.  Did Gerry Cassagne tell you        11:47:25

6    that if you needed to work more than 38.75 hours         11:47:27

7    that you just needed to get his approval?                11:47:30

8        A.    Yes, he has said that to me before, yes.       11:47:34

9        Q.    Okay.  Wasn't it Gerry Cassagne's             11:47:41

10   process that if you needed to work overtime, you         11:47:44

11   could work it, but he just wanted you to send him        11:47:45

12   an e-mail afterwards?                                     11:47:48

13       MR. McALLISTER:  Objection.                          11:47:50

14   BY THE WITNESS:                                           11:47:51

15       A.    I don't know what Gerry Cassagne's            11:47:51

16   process was.  I can tell you what my -- if you want      11:47:54

17   to ask about what -- how I -- I viewed it, then          11:47:56

18   that's fine.                                              11:48:00

19   BY MR. TSONIS:                                            11:48:00

20       Q.    Sure.  How did you view it?                    11:48:00

21       A.    I viewed it as I would call, request the       11:48:02

22   overtime, and -- let me -- Gerry Cassagne's a            11:48:08

23   great -- he's a -- he's -- he's a good man.  I'm         11:48:13

24   being honest with you, and on this deposition, but       11:48:16



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                    103

1        A.    Yes.                                          11:54:55

2        Q.    And Gerry Cassagne, you know, starts off      11:54:56

3    thanking people for submitting their time sheets,       11:55:01

4    and then in the second paragraph says:  If you          11:55:03

5    still have to submit, please do so by tomorrow.         11:55:06

6    If you plan on working any overtime today or            11:55:09

7    tomorrow, you must enter it into this time sheet.       11:55:11

8    After I approve the time sheet, and the hours are       11:55:14

9    not correct, I must put in a special correction         11:55:17

10   through HR to adjust it.                                11:55:20

11        Do you see that?                                   11:55:22

12        A.    I do.                                        11:55:22

13        Q.    All right.  And in the third paragraph,      11:55:23

14   he writes:  If you get stuck working overtime after     11:55:23

15   you submitted your sheet, contact me immediately so     11:55:26

16   I can make the correction before I approve it and       11:55:29

17   send it in.  Right?                                     11:55:31

18        A.    Yes.                                         11:55:32

19        Q.    All right.  So here, in December of '16,     11:55:33

20   Gerry Cassagne is instructing you to enter in           11:55:36

21   overtime into your time sheet; right?                   11:55:39

22        A.    Yeah, I would agree with that, yes.          11:55:41

23        Q.    Okay.  He's instructing everyone, in         11:55:45

24   fact, that reports to him that any overtime work        11:55:49



| | | |
|---|---|---|
| 1 | has to be entered into their time sheet? | 11:55:51 |
| 2 | A.    I don't know if that's a question, but | 11:55:53 |
| 3 | I'll agree with your statement, yes. | 11:55:57 |
| 4 | Q.    Okay.  And, in fact, I guess he's | 11:55:58 |
| 5 | saying -- he's saying that if -- if you work | 11:56:01 |
| 6 | overtime after you submitted your sheets, to let | 11:56:04 |
| 7 | him know so he can get you paid for it; right? | 11:56:07 |
| 8 | A.    Yes.  He sent an e-mail out for that, | 11:56:12 |
| 9 | yes. | 11:56:16 |
| 10 | Q.    You can close this document out too. | 11:56:16 |
| 11 | A.    Okay. | 11:56:20 |
| 12 | Q.    I'm dropping another document in the | 11:56:21 |
| 13 | chat. | 11:56:31 |
| 14 | A.    Okay. | 11:56:32 |
| 15 | (WHEREUPON, a certain document was | 11:56:32 |
| 16 | marked Caniglia Deposition Exhibit | |
| 17 | No. 5, for identification, as of | |
| 18 | January 17, 2025.) | 11:56:32 |
| 19 | BY MR. TSONIS: | 11:56:32 |
| 20 | Q.    It's going to be marked as Exhibit 5, | 11:56:33 |
| 21 | and for the court reporter, Exhibit 5 for the | 11:56:34 |
| 22 | record is a document bearing the Bates label | 11:56:38 |
| 23 | G012903. | 11:56:43 |
| 24 | A.    Can I just ask, who is -- Gregory, | 11:56:45 |



LOUIS CANIGLIA, JR.                                       January 17, 2025
KEITH FISCHER, et al. vs GEICO                                          112

```
 1   document.  It's immediately above that sentence --        12:03:38
 2       A.    Yes.  Thank you for that.  Yes, 4 hours          12:03:42
 3   and 15 minutes, yes.                                       12:03:44
 4       Q.    All right.  So --                                12:03:45
 5       A.    2 hours, 2 hours 15 minutes, for a total         12:03:46
 6   of 4 hours 15 for the week so far, yes.                    12:03:49
 7       Q.    So Gerry Cassagne is asking his team to          12:03:51
 8   report overtime that they have accrued so far that         12:03:54
 9   week and --                                                12:03:56
10       A.    Yeah.                                            12:03:56
11       Q.    -- it's fair to reason that he didn't            12:03:56
12   know that those individuals had overtime or not;           12:03:58
13   right?                                                     12:04:01
14       A.    I mean, during this time period, from            12:04:01
15   what I can recall, yeah, I mean, GEICO did -- I            12:04:03
16   mean, when we were working, I believe we were              12:04:06
17   getting paid at this particular time for overtime,         12:04:08
18   and I can see the documented time slots of whatever        12:04:11
19   I did during that day.  It's in my diary.  So yes.         12:04:15
20       Q.    Okay.  And so you told Gerry 4 hours and         12:04:19
21   15 minutes of overtime, and if you scroll up to the        12:04:23
22   first page in this document --                             12:04:26
23       A.    Yeah.                                            12:04:26
24       Q.    -- he responds:  Please give me a               12:04:28
```



