# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

----------------------------x

ASHLEY ALVAREZ and MARK          :

SOWELL, individually and on :

behalf of all others             :

similarly situated,              :

            Plaintiffs,          :

v.                               :   CASE NO.

GOVERNMENT EMPLOYEES             :   1:24-cv-00722 (GLR)

INSURANCE COMPANY, d/b/a         :

GEICO,                           :

            Defendants.          :

----------------------------x

***SOME PORTIONS OF THIS TRANSCRIPT ARE IDENTIFIED

    AS CONFIDENTIAL AND WERE SEPARATELY BOUND***

    Videotaped Zoom Deposition of SCOTT GOSS

            Thursday, March 26, 2026

                  9:39 a.m.

BEFORE: Cassandra E. Ellis,

CA-CSR #14448, CA-CCG, HI-CSR, WA-CCR,

RMR, RDR, CRR, Realtime Systems Administrator

VIDEOTAPED ZOOM DEPOSITION of SCOTT GOSS, taken before CASSANDRA E. ELLIS, Registered Professional Reporter, Registered Merit Reporter, Registered Diplomate Reporter, Certified Realtime Reporter; California Certified Shorthand Reporter; California Certified CART Generalist; Washington State Certified Court Reporter; Hawaii Certified Shorthand Reporter; Notary Public, held remotely, on Thursday, March 26, 2026, commencing at 9:39 a.m. and concluding at 4:34 p.m.

                    A P P E A R A N C E S

        ON BEHALF OF PLAINTIFF:

                MICHAEL J. SCIMONE, ESQUIRE (via Zoom)

                ZARKA SHABIR D'SOUZA, ESQUIRE (via Zoom)

                OUTTEN & GOLDEN, LLP

                685 Third Avenue, 25th Floor

                New York, New York  10017

                (212) 245-1000

                Mscimone@outtengolden.com

                Zdsouza@outtengolden.com




        ON BEHALF OF DEFENDANTS:

                JENNIFER A. RILEY, ESQUIRE (via Zoom)

                DUANE MORRIS, LLP

                190 South LaSalle Street, Suite 3700

                Chicago, Illinois  60603

                (312) 499-6700

                S-gm-alvarezgeico.duanemorris.com


    ALSO PRESENT:  Milton Washington, Videographer

P R O C E E D I N G S

THE VIDEOGRAPHER:  Good morning. We are on the record at 9:39 a.m. eastern time, March 26th, 2026, to begin the deposition of Scott Goss In the Matter of Ashley Alvarez, et al., versus Government Employees Insurance Company doing business as Geico.

The venue of this case is United States District Court for the District of Maryland.  The Case Number is 1:24-cv-00722.

This deposition is taking place via Zoom.  The legal videographer is Milton Washington, here on behalf of Steno, whose business address is 315 West 9th Street, Suite 807, Los Angeles, California  90015.

Would counsel please identify yourselves and state whom you represent.

MR. SCIMONE:  Michael Scimone with Outten and Golden for the plaintiffs, I'm joined by my colleague, Zarka D'Souza.

MS. RILEY:  Jennifer Riley of Duane Morris for the defendants.

THE VIDEOGRAPHER:  Thank you, counsel.

Would the court reporter please

identify yourself and swear in the witness.

THE REPORTER:  My name is Cassandra Ellis and I am the California certified stenographic reporter.  My CSR Number is 14448.

And if I can have the witness raise his right hand to be sworn.

(Witness sworn)

THE REPORTER:  You may begin.

MR. SCIMONE:  Thank you, Cassandra.

SCOTT GOSS

having been duly sworn, testified as follows:

EXAMINATION

BY MR. SCIMONE:

Q.   Good morning, Mr. Goss.  My name is Michael Scimone.  I'm with the law firm Outten Golden, and I represent the plaintiffs in this matter.

Have you ever been deposed before?

A.   Yes, sir.

Q.   Okay.  So was that recently?

A.   It's -- it's been a few years, I can't tell you how many, but about eight, maybe.

Q.   Okay.  Well then, just for a refresher, I'm going to walk through some of the ground rules for depositions.

overview, outlook overview?

A.    Responsible for all the day-to-day operations as they relate to single claim auto investigations, and I'm responsible for all referral triage and all automation of referrals.

Q.    How long have you been in your current role?

A.    I don't remember the exact date that I was officially promoted, but I took over this role in May of '23.  There was a period of time where I did it without title, I want to say that was June or July, but I don't remember the exact month.

Q.    June or July of 2023?

A.    Yes.

Q.    What was your position before that?

A.    I was an SIU regional manager.

Q.    What region were you responsible for?

A.    Region 3, Southeast.

Q.    How long were you in the regional manager position?

A.    13 years.

Q.    What was your position before that?

A.    I was an SIU field supervisor.

SCOTT GOSS
MARCH 26, 2026

JOB NO. 2486474

including the SIU field investigator.

Q.    So this title slide says Workday, so was the check-in/check-out feature, was that at -- itself, a Workday or was that a part of Workday?

A.    I have personally never used this, so I don't recall.

Q.    Okay.  What is Workday, can you define that for us?

A.    Workday is an HRIS, human resources information system, program that Geico is contracted with.

Q.    Was that in use before 2022?

A.    Yes, it had been in use -- I -- I don't -- I don't want to give you an exact date, but it had been in use for awhile prior to this.

