# EXHIBIT B

DocuSign Envelope ID: 0D0E55DE-2286-49DA-9517-8870A33BC29B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ASHLEY ALVAREZ and MARK SOWELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:24-CV-00722 (GLR) |

## DECLARATION OF SCOTT GOSS

I, Scott Goss, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am an employee of Government Employees Insurance Company ("GEICO" or the "Company").  I currently work for GEICO as a Senior Manager for the Special Investigations Unit ("SIU").  In this role, I mostly work remote and am responsible for the SIU Investigative Division – Eastern US, Risk Assessment – Eastern US, and Major Case Operations countrywide. I have worked for the Company for about 24 years.

2.      I have worked for the Company as a Senior Manager for SIU since approximately May 2023 in practice and since approximately October 2023 in title.  Prior to commencing my current role, I worked for the Company as SIU Manager for the former Southeast Region (Region 3) since July 2010.  Former Region 3 included all of the following states:  South Carolina, Georgia, Alabama, Mississippi, Louisiana, Arkansas, and, at various times, Tennessee.

3.     Region 3 was one of a number of separate Regions within the former SIU organization structure in place until SIU's recent reorganization in 2023.

**PRE-2023 SIU REGIONAL STRUCTURE**

4.     As SIU Manager for Region 3 from July 2010 until in or around July 2023, I directly managed a varying number of SIU supervisors.  Each of the SIU supervisors I directly managed in turn directly managed various SIU investigators in different titles and roles.

5.     As SIU Manager, I was indirectly responsible for overseeing all SIU investigators in Region 3.  The investigators reported to their respective SIU supervisors, and the supervisors reported to me directly.

6.     I oversaw approximately 100 SIU investigators in various roles throughout Region 3 at any given time, organized and directly managed by up to 16 different SIU supervisors at a given time.

7.     As SIU Manager, I was in charge of all high-level aspects of SIU investigations in Region 3.  I set Region 3's overall strategy, training and deployment tactics on a state-by-state scale, oversaw the production levels and quality of each SIU supervisor and SIU investigator's work, and worked to ensure the investigations team was productive and effective in taking on and closing out cases.  I was also responsible for Regional training, compliance, budgeting, business planning, and creating operational plans for Region 3 – tasks for which I am no longer responsible in my current role within the recently restructured SIU.

8.     Prior to the 2023 SIU reorganization, there were a number of distinct and separate SIU Regions, and I did not interact with SIU supervisors or investigators in Regions other than Region 3.  Each Region had its own practices and operated separately from other Regions.  As such, my knowledge of relevant first-hand information is almost entirely limited to Region 3

2

DocuSign Envelope ID: 0D0E55DE-2286-49DA-9517-8870A33BC29B

because, in my experience, SIU Managers were only familiar with day-to-day operations and the intricacies of their own Regions until the 2023 reorganization.

9.      As an example of how each Region differed in operation and practice, unlike some Regions, Region 3 did not have any specialty SIU investigator roles, in which certain investigators only worked certain types of cases.  These could include specific case types such as medical cases or personal injury protection ("PIP") cases.  Although I do not have first-hand knowledge of other Regional specialty assignment practices for SIU investigators, I understand there were specialties in areas of the Northeastern United States, including in New York, as well as in Florida.  My philosophy in Region 3 was that each SIU investigator should work any case he or she was assigned, regardless of the specific case type.

10.      SIU investigators in various roles in my Region were either field-based investigators or desk-based investigators.  Region 3 did not have any "hybrid" investigators who worked both in the field and at a desk.

## IMPACT OF COVID-19 ON REGION 3

11.      During the COVID-19 pandemic, with the exception of Louisiana, all other states in Region 3 re-opened in-person activities within a month or two of initially "shutting down" in March 2020.  As a result, SIU investigators in different jobs in Region 3 were back to their normal in-person work practices by approximately June 2020, if not before.

12.      During the one or two-month lockdown period for portions of Region 3 from approximately late March to May 2020, many investigators worked more cases virtually and were limited to work and tasks that could be performed remotely, e.g., through the internet, rather than in-person.

3

13.     In the time after the onset of COVID-19, Region 3 changed from approximately 70 people working as field-based investigators and 30 people working as desk-based investigators to 70 people working as desk-based investigators and 30 people working as field-based investigators.

