# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - )

KEITH FISCHER, MICHAEL O'SULLIVAN,)

JOHN MOESER, LOUIS PIA, THOMAS    ) Case No.:

BARDEN, CONSTANCE MANGAN, and     ) 2:23 Civ. 2848

CHARISE JONES, individually and   ) (GRB) (ARL)

on behalf of all others similarly )

situated,                         )

                  Plaintiffs,     )

    - v -                         )

GOVERNMENT EMPLOYEES INSURANCE    )

COMPANY d/b/a GEICO,              )

                  Defendant.      )

- - - - - - - - - - - - - - - - - - - )


    REMOTE VIDEOTAPED DEPOSITION OF MICHAEL GREY


Reported by:

Kim M. Brantley

Job No: J12254485


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

MICHAEL GREY

Wednesday, January 22, 2025

Time: 10:02 a.m.

Remote videotaped deposition of MICHAEL GREY, held via Zoom, before Kim M. Brantley, Court Reporter and Notary Public of the State of New York.

APPEARANCES:

On behalf of the Plaintiffs:

    OUTTEN & GOLDEN, LLP

    685 Third Avenue, 25th Floor

    New York NY 10017

    (202) 847-4400

    Email: sjean@outtengolden.com

    BY:   SABINE JEAN, ESQUIRE

On behalf of the Defendant GEICO:

    DUANE MORRIS, LLP

    190 South LaSalle Street - Suite 3700

    Chicago, Illinois 60603

    (312) 499-6779

    Email: gtsonis@duanemorris.com

BY:  GREGORY TSONIS, ESQUIRE



                    MICHAEL GREY

APPEARANCES CONTINUED:

ALSO PRESENT:

        BRENT JORDAN, Legal Video Specialist

        Esquire Deposition Solutions



MICHAEL GREY

P R O C E E D I N G

THE LEGAL VIDEO SPECIALIST:  We are now on the record.  The time is 10:02 Eastern time on January 22nd, 2025.  This begins the video conference deposition of Michael Grey, taken in the matter of Keith Fischer, et al., v. Government Employees Insurance Company. This case is filed in the United States District Court, Eastern District of New York, Case No. 223-civ-2848.

My name is Brent Jordan.  I'm your remote videographer for today.  The court reporter is Kim Brantley.  We are representing Esquire Deposition Solutions.

Will counsel present please identify yourself and state whom you represent.

MS. JEAN:  This is Sabine Jean from Outten & Golden, representing plaintiffs and opt-in plaintiffs.

MR. TSONIS:  Craig Tsonis, from Duane Morris, LLP, representing defendant GEICO.



MICHAEL GREY

Whereupon,

MICHAEL GREY

called as a witness by counsel for Defendant, and after having been first duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR DEFENDANT

BY MR. TSONIS:

Q.   Good morning, Mr. Grey.

A.   Good morning.

Q.   Can you -- before we get started, can you state and spell your name for the record.

A.   Michael, M-i-c-h-a-e-l, Grey, G-r-e-y.

Q.   What's your current address?

A.   3998 Staley, S-t-a-l-e-y, Road, Hamburg, New York, 14075.

Q.   Okay.  Now my name is Craig Tsonis, and as you may have heard, I'm an attorney for GEICO. I will be taking your deposition today.

Have you ever been deposed before?

A.   No.

Q.   All right.  Well, I'll give you some basic guidelines of how the day will go.

Obviously, today I will be asking you a series of questions.  Your job is just to provide



                    MICHAEL GREY

Q.    All right.  And he, in the bottom email here, sent January 11th, 2018, is sending this again to the -- the distribution list of his direct reports, including yourself?

A.    Yes.

Q.    All right.  And the email is titled "End-of-Month's Requirements."  Do you see that?

A.    Correct.

Q.    All right.  Now, Mr. Janik informs again you and others of various things to do for the end of the month.

      Would that be right?

A.    That's the title of the subject.

Q.    Okay.  Now if you look at the third bullet point here, Mr. Janik again instructs that Workday timesheets need to be submitted on Friday of each week, right, for approval?

A.    That's what it says.

Q.    And then Mr. Janik writes, "If you've entered any overtime hours, there should be a listing in your Outlook calendar that lists the SICM case and hours worked."

      Do you see that?

