# EXHIBIT 19

IN  THE  UNITED  STATES  DISTRICT  COURT

FOR  THE  EASTERN  DISTRICT  OF  NEW  YORK

KEITH FISCHER, MICHAEL O'SULLIVAN, )
JOHN MOESER, LOUIS PIA, THOMAS     )
BARDEN, CONSTANCE MANGAN, and      )
CHARISE JONES, individually and on )
behalf of all others similarly    )
situated,                         )
                                  )
              Plaintiffs,         ) Case No.
                                  ) 2:23 Civ. 2848
          vs.                     ) (GRB)(ARL)
                                  )
GOVERNMENT EMPLOYEES INSURANCE    )
COMPANY d/b/a GEICO,              )
                                  )
              Defendant.          )
-----------------------------------)

REMOTE  DEPOSITION  OF  JOHN  VINCENT  DIBLOSI

East  Islip,  New  York

Thursday,  January  8,  2026

Reported by:

KRISTIN  KOCH,  RPR,  RMR,  CRR

JOB  NO.  J13981783



January 8, 2026

10:01 a.m. EST


Deposition of JOHN VINCENT DIBLOSI, held remotely before Kristin Koch, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter, Electronic and Traditional Notary Public of the State of New York.



A P P E A R A N C E S:   (Via Zoom)


        OUTTEN & GOLDEN LLP

        Attorneys for Plaintiffs

                685 Third Avenue

                New York, New York 10017

        BY:   ZARKA SHABIR DSOUZA, ESQ.



        DUANE MORRIS LLP

        Attorneys for Defendant

                190 South LaSalle Street

                Chicago, Illinois 60603

        BY:   GREGORY TSONIS, ESQ.



                    J. Diblosi

J O H N   V I N C E N T   D I B L O S I,

    called as a witness, having been duly sworn

    by a Notary Public, was examined and

    testified as follows:

EXAMINATION BY

MR. TSONIS:

    Q.    Mr. Diblosi, could you just state and
spell your name for the record.

    A.    Sure.  My name is John Diblosi.  First
name J-O-H-N, last name D-I-B-L-O-S-I.

    Q.    And where do you currently reside?

    A.    4903 Thomas Drive, East Islip, New York
11730.

    Q.    How long have you resided at that
address?

    A.    Four and a half years.

    Q.    Prior to that, where did you reside?

    A.    I was in 3902 Southwest 22nd Street in
Fort Lauderdale, Florida.

    Q.    I see.  So about when did you move from
Florida to New York?

    A.    In May of 2021.

    Q.    Ah, okay.

    A.    Yeah.



J. Diblosi

A.    All virtual.  Excuse me.  There was one or two EUOs that I had to interview the person in the field, and I don't recall -- I believe I went to a lawyer's office to do the interview, but it was only one time.

Q.    One time in the entirety of your employment with GEICO?

A.    Correct.

Q.    I think you referenced that the number of EUOs to schedule changed over time in terms of the expectation; is that right?

A.    Correct.

Q.    How did that expectation change?

A.    They wanted myself and our team to schedule -- it went from five to six EUOs to seven to eight a week, and then just prior to -- a few months prior to being let go by GEICO, it went up to ten a week.

Q.    The schedule you are saying; right?

A.    Well, to schedule the Examinations Under Oath, they wanted to schedule ten a week.

Q.    Okay.

A.    Towards the end of my employment.

Q.    Understood.  So how -- in terms of your



J. Diblosi

performance, how was your performance assessed in terms of whether you were meeting these expectations or not?

A.    From what I recall, the performance was assessed by our productivity and the substance of our investigations.

Q.    What do you mean by productivity and the substance of your investigations?

A.    Means like how many cases we closed out a month and if those cases resulted in an interview that provided information to use at an EUO of a provider at a later date, meaning if during -- the substance of my interview of a client was fruitful or helpful in the EUO of the subject provider by GEICO's attorneys.

Q.    Okay.  So I get the number of cases closed, but how is it -- was there some sort of way that it was measured in terms of how helpful your EUO was?

