# EXHIBIT 29

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - )

KEITH FISCHER, MICHAEL O'SULLIVAN,)

JOHN MOESER, LOUIS PIA, THOMAS    ) Case No.:

BARDEN, CONSTANCE MANGAN, and     ) 2:23 Civ. 2848

CHARISE JONES, individually and   ) (GRB) (ARL)

on behalf of all others similarly )

situated,                         )

                  Plaintiffs,     )

    - v -                         )

GOVERNMENT EMPLOYEES INSURANCE    )

COMPANY d/b/a GEICO,              )

                  Defendant.      )

- - - - - - - - - - - - - - - - - - - )


      VIDEOTAPED DEPOSITION OF THOMAS BARDEN


Reported by:

Kim M. Brantley

Job No: J11541508



                    THOMAS BARDEN

                Thursday, August 8, 2024

                  Time: 9:59 a.m.

        Videotaped deposition of THOMAS BARDEN, held
at Duane Morris, LLP, 1540 Broadway, 14th Floor,
New York, New York, before Kim M. Brantley, Court
Reporter and Notary Public of the State of New
York.


APPEARANCES:

On behalf of the Plaintiffs:

        OUTTEN & GOLDEN, LLP

        1225 New York Avenue NW - Suite 1200B

        Washington, DC, 20007

        (202) 847-4400

        Email: hcolechu@outtengolden.com

               zdsouza@outtengolden.com

        BY:  HANNAH COLE-CHU, ESQUIRE

             ZARKA SHABIR DSOUZA, ESQUIRE



                              THOMAS BARDEN

APPEARANCES CONTINUED:

On behalf of the Defendant GEICO:

        DUANE MORRIS, LLP

        190 South LaSalle Street - Suite 3700

        Chicago, Illinois 60603

        (312) 499-0198

        Email: tealberty@duanemorris.com

BY:  TIFFANY ALBERTY, ESQUIRE


Also On behalf of the Defendant GEICO:

        DUANE MORRIS, LLP

        1540 Broadway - 14th Floor

        New York, New York 10036

        (212) 471-1856

        Email:  gsslotnick@duanemorris.com

        BY:  GREGORY SLOTNICK, ESQUIRE (Via Zoom)


ALSO PRESENT:

        SILVIO FACCHIN, Legal Video Specialist

        Esquire Deposition Solutions



THOMAS BARDEN

P R O C E E D I N G S

THE LEGAL VIDEO SPECIALIST:  This is the media labeled number one in the video recorded deposition of Thomas Barden in the matter of Keith Fischer, et al., versus Government Employee Insurance Company, doing business as GEICO.

This deposition is being taken in New York City, New York, on August 8th, 2024.  My name is Silvio Facchin.  I am a certified legal video specialist; the court reporter is Kim Brantley, and we're both representing Esquire Deposition Solutions.

We are now going on the record.  The time is 10:00 a.m.

Counsel will state their appearances for the record.

MS. COLE-CHU:  For the plaintiffs, Hannah Cole-Chu, from Outten & Golden, and with me is Zarka DSouza from Outten & Golden as well.

MS. ALBERTY:  And Tiffany Alberty, on behalf of GEICO, along with Gregory Slotnick.

THE LEGAL VIDEO SPECIALIST:  Will the court reporter please swear in the witness.



THOMAS BARDEN

THOMAS BARDEN

called as a witness by Counsel for the Defendant,

and, after having been first duly sworn by the

Notary Public, was examined and testified as

follows:

EXAMINATION BY COUNSEL FOR DEFENDANT:

BY MS. ALBERTY:

Q.    Can you please state your name and

spell it for the court reporter.

A.    It's Thomas Barden, T-h-o-m-a-s,

Barden, B-a-r-d-e-n.

MS. ALBERTY:  Let the record reflect

that this is the discovery deposition of Mr.

Thomas Barden taken pursuant to notice and by

agreement of the parties.  Today's deposition

will be taken in accordance with all

applicable rules.

BY MS. ALBERTY:

Q.    Mr. Barden, I know that I introduced

myself off the record.  I will just make another

introduction.  My name is Tiffany Alberty.  I

represent GEICO in this matter that's been filed.

Would you prefer me to call you Thomas,

Tom, Mr. Barden?



THOMAS BARDEN

Q.   Fair to say because you were a level sixty-five, that's the only knowledge that you have about that position is within that level base, correct?

