# EXHIBIT 31

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN
MOESER, LOUIS PIA, THOMAS BARDEN,
CONSTANCE MANGAN, and CHARISE JONES,
individually and on behalf of all others
similarly situated,

                              Plaintiffs,


               v.                 Case No. 2:23-CV-02848


GOVERNMENT EMPLOYEES INSURANCE COMPANY
d/b/a GEICO,

                              Defendant.
-----------------------------------------------x


                              Remote proceeding

                              January 16, 2026

                              10:30 a.m.




     VIDEOCONFERENCE DEPOSITION of Opt-In Plaintiff,

KENNETH BAKER, before Michele Moskowitz, a Shorthand

Reporter and Notary Public of the State of New York.



A P P E A R A N C E S

(VIA ZOOM)

OUTTEN & GOLDEN

Attorneys for Plaintiffs

        One California Street, 12th Floor

        San Francisco, California 94111

BY:   JANE BALKOSKI, ESQ.

        KAELYN MAHAR, ESQ.

        jbalkoski@outtengolden.com


DUANE MORRIS LLP

Attorneys for Defendant

        190 South LaSalle Street, Suite 3700

        Chicago, Illinois 60603

BY:   GREGORY TSONIS, ESQ.

        gtsonis@duanemorris.com



                        I N D E X

WITNESS               EXAMINATION BY                    PAGE

KENNETH BAKER         MR. TSONIS                    4, 152

                      MS. BALKOSKI                     150


------------------ EXHIBITS --------------------

DEFENDANT'S       DESCRIPTION                       PAGE

Exhibit A         Plaintiff's Responses               71
                  and Objections to
                  Defendant's First Set of
                  Interrogatories

Exhibit B         Document Bates labeled              85
                  G023294 - G023304

Exhibit C         Excel document                     93

Exhibit D         Training record                   107

Exhibit E         Workday profile                   123

Exhibit F         Second Amended                    145
                  Collective and Class
                  Action Complaint



K. Baker

K E N N E T H   B A K E R, after having first been duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY

MR. TSONIS:

Q.    Please state your name for the record.

A.    Kenneth Baker.

Q.    What is your current address?

A.    31 Violet Avenue, Mineola, New York.

Q.    Good morning, Mr. Baker.

A.    Good morning, sir.

Q.    My name is Greg Tsonis.  I'm an attorney for GEICO and I'll be taking your deposition here.

A.    Mineola, New York; 31 Violet Avenue.

Q.    Is that the address that you identified on the record?

A.    Correct.

Q.    Is that where you're currently located for this deposition?

A.    Yes.

Q.    Have you ever been deposed before?

A.    Yes.

Q.    When was the last time you were deposed?



K. Baker

under oath every day.  So you -- like I explained before, where they require ten EUOs for a specific provider, so you kind of had to pull one from that list every day.

Q.   Okay.  But the metrics on which your performance was assessed didn't include a requirement that you conduct X number of EUOs each month, right?

A.   There was no requirement, but the metrics -- whatever you did that month, depending on how many you did, you went into a -- a category, I guess.  I'm not sure how to phrase it.  So, like, if you did 10 one week, you're rated at a 2; if you did 16, you're rated at a 3; if you did 22, you're rated at a 4.  And the numbers are not precise.  I'm just giving you a generalized idea.

Q.   Okay.  And the numbers that you're referencing, those are what, number of EUOs you conducted?

A.   The number of cases that you closed each week.  Or each month, I should say.  I'm sorry.  Not each week.  Each month.

Q.   Were those cases cases that included EUOs?



800.211.DEPO (3376)
EsquireSolutions.com

K. Baker

A.    Well, it was an understanding there was no overtime, so we're -- basically you record 38.75 hours.

Q.    Right.  But when you say overtime, I guess, do you mean more than 40 hours where you would earn one and a half times your hourly rate?

A.    Correct.

Q.    All right.  So 38.75 to 40, though, you could -- that time period isn't time that you would get time and a half for, right?

A.    Honestly, I don't know.

Q.    Right.  I guess all I'm asking is no one ever told you that you couldn't enter in, for example, 39 hours, right?

MS. BALKOSKI:  Objection.  You can answer, Ken.

A.    I don't know.  I just recorded 38.75 hours no matter what I worked.

Q.    But sitting here today, you don't recall any conversation from a GEICO supervisor in which they told you you couldn't record more than 38.75 hours if you worked it, right?

MS. BALKOSKI:  Objection.  You can answer, Ken.



K. Baker

A.    Not that I recall.

Q.    And, similarly, you're not aware of any policy that any supervisor communicated that said you're not permitted to record more than 38.75 hours if you worked it, right?

MS. BALKOSKI:  Objection.  You can answer, Ken.

