# EXHIBIT 36

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

<table>
<tr>
<td>

KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,

Defendant.

</td>
<td>

Case No. 23 Civ. 2848 (GRB) (ARL)

</td>
</tr>
</table>

## PLAINTIFF CHARISE JONES'S RESPONSES TO THE COURT'S INTERROGATORIES

**INTERROGATORY NO. 1:**

During what period of time did you work for the Defendant?

**RESPONSE TO INTERROGATORY NO. 1:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 2:**

Who was your immediate supervisor?

**RESPONSE TO INTERROGATORY NO. 2**:

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 3:**

Did you have a regularly scheduled work period? If so, specify.

**RESPONSE TO INTERROGATORY NO. 3**:

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 4:**

What was your title or position? Briefly describe your job duties.

**RESPONSE TO INTERROGATORY NO. 4:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 5:**

What was your regular rate of pay?

**RESPONSE TO INTERROGATORY NO. 5:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 6:**

What is the nature of your claim? (Check all that apply.)

**RESPONSE TO INTERROGATORY NO. 6:**

☒Off-the-clock work (Defendant failed to record, or prohibited you from recording, all

of your working time);

☐Misclassification (Defendant mistakenly classified you as exempt from overtime);

☐Misclassification (Defendant failed to correctly calculate your compensation);

☐Other (Please describe).

**INTERROGATORY NO. 7:**

Provide an accounting of your claim, including:

a)  Dates

b)  Regular hours worked

c)  Over-time hours worked

d)  Pay received versus pay claimed

e)  Total amount claimed

**RESPONSE TO INTERROGATORY NO. 7:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 8:**

If you have brought this case as a collective action:

a)  Describe the class of employees you seek to include in this action.

b)  Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**RESPONSE TO INTERROGATORY NO. 8:**

a)  Plaintiffs seek to send notice to a potential collective consisting of all current and former non-exempt classified employees of GEICO who worked as Special Investigators (regardless of variations in title[1]) throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action, and additionally including all periods of tolling agreed to between the Parties to this action.[2]

b)  Written consent to join this action has been filed on behalf of every potential Plaintiff who has expressed their wish to join this action as of the date of this response.  Further

---

[1]    As of this writing, Plaintiffs are aware of the following variant job titles used for Special Investigators: Special Investigators, Special Investigator Trainers, SIU Investigators, Security Investigators, Senior Outside Security Investigators, Outside Field Investigators, Medical Investigators, Medical Fraud Investigators, Inside Medical Investigators, and Lead Investigators.

[2]    The Parties entered a partial tolling agreement before Plaintiffs filed this lawsuit.  This agreement tolls the claims of Thomas Barden, Louis Caniglia, Jr., Louis Caniglia, Sr., Craig Costanzo, Danielle Ennis, Keith Fischer, Margaret Fisher, Anthony Geraci, Mark Giambalvo, John Gillen, Michael Grey, Daniel King, Constance Mangan, George McManus, John Moeser, Joseph Neenan, Michael O'Sullivan, Michael Reed and Mark Sowell as of July 29, 2022, and tolls the claims of Louis Pia and Evan Teatum as of December 6, 2022.

3

opt-in notices may be filed by potential opt-in Plaintiffs if the Court decides on Plaintiffs'

forthcoming 216(b) Motion to send notice of this action to potential opt-in Plaintiffs.

**INTERROGATORY NO. 9:**

Please specify all attorney's fees and costs incurred to date. With respect to attorney's

fees, please provide the hourly rate(s) sought and the number of hours expended by each person

who has billed time to this case.

