# EXHIBIT 39

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

KEITH FISCHER, MICHAEL          )
O'SULLIVAN, JOHN MOESER,        )
LOUIS PIA, THOMAS BARDEN,       )
CONSTANCE MANGAN, and           )
CHARISE JONES,                  )
individually and on behalf      )
of all others similarly         )
situated,                       )
                                )
            Plaintiffs,         )    Case No:
                                )    2:23-Civ. 2848
      -vs-                       )    (GRB)(ARL)
                                )
GOVERNMENT EMPLOYEES            )
INSURANCE COMPANY d/b/a         )
GEICO,                          )
                                )
            Defendant.          )

The videotaped videoconference deposition of LOUIS CANIGLIA, JR., called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken remotely before ALICE M. SCHWINGER, CSR NO. 84-2913, a Certified Shorthand Reporter of the State of Illinois, on the 17th day of January, A.D. 2025, commencing at 10:00 a.m. Central Standard Time.



Case 2:23-cv-02848-SJB-SIL     Document 173-42     Filed 04/24/26     Page 3 of 18 PageID #: 11939

APPEARANCES:

OUTTEN & GOLDEN, LLP,

(685 Third Avenue, 25th Floor,

New York, New York 212/245-1000,

516/788-7159), by:

MR. JARRON D. McALLISTER,

appeared on behalf of the Plaintiffs;

DUANE MORRIS LLP,

(190 South LaSalle Street, Suite 3700,

Chicago, Illinois 60603,

312/499-6700), by:

MR. GREGORY TSONIS,

appeared on behalf of the Defendant;

REPORTED BY:  ALICE M. SCHWINGER, CSR

CSR No. 84-2913.



THE VIDEOGRAPHER:  We are now on the record. The time is 10:00 a.m. Central Time on January 17, 2025.  This begins the videoconference deposition of Louis Caniglia, Jr., taken in the matter of Keith Fischer, et al., v. Government Employees Insurance Company.  This case is filed in the United States District Court, Eastern District of New York, Case No. 2:23 CIV 2848.

My name is Brent Jordan.  I'm your remote videographer today.  The court reporter is Alice Schwinger.  We are representing Esquire Deposition Solutions.

Will counsel present please identify yourself and state whom you represent.

MR. McALLISTER:  Jarron McAllister for plaintiffs from Outten and Golden representing Mr. Caniglia in this deposition today.

MR. TSONIS:  Greg Tsonis from Duane Morris, LLP, representing defendant GEICO.

THE COURT REPORTER:  My name is Alice Schwinger, Illinois Certified Shorthand Reporter. This deposition is being held via videoconferencing equipment.  The witness and reporter are not in the same room.  The witness will be sworn in remotely



Case 2:23-cv-02848-SJB-SIL    Document 173-42    Filed 04/24/26    Page 5 of 18 PageID #: 11941

pursuant to agreement of all parties.  The parties stipulate that the testimony is being given as if the witness was sworn in person.

                    (WHEREUPON, the witness was duly

                    sworn.)

                    LOUIS CANIGLIA, JR.,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

                    EXAMINATION

BY MR. TSONIS:

    Q.    Good morning, Mr. Caniglia.

    A.    Hello.

    Q.    Can you please state and spell your name for the record?

    A.    Yeah, my name is Louis Caniglia.  That's L-o-u-i-s, last name is Caniglia, C-a-n-i-g-l-i-a.

    Q.    All right.  What's your current address?

    A.    10 Berry Court, Congers, that's C-o-n-g-e-r-s, New York 10920.

    Q.    Thank you.  And, Mr. Caniglia, as I said, my name is Greg Tsonis.  I'm a lawyer for GEICO, and I'll be taking your deposition today.

                    Have you ever been deposed before?

    A.    No.



800.211.DEPO (3376)
EsquireSolutions.com

Q.    Okay.  And when you would have those conversations, it sounds like part of that either e-mail or conversation would be requesting overtime?

A.    Yes.

Q.    All right.  And those conversations, though, didn't say I feel like my pay doesn't -- my paycheck that I received doesn't reflect the hours that I actually worked, right, as we were looking at in the handbook?

