**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KEITHER FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>       Defendant. | No. 23 Civ. 02848 (SJB) (SIL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO GEICO'S MOTION TO <u>DECERTIFY THE COLLECTIVE ACTION</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    I.      Factual Background ................................................................................ 2

              A.     Plaintiffs Work as Insurance Fraud Investigators in a Single State ................................................................................................. 2

              B.     GEICO Tightly Restricts Overtime. ................................................. 3

              C.     GEICO's Performance Metrics Punish Investigators for Recording Hours. ........................................................................... 4

              D.     Workload Pressures and Performance Metrics Caused Plaintiffs to Consistently Work Unpaid Overtime. ................................. 7

              E.     GEICO Has Both Actual and Constructive Knowledge of Unpaid Work. ................................................................................ 7

    II.     Relevant Procedural History ................................................................ 10

              A.     Plaintiffs' Motions for Collective and Class Certification ............ 10

              B.     Discovery After Conditional Certification ...................................... 11

                    1.     Opt-In Discovery. ............................................................... 11

                    2.     Data Discovery. .................................................................. 11

ARGUMENT ......................................................................................................... 12

    I.      Legal Standard ..................................................................................... 12

    II.     Plaintiffs Are Similarly Situated ......................................................... 14

              A.     Plaintiffs Were Subject to a Common Off-The-Clock Policy or Practice. ..................................................................................... 14

              B.     Major Case Investigators .................................................................. 18

               C.     Plaintiffs May Prove Their Damages Through Testimony. ............ 20

    III.    GEICO Fails to Show Material Dissimilarities in the Collective. ....... 20

              A.     Damages Issues Do Not Defeat Similarity; *Mt. Clemens* Applies. ........................................................................................... 24

    IV.    GEICO's Back-Door Motion for Partial Summary Judgment Should Be Rejected. ........................................................................... 26

CONCLUSION ...................................................................................................... 27

# TABLE OF AUTHORITIES

**CASES**

*Adams v. City of New York,*
  No. 16 Civ. 3445, 2020 WL 1031025 (S.D.N.Y. Mar. 3, 2020) ..................................... 14

*Alonso v. Uncle Jack's Steakhouse, Inc.,*
  No. 08 Civ. 7813, 2011 WL 4389636 (2011) ................................................................. 24

*Anderson v. Mt. Clemens Pottery Co.,*
  328 U.S. 680 (1946) ...................................................................................................... 13

*Barfield v. N.Y. City Health & Hosps. Corp.,*
  537 F.3d 132 (2d Cir. 2008) .......................................................................................... 22

*Barry v. S.E.B. Serv. of New York, Inc.,*
  No. 11 Civ. 5089, 2013 WL 6150718 (E.D.N.Y. Nov. 22, 2013) ................................... 20

*Blakes v. Illinois Bell Tel. Co.,*
  No. 11 Civ.  336, 2013 WL 6662831 (N.D. Ill.  2013) .................................................... 23

*Brickey v. Dolgencorp, Inc.,*
  272 F.R.D. 344 (W.D.N.Y 2011) ................................................................................... 23

*Briggins v. Elwood TRI, Inc.,*
  882 F. Supp. 2d 1256 (N.D. Ala. 2012) .......................................................................... 23

*Calderon v. GEICO Gen. Ins. Co.,*
  809 F.3d 111 (4th Cir. 2015) ........................................................................................... 2

*Campbell v. City of Los Angeles,*
  903 F.3d 1090 (9th Cir. 2018) ....................................................................................... 21

*Campbell v. City of New York,*
  No. 16 Civ. 8719, 2020 WL 2792978 (S.D.N.Y. May 29, 2020) .................................... 14

*Dieffenbauch v. Rhinehart R.R. Constr., Inc.,*
  No. 17 Civ. 1180, 2021 WL 365850 (N.D.N.Y. Feb. 3, 2021) ....................................... 21

*Eng-Hatcher v. Sprint Nextel Corp.,*
  No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ................................... 24

*Foster v. City of New York,*
  No. 14 Civ. 4142, 2021 WL 1191810 (S.D.N.Y. Mar. 20, 2021) ................................... 19

*Foster v. City of New York,*
  No. 14 Civ. 4142, 2020 WL 8173266 (2020) ................................................................. 24

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999)........................................................................ 18

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989).................................................................................. 13

*Irish v. Tropical Emerald LLC*,
    No. 18 Civ. 82-PKC-SJB, 2021 WL 5899048 (E.D.N.Y. Dec. 14, 2021)........................ 18

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011)........................................................................ 12

*Lassen v. Hoyt Livery, Inc.*,
    No. 13 Civ. 1529, 2014 WL 4638860 (D. Conn. Sept. 17, 2014) .................................. 24

*Maynor v. Dow Chem. Co.*,
    671 F. Supp. 2d 902 (S.D. Tex. 2009) ............................................................. 20

*McGlone v. Cont. Callers, Inc.*,
    49 F. Supp. 3d 364 (S.D.N.Y. 2014)............................................................... 15

*Meadows v. NCR Corp., No. 16 Civ. 6221*,
    2020 WL 1042042 (N.D. Ill.  2020) ............................................................... 24

*Montiel-Flores v. JVK Operations Ltd.*,
    2023 WL 5979209 (2023), *report and recommendation adopted*, 2023 WL
    6057375 (E.D.N.Y. Sept. 18, 2023)........................................................... 18, 25

*Perry v. City of New York*,
    No. 13 Civ. 1015, 2019 WL 1146581 (S.D.N.Y. Mar. 13, 2019) .................................. 23

*Perry v. City of New York*,
    78 F.4th 502 (2d Cir. 2023) .......................................................... 1, 12, 16, 17

*Pichardo v. Carmine's Broadway Feast Inc.*,
    No. 15 Civ. 3312, 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016) .................................. 18

*Pino v. Harris Water Main & Sewer Contractors Inc.*,
    No. 17 Civ. 5910, 2020 WL 5708889 (E.D.N.Y. Sept. 23, 2020)............................. 13, 15

*Pittmon v. CACI International, Inc., No. 21 Civ. 02044*,
    2023 WL 8168834 (C.D. Cal. Oct. 26, 2023)...................................................... 23

*Reich v. S. New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)......................................................................... 17

*Republic of Turk. v. Christie's, Inc.*,
    326 F.R.D. 394 (S.D.N.Y. 2018) .................................................................. 27

iv

*Savinova v. Nova Home Care, LLC,*
    No. 20 Civ. 1612, 2024 WL 1341113 (D. Conn. Mar. 29, 2024) ..................................... 14

*Scott v. Chipotle Mexican Grill, Inc.,*
    954 F.3d 502 (2d Cir. 2020) .................................................................................. *passim*

*Vecchio v. Quest Diagnostics, Inc.,*
    No. 16 Civ. 5165, 2020 WL 5604080 (S.D.N.Y. Sept. 18, 2020) ................................... 25

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ....................................................................................................... 22

*Wilson v. Jamaica Serv. Program for Older Adults, Inc.,*
    708 F. Supp. 3d 213 (E.D.N.Y. 2023) ........................................................................... 17

*Wood v. Mike Bloomberg 2020, Inc.,*
    746 F. Supp. 3d 185 (S.D.N.Y. 2024) ........................................................................... 15

*Zivali v. AT & T Mobility LLC,*
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ........................................................................... 23

