**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH FISCHER, MICHAEL O'SULLIVAN, JOHN MOESER, LOUIS PIA, THOMAS BARDEN, CONSTANCE MANGAN, and CHARISE JONES, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No. 2:23-CV-02848<br><br>District Judge Sanket J. Bulsara<br><br>Magistrate Judge Steven I. Locke |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>MOTION TO DECERTIFY THE COLLECTIVE ACTION</u>**

Gerald L. Maatman, Jr.
Jennifer A. Riley
Gregory Tsonis
**DUANE MORRIS LLP**
190 S. LaSalle Street, Suite 3700
Chicago, IL  60603
Telephone: (312) 499-6700
Fax: (312) 499-6701
gmaatman@duanemorris.com
jariley@duanemorris.com
gtsonis@duanemorris.com

Gregory S. Slotnick
**DUANE MORRIS LLP**
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone: (212) 471-1856
Fax: (212) 202-5384
gsslotnick@duanemorris.com

*Attorneys for Defendant Government
Employees Insurance Company*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 1

    A.     Plaintiffs Have Not Demonstrated That They Were Subject To A Common De Facto Policy Or Practice That Is Material To Their Claims ............................ 2

        1.     This Court's Statements Regarding Commonality Do Not Establish A Material De Facto Policy Applicable To All Plaintiffs........................... 3

        2.     Plaintiffs Have Not Demonstrated That They Were Subject To A Common De Facto Policy Regarding Overtime Approval ......................... 4

        3.     Plaintiffs Have Not Demonstrated That Use Of A Productivity Metric Is A Material Common De Facto Policy ......................................... 5

        4.     Plaintiffs Have Not Demonstrated That They Are Similarly Situated Regarding Compensable Work Activities ................................... 7

        5.     Plaintiffs Have Not Demonstrated That They Are Similarly Situated Regarding GEICO's Knowledge Of Any Alleged Overtime Work ...................................................................................... 7

        6.     Plaintiffs Concede That Major Case Investigators Are Not Similarly Situated................................................................................... 9

        7.     Plaintiffs Have Not Established That Proceeding On A Representative Basis Is Viable Or Efficient .......................................... 11

    B.     Plaintiffs Concede That The Collective Action Includes Plaintiffs Without Viable Claims............................................................................................... 12

III.   CONCLUSION........................................................................................................12

DM1\20927155.16

# TABLE OF AUTHORITIES

**Federal Cases**

*Aldous v. Honda Motor Co.*, 1996 WL 312189 (N.D.N.Y. 1996)..............................................11

*Alvarez v. GEICO.*, No. 24-CV-722 (D. Md.) ............................................................................8

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018)......................................................3

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008)...........................................................4

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014) ...........................................................................................................................2, 11

*In Re Food Lion Effective Scheduling Litig.*, 861 F. Supp. 1263 (E.D.N.C. 1994).........................9

*Foster v. City of New York*, 2021 WL 1191810 (S.D.N.Y. 2021) ...................................................10

*Hinojos v. Home Depot, Inc.*, 2006 WL 3712944 (D. Nev. 2006) ...................................................9

*Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 128 (S.D.N.Y. 2022) .........................................2

*Jibowu v. Target Corp.*, 492 F. Supp. 3d 87 (E.D.N.Y. 2020) ........................................................2

*Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y. 2010)............................................................4

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)..........................................................7

*Meadows v. NCR Corp.*, 2020 WL 1042042 (N.D. Ill. 2020) ......................................................5, 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)........................................................................10

*Perry v. City of New York*, 78 F.4th 502 (2d Cir. 2023) .................................................................11

*Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015)....................................................... 3-5

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) ....................................... 2-3, 10

*Seward v. IBM*, 2012 WL 13059788 (S.D.N.Y. 2012)....................................................................10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................................3

*Wood v. Mike Bloomberg 2020, Inc.*, 746 F. Supp. 3d 185 (S.D.N.Y. 2024)..................................3

**Federal Statutes**

FLSA.........................................................................................................................*Passim*

