UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KEITH FISCHER, *et al.*,

                  Plaintiffs,

     -against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY d/b/a GEICO,

                  Defendant.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION AND
MEMORANDUM AND ORDER**
23-CV-2848(SJB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this collective action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* and § 650 *et seq.* ("NYLL"), on referral from the Honorable Sanket J. Bulsara, are two motions. The first is for a Report and Recommendation regarding Defendant Government Employees Insurance Company d/b/a GEICO's ("Defendant" or "GEICO") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [138]. The second is for a decision addressing GEICO's motion to decertify the conditionally certified collective pursuant to 29 U.S.C. § 216(b). *See* DE [173]. Named Plaintiffs Keith Fischer ("K. Fischer"), Michael O'Sullivan ("O'Sullivan"), John Moeser ("Moeser"), Louis Pia ("Pia"), Thomas Barden ("Barden"), Constance Mangan ("Mangan"), and Charise Jones ("Jones," and, collectively, the "Named Plaintiffs"), together with the opt-in members of the conditionally certified collective (collectively,

1

"Plaintiffs"), oppose both motions. *See* DE [142], [174]. For the reasons set forth herein, the Court respectfully recommends that the motion for summary judgment be denied. The motion to decertify the collective is denied.

## I. BACKGROUND

### A. **Factual Background**

#### 1. The Parties and GEICO's Special Investigations Unit

GEICO is an insurance company operating in New York. *See* Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1 Stmt."), DE [138-3], ¶ 1; Plaintiffs' Response to Defendant's Rule 56.1 Statement ("Pls.' 56.1 Resp."), DE [142-1], ¶ 1. Plaintiffs commenced this action individually, and on behalf of other similarly situated employees, asserting claims for unpaid overtime. Unless otherwise indicated, the relevant period is April 17, 2020 through the present. *See* Second Amended Complaint ("SAC"), DE [52], ¶¶ 2 n.2, 78; Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Decertify the Collective ("Pls.' Decert. Opp'n"), DE [174], at 2. Plaintiffs are current and former employees of GEICO's Special Investigations Unit ("SIU"), which investigates suspected insurance fraud. Def.'s 56.1 Stmt. ¶¶ 2-3; Pls.' 56.1 Resp. ¶¶ 2-3. SIU investigators worked on teams of approximately seven to ten and, until approximately July 2023, reported to SIU Supervisors, who reported to an SIU Manager. *See* Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts ("Pls.' Add'l 56.1 Stmt."), DE [142-2], ¶¶ 1-2; Pls.' Decert. Opp'n at 2-3. SIU investigators held one of several titles and performed varying roles. Field Investigators handled matters requiring at least some work

2

outside the office, Desk Investigators investigated matters from an office, and Major Case Investigators were Field or Desk Investigators assigned that title for portions of their tenure.  *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Decertify the Collective Action ("Pls.' Decert. Opp'n"), DE [174-1], at 2 n.1. Before 2023, most New York Field and Desk Investigators reported to Manager and Regional Vice President Bill Newport ("Newport"), while most Major Case Investigators reported to SIU Manager Courtney Wolfe ("Wolfe").  *Id.* at 3.  Following a reorganization in 2023, members of the collective reported to three managers, with most reporting to SIU Manager Rene Cubas ("Cubas"), and others reporting to Wolfe or SIU Manager Jim Hammonds.  *Id.*

This case concerns compensation for overtime work performed as SIU Investigators.  *See generally* SAC.  Investigators reviewed claim files; performed background and public-record searches; examined billing reports; traveled to medical facilities, accident scenes, theft sites, police departments, and other investigative locations; gathered evidence; interviewed witnesses and law-enforcement personnel; conducted canvasses, surveillance, and examinations under oath; and prepared reports in GEICO's Special Investigations Case Management application ("SICM"). *See* Def.'s 56.1 Stmt. ¶ 4; Pls.' 56.1 Resp. ¶ 4; Pls.' Add'l 56.1 Stmt. ¶¶ 4-5.  The nature and location of assignments varied.  By way of example:

- Opt-in Plaintiff Louis Caniglia, Jr. ("Caniglia") described an investigation beginning with database searches and police-department calls, and continuing through travel and canvassing.  See Deposition of Louis Caniglia Jr. Transcript ("Caniglia Dep. Tr."), DE [142-15], 197:2-17.

3

- Named Plaintiff Jones described territories requiring several hours of driving in one direction.  *See* Deposition of Charise Jones Transcript ("Jones Dep. Tr."), DE [173-37], 154:18-21, 231:6-12.

- Opt-in Plaintiff Craig Costanzo ("Costanzo") described a territory extending to Rochester and approximately 6,877 miles of investigative travel during part of 2022.  *See* Deposition of Craig Costanzo Transcript ("Costanzo Dep. Tr."), DE [142-6], 225:8-23.

- Opt-in Plaintiff Margaret Fischer ("Margaret Fischer") described performing background, public-record and license searches from the office or her home.  *See* Deposition of Margaret Fischer Transcript ("M. Fischer Dep. Tr."), DE [173-30], 58:17-59:8, 87:2-7, 94:19-96:16; Pls.' Add'l 56.1 Stmt. ¶¶ 27-28, 32.

The parties dispute the discretion investigators exercised and whether GEICO's workload and performance expectations could ordinarily be met within scheduled hours.  *See* Pls.' Add'l 56.1 Stmt. ¶¶ 18-20, 30-31; Defendant's Response to Plaintiffs' Additional Rule 56.1 Statement ("Def.'s Resp. to Pls.' Add'l 56.1 Stmt."), DE [144-11], ¶¶ 18-20, 30-31.

### B.      Timekeeping, Overtime, and Performance Measures

Throughout the relevant period, GEICO required nonexempt employees to enter all time worked in its timekeeping system and directed them to record overtime. *See* Def.'s 56.1 Stmt. ¶¶ 5-6; Pls.' 56.1 Resp. ¶¶ 5-6.  GEICO's July 2023 handbook stated that nonexempt associates were never permitted to work off the clock; it does not establish that this precise wording appeared in every earlier handbook, however. *Id.*; Human Resources Associate Handbook dated July 2023, DE [173-40].  Upon submitting time, employees certified that their entries accurately reflected all hours worked, and supervisors reviewed those entries.  *See* Def.'s 56.1 Stmt. ¶¶ 7, 13; Pls.' 56.1 Resp. ¶¶ 7, 13.

