Duane Morris®

*FIRM and AFFILIATE OFFICES*

GERALD L. MAATMAN, JR.
DIRECT DIAL: +1 312 499 6710
PERSONAL FAX: +1 312 279 6780
*E-MAIL:* GMaatman@duanemorris.com

September 22, 2026

Magistrate Judge Steven I. Locke
United States District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Dear Magistrate Judge Locke:

Defendant Government Employees Insurance Company ("GEICO") submits the following response to Plaintiffs' renewed motion to extend Phase III deadlines. (ECF 186.) Plaintiffs fail to show good cause to modify the scheduling order or a basis to excuse their missed deadline, and an extension after GEICO's July 15 expert disclosure would substantially prejudice GEICO.

**Background.** The operative scheduling order established June 1, 2026, for Plaintiffs' expert disclosures and July 15 for GEICO's expert disclosures. (ECF 166.) On May 27, 2026, five days before their due date, Plaintiffs first disclosed that they would not produce an expert report by June 1. (ECF 179 at 1.) The same day, Plaintiffs filed a motion to extend Phase III discovery, including expert disclosures, until after the Court ruled on GEICO's motion for decertification, which GEICO opposed and remains pending. (ECFs 178-79.) As GEICO established, neither party proposed tying Phase III deadlines, including expert deadlines, to decertification in four prior case schedules, nor was a decertification decision necessary for expert discovery. (ECF 179 at 1.)

Plaintiffs served no expert disclosure on June 1, 2026 and have not served an expert disclosure to date. GEICO timely served its expert disclosure and supporting declaration from Defendant's expert, Matthew Thompson, on July 15, 2026. (Ex. A, 7/15/26 G. Tsonis Email.) On September 18, 2026, Plaintiffs filed a renewed motion to extend already-lapsed Phase III deadlines.

**Lack of Good Cause**. Plaintiffs again fail to establish good cause for modification. As Defendant previously established (ECF 179), Rule 16(b)(4) states that scheduling orders "may be modified *only* for good cause." Fed. R. Civ. P. 16(b)(4) (emphasis added). Good cause requires the movant to demonstrate diligence. *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340 (2d Cir. 2000); *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 244 (2d Cir. 2007). The movant "must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012). Also relevant to the analysis is "whether allowing the [extension] at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244. For an already-lapsed deadline, Plaintiffs must also show excusable neglect, and the "failure to follow the clear dictates of a court rule will generally not constitute [] excusable neglect." *Canfield v. Van Atta Buick/GMC Truck, Inc*., 127 F.3d 248, 250 (2d Cir. 1997); Fed. R. Civ. P. 6(b).

Plaintiffs' renewed Motion still does not address, let alone establish, diligence. (ECF 179 at 2.) By once again "failing to address Rule 16(b)(4)'s requirements and the case law establishing the need to show diligence, it is undisputed that Plaintiffs have failed to meet their burden," *id*, and

case law establishes that their dilatory requests for modification of the scheduling order are presumptive "evidence of being remiss in one's duties." *Bruce v. Cnty. of Rensselaer*, 2003 WL 22436281, at *2 (N.D.N.Y. 2003). The Court's order on decertification does not and cannot cure Plaintiffs' lack of diligence when the renewed request "rests on information that the party knew, or should have known, in advance of the deadline." *Fidelity Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.*, 2011 WL 3665138, at *2 (S.D.N.Y. 2011).

Even if Plaintiffs had attempted to demonstrate diligence, they cannot do so here. A party's own delay, including strategic miscalculations or a failure to act on information known before the deadline, demonstrates a lack of diligence. *See Ritchie*, 282 F.R.D. at 79-80 (denying a request to extend expert discovery three weeks before the deadline because the movant possessed the necessary information for a significant time prior to seeking relief); *United States v. Provenzi*, 349 F.R.D. 600, 606 (W.D.N.Y. 2025) (same). GEICO produced the SICM data on March 3 and 30, 2026, as Plaintiffs acknowledge. (ECF 179 at 2-3.) Contrary to Plaintiffs' assertions, they could have produced a Rule 26(a)(2) expert report for *months*, yet failed to do so at any point.

None of Plaintiffs' proffered reasons establishes good cause, diligence, or excusable neglect. *First*, Plaintiffs' asserted "data issues" establish neither good cause nor excusable neglect. The "standard for the production of ESI is not perfection." *Loc. 3621 et al. v. City of New York*, 2024 WL 1856302, at *3 (S.D.N.Y. 2024) (citing *Chen-Oster v. Goldman, Sachs & Co*., 285 F.R.D. 294, 306 (S.D.N.Y. 2012). A producing party must provide only "a functionally adequate ability to access, cull, analyze, search, and display" ESI. *Id.* GEICO produced the SICM data in March 2026 from now-decommissioned SICM reporting. (ECF 178.) GEICO responded to Plaintiffs' initial questions regarding data interpretation (Ex. B, March 30 Email), and Plaintiffs cannot show that they lack a "functionally adequate ability to assess, cull, analyze, search, and display" the SICM data. *Loc. 3621*, 2024 WL 1856302 at *3. Nor do Plaintiffs' emailed follow-up questions regarding "inconsistent" data establish good cause. Defendant is not obligated to interpret or annotate data, guide Plaintiffs' expert in how to apply it, or assist Plaintiff's expert in avoiding methodological mistakes. Indeed, doing so could limit Defendant's ability to challenge Plaintiffs' expert's methodology by "encourag[ing] plaintiffs to manipulate the data." *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2014 WL 5859024, at *7 (D. Conn. 2014) ("[F]airness may also dictate a broader preclusion of defendants' challenging plaintiffs' experts for relying on data which defendants produced and encouraged plaintiffs to manipulate.").