800.211.DEPO (3376)
EsquireSolutions.com

1    breakdown of your Monday and Tuesday schedule this        12:04:30

2    week when you received overtime.  Right?                  12:04:32

3         A.    Under -- Counsel, I'm sorry, I --              12:04:34

4         Q.    It's at the very bottom -- it's at the         12:04:39

5    very bottom of page 1.                                    12:04:40

6         A.    Please give me a break -- yes.  Okay.          12:04:42

7    It's at the bottom.  I see it.  Okay.                     12:04:44

8         Q.    Okay.  And then you respond to that,           12:04:46

9    looking above, with kind of a breakdown of what          12:04:48

10   your Monday was and your activities by sort of           12:04:51

11   breaking down your day, and then the same thing for      12:04:53

12   Tuesday; right?                                           12:04:55

13        A.    Yes, the 11 -- 11/29 and 11/28.                12:04:56

14        Q.    That's right.                                  12:05:01

15        A.    Okay.                                          12:05:03

16        Q.    Okay.  So you thought you needed 4 hours       12:05:03

17   and 15 minutes of overtime to do your work this          12:05:08

18   day, and you worked it; right?                            12:05:11

19        A.    To be honest with you, I probably should      12:05:12

20   have requested more overtime, but that's what I          12:05:16

21   felt like I -- I could ask for without being             12:05:21

22   like -- I don't know.  It's my feeling.  I felt          12:05:26

23   like -- I mean, if I look at this time period, from      12:05:32

24   what I can recall, and I remember that, yeah, I put      12:05:37



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      114

1   two hours -- it looks like two hours.  I requested        12:05:39

2   two hours, but that doesn't mean I really -- I            12:05:42

3   worked more than two hours.  I was just asking for        12:05:45

4   something just to, like, I don't know, get -- be          12:05:47

5   compensated for the work that I'm doing.                  12:05:52

6        Q.    I guess, Mr. Caniglia, you have a              12:05:55

7   specific recollection that on Monday, November 28,        12:05:58

8   2016, you worked more than the two hours of               12:06:01

9   overtime you requested that day?                          12:06:04

10        A.    Counsel, that's a -- it's a long time         12:06:05

11   ago.  I don't remember that specific day, but based      12:06:08

12   on this document, I would say yes.                        12:06:11

13        Q.    What about this document makes you think      12:06:14

14   you worked more when you have time stamped your          12:06:15

15   entries on this day and indicated why you needed          12:06:18

16   the two hours?                                            12:06:21

17        A.    Well, 6:00 a.m. to 6:30 p.m. is 12            12:06:22

18   hours; correct?                                           12:06:30

19        Q.    Are you asking me?                            12:06:36

20        A.    I mean, that's my statement.  I mean,         12:06:37

21   it's 12 hours right there.  And I only requested         12:06:40

22   two hours of overtime.  So I should have actually        12:06:46

23   requested four, but...                                   12:06:49

24        Q.    Did you work the entire time during this     12:06:53



| | | |
|---|---|---|
| 1 | time period? | 12:06:56 |
| 2 | A.    Yes, I would say I did. | 12:06:57 |
| 3 | Q.    You do have a specific recollection? | 12:06:59 |
| 4 | A.    I don't remember the day entirely, but | 12:07:04 |
| 5 | based -- I can testify to my -- my notes and this | 12:07:07 |
| 6 | document in front of me, I would testify that | 12:07:11 |
| 7 | that's correct. | 12:07:13 |
| 8 | Q.    Okay.  Similarly, do you have a specific | 12:07:14 |
| 9 | recollection for November 29, 2016, that you | 12:07:18 |
| 10 | actually worked more than the 2 hours and 15 | 12:07:20 |
| 11 | minutes that you requested? | 12:07:22 |
| 12 | A.    I don't think it was -- no, I don't | 12:07:24 |
| 13 | remember this specific day, no. | 12:07:28 |
| 14 | Q.    Okay.  But in any event, you felt like | 12:07:29 |
| 15 | you were able to request overtime for these two | 12:07:33 |
| 16 | days worked; right? | 12:07:36 |
| 17 | A.    Yes.  From this period, yes. | 12:07:38 |
| 18 | Q.    Okay.  And you were able to work the | 12:07:41 |
| 19 | overtime and just let Gerry Cassagne know after the | 12:07:42 |
| 20 | fact that you worked it? | 12:07:45 |
| 21 | A.    Again, it's not a question, but I'll | 12:07:46 |
| 22 | agree with it.  Yes. | 12:07:53 |
| 23 | Q.    And Mr. Cassagne doesn't challenge it or | 12:07:55 |
| 24 | push back, he just says thank you; right? | 12:07:58 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                     116

```
 1        A.    Mr. Cassagne, at that particular time, I      12:08:01
 2   don't -- no, I --                                        12:08:06
 3        Q.    Look at the top e-mail.                       12:08:07
 4        A.    Yes, he says thank you.  Yes, that's          12:08:09
 5   correct.                                                 12:08:11
 6        Q.    Now, if we go to page 3 of the PDF, it's      12:08:11
 7   the page ending in 543.                                  12:08:16
 8        A.    Mm-hmm.  Yes.                                 12:08:17
 9        Q.    All right.  Do you see that you just          12:08:18
10   sent a daily activity report on December 7, 2016?        12:08:21
11        A.    Yes, I recall at this particular time I       12:08:24
12   think they -- that's -- this is what they wanted         12:08:27
13   it, GEICO management wanted to -- or maybe Gerry         12:08:30
14   just wanted.  I don't know if it came from the --        12:08:35
15   above him, but this is what he wanted us to do to        12:08:37
16   document our daily activity reports.  Just, you          12:08:42
17   know, to say what we're doing if we're going to put      12:08:50
18   in for overtime because we're requesting something       12:08:52
19   and we want to -- we want to, you know, be               12:08:55
20   compensated for it, for that particular time, so...      12:08:59
21        Q.    Sure.  So at this time period, Gerry          12:09:04
22   Cassagne let you, I guess, work overtime if you          12:09:08
23   needed it, but you just had to document what the         12:09:13
24   reasoning was for the overtime in a form that's          12:09:15
```



| | | |
|---|---|---|
| 1 | similar to what's your e-mail on the page ending in | 12:09:18 |
| 2 | 543 looks like? | 12:09:22 |
| 3 | MR. McALLISTER:  Objection. | 12:09:23 |
| 4 | BY THE WITNESS: | 12:09:24 |
| 5 | A.    I'm going to say that he -- Gerry asked | 12:09:24 |
| 6 | me, based on the e-mail, to do a daily activity | 12:09:30 |
| 7 | report of what I was doing during that day.  And as | 12:09:33 |
| 8 | you can see, from 7:00 a.m. to 6:30, there's no | 12:09:38 |
| 9 | p.m. at the bottom, but, I mean, on that day, | 12:09:41 |
| 10 | that's -- I'm going to say that's what I did.  I | 12:09:44 |
| 11 | mean, I did these things. | 12:09:47 |
| 12 | BY MR. TSONIS: | 12:09:49 |
| 13 | Q.    Okay.  And I'm not suggesting that you | 12:09:49 |
| 14 | didn't do any of the activities here.  I guess I'm | 12:09:53 |
| 15 | just asking generally, it looks to me that you | 12:09:56 |
| 16 | worked an hour and 15 minutes overtime, you write, | 12:09:59 |
| 17 | and -- on this day, and you just logged it and sent | 12:10:02 |
| 18 | it to Gerry; right? | 12:10:05 |
| 19 | A.    Yeah.  Again, I should have put more in, | 12:10:06 |
| 20 | but I didn't. | 12:10:09 |
| 21 | Q.    I understand that.  But I guess if | 12:10:10 |
| 22 | you're sending this e-mail and saying an hour and | 12:10:13 |
| 23 | 15 minutes overtime for this day, you would be | 12:10:15 |
| 24 | entering that hour and 15 minutes into, you know, | 12:10:19 |



1    Q.   All right.  Now, if you look at the next          12:18:04

2  page ending in 836.                                      12:18:06

3    A.   836.                                              12:18:12

4    Q.   It's an e-mail sent March 18 -- March 6,          12:18:14

5  2018, from you to Gerry.                                 12:18:17

6    A.   Now, what page is that?                           12:18:22

7    Q.   The page ending in 836.  It would be              12:18:23

8  page 9 of the PDF.                                       12:18:26

9    A.   Page 9.  Okay.                                    12:18:28

10   Q.   Do you see that page?                             12:18:30

11   A.   I got -- it's 2018, Counsel.                      12:18:32

12   Q.   All right.  So in March 6, 2018,                  12:18:34

13  similarly, you're writing a daily activity report       12:18:37

14  and putting in for two hours of overtime; right?        12:18:40

15   A.   Yes.                                              12:18:42

16   Q.   Any recollection as to why you were               12:18:43

17  cc-ing Richard Kilgen?                                  12:18:46

18   A.   No.  Rich Kilgen was a supervisor for             12:18:49

19  another team.  He wasn't my direct supervisor.          12:18:59

20   Q.   Okay.                                             12:18:59

21   A.   It's possible Gerry might have been,              12:19:01

22  like, on vacation or something.  I -- I don't know      12:19:04

23  why I did that --                                       12:19:08

24   Q.   Okay.                                             12:19:08



LOUIS CANIGLIA, JR.                                          January 17, 2025
KEITH FISCHER, et al. vs GEICO                                        127