Q.    Since before 2020?

A.    That's about when we adopted it, I just don't know the exact date.

Q.    Was this check-in/check-out feature a new feature, at this time, in 2022, in December of 2022?

A.    Yes.  As we adopted the HRIS vendor it came in stages or layers, however you want to say that.  And at this time we had finally

SCOTT GOSS
MARCH 26, 2026

JOB NO. 2486474

reached this point, you know, that was time to adopt this.

Q.   Do you know who created this presentation about the new feature?

A.   I don't know who created the presentation.

Q.   Was it you, can you say that?

A.   It was not me.

Q.   Do you know where it -- did you -- well, are you familiar with the presentation?

A.   I'm familiar to the extent that I cite in this meeting, yes.

Q.   All right.  So you were part of the audience who had this presented to you, then?

A.   Yes.  And then I repeated it to my supervisors.

Q.   I see.  So you both received a presentation -- presentation, and then you also used this slide deck to give a presentation?

A.   Or to pass the information along, same difference, yes.

Q.   Okay.  Let's move down to slide six, which is Bates numbered 10739.  And so we have the heading here:  Why is this changing. So I take it this is listing the reasons Geico

SCOTT GOSS                                                        JOB NO. 2486474
MARCH 26, 2026

referring to?

A.   This -- this slide deck, this training.

Q.   Okay.  So this was being presented by someone in the auto damage component of Geico?

A.   That's correct.

Q.   And is that the -- the -- is that part of the adjuster function in the company?

A.   Yeah, auto damages are field appraisers who go and look at cars and/or physical damage of any type and do estimates.

Q.   And you were aware of those chall- -- legal challenges involving auto damage adjusters in -- at this time in December of 2022?

A.   Again, generally speak, yes, I had no details on it.

Q.   Okay.  And the last bullet here or last item says:  This places the responsibility on the associate to report the correct time and for management to approve it daily.

Do you understand "this" to be referring to the new feature?

A.   I understand this to be referring

case-by-case basis, person-by-person.

Q.    Is there any guidance given to investigators about whether it was preferable for them to do their administrative work before the appointment?

A.    Not that I'm aware of, we give them a lot of latitude to set their own schedules, specifically in the field, I'm speaking only to the field.

Q.    Right.  I understand that to be the context for this, as well.

Looking at the bottom box, drive by, is this referring to a case where an investigator goes to canvas the scene from their car?

A.    No, that's a -- that's a term specific to auto damage.  They have two types of contractual shops, they had what they called ARX shops, and you're going to ask me what ARX means, I don't remember.  I just know the -- I know what they called them.  They have an ARX shop, and then they have what they call drive-by locations, where we don't have an official office at that location, but we do accept appointments there, on a limited basis, where an

And many of them may need to work early into the evening, because that's when people are off work and they can get interviews, et cetera.

So we allow them, if they need to, to take some hours in the middle of the day and flex their time in the afternoon.

If on -- I'm making a hypothetical -- on a Monday they work nine hours, they can make that, you know, overage of our normal 7.75 up later in the week by taking some hours off.  And we give them pretty free rein to manage their schedules in that manner.

If somebody has, for example, a program at their child's school or they need to take a child to the doctor they can flex those hours in and out.

A good example of that is just this week I had an associate even in our office setting who we allowed to flex her morning hours so that she could attend some doctor's appointments without using leave time, and then she just made the hours up before the week was over.

Q.   Okay.  So now looking at this box

in Exhibit 4, is this an accurate description of the flex time policy?

MS. RILEY:  Object to form.

A.    Not for SIU, probably for AD.

Q.    Does this accurately describe how that policy works in SIU?

A.    No.

Q.    What are the differences?

A.    We don't need a manager's approval. Again, we give them approval outright.  We function a little differently than AD in the sense that we don't have to be in body shops during the time body shops are open.

And much of what we need to do occurs after normal business hours, sometimes. So we -- we -- we allow the flexibility for them to flex their time, utilize their own schedules so that they can get the work they need to do done.

Q.    Is there any sort of approval needed for someone to flex their time at SIU?

A.    Not officially, I do know some supervisors want to be at least let -- you know, be heads up that they're doing it, but in general, no.

week.

So if we're working overtime or need overtime we just need to have a discussion about why.

Q.    All right.  So if someone works overtime, and asks for approval after the fact, is that the performance coaching that's referred to in this box, that conversation you referred to?

A.    That's more of an AD conversation. I would probably have a conversation with the supervisor for approving it.

Just for -- just for context, this -- this is, like I said, most of this is AD, it's not really us.  We just sort of tag along.

Q.    But you were just giving answers as to SIU, that's what I was asking about.

A.    Yes, I was giving answers as to SIU.  I just -- this document is AD is on that image.

Q.    I understand.  But you did also give this presentation to your unit, afterwards, you said; correct?

A.    Yes.

REPORTER'S CERTIFICATION ORAL DEPOSITION OF

SCOTT GOSS

March 26, 2026

I, Cassandra E. Ellis, Certified Shorthand Reporter hereby certify to the following: That the witness, SCOTT GOSS, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

I further certify that pursuant to FRCP Rule 30(e)(1) that the signature of the deponent:

___X___ was requested by the deponent or a party before the completion of the deposition and returned within 30 days from date of receipt of the transcript.

If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

_____ was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken.

Further, I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

Subscribed and sworn to on this the 27TH day of March 2026.

_____
CASSANDRA E. ELLIS, CA CSR; HI CSR; WA CCR RMR, RDR, CRR