14.     While some SIU field-based investigators in Region 3 did get more cases during the limited period of lockdown at the onset of COVID-19, there was no increase in actual workload for SIU investigators during COVID-19.  These investigators did not leave their homes for this limited period of time and generally did not need to travel in order to complete their cases.

15.     COVID-19 impacted my job as well; prior to COVID-19, I travelled from state-to-state within my Region to work with and supervise my SIU supervisors and investigators approximately 25 to 28 weeks per year.  After COVID-19, my travel decreased to approximately 10 to 12 weeks per year.  I have always worked, and continue to work mostly remotely during times when I am not travelling.

## WORK HOURS / TIMEKEEPING

16.     In Region 3, SIU investigators had a regular daily work schedule of 8:00 a.m. to 4:30 p.m., including breaks.  However, my practice (and the corresponding practice of SIU supervisors within Region 3) was always to allow SIU investigators to "flex" their time as needed – in particular for field-based investigators.  As an example, there were times when an insured worked during the day and did not want to speak with an investigator while the insured was at work, preferring to speak at night after finishing their workday.  My regular practice was to allow field-based investigators working under similar situations, or any time they needed to work on an investigation after their regularly scheduled work hours, to start their workdays later.

Other examples included field-based investigators who wanted to go to the gym at a certain time or pick up their kids from school during the regular workday schedule, and they'd ask if they could complete their workdays by changing their daily work times. We were always super flexible about flexing work hours within a given workweek as long as the investigators worked no more than 38.75 hours within the same workweek.

17. Field-based and desk-based investigators working in various roles in Region 3 differed in many respects. For example, although the numbers changed over time, field-based investigators generally received 7 to 10 new cases per week. The timing of when they received new cases differed drastically based on where they were physically located. For example, field-based investigators working in Atlanta, Georgia would usually receive a full caseload on Mondays due to the high number of cases present in the area, such as one fraud-filled section of South Atlanta known as a "super sector." Field-based investigators in other locations sometimes would not receive their cases until later in the week depending on the flow and frequency of cases in their respective areas. Desk-based investigators generally received their 14 new cases each week as part of a round robin distribution system.

18. Field-based investigators performed a series of background tasks on each case, such as confirming any prior claims, history, notes, review of policy logs, reviewing public records, making their own decisions on a case plan of action, and, depending on the case, potentially pulling event data recorder ("EDR") records from vehicles, or taking examinations under oath or potentially a face-to-face statement. Field-based investigators also went to the scene to pull videos, canvass the scene, inspect vehicles to confirm whether the damages claimed matched the actual damage, determine if an expert was required, etc. Some cases required more specific investigative strategies as well, such as examining medical records for medical fraud

5

DocuSign Envelope ID: 0D0E55DE-2286-49DA-9517-8870A33BC29B

cases. Overall, field-based investigators made their own decisions on the case direction and flow with overarching direction and guidance from their supervisors.

19. Desk-based investigators, on the other hand, performed a full workup on the background of the claims remotely, using technologies GEICO pays for such as CARFAX for vehicle history reports and Digital Recognition Network for license plate location histories. Desk-based investigators also performed phone interviews, virtual examinations under oath, and were able to seek what is called an "assist" from a field-based investigator for anything they needed in the field as part of their own cases, such as visiting a property to confirm whether a stolen vehicle was present. "Assists" counted toward the caseload requirements for field-based investigators and generally resulted in those investigators receiving credit for casework.

20. SIU investigators in Region 3 received two paid 15-minute breaks and a 45-minute unpaid lunch break each workday, and they were able to take those breaks whenever they wanted during their workdays.

21. All SIU investigators have always been required and expected to accurately record their work hours. My message throughout my tenure as head of Region 3 was that all time worked needed to be entered accurately and correctly.

22. At some point after the onset of COVID, GEICO began requiring field-based investigators to punch in and out whenever they begin and stop working, which they're able to do through an application on their phone.

23. I never told any SIU investigators in any role, or heard any SIU supervisor tell any SIU investigator, to perform any work for GEICO without accurately recording it.

24. The message I repeated to the SIU investigators in my Region many times was always "work your work time." We do not discourage investigators from taking time off work and we do not want them to work after their scheduled work hours, period.