A.    Yes.



MICHAEL GREY

Q.    All right.  So Mr. Janik expected that if you were working overtime that you would be creating a log in your Outlook calendar of the cases that you worked?

A.    It appears that way.

Q.    All right.  And similarly, Mr. Janik wanted the Outlook calendar information to include the number of overtime hours that you worked.

(Witness reviews document.)

A.    Can we -- can we make that bigger?

Q.    Sure.  Is that okay?

A.    So you're talking the bullet point where it says, "Your Workday timesheet is to be submitted on Friday of each week by 11:00 a.m. for approval"?

Q.    Yes, that bullet point?

A.    My first comment would be that we had to submit it by Thursday.  So that's incorrect. We -- we had to get it to them ahead of the time. So that's my first comment.

The second one is, "If you entered any overtime hours there should be a listing in your Outlook calendar that lists that SICM case and hours worked"...



                    MICHAEL GREY

pay per the guidelines."

          Do you see that?

     A.   Yes.

     Q.   And then Mr. Janik writes that, "If you are working beyond 7.75 hours in a day, you should be putting in for the overtime pay."  Right?

          So, Mr. Janik, in April of 2018, is instructing you that if you are working more than 7.75 hours in a day, that you should be entering that time, right?

     A.   Yes.

     Q.   The next sentence Mr. Janik says that, if you do work overtime on a case, that he, again, wants you to update your Outlook calendar with the amount of hours worked and the SICM case number, right?

     A.   Correct.

     Q.   So, this is consistent with the -- the prior exhibit that we looked at, Exhibit 3, in which Mr. Janik is instructing the investigators to enter in time and provide supporting documentation?

     A.   Yes.

     Q.   All right.  Now, Mr. Janik then writes,



MICHAEL GREY

nonexempt, that you were required to accurately

record your hours worked?

          A.    Yes.

          Q.    And you understood that as a nonexempt

associate you were required to accurately record

any absences that you took?

          A.    I know that I had to put my time in and

my absences in.  I don't know that I was a

nonexempt employee.  I don't -- I don't really

know what my title was, but I definitely knew that

I needed to accurately record my hours worked and

absences taken.

          Q.    Okay.  Now it says here, starting with

this portion of the sentence, "A nonexempt

associate who feels he or she didn't receive pay

for all if his or her hours worked, and an exempt

or salaried nonexempt associate who feels his or

her pay incorrectly reflects a deduction for an

absence should contact his or her supervisor,

local human resources manager, or corporate human

resources."

          You see that?

          A.    Yes.

          Q.    All right.  Did you ever contact your



MICHAEL GREY

supervisor because you believed you did not receive pay for all of the hours that you worked?

A.    I -- I would say no, that I never said anything about pay that I didn't receive.

Q.    All right.  Did you ever contact your local human resources manager because you believe you didn't receive pay for all hours worked?

A.    No.

Q.    Did you ever contact corporate human resources because you believed you did not receive pay for all hours you worked?

A.    No.

Q.    Are you aware as a GEICO associate that GEICO maintains the Berkshire Hathaway Ethics Hotline?

A.    Yes.

Q.    Did you ever contact the Berkshire Hathaway Ethics Hotline because you believed you did not receive pay for all hours that you worked?

A.    No.

Q.    Was it part of GEICO's practice to have associates review the policies and associate handbook in some sort of regular interval?

A.    Yes.



MICHAEL GREY

Grey?

A.    Yes.

Q.    All right.  Do you see here in paragraph eleven it says -- well, before we get to that point...

You write both in paragraph ten and paragraph eleven that the time range that you were working more than, you know -- that -- that your regular hours included overtime that you weren't compensated for, you see it goes from December 2016, and you sort of break out the periods, but then that ends in February of 2023?

A.    Yes.

Q.    Right.  So what changed in February of 2023 such that you were no longer working overtime and not being compensated?

A.    That was when the beginning of the changes.  I was with Toni, and we had to -- I think February of 2023 is when we were punching in and out literally for lunch and everything with that, and that's when also the flex scheduling became confusing as to what was considered a flex schedule.

So, approximately that time I just



MICHAEL GREY

completely stopped inputting any extra hours or working any extra hours.

Q.   Okay, just so I'm clear, after February of 2023, you are not claiming as part of this lawsuit that you worked time that you were not compensated for?