A.    No, that I do not know for sure, but information that was helpful was relayed to us via email or through our supervisor that we did a good job on that particular surveillance or interview of that sort, but I cannot recall any particular



J. Diblosi

before we actually go there, I think we established earlier that as part of joining this lawsuit you are contending that you worked certain hours for which you were not compensated by GEICO; right?

A.    Yes.

Q.    What is the amount of hours that you are claiming that you worked but that you were not compensated by GEICO?

A.    I believe when I was working for GEICO I worked an average of, I would say, two to four hours extra time a week or every other week.  It wasn't every week.  It was -- it was about on average two to four every two weeks.

Q.    Okay.  So two to four hours a pay period, so roughly one to two hours a workweek?

A.    Yeah, or sometimes it would extend longer, maybe I would say one to three a workweek.

Q.    Okay.  What were the circumstances that would cause you to work that additional time?

A.    Writing the reports for the EUOs or for the inspections.

Q.    Okay.  So was there any other circumstances that would require you to work



J. Diblosi

additional time?

A.    No.

Q.    So I think we said there was an initial four-month training period, approximately four-month training period; right?

A.    Correct.

Q.    Is it your contention that you were working off the clock during that training period?

A.    No.

Q.    So the first four months or approximately four to five months of your employment, you are not contending you worked off the clock and weren't compensated by GEICO; right?

A.    Correct.

Q.    So when did you first start working off the clock?

A.    I would say it started approximately after the first year, so I was with GEICO, so the beginning of 2023.  When the metrics were starting to be increased, I started to -- needed to work on my own time to keep up with the expectations.

Q.    Okay.  So it was an increase in metrics roughly in the beginning of 2023 that you are contending caused you to have to work some



800.211.DEPO (3376)
EsquireSolutions.com

J. Diblosi

that we should keep all our work hours within the 38.75 workweek, that we should not work beyond those hours.  So we weren't instructed that -- that we -- we were never instructed to work beyond 38.75.  We were told to keep our work within those -- within that time frame.

Q.    Let's be precise, I guess.

A.    Yes.

Q.    Were you told that it was GEICO's expectation that you would be able to complete your work in a normal 38.75-hour workweek?

A.    I -- that was what was expected of us, yes.

Q.    No one ever told you that it was not permitted to ever record hours more than 38.75; right?

A.    Correct.

Q.    All right.  Did you ever request to record more than 38.75 hours in a workweek?

A.    No.

Q.    You could have, though; right?

A.    I -- I guess we could.  Would -- would it have been authorized?  I don't know.  Because we were instructed not to work beyond the 38.75.



800.211.DEPO (3376)
EsquireSolutions.com

J. Diblosi

Q.    When you say "flex time," can you describe what you mean?

A.    Yes.  We were allowed to set our schedule to whatever hours throughout the day in order to meet the 38.75 hours in a week within a five-day work period, so we could work four hours one day and twelve hours another to make up for the difference in time.

Q.    Okay.  So the expectation, I guess, was that you could adjust your hours as needed on a day-to-day basis within a workweek --

A.    Yes.

Q.    -- but the expectation was that you would work your 38.75 scheduled hours?

A.    Yes.

Q.    Okay.  Did you have a time that you would, I guess, typically start and end your day, or did that vary?

A.    Majority of the time I was consistent with the same hours.

Q.    And what hours were those?

A.    I believe it was 8 a.m. to 4:30 p.m. Those were my hours I would say 90 percent of the time.



J. Diblosi

A.      Correct.

        MR. TSONIS:  Okay.  That's all that I
have.

        (Time noted:  2:06 p.m.)


                        ----------------------

                        JOHN VINCENT DIBLOSI


Subscribed and sworn to before me
this        day of                    2026.


-------------------------------------------



C E R T I F I C A T E

STATE OF NEW YORK    )

                     ) ss.:

COUNTY OF NASSAU     )


        I, KRISTIN KOCH, a Notary Public within and for the State of New York, do hereby certify:

        That JOHN VINCENT DIBLOSI, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

        I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of January, 2026.



-----------------------------

        KRISTIN KOCH, RPR, RMR, CRR

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com