MS. COLE-CHU:  Objection.

THE WITNESS:  Yes.

BY MS. ALBERTY:

Q.   As a senior field investigator, what were your hours?

MS. COLE-CHU:  Objection.

THE WITNESS:  Hours were basically eight hours a day.

BY MS. ALBERTY:

Q.   Were they set times?

A.   When I was hired, I was told that our hours were flexible so that we could adjust to whatever is required during the day regarding in-person interviews, scene canvasses, EUOs that had to be done, things likes that, so that we could adjust our schedule according to that.

Q.   Did you say EUOs?

A.   Examinations under oath.

Q.   Okay, thank you.

A.   Sorry.



THOMAS BARDEN

MS. COLE-CHU:  Objection.

THE WITNESS:  No.

BY MS. ALBERTY:

Q.   Have you ever had a desk role at the Woodbury office?

MS. COLE-CHU:  Objection.

THE WITNESS:  No.

BY MS. ALBERTY:

Q.   Did anyone tell you how to arrange your flex time?

A.   No.

Q.   Were you free to complete your work at any time that was convenient for you?

MS. COLE-CHU:  Objection.

THE WITNESS:  It wasn't out of
convenience.  It was more when the job
dictated when I needed to work.

BY MS. ALBERTY:

Q.   Aside from the auto fraud cases we spoke about, did you have any other cases you would work on?

A.   Occasionally we would be assigned medical, like injury cases.

Q.   Almost like personal injury cases?



THOMAS BARDEN

A.    Okay.

Q.    -- at that time, correct?

A.    Correct.

Q.    And you weren't meeting people in person at that time, correct?

A.    Correct.

Q.    And you weren't doing interviews or declarations under oath, correct?

A.    We were doing everything by phone remotely.  We did the same work, we did it remotely.

Q.    In your capacity as a field investigator, did you have the ability to close files?

A.    To close the cases?

Q.    Yes.

A.    Yes.

Q.    How frequent would you close cases?

A.    I tried to close cases every day when I was -- whenever I was finished with them.

Q.    Did you need authority from any of your supervisors or managers in order to close a case?

A.    They were reviewed, and if it was not acceptable to close the case at that time, it



Case 2:23-cv-02848-SJB-SIL    Document 173-32    Filed 04/24/26    Page 10 of 17
PageID #: 11817
THOMAS BARDEN                                                    August 08, 2024
Keith Fischer, et al. vs GEICO                                              107

THOMAS BARDEN

A.    Yes.

Q.    Transitioning to number eleven on page three of the declaration," From May of 2020 to August of 2020 GEICO permitted me to submit overtime hours for approval but required me to document for reasons of overtime, case information, and specific tasks that I needed to do on each case."

How did you learn that you couldn't put your overtime hours?

MS. COLE-CHU:    Objection.

THE WITNESS:    How did I learn that I was not allowed to?

BY MS. ALBERTY:

Q.    No, that you could.

A.    I talked with my supervisor that basically told me, "If you're working extra hours, put in for it.  Document it."

Q.    Were there specific hard and fast lines of what you needed to input for your overtime hours?

A.    Like the reasons?

Q.    Yes.

A.    I don't know if there were certain



THOMAS BARDEN

about, such as Bill Newport, Mr. Janik, Mike Reed, Brian Crosier, those people?

MS. COLE-CHU:  Objection.

THE WITNESS:  What do you mean by -- what was the term you used, side-loaded.

BY MS. ALBERTY:

Q.    Siloed.

A.    Meaning what?

Q.    That you didn't cross over into other departments that frequently.

MS. COLE-CHU:  Objection.

THE WITNESS:  It wasn't infrequent, but we had -- most of my dealings was with my team members.

BY MS. ALBERTY:

Q.    Okay.  Let's turn back to declaration -- or sorry, Exhibit Number 4, your declaration.  Let's look at page four, page number twelve.

Okay, so number twelve says, "GEICO also had a variety of performance metrics that I was required to meet to remain in good standing.

"These performance metrics and ratings changed constantly, but to the best of my



THOMAS BARDEN

recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, how many cases I completed within a month, and whether we were able to document fraud in the case.

"These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines."

What is your basis for believing that the evaluations at GEICO were based on these metrics?

A.   Because that's what we were told.

Basically there were -- sorry, ask the question again.

Q.   Sure.

A.   So I just make sure I'm on the right track.

Q.   That's okay.

What's your basis for believing that the evaluations at GEICO were based on these metrics that you laid out?