A.    Yeah, I -- I don't know.

Q.    You can't -- sitting here today, though, you can't recall any such policy that was communicated by a supervisor?

A.    Correct.

Q.    All right.  And you were the one that ultimately -- I know you can't recall the precise mechanics behind it, but you were the individual that entered in the hours that you worked each week, right?

A.    I believe so, yes.

Q.    And you were the -- ultimately the associate responsible for ensuring the accuracy of the hours that you recorded, right?

A.    Correct.

Q.    Did you have a typical shift that you would work as a field investigator?



K. Baker

Q.    I guess if you're, you know, scheduled EUOs and you've got an EUO that's going to happen at 4:00 because that's the availability of the individual, you would start your day later because you were going to be ending later that day, right?

MS. BALKOSKI:  Objection.  Ken, you can answer.

A.    Potentially, yes.

Q.    Right.  And as a field investigator, you had the flexibility to set what hours you were going to be working on any given day, right?

A.    Correct.

Q.    You didn't have to get supervisor approval, for example, to, like, vary from a set schedule?

A.    No.

Q.    Okay.  Are you familiar with the concept of flex time?

A.    Yes.

Q.    What's your understanding of flex time?

A.    To me it strictly just meant -- I'm going to give you a for instance.  So if you have a doctor's appointment at 2:00 on Friday, you know, you stop working at 2, but you pick up that extra



K. Baker

hour on, like, Monday or Tuesday.  It's really that.

Or in the instances like you were just speaking about, if you were going to have an EUO at 4:00, you know, and you had other EUOs that morning, you couldn't start later, then you potentially worked ten hours in that day and then leave earlier on Friday type of thing or something to that effect.

Or if you had a clinic visit that was only able to be done on, like, a Saturday, then you kind of flex it and worked a Saturday instead of the -- you know, one of the days during the week.

MS. BALKOSKI:  Greg, I was just going to say we've been going about an hour, I think this would be a good time for a break, unless you have just a few more questions in this line.

MR. TSONIS:  Yeah.  Just to follow up on what the witness was just saying.

Q.    So if I'm understanding correctly, Mr. Baker, you know, for flex time, if you, for example, worked longer than perhaps you anticipated in a given day, you know, early or middle of the week, you could cut out that time later in that same work week; is that right?



800.211.DEPO (3376)
EsquireSolutions.com

K. Baker

Q.    Just to be clear on that process, there's a spreadsheet that's maintained, you -- if you needed to conduct a clinic inspection -- would go into that spreadsheet, see what case or cases are at the top of the list, and then assign those to yourself?

A.    Correct.

Q.    All right.  When you would close a case, is that something that needed approval or is it just final once you closed it?

A.    I can't answer for what the supervisors did, but yes.

Q.    Right.  I guess what I'm asking is did supervisors need to approve your closure of a case or not?

A.    Not that I know of.

Q.    So a supervisor might review your work just to see what you did during an investigation, but they didn't need to approve the closure of a case?

A.    I believe so, yes.

Q.    Who was your supervisor when you first started within SIU?

A.    Danielle Perdomo.



K. Baker

Q.    No, that's not right, or no, there was nothing communicated?

A.    No, there was nothing communicated.

Q.    The expectation regarding, you know, the hours you should be working was the same throughout your employment with GEICO?

A.    Yes.

Q.    Your ability to record more than 38.75 hours if you wanted was the same through your employment with GEICO?

A.    Yes.

Q.    Did Danielle Perdomo and Brian Portnoy and Bradley Waltman differ with respect to flex time and expectations around using flex time?

A.    I don't recall if they differed.  I don't know.

Q.    Okay.  Did any of those supervisors, you know, require you, I guess, to get approval from them before you recorded more than 38.75 hours?

A.    No.

Q.    Did any of those supervisors -- well, strike that.

You'd agree that none of those supervisors had knowledge that you were working



K. Baker

standing order probably changed.  I don't think we need it expedited.

THE COURT REPORTER:  You don't need it expedited?

MR. TSONIS:  I don't believe we need it expedited.

THE COURT REPORTER:  Okay.  Thank you.

(Time noted: 2:43 p.m.)



C E R T I F I C A T I O N

STATE OF NEW YORK  )

                   )

COUNTY OF NEW YORK )


    I, MICHELE MOSKOWITZ, a Shorthand Reporter and
Notary Public within and for the State of New York,
do hereby certify:

    That KENNETH BAKER, the witness whose
examination is hereinbefore set forth, was duly
sworn/affirmed by me and that this transcript of
such examination is a true record of the testimony
given by such witness.

    I further certify that I am not related to any
of the parties to this action by blood or marriage
and that I am in no way interested in the outcome of
this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand
this 2nd day of February, 2026.




                              _____
                              MICHELE MOSKOWITZ