**RESPONSE TO INTERROGATORY NO. 9:**

As of October 31, 2023 for Outten & Golden LLP and November 1, 2023 for Kessler

Matura P.C., Plaintiffs' counsel has incurred attorneys' fees and advanced costs in the amounts

summarized below:

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 347,077.50 | 759.1 | $ 7,986.41 |
| Kessler Matura P.C. | $ 11,152.50 | 28.3 | $ 0.00 |
| **TOTAL** | **$358,230.00** | **787.4** | **$ 7,986.41** |
| **GRAND TOTAL: $366,216.41** | | | |

| Outten & Golden LLP | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 682.7 | $ 322,247.50 |
| Staff | 76.4 | $ 24,830.00 |
| Total | 759.1 | $ 347,077.50 |

| Kessler Matura P.C. | | |
|---|---|---|
| | Hours | Fees |
| Attorneys | 24.1 | $ 10,522.50 |
| Staff | 4.2 | $ 630.00 |
| Total | 28.3 | $ 11,152.50 |

| Outten & Golden LLP | | | | | |
|---|---|---|---|---|---|
| Attorney/Staff | Initials | Title | Rate | Hours | Total |
| Michael J. Scimone | MJS | Partner | $ 800.00 | 131.4 | $ 105,120.00 |
| Justin M. Swartz | JMS | Partner | $ 1,150.00 | 7.9 | $ 9,085.00 |
| Theanne Liu Svedman | TXL | Associate | $ 375.00 | 338.0 | $ 126,750.00 |

4

| Jarron D. McAllister | JDM | Associate | $ | 375.00 | 148.5 | $ | 55,687.50 |
|---|---|---|---|---|---|---|---|
| Sabine Jean | SXJ | Associate | $ | 450.00 | 56.9 | $ | 25,605.00 |
| Christopher Truong | CXT | Paralegal | $ | 325.00 | 63.7 | $ | 20,702.50 |
| Michaela Dougherty | MDX | Paralegal | $ | 325.00 | 12.7 | $ | 4,127.50 |
| | | | Totals: | | 759.1 | $ | 347,077.50 |

| Kessler Matura P.C. | | | | |
|---|---|---|---|---|
| Attorney/Staff | Title | Rate | Hours | Total |
| Troy L. Kessler | Partner | $625.00 | 1.4 | $ 875.00 |
| Garrett Kaske | Associate | $425.00 | 22.7 | $ 9,647.50 |
| Kristine Jimenez | Paralegal | $150.00 | 4.2 | $ 630.00 |
| | | Totals: | 28.3 | $ 11,152.00 |

| Outten & Golden LLP | Costs |
|---|---|
| FedEx/UPS Charges | $ 46.64 |
| Filing Fees | $ 247.00 |
| Legal Research | $ 595.01 |
| Mediation Costs | $ 6,794.19 |
| Process Server | $ 303.57 |
| Total | $ 7,986.41 |

**INTERROGATORY NO. 10:**

When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**RESPONSE TO INTERROGATORY NO. 10:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 11:**

Was this complaint written or oral? (If a written complaint, please attach a copy).

**RESPONSE TO INTERROGATORY NO. 11:**

See attached Declaration of Charise Jones.

**INTERROGATORY NO. 12:**

What was your employer's response? (If a written response, please attach a copy).

5

## RESPONSE TO INTERROGATORY NO. 12:

See attached Declaration of Charise Jones.

Dated: November 6, 2023
      New York, NY

*/s/Michael J. Scimone*
Michael J. Scimone

Michael J. Scimone
Jarron D. McAllister
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Facsimile: 646-509-2060
mscimone@outtengolden.com
jmcallister@outtengolden.com
sjean@outtengolden.com

Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
tliusvedman@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Facsimile: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class
and Collective*

6

## **VERIFICATION**

I, Charise Jones, have read the foregoing **PLAINTIFF CHARISE JONES'S**

**RESPONSES TO THE COURT'S INTERROGATORIES** and know the contents thereof.

My responses as stated in the foregoing document are true of my own knowledge, expect

as to those matters that are stated on information and belief, and as to those matters, I believe

them to be true.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: 11/08/2023

Signature: *Charise Jones*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, CHARISE JONES, and ASHLEY ALVAREZ individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO.,<br><br>        Defendant. | No. 23 Civ. 02848 (GRB) (ARL) |

**DECLARATION OF CHARISE JONES**

I, Charise Jones, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Employment History and Job Duties**

1.       I am employed as a Special Investigator Auditor ("Auditor") at GEICO or GEICO as part of the Melville, New York office (formerly the Woodbury, New York office) in Suffolk County, beginning September 2023 to the present.  From March 2022 to September 2023, I was employed as a Special Investigator Trainer ("Trainer") which is a similar position as my current position as an Auditor.  Before becoming a Trainer, I was a Special Investigator from 2016 until my promotion in approximately March 2022.  I have been employed by GEICO since 1987.  In all my roles in the Special Investigation Unit, I have worked remotely in the field or from my home in Bethpage, New York.