A.    I don't --

MR. McALLISTER:  Objection.

BY THE WITNESS:

A.    I don't know.  Can you rephrase that, Counsel?  I think you're summarizing my statements a little bit.

BY MR. TSONIS:

Q.    Right.  I guess I'm trying to get specifically as to an understanding as to what you would say.  You wouldn't say I worked, you know, 50 hours last week, and my paycheck does not reflect that; right?

MR. McALLISTER:  Objection.



BY THE WITNESS:

A.    I don't -- if I can recall back to my conversations with my supervisors, it's possible that I -- I could have said something like that, like I worked 20 hours overtime and my pay -- my paycheck doesn't reflect that.  It's possible.

BY MR. TSONIS:

Q.    But you don't recall --

A.    Yes.

Q.    You don't recall any conversation like that?

A.    Do I recall any -- I just said that, it's definitely possible that I said that to my supervisors, and it fell on deaf ears.

Q.    So you're saying it's possible, but do you recall any specific conversation like that?

A.    A specific date and time, no; but, yes, I've definitely expressed my overtime to my supervisors over the phone, and I wasn't compensated for it.

Q.    Okay.  So when you say --

A.    I don't know how far up that goes up the line after the supervisor, if the manager or the vice president or -- again, I can't attest to any

11:29:07
11:29:07
11:29:11
11:29:14
11:29:17
11:29:20
11:29:23
11:29:23
11:29:23
11:29:25
11:29:26
11:29:27
11:29:32
11:29:35
11:29:38
11:29:40
11:29:42
11:29:47
11:29:52
11:29:56
11:29:58
11:29:59
11:30:01
11:30:03



document for reference.  I'm just asking you a basic factual question.

A.    Okay.

Q.    Did you ever report to your local human resources manager that you did not receive pay for all the hours you actually worked?

A.    I'm going to say no.

Q.    All right.  Did you ever --

A.    Yes, no.  Sorry.

Q.    Did you ever report to corporate human resources that you -- you did not receive pay for all the hours you actually worked?

A.    I didn't even know we could do that, but no.

Q.    Okay.  Were you aware that GEICO maintains like a Berkshire Hathaway ethics hotline?

A.    Yes.

Q.    Did you ever report to the Berkshire Hathaway ethics hotline that you did not receive pay for all hours that you actually worked?

A.    I did not.

Q.    Okay.  So I'm going to drop another exhibit into the chat here.  You should be getting it now.  This is going to be marked as Exhibit 2,



A.      No, I -- no.                                11:42:21

Q.      Okay.                                       11:42:21

A.      I'm going to assume my supervisor.          11:42:26
That's an assumption, though.  I'm going to assume  11:42:29
my supervisor.                                      11:42:31

Q.      And when your supervisor -- so I guess      11:42:32
when you submit it, are you certifying that it's,   11:42:34
like, you know, accurate, accurately reflects the   11:42:36
time that you worked?                               11:42:39

MR. McALLISTER:  Objection.                         11:42:39

BY THE WITNESS:                                     11:42:40

A.     No.                                          11:42:40

BY MR. TSONIS:                                      11:42:42

Q.      It's your testimony that it's not a        11:42:42
certification each week when you submit in Workday? 11:42:44

MR. McALLISTER:  Objection.                         11:42:47

BY THE WITNESS:                                     11:42:48

A.      A certification of what I was allotted     11:42:48
to do during that time period.                      11:42:52

BY MR. TSONIS:                                      11:42:55

Q.      Is that what the certification that you    11:42:55
have to acknowledge each week says, this certifies  11:42:58
that you have entered what you were allotted to     11:43:01
work, or does it say that you --                    11:43:03



LOUIS CANIGLIA, JR.                                     January 17, 2025
KEITH FISCHER, et al. vs GEICO                                       92

A.    Yes.

(WHEREUPON, there was a brief interruption.)

THE COURT REPORTER:  Hold on.  Hold on.

MR. McALLISTER:  Lou, if you can just let him finish the question before you answer.

THE WITNESS:  I'm sorry.

(Record read.)