**STATUTES**

29 U.S.C. § 207(a) .................................................................................................................. 2

29 U.S.C. § 216(b) .................................................................................................................. 1

**REGULATIONS**

29 C.F.R. § 785.11 ................................................................................................................ 12

29 C.F.R. § 785.13 ................................................................................................................ 16

**FEDERAL RULES**

Fed. R. Civ. P. 20 ................................................................................................................. 18

Fed. R. Civ. P. 23(a)(2) ........................................................................................................ 14

Fed. R. Civ. P. 26 .................................................................................................................. 4

Fed. R. Civ. P. 32(a) .............................................................................................................. 4

**INTRODUCTION**

GEICO's motion to decertify the collective ("Motion") should be denied.  Plaintiffs are 52 insurance fraud investigators ("Investigators") in New York who allege that GEICO's policies and practices forced them to work "off the clock" without overtime pay.  To prove their claims, Plaintiffs must show that they worked unpaid overtime and that GEICO "(a) require[d], (b) kn[ew] about, or (c) should have known about" that work.  *Perry v. City of N.Y.*, 78 F.4th 502, 512-13 (2d Cir. 2023).  Plaintiffs assert identical legal claims and will use common evidence to prove the existence of the unlawful practice, and thus they surpass their burden to show at least one "similar issue of law or fact material to the disposition of their FLSA claims."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  They are therefore "similarly situated" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and have a "right" to proceed collectively, *id.* – not through 52 individual trials with duplicative evidence.

The Court found that Plaintiffs' claims share legal and factual similarities when it ruled that they satisfied commonality and typicality under Rule 23.  *See* Docket Entry ("DE") 162 at 18 (there is "a common factual thread among Investigators: an understanding that they were expected to complete their work, even if it meant working beyond the hours allocated, and that they were not permitted to log those hours if they did.  And that understanding was driven by a common GIECO policy regarding overtime").  Additional discovery now confirms that conclusion.  GEICO's relentless drive from the top to maximize productivity – with real consequences for Investigators who fell behind – caused the off-the-clock work Plaintiffs allege.  And GEICO's internal discussions show actual knowledge that its management practices posed legal risks, but that knowledge did not cause it to meaningfully change its practices, creating a common basis for knowledge, willfulness, and lack of good faith.

1

## BACKGROUND

**I.     FACTUAL BACKGROUND**

**A.     Plaintiffs Work as Insurance Fraud Investigators in a Single State.**

Plaintiffs are current and former Investigators who worked for GEICO's Special Investigations Unit ("SIU") in New York from April 17, 2020 to the present.  They are nonexempt employees who are entitled to overtime.  29 U.S.C. § 207(a); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (affirming summary judgment order holding that GEICO Investigators were nonexempt).  Their job is to investigate suspected insurance fraud.  They are either "Field" Investigators, whose cases require at least some work outside the office, "Desk" Investigators, who investigate cases from an office, or "Major Case" Investigators, a title some Field or Desk Investigators moved in or out of over time.[1]  All Investigators' core responsibilities were the same: to review case files, conduct investigations, and write reports about their findings.[2]  There are 34 "Field" Investigators, 8 "Desk" Investigators, and 10 "Major Case" Investigators in the collective (4 Investigators worked in multiple roles during the relevant period):

---

[1]     This case only concerns Investigators.  *See* DE 52 (Second Am. Compl.) ¶¶ 2 n.2, 78 (defining FLSA Collective).  Portions of GEICO's motion claim to show variations among the collective by pointing to SIU Trainers and employees in the "Management Development Program."  Mot. 8.  The three Plaintiffs to hold these titles (Charise Jones, Eric Stephens, Cristobal Cruz) did so for only portions of their tenure and *also* worked as Investigators.  Their claims are therefore similar to the collective during their time as Investigators.

[2]     *See* DE 98-1 (Pls.' Class Cert. Mem.) at 4 n.9.  Because of the extensive record, Plaintiffs will cross-cite to the materials and arguments already filed on the docket whenever practicable.



Total

■ Desk  ■ Major Case  ■ Field

Investigators work on teams of seven to ten[3] and report to SIU Supervisors, who report to SIU Managers.[4] SIU Managers, in turn, report to GEICO's senior management. Before 2023, most New York Field and Desk Investigators reported to Manager Bill Newport and most Major Case Investigators reported to Manager Courtney Wolfe.[5] After 2023, the reporting lines changed, with members of the collective reporting to three Managers, although the majority of field investigators reported to Manager Rene Cubas.[6]

**B.      GEICO Tightly Restricts Overtime.**

GEICO's policies require all Investigators – Field, Desk, and Major Case – to get *prior* Supervisor approval to work overtime.[7] A Supervisor who consistently authorizes overtime *after*

---

[3]      DE 98-1 at 3 n.4.

[4]      DE 98-1 at 3 n.5

[5]      Mot. Ex. 2 (Newport Decl. ¶ 10).

[6]      Some Investigators reported to Jim Hammonds or Courtney Wolfe. *See* Ex. A (Cruz Tr. 86:15-21). All exhibits referenced herein are attached to the Declaration of Michael J. Scimone ("Scimone Decl.").

[7]      Ex. B (GA0010734-GA0010756). The cited document was produced in the related matter, *Alvarez v. Gov't. Emps. Ins. Co.*, No. 24 Civ. 722 (D. Md.), and marked "confidential." ████████████████████████████████████████████████████████. Scott Goss

3

it is worked violates that policy,[8] and if an Investigator repeatedly requests approval *after* working overtime, GEICO instructs Supervisors to "coach" the Investigator to avoid that outcome.[9]

GEICO expects Investigators to complete their work in 38.75 hours per week. GEICO instructs Supervisors to only approve overtime when there is a "business need" for it.[10] Supervisors only have authority to approve small amounts of overtime.[11] And even Managers' authority was not "unlimited" – regular overtime or significant amounts had to be "acceptable" to upper management,[12] often leading Managers to deny overtime approval when Supervisors requested it on behalf of their teams, even when Investigators were "overwhelmed with caseload."[13]

### C.    GEICO's Performance Metrics Punish Investigators for Recording Hours.

GEICO is a data-driven company that meticulously tracks its employees' performance. Before 2023, performance metrics for SIU were designed, tracked, and reported by GEICO Claims Home Office ("CHO"), which "created policy and . . . sent that out to the regions."[14]

---

testified that the policies it describes for overtime approval are accurate as to SIU. Ex. C (Goss Tr. 106:14-107:15). The exhibit is relevant and discoverable in this litigation under Fed. R. Civ. P. 26 because it is probative of GEICO's overtime policies that apply the claims here.

[8]    Goss Tr. 107:16-108:12.

[9]    Goss Tr. 258:16-259:11.

[10]    DE 98-1 at 5 n.14-16.

[11]    Ex. D (Greenman Tr. 222:5-20); Goss Tr. 106:17-108:4.

[12]    DE 98-1 at 7 nn.24, 25.

[13]    Ex. E (G025158-G025159) ("Good morning, no OT at this time.").

[14]    Goss Tr. 196:14-198:24. This deposition was taken in the pending related matter, *Alvarez*, which raises the same claims on behalf of a collective that does not overlap with this case. It is admissible in this case pursuant to Fed. R. Civ. P. 32(a) because GEICO was represented at the deposition, and Scott Goss, a senior manager over GEICO's investigative operations, is GEICO's agent. Goss Tr. 18:2-18.