DM1\20927155.16

**Rules**

Rule 23 .................................................................................................................................1, 3

DM1\20927155.16

## I.    INTRODUCTION

In their response to GEICO's Motion to Decertify the Collective Action (the "Response"), Plaintiffs cite minimal evidence and testimony, distorted beyond recognition, in an attempt to proceed on a representative basis.  But Plaintiffs cannot escape the fact that, as this Court already has recognized, "[g]eneralized proof cannot be used to determine [GEICO's] liability."  (DE 162 at 26.)  Plaintiffs have not met their burden of showing they are similarly situated to the individuals they purport to represent.

Plaintiffs improperly equate this Court's comments with respect to "commonality" in the Rule 23 context with a finding that Plaintiffs are "similarly situated" for the purposes of sustaining a collective action under the FLSA.  Plaintiffs highlight this Court's statement that "a common GEICO policy regarding overtime," specifically GEICO's productivity metrics, drove Plaintiffs' "understanding" regarding overtime.  (Resp. at 1 (citing DE 162 at 18).)  But Plaintiffs admit that metrics were not uniform – for instance, at least 20% of the opt-in Plaintiffs worked as major case investigators and, therefore, were not subject to any such metrics.  In any event, policies to which Plaintiffs point, including timekeeping requirements, performance metrics, or overtime pre-approval, are *lawful* and will not drive resolution of Plaintiffs' claims.  (Resp. at 23.)

Ultimately, as this Court recognized, liability for each Plaintiff depends "on individualized facts and employment circumstances" (DE 162 at 26) and Plaintiffs have not carried their burden of showing that they are similarly situated to proceed on a representative basis.

## II.    ARGUMENT

Plaintiffs have not demonstrated that they are similarly situated regarding any material question of fact or law, thus decertification is appropriate, and the Court should dismiss Opt-In Plaintiffs without prejudice.  *See Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F.

Supp. 3d 313, 320 (E.D.N.Y. 2014) (explaining that if not similarly situated, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims").

### A.     Plaintiffs Have Not Demonstrated That They Were Subject To A Common De Facto Policy Or Practice That Is Material To Their Claims

In their Response, Plaintiffs fail to show that they are "alike with regard to some material aspect of their litigation" and admit material facts that show otherwise.  *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  "The relevant issue is whether the named plaintiff and … opt-in plaintiffs … were subject to a common employment policy that violated the FLSA." *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 122 (E.D.N.Y. 2020).  To meet their burden, Plaintiffs must show that they "labored under similar working conditions and thus suffered the same violations of the FLSA." *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 128 (S.D.N.Y. 2022).

Plaintiffs do not dispute that (i) GEICO maintained a written policy prohibiting off-the-clock work and trained and reminded employees to follow that policy (Resp. at 17-18; Exs. 37, 62); (ii) various supervisors repeatedly encouraged employees to record all hours, including overtime, by telling them to "put[] in for overtime pay," "document it," "enter it," and to "key[] any additional hours worked."  (Ex. 9, Grey 100:20-101:6, 106:5-18; Ex. 29, Barden 107:3-19; Exs. 41, 44, 47, 49); and (iii) Plaintiffs routinely requested approval to work overtime, recorded overtime irrespective of whether they received approval, and received overtime pay.  (Resp. at 22 n.66; Ex. 8, Thompson Decl. ¶¶ 11, 14; DE 162 at 30.)

Thus, while Plaintiffs claim that "GEICO created incentive structures and restrictive overtime approval processes that *directly* caused Investigators to work off the clock" (Resp. at 21-

2

22), Plaintiffs have not demonstrated that GEICO maintained a purported *de facto* policy to violate its lawful policies consistently across all Plaintiffs.