4

GEICO paid overtime that employees reported and that managers approved. Defendant's records identify overtime hours worked, in varying amounts, for Costanzo, opt-in Plaintiff Michael Grey ("Grey"), opt-in Plaintiff Daniel King ("King"), Caniglia, opt-in Plaintiff Albert Brust ("Brust"), Jones, Pia, O'Sullivan, Margaret Fischer, Mangan, and Moeser. *See* Def.'s Resp. to Pls.' Add'l 56.1 Stmt. ¶ 9; Def.'s 56.1 Stmt. ¶¶ 14-17; Pls.' 56.1 Resp. ¶¶ 14-17; Pls.' Decert. Opp'n at 22 n.66 (citing DE [142-1] at 29, 40, 57). GEICO required prior supervisory approval for overtime pay, and supervisors could approve or deny requests based on perceived business need. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 6-8. Certain Plaintiffs testified that overtime was commonly authorized for discrete campaigns or special projects rather than ordinary caseloads. Keith Fischer described a one-week campaign authorized by Newport, who obtained approval for investigators to use up to ten overtime hours per week during June and July 2020. *See* Deposition of Keith Fischer Transcript ("K. Fischer Dep. Tr."), DE [142-3], 119:10-22, 242:20-23. Opt-in Plaintiff Scott Brady ("Brady") stated that overtime was available for additional work but not his ordinary caseload. *See* Declaration of Scott Brady ("Brady Decl."), DE [56-2], ¶¶ 8, 13. Opt-in Plaintiff Vito DiNiso ("DiNiso") stated that SIU Supervisor Dara Campbell ("Campbell") denied overtime for excess assigned cases. *See* Declaration of Vito DiNiso ("DiNiso Decl."), DE [56-7], ¶¶ 8, 12-13. O'Sullivan testified that SIU Supervisor Brian Portnoy would not authorize overtime merely to type reports. *See* Deposition of Michael O'Sullivan ("O'Sullivan Dep. Tr."), DE [138-9], 184:6-186:4; *see also* Pls.' Add'l 56.1 Stmt. ¶¶ 9-12, 34-35.

5

Plaintiffs further testified that caseloads increased over time, particularly after March 2020, and that investigators raised those increases in team meetings and one-on-one calls. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 18-19. Barden stated that he worked approximately 55 to 60 hours per week and discussed with supervisors both the time investigators devoted to cases and off-the-clock work. *See* Deposition of Thomas Barden ("Barden Dep. Tr."), DE [173-32], 99:16-101:22. Costanzo testified that he told Supervisor Chet Janik he worked past scheduled hours to meet GEICO's requirements and told Newport that the case volume could not be completed in eight hours a day. *See* Costanzo Dep. Tr. 50:12-22, 51:8-23. Mangan testified that investigators told Newport at an office-wide luncheon that unmanageable caseloads required work beyond scheduled hours. *See* Deposition of Constance Mangan Transcript ("Mangan Dep. Tr."), DE [173-29], 182:24-184:20. Moeser testified similarly, asserting that he told Newport that investigators worked more hours than they documented. *See* Deposition of John Moeser Transcript ("Moeser Dep. Tr."), 163:4-164:9. Grey described multiple conversations with Janik about unpaid overtime. *See* Deposition of Michael Grey Transcript ("Grey Dep. Tr."), DE [173-12], 94:3-95:25, 264:13-265:13. Brust told SIU Supervisors Joseph Cassagne ("Cassagne") and Tobi D'Agata about unpaid additional hours. *See* Deposition of Albert Brust Transcript ("Brust Dep. Tr."), DE [173-29], 126:24-130:22. SIU Investigator Christopher Hirsch ("Hirsch") and SIU Medical Senior Fraud Investigator Michael Manzolillo testified about excessive workloads and after-hours tasks in team meetings. *See* Deposition of Christopher Hirsch Transcript ("Hirsch Dep. Tr."), DE

6

[173-18], 99:15-102:24; Deposition of Michael Manzolillo Transcript ("Manzolillo Dep. Tr."), DE [173-16], 48:8-9.  Opt-in Plaintiff Jason Snair testified that he raised the issue of off-the-clock work in a team meeting with Supervisor Doreen Bogoff.  See Deposition of Jason Snair Transcript ("Snair Dep. Tr."), DE [138-22], 60:2-11, 80:4-22; DE [174-14] at 2-5.

GEICO evaluated investigators on a one-to-five scale, and an investigator who received a rating below 3.0 was ineligible for an annual salary increase and could be placed on a performance-improvement plan.  *See* Pls.' Add'l 56.1 Stmt. ¶ 13.  For much of the relevant period, adjusted productivity divided cases closed by reported work hours, so additional reported hours could lower an investigator's score.  *Id.* at ¶¶ 14-15; *see* Moeser Dep. Tr. 104:5-8, 106:2-22; K. Fischer Dep. Tr. 94:11-25.  To this end, in March 2018, Campbell told Mangan that overtime was lowering her adjusted-productivity number.  *See* Pls.' Add'l 56.1 Stmt. ¶ 15.  GEICO also measured case life and file quality, distributed monthly report cards, and ranked investigators against one another.  *Id.* at ¶¶ 16-17.  Cubas testified that investigators competed and were ranked against one another on case life, and the record also includes an October 2021 email transmitting ranked investigator report cards and spreadsheets showing supervisor-team rankings.  *See* Deposition of Rene Cubas Transcript ("Cubas Dep. Tr."), DE [174-1], 197:16-20.

Some investigators worked flexible schedules.  To this end, Moeser acknowledged working a flex schedule and performing tasks at different times of the day, although he also testified that he did not correspondingly shorten his day.  *See*

Moeser Dep. Tr. 101:7-25.  Supervisor Kristin Slack and Manager Andrew Gelderman stated that investigators could ordinarily offset a longer day by working fewer hours on another day in the same week and that they did not recall denying a flex request. *See* Declaration of Kristin Slack, DE [173-6], ¶¶ 18-21; Declaration of Andrew Gelderman, DE [173-53], ¶¶ 15-16.  Plaintiffs respond that assignment volume and timing frequently left no meaningful opportunity to offset additional time.  *See* Pls.' 56.1 Resp. ¶ 11; Pls.' Add'l 56.1 Stmt. ¶¶ 18-20, 30-31.  Although SICM time-stamped assignments, investigative entries, and case closures, the parties agree that SICM was not a timekeeping system and did not record how long a task took.  *See* Def.'s 56.1 Stmt. ¶¶ 9-11; Pls.' 56.1 Resp. ¶¶ 9-11; Pls.' Add'l 56.1 Stmt. ¶¶ 21-25.