*Second*, the production of Thompson's "analysis file" similarly fails to establish good cause to modify Plaintiffs' expert deadlines. Plaintiffs did not even seek the "analysis file" until July 6, 2026, more than five weeks after seeking an extension of expert deadlines, requesting that GEICO produce "the full analysis file with underlying data that Mr. Thompson relied on when drafting his report filed in support of GEICO's motion to decertify the collective, ECF No. 173-11." (Ex. C, Email Chain.) Such a post-hoc request cannot establish diligence or, accordingly, good cause. *McDaniel v. Town of Enfield*, 227 F. Supp. 3d 195, 197 (D. Conn. 2016) (finding motion "filed at the very last moment" is a "telltale sign that plaintiff did not act with diligence in the first place").

The content of Thompson's "analysis file" also does not require extending expert deadlines. The requested data concerns compilations of (i) workweeks less than, equal to, or greater than 38.75 or 40 hours or (ii) cases assigned or closed per investigator per month, data which Plaintiffs admittedly possess. (ECF 178.) As GEICO repeatedly explained, Thompson's methodology "was described in his declaration," Plaintiffs "possess the data[,]" and "nothing prevents Plaintiffs from performing the same straightforward calculations that Mr. Thompson conducted." (Ex. D, Email Chain). Defendant's agreement to produce the analysis file to avoid a needless dispute involving the Court is immaterial because Plaintiffs lacked any entitlement to such documents.[1] Moreover, the operative scheduling order requires that Plaintiffs' Rule 26(a)(2) disclosure occur before Defendant's disclosure, and Plaintiffs do not even attempt to explain why *their* expert report is reliant on the production of analysis files from *Defendant's* expert, nor can they.

*Third*, supplementation of pay and time records for a limited number of current GEICO employees does not require modification of Phase III discovery. Plaintiffs possess pay and time records for essentially all Plaintiffs through December 2025 (Ex. E, Email Chain), and mere supplementation to present does not merit extending Phase III discovery and expert deadlines. *See, e.g.*, *Lory v. Gen. Elec. Co.*, 179 F.R.D. 86, 88 (N.D.N.Y. 1998) (finding "delays in…the production of certain documents" allegedly required for expert's report insufficient to satisfy good cause).

GEICO would also be substantially prejudiced by modification of Plaintiffs' expert deadline now. Courts recognize that "allowing one party to view the opposing party's expert reports before having to submit its own opening expert reports would afford that party an unfair advantage." *Natixis Fin. Prods. LLC v. Bank of Am., N.A.*, 2016 WL 7165981, at *4 (S.D.N.Y. 2016) (collecting cases). GEICO submitted its expert report by the date contemplated by the scheduling order, without the benefit of seeing Plaintiffs' disclosures, and without four months of additional time. Modifying expert deadlines now would give Plaintiffs' the "unfair tactical advantage" of seeing Defendant's disclosures that would "operate to the material prejudice" of GEICO. *Queen v. Int'l Paper Co*., 2006 WL 1229010, at *3-4 (N.D.N.Y. 2006) (excluding untimely, out-of-sequence disclosed expert because plaintiff "enjoyed the benefit of reviewing [defendant's] expert reports" before submission of plaintiff expert report and "material[ly] prejudice[d]" defendant); *Duval v. U.S. Xpress Enterprises, Inc*., 2005 WL 6021864, at *3-4 (N.D.N.Y. 2005) (finding the opportunity to "utilize defendants' expert report in the preparation of her own expert reports" afforded plaintiff "unfair tactical advantages" meriting exclusion).

GEICO respectfully requests that the Court deny Plaintiffs' request to extend Phase III deadlines, including Plaintiffs' lapsed expert disclosure deadline.

---

[1] *See Elysium Health-ChromaDex Litigation*, 2021 WL 1249223, at *3-*4 (S.D.N.Y. 2021) (denying motion to compel data underlying expert report's tables and charts because "that [such materials] would be helpful to understanding, verifying, and analyzing the damages analysis is not sufficient. As long as [plaintiff] has the underlying facts and data and the conclusions that Mr. Gunderson reached from that data, it has the ability to calculate the math for itself.")

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.

CC: All other counsel of record (via ECF)