1        A.    -- other than that reason.                    12:19:11

2        Q.    And, again, it's an e-mail from, you          12:19:12

3    know, six, seven years ago.  I don't necessarily        12:19:15

4    expect that you would know precisely why, but I'm       12:19:18

5    just seeing if there is any recollection.               12:19:20

6        A.    Okay.                                          12:19:20

7        Q.    So if you go to the next page ending in       12:19:23

8    535, you see similarly it's another e-mail from         12:19:27

9    March 12, 2018?                                          12:19:31

10       A.    Yes.                                           12:19:32

11       Q.    And, again, logging your time spent           12:19:33

12   working but -- and asking for three hours of            12:19:38

13   overtime?                                                12:19:40

14       A.    Yes.                                           12:19:41

15       Q.    All right.  And, again, Gerry Cassagne        12:19:41

16   just responds back thanks?                               12:19:46

17       A.    Yes.                                           12:19:48

18       Q.    Go to the next page ending in 534.            12:19:49

19       A.    534.  Page 11 on the PDF?                      12:19:59

20       Q.    Yes.                                           12:20:03

21       A.    Okay.  Yes, I'm on it.                         12:20:04

22       Q.    All right.  And so here, once again,          12:20:06

23   March 21, 2018, an e-mail from you to Mr. Cassagne      12:20:08

24   outlining your activities on that day; right?           12:20:12



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      128

1         A.    Yes.                                    12:20:16

2         Q.    All right.  And you request one hour of  12:20:16

3    overtime for that shift?                           12:20:21

4         A.    Yeah.                                   12:20:22

5         Q.    And, again, Gerry responds back thanks?  12:20:23

6         A.    Yes.                                    12:20:27

7         Q.    Flip to the next page, 50 -- that ends  12:20:27

8    in 502.                                            12:20:31

9         A.    Okay.  Yes.                             12:20:33

10        Q.    Same type of document; right?  Monday --  12:20:36

11   or April 9, 2018, e-mail from you to Gerry?        12:20:38

12        A.    Yes.                                    12:20:41

13        Q.    All right.  And the subject is Overtime  12:20:41

14   Request 3 hours?                                   12:20:44

15        A.    Yes.                                    12:20:45

16        Q.    All right.  And, again, you outline your  12:20:46

17   activities and put three hours of overtime?        12:20:48

18        A.    Yes.                                    12:20:51

19        Q.    All right.  And, again, Gerry just       12:20:52

20   responds back thank you?                           12:20:54

21        A.    Yes.                                    12:20:55

22        Q.    All right.  Turn to the next page ending  12:20:56

23   in 501.                                            12:20:59

24        A.    Okay.  I'm on it.                       12:21:01



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      129

1          Q.    All right.  Similarly, April 11, 2018,        12:21:03

2     e-mail, right, from you to Gerry?                         12:21:05

3          A.    Yes.                                           12:21:07

4          Q.    All right.  Entitled Overtime Request          12:21:08

5     4/11/18.  And here, you --                                12:21:12

6          A.    Yes.                                           12:21:12

7          Q.    -- and here, you request two hours of          12:21:13

8     overtime; right?                                          12:21:16

9          A.    Yes.                                           12:21:17

10         Q.    And, once again, Gerry just says thank         12:21:17

11    you?                                                      12:21:20

12         A.    Yes.                                           12:21:20

13         Q.    Turn to the next page ending in 500.           12:21:21

14         A.    Okay.                                          12:21:27

15         Q.    It's an e-mail from you to Gerry on            12:21:27

16    April 17, 2018; right?                                    12:21:30

17         A.    Yes.                                           12:21:33

18         Q.    All right.  And it's entitled DAR for          12:21:33

19    4/17/2018 4 hours OT requested?                           12:21:37

20         A.    Yes.                                           12:21:40

21         Q.    And you go on to request four hours of         12:21:40

22    overtime on this date?                                    12:21:43

23         A.    I did, yes.                                    12:21:44

24         Q.    And Gerry responds back again, thank           12:21:46



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      130

```
 1   you?                                              12:21:49

 2         A.    Yes.                                   12:21:49

 3         Q.    Look to the next page that ends in 486. 12:21:50

 4         A.    Okay.                                  12:21:57

 5         Q.    All right.  This is an e-mail from you 12:21:58

 6   to Gerry sent April 19, 2018; right?              12:22:00

 7         A.    Yes.                                   12:22:03

 8         Q.    All right.  And it says "overtime     12:22:04

 9   request" in the subject --                        12:22:06

10         A.    Yes.                                   12:22:08

11         Q.    -- with a date?  All right.  And here, 12:22:09

12   you outline kind of what you did and you request  12:22:10

13   six and a half hours of overtime?                 12:22:13

14         A.    Yes.                                   12:22:15

15         Q.    Turn to the next page ending in 488.   12:22:15

16         A.    Yes.                                   12:22:24

17         Q.    It's an e-mail from you to Gerry,      12:22:24

18   April 24, 2018?                                    12:22:26

19         A.    Yeah.                                  12:22:29

20         Q.    And, again, you outline your activities 12:22:30

21   in the case and put in for three hours of overtime? 12:22:34

22         A.    Yes.                                   12:22:36

23         Q.    Turn to the next page ending in 489.   12:22:36

24         A.    Yes.                                   12:22:41
```



| | | |
|---|---|---|
| 1 | Q.    You see it's an e-mail from you to Gerry | 12:22:42 |
| 2 | dated April 25, 2018? | 12:22:46 |
| 3 | A.    Yes. | 12:22:48 |
| 4 | Q.    And, again, you log your activities and | 12:22:48 |
| 5 | put in for three hours of overtime? | 12:22:51 |
| 6 | A.    Yes. | 12:22:53 |
| 7 | Q.    Turn to the next page ending in 418. | 12:22:54 |
| 8 | A.    418.  418.  Is this the 12/10/18, says 3 | 12:23:01 |
| 9 | hours?  My -- 418, yes.  Sorry.  Yes, you're right. | 12:23:08 |
| 10 | Q.    It's an e-mail from you to Gerry sent | 12:23:13 |
| 11 | December 13, 2018? | 12:23:17 |
| 12 | A.    Yes. | 12:23:18 |
| 13 | Q.    And the subject is OT? | 12:23:19 |
| 14 | A.    Yes. | 12:23:21 |
| 15 | Q.    And here, you just write, you know, | 12:23:22 |
| 16 | December 10, '18, 3 hours; December 11, '18, 3 | 12:23:24 |
| 17 | hours; total of 6 this week? | 12:23:29 |
| 18 | A.    Yes. | 12:23:30 |
| 19 | Q.    All right.  So you were putting in for | 12:23:31 |
| 20 | six hours of overtime for that week? | 12:23:32 |
| 21 | A.    Total for this week, yes. | 12:23:34 |
| 22 | Q.    All right.  So we looked at e-mails from | 12:23:37 |
| 23 | you to Gerry Cassagne putting in for overtime for | 12:23:44 |
| 24 | 2016, 2017, and 2018; right? | 12:23:49 |