25. Pursuant to GEICO policy, all SIU investigators are expected to raise any errors in the hours reflected on their timekeeping entries and to immediately bring any such issues to the attention of their supervisor, Human Resources, or Berkshire Hathaway's corporate Human Resources.

26. Throughout my tenure as SIU Manager for Region 3, I do not recall any errors in the hours reflected on any SIU investigator's time records being brought to my attention.

27. During my time with the Company, I have always required SIU investigators to accurately record all of the time that they work, including any overtime hours, whether approved in advance or not. I repeatedly informed SIU supervisors and SIU investigators in various roles that they should track all of their time worked so they can be paid for all of their time worked, including all regular work hours and all overtime work hours.

28. No one from the Company has ever told me or instructed me to tell anyone else at the Company not to allow SIU investigators to record all of the hours that they work. Rather, the Company strictly forbids all non-exempt Company employees from working "off the clock"; that is, the Company does not allow non-exempt employees to work any amount of time without accurately recording such time. I have never witnessed anyone from the Company instructing or encouraging anyone else at the Company to work without recording all of their time worked – including overtime.

7

DocuSign Envelope ID: 0D0E55DE-2286-49DA-9517-8870A33BC29B

29.     I am not aware of anyone at the Company ever deterring or discouraging any SIU investigators, in any role, from accurately recording and reporting all of their time worked, including overtime and non-overtime hours worked.

## COMPENSATION

30.     SIU investigators are currently paid on an hourly basis for all of their hours worked.

31.     SIU investigators are paid different rates according to set pay grades.

32.     In Region 3, if SIU investigators in any role worked more than 40 hours in a week, they received overtime compensation for all of the time they worked over 40 weekly hours.  While I approved overtime hours for some investigators based on the circumstances, it was a rare occurrence that any would need to work overtime.  Investigators in all roles were able to consistently complete their cases at a very high level within the allotted 38.75 weekly work hours.  As a result, if an investigator requested overtime to complete their cases, I sometimes would have a conversation with them to determine the methods of how they were completing their work.  Most of the time, those investigators would be investigating aspects of a case they shouldn't be spending time on, for example.  I was generally able to get to the root cause of the issue and coach them to spend less time on a file.

33.     Overall, investigators in various roles in Region 3 worked overtime infrequently, aside from CAT duty.  CAT, or catastrophe, duty were rare times when a catastrophe arose in a certain part of the country, requiring hours of investigation work outside of regular case work.  In my experience, there were three coordinating supervisors for CAT duty across the country – one on the East Coast, one for Central US, and one for the West Coast.  Those supervisors sought assistance from Regional Managers nationwide during catastrophes and asked for investigator

8

volunteers who unilaterally signed up to work CAT duty to take on same. Electing CAT duty was always entirely voluntary and up to the investigator.

34.     Outside of CAT duty or special individual circumstances, there is absolutely no need for SIU investigators in any role to work overtime or time beyond their regular 38.75 weekly hour work schedule. I am not aware of any reason that SIU investigators would have needed to work overtime based on the amount of work the SIU investigators received and performed in Region 3.

## POLICIES

35.     I know that the Company Handbook contains the Company's policies regarding accurate timekeeping, compensation (including for all overtime and non-overtime hours), as well as the Company's complaint procedures, which explain how employees can raise internal or external concerns or complaints. The Company provides many options for employees to raise any such concerns or complaints.

36.     I am not aware of any SIU investigators in any job title in Region 3 who made complaints, voiced concerns, or who expressed that they had not been or was not being compensated properly.

37.     I never heard any allegations of SIU investigators having their work hours shaved or being told they would not be paid for all of their time worked, including overtime hours.

## PARTICIPATION

38.     I am providing this statement of my own free will. I have not been threatened, coerced, or in any way intimidated by GEICO or its attorneys concerning any aspect of this declaration.

9

39.     I understand and acknowledge that GEICO will not retaliate or take any negative action against me for making this declaration or for not making this declaration, if I elect not to make it.

40.     I have not been promised anything in exchange for making this declaration and understand that I will not be subject to favoritism or receive any benefit from GEICO for providing this declaration.

I declare under penalty of perjury that the foregoing is true and correct.


May 28, 2024
_____
Date

DocuSigned by:
Scott Goss
E49F76947679414...
_____
Scott Goss

10