A.   I would say -- I'd say that's fair, yes.

Q.   Okay.  Essentially the claims that you're asserting as part of this lawsuit, and, you know, through February of 2023, with regard to unpaid overtime --

A.   I'd say that's fair.

Q.   Okay.  So, for those claims you write in paragraph eleven of your declaration that your best estimate of what you were owed is approximately $78,683.36 in unpaid wages.

Do you see that?

A.   Yes.

Q.   And similarly, you later write that this amount does not include liquidated damages, which would add another $78,683.36 in damages.

Do you see that?

A.   Yes.



Case 2:23-cv-02848-SJB-SIL    Document 173-12    Filed 04/24/26    Page 14 of 18
PageID #: 11458

MICHAEL GREY
FISCHER V. GEICO

January 22, 2025
192

MICHAEL GREY

response to complaints from my coworkers about unpaid work, in April 2020 Mr. Janik emailed me and the team to confirm that our team was not approved for overtime but still needed to complete all time workload requirements."

Do you see that?

A.    Yes.

Q.    All right.  Now, you'd agree that you did not formally complain to your supervisors about working overtime without pay?

A.    Correct.

Q.    I'm sorry, what was that?

A.    Correct.

Q.    Okay.  Now you referenced, "In response to complaints from my coworkers about unpaid work," what are you describing there?

A.    Jeff Mills complained to Chet about the workload and how the workload was unreasonable, yet they weren't allowing overtime.

Q.    Okay, who is Jeff Mills?

A.    He was the Rochester representative -- investigator.  He's left the company.

Q.    Were you present for that conversation between Mr. Mills and Mr. Janik?



                    MICHAEL GREY

laws, right?

        A.    Oh, I'm sorry.  Say that again.

        Q.    As part of this lawsuit, you are
alleging that GEICO failed to comply with federal
and New York State wage and hour laws, right?

        A.    I believe so, yes.

        Q.    All right.  In none of your performance
appraisals that we looked at do you ever address
or discuss allegedly unpaid over time?

        A.    Correct.

        Q.    Right?  And sitting here today, you
can't think of a single document in which you had
actually notified anyone in writing of overtime
that you claim to have worked but you were not
paid for.

              Isn't that right?

              MS. JEAN:  Objection.

              THE WITNESS:  I think it was implied
        with Chet.  I -- I didn't address it anymore
        with anyone else after that for fear of
        losing my job.

BY MR. TSONIS:

        Q.    I think you mentioned -- so, to be
clear, you never mentioned to Toni D'Agata that



MICHAEL GREY

you were working time off the clock but not being compensated -- compensated for it?

A.   Yeah, I didn't -- I didn't have very much of a relationship with Toni and didn't discuss much with her at all, correct.

Q.   Okay.  And did you ever discuss working off the clock with Mr. Gelderman and not being paid for it?

A.   I explained to Mr. Gelderman that I would not take extra cases because that would -- I was no longer going to pay -- I'm sorry, that I was no longer going to work overtime and not get paid.  That I definitely did speak to him about.

Q.   Isn't it true that Mr. Gelderman in writing coached you that you were not permitted to work off the clock?

        MS. JEAN:  Objection.

        THE WITNESS:  Mr. Gelderman, after
    being my supervisor for several months,
    explained to me that my interpretation was
    flex time was incorrect.

BY MR. TSONIS:

Q.   Was your interpretation of flex time that you could work time but not enter it into



MICHAEL GREY

THE COURT REPORTER:  Okay.  Thank you.

THE LEGAL VIDEO SPECIALIST:  Thank you. This will conclude today's video conference deposition of Michael Grey taken on January 22nd, 2025 at 5:13 p.m. Eastern time.

(Whereupon at 5:13 p.m. the videotaped deposition of Michael Grey concluded.)



MICHAEL GREY

C E R T I F I C A T E

STATE OF NEW YORK     )

                      : Ss.

COUNTY OF NEW YORK    )

            I, Kim M. Brantley, Shorthand Reporter, and Notary Public within and for the State of New York, do hereby certify:

            That MICHAEL GREY, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

            I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

            IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of February, 2025.



_____

                Kim M. Brantley

My Commission expires May 31, 2026.

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com