A.   Because we were told that.

I mean, it's -- it was -- that's the



Case 2:23-cv-02848-SJB-SIL    Document 173-32    Filed 04/24/26    Page 13 of 17
PageID #: 11820
THOMAS BARDEN                                        August 08, 2024
Keith Fischer, et al. vs GEICO                                    159

THOMAS BARDEN

way they rated you on, not only how you performed your case, but your efficiency and how many cases you closed out, and all of this was factored into your performance evaluation.

Q.   Who told you this?

A.   Supervisors, we got through Ted Janik, through Bill Newport, that it was sent down through GEICO channels to us.

Q.   Was there anyone else as you sit here today that you recall telling you this aside from Chet and Bill?

A.   Not offhand, no.

Q.   Do you recall seeing a written policy that described these metrics?

A.   I don't recall it.  I believe it was provided to us email as to what was required by us, the time periods, the -- kind of what was -- what was expected as far as how your performance evaluation was going to be created by supervision, so.

Q.   Do you remember if these metrics changed?

A.   They changed several times.

I mean, there were points given at one


ESQUIRE
DEPOSITION SOLUTIONS

THOMAS BARDEN

So, yes, it would suffer in a way that it's lower than it could have been.

BY MS. COLE-CHU:

Q.   And what were the consequences of that?

A.   The consequences were, one, I was denied a raise at one time.  It's why I was told I was denied a raise, because the performance evaluation wasn't high enough at that time.  And I believe it was -- it was part of -- part of the reason that was used to start the coaching remedial training, coaching, training.

BY MS. COLE-CHU:

Q.   And to confirm that these consequences of having a -- let's call it less good performance evaluation in fact happened to you?

A.   Yes.

Q.   Would you say that it was important then to meet your performance metrics as best you could?

A.   Yes.

Q.   Was it possible for you to meet GEICO's performance metrics within a 38.75 hour work week?

MS. ALBERTY:  Objection.

THE WITNESS:  No.



Case 2:23-cv-02848-SJB-SIL    Document 173-32    Filed 04/24/26    Page 15 of 17
PageID #: 11822
THOMAS BARDEN                                                    August 08, 2024
Keith Fischer, et al. vs GEICO                                              228

THOMAS BARDEN

BY MS. COLE-CHU:

Q.    As a result would you work more hours?

A.    Yes.

Q.    And you testified today that GEICO stated that it would not pay you for hours above 38.75.

Is that correct?

A.    Correct.

Q.    So, those hours that you worked above 38.75 were unpaid?

A.    Correct.

Q.    And would you say that you had to do this in order to keep your job?

MS. ALBERTY:  Objection.

THE WITNESS:  Yes.

BY MS. COLE-CHU:

Q.    We've discussed this a little bit over the course of the day, but I just want to walk through your daily schedule one more time.

Approximately what time would you typically log on to work in the morning?

A.    Usually around 6:00 a.m.

Q.    And then approximately what time --



THOMAS BARDEN

Q.   But again in the three plus years you worked at GEICO, you don't remember any time when this denial of a raise occurred?

A.   Yeah, I'm not sure exactly what the dates were.

MS. ALBERTY:  Okay, I don't have any further questions.

THE COURT REPORTER:  Is there read and sign in this?  Will he read and sign?

MS. COLE-CHU:  Yes, please.

THE LEGAL VIDEO SPECIALIST:  All right. We are now going off the record.  The time is 4:16 p.m.  This is the end of the media labeled number six concluding this video deposition.

(Whereupon at 4:16 p.m. the deposition of Thomas Barden concluded.)



Case 2:23-cv-02848-SJB-SIL   Document 173-32   Filed 04/24/26   Page 17 of 17
PageID #: 11824
THOMAS BARDEN                                                    August 08, 2024
Keith Fischer, et al. vs GEICO                                            237

                          THOMAS BARDEN

                  C E R T I F I C A T E

STATE OF NEW YORK      )

                           : Ss.

COUNTY OF NEW YORK     )

          I, Kim M. Brantley, Shorthand Reporter, and Notary Public within and for the State of New York, do hereby certify:

          That THOMAS BARDEN, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

          I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

          IN WITNESS WHEREOF, I have hereunto set my hand this 11th day of August, 2024.



_____

                    Kim M. Brantley

My Commission expires May 31, 2026.