2.      I reported to April Neyland, who was my immediate supervisor when I was a Special Investigator.  Bill Newport is the manager of the Special Investigation Unit (at the GEICO Woodbury/Melville office.

3.      As a Special Investigator my main job duties were to investigate claims of suspected insurance fraud.  GEICO assigns cases of suspected insurance fraud to Special Investigators, who are responsible for documenting evidence of fraud.  As part of this process, my job duties included, among other things, reviewing case files; running background checks; examining provider billing reports; reviewing claims files, driving to accident scenes; taking photographs of cars; gathering evidence; interviewing claimants, witnesses and law enforcement; confirming police reports; canvassing and surveilling scenes; conducting examinations under oath; and writing and submitting reports about my findings in cases.  My last regular rate of pay as a Special Investigator was $48.86 per hour.

4.      I am currently a Level 65 Auditor.  From March 2022 to September 2023, I was a Level 66 Trainer.  As both a Level 66 Trainer and a Level 65 Auditor, I train new Special Investigators and audit their files.  Before I was a Trainer, I was a Level 65 Special Investigator. In all of my positions, I have no supervisory authority over other Special Investigators and did not have authority to set other employees schedules, to direct their work, or to hire, fire, or discipline other employees.  My regular rate of pay as an Auditor is approximately $57 per hour, and is the same rate as when I was a Trainer.  However, as an Auditor I am no longer eligible for the greater raises that Level 66 Trainers are eligible for, despite performing the same job duties.

5.      Since January 2020, GEICO classified me and other Special Investigators as non-exempt employees who were eligible for overtime pay at one and one-half times my regular rate if I worked over 40 hours a week.  Prior to January 2020, GEICO classified me and other Special

- 2 -

Investigators as non-exempt employees eligible for overtime pay, but they used a different method of payment. I do not recall how the payment for hours worked over 40 hours was calculated because I was discouraged from reporting overtime and rarely submitted overtime hours.

**My Schedule and Unpaid Wages and Overtime**

6. As a non-exempt Special Investigator, GEICO required me to use a web-based timekeeping program to submit my time on a weekly basis.

7. My supervisor told me that if I was going to work over 38.75 hours per week, I needed to speak with her and state why I needed to work additional hours, because my supervisor was required to pre-approve these hours. I recall asking my supervisor for 1-2 extra hours for one week, but my supervisor would not approve the overtime pay and said instead I could work 1-2 fewer hours the following week. However, because of my workload I was not able to take a few hours off the next week. Accordingly, I only entered 7.75 hours per day, five days a week, regardless of how many hours I actually worked.

8. As a Special Investigator starting from 2016 to my promotion to Trainer in approximately March 2022, I started work between 7 A.M. and 7:30 A.M. and ended my day between 5 P.M. and 6 P.M. about 2-3 times per week, and until 7 PM about 2-3 times per week. GEICO did not provide me with a regularly scheduled work period. I also recall that after March 2020 when the COVID-19 pandemic started, I also occasionally worked as late as 8 P.M. When I took a lunch break, which was about once a week, it took me no more than 15 minutes. I estimate that as a Special Investigator, I worked approximately 51-58 hours a week on average.

- 3 -

**GEICO's Overtime Pay Practices**

9.      As a Special Investigator, GEICO required me to seek approval from my supervisor to submit any hours worked above 38.75.  My supervisor frequently reiterated to me and other Special Investigators that there was no approved overtime for completing regular case work, and that if it were offered GEICO would let the Special Investigators know.

10.      In approximately February or March 2022, prior to my promotion to being a Trainer, I attempted to submit time for approximately 1.5 hours that I worked above 38.75 hours in the week, even though I had actually worked more hours.  After my supervisor reviewed the request, she asked me who approved the overtime, and then required me to spend a significant amount of time writing a report to justify the additional pay for my regular caseload.  I had to detail at length in this report the cases I worked on during the pay period and what tasks I completed.  Writing this took me at least two hours, and this dissuaded me from submitting further requests to be paid for hours above 38.75 per workweek.