MR. TSONIS:  I'll finish my question.

BY MR. TSONIS:

Q.    Does it say that you certify that the hours that you entered are accurate and reflect the time worked?

MR. McALLISTER:  Objection.

BY THE WITNESS:

A.    Answer it as a yes-or-no question.  I believe it does say that, but that doesn't mean that I felt accurate about doing that.  I mean, I did have to keep my job and pay my mortgage, so I clicked yes.

BY MR. TSONIS:

Q.    Okay.  And, Mr. Caniglia, you have already said a number of things, and you will have plenty of opportunity to explain your -- I just --



know.  I can't answer that question in a -- in a    13:10:46
yes or no.  I can't.    13:10:50

Q.    Okay.  So I know you talked about    13:10:51
conversations with your supervisors.  Setting aside    13:10:55
conversations with your supervisors, are there any    13:10:58
other ways in which you're claiming that your    13:11:01
supervisors knew that you were working but not    13:11:04
recording your time in Workday?    13:11:06

A.    That's a good question.  I don't -- I    13:11:08
don't know if -- I'm going to say no to that    13:11:19
question.    13:11:23

Q.    So those conversations essentially are    13:11:24
the basis for your claim, that your supervisors,    13:11:30
you know, that -- to use the paragraph 14 language,    13:11:32
that GEICO failed to record your hours worked and    13:11:36
you weren't paid for time?    13:11:38

MR. McALLISTER:  Objection.    13:11:39
BY MR. TSONIS:    13:11:41

Q.    Well, strike that because I think I    13:11:41
asked it poorly.  I'll ask it again.    13:11:42

Those conversations with your    13:11:44
supervisors, that's the basis for you claiming that    13:11:47
your supervisors were aware that you were working    13:11:48
hours that you weren't compensated for?    13:11:51


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

A.    My complaint is that I was working and I wasn't compensated for my time that I worked for GEICO all of the time, in terms of the entirety of my overtime working.  I'm going to say no to your question because I can't attest to if they knew anything or not.  So, again, my complaint is unpaid overtime.  It's just -- it's a simple complaint, so...

Q.    Okay.  So that's fair.  So your complaint is unpaid overtime, but you don't know if any of the supervisors were aware of any of the hours that you were working but not getting paid for?

MR. McALLISTER:  Objection.

BY THE WITNESS:

A.    They were aware of it because I -- I -- you -- you showed me e-mails before of -- of me telling them.  You only have a brief period of time, though, from 2017 to 2018, I believe, but, you know, there was other years that -- and days that there's no documentation for that, and there could have been con -- there were phone conversations and things like that, so...



Q.    Do you see there's a Pay Change History here?    15:11:40 15:11:43

A.    I do.    15:11:44

Q.    Sort of in the middle.  All right.  And do you see it sort of shows by year merit compensation changes that happened?    15:11:44 15:11:46 15:11:50

A.    Yes.    15:11:52

Q.    So from approximately, you know, 2017 where your total sort of base pay, it looks like, was 66,800, as of January 28th of 2023, that it increased to $90,171, approximately?    15:11:53 15:12:00 15:12:03 15:12:10

A.    I see this, yes.    15:12:15

Q.    All right.  And it looks like you received a merit increase every single year?    15:12:16 15:12:17

A.    Yes.    15:12:20

Q.    Now, if you go to the page ending in 4988.    15:12:20 15:12:27

A.    Is that -- in the PDF, Counsel, which one?    15:12:31 15:12:34

Q.    Yeah, page 30.    15:12:36

A.    Okay.  Okay.    15:12:37

Q.    All right.  You see the bottom box here that says Time Off Requests?    15:12:43 15:12:44

A.    Yes.    15:12:47



BY THE WITNESS:

A.    Because you have to sleep, you have to eat properly, and there are other variables that consider -- that have to take into consideration.

BY MR. TSONIS:

Q.    Okay.  Setting those sleep and eating variables aside, isn't it true, just from a quantity of time standpoint, you get to a hundred faster if you're working 48.75 than you are 38.75?

A.    I'm going to say I don't know.

THE WITNESS:  And, Jarron, that's what I'm going to say.