Although regional Vice Presidents had the nominal ability to deviate from CHO policies, CHO had "leverage" over the regions because it controlled data reporting, so when it came to performance goals and metrics, Regional Managers, "would, for the most part, have to follow those things."[15]  After 2023, a committee of GEICO directors set goal packages for SIU nationally.[16]  For Field and Desk Investigators, the key metrics were "Productivity" (the number of cases closed over the number of hours worked); "Case Life" (how long a case is pending from assignment to close, including weekend days), and "Quality" (the percentage of cases that meet substantive audit requirements).[17]  Major Case Investigators were evaluated on only the latter two metrics.  GEICO ranks all Investigators in the company against one another – assigning them percentile scores both "Overall" and for key metrics such as "Productivity."[18]

Although there have been some changes to how it was measured over the years, "Productivity" always measured how many cases an Investigator closed over a given period.  For most of the class period, Productivity was a ratio that divided the number of cases closed (or a number of "points" weighted by the complexity of the case) by the number of hours worked per month.[19]  This meant that if Investigators reported working more hours, the denominator in that

---

[15]    *Id.* 198:11-24.

[16]    *Id.* 235:18-237:12.

[17]    DE 98-1 at 8-10.

[18]    *See, e.g.*, Ex. F (Cubas Tr. 197:16-20) ("The investigators compete against each other for Case Life, they are ranked against each other.").

[19]    Greenman Tr. 172:15-173:6.  In 2022, GEICO simply measured the number of cases closed over the course of the year, without reference to hours.  This meant, in effect, that employees who took significant time off scored worse than their counterparts who took less. Goss Tr. 62:15-63:23.

equation rose, and their Productivity scores went down, which disincentivized them from reporting all work hours.[20]

These metrics "roll up" to Supervisors – that is, GEICO ranks Supervisors based on their team's performance on the same metrics.[21] Those team metrics in turn roll up to Managers.[22] GEICO has been tracking similar metrics and ranking Investigators, Supervisors, and Managers since at least 2012.[23]

GEICO uses these metrics to sort Investigators into a 1-5 rating scale for performance review purposes. Investigators rated less than 3 are ineligible for an annual salary increase and put on a performance improvement plan.[24]

GEICO Managers and Supervisors regularly track performance metrics to identify low performers. Since at least 2024, GEICO Employee Relations has run data reports every six months to identify the bottom-performing 10% of all Investigators so Managers can identify Investigators who should be placed on coaching plans.[25] Investigators on coaching plans who fail to improve their performance are fired.[26] Managers and Supervisors meet monthly with senior SIU management at "Month at a Glance" (MAAG) meetings to discuss "critical

---

[20]    DE 98-1 at 8-9 nn.32-35.

[21]    Ex. G (G017524) (showing supervisor team rankings); Ex. H G017930 (example team with rankings).

[22]    Ex. I (*Alvarez* Cubas Dep. 212:10-15).

[23]    Cubas Tr 140:2-142:3.

[24]    DE 98-1 at 8 n.30.

[25]    Goss Tr. 120:7-122:6.

[26]    Ex. J (G025166-G025173); Goss Tr. 124:3-125:5

performance metrics, like productivity and case life."[27]  Managers meet separately to discuss metrics again the same month.[28]

The goal for GIECO is to ensure that productivity "variances are tight," meaning all employees perform similarly to one another.[29]  As SIU Manager Rene Cubas, Jr., explained:

> I asked [former GEICO CEO Tony Nicely] . . . .  Mr. Nicely, as a new manager, when would you consider me successful?  And he said something . . . that stuck with me.  He said, "Rene, if you can get your variances to ten percent[.]"[30]

### D.  Workload Pressures and Performance Metrics Caused Plaintiffs to Consistently Work Unpaid Overtime.

All 25 Plaintiffs who have been deposed (about 50% of the collective) testified that workload or metrics pressures caused them to work unpaid overtime.[31]  And all 24 Plaintiffs who responded to written discovery but were not deposed (about 50% of the collective) have attested to working off the clock.[32]  The high workload in Region 2 came about by design.  Email traffic from December 2018 shows that Regional Manager Bill Newport was pursuing a goal to more than double the number of new cases assigned to his region over a 2-year period.[33]

### E.  GEICO Has Both Actual and Constructive Knowledge of Unpaid Work.

GEICO knew that its Investigators were working unpaid overtime.  As far back as 2021, Scott Goss – now a director over all Desk and Field Investigators in the company, but at the time a Regional Manager – emailed the head of GEICO CHO about the "Productivity" metric, saying

---

[27]   Greenman Tr. 168:18-170:16 ("We will talk about results for investigators.").

[28]   Cubas Tr. 107:14-109:18.

[29]   *Id.* 115:17-19.

[30]   *Id.* 116:21-117:8.

[31]   *See* Ex. K (chart compiling relevant deposition excerpts).

[32]   *See* Ex. JJ (chart compiling relevant written discovery responses).

[33]   Ex. MM (Newport Ex. 7, G01868-G01871); Ex. NN (Newport Tr. 137:7-138:10).

he was "concerned" about "hidden" overtime, because (a) GEICO had recently been sued for systemic off-the-clock work by Auto Damage adjusters;[34] (b) ███████████████████████ ███████████████████████████████████████████████████ ██████████████████████.[35] But Goss's suggestions to adjust how GEICO measured Productivity to avoid overloading Investigators with work were not implemented, and Goss was ultimately not included in GEICO's internal conversations about how to measure Productivity.[36] GEICO continues to evaluate Investigators based on Productivity, using hours worked as a factor that diminishes their score, to this day.[37] Rather than change its Productivity metric, or loosen its restrictive overtime approval process, GEICO responded to the Auto Damage lawsuit by adopting a new phone application that shifted greater responsibility to Investigators to record their time – a legally (and practically) insufficient remedial measure.[38]

GEICO had even more specific knowledge that Investigators in Region 2 worked off the clock. At least nine Plaintiffs testified that they told GEICO Managers that they worked off the clock, and that the problem was widespread. DE 142 at 7-10. For example, John Moeser complained directly to SIU Manager Bill Newport that "I, along with everybody that I knew of, were working more hours than what they were documenting."[39] Similarly, Michael Grey had

---

[34] See Ex. OO (Complaint in *Rieske v. GEICO*) ¶¶ 6, 26. The Auto Damage adjusters who brought suit in *Rieske* also alleged that GEICO's performance metrics drove systemic off-the-clock work. Like Investigators, their productivity was measured as a quantity of work over hours. Goss Tr. 217:11-218:8.

[35] Ex. PP (Goss Ex. 19, GA0011613-GA0011615); Goss Tr. 226:15-230:9.

[36] Goss Tr. 230:7-15.

[37] Goss Tr. 232:15-233:2.

[38] Ex. B at GA0010739 ( ███████████████████████ ██████████████████ "), 10740 (under " ███████████ ," stating, " █████ █████████████ "); Goss Tr. 91:4-21.

[39] Ex. N (Moeser Tr. 96:25-97:2).