> 1.  This Court's Statements Regarding Commonality Do Not Establish A Material De Facto Policy Applicable To All Plaintiffs

This Court's conclusion as to Rule 23's commonality and typicality requirements is not dispositive of the similarly situated inquiry.  (Resp. at 14-15.)  As Plaintiffs acknowledge, the inquiries are "unrelated" (Resp. at 13 (quoting *Scott*, 954 F.3d at 520) and this Court's determination that common questions existed under Rule 23 does not answer the similarly situated question for purposes of the FLSA.  Plaintiffs' precedent is distinguishable and does not hold otherwise.  (Resp. at 14-15; *Wood v. Mike Bloomberg 2020, Inc.*, 746 F. Supp. 3d 185, 205 (S.D.N.Y. 2024) (holding defendant's "concession that 'some of the issues presented in this case unquestionably can be resolved on a collective basis' [was] fatal to their motion for class certification").

Indeed, Rule 23 commonality concerns whether the named plaintiff raises common questions of law or fact susceptible to common proof, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), while the FLSA's "similarly situated" standard considers more narrowly whether "named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."  *Scott*, 954 F.3d at 516.  What matters is "not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution."  *Id.* at 521 n.9; *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1115 (9th Cir. 2018).  As the court recognized in *Ruiz v. Citibank, N.A.*, irrespective of the *amount* of anecdotal evidence, common questions like "[d]id Citibank have a national sales quota formula" or "[d]id Citibank attempt to reduce overtime hours" were "easily susceptible to class-wide proof" but were "not apt to drive

3

the resolution of the litigation." 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015). This was necessarily so because "[s]etting production targets is a perfectly acceptable employment practice," as are "admonitions to supervisors to watch and maintain control of work assignments in order to avoid unnecessary overtime." *Id*. at 289-90.

Here, like *Ruiz*, GEICO's lawful performance metrics and overtime pre-approval procedures (*see* Pls.' Ex. E) will not "advance the litigation" by resolving an "issue of law or fact material to the disposition of their FLSA claims" because here too such practices are "perfectly acceptable." The applicability of performance metrics and overtime policies were not uniform: "Plaintiffs' own evidence shows that the purported *de facto* policy will present discrete questions as to liability that will need to be decided based on individualized facts and employment circumstances." (DE 162 at 25.) Commonality does not compel a finding that Plaintiffs are similarly situated.

2.   Plaintiffs Have Not Demonstrated That They Were Subject To A Common De Facto Policy Regarding Overtime Approval

Plaintiffs have not met their burden to show a *de facto* common policy to require Plaintiffs to work "off-the-clock" overtime through alleged "restrictive overtime approval processes," "tightly restrict[ed] overtime," and making "[o]vertime [] discouraged, not allowed without pre-approval." (Resp. at 3, 16, 22.) None of Plaintiffs' contentions establishes a *de facto* policy satisfying Plaintiffs' burden.

Lawful policies cannot constitute an FLSA-violating *de facto* policy, and efforts to limit the amount of overtime worked are lawful. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008) (explaining that if employer wanted to prevent overtime, it could "discipline nurses who violate the [pre-approval] rule" or "announc[e] a policy that it does not, under any circumstances, employ a nurse for more than 40 hours in a week"); *Joza v. WW JFK LLC*, 2010 WL 3619551, at

4

DM1\20927155.16

*4 (E.D.N.Y. 2010) (noting that "the concern of any well-managed business enterprise to avoid needless overtime" does not reflect "a workplace culture of hostility toward overtime").

The record is replete with evidence, as this Court recognized, that Plaintiffs sought and *were provided* approval to work overtime and, irrespective of such approval, were instructed to record – and recorded – overtime hours.  (DE 162 at 30 ("Several Investigators also admit that there were times when they were granted permission to work overtime … or were instructed to log hours they worked off-the-clock.").)  Even if Plaintiffs could show that all supervisors required pre-approval before working overtime (many did not), or disciplined employees who worked overtime without such pre-approval, such lawful conduct does not constitute the unlawful *de facto* policy necessary to show that they are similarly situated.