### C.    Plaintiffs' Alleged Uncompensated Work

Plaintiffs testified that they performed compensable work before or after their recorded shifts for which they did not receive compensation required by law, including reviewing assignments and emails, running database searches, making telephone calls, entering case notes, preparing reports, communicating with witnesses or law-enforcement personnel, and completing other investigative tasks.  *See* K. Fischer Dep. Tr. 73:21-74:9, 120:16-121:3; Costanzo Dep. Tr. 50:13-22, 51:4-23; Brust Dep. Tr. 127:5-130:14; Barden Dep. Tr. 99:16-101:22; M. Fischer Dep. Tr. 58:17-59:8, 87:2-7, 94:19-96:16; Caniglia Dep. Tr. 197:2-17; Deposition of Daniel King Transcript ("King Dep. Tr."), DE [138-25], 110:20-116:7; Hirsch Dep. Tr. 99:15-102:24; Snair Dep. Tr. 60:2-11, 80:4-22; DE [174-14] at 2-5.  Field investigators also testified that travel among investigative locations was assigned work.  *See* Caniglia Dep. Tr. 197:2-17;

8

Jones Dep. Tr. 154:18-21, 231:6-12; Costanzo Dep. Tr. 225:8-23.  GEICO disputes whether some travel, work station setup, or other activities were compensable, and whether certain Plaintiffs exceeded 40 hours during particular weeks.  *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Sum. J. Mem."), DE [138-1], at 33-42; Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Sum. J. Reply"), DE [144-9], at 10-17.

Although SIU investigators were generally expected to work 38.75 hours per week, *see* Declaration of Brian Portnoy, DE [138-22], ¶¶ 16-18, several Plaintiffs testified that they specifically told supervisors or managers that they were working beyond recorded hours and in excess of 40 hours per week.  *See, e.g.*, Moeser Dep. Tr. 163:4-164:9; Mangan Dep. Tr. 182:24-184:20; Brust Dep. Tr. 127:5-128:11; Barden Dep. Tr. 99:16-101:22; Grey Dep. Tr., DE [173-12], 94:3-95:25, 264:13-265:13; Costanzo Dep. Tr. 50:12-22, 51:8-23; K. Fischer Dep. Tr. 156:20-157:9, 206:10-24. Others acknowledged that they did not use the precise phrase "off the clock," but testified that they repeatedly complained about workloads that could not be completed within scheduled hours and were told overtime was unavailable.  *See, e.g.*, Deposition of Maria Munoz Transcript ("Munoz Dep. Tr."), DE [173-13], 177:3-178:18; Deposition of Louis Pia Transcript ("Pia Dep. Tr."), DE [173-31], 200:18-202:10; Deposition of Michael Reed Transcript ("Reed Dep. Tr."), DE [142-7], 70:18-71:11. GEICO relies on its written policies, payment of reported overtime, and employee certifications to contend that it neither knew nor should have known of omitted hours. *See* Def.'s Sum. J. Mem. at 19-33; Def.'s Sum. J. Reply at 1-10.  Plaintiffs rely on their

complaints, supervisors' responses, workload evidence, performance measures, after-hours communications, and SICM timestamps to establish actual or constructive knowledge. *See* Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment ("Pls.' Sum. J. Opp'n"), DE [142], at 7-16.

## D.    Plaintiff-Specific Testimony

The following facts come from Plaintiffs' declarations and deposition testimony, further demonstrating the nature of their work. Although not exhaustive, the record states:

- Fischer, Moeser, and Barden each described substantial uncompensated work and direct notice to management. Fischer testified that he regularly told Cassagne he worked more than ten overtime hours per week and stopped seeking overtime after his requests were denied. *See* K. Fischer Dep. Tr. 156:20 – 157:9, 206:10-24, 242:20-23. Moeser testified that he told Newport that investigators worked more hours than they documented and that reported hours reduced productivity scores. *See* Moeser Dep. Tr. 104:5-8, 106:2-22, 163:4 – 164:9. Barden estimated he worked 55 to 60 hours per week and discussed off-the-clock work with supervisors. *See* Barden Dep. Tr. 99:16 –101:22.

- Mangan, Jones, and Pia described repeated group or individual complaints coupled with denied overtime. Mangan testified that investigators complained to Newport at an office-wide luncheon. *See* Mangan Dep. Tr. 182:24 – 184:20. Jones testified that she complained to SIU Supervisor April Neyland four or five times and stopped after receiving the same denial. *See* Jones Dep. Tr. 116:8 – 119:18. Pia testified that investigators raised workload and overtime at monthly meetings but were told overtime was unavailable. *See* Pia Dep. Tr. 200:18-202:10, 220:13-16.

10

- O'Sullivan, Brust, and Caniglia offered task-specific evidence. O'Sullivan testified that Portnoy would not approve overtime merely for typing case reports. *See* O'Sullivan Dep. Tr. 184:6-186:4. Brust testified that Cassagne denied overtime despite notice that Brust completed computer checks during evening hockey games. *See* Brust Dep. Tr. 127:5 – 130:14. Caniglia testified that he raised the issue of unpaid hours by telephone and email and described investigations combining database work, police calls, travel, and canvassing. *See* Caniglia Dep. Tr. 145:8 – 147:22, 197:2-17.

- Opt-in Plaintiffs Costanzo, Grey, Munoz ("Munoz"), and Michael Reed ("Reed") testified that supervisors knew ordinary workloads exceeded scheduled hours. Costanzo told Janik and Newport that deadlines required extra time. *See* Costanzo Dep. Tr. 50:12-22, 51:8-23, 142:12 – 143:2. Grey described multiple conversations discussing unpaid-overtime compensation. *See* Grey Dep. Tr. 94:3-95:25, 264:13-265:13. Munoz complained that the workload was too great but received no overtime. *See* Deposition of Maria Munoz Transcript ("Munoz Dep. Tr."), DE [173-13], 176:12-178:18. Reed described a similar difficulty in completing his workload, which was received with a similar response. *See* Reed Dep. Tr. 70:18-71:11.

- King and Margaret Fischer described common investigative work outside recorded hours. King testified that a supervisor told investigators not to record more than 7.75 hours per day despite a heavy caseload. *See* King Dep. Tr. 110:20 – 116:7, 138:4-140:12. Margaret Fischer described background, public-record, and license searches from the office or home and after-hours emails. *See* M. Fischer Dep. Tr. 58:17-59:8, 87:2-7, 94:19-96:16.

- In his declaration, Brady estimated he worked 49 to 71 hours per week during different periods while ordinarily recording 7.75 hours per day. *See* Brady Decl. ¶¶ 8, 12-13. DiNiso estimated he worked 44 to 46 hours per week and that Campbell would not approve overtime for ordinary caseloads. *See* DiNiso Decl. ¶¶ 6, 10-13. Opt-in Plaintiff Anthony Geraci estimated he worked 42 to 50 hours per week and stated that requesting overtime would harm productivity. *See* Declaration of Anthony Geraci ("Geraci Decl."), DE [56-10], ¶¶ 6, 9, 12.

- The twenty-four opt-in Plaintiffs who produced written discovery likewise reported hours exceeding a 40-hour work week. Geraci, Evan Teatum, Louis Caniglia Sr., Mark Giambalvo, Brady, Ted Wendling, DiNiso, Angela Gresham, Eric Michael Stephens, Dario DeMeo, Jeffrey Lewonka, John McEvoy, Matthew McNally, Sheena Faublas, Theresa Sarlo, and Tracy McCarthy identified complaints, after-hours communications or submissions, management observations, or other asserted notice. *See* DE [174-39] at 2-3.