LOUIS CANIGLIA, JR.                                          January 17, 2025
KEITH FISCHER, et al. vs GEICO                                          132

```
 1        A.    Yes.                                12:23:53

 2        Q.    So is it accurate to say that during    12:23:53

 3   this time, Gerry Cassagne allowed you to work      12:23:55

 4   overtime so long as you simply sent him an e-mail  12:23:58

 5   documenting the activities that required overtime? 12:24:02

 6        MR. McALLISTER:  Objection.              12:24:04

 7   BY THE WITNESS:                                12:24:05

 8        A.    For that particular time period of those  12:24:05

 9   months, yes.  That doesn't incorporate the entire   12:24:09

10   year.                                          12:24:11

11   BY MR. TSONIS:                                 12:24:12

12        Q.    Okay.  But at least the time periods  12:24:12

13   that we saw throughout this multi-year period,   12:24:16

14   there were times where Gerry Cassagne allowed you  12:24:20

15   to work overtime?                              12:24:22

16        MR. McALLISTER:  Objection.              12:24:22

17   BY THE WITNESS:                                12:24:24

18        A.    GEICO did, I believe, compensate us.  I  12:24:24

19   mean, I don't see if it was approved or not, but   12:24:30

20   based on these e-mails, I requested it.        12:24:32

21   BY MR. TSONIS:                                 12:24:34

22        Q.    Do you have any reason to think that you  12:24:34

23   weren't paid for any of the hours that you       12:24:36

24   documented in the e-mails?                     12:24:37
```



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      165

```
 1        Q.    -- which manager are you referring to or        13:09:22

 2   managers?                                                  13:09:24

 3        A.    Again, I can't -- the statement, I see          13:09:25

 4   it now, but the manager at the particular time was         13:09:31

 5   Bill Newport, I believe, during that 2023 period.          13:09:36

 6   So --                                                      13:09:47

 7        Q.    Let me ask --                                   13:09:47

 8        A.    -- again, Bill Newport never said to me         13:09:49

 9   directly that I can't receive overtime, so I               13:09:52

10   don't --                                                   13:09:59

11        Q.    Okay.  Did Rene Cubas ever tell you that        13:10:00

12   you couldn't receive overtime?                             13:10:04

13        A.    Directly, no.                                   13:10:06

14        Q.    Did Mike DeGrocco ever tell you you            13:10:07

15   could not receive overtime?                                13:10:11

16        A.    No.                                             13:10:13

17        Q.    Okay.  Did any of those three managers          13:10:14

18   ever instruct you to work off the clock?                   13:10:19

19        A.    To work off the clock, no, no.                  13:10:22

20        Q.    Okay.  None of those managers would know        13:10:25

21   if you were working off the clock; right?                  13:10:31

22        A.    I don't know that.  I don't know.  I'm          13:10:34

23   assuming there's ways to check if you're on the            13:10:41

24   computer and stuff or not, but I don't -- I don't          13:10:44
```



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                     167

| | |
|---|---|
| 1    A.    My complaint is that I was working and I | 13:11:55 |
| 2  wasn't compensated for my time that I worked for | 13:12:01 |
| 3  GEICO all of the time, in terms of the entirety of | 13:12:05 |
| 4  my overtime working.  I'm going to say no to your | 13:12:12 |
| 5  question because I can't attest to if they knew | 13:12:19 |
| 6  anything or not.  So, again, my complaint is unpaid | 13:12:22 |
| 7  overtime.  It's just -- it's a simple complaint, | 13:12:27 |
| 8  so... | 13:12:30 |
| 9    Q.    Okay.  So that's fair.  So your | 13:12:30 |
| 10  complaint is unpaid overtime, but you don't know if | 13:12:32 |
| 11  any of the supervisors were aware of any of the | 13:12:35 |
| 12  hours that you were working but not getting paid | 13:12:38 |
| 13  for? | 13:12:40 |
| 14    MR. McALLISTER:  Objection. | 13:12:41 |
| 15  BY THE WITNESS: | 13:12:41 |
| 16    A.    They were aware of it because I -- I -- | 13:12:41 |
| 17  you -- you showed me e-mails before of -- of me | 13:12:45 |
| 18  telling them.  You only have a brief period of | 13:12:50 |
| 19  time, though, from 2017 to 2018, I believe, but, | 13:12:54 |
| 20  you know, there was other years that -- and days | 13:12:58 |
| 21  that there's no documentation for that, and there | 13:13:00 |
| 22  could have been con -- there were phone | 13:13:03 |
| 23  conversations and things like that, so... | 13:13:05 |
| 24 | 13:13:05 |



800.211.DEPO (3376)
EsquireSolutions.com

| | | |
|---|---|---|
| 1 | BY MR. TSONIS: | 13:13:07 |
| 2 | Q.   Right.  I guess, listen to the question | 13:13:07 |
| 3 | precisely, right, because we said for those | 13:13:09 |
| 4 | e-mails, you were paid for those hours; right? | 13:13:12 |
| 5 | MR. McALLISTER:  Objection. | 13:13:15 |
| 6 | BY THE WITNESS: | 13:13:17 |
| 7 | A.   I -- I can say that I requested those | 13:13:17 |
| 8 | hours for me, and if you can look at the outline of | 13:13:20 |
| 9 | those -- of those e-mails, I requested two hours | 13:13:25 |
| 10 | when I was -- I literally worked six hours | 13:13:30 |
| 11 | overtime, sometimes, or four hours overtime, and | 13:13:34 |
| 12 | I'm only requesting an hour or two hours.  So, I | 13:13:37 |
| 13 | mean, it's -- again, the complaint is I'm not | 13:13:40 |
| 14 | being -- I was -- we -- I was not paid for the time | 13:14:00 |
| 15 | that I worked for the company of GEICO and | 13:14:02 |
| 16 | protected their assets and did what I had to do to | 13:14:06 |
| 17 | protect insurance fraud, people trying to get money | 13:14:10 |
| 18 | that they didn't deserve, and that's what it was, | 13:14:13 |
| 19 | so... | 13:14:13 |
| 20 | BY MR. TSONIS: | 13:14:16 |
| 21 | Q.   Right.  Mr. Caniglia, I guess, just | 13:14:16 |
| 22 | listen to where I'm trying to -- the question -- | 13:14:19 |
| 23 | A.   I can't give you yes-or-no questions all | 13:14:21 |
| 24 | the time, Counsel.  You're trying to box me in | 13:14:24 |



```
 1   basically -- I mean, and that was it, so...          13:39:18

 2        Q.   So he communicated the expectation of      13:39:24

 3   the workweek was 38.75 hours?                         13:39:28

 4        A.   I would say yes.  Yes.                       13:39:30

 5        Q.   As a field investigator, were you able     13:39:33

 6   to flex your time?                                    13:39:41

 7        A.   Flex my time.  Can you -- what do you       13:39:42

 8   mean by flex time?                                    13:39:48

 9        Q.   Is that a term that sounds familiar to     13:39:48

10   you?                                                  13:39:52

11        A.   It is.  Do you mean like work the 38.75    13:39:52

12   hours a week in the time I want to work, like --      13:40:00

13   you know what I mean?  Like -- like, if I -- if I     13:40:05

14   work 15 hours on Monday, 8 hours on Tuesday, 4        13:40:08

15   hours on Wednesday, 10 hours on Thursday, 12 hours    13:40:14

16   on Friday, I mean, yeah, it's flex timing, but        13:40:18

17   still, it goes over the 38.75.  But, yeah, I would    13:40:21

18   say yes, I do have the opportunity to flex time,      13:40:25

19   yes.                                                  13:40:27

20        Q.   Okay.  So I guess let's -- let's            13:40:28

21   clarify.  When you say flex time, are you             13:40:32

22   referencing your time, like how you work any          13:40:34

23   specific day, or are you talking about, hey, if I     13:40:37

24   work an extra hour one day, I can take away an hour   13:40:40
```