11.      Prior to my promotion to Trainer, GEICO authorized me to work overtime only if I agreed to take on additional cases and worked on special projects, such as a social media investigation or flooding/storm cases, or if Special Investigators were understaffed and there were many cases to work on.  These cases that were eligible for overtime pay were additional cases on top of my existing caseload, even though I was already working overtime off the clock.

12.      As a Trainer and Auditor, I do not log my hours and instead my supervisor inputs my hours for me and approves them, which are still 7.75 hours per day, 38.75 hours per week, even though I occasionally work more hours.

13.      From April 2017 to March 2022, my regular hours worked were approximately 51-58 hours per week, and my regular pay was $48.86 per hour.  During nearly all of this time, I

- 4 -

entered only 38.75 hours in the timekeeping system, and I was only paid for 38.75 hours ($1,893.33 per week). In sum, for the periods described above, my best estimate is that I am owed approximately $141,915.10 in unpaid wages. This is based on my best recollection over a period of several years and my last regular rate of pay, so it is possible that records and other documents in GEICO's possession could refresh my recollection and cause me to revise this estimate to be more precise. This amount does not include liquidated damages, which would add another $141,915.10 in damages, and does not include amounts for attorneys' fees or costs, pre-judgment interest, and post-judgment interest as provided by law.

**GEICO's Performance Ratings**

14.     GEICO also had a variety of performance metrics that I was required to meet to remain in good standing. These performance metrics and ratings changed constantly, but to the best of my recollection GEICO generally evaluated me based on how many hours it took me to complete a case task, how often I made an entry in a case report, how many days I took to close a case, and how many cases I completed within a month. These metrics put a lot of pressure on me to work as much as needed to meet these goals and deadlines. I recall that at the end of each month, there was a significant amount of pressure to close cases in order to meet GEICO's set performance goals.

15.     My best understanding of GEICO's performance metrics was that they were tied to the number of hours I reported. I received more favorable ratings if I completed more work within the 7.75 hours per day or 38.75 hours per week. If I reported working more hours, that would negatively impact my performance ratings. My supervisor explained to me that if I reported more hours working, I would be required to close additional cases or else my ratings would be negatively affected.

- 5 -

16.     GEICO's performance metrics and ratings determined whether I was entitled to an annual raise.  If I failed to meet them, they could also lead to disciplinary action such as being put on a coaching plan and eventually lead to termination.  When I was still a Special Investigator, I recall coaching another Special Investigator who had poor performance ratings, and during my conversations with him I learned that he refused to work overtime hours off the clock and did not want to rush through his cases.  I advised him to work cases smarter and to focus on closing them, so that he could improve his ratings.

**Special Investigators' Caseloads**

17.     My supervisor was aware that I and other Special Investigators worked overtime. My supervisor was able to view when Special Investigators submitted their reports, sometimes at 8 P.M. or 9 P.M., because she had to review and approve these reports and various entries in the report are time stamped.

18.     I recall in Summer 2016 that I asked my supervisor how I could get all my work done in only 38.75 hours per week, and informed her that I needed to work overtime hours in order to keep up with my caseload.  My supervisor's response was that other Special Investigators were able to complete the work within the set hours, but I learned from speaking with the other Special Investigators that they were also working overtime off the clock.

**Overtime Hours**

19.     As a result of the competing pressures that GEICO placed on me to do more work, meet demanding performance metrics, and limit my work schedule to non-overtime hours, I regularly performed work for GEICO that I did not report in the company's timekeeping system.

**Other Special Investigators**

20.    I worked with approximately 4 other Special Investigators in my Staged Loss team, including Jeff Lewonka and Anthony DeStefano.

21.    I also know that other Special Investigators worked many overtime hours off the clock each week without receiving overtime pay.  I know this because we had regular team meetings and discussed the duties we performed and the long hours we were working.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:    _11/08/2023_
          Bethpage, New York



*Charise Jones*
_____
Charise Jones

- 7 -