BY MR. TSONIS:

Q.    But you won't admit that mathematically you can get to that point faster by working more hours?

A.    I -- I will admit that you could.

Q.    Okay.  But you won't admit that it's possible you close cases faster --

A.    I just said that.

THE COURT REPORTER:  Hold on.  Sir, please let him get the question out.

BY MR. TSONIS:

Q.    Then are you agreeing that it's possible

15:24:55
15:25:14
15:25:15
15:25:18
15:25:19
15:25:19
15:25:22
15:25:24
15:25:26
15:25:31
15:25:32
15:25:35
15:25:36
15:25:36
15:25:39
15:25:42
15:25:42
15:25:44
15:25:48
15:25:48
15:25:48
15:25:48
15:25:53
15:25:53



that you closed cases faster because you claimed to have worked more hours?

MR. McALLISTER:  Objection.

BY THE WITNESS:

A.    For the sake of keeping this interview rolling, I will say yes.

BY MR. TSONIS:

Q.    Okay.  You can close out this exhibit.

I'm going to send you now what's being marked as I believe it's Exhibit 9.

MR. McALLISTER:  Yes.

(WHEREUPON, a certain document was marked Caniglia Deposition Exhibit No. 9, for identification, as of January 17, 2025.)

BY MR. TSONIS:

Q.    Let me know when you have it opened.

A.    It's titled as June 1, 2023?

Q.    Correct.  And for the record, Exhibit 9 is a document bearing Bates label G011375.

Do you see that this is an e-mail from you to Toni D'Agata on June 1, '23?

A.    Yes.

Q.    All right.  And this is the time where



Case 2:23-cv-02848-SJB-SIL    Document 173-42    Filed 04/24/26    Page 16 of 18
PageID #: 11952
LOUIS CANIGLIA, JR.                                                    January 17, 2025
KEITH FISCHER, et al. vs GEICO                                                     272

and sign the transcript?  We have to ask.                    16:11:34

    MR. McALLISTER:  Oh, sure.                              16:11:34

    THE COURT REPORTER:  Okay.                              16:11:34

    MR. TSONIS:  And we'll do --                            16:11:36

    THE VIDEOGRAPHER:  Thank you.  This will                16:11:36
conclude today's videoconference deposition of               16:11:40
Louis Caniglia, Jr., taken on January 17, 2025, at           16:11:42
4:10 p.m. Central Time.                                       16:11:48

    THE COURT REPORTER:  So I did get -- it's               16:11:48
five-day delivery for you, Counsel.  I did get               16:11:48
that.                                                         16:11:48

        And Counsel, you said you wanted a copy?           16:12:01

    MR. TSONIS:  Electronic transcript, yeah,               16:12:01
that's fine.                                                 16:12:01

    THE COURT REPORTER:  Mr. McAllister, copy?             16:12:05

    MR. McALLISTER:  Yes.                                  16:12:05

    THE COURT REPORTER:  Okay.  All right.

                (WHEREUPON, the deposition concluded

                   at 4:12 p.m.)



STATE OF ILLINOIS    )

                     )  SS:

COUNTY OF DUPAGE     )

          I, ALICE M. SCHWINGER, CSR No. 84-2913, a Certified Shorthand Reporter of the State of Illinois, do hereby certify:

          That previous to the commencement of the examination of the witness, the witness was duly sworn to testify the whole truth concerning the matters herein;

          That the foregoing deposition transcript was reported stenographically by me, was thereafter reduced to typewriting under my personal direction and constitutes a true record of the testimony given and the proceedings had;

          That the said deposition was taken before me at the time and place specified;

          That I am not a relative or employee or attorney or counsel, nor a relative or employee of such attorney or counsel for any of the parties hereto, nor interested directly or indirectly in the outcome of this action.

          IN WITNESS WHEREOF, I do hereunto set my hand at Woodridge, Illinois, this 21st day of



January, A.D. 2025.

_Alice M. Schwinger_

Certified Shorthand Reporter

ALICE M. SCHWINGER, CSR No. 84-2913



800.211.DEPO (3376)
EsquireSolutions.com