"dozens" of conversations with his supervisor, Chet Janik, about working unpaid overtime, and testified that his supervisor "knew that his entire team was putting in more hours than [their] scheduled hours;"[40] this fact was "well known."[41]   And Constance Mangan testified at an office-wide Christmas luncheon attended by Investigators, Supervisors, and Managers, a spokesperson for the Investigators told Bill Newport publicly "how everybody was struggling, and that we weren't able to manage it, and that *we were working past our scheduled hours*."[42]   In response, Newport "just shrugged his shoulders" and said to the assembled Investigators, "*I don't give a fuck*."[43]   *See also* Exs. K, JJ (collections of deposition and written testimony about complaints).

GEICO had other knowledge that would support, at minimum, constructive knowledge of off-the-clock work.  At least ten more Plaintiffs testified that they complained to Supervisors and Managers that their workload was too heavy for a 7.75-hour workday or 38.75-hour workweek. DE 142 at 10-12.  Al Brust told his supervisor on "numerous occasions" that "if we don't work extra . . . I cannot satisfy these metrics."[44]   Michael Reed testified, "it was just a common complaint.  With the amount of cases that we were receiving, and the amount of work that we're getting, it was just not feasible to do it in the amount of hours that we were working."[45]

These workload complaints were systemic.  SIU Manager Rene Cubas confirmed that the Productivity metric caused Investigators to complain that they had too much work "the whole

---

[40]      Ex. X (Grey Tr. 95:15-19, 264:13-20).

[41]      *Id.* 94:3-95:25; 264:13-265:13 (describing an email where Mr. Janik stated, "I know the math doesn't add up, but just get [the work] done.").

[42]      Ex. M (Mangan Tr. 182:24-184:20).

[43]      *Id.*

[44]      Ex. S (Brust Tr. 127:5-128:11).

[45]      Ex. Y (Reed Tr. 70:18-71:11); *see also e.g.*, DE 142 at 10-11 (citing testimony of Maria Munoz, Louis Pia, Craig Costanzo, and Daniel King).

time I've been in SIU management."[46]  And GEICO Supervisors and Managers regularly discovered in GEICO's own Special Investigation Case Management (SICM) system that Investigators were working outside their scheduled hours.[47]

## II.    RELEVANT PROCEDURAL HISTORY

### A.    Plaintiffs' Motions for Collective and Class Certification

Plaintiffs filed this case on April 17, 2023 seeking to represent a class and collective of similarly situated Investigators.  DE 1.  Shortly thereafter, Plaintiffs moved for conditional certification of the FLSA collective, supported by 27 detailed declarations summarizing their common overtime claims.  DE 54.  On March 31, 2025, the Court authorized notice to the collective, finding "that Plaintiffs and the proposed FLSA Collective members were subject to Defendant's common policy or plan of deterring the reporting of all hours worked, and failing to pay for such hours worked."  DE 91 at 20.  In total, approximately 60 Investigators have joined.

Plaintiffs filed their Motion for Class Certification on June 11, 2025, seeking to certify a New York Labor Law class under Rule 23.  *See* DE 98.  On February 20, 2026, the Court denied the motion based on Rule 23(b)'s predominance requirement, but found that Plaintiffs satisfied commonality and typicality because GEICO's de facto off-the-clock policy could be proven through "common proof."  DE 162 at 21-23.  As summarized by the Court:

> Plaintiffs' testimony demonstrates a common factual thread among Investigators: an understanding that they were expected to complete their work, even if it meant working beyond the hours allocated, and that they were not permitted to log those hours if they did. And that understanding was driven by a common GEICO policy regarding overtime.

*Id.* at 18.

---

[46]    Cubas Tr. 209:4-20.

[47]    *See, e.g.*, Ex. RR (G017489-G017490); Brust Tr. 84:18-85:6, 126:7-11.

10

### B.        Discovery After Conditional Certification

### 1.        Opt-In Discovery.

After the Court authorized notice, 35 more Plaintiffs joined this case.  On October 31, 2025, GEICO served 35 set of written discovery on these Plaintiffs – each set containing 28 requests for admission, 12 requests for production of documents, and 12 interrogatories.[48] GEICO then sought leave to depose 17 additional opt-in plaintiffs.  DE 148.  Plaintiffs opposed the request (15 Plaintiffs had already been deposed) and cross-moved for a protective order to limit the scope of written discovery.  DE 149.  The Court granted GEICO all the depositions it requested and did not rule on Plaintiffs' request for a protective order.  *See* Electronic Order (Dec. 2, 2025).

Between December 1, 2025 and March 6, 2023, Plaintiffs defended 10 opt-in depositions[49] and served 25 sets of written discovery responses.[50]  Plaintiffs served 10 sets of timely responses, and notified GEICO that they needed more time to collect the remaining responses, offering a new deadline.[51]  GEICO never responded to these communications.

### 2.        Data Discovery.

In December 2025, the parties met and conferred over Plaintiffs' request for data from GEICO's case management system, SICM.  GEICO agreed to produce data for the Collective shortly after the end of January 2026 after it finished producing data in parallel litigation.[52]

---

[48]        Ex. SS (sample set of RFAs).

[49]        Seven of the Plaintiffs GEICO noticed for deposition chose to withdraw from the case to avoid the burdens of the discovery process.

[50]        *See* Ex. TT (chart of produced responses).

[51]        *See* Ex. UU (J. McAllister Dec. 8, 2025 Email to GEICO).

[52]        Ex. VV (G. Tsonis Dec. 22, 2025 Email to Plaintiffs).

GEICO produced a portion of the Collective data on March 3, 2026 – three days before it filed this Motion.

On March 26, 2026, Plaintiffs' counsel discovered that GEICO failed to produce all the data relied on in this Motion.  *See* Mot. Ex. 8 (Thompson Decl.), at 31 (showing reliance on SICM datasets without Bates numbers).  GEICO produced the remaining data on March 30, 2026.  Scimone Decl. ¶ 5.

## ARGUMENT

### I.   LEGAL STANDARD

GEICO's Motion glosses over the relevant legal standards, only once citing *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020), the leading Second Circuit case on the decertification standard.  As the Second Circuit observed in *Scott*, Rule 23 factors like predominance must start with an assessment of "the claims and defenses to be litigated." *Id.* at 512 (cleaned up).  That is no less important when evaluating similarity under the FLSA – after all, the standard is whether the opt-in Plaintiffs "share one or more issues of law or fact *that are material to the disposition of* their FLSA claims." *Id.* at 516 (emphasis added).

The FLSA requires an employer to pay for any work it "(a) requires, (b) knows about, or (c) should have known about through the exercise of reasonable diligence." *Perry v. City of New York*, 78 F.4th 502, 512-13 (2d Cir. 2023); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows *or has reason to know* that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours.") (emphasis added); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time. . . . The reason [the employee works] is immaterial.").  As for damages, an employee need not prove the "precise extent of

12

uncompensated work." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The

employee's burden is simply to produce "sufficient evidence to show the amount" of unpaid

work "as a matter of just and reasonable inference," often through their own testimony. *Id.* This

shifts the burden to the employer to negate "the reasonableness of the inference to be drawn from

the employee's evidence." *Id.* at 687-88.

The FLSA allows "similarly situated" employees to join together and prosecute their case

in one suit so employees with relatively small wage claims can vindicate their rights through "the

pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This

process is intended to preserve judicial and party resources by adjudicating claims that otherwise

would require full individual trials with duplicative evidence. *See Pino v. Harris Water Main &*

*Sewer Contractors Inc.*, No. 17 Civ. 5910, 2020 WL 5708889, at *7 (E.D.N.Y. Sept. 23, 2020).