3.    <u>Plaintiffs Have Not Demonstrated That Use Of A Productivity Metric Is A Material Common De Facto Policy</u>

Plaintiffs have not demonstrated that GEICO's use of productivity metrics, even assuming uniformity, is material under the FLSA.  Plaintiffs contend that use of a "Productivity" metric shows "an overwhelming focus on maximizing volume and productivity" and that "workload or metrics pressures caused them to work unpaid overtime."  (Resp. at 7.)  But Plaintiffs have not demonstrated that metrics had any similar, unlawful impact.

"Setting production targets is a perfectly acceptable employment practice."  *Ruiz*, 93 F. Supp. 3d at 289.   It is well-settled that employers may use efficiency metrics to permissibly incentivize expediency and such metrics do not constitute an illegal policy requiring "off-the-clock" work.  (Mot. at 19-21 (discussing holdings in *Blakes, Pittmon*, *Briggins*, *Meadows*, *Brickey*, and *Eng-Hatcher*).)  Plaintiffs attempt to pair metrics with a "high workload" allegedly created "by design," (Resp. at 7), but Plaintiffs omit the anticipated hiring of 15 investigators as a source of forecasted increases in regional case assignments. (Pls.' Ex. MM).  In any event, Region 2 did not

5

achieve forecasted NCA increases, foreclosing Plaintiffs' argument. (Ex. 71, G011913 (describing NCA lower than goal and prior year).)

Further, Plaintiffs have not demonstrated that GEICO utilized similar metrics across various positions and timeframes and, in fact, concede the opposite. (Resp. at 5.) GEICO previously established that Plaintiffs worked on specialized teams with different performance metric goals. (DE 98-66 at 3, 19), and Plaintiffs fail to demonstrate such metrics had any similar unlawful impact. While Plaintiffs allege that "incentive structures and restrictive overtime approval processes … drove … off-the-clock work" (Resp. at 22), Plaintiffs have not demonstrated they similarly declined to record overtime due to any such metrics and the record demonstrates otherwise. Opt-ins Costanzo and Munoz admitted that, while GEICO's alleged overtime policies and productivity metrics continued to apply, they stopped working "off-the-clock" overtime in 2022 and 2023, respectively. (Resp. at 5; Ex. 72, Costanzo Dep. 243:17-244:21, 252:18-254:6; Ex. 73, Munoz Dep. 84:3-86:22, 179:17-23, 199:7-16.) Others admitted productivity metrics were achievable or did not incentivize "off-the-clock" work. Opt-in Diblosi testified that "it wasn't until the last few months of [his] employment" that he had a "difficult time keeping pace with the metrics and the expectations of GEICO." (Ex. 74, Diblosi Dep. 39:22-40:24.) Opt-in Hirsch admitted that he did not even know "what the rating scale was for these various metrics," including productivity. (Ex. 32, Hirsch Dep. at 55:9-56:8.) Others conceded that they chose to work "off-the-clock" to maximize their merit increases. (*E.g.*, Ex. 29, Barden Dep. 158:21-159:9; 227:14-228:5; Ex. 26, Mangan Dep. 110:9-112:12.) Plaintiffs cannot avoid decertification by asserting that "common metrics incentivized them to violate GEICO's policy" (Resp. at 1) when some Plaintiffs lacked awareness of such metrics or performed satisfactorily under such metrics *without* violating GEICO's timekeeping policies.

6

4.     Plaintiffs Have Not Demonstrated That They Are Similarly Situated Regarding Compensable Work Activities

Plaintiffs concede that they had different roles and responsibilities.  Accordingly, evidence regarding a plaintiff's compensable activities is irrelevant to those who seek overtime for different tasks, such as commuting or setting up an at-home workstation.   To establish that GEICO is liable for unpaid overtime, the Court would need to engage in "individualized inquiries about the employee's peculiar circumstances."  (DE 162 at 26-27.)  Indeed, Plaintiffs acknowledge that evidence regarding Field Investigators could be used only "on an apples-to-apples comparison" with others in the same position.  (Resp. at 20.)  Thus, Plaintiffs have not shown that their roles were similar.