### E. Procedural Background

By way of a Complaint ("Compl.") dated April 17, 2023, Plaintiffs commenced this action against GEICO asserting claims for unpaid overtime under the FLSA and NYLL on behalf of themselves and similarly situated GEICO investigators. *See generally* Compl. Plaintiffs filed an Amended Complaint on October 6, 2023, DE [28], and a Second Amended Complaint, which is the operative pleading in this action, on February 23, 2024. *See* DE [52]. In the SAC, Plaintiffs continue to assert claims for unpaid overtime wages under the FLSA and NYLL and a putative collective including "current and former non-exempt classified employees of GEICO who worked as Special Investigators (including comparable roles with different titles) in New York during the time period from three years prior to the filing of the complaint until resolution of this action . . . ." *See* SAC ¶¶ 78, 122-50.

On March 31, 2025, Magistrate Judge Steven Tiscione conditionally certified an FLSA collective of SIU Investigators and authorized distribution of notice, holding that Plaintiffs satisfied their burden of demonstrating that GEICO maintained a common policy or plan deterring the reporting of all hours worked. *See* Memorandum and Order Conditionally Certifying Collective Action ("Conditional Cert. Order"), DE [91], at 20. Following Court-authorized notice and subsequent withdrawals,

12

Plaintiffs represent in opposing decertification that 52 Named and Opt-In Plaintiffs remained in the collective.  See Pls.' Decert. Opp'n at 1, 10-11.  That total consists of the seven Named Plaintiffs and 45 remaining opt-ins.  GEICO served written discovery on thirty-five opt-ins and sought seventeen additional opt-in depositions; Plaintiffs ultimately produced twenty-five written-response sets and defended ten additional depositions, while seven noticed opt-in Plaintiffs withdrew rather than participate in discovery.  *Id.* at 11.

On October 10, 2025, GEICO moved for summary judgment,  *See* DE [138], which Plaintiffs oppose.  DE [142].  On February 20, 2026, the Court denied Rule 23 certification because individualized issues defeated predominance, but concluded that Plaintiffs established commonality and typicality through evidence of a common understanding that investigators had to complete assigned work without recording hours beyond those allocated.  *See* DE [162] at 18, 21-23.  After further collective discovery, GEICO moved to decertify the conditionally certified collective, *see* DE [173], which Plaintiffs also oppose.  *See* DE [174].  On April 24, 2026, the parties argued their pending motions and this Report and Recommendation and Memorandum and Order follows.

## II.    LEGAL STANDARDS

### A.    <u>Summary Judgment</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence would

permit a reasonable jury to return a verdict for the nonmovant, and a fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The Court may not weigh evidence or resolve credibility disputes. *Id.*

## B.    Decertification of Collective Action

Section 216(b) of the FLSA permits employees to proceed collectively if they are "similarly situated." 29 U.S.C. § 216(b). Employees are similarly situated when they "share one or more issues of law or fact that are material to the disposition of their FLSA claims." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020). The standard is less demanding than Rule 23 predominance, permissive joinder, or consolidation, and dissimilarities in other respects do not defeat collective treatment when a material common issue exists. *Id.* at 516, 519-20. At the post-discovery stage, the plaintiff bears the burden of showing by a preponderance of the evidence that the named and opt-in plaintiffs are similarly situated. *Adams v. City of New York*, No. 16-CV-3445(RA)(SDA), 2019 WL 5722054, at *4-8 (S.D.N.Y. Aug. 29, 2019). The inquiry is whether common proof will materially advance resolution of one or more issues; differences bearing only on damages ordinarily do not require decertification. *Scott*, 954 F.3d at 521; *Pino v. Harris Water Main & Sewer Contractors, Inc.*, No. 17-CV-5910(KAM)(RER), 2020 WL 5708889, at *5-7 (E.D.N.Y.

14

Sept. 23, 2020); *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367-70 (S.D.N.Y. 2014).

## III.  DISCUSSION

### A.  <u>Summary Judgment</u>

#### 1.  <u>Unpaid Overtime Standard</u>

To prevail on an unpaid-overtime claim under the FLSA, a plaintiff must demonstrate that he performed work over 40 hours in a given week for which he was not properly compensated and that the employer had actual or constructive knowledge of that work. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361-63 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192 (1946)); *see Perry v. City of New York*, 78 F.4th 502, 515 (2d Cir. 2023) (holding that an employer violates the FLSA when it fails to compensate an employee for work requiring compensation, and which the employer knew or should have known about).   Unless exempt, an employee who works more than 40 hours in a workweek is entitled to compensation for the excess hours at one and one-half times the employee's regular rate of pay.  29 U.S.C. § 207(a)(1); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113-14 (2d Cir. 2013).  Although the employee bears the ultimate burden of proving uncompensated work, "it is the employer's responsibility to maintain accurate records of an employee's hours." *Kuebel*, 643 F.3d at 361 (citing 29 U.S.C. § 211(c)).  Accordingly, where the employer's records are inaccurate or inadequate, a plaintiff opposing summary judgment need only produce sufficient evidence from which the amount and extent of uncompensated work may

be established as a matter of just and reasonable inference. *Id.* at 361-62 (quoting *Mt. Clemens*, 328 U.S. at 687, 66 S. Ct. at 1192). This burden "is not high," and a plaintiff may satisfy it through estimates based upon his own recollection. *Id.* at 362; *see Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014) (recognizing that representative employee testimony may establish the amount and extent of uncompensated work). Once the employee makes this showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or evidence negating the reasonableness of the inference drawn from the employee's evidence. *Mt. Clemens*, 328 U.S. at 687-88, 66 S. Ct. at 1192; *see also Kuebel*, 643 F.3d at 362. Thus, although a plaintiff may not defeat summary judgment through mere speculation or conclusory assertions, a court may not reject otherwise competent testimony concerning uncompensated work merely because the employee cannot identify the precise amount of unpaid time. *See Kuebel*, 643 F.3d at 362-64. In short, liability turns on whether the employee performed uncompensated work and whether the employer knew or should have known of it; willfulness is a separate inquiry affecting the FLSA limitations period, not an element of the underlying overtime violation. *See Perry*, 78 F.4th at 515; *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).

The Second Circuit has held that the NYLL adopts the same overtime standard as the FLSA, *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013), and that "the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85,

16

89 n.5 (2d Cir. 2013).  Accordingly, courts in this Circuit generally analyze FLSA and NYLL overtime claims together where there are no meaningful differences in the claims.  *See, e.g., Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 465 n.2 (E.D.N.Y. 2015) ("Overtime claims under the FLSA and NYLL are subject to the same standards."); *Kuebel*, 643 F.3d at 357 n.1 (applying the FLSA standard to claims arising under the NYLL).  There are no relevant differences here.  The Court therefore considers together Defendant's motion for summary judgment with respect to Plaintiffs' causes of action arising under the FLSA and NYLL.  In resolving Defendant's motion for summary judgment, the Court need not repeat the same analysis separately for each Plaintiff.  Although the Court must adhere to the Federal Rules of Civil Procedure regarding summary judgment, the FLSA expressly contemplates representative litigation by similarly situated employees, *see* 29 U.S.C. § 216(b), and permits violations to be established through representative proof rather than testimony from every affected employee.  *See Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 67-68 (2d Cir. 1997).