LOUIS CANIGLIA, JR.                                     January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      200

| | | |
|---|---|---|
| 1 | Q.   So I guess one of the tactics, it's your | 13:46:05 |
| 2 | understanding that a supervisor wouldn't think if | 13:46:09 |
| 3 | you're saying, hey, I worked two hours or I need to | 13:46:11 |
| 4 | work two hours, you know, overtime on Thursday, | 13:46:14 |
| 5 | that the supervisor wouldn't say, hey, can you cut | 13:46:16 |
| 6 | it out, work less two hours on Friday? | 13:46:18 |
| 7 | MR. McALLISTER:  Objection. | 13:46:21 |
| 8 | BY THE WITNESS: | 13:46:22 |
| 9 | A.   I mean, you showed me those exhibits | 13:46:22 |
| 10 | before where I put the documentation of overtime, | 13:46:30 |
| 11 | and if you -- if we do the math, it's more overtime | 13:46:35 |
| 12 | that I actually requested.  So I'm going to say | 13:46:40 |
| 13 | that, no, my supervisors never said that to me, | 13:46:45 |
| 14 | from my recollection. | 13:46:51 |
| 15 | BY MR. TSONIS: | 13:46:55 |
| 16 | Q.   Well, you, I guess -- as a field | 13:46:55 |
| 17 | investigator, if you're at 38.75 hours, I guess you | 13:47:01 |
| 18 | have the authority or the ability to stop working | 13:47:08 |
| 19 | on Friday and pick it up on Monday again; right? | 13:47:10 |
| 20 | MR. McALLISTER:  Objection. | 13:47:13 |
| 21 | BY THE WITNESS: | 13:47:14 |
| 22 | A.   Absolutely.  Why not? | 13:47:14 |
| 23 | BY MR. TSONIS: | 13:47:16 |
| 24 | Q.   Right.  So you could stop working at the | 13:47:16 |



| | | |
|---|---|---|
| 1 | 38.75 hours and then start up again Monday morning, | 13:47:17 |
| 2 | for example? | 13:47:21 |
| 3 | MR. McALLISTER:  Objection. | 13:47:22 |
| 4 | BY THE WITNESS: | 13:47:22 |
| 5 | A.    Yeah. | 13:47:22 |
| 6 | BY MR. TSONIS: | 13:47:26 |
| 7 | Q.    Okay.  When you -- is there a difference | 13:47:26 |
| 8 | in how you document, like, a social media case | 13:47:32 |
| 9 | versus a field investigation? | 13:47:35 |
| 10 | A.    Again, I've been out of GEICO for a | 13:47:37 |
| 11 | year, but from what I can recall, a social media | 13:47:42 |
| 12 | investigation requires a plan of action, and then a | 13:47:49 |
| 13 | detailed social media investigation, if we can gain | 13:47:56 |
| 14 | access to even -- the information we're looking at, | 13:47:59 |
| 15 | but, yeah, every case is different.  So it's a yes. | 13:48:05 |
| 16 | Q.    You use the phrase here, like in | 13:48:09 |
| 17 | paragraph 17, for example, you know, my fellow | 13:48:15 |
| 18 | Special Investigators.  Who do you mean? | 13:48:19 |
| 19 | A.    I'm sorry.  Greg, I'm sorry, where was | 13:48:23 |
| 20 | that? | 13:48:25 |
| 21 | Q.    So in your declaration, the last page, | 13:48:25 |
| 22 | paragraph 17, and that's just one example, but | 13:48:27 |
| 23 | there's -- you use the phrase, you know, my fellow, | 13:48:29 |
| 24 | but you use the phrase "Special Investigators." | 13:48:32 |



LOUIS CANIGLIA, JR.                                         January 17, 2025
KEITH FISCHER, et al. vs GEICO                                          205