The "similarly situated" standard is a "lower bar" than Rule 23 predominance. *Scott*, 954

F.3d at 520. It is even less burdensome than Fed. R. Civ. P. 20 (permissive joinder) and 42

(consolidation at trial). *Id.* Whereas Rule 23 is a "procedural mechanism for the resolution of

claims on a class-wide basis[,]" Section 216(b) is a "substantive 'right' to proceed as a

collective" – a right "tailored specifically to vindicating federal labor rights[.]" *Id.* at 519

(quoting § 216(b)). Therefore, Rule 23's procedural requirements – commonality, typicality,

adequacy, and predominance – are both "unrelated to and more stringent than" those required to

maintain a collective action under § 216(b). *Id.* at 519-20.

The focus of a motion to decertify should be on what unites the collective – that is, on

whether Plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA

claims." *Id*. at 516. An outsize focus on *dissimilarities* among the collective "risks losing sight

of the statute underlying it[.]" *Id*. at 517 (cleaned up). So long as the Plaintiffs' *claims* share at

least one legal or factual similarity, "dissimilarities in other respects should not defeat collective treatment." *Id.* at 516 (cleaned up); *see also Savinova v. Nova Home Care, LLC*, No. 3:20 Civ. 1612, 2024 WL 1341113, at *5 (D. Conn. Mar. 29, 2024) ("[O]ne common issue of law or fact binding opt-in plaintiffs to named plaintiffs suffices to render collective treatment appropriate to the extent of the similarity."). And although courts should not "import the requirements of Rule 23 into their application of § 216(b)[,]" they nonetheless "shall take into account" their own commonality findings under Fed. R. Civ. P. 23(a)(2) when assessing whether a group of plaintiffs is "similarly situated." *Scott*, 954 F.3d at 521. Thus, when a common question "can be answered with common proof[,]" that common question satisfies the "similarly situated" standard. *Id.* (cleaned up).

Plaintiffs have the burden of showing they are similarly situated by a preponderance of the evidence. *Adams v. City of New York*, No. 16 Civ. 3445, 2020 WL 1031025, at *2 (S.D.N.Y. Mar. 3, 2020). But where there is "cross-cutting" evidence, courts need not resolve the dispute. *Campbell v. City of New York*, No. 16 Civ. 8719, 2020 WL 2792978, at *8 (S.D.N.Y. May 29, 2020). "That is a question for the fact finder." *Id.*

## II.   PLAINTIFFS ARE SIMILARLY SITUATED

### A.   Plaintiffs Were Subject to a Common Off-The-Clock Policy or Practice.

This Court previously found that Plaintiffs' claims share the "common factual thread" that Plaintiffs shared an "understanding that [Investigators] were expected to complete their work, even if it meant working beyond the hours allocated, and that they were not permitted to log those hours if they did." DE 162 at 18, 21. "And that understanding was driven by a common GEICO policy regarding overtime." *Id.* The Court found that these facts satisfied Rule 23 commonality and typicality, and they are equally sufficient to meet the FLSA's

14

"similarly situated" standard.  *See Wood v. Mike Bloomberg 2020, Inc.*, 746 F. Supp. 3d 185, 204-05 (S.D.N.Y. 2024) (because commonality was met, plaintiffs were "similarly situated" under the FLSA).  That conclusion is consistent with how courts have handled decertification motions in similar off-the-clock cases.  *See, e.g.*, *Pino*, 2020 WL 5708889, at *5-6 (denying decertification where there was deposition testimony of de facto practice of off-the-clock work); *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 367, 369 (S.D.N.Y. 2014) (denying decertification in off-the-clock case despite defendant claiming "variations" in plaintiffs' "hours worked practices").

The record developed since the Court's class certification ruling buttresses this conclusion.  Email traffic and testimony by GEICO Managers shows an overwhelming focus on maximizing volume and productivity.[53]  GEICO evaluated Field and Desk Investigators on their Productivity (cases closed divided by hours worked) and Case Life (pace of work, including across weekend days) and ranked them against one another to encourage them to be "as competitive as possible."[54]  It distributed those results to Managers, who in turn distributed them to Supervisors, with an eye toward reducing "variances."[55]  Supervisors and Managers were evaluated on their teams' performance, so the people with primary responsibility for approving overtime always had an incentive to limit recorded hours and increase the volume of cases closed.  And there were real consequences for falling behind one's peers, as the bottom performers in the ranking were systematically coached to either improve or be replaced.[56]

---

[53]    *See* Background, Part I(C), above.

[54]    Cubas Tr. 196:23-197:20 ("The investigators compete against each other for Case Life, they are ranked against each other").

[55]    *See* Cubas Tr. 115:17-19.

[56]    *See* nn.25-26 above.

Far from "intentionally . . . hid[ing]"[57] their work from GEICO, the vast majority of Plaintiffs regularly complained about their workload, the pressure put on them by GEICO's metrics, and the need to work extra hours to keep up with competing demands.[58] That testimony is sufficient for a jury to find that GEICO had, at minimum, constructive knowledge of *all* off-the-clock work. *See Perry*, 78 F.4th at 522 ("knowledge that some compensable, extra-shift work was not being paid suffices to put the [employer] on notice"). GEICO's internal trainings show that it was aware of "███████████████████████████████████████████████" but chose to respond by placing a greater burden on Investigators to record work hours, without changing the underlying pressures that led to those challenges.[59] Nor did this awareness change GEICO's default overtime policy: Overtime is discouraged, not allowed without pre-approval, and failure to obtain pre-approval before working overtime subjects an employee to discipline. That is a legally insufficient response to a known problem; GEICO "cannot sit back and accept the benefits [of Investigators' work] without compensating for them. The mere promulgation of a rule against such work *is not enough*. 29 C.F.R. § 785.13 (emphasis added).

This cohesive showing of common facts does not require every Plaintiff to testify. Judge Cogan captured the evidentiary issue perfectly in a recent decision:

> [W]hen opt-ins testify as to their alleged injuries, the factfinder may use that information to make reasonable inferences about the alleged injuries of similarly situated non-testifying opt-ins . . . . [I]f there are two plaintiffs in a lawsuit with similar claims, there is generally no requirement that plaintiff B must testify on

---

[57]    Defs.' Br. 10-11. GEICO mischaracterizes the testimony of Lindsay Buzak, claiming that after a supervisor "caught" her working overtime, Buzak "was forbidden from doing so again, after which she took steps to intentionally hide that work from GEICO." Ms. Buzak did not recall this interaction specifically, and GEICO ignores that she "felt like [she] needed to get more work done, so [she] wouldn't . . . get in trouble for being behind." *See* Ex. BB (Buzak Tr. 61:9-65:17).

[58]    *See* Ex. K (chart of deposition testimony)

[59]    Ex. B at GA0010739.

16

> his own behalf instead of relying on plaintiff A's testimony . . . . [T]hat risk, with the Court's threshold approval as to the probative value of plaintiff A's testimony, is plaintiff B's to take.

*Wilson v. Jamaica Serv. Program for Older Adults*, Inc., 708 F. Supp. 3d 213, 216-19 (E.D.N.Y. 2023). That "threshold" issue is, in effect, what the "similarly situated" standard tests. So long as Investigators share factual and legal issues that relate to their claims, so that an inference about issues like knowledge or the extent of damages is reasonable, they should be allowed to proceed collectively for the jury to weigh their evidence. And "the weight to be accorded [to that] evidence is a function not of quantity but of quality." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 67-68 (2d Cir. 1997).