5.     Plaintiffs Have Not Demonstrated That They Are Similarly Situated Regarding GEICO's Knowledge Of Any Alleged Overtime Work

Plaintiffs have not demonstrated they are similarly situated with respect to whether GEICO knew or should have known of alleged "off-the-clock" overtime.  To succeed on their FLSA claims, Plaintiffs must establish GEICO's actual or constructive knowledge that they worked overtime without compensation.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

Preliminarily, Plaintiffs acknowledge that, as in *Blakes*, *Pittmon*, and *Briggins*, productivity metrics do not put employers on notice of alleged overtime work and cannot provide common proof GEICO knew or should have known about off-the-clock work.  (Resp. at 23 n.68.)

Plaintiffs' efforts to show GEICO's actual knowledge of alleged overtime demonstrate the individualized inquiries required.  Plaintiffs assert that "[a]t least nine Plaintiffs testified that they told GEICO managers that they worked off the clock," and "[a]t least ten more" complained "to Supervisors and Managers that their workload was too heavy."  (Resp. at 8-9.)  These assertions require individualized adjudication of whether any alleged statements provided actual knowledge

7

DM1\20927155.16

of uncompensated overtime and cannot demonstrate Plaintiffs are similarly situated with respect to GEICO's alleged actual knowledge of off-the-clock work.

Plaintiffs also fail to establish similarity regarding constructive knowledge. To show knowledge, Plaintiffs rely on their Exhibits B, PP, and QQ, which are confidential documents from *Alvarez v. GEICO.*, No. 24-CV-722 (D. Md.) ("*Alvarez*"), a case involving individuals who did *not* work in New York. (Tsonis Decl. Ex. 67, *Alvarez* DE 72 (including "all Special Investigators who work or worked for GEICO throughout the United States (***with the exception of those who work or worked in New York***)" (emphasis added).) Plaintiffs' use of such documents here is improper but unavailing. (Tsonis Decl. Ex. 68, *Alvarez* DE 123; Ex. 69; DE 170.)

The documents do not pertain to Plaintiffs who worked in New York and are thus irrelevant. First, Plaintiffs contend that the phrase "hidden overtime" in a 2021 email (Ex. PP) equates to proof that all of Plaintiffs' managers and supervisors supposedly knew that "Investigators were working unpaid overtime." (Resp. at 7-8.) Such email, however, was authored by Scott Goss, who worked in Region 3 (*i.e.*, not New York) and had no role or responsibility vis-a-vis Plaintiffs. Further, as Mr. Goss testified in *Alvarez,* his email related to Auto Adjusters who took issue with an alleged "daily quota" requirement. (Pls.' Ex. C, Goss Dep. 215:10-22, 219:13-20.) Ryan McElvain, the recipient of Goss's email, interpreted the message as merely referring to forecasting "projected overtime" for the upcoming year (Ex. 70, McElvain Dep. at 130:3-131:6), and the email is entirely irrelevant to Plaintiffs like Keith and Peggy Fischer, who separated before its creation. (DE 138-3 at 6.)

Second, Plaintiffs contend "GEICO's internal trainings show that it was aware of 'multiple legal challenges to our exempt/nonexempt time policies'" relying *solely* on a 2021 presentation from GEICO's Auto Damage Department. (Resp. at 16; Pls.' Ex. B.) As Goss confirmed, however,

8

Auto Damage authored and presented the presentation, and it pertained to the Auto Damage Department. (Pls'. Ex. C, Goss Dep. at 92:4-7; 102:10-103:24, 106:17-108:21.) Thus, the document is irrelevant.

Third, allegations in different litigation cannot impute knowledge of alleged company-wide off-the-clock work to an employer. *See*, *e.g.*, *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *3 (D. Nev. 2006) ( "[T]hree actions from other districts where a few Home Depot employees have alleged that they worked off the clock or that they had their time improperly reduced … do not suggest a common nationwide practice."); *In Re Food Lion Effective Scheduling Litig.*, 861 F. Supp. 1263, 1274 (E.D.N.C. 1994) (finding that prior investigation and lawsuits did not establish employer's knowledge because the "evidence was insufficient to show that these individual experiences from such a limited area represented the norm"). Allegations concerning auto adjusters working in other departments and locations have no bearing on Plaintiffs, who worked as SIU investigators in New York. Such lawsuits cannot establish the requisite similarity.