### 2.    Compensable Work and Hours Worked

Although GEICO correctly argues that an employer is not required to pay overtime for non-compensable activities or for workweeks in which the employee worked fewer than 40 hours, *see* Def.'s Sum. J. Mem. at 14-15, those limitations do not establish GEICO's entitlement to summary judgment.  The record includes concrete examples of allegedly uncompensated overtime work rather than generalized estimates alone.  For example, Brust testified that he performed

computer checks during evening hockey games and told his supervisor about doing so. *See* Brust Dep. Tr. 127:5–130:14; Margaret Fischer described performing database, public-record, and license searches from home and exchanging after-hours emails with her supervisor. *See* M. Fischer Dep. Tr. 58:17 – 59:2; 87:2-7, 94:19-96:16. Caniglia described investigations that began with database searches and police calls and continued through travel to investigative locations and canvassing. *See* Caniglia Dep. Tr. 197:2-17.

Additionally, Plaintiffs testified that they performed substantive investigative work outside their recorded hours, including reviewing assignments and emails, conducting database and public-record searches, making telephone calls, entering case notes, preparing reports, and communicating with witnesses and law-enforcement personnel. *See, e.g.*, K. Fischer Dep. Tr. 73:21-74:9, 120:16-121:3; Costanzo Dep. Tr. 50:13-22, 51:4-23; Brust Dep. Tr. 127:5-130:14; Barden Dep. Tr. 99:16-101:22; M. Fischer Dep. Tr. 58:17-59:8, 87:2-7, 94:19-96:16. These activities were among the investigative duties GEICO employed Plaintiffs to perform and, if performed outside recorded hours as Plaintiffs testified, constitute compensable work.

In support of its motion, GEICO contends that certain Plaintiffs include non-compensable commuting in their estimates of uncompensated time. *See* Def.'s Mem. at 14-15. The Portal-to-Portal Act draws a distinction between ordinary commuting and travel that is itself part of an employee's principal work. Ordinary travel from home to the first place of work and from the last place of work home is generally

18

noncompensable, even where the employee reports to changing work sites. *See* 29 U.S.C. § 254(a)(1); 29 C.F.R. § 785.35; *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272-73 (2d Cir. 1999). By contrast, travel from one assigned work location to another after the workday has begun is ordinarily compensable. *See* 29 C.F.R. § 785.38. Under the continuous-workday rule, travel occurring after an employee commences a principal activity and before completion of the employee's final principal activity may likewise constitute hours worked, although work performed at home before leaving does not automatically transform a subsequent ordinary commute into compensable time. See *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28-37, 126 S. Ct. 514, 520-25 (2005); *Kuebel*, 643 F.3d at 359-60.

The parties' travel-time arguments therefore cannot be resolved by treating all driving alike. GEICO argues that Keith Fischer, Costanzo, Pia, Jones, and Reed included ordinary home-to-first-worksite or last-worksite-to-home commuting in their estimates and that such time must be removed before determining whether any Plaintiff worked more than 40 hours. *See* Def.'s Sum. J. Mem. at 13-15; Def.'s Sum. J. Reply at 10-17. Plaintiffs respond that investigators' field days involved assigned travel to and among investigative destinations and that the record does not permit the Court to isolate ordinary commuting from compensable point-to-point travel occurring as part of an investigation or during a continuous workday. *See* Pls.' Sum. J. Opp'n at 16-20; Pls.' Add'l 56.1 Stmt. ¶¶ 26-28. The record supports the distinction. Caniglia described an investigation beginning with database searches and police calls and continuing through travel and canvassing; Jones described territories requiring

19

several hours of driving in one direction. *See* Jones Dep. Tr. 154:18-21, 231:6-12. Costanzo described a territory extending to Rochester and approximately 6,877 miles of investigative travel during part of 2022. *See* Costanzo Dep. Tr. 225:8-23.

The individualized evidence is particularly important to the overtime threshold. Keith Fischer claims approximately 55 to 65 total hours per week, and Pia also estimated working 55 to 65 hours per week. Jones worked approximately 51 to 58 hours per week, and Reed worked approximately 52 to 57 hours per week. *See* Def.'s 56.1 Stmt. ¶¶ 52, 54, 73-75, 116, 197, 214. Thus, even if some ordinary commuting is excluded, their estimates also encompass substantial allegedly uncompensated investigative work. *Id.* On this record, GEICO has not established as a matter of law that removing noncompensable commuting reduces any of these claims entirely below 40 hours in all relevant weeks. Rather, the factfinder must distinguish ordinary commuting from assigned point-to-point investigative travel and determine the compensable hours actually worked in the particular week.

GEICO also invokes the Portal-to-Portal Act with respect to preliminary and postliminary activities. Such activities are excluded unless they are integral and indispensable to the principal activities the employee is employed to perform. *See* 29 U.S.C. § 254(a)(2); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33-35, 135 S. Ct. 513, 517-19 (2014); *Alvarez*, 546 U.S. at 29-30. Plaintiffs contend that the challenged pre- and post-shift work was not merely preparatory because it included the very investigative tasks GEICO employed them to perform—reviewing assignments and emails, conducting database and public-record searches, making calls, entering case

20

notes, preparing reports, and communicating concerning active investigations. See Pls.' Sum. J. Opp'n at 16-21; Pls.' Add'l 56.1 Stmt. ¶¶ 4-5, 21-25, 32. GEICO responds that preliminary personal activities, including portions of workstation setup, are not transformed into compensable work merely because they occur near substantive work. See Def.'s Sum. J. Mem. at 15-16.

Margaret Fischer's testimony illustrates that distinction. She claims approximately 41 to 42 total hours per week and testified that, while working remotely during the pandemic, she spent approximately ten to fifteen minutes setting up her workstation at the dining-room table and another ten to fifteen minutes taking it down so that the table could be used for dinner. *See* Def.'s 56.1 Stmt. ¶¶ 89-90. GEICO argues that this assembly and disassembly was undertaken for her personal convenience and was neither integral nor indispensable to her investigative work. Plaintiffs respond that her claim is not limited to arranging the dining table – she also testified to performing background checks, database and public-record searches, license verification, and after-hours communications from home, all of which are substantive investigative tasks. *See* M. Fischer Dep. Tr. 58:17-59:8, 87:2-7, 94:19-96:16; Pls.' Sum. J. Opp'n at 20-21. The record therefore supports distinguishing purely personal assembly or removal of a home workspace from any time reasonably necessary to make employer-required equipment operative and from the substantive investigative work that followed. No authority identified by the parties or located by the Court establishes that arranging and later clearing a dining-room table, standing alone, is compensable; the compensability of any employer-required equipment

startup, however, depends upon whether that activity was integral and indispensable to the work Margaret Fischer was employed to perform.