1           MR. McALLISTER:  Objection.                    13:52:09

2    BY THE WITNESS:                                       13:52:09

3           A.    Not entirely.  Sometimes I'd have to --  13:52:09

4    sometimes I was assigned cases where, like, I'd       13:52:14

5    have to attempt to, like, verify a tow bill or        13:52:20

6    there's excessive towing or things like that.  So     13:52:24

7    it's not always a pending claim.  Sometimes the       13:52:27

8    claim is closed where the -- the insured or the       13:52:30

9    claimant has been paid, but we're looking at some     13:52:33

10   other entity of it, like a body shop or a clinic or   13:52:35

11   something like that, so...                            13:52:39

12   BY MR. TSONIS:                                        13:52:42

13          Q.    Is what you're referencing doing assists 13:52:42

14   on major case investigations?                         13:52:45

15          MR. McALLISTER:  Objection.                    13:52:48

16   BY THE WITNESS:                                       13:52:49

17          A.    I would do assists on major case         13:52:49

18   investigations, yes.                                  13:52:51

19   BY MR. TSONIS:                                        13:52:52

20          Q.    Right.  Isn't one of the key differences 13:52:52

21   that major case investigates fraud at an entity       13:52:53

22   level whereas you, for example, would investigate     13:52:57

23   individual claims?                                    13:53:00

24          MR. McALLISTER:  Objection.                    13:53:01



1    BY THE WITNESS:                                          13:53:02

2        A.    No.  I'm going to disagree with your          13:53:02

3    statement.                                              13:53:06

4    BY MR. TSONIS:                                          13:53:07

5        Q.    How do you disagree with it?                  13:53:07

6        A.    Because I'm investigating sometimes the       13:53:09

7    actual clinic and the actual person who could be in     13:53:15

8    the ring.  When I say "the ring," I mean the            13:53:19

9    insurance fraud ring where they are a runner or         13:53:22

10   they are sometimes a staged accident or a caused        13:53:26

11   action participant.  So it's difficult to say that      13:53:30

12   I'm not part of a major case investigation.             13:53:34

13   Sometimes I am, sometimes I'm not.                       13:53:39

14       Q.    But I guess when you are doing those          13:53:42

15   things that you talked about, that is in                13:53:44

16   furtherance of somebody else's major case               13:53:47

17   investigation; right?                                    13:53:49

18       A.    I'd agree with that.  I'm not -- I did        13:53:51

19   not, like, have the actual major case file where        13:53:53

20   we're looking at the actual -- well, we were            13:53:56

21   looking at, but GEICO is looking at the actual          13:53:59

22   medical facility per se, if, you know -- I don't        13:54:03

23   know.                                                    13:54:07

24       Q.    Do you recall being in SIU in Region 2        13:54:08



| | | |
|---|---|---|
| 1 | that investigators were at some point assigned to | 13:54:13 |
| 2 | kind of specialty teams? | 13:54:17 |
| 3 | A.    Yes, I can recall that, yes. | 13:54:19 |
| 4 | Q.    Do you recall what the specialty teams | 13:54:21 |
| 5 | were? | 13:54:23 |
| 6 | A.    There was a -- I believe a medical | 13:54:24 |
| 7 | investigation unit, a theft investigation unit, and | 13:54:29 |
| 8 | a staged and caused accident unit, and then there | 13:54:33 |
| 9 | was a unit that just took, no matter what, took | 13:54:37 |
| 10 | every case. | 13:54:41 |
| 11 | Q.    Was that the coverage unit? | 13:54:43 |
| 12 | A.    I don't -- I don't know that | 13:54:45 |
| 13 | terminology, but it might have been.  I don't know. | 13:54:47 |
| 14 | Q.    Which one of those specialty teams, if | 13:54:50 |
| 15 | any, were you assigned to? | 13:54:53 |
| 16 | A.    I was -- I caught every case, so I was | 13:54:54 |
| 17 | in every -- I just -- they gave me cases no matter | 13:54:56 |
| 18 | what it was, and I -- I investigated them. | 13:55:03 |
| 19 | Q.    Was it your understanding that the | 13:55:05 |
| 20 | productivity goals were different for different | 13:55:08 |
| 21 | people that worked on those different teams? | 13:55:11 |
| 22 | A.    Yes. | 13:55:14 |
| 23 | MR. McALLISTER:  Objection. | 13:55:14 |
| 24 | | 13:55:14 |



```
1   BY THE WITNESS:                                    13:55:14

2        A.    Yes.                                    13:55:14

3   BY MR. TSONIS:                                     13:55:15

4        Q.    For example, you know, the staged team  13:55:15

5   had a different productivity goal than the theft   13:55:18

6   team?                                              13:55:22

7        A.    Yes.                                    13:55:22

8        MR. McALLISTER:  Objection.                   13:55:23

9   BY MR. TSONIS:                                     13:55:23

10       Q.    And is the reason for the different     13:55:23

11  goals is that the number of cases assigned to      13:55:25

12  people on those teams differed?                    13:55:28

13       MR. McALLISTER:  Objection.                   13:55:31

14  BY THE WITNESS:                                    13:55:32

15       A.    I don't -- I mean, again, I can only -- 13:55:32

16  I got every -- when I said I received every case,  13:55:36

17  theft cases, staged cases, so I can just say what  13:55:39

18  I -- I received a lot of cases.  They, from what   13:55:45

19  I -- I don't know.                                 13:55:51

20  BY MR. TSONIS:                                     13:55:53

21       Q.    Were the cases that you received, I     13:55:53

22  guess was it consistent, you know, month to month, 13:55:55

23  or was there a large degree of variability?        13:55:58

24       A.    Again, comparatively speaking, I        13:56:03
```



| | | |
|---|---|---|
| 1 | personally thought it was a high caseload for me to | 13:56:07 |
| 2 | do my job and provide a good product for the | 13:56:10 |
| 3 | company, so I did my best, but I don't know.  I | 13:56:13 |
| 4 | don't know how everybody in, like, the staged and | 13:56:20 |
| 5 | caused accidents, I don't know their caseload | 13:56:24 |
| 6 | specifically.  I don't. | 13:56:26 |
| 7 |     Q.  I'm just talking about your caseload | 13:56:27 |
| 8 | right now.  I guess I'll rephrase my question. | 13:56:29 |
| 9 |     Was your caseload just consistent, the | 13:56:31 |
| 10 | number of cases you were assigned month to month, | 13:56:33 |
| 11 | or did it vary significantly? | 13:56:35 |
| 12 |     A.  I mean, it varied.  I'm going to say it | 13:56:38 |
| 13 | varied. | 13:56:42 |
| 14 |     Q.  Were there times that your caseload was | 13:56:42 |
| 15 | low? | 13:56:45 |
| 16 |     MR. McALLISTER:  Objection. | 13:56:48 |
| 17 | BY THE WITNESS: | 13:56:49 |
| 18 |     A.  I don't -- low?  Lower than other times, | 13:56:49 |
| 19 | I'd say yes. | 13:56:53 |
| 20 | BY MR. TSONIS: | 13:56:54 |
| 21 |     Q.  Well, sure.  By default, one month might | 13:56:54 |
| 22 | be lower than the other, but were there times where | 13:56:58 |
| 23 | you would characterize your cases assigned as | 13:57:01 |
| 24 | pretty low? | 13:57:04 |



| | | |
|---|---|---|
| 1 | closing you out from catching new cases? | 14:54:53 |
| 2 | A.    Yes, I believe my manager -- my | 14:54:57 |
| 3 | supervisor had that, yes -- | 14:55:00 |
| 4 | Q.    Okay. | 14:55:00 |
| 5 | A.    -- option. | 14:55:02 |
| 6 | Q.    At times, is that something you would | 14:55:02 |
| 7 | request that your supervisor do? | 14:55:04 |
| 8 | A.    Sometimes I did request that, yes. | 14:55:06 |
| 9 | Q.    Okay.  And was the purpose of requesting | 14:55:08 |
| 10 | to be taken off sort of the ability to be assigned | 14:55:11 |
| 11 | new cases so that you can catch up on your existing | 14:55:14 |
| 12 | cases? | 14:55:17 |
| 13 | A.    Yes. | 14:55:17 |
| 14 | Q.    Okay.  Similarly, is another strategy | 14:55:18 |
| 15 | that could be used to manage your caseload at any | 14:55:22 |
| 16 | given time having your supervisor assign cases from | 14:55:26 |
| 17 | you to another investigator? | 14:55:29 |
| 18 | MR. McALLISTER:  Objection. | 14:55:31 |
| 19 | BY THE WITNESS: | 14:55:33 |
| 20 | A.    For assist purposes, yes, but not -- not | 14:55:33 |
| 21 | like give -- give another investigator my case.  So | 14:55:40 |
| 22 | I don't know how to answer that, Counsel.  I -- but | 14:55:46 |
| 23 | I'm going to say I guess yes.  Yes. | 14:55:50 |
| 24 | | 14:55:50 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      229