Contrast that mode of proof with the alternative: individual trials. If each opt-in Plaintiff proceeds individually, they would be entitled to call other Investigators to testify to GEICO's knowledge and willfulness; after all, an employer's "knowledge that *some* compensable, extra-shift work was not being paid suffices to put [it] on notice" of the rest. *Perry*, 78 F.4th at 522 (emphasis added). Each jury would hear the same testimony about the Christmas luncheon where Bill Newport told the whole office that he didn't "give a fuck" that Investigators were working off the clock. The same internal documents showing GEICO's knowledge[60] would be admissible in each proceeding, as would evidence about the productivity metrics that drove the violations. "Litigating . . . overtime claims for each of these employees individually would be unduly burdensome on all parties" as well as the Court. *Montiel-Flores v. JVK Operations Ltd.*, No. 19 Civ. 3005, 2023 WL 5979209, at *7 (E.D.N.Y. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 6057375 (E.D.N.Y. Sept. 18, 2023).

GEICO too can rely on common evidence to try to *disprove* Plaintiffs' claims. GEICO

---

[60]    *See* nn.35, 38 above.

17

has repeatedly asserted that it categorically forbids off-the-clock work as written in its employee handbook. *See, e.g.,* Mot. at 10. At trial, it can put on Manager testimony to convince the jury that it took all "steps necessary to ensure [that GEICO's] pay practices complied with the Act." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (describing standard for "good faith" defense). And in this motion, GEICO has produced a statistical analysis purporting to show that Investigators' off-the-clock estimates do not align with their workload and that they were not subjected to an increasing workload,[61] which could rebut the inferences to be drawn about the extent of their damages. Mot. Ex. 8 (Thompson Decl.), ¶¶ 21-40. While that exhibit is facially misleading in many ways,[62] GEICO's "ability to proffer such evidence only reinforces the . . . conclusion that the [collective's] claims may be resolved by generalized proof." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15 Civ. 3312, 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016).

## B.    Major Case Investigators

Major Case Investigators share at least one – and arguably two – factual similarities with Field and Desk Investigators. First, like other Investigators, Major Case Investigators were expected to work 38.75 hour weeks, and any requests for overtime required prior approval by a

---

[61]    *But see, e.g.,* Cubas Tr. 209:10-20 (agreeing metrics have generally increased over time).

[62]    GEICO first produced the Thomspon report when it filed this motion, long after fact discovery had closed. *See* DE 158 (close of Phase 2 discovery on Jan. 31, 2026). As noted in the Procedural History above, GEICO did not produce all of the data on which Thompson based his report, and produced a large portion of it three days before filing this Motion. That is sufficient ground to strike his testimony under Rule 37(b)(2)(A)(ii). *See Irish v. Tropical Emerald LLC*, No. 18-CV-82-PKC-SJB, 2021 WL 5899048, at *1 (E.D.N.Y. Dec. 14, 2021) (striking expert testimony disclosed after the close of discovery). That said, Plaintiffs have taken note of this Court's concern about the amount of motion practice in this case, *see* DE 162 at 43 n.19, and in the interest of not compounding the problem, do not move at this time to strike Thompson's declaration. However, Plaintiffs reserve the right to seek to reopen discovery to depose Thompson and rebut his opinions.

Supervisor.[63]  Second, to the extent that GEICO should have known about Major Case Investigators' off-the-clock work based on the "multiple legal challenges" to its timekeeping policies,[64] the legal issue of GEICO's constructive knowledge shares a nexus of facts with other Investigators.

As noted above, Major Case Investigators are the one major subgroup of Investigators who had "different metrics," Mot. 8, that did not include Productivity and Case Life.  And Major Case Investigators were separately supervised by Courtney Wolfe prior to 2023.

Plaintiffs proposed to GEICO that the parties enter a stipulation about how to treat Major Case Investigators, including whether to treat them separately from other job titles for purposes of the litigation.  *See Foster v. City of New York*, No. 14 Civ. 4142, 2021 WL 1191810, at *9 (S.D.N.Y. Mar. 20, 2021) (discussing use of sub-groups among FLSA collective that shared some factual similarities but with some variation).  GEICO refused to entertain that idea.  Scimone Decl. ¶ 4.

The Court may conclude that treating Major Case Investigators as a sub-group is the most practical approach to resolving their claims.  Nevertheless, Major Case Investigators "share a similar issue of law or fact material to the disposition of their FLSA claims," *Scott*, 954 F.3d at 516, insofar as they too experienced GEICO's restrictive process for overtime approval – a set of facts the Court previously deemed sufficient to satisfy commonality.  And they worked within a department where off-the-clock work was systemic and widely known, meaning they share many common facts as to GEICO's knowledge, willfulness, and good faith (or lack thereof).  In short, the absence of a Productivity metric for this discrete sub-group should not defeat a finding of

---

[63]    *See* n.7 above.

[64]    Ex. B at GA0010739.

19

similarity for the collective as a whole, and the Court should reject GEICO's attempts to infer some broader pattern of dissimilarity from their circumstances.  *See* Mot. 8.

### C.    Plaintiffs May Prove Their Damages Through Testimony.

Proving damages in this matter should not pose a major obstacle.  As with liability (or any issue of proof at trial) a jury may draw reasonable inferences about the extent of damages, and the *Anderson v. Mt. Clemens* framework applies.  An inference about the extent of damages is possible here because on an apples-to-apples comparison – that is, when comparing Field Investigators to Field Investigators or Desk Investigators to Desk Investigators – the opt-ins' testimony about their work hours is remarkably consistent.  *See* Exs. K (deposition testimony chart); JJ (discovery response chart).

Even without this unified approach, the Court has many trial management tools at its disposal, including bifurcating the trial between liability and damages if necessary to allow individual damages proceedings.  "Even where individualized testimony into damages is required, a court may ultimately conclude, at the decertification stage, that bifurcating an action into liability and damages phases will render it manageable."  *Barry v. S.E.B. Serv. of New York, Inc.*, No. 11 Civ. 5089, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013); *Maynor v. Dow Chem. Co.*, 671 F.Supp.2d 902, 931–37 (S.D. Tex. 2009) (denying decertification motion where individualized damages proceedings were required for 130 opt-ins).

### III.    GEICO FAILS TO SHOW MATERIAL DISSIMILARITIES IN THE COLLECTIVE.

GEICO ignores the common facts that bind the Collective and emphasizes every dissimilarity it can muster.  This approach ignores *Scott*'s guidance that where material similarities exist, "dissimilarities in other respects should not defeat collective treatment."  954 F.3d at 516.

Plaintiffs have shown, and the Court has found, that GEICO had a "common de facto policy" of unpaid overtime. The Court need not "revisit this finding at step two, which focuses on whether" the named and opt-in plaintiffs are "similarly situated." *Dieffenbauch v. Rhinehart R.R. Constr., Inc.*, No. 17 Civ. 1180, 2021 WL 365850, at *4 (N.D.N.Y. Feb. 3, 2021). GEICO spends the bulk of its brief claiming – on the merits – that no such policy exists. However, "the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial, [and] they are issues that are subject to generalized proof." *Id.* at *4. And there is substantial record evidence of GEICO's "off-the-clock" practices here.