6.      Plaintiffs Concede That Major Case Investigators Are Not Similarly Situated

Plaintiffs' suggestion that Major Case Investigators be treated as a separate group is baseless. Decertification is warranted when plaintiffs have varying reasons for working off-the-clock overtime. *Meadows v. NCR Corp.*, 2020 WL 1042042 at *6 (N.D. Ill. 2020). The Court conditionally certified, over Defendant's objection, a collective action of "Special Investigators (***including comparable roles with different titles***)." (DE 91 at 5 (emphasis added.) As Major Case Investigators reported to different managers and were not assessed on the Productivity and Case Life metrics Plaintiffs contend caused off-the-clock work (Resp. at 19), Plaintiffs cannot meet their burden but assert, without support or analysis, that the Court "may conclude that treating

9

Major Case Investigators as a sub-group is the most practical approach to resolving their claims." (Resp. at 19.)

Plaintiffs' proposal lacks merit.  First, none of the named Plaintiffs worked as Major Case investigators, precluding anyone from asserting claims on behalf of allegedly similarly situated opt-ins. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("[T]he plaintiffs who have opted in [must be] in fact 'similarly situated' to the named plaintiffs."); DE 138-3 ¶¶ 14, 65, 114, 143, 154, 180, 196).  Second, Plaintiffs fail to show that Major Case are "alike" in a way that materially advances their claims, as a normal scheduled workweek and overtime approval process are permissible policies, as explained above.  Third, Plaintiffs' cited authority rejected sub-grouping and cannot support it here. *See Foster v. City of New York*, 2021 WL 1191810 at *9 (S.D.N.Y. 2021) (declining to create subgroups); *Seward v. IBM*, 2012 WL 13059788, at *21 (S.D.N.Y. 2012) (rejecting subgroups defendant "specifically objected to it" and doing so would be "unfair at this stage of the litigation").  Plaintiffs, therefore, fail to establish that they share the requisite similarity to proceed even as a sub-group. *Scott*, 954 F.3d at 516.

Even if sub-grouping by Major Case and non-Major Case investigators were permissible, Plaintiffs cannot show that they are similarly situated within the strata.   For example, Major Case Investigator Opt-in M. Fischer never informed her supervisor that she was working off-the-clock or requested overtime.  (Ex. 27, M. Fischer Dep. at 190:16-22.)  Meanwhile Opt-in Cruz, another Major Case Investigator, testified that "reporting additional time "[was]n't anything that was prohibited or disincentivized" within his department.  (Ex. 6, Cruz 79:11-81:9.)  Thus, Major Case investigators themselves are not similarly situated, and certainly do not "share at least one – and arguably two – factual similarities with Field and Desk Investigators."  (Resp. at 18.)  Dividing

DM1\20927155.16

the collective action into subgroups at this stage still would not allow Plaintiffs to meet their burden under § 216(b).

       7.      <u>Plaintiffs Have Not Established That Proceeding On A Representative Basis Is Viable Or Efficient</u>

Plaintiffs contend that if they cannot proceed on a representative basis, the "alternative" of "individual trials" would be "unduly burdensome." (Resp. at 17.)  Plaintiffs are incorrect.

First, Plaintiffs' misconstrue the imputation of employer knowledge in *Perry v. City of New York*, 78 F.4th 502 (2d Cir. 2023).  In *Perry*, "thousands" of employees complained about "potential FLSA violations" and the City "made a conscious decision" to draft but not implement a policy forbidding extra-shift work for six years, thus the Second Circuit affirmed that the employer knew employees were working but not recording compensable time.  *Id.* at 522, 525. *Perry* does not suggest that knowledge of one employee's alleged off-the-clock work suffices to show the employer's knowledge as to a different employee.  (Resp. at 16-17.)