The same individualized approach applies to the remaining claimed hours. The summary-judgment record reflects estimates ranging from approximately 41 to 42 hours per week for Margaret Fischer, 55 to 60 hours for Barden, 50 to 60 for Brust, and Mangan, 45 to 50 for Caniglia and Grey, approximately 50 for King, 52.5 or more for Moeser, 46 to 52 for Muñoz, 47.5 to 50 for O'Sullivan, and approximately 57 to 58 hours for Wendling before February 2023. *See* Def.'s 56.1 Stmt. ¶¶ 20, 24, 36, 52, 73, 89, 105, 116, 131, 145, 155, 169, 181, 197, 214, 219; DE [174-14] at 2-5. GEICO argues that the Court must subtract noncompensable activities, already-paid overtime, leave or exempt periods, and weeks that did not exceed 40 hours before liability can attach. *See* Def.'s Sum. J. Mem. at 13-18, 33-42. Plaintiffs do not dispute that overtime liability ultimately requires compensable work exceeding 40 hours in a particular week, but contend that their testimony and discovery responses supply sufficient estimates and task-specific evidence to create triable issues as to the weeks and work for which compensation remains due. See Pls.' Sum. J. Opp'n at 16-23; *Kuebel*, 643 F.3d at 361-65; *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200-01 (2d Cir. 2013).

Even assuming that some portion of those estimates includes non-compensable commuting, GEICO has not established that excluding such time eliminates the otherwise disputed evidence that Plaintiffs performed compensable investigative work outside their recorded hours, which, in turn, may result in overtime liability.

22

Whether an employee's travel constitutes compensable work depends upon the particular circumstances surrounding the travel, including whether the time is spent predominantly for the employer's benefit. *See Singh v. City of New York*, 524 F.3d 361, 367–68 (2d Cir. 2008). Accordingly, where, as here, material facts concerning the nature, purpose, or frequency of the employee's travel-related activities remain disputed, the issue may not appropriately be resolved on summary judgment. *See Kim v. DKCOSMETICS*, No. 19-CV-9079(JMF), 2022 WL 540758, at *4–5 (S.D.N.Y. Feb. 23, 2022) (denying summary judgment as to whether, and to what extent, commuting time was compensable where the record was unclear concerning, among other things, whether the employee was required to transport coworkers for the employer's benefit, how frequently he performed work-related tasks during his commute, and how much time those tasks added to his commute).

The same is true of the remaining pre- and post-shift activities. *See* Def.'s Mem. at 15. An activity is compensable when it is integral and indispensable to the employee's principal activities. *Integrity Staffing Sols., Inc.*, 574 U.S. at 33, 135 S. Ct. at 517; *IBP, Inc.*, 546 U.S. at 29-30, 126 S. Ct. at 521-22. Reviewing assignments, conducting database searches, preparing investigative reports, entering case information in SICM, and communicating about active investigations were among the duties GEICO hired investigators to perform and were integral to their principal work. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 4-5, 21-25, 32. Whether particular claimed intervals were spent on those tasks, personal activities, workstation setup, or another preliminary matter remains a factual question. GEICO may challenge Plaintiffs'

estimates and credibility at trial, but Rule 56 does not permit the Court to choose between conflicting sworn accounts on summary judgment. *See Kuebel*, 643 F.3d at 364-65 (holding that conflicts between the employee's and employer's accounts created a genuine issue for trial); *see also Perry*, 78 F.4th at 522 (vacating summary judgment where competing evidence permitted a reasonable fact finder to conclude that the employer required uncompensated work); *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (recognizing that the application of FLSA standards to particular facts generally presents a mixed question of law and fact).

### 3.    GEICO's Knowledge

Questions of fact also exist regarding GEICO's knowledge that Plaintiffs performed unrecorded overtime. To establish the knowledge element in an FLSA overtime claim, an employee must demonstrate that the employer had actual or constructive knowledge that uncompensated work was being performed. *Kuebel*, 643 F.3d at 361-65. Constructive knowledge exists where the employer, through reasonable diligence, should have acquired knowledge of the uncompensated work. *Perry*, 78 F.4th at 512. At the summary judgment stage, therefore, Plaintiffs need only identify evidence from which a reasonable factfinder could conclude that GEICO knew or, through reasonable diligence, should have known that they performed work for which they were not compensated. That burden is satisfied here.

GEICO argues that it lacked actual or constructive knowledge of Plaintiffs' alleged uncompensated work because it maintained a system requiring employees to record all hours worked, instructed employees to report overtime, paid reported

24

overtime, and received certifications from Plaintiffs that their time entries were accurate. See Def.'s Mem. at 19-33; Def.'s Reply at 1-10. GEICO further contends that Plaintiffs' complaints regarding volume of their workload, after-hours activity, and SICM timestamps did not provide notice of uncompensated overtime because they did not establish that Plaintiffs actually worked more hours than they reported, particularly given investigators' ability to work flexible schedules. *See* Def.'s Mem. at 27-33; Def.'s Reply at 5-10.

Relevant here, generalized complaints about workload do not automatically establish knowledge of unpaid overtime, and the SICM timestamps, standing alone, establish neither the duration of the work performed nor whether it resulted in uncompensated overtime. *See Perry*, 78 F.4th at 515-16 (explaining that constructive knowledge turns on what the employer should have discovered through reasonable diligence, not mere access to information); *Kuebel*, 643 F.3d at 365 (distinguishing evidence that the employer had reason to know of uncompensated work from circumstances in which it had no such reason). Plaintiffs do not, however, rely on timestamps alone. Rather, they offer testimony concerning denied overtime requests, statements that assignments could not be completed during scheduled hours, express complaints of off-the-clock work, after-hours communications with supervisors, and performance measures that divided completed cases by reported hours. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 13-17, 19-20, 29-31; Pls.' Opp'n at 7-16. Credited at summary judgment, similar evidence permits a finding of actual or constructive knowledge. *See Perry*, 78 F.4th at 522 (holding that an employer cannot avoid liability through an

25

employee's failure to report work that the employer required, knew about, or should have discovered through reasonable diligence); *Kuebel*, 643 F.3d at 363-65 (denying summary judgment where the employee testified that his supervisor knew he worked more than 40 hours and instructed him not to record all of that time); *Thompson v. Global Contact Servs., LLC*, No. 20-CV-651(MKV)(SJB), 2021 WL 3486944, at *6 (E.D.N.Y. July 21, 2021) (denying summary judgment where testimony that management knew employees worked during unpaid meal periods created a triable issue of actual or constructive knowledge).