1      Q.   Do you see there's a Pay Change History          15:11:40

2   here?                                                    15:11:43

3      A.   I do.                                            15:11:44

4      Q.   Sort of in the middle.  All right.  And          15:11:44

5   do you see it sort of shows by year merit                15:11:46

6   compensation changes that happened?                      15:11:50

7      A.   Yes.                                             15:11:52

8      Q.   So from approximately, you know, 2017            15:11:53

9   where your total sort of base pay, it looks like,        15:12:00

10  was 66,800, as of January 28th of 2023, that it          15:12:03

11  increased to $90,171, approximately?                     15:12:10

12     A.   I see this, yes.                                 15:12:15

13     Q.   All right.  And it looks like you                15:12:16

14  received a merit increase every single year?             15:12:17

15     A.   Yes.                                             15:12:20

16     Q.   Now, if you go to the page ending in             15:12:20

17  4988.                                                    15:12:27

18     A.   Is that -- in the PDF, Counsel,                  15:12:31

19  which one?                                               15:12:34

20     Q.   Yeah, page 30.                                   15:12:36

21     A.   Okay.  Okay.                                     15:12:37

22     Q.   All right.  You see the bottom box here          15:12:43

23  that says Time Off Requests?                             15:12:44

24     A.   Yes.                                             15:12:47



| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 15:24:55 |
| 2 | A.   Because you have to sleep, you have to | 15:25:14 |
| 3 | eat properly, and there are other variables that | 15:25:15 |
| 4 | consider -- that have to take into consideration. | 15:25:18 |
| 5 | BY MR. TSONIS: | 15:25:19 |
| 6 | Q.   Okay.  Setting those sleep and eating | 15:25:19 |
| 7 | variables aside, isn't it true, just from a | 15:25:22 |
| 8 | quantity of time standpoint, you get to a hundred | 15:25:24 |
| 9 | faster if you're working 48.75 than you are 38.75? | 15:25:26 |
| 10 | A.   I'm going to say I don't know. | 15:25:31 |
| 11 | THE WITNESS:  And, Jarron, that's what I'm | 15:25:32 |
| 12 | going to say. | 15:25:35 |
| 13 | BY MR. TSONIS: | 15:25:36 |
| 14 | Q.   But you won't admit that mathematically | 15:25:36 |
| 15 | you can get to that point faster by working more | 15:25:39 |
| 16 | hours? | 15:25:42 |
| 17 | A.   I -- I will admit that you could. | 15:25:42 |
| 18 | Q.   Okay.  But you won't admit that it's | 15:25:44 |
| 19 | possible you close cases faster -- | 15:25:48 |
| 20 | A.   I just said that. | 15:25:48 |
| 21 | THE COURT REPORTER:  Hold on.  Sir, please let | 15:25:48 |
| 22 | him get the question out. | 15:25:48 |
| 23 | BY MR. TSONIS: | 15:25:53 |
| 24 | Q.   Then are you agreeing that it's possible | 15:25:53 |



LOUIS CANIGLIA, JR.                                      January 17, 2025
KEITH FISCHER, et al. vs GEICO                                      243

| | | |
|---|---|---|
| 1 | that you closed cases faster because you claimed to | 15:25:55 |
| 2 | have worked more hours? | 15:25:57 |
| 3 | MR. McALLISTER: Objection. | 15:25:58 |
| 4 | BY THE WITNESS: | 15:26:00 |
| 5 | A.   For the sake of keeping this interview | 15:26:00 |
| 6 | rolling, I will say yes. | 15:26:08 |
| 7 | BY MR. TSONIS: | 15:26:11 |
| 8 | Q.   Okay.  You can close out this exhibit. | 15:26:11 |
| 9 | I'm going to send you now what's being | 15:26:59 |
| 10 | marked as I believe it's Exhibit 9. | 15:27:01 |
| 11 | MR. McALLISTER: Yes. | 15:27:07 |
| 12 | (WHEREUPON, a certain document was | 15:27:07 |
| 13 | marked Caniglia Deposition Exhibit | |
| 14 | No. 9, for identification, as of | |
| 15 | January 17, 2025.) | 15:27:17 |
| 16 | BY MR. TSONIS: | 15:27:17 |
| 17 | Q.   Let me know when you have it opened. | 15:27:18 |
| 18 | A.   It's titled as June 1, 2023? | 15:27:19 |
| 19 | Q.   Correct.  And for the record, Exhibit 9 | 15:27:22 |
| 20 | is a document bearing Bates label G011375. | 15:27:25 |
| 21 | Do you see that this is an e-mail from | 15:27:27 |
| 22 | you to Toni D'Agata on June 1, '23? | 15:27:30 |
| 23 | A.   Yes. | 15:27:34 |
| 24 | Q.   All right.  And this is the time where | 15:27:34 |



LOUIS CANIGLIA, JR.                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                       244