Contrary to GEICO's arguments, this case is readily distinguishable from the Ninth Circuit's decision in *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). The 50 Plaintiffs here face none of the challenges faced by the 2,500 plaintiffs identified in *Campbell*, not least among them the problem of "scale." 903 F.3d at 1120. The *Campbell* plaintiffs relied entirely on plaintiff declarations to support their claim of a de facto policy, and had "*no* evidence of any directives, incentives, conversations, emails, or actions (such as denials of promotions) by Department leadership that could have communicated to local supervisors, implicitly or otherwise, a uniform policy against reporting small amounts of overtime." *Id*. (emphasis in original). In stark contrast here, half of Plaintiffs have been deposed (and nearly all responded to written discovery), and Plaintiffs have demonstrated a clear set of policies (overtime preapproval, metrics), confirmed by GEICO manager testimony and documentary evidence.

GEICO relies heavily on defeating straw-man arguments Plaintiffs do not make, falsely claiming that "Plaintiffs' evidence is supervisor-centric" and intended to prove a "policy to violate the policy." Mot. 16-18. That is wrong. The gravamen of Plaintiffs' case is *not* that individual supervisors told them not to record overtime, but rather that GEICO created incentive

21

structures and restrictive overtime approval processes that *directly* caused Investigators to work off the clock. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (describing "two ways" to show that a practice was systemic: (1) a procedure that *directly* causes a violation of law, or (2) a general policy that manifests itself in individual decisions by decisionmakers).[65] The evidence in the record shows that supervisors had limited authority to authorize overtime,[66] so variations in how Plaintiffs communicated with their supervisors are largely beside the point. Plaintiffs allege that GEICO's *policies* drove the systemic problem of off-the-clock work. *See* Sec. Am. Compl. ¶¶ 3, 4. If Plaintiffs "succeed on this theory" that GEICO has a *de facto* policy of "off-the-clock" work, "they would *not need to prove that each Plaintiff's supervisor had actual or constructive knowledge* of the pre- and post-shift work." *Perry v. City of New York*, No. 13 Civ. 1015, 2019 WL 1146581, at *5 (S.D.N.Y. Mar. 13, 2019) (emphasis added).[67]

---

[65] The Court should avoid being drawn into a dispute about whether some Supervisors instructed Investigators that they *should* report their time – recall that the FLSA does not have an intent requirement, *see* Legal Standards section above, so this testimony would, at most, support a "good faith" defense, *see Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150-51 (2d Cir. 2008), and would need to be weighed against the common fact that GEICO failed to change its performance metrics or approval process.

[66] The limits on Supervisors' approval authority, *see* nn.12, 13, above, are entirely consistent with the fact that Investigators occasionally recorded small amounts of overtime. *See* Mot. 19. Plaintiffs have never claimed that GEICO forbade *all* overtime, so there is no basis to infer that the limited amounts of overtime they did record undermine their claims. *See, e.g.*, DE 142-1 at 29, 40, 57 (M. Fischer, C. Mangan, and J. Moeser recorded overtime in 1.14%, 1.28%, and 2.97% of all workweeks, respectively). And in any event, in light of Plaintiffs' testimony that they worked far more off-the-clock hours than they recorded, whatever inference GEICO might draw amounts to impeachment, which is simply a merits dispute that should not be resolved on this motion.

[67] For the same reason, GEICO's most-cited case, *Zivali v. AT & T Mobility LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011), is inapposite. The *Zivali* court observed that "the knowledge of each individual manager" is only required "*in the absence of* a company-wide policy of practice." *Id.* (emphasis added). Moreover, *Zivali* predates *Scott* and involved over 4,000 employees alleging off-the-clock work across 2,000 stores. *Id.* at 465, 469.

GEICO's attempt to wave away Plaintiffs' case is unpersuasive. Its only argument that GEICO's drive to maximize productivity should be ignored is that Major Case Investigators were not rated on productivity – a fact Plaintiffs concede, and which might warrant sub-grouping, but not decertification, as noted in Part I.B. above. And all of its out-of-district cases that involve allegations about performance metrics lack the robust record that exists here – a record that includes multiple complaints about off-the-clock work,[68] that shows that GEICO's policies came from the highest levels of management,[69] and that shows the real disciplinary consequences of failing to meet those metrics.[70] And as the Court found, Plaintiffs have presented "enough evidence to confidently suggest a uniform, or nearly uniform, practice,"[71] DE 162 at 18 (quoting *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (2d Cir. 2015)).

---

[68] *Compare* Background, Part I(E), above *with Blakes v. Illinois Bell Tel. Co.*, No. 11 Civ. 336, 2013 WL 6662831, at *12 (N.D. Ill. 2013) (distinguishing comparable case because in *Blakes* there was "no evidence that any of them informed their supervisors" about off-the-clock work); *Pittmon v. CACI International, Inc.*, No. 21 Civ. 02044, 2023 WL 8168834, at *2, *10-11 (C.D. Cal. Oct. 26, 2023) ("[T]here is evidence that Plaintiffs never directly told their supervisors they worked off the clock[.]"); *Briggins v. Elwood TRI, Inc.*, 882 F. Supp. 2d 1256, 1272 n.6 (N.D. Ala. 2012) (insufficient evidence of employer knowledge).

[69] *Compare* Background, Part I(B) & (C), above *with Pittmon*, 2023 WL 8168834, at *10 ("Plaintiffs have provided no evidence of a top-down policy aimed at discouraging overtime reporting."). Plaintiffs note that nothing in the FLSA requires a plaintiff to prove an employer "aimed at" making them work off the clock; the only scienter required is actual or constructive knowledge.

[70] *Compare* Background, Part I(C), above *with Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 346, 348 (W.D.N.Y 2011) (finding that policies did not violate the law "merely because they *indirectly* might encourage the minimization of overtime); *Blakes*, 2013 WL 6662831, at *12 ("plaintiffs' testimony does not support a conclusion that there was a uniform culture of discipline stemming from the [productivity] numbers"). Note that *Brickey* predates *Scott* and improperly required a merits finding that a policy violates the law to support similarity.

[71] *Compare with Meadows v. NCR Corp.*, No. 16 Civ. 6221, 2020 WL 1042042 at *6 (N.D. Ill. 2020) (plaintiff could have avoided decertification if an unwritten practice was applied in a way that violated the FLSA, but did not because the "evidence has not revealed any pattern"); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *4 (S.D.N.Y. Nov. 13, 2009) ("There is . . . no admissible proof from or about any specific employee other than [plaintiff.]").

23

### A.    Damages Issues Do Not Defeat Similarity; *Mt. Clemens* Applies.

GEICO's damages arguments, Mot. 22-24, are based on cherry-picked details that do not defeat similarity.  *See Foster v. City of New York*, No. 14 Civ. 4142, 2020 WL 8173266, at \*13 (S.D.N.Y. Oct. 30, 2020) individualized defenses including supervisor knowledge of each alleged violation – did not merit decertification because they related to damages); *see also Lassen v. Hoyt Livery, Inc.*, No. 13 Civ. 1529, 2014 WL 4638860, at \*6 (D. Conn. Sept. 17, 2014) ("The fact that putative collective-action members performing similar work and subject to a common compensation policy may be owed different damages does not suggest that such individuals are not sufficiently similarly situated for FLSA purposes.").  Again, "the existence of individual differences in number of hours worked or diligence in the use of the timekeeping system will not warrant decertification, as long as Plaintiffs show they are subject to a 'single decision, policy, or plan.'"  *Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813, 2011 WL 4389636, at \*3 (quoting *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077, 2007 WL 646326, at \*5 (S.D.N.Y. Feb. 27, 2007)).