Second, permitting Plaintiffs to proceed on a representative basis is improper because of the "discrete" liability questions and "individualized facts" presented.  (DE 162 at 26.) Individualized inquiries are "antithetical to collective action treatment."  *Desilva* 27 F. Supp. 3d at 318.  The Court's conclusion that the "purported *de facto* policy" concerning Plaintiffs' NYLL claims requires individualized liability inquiries for each Plaintiff (DE 162 at 26) is equally true for the purported FLSA *de facto* policy asserted.

Finally, individual trials on Plaintiffs' NYLL claims are unavoidable.  Plaintiffs like Keith Fischer, who retired in 2020 (DE 138-3 at 6), bear the burden of demonstrating in individual trials that GEICO is liable under the NYLL's longer limitations period, irrespective of the resolution of his FLSA claim.  Bifurcation is also unsuitable here.  (Resp. at 20; *Aldous v. Honda Motor Co.*, 1996 WL 312189, at *1 (N.D.N.Y. 1996) (holding "bifurcation is inappropriate where the same

witnesses may be needed to testify as to both the issues of liability and damages" and relevant evidence "overlaps" as it does here).)  Denying decertification does not obviate individual trials.

**B.  Plaintiffs Concede That The Collective Action Includes Plaintiffs Without Viable Claims**

Plaintiffs concede two individuals are not similarly situated "because their tenures fall outside the limitations period."   (Resp. at 26 n.73).  That warrants decertification. (Mot. at 27-30.)

Plaintiffs that provided untimely responses to GEICO's requests for admission ("RFAs") are also not similarly situated.  The 19 Plaintiffs who did not timely respond admitted they worked no unpaid overtime.   (Mot. at 28-29.)   Plaintiffs do not address or distinguish precedent decertifying a collective action because deemed admissions rendered plaintiffs dissimilar.  (Mot. at 29; Resp. at 26-27; DE 168-69.)  Despite Plaintiffs' meritless contention that GEICO seeks a "back-door motion for partial summary judgment" (Resp. at 26), a failure to timely respond to RFAs demonstrates dissimilarity within the collective.  (Mot. at 29.)

**III.  CONCLUSION**

GEICO respectfully requests that this Court decertify the collective action.

**DATED: April 24, 2026**

Respectfully submitted,

GOVERNMENT EMPLOYEES INSURANCE COMPANY

By: */s/ Gerald L. Maatman, Jr.*
    One of Its Attorneys

Gerald L. Maatman, Jr.
Jennifer A. Riley
Gregory Tsonis
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, IL  60603

12

DM1\20927155.16

Telephone: (312) 499-6700
Fax:  (312) 499-6701
gmaatman@duanemorris.com
jariley@duanemorris.com
gtsonis@duanemorris.com

Gregory S. Slotnick
gsslotnick@duanemorris.com
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone: (212) 471-1856
Fax:  (212) 202-5384

*Attorneys for Defendant Government
Employees Insurance Company*

13

DM1\20927155.16

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C) AND JUDGE BULSARA'S INDIVIDUAL PRACTICES, RULE VI(E)**

In accordance with Local Civil Rule 7.1(c) and District Judge Sanket J. Bulsara's Individual Practices, Rule VI(E), I hereby certify that Defendant's Reply in Support of its Motion to Decertify the Collective Action contains 3,498 words, including footnotes, as established by Microsoft Word, the software used to prepare the Reply. The word count does not include the Reply's cover page, table of contents, table of authorities, signature block, and certificate of service, which are exempted by the applicable Rules.

DM1\20927155.16

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., hereby certify that on April 24, 2026, I caused a true and correct copy of the foregoing to be served on counsel of record via email in compliance with applicable Federal and Local Rules.

*/s/ Gerald L. Maatman, Jr.*

Gerald L. Maatman, Jr.

DM1\20927155.16