Moreover, the fact that Plaintiffs certified the accuracy of their reported hours does not eliminate a genuine dispute concerning GEICO's knowledge. An employer may not avoid liability by relying on inaccurate time records where it knew or had reason to know that employees were performing unreported work, and Plaintiffs have offered evidence that supervisors were informed of off-the-clock work, denied or restricted overtime requests, and knew that assigned workloads exceeded scheduled hours. See Kuebel, 643 F.3d at 363-65; *Perry*, 78 F.4th at 513-16. Although GEICO maintains that its written policies and payment of recorded overtime are substantial evidence to warrant summary judgment, *see* Def.'s 56.1 Stmt. ¶¶ 5, 7, 13, 17, those facts are not dispositive. *See Kuebel*, 643 F.3d at 363-65.

Accordingly, the certifications of the hours worked may bear on the weight and credibility of Plaintiffs' evidence, but they do not establish GEICO's lack of actual or constructive knowledge as a matter of law, and summary judgment is therefore unwarranted. Written policies and payment of recorded overtime are substantial

26

contrary evidence. *See* Def.'s 56.1 Stmt. ¶¶ 5-7, 13-17; Pls.' 56.1 Resp. ¶¶ 5-7, 13-17. They are not dispositive, *see Kuebel*, 643 F.3d at 363; *Perry*, 78 F.4th at 513-16; *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288-89 (2d Cir. 2008), and the inferences to draw from electronic records are matters for the factfinder. *Kuebel*, 643 F.3d at 364-65. Plaintiffs' representation of the accuracy of their time records, both during the course of their employment and in opposition to the instant motions, creates a question of fact regarding Defendant's knowledge but nothing else.

### 4.   Willfulness

Defendant also moves for summary judgment on the issue of willfulness. The FLSA's statute of limitations is two years unless the violation was willful, in which case it is three years. 29 U.S.C. § 255(a). The NYLL provides a six-year limitations period without regard to willfulness. N.Y. Lab. Law § 663(3); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015). An FLSA violation is willful if the employer knew that its conduct was prohibited or showed reckless disregard for whether it was. *Young*, 586 F.3d at 207. Negligence is insufficient. *Id.* GEICO's written policies, payment of approved overtime, time-entry certifications, and instruction that all hours be recorded weigh against a finding of willfulness. *See* Def.'s 56.1 Stmt. ¶¶ 5-7, 13-17; Pls.' 56.1 Resp. ¶¶ 5-7, 13-17. Plaintiffs identify contrary evidence that investigators repeatedly reported working beyond scheduled hours while managers continued restrictive overtime practices and productivity measures. *See* Moeser Dep. Tr. 163:4-164:9; Mangan Dep. Tr. 182:24-184:20; Barden Dep. Tr. 99:16-101:22; Grey Dep. Tr. 94:3-95:25, 264:13-265:13; Pls.' Add'l 56.1 Stmt.

¶¶ 13-20, 29-31.  Willfulness commonly presents a jury question where competing evidence supports different inferences about the employer's state of mind.  *See Kuebel*, 643 F.3d at 366 (holding that evidence the employer knew of unreported overtime and discouraged accurate reporting created a triable willfulness issue); *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 190 (D. Conn. 2020) (denying summary judgment where competing evidence concerning the employer's knowledge permitted different inferences as to willfulness).

Based upon the foregoing, genuine disputes of material fact concerning willfulness exist that are best considered by the trier of fact.  Accordingly, the Court respectfully recommends that Defendant's motion for summary judgment be denied on this issue.

## B.   **Decertification of Collective Action**

### 1.   Standard

As discussed above, the FLSA permits employees to proceed collectively when they are "similarly situated."  29 U.S.C. § 216(b).  Following conditional certification and discovery, the Court determines on the developed record whether the named and opt-in plaintiffs remain similarly situated.  If they do not, the collective may be decertified.  *See Scott*, 954 F.3d at 515-16 (reviewing a post-discovery decertification ruling).  Employees are similarly situated when they "share one or more similar questions of law or fact material to the disposition of their FLSA claims."  *Id.* at 516.  The relevant inquiry is not whether every issue can be resolved collectively, but whether common proof will materially advance resolution of the employees' claims.

28

*Id.* To this end, courts regularly deny post-discovery decertification despite differences in employees' schedules, hours, supervisors, damages, or other individual circumstances. *See Adams*, 2019 WL 5722054, at *5-8; *see also Pino*, 2020 WL 5708889, at *5-7; *McGlone*, 49 F. Supp. 3d at 367-70. Individual damages calculations and some employee-specific liability evidence therefore do not require decertification where common material issues remain. *See Scott*, 954 F.3d at 516.

The Second Circuit has explained that the adequacy of representative evidence depends upon its quality and consistency rather than any minimum percentage of employees who testify. *Reich*, 121 F.3d at 67-68; *see Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003) ("[P]laintiffs must present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked by the non-testifying plaintiffs."). Consistent with these principles, courts may permit representative testimony, trial groupings, bifurcation, or other trial-management procedures rather than decertify a collective merely because some individualized questions remain. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, 708 F. Supp. 3d 213, 216-19 (E.D.N.Y. 2023); *Foster v. City of New York*, Nos. 14-CV-4142, 14-CV-9220(PGG)(RWL), 2020 WL 8173266, at *9-10 (S.D.N.Y. Oct. 30, 2020). The ultimate question remains whether the collective members share a factual or legal issue material to their FLSA claims, not whether their employment experiences are identical. *Scott*, 954 F.3d at 516.

**2.**    Material Common Issues

The collective members share material issues susceptible to common proof. They worked within the same New York SIU, performed related fraud-investigation duties, used the same timekeeping and SICM systems, and were governed by common overtime-approval policies. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 1-12, 21-25; Pls.' Decert. Opp'n at 2-4. Field and Desk Investigators were evaluated through centralized productivity, case-life, and quality measures, and GEICO ranked investigators against one another. *See* Pls.' Add'l 56.1 Stmt. ¶¶ 13-17; Pls.' Decert. Opp'n at 4-7. The developed record includes twenty-five depositions and written evidence from twenty-four additional employees. Every deposed employee attributed unpaid work to workload or metric pressure, and every non-deposed opt-in Plaintiff reported off-the-clock work. *See* Pls.' Decert. Opp'n at 7; DE [174-14] at 2-5; DE [174-39] at 2-3. Whether those practices existed, operated together as Plaintiffs allege, and gave GEICO actual or constructive knowledge are material questions capable of common proof. *Scott*, 954 F.3d at 516, 521; *Pino*, 2020 WL 5708889, at *5-7 (denying decertification where employees performed the same type of work under common compensation practices and concluding that differences in schedules and damages did not outweigh those material similarities).