1    Ms. D'Agata would have been your supervisor; right?    15:27:38

2         A.    Yes.                                          15:27:40

3         Q.    All right.  And you ultimately -- or the     15:27:41

4    subject here is overtime?                               15:27:44

5         A.    Yes.                                          15:27:44

6         Q.    Okay.  And in the bottom e-mail, you         15:27:53

7    request essentially overtime because you had            15:27:54

8    multiple cases that you needed to work on?              15:27:58

9         A.    From what I'm reading, received three        15:28:02

10   cases Tuesday, three cases Wednesday, and two           15:28:07

11   today.  Counsel, yeah, I'd say yeah, that's what I      15:28:10

12   was asking, yes.                                         15:28:15

13        Q.    Okay.  And Ms. D'Agata asked, you know,      15:28:16

14   what do you need, an extra hour?  Right?                15:28:19

15        A.    Yes.  Yes.                                    15:28:28

16        Q.    And then you said, yeah, maybe I have        15:28:29

17   two left to do; right?                                   15:28:31

18        A.    Yeah.  Yes.                                    15:28:32

19        Q.    So you understood that if you needed         15:28:33

20   overtime, you could request it from Ms. D'Agata?        15:28:36

21        MR. McALLISTER:  Objection.                        15:28:40

22   BY THE WITNESS:                                          15:28:41

23        A.    I -- yeah, of course I can ask.  Why         15:28:41

24   not?  Yeah.                                              15:28:48



1    BY MR. TSONIS:                                    15:28:48

2         Q.    Well, in this case, she was willing to    15:28:48

3    provide some additional overtime it seems; right?    15:28:50

4         MR. McALLISTER:  Objection.                  15:28:50

5    BY THE WITNESS:                                    15:28:52

6         A.    It looks like she was willing to provide    15:28:52

7    it.  I don't know if I was granted it, though, but    15:28:55

8    again...                                           15:28:57

9    BY MR. TSONIS:                                     15:28:59

10        Q.    Okay.  You can close that out.          15:28:59

11             I'm going to send you what's going to be    15:29:17

12   marked as Exhibit 10 now.                          15:29:19

13                   (WHEREUPON, a certain document was    15:29:19

14                    marked Caniglia Deposition Exhibit

15                    No. 10, for identification, as of

16                    January 17, 2025.)                15:29:31

17   BY MR. TSONIS:                                     15:29:31

18        Q.    Let me know when you've got it open.    15:29:31

19        A.    Looks like an e-mail from June 26, 2023.    15:29:41

20        Q.    Yep.  And so in this e-mail, again, the    15:29:46

21   subject is overtime; right?  OT?                   15:29:49

22        A.    Yes.                                    15:29:51

23        Q.    All right.  And again, you were         15:29:51

24   informing Toni D'Agata that you needed to work     15:29:55



1   overtime to work on your cases?                                15:29:59

2        A.    I requested, yes.                                   15:30:00

3        Q.    Okay.  You can close that out.                      15:30:02

4              I'm going to send you what is going to              15:30:48

5   be marked as Exhibit 11.                                       15:30:50

6                    (WHEREUPON, a certain document was            15:30:50

7                    marked Caniglia Deposition Exhibit

8                    No. 11, for identification, as of

9                    January 17, 2025.)                            15:31:04

10  BY MR. TSONIS:                                                 15:31:04

11       Q.    Let me know when you have it open.                  15:31:13

12       A.    Okay.  I can see this.                              15:31:21

13       Q.    Have you seen this document before?                 15:31:23

14       A.    To be honest with you, this is the first           15:31:24

15  time I'm seeing this document.                                 15:31:29

16       Q.    Okay.  Do you under -- well, what do you            15:31:30

17  understand this document to be?                                15:31:34

18       A.    I mean, my rating, I guess.  I mean, it             15:31:36

19  might have been different when I -- I don't know.              15:31:47

20  Like, this document, I could say I never saw it,              15:31:50

21  but I think this is like my -- maybe a rating on              15:31:52

22  how I did for the year in terms of core metrics and           15:31:56

23  my merit increase.                                             15:32:00

24       Q.    Okay.  Well, if you look at the top                 15:32:02



| | | |
|---|---|---|
| 1 | BY MR. TSONIS: | 15:52:29 |
| 2 | Q.    Right.  So you were compensated -- | 15:52:29 |
| 3 | A.    I don't know if I was compensated for | 15:52:32 |
| 4 | that. | 15:52:34 |
| 5 | Q.    Well, you were paid for the 15-minute | 15:52:34 |
| 6 | breaks; right? | 15:52:36 |
| 7 | A.    I don't know. | 15:52:36 |
| 8 | MR. McALLISTER:  Objection. | 15:52:38 |
| 9 | BY MR. TSONIS: | 15:52:39 |
| 10 | Q.    Right.  You just said that they were | 15:52:39 |
| 11 | compensated. | 15:52:42 |
| 12 | A.    Yeah, they were allegedly compensated, | 15:52:43 |
| 13 | yes. | 15:52:46 |
| 14 | Q.    Okay.  So with respect to your meal | 15:52:46 |
| 15 | period, are you -- so when you would be -- I think | 15:52:51 |
| 16 | you just said there were times where you worked | 15:52:56 |
| 17 | during your meal period? | 15:52:58 |
| 18 | A.    Absolutely. | 15:52:59 |
| 19 | Q.    It would either be at your home or out | 15:53:00 |
| 20 | in the field doing that; right? | 15:53:04 |
| 21 | A.    Both. | 15:53:05 |
| 22 | Q.    Your supervisor is not in your home or | 15:53:06 |
| 23 | out in the field with you? | 15:53:08 |
| 24 | A.    Not all the time, no.  I'm going to say | 15:53:09 |



```
 1    no.                                             15:53:13

 2         Q.    Well, was your supervisor ever in your    15:53:14

 3    home with you?                                  15:53:15

 4         A.    Was my supervisor ever in my home with    15:53:16

 5    me, no.                                         15:53:20

 6         Q.    Okay.  So if you're working on your   15:53:21

 7    lunch, your supervisor wouldn't know that?      15:53:24

 8         MR. McALLISTER:  Objection.                15:53:26

 9    BY THE WITNESS:                                 15:53:27

10         A.    I don't -- I don't know.             15:53:27

11    BY MR. TSONIS:                                  15:53:31

12         Q.    Your supervisor didn't require you to    15:53:31

13    take lunch at a certain time; right?            15:53:34

14         A.    No, we didn't have a lunch period.   15:53:37

15         Q.    Okay.  So given that you could take   15:53:39

16    lunch whenever you want and your supervisor wasn't    15:53:41

17    with you, your supervisor wouldn't know what time    15:53:43

18    you're on lunch; right?                         15:53:46

19         MR. McALLISTER:  Objection.                15:53:48

20    BY THE WITNESS:                                 15:53:49

21         A.    That's -- no.  That's -- he -- he or she    15:53:49

22    could know if I was on lunch at sometimes.      15:53:52

23    BY MR. TSONIS:                                  15:53:55

24         Q.    Unless you told them, they wouldn't know    15:53:55
```



| | | |
|---|---|---|
| 1 | that you were on lunch; right? | 15:53:58 |
| 2 | MR. McALLISTER:  Objection. | 15:54:00 |
| 3 | BY THE WITNESS: | 15:54:01 |
| 4 | A.    Well, obvious -- yes, obviously.  I | 15:54:01 |
| 5 | mean, how would they know I'm on lunch unless they | 15:54:03 |
| 6 | had a camera in my house or something like that, | 15:54:06 |
| 7 | yeah. | 15:54:08 |
| 8 | BY MR. TSONIS: | 15:54:09 |
| 9 | Q.    Did you ever tell any supervisor "I'm | 15:54:09 |
| 10 | working on my lunch"? | 15:54:10 |
| 11 | A.    Yes. | 15:54:12 |
| 12 | Q.    When? | 15:54:13 |
| 13 | A.    I don't recall. | 15:54:13 |
| 14 | Q.    Who did you tell that to? | 15:54:15 |
| 15 | A.    Gerry Cassagne, Toni D'Agata. | 15:54:17 |
| 16 | Q.    Okay.  Your declaration references the | 15:54:30 |
| 17 | time that you spent working overtime, allegedly, | 15:54:33 |
| 18 | while you were working for GEICO; right? | 15:54:36 |
| 19 | A.    It's not allegedly.  It's what it is, | 15:54:38 |
| 20 | but yes. | 15:54:43 |
| 21 | Q.    Okay.  Your declaration, do you recall, | 15:54:43 |
| 22 | references time that you claim to have spent | 15:54:45 |
| 23 | working prior to and after your normal scheduled | 15:54:47 |
| 24 | shift? | 15:54:50 |



| | | |
|---|---|---|
| 1 | and sign the transcript?  We have to ask. | 16:11:34 |
| 2 | MR. McALLISTER:  Oh, sure. | 16:11:34 |
| 3 | THE COURT REPORTER:  Okay. | 16:11:34 |
| 4 | MR. TSONIS:  And we'll do -- | 16:11:36 |
| 5 | THE VIDEOGRAPHER:  Thank you.  This will | 16:11:36 |
| 6 | conclude today's videoconference deposition of | 16:11:40 |
| 7 | Louis Caniglia, Jr., taken on January 17, 2025, at | 16:11:42 |
| 8 | 4:10 p.m. Central Time. | 16:11:48 |
| 9 | THE COURT REPORTER:  So I did get -- it's | 16:11:48 |
| 10 | five-day delivery for you, Counsel.  I did get | 16:11:48 |
| 11 | that. | 16:11:48 |
| 12 | And Counsel, you said you wanted a copy? | 16:12:01 |
| 13 | MR. TSONIS:  Electronic transcript, yeah, | 16:12:01 |
| 14 | that's fine. | 16:12:01 |
| 15 | THE COURT REPORTER:  Mr. McAllister, copy? | 16:12:05 |
| 16 | MR. McALLISTER:  Yes. | 16:12:05 |
| 17 | THE COURT REPORTER:  Okay.  All right. | |
| 18 | (WHEREUPON, the deposition concluded | |
| 19 | at 4:12 p.m.) | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |



```
 1   STATE OF ILLINOIS    )

 2                        )  SS:

 3   COUNTY OF DUPAGE     )

 4              I, ALICE M. SCHWINGER, CSR No. 84-2913,

 5   a Certified Shorthand Reporter of the State of

 6   Illinois, do hereby certify:

 7              That previous to the commencement of the

 8   examination of the witness, the witness was duly

 9   sworn to testify the whole truth concerning the

10   matters herein;

11              That the foregoing deposition transcript

12   was reported stenographically by me, was thereafter

13   reduced to typewriting under my personal direction

14   and constitutes a true record of the testimony

15   given and the proceedings had;

16              That the said deposition was taken

17   before me at the time and place specified;

18              That I am not a relative or employee or

19   attorney or counsel, nor a relative or employee of

20   such attorney or counsel for any of the parties

21   hereto, nor interested directly or indirectly in

22   the outcome of this action.

23              IN WITNESS WHEREOF, I do hereunto set my

24   hand at Woodridge, Illinois, this 21st day of
```



1    January, A.D. 2025.

2

3

4

5                          _Alice M. Schwinger_

6                    Certified Shorthand Reporter

7

8

9    ALICE M. SCHWINGER, CSR No. 84-2913

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