The nuances of how Investigators handled individual cases do not implicate "a wide variety of employment practices," Mot. 22 (quoting *Tracy v. NVR, Inc.*, 293 F.R.D. 395, 399 (W.D.N.Y. 2013)) – at least not practices that are "material to the disposition of [Plaintiffs'] FLSA claims."  *Scott*, 954 F.3d at 516.  There are a limited number of employment practices that bind the collective together – overtime approval and performance management processes.  *See Montiel-Flores v. JVK Operations Ltd.*, 2023 WL 5979209, at \*5 ("[T]he critical inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated . . . *with respect to their allegations*[.]" (cleaned up and emphasis added)).  The variations in how Investigators did their job only implicate the extent

of their work. And the Court can manage the presentation of proof at trial to ensure that damages inferences about particular kinds of Investigators are "just and reasonable" – *e.g.*, that the jury is not inferring that the extent of Field Investigators' work is equal to that of Desk Investigators, and that it hears testimony from both groups. The fact that some Investigators stopped working overtime at points in their tenure, Mot. 23, should be accounted for in that presentation, and cross-referencing the testimony with the number of cases closed will shed light on the reasonableness of the inferences to be drawn. *See* Part I.C. above.[72]

This case is not like *Vecchio v. Quest Diagnostics, Inc.*, No. 16 Civ. 5165, 2020 WL 5604080 (S.D.N.Y. Sept. 18, 2020). GEICO cites *Vecchio* for the circular argument that if work tasks "varied widely," they are not similar. Mot. 22. GEICO's failure to discuss the facts in *Vecchio* is telling. *Vecchio* concerned 3,000 mobile medical examiners who conducted remote medical examinations. *Id.* at *1. The court found this large, nationwide putative collective (comprised of a mix of independent contractors and part-time employees) was *not* subject to a common collective-wide policy, because the company's requirements for recording various activities (*e.g.*, travel, pre-examination, post-examination, etc.) were inconsistent. *Id.* at *12. Here, there are around 50 Investigators who are all subject to the *same* timekeeping practices.

---

[72] Likewise, GEICO's exaggerations about the extent of Keith Fischer's driving time, Mot. 23-24 – which does *not* account for the full extent of the hours he worked, *see* K. Fischer Tr. 73:21-74:9; 120:16-121:3 – can be incorporated into the damages presentation at trial and any truly uncompensable "commute" time excluded from the estimates. This is not a problem the Court is incapable of managing.

## IV.    GEICO'S BACK-DOOR MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE REJECTED.

GEICO's claim that certain Plaintiffs "admitted" away their case is based on rules gamesmanship, and amounts to an improper second bite at the apple on summary judgment.[73]  It is a bald attempt to do an end-run around the Court's admonition that it would only allow GEICO one summary judgment motion.

GEICO moved for partial summary judgment earlier in the case.  *See* Dkt. No. 138.  At a pre-motion conference, the Court pointed out that partial summary judgment would not dispose of the case, told GEICO it would only entertain one such motion, and invited it to reconsider. Scimone Decl. ¶ 3.  GEICO filed the motion anyway.  Now, it asks the Court to assume 14 Plaintiffs should be dismissed from the case on the grounds that their responses to Requests for Admission ("RFAs") were untimely, the facts should be deemed admitted, and that on those grounds, they cannot sustain their claims.  This is, in effect, a second (partial) summary judgment motion, which the Court told GEICO it would not allow.[74]

Plaintiffs have conferred with GEICO to resolve its timeliness arguments, because as noted in the Procedural History above, Plaintiffs served substantive responses to all of GEICO's RFAs, and GEICO never objected to the delays in service, which were caused by the volume of written discovery Plaintiffs were forced to respond to after the Court did not act on their motion

---

[73]    Two Plaintiffs (Gotterbarn and McEvoy) may not have FLSA damages because their tenures fall outside the limitations period.  Had GEICO met and conferred with Plaintiffs' counsel, these claims could likely be addressed through a stipulation.  In any event, if GEICO is correct that these claims are untimely, that strengthens the compactness of the remaining collective.

[74]    Similarly, GEICO argues that 3 Plaintiffs should be dismissed for not responding to opt-in discovery.  That is also a dispositive motion that should not be buried in a motion to decertify. One such Plaintiff, Eugene Connell, is deceased, and Plaintiffs have conferred with GEICO about a motion to substitute his estate as the real party in interest under Rule 25(a).

for a protective order.  GEICO has refused to accept those responses, and Plaintiffs are now forced to file a separate motion to substitute their actual, substantive responses for the technical "admissions" GEICO relies on.[75]

The merits of that motion are distinct from this one.  But to the extent the Court considers the relevance of the Admissions to the similarity analysis, it should put substance over form and consider the content of Plaintiffs' actual responses.  *See Republic of Turk. v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (RFAs are "misused" when they "are not designed to identify and eliminate matters on which the parties agree, but . . . seek information as to [a] fundamental disagreement at the heart of the lawsuit[.]").  As shown in the Factual History, Part I.D, all of the Plaintiffs who responded to GEICO's RFAs denied the disputed "admissions" GEICO tried to garner from them.  That is, they share similar facts with the rest of the collective.

## CONCLUSION

The Plaintiffs who have joined the collective share similar facts and advance claims that rely on common factual and legal contentions.  GEICO's Motion should be denied.

---

[75]    GEICO attempted the same maneuver in *Alvarez*, now pending in the District of Maryland.  On the same day this brief was served, Magistrate Judge Crawford ruled that Plaintiffs' substantive RFA responses would be substituted for the technical "admissions" wrought by the timing of the responses.  Scimone Decl. ¶ 6.

Respectfully submitted,

Dated: April 24, 2026          By:   */s/ Michael J. Scimone*

Michael J. Scimone
Jarron D. McAllister
Zarka Shabir DSouza
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
Fax: 646-509-2060
mscimone@outtengolden.com
jmcallister@outtengolden.com
zdsouza@outtengolden.com

Ryan Cowdin*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Telephone: 202-847-4400
Facsimile: 202-847-4410
rcowdin@outtengolden.com

Kaelyn Mahar*
Jane Balkoski*
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: 415-715-1787
Fax: 415-638-8810
kmahar@outtengolden.com
jbalkoski@outtengolden.com

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: 631-499-9100
Facsimile: 631-499-9120
tkesler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the Putative Class and Collective*

29

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C) AND JUDGE BULSARA'S INDIVIDUAL PRACTICES, RULE VI(E)

In accordance with Local Civil Rule 7.1(c) and District Judge Sanket J. Bulsara's Individual Practices, Rule VI(E), I hereby certify that Plaintiffs' Memorandum of Law in Opposition to GEICO's Motion to Decertify the Collective Action contains 8,373 words, including footnotes, as established by Microsoft Word, the software used to prepare the Motion. The word count does not include the Motion's cover page, table of contents, table of authorities, signature block, and certificate of service, which are exempted by the applicable Rules.