GEICO identifies meaningful differences among employees. Investigators held field, desk, and major-case roles, reported to different supervisors, covered different territories, and had varying schedules and performance criteria. *See* Defendant's Memorandum of Law in Support of Decertification ("Def.'s Decert. Mem."), DE [173-

30

1], at 7-10; Pls.' Decert. Opp'n at 2-7, 18-20.  Major Case Investigators, in particular, were supervised separately before 2023 and were not evaluated on the productivity metric.  *See* Pls.' Decert. Opp'n at 18-19.  Employees also differed in the tasks allegedly performed off the clock, the amount of overtime recorded, and the specificity of communications with supervisors.  *See* Def.'s Decert. Mem. at 10-24; DE [174-14] at 2-5; DE [174-39] at 2-3.  Those differences affect the strength and value of individual claims, but do not eliminate the common issues concerning GEICO's overtime-approval process, workload expectations, centralized metrics, and knowledge.  *Scott*, 954 F.3d at 516; *McGlone*, 49 F. Supp. 3d at 367-69 (denying decertification of an off-the-clock collective despite variations in employees' hours and practices because they held the same position, performed the same duties, and alleged the same unlawful timekeeping practice).

### 3.   Individualized Evidence and Trial Management

GEICO's knowledge defense will require some individualized evidence because the content and recipient of employee communications varied.  *See Zivali v. AT&T Mobility LLC*, 784 F. Supp. 2d 456, 468-69 (S.D.N.Y. 2011) (granting post-discovery decertification of a collective of more than 4,000 employees at approximately 2,000 stores where, in the absence of a company-wide unlawful practice, liability depended on each manager's knowledge of off-the-clock work).  The Court may need to determine whether particular supervisors received sufficiently specific information, whether an employee's schedule made an electronic timestamp probative, and whether claimed tasks were compensable.  *Id.*  Individualized damages calculations—

31

and even some employee-specific liability evidence—do not compel decertification where common proof remains material, however. *Scott*, 954 F.3d at 516; *McGlone*, 49 F. Supp. 3d at 368-70. Plaintiffs represent that 52 Named and Opt-In Plaintiffs remained when they opposed decertification. *See* Pls.' Decert. Opp'n at 1, 10-11. As discussed above, they worked in GEICO's New York SIU, investigated suspected insurance fraud, used the same timekeeping and SICM systems, and were subject to common overtime-approval rules and centralized performance measures. *See* Def.'s 56.1 Stmt. ¶¶ 2-7, 9-13; Pls.' 56.1 Resp. ¶¶ 2-7, 9-13; Pls.' Add'l 56.1 Stmt. ¶¶ 1-17, 21-25; Pls.' Decert. Opp'n at 2-7; Conditional Cert. Order at 2-5, 17-20; DE [174-14] at 2-5; DE [174-39] at 2-3. Although field, desk, and major-case assignments differed, the record describes a common core of investigative work, including reviewing claim files, conducting database and public-record searches, interviewing witnesses and law-enforcement personnel, gathering evidence, traveling to investigative locations when required, and preparing reports in SICM. *See* Def.'s 56.1 Stmt. ¶ 4; Pls.' 56.1 Resp. ¶ 4; Pls.' Add'l 56.1 Stmt. ¶¶ 4-5, 21-25, 27-28, 32; Pls.' Decert. Opp'n at 2-4; Caniglia Dep. Tr. 197:2-17; Jones Dep. Tr. 154:18-21, 231:6-12; Costanzo Dep. Tr. 225:8-23; M. Fischer Dep. Tr. 58:17-59:8, 87:2-7, 94:19-96:16; DE [174-14] at 2-5; DE [174-39] at 2-3. These common practices can be tried through representative documents and testimony, followed by any necessary individualized proceedings. *See Wilson*, 708 F. Supp. 3d at 216-19 (permitting representative testimony for non-testifying opt-ins in an already-certified collective while preserving challenges to its probative value).

The Court can address variations through trial groupings, including a separate grouping for Major Case Investigators if warranted, and may determine common liability issues before employee-specific questions concerning hours, limitations, and damages. *See* Fed. R. Civ. P. 42(b); *Scott*, 954 F.3d at 516 n.5; *Wilson*, 708 F. Supp. 3d at 216-19. Decertification would discard substantial efficiencies while requiring the same alleged policies, performance measures, managerial communications, and electronic systems to be litigated repeatedly. *Pino*, 2020 WL 5708889, at *7 (finding collective adjudication more efficient where individual suits would repeat the same proof); *Montiel-Flores v. JVK Ops. Ltd.*, No. 19-CV-3005(JS)(SUL), 2023 WL 5979209, at *7 (E.D.N.Y. Aug. 1, 2023) (concluding that separate overtime trials would burden the parties and the Court because they would duplicate proof).

### 4.  Individuals with Allegedly Nonviable Claims

GEICO further argues that opt-in Plaintiffs with untimely claims, deemed admissions, or incomplete discovery responses require decertification. *See* Def.'s Decert. Mem. at 24-30. Those matters may affect individual claims, but they do not establish that the remaining employees' claims lack a shared material issue. *See Scott*, 954 F.3d at 516 (holding that dissimilarities on issues immaterial to the disposition of the FLSA claims do not defeat collective treatment); *Montiel-Flores*, 2023 WL 5979209, at *5-7 (rejecting post-discovery decertification arguments directed to the merits of particular claims where common questions remained material to the collective). A limitations defense, deemed admission, or discovery deficiency affecting an individual claimant should be resolved on a claimant-specific

33

record, not by decertifying an otherwise similarly situated collective. *See Pino*, 2020 WL 5708889, at *5-7 (denying decertification despite individualized defenses because common proof remained central and claimant-specific issues could be managed separately). Because GEICO has not shown that these defenses eliminate the common material issues supporting collective treatment, they do not warrant decertification.

Although there are differences from Plaintiff to Plaintiff, the record establishes that the Named and Opt-In Plaintiffs share material issues suitable for collective adjudication. The "similarly situated" requirement does not demand factual uniformity or individualized proof from every opt-in plaintiff. Rather, Plaintiffs must demonstrate that the named and opt-in plaintiffs share an issue of law or fact material to the disposition of their FLSA claims. *See Scott*, 954 F.3d at 516; *Adams*, 2019 WL 5722054, at *5-8; *McGlone*, 49 F. Supp. 3d at 367-70. The common questions concerning GEICO's overtime-approval process, workload expectations, centralized metrics, timekeeping systems, and knowledge satisfy this standard. Accordingly, Defendant's motion to decertify the collective is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that GEICO's motion for summary judgment, DE [138], be denied. Furthermore, GEICO's motion to decertify the FLSA collective, DE [173], is denied.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties via ECF.  Any objections must be filed with the Clerk of the Court within fourteen days of service.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-CV-3696, 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
           August 14, 2026

                                           *\_\_/s/ Steven I. Locke_____*
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge